IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE INSURANCE POLICIES AND AGREEMENTS RELATING THERETO, (B) HONOR CERTAIN PREPETITION OBLIGATIONS IN RESPECT THEREOF, AND (C) RENEW, REVISE, EXTEND, SUPPLEMENT OR ENTER INTO NEW INSURANCE COVERAGE, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move (this "Motion") as follows:

**Relief Requested**

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order" and together with the Interim Order, the "Proposed Orders"), (i) authorizing, but not directing, the Debtors to (a) maintain existing Insurance Policies (as defined below) and pay on an uninterrupted basis all premiums, obligations, Brokerage Fees (as defined below), deductibles and administration fees arising thereunder or in connection therewith (collectively, the "Insurance Obligations") including any Insurance Obligations for prepetition periods, and (b) renew, revise, extend, supplement or enter into new insurance policies, and (ii) granting related relief.

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

2.      The Debtors also request that the Court: (i) authorize and direct any and all banks with which the Debtors maintain accounts and that the Debtors use to make payments related to the Insurance Policies and Insurance Obligations, to receive, process, honor and pay all checks drawn on such accounts and fund transfers for payments with respect to the Insurance Policies and Insurance Obligations whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments; and (ii) authorize the Debtors to issue new postpetition checks or effect new postpetition fund transfers on account of the Insurance Policies and Insurance Obligations and to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

## Jurisdiction and Venue

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

5.      On the date hereof (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the chapter 11 cases, and no committees have been appointed or designated.

6. A description of the Debtors' businesses, the reasons for commencing the chapter 11 cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petitions and First Day Relief* (the "First Day Declaration") filed concurrently with this Motion and incorporated herein by reference.

### Insurance Policies

7. In connection with the operation of the Debtors' businesses, the Debtors maintain, amongst other policies, comprehensive insurance policies that provide coverage related to general liability, cyber security liability, workers' compensation liability,[2] property liability, automobile liability, ocean cargo liability, directors' and officers' liability, media liability, and crime liability (collectively the "Insurance Policies"). For the Insurance Policies' current policy periods, the total annual premiums allocated to the Debtors under the Insurance Policies is approximately $635,000. The Insurance Policies, which the Debtors have obtained through third-party insurance carriers (collectively, the "Insurance Carriers"), are listed on **Exhibit C**[3] attached to this Motion.

8. In connection with the Insurance Policies, the Debtors make payments to Insurance Carriers on account of certain Insurance Obligations, including premiums, deductibles and administration fees. The Debtors believe that, as of the Petition Date, there are no amounts outstanding on account of Insurance Obligations. In any event, and out of an abundance of caution, the Debtors seek authority to satisfy any prepetition Insurance Obligations (on an interim basis, up

---

[2] The Debtors have sought authority to make payments on account of obligations owed under the Debtors' Insurance Policies related to workers' compensation in the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Benefits, and Other Compensation Obligations and (B) Maintain the Compensation and Benefits Programs, (II) Approve Employee Retention Program, and (III) Granting Related Relief*, filed contemporaneously herewith. Accordingly, the Debtors are not seeking such authority in this Motion.

[3] The approximate annual premiums contained in **Exhibit C** reflect the annual premiums paid to insure the Debtors as well as the Debtors' non-debtor affiliates.

to $75,000) in the ordinary course of business, including by reissuing any uncashed checks as necessary. The Debtors further seek authority to honor the Insurance Obligations that arise after the Petition Date in the ordinary course.

9. The ability to maintain the Insurance Policies, and to enter into new insurance policies, as needed in the ordinary course of business, is essential to the preservation of the value of the Debtors' businesses, operations and assets. Much of the coverage provided by the Insurance Policies is required by regulations, laws and contracts that govern the Debtors' commercial activities. Failure to pay premiums for the Insurance Policies when due may harm the Debtors' estates in several ways, including the loss of insurance coverage and subsequent need to obtain replacement insurance on an emergency basis, likely at a higher price. Furthermore, section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal. 11 U.S.C. § 1112(b)(4)(C).

### Insurance Broker Services

10. The Debtors employ RCM&D (the "Insurance Broker") to assist with the procurement and negotiation of their Insurance Policies. The Debtors pay brokerage fees to their Insurance Broker upon the signing or renewal of certain policies (the "Brokerage Fees"). The Brokerage Fees are bundled into premium costs for each insurance policy the Debtors maintain, and generally are not paid or identified separately. The Debtors believe they are current on all Brokerage Fees as of the Petition Date. However, out of an abundance of caution, the Debtors request the authority to pay, in their discretion, any Brokerage Fees or other amounts owing to the Insurance Broker that may subsequently be determined to be owed for the period prior to the Petition Date, and to continue making payments to the Insurance Broker on account of the

obligations related to the Insurance Policies in the ordinary course, since the Debtors' failure to pay such amounts could result in a loss of the Insurance Broker's assistance in maintaining the Debtors' beneficial business relationships with their insurance carriers.

## Basis for Relief Requested

**A.    Continuance of the Insurance Policies is required by law, the Bankruptcy Code, and U.S. Trustee Operating Guidelines.**

11.    Under section 1112(b)(4)(C) of the Bankruptcy Code "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C).  In addition, in many instances, the coverage provided by the Insurance Policies is required by the regulations, laws and contracts that govern the Debtors' commercial activities, as well as the operating guidelines issued by the U.S. Trustee (the "U.S. Trustee Operating Guidelines").  It is essential to the Debtors' estates and consistent with the Bankruptcy Code and the U.S. Trustee Operating Guidelines that the Debtors be permitted to maintain their Insurance Policies and continue paying any Insurance Obligations.  It is similarly critical that the Debtors have the authority to supplement, amend, extend, renew or replace their Insurance Policies as needed, in their business judgment, without further order of the Court.

**B.    Continuing to maintain the Insurance Policies is warranted pursuant to sections 363 and 105 of the Bankruptcy Code.**

12.    As an initial matter, the Debtors believe that maintaining the Insurance Policies and paying the Insurance Obligations fall within the ordinary course of business and are therefore authorized pursuant to section 363(c)(1) of the Bankruptcy Code.  Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing,

and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c). The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *See In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796–97 (Bankr. D. Del. 2007).

13. Should the Court determine that payment of the Insurance Obligations do not constitute a payment within the ordinary course of business, the relief requested is nevertheless warranted pursuant to sections 363(b) and 105 of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code either under specific statutory fiat or under equitable common law principles.

14. A bankruptcy court may use its equitable powers to authorize the payment of prepetition debt when such payment is needed to facilitate rehabilitating the debtor. *See In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) (acknowledging that "[c]ertain prepetition claims . . . may need to be paid to facilitate a successful reorganization" and that "[s]ection 105(a) of the [Bankruptcy] Code provides a statutory basis for the payment of prepetition claims"); *see also In*

re *Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."). This equitable common law principle "was first articulated by the United States Supreme Court in *Miltenberger v. Logansport, C. & S.W Ry. Co.*, 106 U.S. 286 (1882), and is commonly referred to as either the 'doctrine of necessity' or the 'necessity of payment' rule." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175–76.

15. Bankruptcy courts in this District regularly rely on their authority under section 105(a) and the doctrine of necessity to grant debtors the discretionary authority to pay certain prepetition claims "if the movant establishes a good and sound business reason for the pre-confirmation proposed use, sale, or lease of the property." *In re Floyd*, 2020 WL 6164328, at *2 (Bankr. E.D.N.C. Oct. 20, 2020) (citing *In re Taylor*, 198 B.R. 142, 156–57 (Bankr. D.S.C. 1996)); *In re Synteen Techs.*, Inc., 2000 WL 33709667, at *2 (Bankr. D.S.C. Apr. 14, 2000) ("equitable powers specified in § 105(a) give bankruptcy courts the permission to allow payment of a pre-petition claim 'when essential to the continued operation of the debtor.'") (quoting *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992)). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).

16. In the present case, it is essential that the Debtors be permitted to maintain the Insurance Policies and pay the Insurance Obligations as such obligations come due. The Debtors believe that they are current on all Insurance Obligations as of the Petition Date. Nevertheless, out of an abundance of caution, and because of the importance of the coverage afforded by the Insurance Policies, the Debtors seek authority, but not direction, to pay all Insurance Obligations,

notwithstanding the fact that such payments could be based, in whole or in part, on prepetition liabilities.

17. If the Insurance Policies were to lapse due to the Debtors' inability to pay the Insurance Obligations, the Debtors would be exposed to substantial potential liability for any damages or loss resulting to persons or property of the Debtors and others. It is essential to the continued operation of the Debtors' businesses and maximizing the value of these estates that Insurance Obligations are paid on a timely basis.

18. Notably, to the extent that any Insurance Policy, or any other agreement described herein is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors are not at this time seeking to assume such agreements. The Debtors submit that court authorization of payments to be made with respect to the Insurance Policies, or Brokerage Fees should not be deemed to constitute postpetition assumption or adoption, pursuant to section 365 of the Bankruptcy Code, of any such Insurance Policy or broker or agency agreement. The Debtors will continue to review the Insurance Policies and services provided by the Insurance Broker during the course of these cases, and hereby reserve all of their rights with respect thereto.

**C.    Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers**

19. Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating to an authorized payment with respect to Insurance Obligations. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests with respect to the relief requested in this Motion.

### Waiver of Memorandum of Law

20. Pursuant to rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

### Reservation of Rights

21. Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (i) an admission as to the validity of any claim against a Debtor entity; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (v) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (vi) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (vii) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their right to contest the extent, validity, or perfection or seek avoidance of any or all such liens.

### The Requirements of Bankruptcy Rule 6003 are Satisfied

22. Bankruptcy Rule 6003 empowers the Court to issue an order, within the first 21 days of the case, granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, entry of an interim order granting this Motion is integral to the Debtors' ability to

successfully transition into chapter 11. Any lapse or termination of the Debtors' Insurance Policies could expose the Debtors to significant potential liability for any damages or loss resulting to persons or property of the Debtors, thereby causing immediate and irreparable harm to the Debtors' estates and, consequently, other interested parties. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Waiver of Bankruptcy Rule 6004(h)

23. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As described above, the relief requested in this Motion is necessary for the Debtors to preserve the value of their estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## Notice

24. Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to JPMorgan Chase Bank, N.A., (iv) the United States Attorney for the District of Maryland; (v) the offices of the attorneys general for the states in which the Debtors operate; (vi) the Internal Revenue Service; (vii) the Insurance Carriers; (viii) the Insurance Broker; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit the no other or further notice is necessary

WHEREFORE, the Debtors respectfully request entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: January 14, 2025                             **SAUL EWING LLP**

                                                   By: */s/ Jordan D. Rosenfeld*
                                                   Jordan D. Rosenfeld (MD Bar No. 13694)
                                                   1001 Fleet Street, 9th Floor
                                                   Baltimore, MD 21202
                                                   Telephone: (410) 332-8600
                                                   Email: jordan.rosenfeld@saul.com

                                                   -and-

                                                   Jeffrey C. Hampton (*pro hac vice* pending)
                                                   Adam H. Isenberg (*pro hac vice* pending)
                                                   Turner N. Falk (*pro hac vice* pending)
                                                   1500 Market Street, 38th Floor
                                                 Philadelphia, PA 19102
                                                 Telephone: (215) 972-7777
                                                 Email: jeffrey.hampton@saul.com
                                                              adam.isenberg@saul.com
                                                               turner.falk@saul.com

                                                   -and-

                                                   Mark Minuti (*pro hac vice* pending)
                                                   Paige N. Topper (*pro hac vice* pending)
                                                   Nicholas Smargiassi (*pro hac vice* pending)
                                                   1201 N. Market Street, Suite 2300
                                                   Wilmington, DE 19801
                                                   Telephone: (302) 421-6800
                                                   Email: mark.minuti@saul.com
                                                               paige.topper@saul.com
                                                               nicholas.smargiassi@saul.com

                                                 *Proposed Counsel for Debtors and Debtors in Possession*