**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT TO UTILITY COMPANIES, (II) ESTABLISHING PROCEDURES TO RESOLVE REQUESTS FOR ADDITIONAL ASSURANCE, AND (III) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned proposed counsel, respectfully move (the "Motion") as follows:

**Relief Requested**

1. The Debtors respectfully seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order" and together with the Interim Order, the "Proposed Orders"), (i) approving the Debtors' proposed form of adequate assurance of payment to the Utility Companies (as defined below) and determining that the Debtors have provided each Utility Company with "adequate assurance of payment" within the meaning of section 366 of title 11 of the United States Code (the "Bankruptcy Code") based on the Debtors establishing a segregate account in the amount of $28,000 which is equal to the Debtors' estimate of two weeks of postpetition Utility Services (as defined below) based on

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

53127228.12

the monthly average of all Utility Services; (ii) establishing procedures for resolving requests by any Utility Company for additional adequate assurance of payment; (iii) prohibiting utility companies from altering, refusing, or discontinuing services or discriminating against the Debtors solely on the basis of the commencement of these cases or that the Debtors did not pay a debt when due prepetition; and (iv) granting related relief.

## Jurisdiction and Venue

2.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory bases for the relief requested herein are sections 105(a), 363 and 366 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

4.  On the date hereof (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

5.  A description of the Debtors' businesses, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petitions and First Day*

*Relief* (the "First Day Declaration") filed concurrently with this Motion and incorporated herein by reference.

### Description of Utility Services

6. In the ordinary course of business, the Debtors obtain traditional utility services related to the day-to-day operation and maintenance of their businesses from approximately sixteen (16) different utility providers (each a "Utility Company" and collectively, the "Utility Companies"), for, *inter alia*, water and sewer, trash removal, electricity, gas, telephone and internet services (the "Utility Services"). The Utility Companies include the entities set forth on the list attached hereto as **Exhibit C** (the "Utility Companies List").

7. Uninterrupted Utility Services are essential to the continued operation of the Debtors' businesses and, consequently, to the success of their chapter 11 cases. Should any Utility Company alter, refuse, or discontinue service, even for a brief period, the Debtors' business operations could be severely disrupted, and such disruption would jeopardize the Debtors' restructuring efforts. Accordingly, the Debtors seek to establish an orderly process for providing adequate assurance to their Utility Companies without hindering the Debtors' ability to function as a going concern.

8. In general, the Debtors have established a good payment history with their Utility Companies, making regular, timely payments. Over the past year, the Debtors have paid an average of approximately $56,000 per month on account of all Utility Services. The Debtors estimate that the cost for the Utility Services during the next two weeks (not including any deposits to be paid) will be approximately $28,000.

**Proposed Adequate Assurance to Utility Companies**

9. The Debtors intend to pay their undisputed post-petition obligations to the Utility Companies on a timely basis and have the ability to do so. The Debtors anticipate that they will have sufficient funds to pay the amounts described in this Motion.

10. Consistent with section 366(c)(1)(A) of the Bankruptcy Code, which defines the phrase "assurance of payment" to include a "cash deposit," the Debtors propose to deposit $28,000 within 20 days of the Petition Date, an amount equal to approximately two (2) weeks of Utility Services, calculated as a historical average of all billings for Utility Services incurred by the Debtors over a twelve month period (each an "Adequate Assurance Deposit") into a segregated bank account designated for the Adequate Assurance Deposits (the "Adequate Assurance Deposit Account") on behalf of all Utility Companies identified in **Exhibit C**. The Adequate Assurance Deposits will be held in the Adequate Assurance Deposit Account for the duration of these chapter 11 cases and may be applied to any post-petition defaults in payment to the Utility Companies.

11. The Debtors propose to adjust the amount in the Adequate Assurance Deposit Account as follows: (i) reducing the amount held in the Adequate Assurance Deposit Account to account for the payment and termination of Utility Services by the Debtors for any given account; (ii) modifying the amount held in the Adequate Assurance Deposit Account on the basis of agreements reached with Utility Companies regarding Additional Assurance Requests, including, to the extent any Utility Company receives any other value from the Debtors as adequate assurance of payment, reducing the Adequate Assurance Deposit maintained in the Adequate Assurance Deposit Account on account of such Utility Company by the amount of such other value; and (iii) adding additional amounts in the event that the Debtors amend the Utility Companies List to add one or more additional Utility Companies. These adjustments will permit the Debtors to maintain

the Adequate Assurance Deposit Account with an amount that consistently provides the Utility Companies with a two-week deposit on account of such services.

12. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business (collectively, the "Proposed Adequate Assurance"), along with any existing deposits held by the Utility Companies, constitute sufficient adequate assurance of future payment to the Utility Companies to satisfy the requirements of section 366 of the Bankruptcy Code. Nonetheless, if any Utility Company believes additional assurance is required, the Debtors request that the Court establish certain procedures, described below, by which a Utility Company may request such assurance.

## The Adequate Assurance Procedures

13. In light of the severe consequences to the Debtors' business and operations, that would result from any interruption in Utility Services, and to address the right of any Utility Company under section 366(c)(2) of the Bankruptcy Code to seek additional adequate assurance satisfactory to it, the Debtors propose that the following procedures (the "Adequate Assurance Procedures") be adopted:

    a. Any Utility Company desiring assurance of future payment for Utility Services beyond the Proposed Adequate Assurance must serve a request (an "Additional Assurance Request") upon the Debtors at the following addresses: (i) Diamond Comic Distributors, Inc., c/o Robert Gorin, CRO, Getzler Henrich & Associates LLC, 1110 Brickell Avenue, 400-64, Miami, Florida 33131 (rgorin@getzlerhenrich.com), and proposed counsel to the Debtors, Saul Ewing LLP, 1500 Market Street, 38th Floor, Philadelphia, Pennsylvania 19102, Attn: Jeffrey C. Hampton (jeffrey.hampton@saul.com) and Adam H. Isenberg (adam.isenberg@saul.com), and 1201 N. Market Street, Suite 2300, Wilmington, Delaware 19801, Attn: Paige N. Topper (paige.topper@saul.com) and Nicholas Smargiassi (nicholas.smargiassi@saul.com) (together, the "Notice Parties").

    b. Any Additional Assurance Request must: (i) specify the amount and nature of assurance of payment that would be satisfactory to the Utility Company;

5

53127228.12

      (ii) be made in writing; (iii) set forth the location(s) for which Utility Services are provided and the relevant account number(s); (iv) describe any deposits or other security currently held by the requesting Utility Company; (v) explain whether the Debtors prepay for the Utility Company's services; (vi) describe any payment delinquency or irregularity by the Debtors for the postpetition period, if any; and (vii) explain why the requesting Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

c. Upon the Notice Parties' receipt of an Additional Assurance Request at the addresses set forth in subparagraph (a) above, the Debtors shall promptly negotiate with such Utility Company to resolve such Utility Company's Adequate Assurance Request.

d. The Debtors, in their discretion, may resolve any Additional Assurance Request by mutual agreement with the requesting Utility Company and without further order of the Court, and may, in connection with any such resolution, in their discretion, provide the requesting Utility Company with additional assurance of future payment in a form satisfactory to the Utility Company, including, but not limited to, cash deposits, prepayments, other forms of security, or any combination of the above, if the Debtors believe such additional assurance is reasonable.

e. If the Debtors determine that an Additional Assurance Request is not reasonable, and the parties are not able to resolve such request, then the Debtors will request a hearing before the Court to determine the adequacy of assurances of payment made to the requesting Utility Company (the "<u>Determination Hearing</u>"), pursuant to section 366(c)(3)(A) of the Bankruptcy Code.

f. Pending the resolution of the Additional Assurance Request at a Determination Hearing, the Utility Company making such request shall be restrained from discontinuing, altering, or refusing service to, or discriminating against, the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

g. Any Utility Company that does not comply with the Adequate Assurance Procedures is, subject to the entry of the Final Order, deemed to find the Proposed Adequate Assurance satisfactory to it, and is prohibited from discontinuing, altering, or refusing service to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional assurance of payment beyond the Proposed Adequate Assurance.

**Subsequent Additions to the Utility Companies List**

14. The Debtors have made a good-faith effort to identify their Utility Companies and include them on the Utility Companies List. Nonetheless, to the extent that the Debtors subsequently identify additional Utility Companies or if a Utility Company begins or ceases to provide services to the Debtors during the pendency of these cases, the Debtors seek authority, in their discretion, to amend the Utility Companies List to add or remove any Utility Company before or after entry of any interim or final order approving the Motion. Any such amended Utility Companies List will be filed with the Court.

15. The Debtors further request that the Court's order(s) on this Motion be deemed to apply to any such subsequently identified Utility Company, regardless of when such Utility Company is added to the Utility Companies List. The Debtors will cause a copy of this Motion and any orders hereon to be served on any such Utility Company subsequently added to the Utility Companies List and will deposit an amount equal to two weeks of the Debtors' average cost of utility services in the Adequate Assurance Deposit Account for the benefit of such Utility Company. Subsequently added Utility Company shall be required to make Additional Assurance Requests, if any, in accordance with the Additional Assurance Procedures. For any Utility Company that is subsequently removed from the Utility Companies List, the Debtors request the authority to decrease the Adequate Assurance Deposit by an amount equal to two weeks of the Debtors' average cost of services from such removed Utility Company.

16. For the avoidance of doubt, the Debtors request that any order(s) approving this Motion be binding on all Utility Companies, regardless of whether such Utility Company is presently identified on the Utility Companies List.

53127228.12

17. Finally, the Debtors request that their obligation to maintain the Adequate Assurance Deposit terminate upon the earlier of: (i) the sale of all or substantially all of the Debtors' assets; (ii) the effective date of a chapter 11 plan; or (iii) the date these cases are dismissed.

### Basis for Relief Requested

18. Congress enacted section 366 of the Bankruptcy Code to protect a debtor from immediate termination of utility services after filing for bankruptcy, while at the same time providing the utility companies with adequate assurance of payment for postpetition utility services. *See* H.R. Rep. No. *95-595,* at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306. Section 366 defines "assurance of payment" to mean several forms of security, including, cash deposits, letters of credit, and prepayment of utility services. 11 U.S.C. § 366(c)(1)(A). Section 366(c)(1)(B) explicitly excludes, however, offering administrative expense priority as adequate assurance of payment.

19. While section 366(c) of the Bankruptcy Code sets forth what constitutes adequate assurance of payment, the bankruptcy court nonetheless retains discretion to determine what, if any, adequate assurance is necessary to satisfy the section 366 requirement that assurance of payment be adequate. *See In re Bedford Town Condo.*, 427 B.R. 380, 385 (Bankr. D. Md. 2010) ("[T]he Court concludes that it can modify the adequate assurance required by the Utilities even though the Debtor has not yet paid that amount."); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("The bankruptcy courts are in agreement that section 366(b) vests in the bankruptcy court the exclusive responsibility for determining the appropriate security which a debtor must provide to his utilities to preclude termination of service for non-payment of pre-petition utility bills."); *In re Cir. City Stores, Inc.*, No. 08-35653, 2009 WL 484553, at *4–5

(Bankr. E.D. Va. Jan. 14, 2009) (holding that courts retain discretion to determine the amount of adequate assurance). Accordingly, a court is not required to give the utility companies an "absolute guarantee of payment," or require that the adequate assurance take the form of a deposit, bond, letter of credit, or similar security. *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997).

20.     Rather, in considering the facts and circumstances of each case, the Court must only ensure that the utility is not subject to an unreasonable risk of non-payment for postpetition services. *See In re Adelphia,* 280 B.R. at 80; *Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (1st Cir. B.A.P. 1981). The Court, therefore, must strike a careful balance between satisfying the utility company's need for adequate assurance and ensuring that the debtor provides no more than what is adequate, as the debtor has a conflicting need to conserve financial resources. *See In re Magnesium Corp. of Am.*, 278 B.R. 698, 714 (Bankr. S.D.N.Y. 2002) (holding that to require the debtor to allocate valuable liquidity to provide further "adequate assurance" to satisfy a utility's obligations before their amount has been fixed would prejudice the entirety of the debtor's unsecured creditor body for the benefit of a single one).

21.     In determining whether a utility is subject to an unreasonable risk of nonpayment, the Court may consider whether the utility would seek the same additional security from another non-bankruptcy debtor. *See In re Caldor, Inc.*, 199 B.R. at 3 (finding that the utility companies were not seeking additional security for an adequate assurance of future payment, but solely because their monopoly position permitted them to capitalize on the debtors' bankruptcy filing); *In re Whittaker*, 84 B.R. 934, 941–42 (Bankr. E.D. Pa. 1988), *aff'd*, 92 B.R. 110 (E.D. Pa. 1988), *aff'd*, 882 F.2d 791 (3d Cir. 1989) (holding the utility company may not refuse to provide service solely based upon the non-payment of a pre-petition debt even if the utility company refuses to

provide service to similar non-debtors for failing to pay). The Court may not consider, however, the absence of security before the petition date, the debtor's history of timely payments, or the availability of an administrative expense priority. 11 U.S.C. § 366(c)(3)(B).

22. Based upon the foregoing, the Debtors believe that most, if not all, of their Utility Companies have adequate assurance of payment even without recourse to the Adequate Assurance Deposit. The Debtors anticipate having sufficient resources to pay, and intend to pay, all valid postpetition obligations for Utility Companies in a timely manner based on revenues generated from operations and access to cash collateral and debtor-in-possession financing. In addition, the Debtors' reliance on the Utility Companies for the operation of their businesses provides them with a powerful incentive to stay current on their obligations. These factors, which the Court may consider when determining the amount of any adequate assurance, justify finding that the Debtors are not required to make any additional assurances in these chapter 11 cases. In light of the foregoing, the Debtors respectfully submit that the Proposed Adequate Assurance is more than sufficient to assure the Utility Companies of payment for postpetition services.

23. In addition, the Proposed Adequate Assurance strikes a fair balance between the rights of the Utility Companies and the interests of the Debtors' estates. If the Utility Companies altered, refused, or discontinued service, even for a brief period, then the Debtors' operations would be severely disrupted. Such disruption could have a devastating impact on the Debtors' business operations and revenues, thereby jeopardizing the Debtors' ability to successfully reorganize. By contrast, the Utility Companies will have received the protection of a cash deposit equal to two (2) weeks' worth of Utility Services, and may receive this deposit in the event that the Debtors fail to timely pay their postpetition utility charges. It is, therefore, critical that this

Court grant the relief requested in this Motion and prohibit the Utility Companies from altering, refusing, or discontinuing the Debtors' necessary Utility Services during these Chapter 11 Cases.

24. Under the circumstances of these cases, the Debtors believe that the establishment of a cash reserve in the form of the Adequate Assurance Deposit constitutes adequate assurance of payment under section 366(c) of the Bankruptcy Code.

## Waiver of Memorandum of Law

25. Pursuant to rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

## Reservation of Rights

26. Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (i) an admission as to the validity of any claim against a Debtor entity; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (v) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (vi) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

## The Requirements of Bankruptcy Rule 6003 are Satisfied

27. Bankruptcy Rule 6003 empowers the Court to issue an order, within the interim period, granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief "is necessary to avoid

53127228.12

immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

28. To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a). The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As set forth above, the Debtors' ability to pay undisputed amounts owed for post-petition services rendered by the Utility Companies, and to provide the Utilities Companies with the comfort of the Adequate Assurance Deposit, is essential to prevent potentially irreparable damages to the Debtors' business operations and their estates. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

### Notice

29. Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to JPMorgan Chase Bank, N.A., (iv) the United States Attorney for the District of Maryland; (v) the offices of the attorneys general for the states in which the Debtors operate; (vi) the Internal Revenue Service; (vii) the Utility Companies; and (viii) any party that has requested notice pursuant to Bankruptcy

Rule 2002. In light of the nature of the relief requested, the Debtors submit the no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: January 14, 2025                                  **SAUL EWING LLP**

                                  By: */s/ Jordan D. Rosenfeld*
Jordan D. Rosenfeld (MD Bar No. 13964)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (*pro hac vice* pending)
Adam H. Isenberg (*pro hac vice* pending)
Turner N. Falk (*pro hac vice* pending)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
      adam.isenberg@saul.com
      turner.falk@saul.com

-and-

Mark Minuti (*pro hac vice* pending)
Paige N. Topper (*pro hac vice* pending)
Nicholas Smargiassi (*pro hac vice* pending)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
      paige.topper@saul.com
      nicholas.smargiassi@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*

53127228.12