**<u>Exhibit A</u>**

**Proposed Interim Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Joint Administration Requested) |

**INTERIM ORDER (I) AUTHORIZING DEBTORS' CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS AND PAYMENT OF RELATED PREPETITION OBLIGATIONS, (II) AUTHORIZING CONTINUATION OF ORDINARY COURSE INTERCOMPANY TRANSACTIONS, (III) EXTENDING TIME TO COMPLY WITH THE REQUIREMENTS OF 11 U.S.C. § 345(b), AND (IV) GRANTING RELATED RELIEF**

Upon the motion ("Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (i) authorizing the Debtors to continue using their existing Cash Management System, Bank Accounts, and Business Forms and payment of related prepetition obligations, (ii) authorizing the Debtors to

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] Capitalized terms used but not defined herein are defined in the Motion.

53122265.7 01/14/2025

continue ordinary course intercompany transactions and granting administrative priority to postpetition intercompany claims, (iii) scheduling a hearing to consider entry of the proposed final order, to the extent necessary, (iv) extending the Debtors' time to comply with the requirements of section 345 of the Bankruptcy Code, and (v) granting related relief, as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and the evidence in support thereof and having heard the statements in support of the relief requested in the Motion at a hearing before this Court ("Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on an interim basis as set forth herein.

2. The final hearing ("Final Hearing") on the Motion shall be held on _____, 2025, at __:__ _.m. (prevailing Eastern Time) at the United States Bankruptcy Court for the District of Maryland, 101 W. Lombard St., Suite 8530, Baltimore, Maryland 21201. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time), on _____, 2025. If no responses or objections are filed to the Motion and

entry of this Interim Order on a final basis, the Court may enter a final order without further notice or hearing.

3. Responses or objections to the Motion and entry of a final order with respect to the Motion must: (i) be made in writing; (ii) state with particularity the grounds for the response or objection; (iii) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; and (iv) be served upon (a) proposed counsel to the Debtors, Saul Ewing LLP, 1500 Market Street, 38th Floor, Philadelphia, Pennsylvania 19102, Attn: Jeffrey C. Hampton (jeffrey.hampton@saul.com) and Adam H. Isenberg (adam.isenberg@saul.com), and 1201 N. Market Street, Suite 2300, Wilmington, Delaware 19801, Attn: Mark Minuti (mark.minuti@saul.com) and Paige N. Topper (paige.topper@saul.com); (b) counsel to the DIP Lender, Troutman Pepper Locke LLP, 111 Huntington Avenue, 9th Floor, Boston, Massachusetts 02199, Attn: Jonathan W. Young (jonathan.young@troutman.com), David Ruediger (david.ruediger@troutman.com), and Katherine Culbertson (katherine.culbertson@troutman.com); (c) the Office of the United States Trustee for the District of Maryland, Attn: Gerard R. Vetter (gerard.r.vetter@usdoj.gov); and (d) any statutory committee appointed in these cases.

4. Subject to this Interim Order, the Debtors are authorized but not directed to continue to use the Cash Management System, including the Bank Accounts, in the ordinary course of business and in accordance with the Bank Account Agreements, and to implement any changes to the Cash Management System as the Debtors deem necessary or appropriate.

5. The Debtors are further authorized, but not directed, to: (i) continue to use, with the same account numbers, the Bank Accounts in existence on the Petition Date, and need not comply with certain guidelines relating to bank accounts set forth in the U.S. Trustee Operating Guidelines, including, without limitation, the requirement to establish separate accounts for cash collateral

and/or tax payments; (ii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (iii) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including, without limitation, by check, wire transfer and other methods; and (iv) otherwise perform their obligations under the Bank Account Agreements.

6. The Debtors are authorized, but not directed, to honor and pay all undisputed prepetition bank fees, claims, costs, expenses or charges associated with the Bank Accounts whether arising prior to or after the Petition Date, including, without limitation (i) the Service Charges, (ii) checks deposited with the Banks or ACH transfers that have been dishonored or returned, or (iii) any reimbursement or other payment obligations, such as overdrafts, arising under the Bank Account Agreements, and the Banks are hereby authorized to debit, charge or deduct, as applicable, such undisputed amounts in the ordinary course of business.

7. The Debtors are authorized, in their sole discretion, to open any new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion, provided, however, that the Debtors shall provide the U.S. Trustee, any creditors' committee appointed in these chapter 11 cases, and counsel to JPM (i) notice of the opening of any new bank accounts or closing of any Bank Account (which notice the Debtors shall make good faith efforts to provide at least three business days before opening or closing the applicable Bank Account), and (ii) confirmation that the Bank Account has been opened or closed as soon as reasonably practicable; and provided further, to the extent the Debtors open a new bank account, the Debtors shall open such new bank account(s) at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee, or at a bank that is willing to immediately execute such an agreement.

8. Except as otherwise expressly provided in this Order, the Banks are authorized to: (i) continue to administer, service, and maintain the Bank Accounts as such accounts were administered, serviced, and maintained prior to the Petition Date and in accordance with the Bank Account Agreements, without interruption and in the ordinary course of business; (ii) receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, EFT (including wires or ACH transfers), credit card payments and other items presented, issued or drawn on the Bank Accounts; provided, however, that any check, draft or other notification that the Debtors advise the Banks to have been drawn, issued or otherwise presented before the Petition Date may be honored by the Banks only to the extent authorized by order of the Court; (iii) accept and honor all representations and instructions from the Debtors as to which checks, drafts, EFT (including wires or ACH transfers), credit card payments and other items presented, issued, or drawn should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, EFT (including wires or ACH transfers), credit card payments and other items are dated before or after the Petition Date; and (iv) debit or charge the Bank Accounts for all undisputed Service Charges, whether arising before, on or after the Petition Date.

9. The Debtors are authorized but not directed to continue to operate under the U.S. Select Merchant Processing Agreement between Debtor Diamond Comic Distributors, Inc., and JPM, and Paymentech, LLC (collectively, the "Merchant Processor"), dated April 15, 2019 (the "Merchant Services Agreement"). The Debtors are authorized to pay or reimburse the Merchant Processor for any obligations under the Merchant Services Agreement, including, without limitation, any fees, charges, refunds, chargebacks, reserves and other amounts due and owing from the Debtors to the Merchant Processor (the "Merchant Services Obligations"), whether such obligations are incurred prior to or after the Petition Date, and the Merchant Processor is authorized

to receive or obtain payment for such Merchant Services Obligations, as provided under, and in the manner set forth in the Merchant Services Agreement, including, without limitation, by way of recoupment or setoff without further order of the Court.

10.  The Debtors are authorized to continue to use in the ordinary course of business the commercial card program provided to the Debtors by JPM under the Commercial Card Application & Agreement, dated June 24, 2019, between Debtor DCD and JPM (the "Commercial Card Agreement").  The Debtors are authorized to continue to incur indebtedness on a secured basis under the commercial card program, to honor all past and future obligations arising under the Commercial Card Agreement (the "Commercial Card Obligations"), and to make timely payments to JPM in respect of the Commercial Card Obligations, including making payments on account of charges, and in the same manner (e.g., via auto-debit to a designated Bank Account), that were made under the commercial card program before the Petition Date.  JPM is further authorized to exercise its discretion under the Commercial Card Agreement to terminate the commercial card program without further order of the Court; *provided, however*, that any such termination (a) must be consistent with the terms and provisions of such agreement, and (b) must not be effectuated on less than ten (10) days advanced written notice to the Debtors and any official committee appointed in these cases.

11.  The Debtors are further authorized to establish a new cash collateral account at JPM (the "Cash Collateral Account"), and to execute any documents related thereto, for purposes of cash collateralizing the Commercial Card Obligations as well as reimbursement obligations (the "LC Reimbursement Obligations") in connection with Irrevocable Standby Letter of Credit No. NUSCGS048065, issued by JPM for the account of Debtor DCD in favor of BC Industrial Exchange Portfolio II Master Tenant LLC, as beneficiary (as amended or modified, the "JPM

Letter of Credit"). All cash from time to time on deposit in the Cash Collateral Account shall remain subject to an exclusive perfected first priority lien in favor of JPM as security for the Commercial Card Obligations and the LC Reimbursement Obligations. In the event the Debtors fail to make any timely payment to JPM in respect of the Commercial Card Obligations or the LC Reimbursement Obligations, JPMC is authorized, in its discretion, to debit the Cash Collateral Account for the amount of any unpaid Commercial Card Obligations or LC Reimbursement Obligations without further order of the Court.

12. Subject to the terms of this Order, the Banks may rely upon the representations and instructions of the Debtors with respect to whether any disbursement should be honored pursuant to any order of this Court, whether or not such disbursements are dated before, on or after the Petition Date, and no Bank that honors a prepetition disbursement that is the subject of this Interim Order (i) at the direction of the Debtors, (ii) in the good-faith belief that this Court has authorized such disbursement to be honored, or (iii) as the result of an innocent mistake despite implementation of reasonable payment item handling procedures shall or shall be deemed to have any liability to the Debtors or their estates on account of such disbursement being honored postpetition, or otherwise be deemed to be in violation of this Interim Order.

13. The Debtors are authorized, but not directed, to continue performing Intercompany Transactions in the ordinary course of business on a postpetition basis. All Intercompany Claims arising after the Petition Date shall be identified as such and accorded administrative expense priority in accordance with section 364(b), 503(b) and 507(a)(2) of the Bankruptcy Code.

14. The Debtors are authorized to continue to use their existing Cash Management System, as described in the Motion, and shall maintain detailed records reflecting all transfers of funds to the same extent maintained by the Debtors prior to the Petition Date. The Debtors shall

maintain records with respect to all transactions and transfers, including but not limited to the Intercompany Transactions, so that all transactions can be readily ascertained, traced, properly recorded, and distinguished between prepetition and postpetition transactions.

15. The Debtors shall have 30 days from the date of this Order to comply with the requirements of section 345(b) of the Bankruptcy Code, to the extent applicable, without prejudice to the Debtors' right to seek a further extension of time or to seek to deviate from the requirements of section 345(b) of the Bankruptcy Code on a further interim or final basis.

16. For Banks at which the Debtors maintain Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall, as soon as practicable, (i) contact each Bank, (ii) provide each Bank with each of the Debtors' employee identification numbers, and (iii) identify each of their Bank Accounts held at such Banks as being held by a debtor in possession in a chapter 11 case.

17. For Bank Accounts held by the Debtors at BMO, which is currently not party to a Uniform Depository Agreement for the District of Maryland with the U.S. Trustee for Region 4, the Debtors shall use their good faith efforts to cause the bank to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within 30 days from the date of this Order.

18. The Debtors are authorized, but not directed to, continue to use their existing Business Forms without alteration or change and without the designation "Debtor in Possession" imprinted upon them, and any otherwise applicable requirement that Debtors print "Debtor in Possession" on any new checks ordered during these chapter 11 cases, or that Debtors change their system for electronic generation of checks and Business Forms to reflect their status as debtors in possession, is hereby waived; *provided that* once the Debtors' existing checks and business forms have been used, the Debtors shall, when reordering checks or business forms, require the

designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks and business forms; *provided further* that, with respect to checks and business forms which the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor in Possession" legend and the bankruptcy case number on such items within ten (10) days of the date of entry of this Interim Order.

19. Except for the rights, claims and protections provided to the Banks herein, nothing herein nor any actions taken hereunder shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person other than the Banks.

20. Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each and every Debtor, regardless of which entity pays the disbursements.

21. As soon as practicable after entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on the Banks.

22. Nothing contained in this Interim Order shall modify, amend, impair or limit in any way the rights, claims, liens and other protections provided to JPM, in its capacity as the Debtors' prepetition lender and DIP lender, under any order authorizing debtor-in-possessing financing and use of cash collateral.

23. The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

24. The notice requirement set forth in Bankruptcy Rule 6004(a) is satisfied.

25. This Interim Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

26. The Debtors are authorized and empowered to execute and deliver such documents, and to take and perform all actions, necessary to implement and effectuate the relief granted in this Interim Order.

27. The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**End of Order**