IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION
EMPLOYEE WAGES, BENEFITS, AND OTHER COMPENSATION
OBLIGATIONS AND (B) MAINTAIN THEIR COMPENSATION AND
BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors"), by and through their undersigned proposed counsel, respectfully move (the "Motion") as follows:

**Relief Requested**

1. The Debtors respectfully seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing, but not directing, the Debtors to (a) pay and honor certain prepetition wages, benefits and other compensation obligations in an aggregate amount not to exceed $1,235,500, and (b) continue to administer their employee programs, benefits and policies in the ordinary course of business; and (ii) granting related relief.

2. The Debtors' prepetition employee compensation obligations are summarized in the following chart and are described in further detail below:

| Description | Estimated Amount Owed as of Petition Date |
|---|---|
| **Wage Obligations** | $850,000 |

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

| Description | Estimated Amount Owed as of Petition Date |
|---|---|
| **Withholding Obligations** | $70,000 |
| **Payroll Services Fees** | $3,500 |
| **Reimbursable Expenses** | $1,000 |
| **Commercial Credit Card Obligations** | $135,000 |
| **Benefits Obligations** | $106,000 |
| **Contractor Obligations** | $70,000 |
| **TOTAL** | **$1,235,500** |

## Jurisdiction and Venue

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 105(a), 363, 507(a) and 541 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

5. On the date hereof (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

6. A description of the Debtors' business, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petition and First Day*

*Relief* (the "First Day Declaration") filed concurrently with this Motion and incorporated herein by reference.

## Employee Compensation and Obligations[2]

### I. The Debtors' Workforce

7. As of the Petition Date, the Debtors employ approximately 487 people (collectively, the "Employees"). The Employees include 481 Employees who are employed on a full-time basis, and 6 Employees who are employed on a part-time basis.

8. The Employees perform a wide variety of functions critical to providing service and support to the Debtors' vendors and customers and the administration of these chapter 11 cases. The Employees' skills, knowledge, and understanding of the Debtors' operations are essential to preserving operational safety, stability, and efficiency. Without the continued, uninterrupted services of their employees, the Debtors' value-maximizing administration of these chapter 11 cases would be materially impaired.

9. In addition to the Employees' compensation, the Debtors also incur other obligations related to the Employees, such as vacation, federal and state withholding taxes and other withheld amounts, health and welfare benefits, workers' compensation and programs that the Debtors historically have provided in the ordinary course of business. The compensation practices, programs, benefits and policies provided by the Debtors to their Employees, as more fully described below, are referred to herein as the "Employee Programs" and the Debtors' obligations thereunder are referred to herein as the "Employee Obligations."

---

[2] The description of employee compensation, obligations, benefits and programs described herein are for summary purposes only and are qualified in their entirety by the applicable documents or agreements governing such compensation, obligations, benefits and programs. In the event of any inconsistency, the applicable documents or agreements, as applicable, governing such compensation, obligations, benefits and programs control.

3

53099057.15 01/14/2025

## II. Employee Obligations and Employee Programs

### A. Wage Obligations.

10. In the ordinary course of business, the Debtors incur obligations to their Employees for wages, overtime, and similar obligations (collectively, "Wage Obligations"). On average, the Debtors pay approximately $2.7 million[3] in gross wages and salary per month on account of their Employee base. The Debtors pay their Employees on a bi-weekly basis, with Wage Obligations accruing on either a salaried or hourly basis. Because the Employees are paid in arrears, certain Employees will be owed accrued but unpaid wages as of the Petition Date. The majority of the Debtors' payroll is made by direct deposit through electronic transfer of funds to the Employees' bank accounts.

11. As of the Petition Date, the Debtors estimate that they owe approximately $850,000 on account of accrued but unpaid Wage Obligations. The Debtors do not owe Wage Obligations to any individual in excess of the statutory cap of $15,150 set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (the "Priority Cap"). Accordingly, the Debtors request authority to continue to honor the Wage Obligations and to pay any prepetition claims with respect thereto in the ordinary course of business, including by reissuing any uncashed paychecks as necessary.

### B. Withholding Obligations

12. Each pay period, the Debtors deduct certain amounts directly from Employees' pay, including, but not limited to: (i) garnishments, child support, and other similar deductions as applicable; and (ii) other pre- and after-tax deductions payable pursuant to certain employee benefits plans described herein, legally-ordered deductions and other miscellaneous deductions (collectively, the "Deductions").

---

[3] This amount reflects an average from the 2024 calendar year.

13. Based upon the Employees' salaries and wages, the Debtors also are required by law to withhold amounts related to federal, state and local income taxes, as well as Social Security and Medicare, and to remit such withholdings to the applicable authorities. The Debtors are additionally required to make matching payments from their own funds for Social Security and Medicare and to pay, based on a percentage of gross payroll, state and federal unemployment insurance, and employment training taxes (collectively, the "<u>Payroll Tax Obligations</u>", and together with the Deductions, the "<u>Withholding Obligations</u>"). Each pay cycle, the Debtors withhold applicable Payroll Tax Obligations from Employees' wages and remit such amounts to the applicable authorities.

14. The Debtors estimate that, as of the Petition Date, they have withheld approximately $70,000 in prepetition Withholding Obligations. The Debtors seek authority, but not direction, to pay and remit the Withholding Obligations to the appropriate authorities consistent with the Debtors' prepetition practices.

**C.    Payroll Servicers.**

15. To efficiently manage the processing and payment of the various Employee Obligations, the Debtors rely on services provided by ADP, LLC ("<u>ADP</u>") to facilitate the Debtors' payroll processing and payroll transfer administration (the "<u>Payroll Services</u>"). Each payroll period, the Debtors calculate that period's payroll and any Withholding Obligations, and remit that information to ADP, which then processes a direct deposit transfer for each Employee.

16. The services that ADP provides are crucial to the smooth functioning of the Debtors' payroll system. With ADP's assistance, the Debtors can ensure that (i) Employees are paid on time, (ii) appropriate deductions are made, (iii) payroll reporting is accurate, and (iv) appropriate amounts are remitted to the applicable taxing authorities and other payees. The

5

Debtors pay approximately $35,000 annually in fees to ADP for these services. As of the Petition Date, the Debtors estimate they will owe approximately $3,500 on account of prepetition fees relating to Payroll Services. The Debtors seek authority to pay all such fees, including any prepetition amounts, as Employee Obligations come due in the ordinary course of business.

D.     **Accrued PTO**

17.    In the ordinary course of business, the Debtors provide eligible Employees with paid time off for vacation, sick leave and other reasons (collectively, "Accrued PTO"). Vacation days are available to Employees working at least 80 hours per bi-weekly period and are accrued on a per pay basis. The maximum accrual balance depends on the Employee's years of service with the Debtors, as detailed in the below chart:

| Years of Service | Multiplier | Maximum Vacation Days |
|---|---|---|
| 0–1 (hourly and salary) | 0.0246 | 8 days |
| 1-10 (hourly) | 0.0400 | 13 days |
| 1-5 (salary) | 0.0400 | 13 days |
| 5-10 (salary) | 0.0540 | 18 days |
| 10+ (hourly) | 0.0461 | 15 days |
| 10+ (salary) | 0.0615 | 20 days |

Although Employees begin accruing Accrued PTO on the first day of employment, they are not permitted to use Accrued PTO until completion of a 90-day introductory period. On the Employee's anniversary date, the Employee may rollover up to 56 hours of earned and unused accrued vacation hours. The Employee's anniversary date is based on their date of hire (or if the individual is already an Employee, the date the Employee becomes a full-time Employee). If the Employee has taken 40 hours or more Accrued PTO during a year, any time above 56 hours in

earned and unused Accrued PTO for the year is cashed out at 60% of the Employee's base pay rate. If the Employee has not taken 40 hours or more Accrued PTO during a year, the Employee must either use up to 40 hours or those hours of Accrued PTO will be forfeited by the Employee. Unused pro-rated Accrued PTO is paid to an Employee upon termination. Unused pro-rated Accrued PTO is also paid to an Employee upon resignation or retirement, subject to the Employee providing proper notice of resignation in accordance with the Debtors' internal policies.

18. Full-time Employees are also awarded paid sick leave and, in special circumstances, personal days. Under the Debtors' sick leave policy, full-time Employees also accrue sick leave at a rate of 1.85 hours per bi-weekly pay period. Eligible Employees begin to accrue sick leave on the first day of employment but may not use earned sick leave until completion of a 90-day introductory period. Personal days are offered at the Debtors' discretion in special situations for Employees who require time off unexpectedly. Employees must be employed for over a year to be eligible for the Debtors' personal day program. Personal days and sick leave are not paid out to Employees upon resignation, retirement or termination.

19. As of the Petition Date, the Debtors estimate that, in total, the value of all accrued and unpaid prepetition Accrued PTO is approximately $780,000. The Debtors believe that continuing to honor Accrued PTO in accordance with prior practice is essential to maintaining Employee morale during these chapter 11 cases. Further, the policies are broad-based programs upon which all Employees have come to depend, and the continuation of such programs will not create any material cash flow obligations beyond the Debtors' normal payroll obligations. Accordingly, the Debtors request authority to honor all prepetition Accrued PTO if and when it comes due in the ordinary course, and continue to honor all postpetition Accrued PTO in the ordinary course of business.

### E. Reimbursable Expenses and Credit Card Obligations.

20. Prior to the Petition Date and in the ordinary course of business, the Debtors reimbursed certain Employees for approved expenses incurred on behalf of the Debtors in the scope of their employment ("Reimbursable Expenses"). Reimbursable Expenses include travel, lodging, transportation, mileage, meals and other miscellaneous expenses. As of the Petition Date, the Debtors estimate that they currently owe approximately $1,000 on account of accrued and unpaid Reimbursable Expenses to Employees.

21. In addition, the Debtors maintain credit cards (the "Commercial Credit Cards") to be used in connection with Employees' day-to-day job functions and travel expenses. These Commercial Credit Cards are held by select employees in leadership positions. Employees may use the Commercial Credit Cards to pay for job-related expenses. All Commercial Credit Cards issued by the Debtors to their Employees have detailed restrictions on permissible expenditures, and Employees are responsible for any non-reimbursable amounts charged to the Commercial Credit Cards. The obligations arising under the Commercial Credit Cards are paid directly by the Debtors. The Debtors estimate that they incur obligations under the Commercial Credit Cards of approximately $200,000 per month (the "Commercial Credit Card Obligations"). As of the Petition Date, the Debtors estimate that they owe approximately $135,000 in outstanding Commercial Credit Card Obligations.

22. The Debtors seek authority to satisfy all prepetition obligations related to the Reimbursable Expenses and Commercial Credit Card Obligations, as and when they arise, in the ordinary course of business.

**F.     Benefits Programs**

23.     In the ordinary course, the Debtors maintain various benefits plans, policies, and programs (the "Benefits Programs", and all amounts required under or relating thereto, the "Benefits Obligations").  The Benefits Programs generally fall into the following categories: (i) medical, dental, and vision benefits; (ii) 401(k) contributions; (iii) workers' compensation benefits; and (iv) certain other miscellaneous benefits programs, such as life insurance, short and long-term disability programs, and employee discounts (each as discussed in further detail below).

24.     By this Motion, the Debtors request authority to maintain the Benefits Programs in the ordinary course of business and to pay all Benefits Obligations, whether related to the period before or after the Petition Date.  As of the Petition Date, the Debtors estimate that the amount of accrued but unpaid Benefits Obligations, including administrative fees, is approximately $106,000, as detailed below:

> i.  **Health Insurance Programs:** The Debtors maintain, and eligible Employees may participate in, a number of health insurance programs, including (a) medical plans through CIGNA provided by Luminare Health Benefits, Inc., (b) dental insurance through AETNA provided by Luminare Health Benefits, Inc. and vision insurance through Davis Vision, (c) a health flexible spending account and a dependent care flex spending account, and (d) arrangements with three Employees to make partial payment for premiums on these Employees' private health insurance plans in a manner that reduces the Debtors' costs versus coverage on the Debtors' medical insurance plan (collectively, the "Health Insurance Programs").  As of the Petition Date, the Debtors estimate that they will owe approximately $78,000 on account of the Health Insurance Programs.
>
> ii. **401(k) Plan:** The Debtors maintain a retirement savings plan for the benefit of their Employees that satisfies the requirements of section 401(k) of the Internal Revenue Code (the "401(k) Plan") through JPMorgan.  Historically, the Debtors matched, on a discretionary basis, up to a percentage of each Employees' annual income that is contributed to the 401(k) Plan, based on each Employees' years of service (the "401(k) Matching Contributions").  The Debtors may also elect, in their discretion, to make a "profit sharing" contribution to the 401(k) Plan (the "Profit Sharing Contributions").  The Debtors are not currently making 401(k) Matching Contributions or Profit Sharing Contributions. Accordingly, as of the Petition Date, the Debtors do not

9

    owe any outstanding 401(k) Matching Contributions or Profit Sharing Contributions.

  iii. **Workers' Compensation:** The Debtors maintain workers' compensation insurance as required by applicable state laws (the "Workers' Compensation Program"). The Debtors pay a premium every ten months in connection with the Workers' Compensation Program of approximately $126,000. The Debtors pay this premium pursuant to a monthly payment plan. As of the Petition Date, the Debtors estimate that they owe approximately $13,000 for the monthly premium payment in connection with the Workers' Compensation Program.

  iv. **Insurance Coverage:** The Debtors provide life insurance, accidental death and dismemberment insurance, and long- and short-term disability insurance coverage to eligible Employees through The Hartford ("Insurance Coverage"), on an Employee-paid basis. The average annual cost of the Insurance Coverage is approximately $180,000 excluding voluntary products. As of the Petition Date, the Debtors estimate that they owe approximately $15,000 in connection with Insurance Coverage.

  v. **Paid Leave:** The Debtors offer paid leave to regular-full time employees for holidays, bereavement, sick leave, jury duty and witness duty. As of the Petition Date, the Debtors do not believe they have any outstanding obligations under the leave programs, however, the Debtors seek to honor such programs in the ordinary course going forward.

  vi. **Employee Discounts:** The Debtors offer full-time Employees an employee discount of the lesser of (i) 50% off the retail price of products or (ii) the maximum discount offered to the Debtors' direct market retailers for products purchased through the Debtors. Invoice amounts for products purchased with an employee discount are forwarded to the Debtors' Human Resources department for immediate posting and the appropriate deduction is taken in the next payroll. All employee discount purchases are non-returnable. The Debtors request authority to continue to honor the employee discount purchase policy in the ordinary course.

  **G.** **Independent Contractors**

25. The Debtors also employ approximately 40 independent contractors in the ordinary course of business. The independent contractors provide a variety of services to the Debtors, including, marketing, tax, programming, and sales. In particular, Debtor Diamond Select Toys & Collectibles, LLC ("DST"), employs approximately 37 independent contractors who provide freelance work, including sculpting, painting and drawing DST's products. The Debtors'

independent contractors are typically paid on a per-project basis with monthly payments fluctuating depending on the Debtors' current projects. As of the Petition Date, the Debtors owe the independent contractors in the aggregate $70,000 (the "Contractor Obligations", and together with the Employee Obligations, the "Workforce Obligations"), all of which will become due and owing during the Interim Period. The Debtors seek authority, but not direction, to satisfy the prepetition Contractor Obligations in the ordinary course of business.

### Basis for Relief

**I.  The Court should authorize the Debtors to honor the Workforce Obligations.**

26. The Debtors' business depends upon reliable and loyal Employees and independent contractors. Honoring the Workforce Obligations and Employee Programs is essential to ensure reliability and loyalty among the Debtors' workforce. Failing to promptly honor such obligations will create doubt and concern among the Employees, and could lead to a significant loss of Employees at an already challenging time. Significant loss of Employees at this critical time would immediately and irreparably harm the Debtors' ability to maintain operations, to the detriment of all parties.

27. Therefore, the Debtors seek the relief requested in this Motion on several bases under the Bankruptcy Code. First, the Debtors should be permitted to pay these obligations because many are or may be entitled to priority under section 507 of the Bankruptcy Code. Second, the Debtors should be permitted to pay and remit amounts due on account of Withholding Obligations because most if not all such amounts are not property of the Debtors' estates under section 541 of the Bankruptcy Code. Third, the Debtors should be permitted to satisfy Workforce Obligations in the ordinary course of business pursuant to section 363 of the Bankruptcy Code. Finally, honoring the Workforce Obligations is a sound exercise of the Debtors' business judgment, and permissible under the "doctrine of necessity."

**A.     Certain of the Workforce Obligations are entitled to priority treatment.**

28.     Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, certain of the unpaid prepetition Workforce Obligations—including the Wage Obligations, Accrued PTO, 401(k) Matching Contributions and Contractor Obligations—are entitled to priority treatment in an amount up to the Priority Cap for each individual Employee. As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims, given priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, for (a) wages, salaries or commissions, including vacation, severance, and sick leave pay earned by an individual and (b) contributions to an employee benefit plan).

29.     Accordingly, granting the relief sought with respect to compensation will affect only the timing of payments to Employees and will not have any material negative impact on recoveries for general unsecured creditors.  Indeed, the Debtors submit that payment of the Workforce Obligations up to the Priority Cap at this time enhances value for the benefit of all interested parties.  Finding, attracting, and training new qualified talent would be difficult and would most likely require higher salaries and more comprehensive compensation packages than are currently provided to the Employees.

**B.     Many if not all amounts owed on account of Withholding Obligations are not property of the Debtors' estates under section 541 of the Bankruptcy Code.**

30.     As discussed above, the Debtors seek authority to pay the Withholding Obligations to the appropriate entities.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' wages.  These withholdings include child support and alimony payments, which are not considered

12

property of the Debtors' estates because the Debtors have withheld such amounts from Employees' wages on another party's behalf. *See* 11 U.S.C. §§ 541(b)(7) and (d).

31. Similarly, federal and state laws require the Debtors to withhold federal, state and local income taxes from Employees' paychecks and to pay such amounts to the appropriate taxing authority. *See* 26 U.S.C. §§ 6672 and 7501(a); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes); *see also Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the bankruptcy estate). These unremitted Withholding Obligations are also not property of the Debtors' estates and, accordingly, the Debtors request that the Court authorize them to transmit the unremitted Withholding Obligations to the proper parties in the ordinary course of business.

### C. The Debtors may honor and pay Workforce Obligations in the ordinary course of business pursuant to section 363 of the Bankruptcy Code.

32. The Debtors' ability to compensate Employees and independent contractors in the ordinary course of business is consistent with section 363(c) of the Bankruptcy Code. *See* 11 U.S.C. § 363(c)(1) (providing that, so long as "the business of the debtor is authorized to be operated under [section 1108 of the Bankruptcy Code] and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business, without notice or a hearing"); 11 U.S.C. § 1108 (providing that a debtor in possession, as trustee, may operate the debtor's business unless a court orders otherwise).

13

Accordingly, the Debtors request that the Court authorize them to pay Workforce Obligations in the ordinary course, even to the extent such obligations accrued prepetition.

> **D. Paying the Workforce Obligations is a sound exercise of the Debtors' business judgment.**

33. Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of prepetition claims when such payment is necessary for the debtor's survival during chapter 11."); *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "[i]f payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized'")); *In re Ionosphere Clubs, Inc.*, 98 B.R. 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *see also In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 175). In authorizing payments of prepetition obligations, courts have relied on several legal theories, including those rooted in sections 1107(a), 1108, 363(b) and 105(a) of the Bankruptcy Code.

34. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, a debtor in possession is a fiduciary charged with "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value," which, in certain instances, can be fulfilled "only . . . by the preplan satisfaction of a prepetition claim." *Id.* Indeed, the *CoServ* court specifically noted that satisfaction of

14

prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

35. Consistent with a debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. *See, e.g.*, *In re Ionosphere Clubs*, 98 B.R. at 175 (discussing prior order authorizing payment of prepetition wage claims pursuant to section 363(b) and noting that relief is appropriate where payment is needed to "preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale.").

36. Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See Just for Feet*, 242 B.R. at 825–26. Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh*, 657 F.2d at 581 (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).

37. These standards are satisfied here. The Debtors submit that the payment of the Workforce Obligations represents a sound exercise of the Debtors' business judgment and is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code. Paying prepetition Workforce Obligations will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption. Indeed, the Debtors believe that without the relief requested herein, Employees will likely seek alternative employment opportunities. Such a development would deplete the Debtors' workforce, thereby hindering the Debtors' ability to operate their businesses and maximize the value of their estates during this chapter 11 process. The loss of valuable Employees and the resulting need to recruit new personnel (and the costs attendant thereto) would be distracting at this crucial time when the Debtors need to focus on administering a value-maximizing chapter 11 process. Accordingly, the Debtors must do their utmost to retain their workforce by, among other things, continuing to honor all wage, benefits, and related obligations, including the prepetition Workforce Obligations.

## II. Cause exists to authorize the Debtors' financial institutions to honor checks and electronic fund transfers.

38. The Debtors believe they have sufficient funds to pay the amounts sought to be paid in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and debtor in possession financing. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment made with respect to the Workforce Obligations. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that this Court authorize all applicable financial institutions, when

requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect to the Workforce Obligations.

### Waiver of Memorandum of Law

39. Pursuant to rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

### Reservation of Rights

40. Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (i) an admission as to the validity, amount or priority of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (v) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (vi) a concession by the Debtors that any lien (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion is valid, and the Debtors expressly reserve their right to contest the extent, validity, or perfection or seek avoidance of any such lien.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

41. Bankruptcy Rule 6003 empowers the Court to issue an order granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief is "needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, entry of an order granting this Motion is integral to the Debtors' ability to successfully transition into chapter 11 and to avoid

disruptions to the Debtors' operations, to the detriment of the Debtors' estates, Employees and creditors. Moreover, the Debtors' Employees rely on the Debtors' timely payment of their compensation and provision of benefits for their livelihood. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Waiver of Bankruptcy Rule 6004(h)

42. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[u]nless the court orders otherwise, an order authorizing the use, sale or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As described above, the relief requested in this Motion is necessary for the Debtors to preserve the value of their estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

### Notice

43. Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to JPMorgan Chase Bank, N.A., (iv) the United States Attorney for the District of Maryland; (v) the offices of the attorneys general for the states in which the Debtors operate; (vi) the Internal Revenue Service; (vii) Bank of Montreal; (viii) ADP; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit the no other or further notice is necessary.

**Conclusion**

WHEREFORE, the Debtors respectfully request the entry of the Proposed Order granting the relief requested herein and such other and further relief as is just and proper.

Dated: January 14, 2025    **SAUL EWING LLP**

By: */s/ Jordan D. Rosenfeld*
Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (*pro hac vice* pending)
Adam H. Isenberg (*pro hac vice* pending)
Turner N. Falk (*pro hac vice* pending)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
      adam.isenberg@saul.com
      turner.falk@saul.com

-and-

Mark Minuti (*pro hac vice* pending)
Paige N. Topper (*pro hac vice* pending)
Nicholas Smargiassi (*pro hac vice* pending)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
      paige.topper@saul.com
      nicholas.smargiassi@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*