IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO ADMINISTER EXISTING CUSTOMER PROGRAMS IN THE ORDINARY COURSE OF BUSINESS**

The above-captioned debtors and debtors in possession (the "Debtors"), by and through their undersigned proposed counsel, respectfully move (the "Motion") as follows:

**Relief Requested**

1. The Debtors respectfully seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order," and together with the Interim Order, the "Proposed Orders"), (i) authorizing, but not directing the Debtors to (i) administer the Customer Programs (as defined below) in the ordinary course of business, (ii) continue, modify or terminate the Customer Programs in the Debtors' discretion, in the ordinary course of business and without further application to this Court, and (iii) continue paying the Processing Obligations (as defined below) in the ordinary course of business.

**Jurisdiction and Venue**

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland.

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

53100089.17 01/14/2025

This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

4. On the date hereof (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

5. A description of the Debtors' business, the reasons for commencing the Chapter 11 Cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petition and First Day Relief* (the "First Day Declaration") filed concurrently with this Motion and incorporated herein by reference.

**The Debtors' Customer Programs**

6. Debtor Diamond Comic Distributors, Inc. ("DCD"), is a premier distributor of comic books, graphic novels, role-playing and tabletop game books, collectable card games and merchandise related thereto.  Debtor DCD's customers are primarily the retailers or wholesalers of these products.  DCD's customers generally order products from DCD in quantity to stock their retail or wholesale locations.

7. Debtor Diamond Select Toys & Collectibles, LLC ("DST"), is a producer of collectible toys and merchandise, specializing in resin statues, replicas and action figures.  Debtor

2

DST's customers are distributors and individual consumers with DCD being its primary customer.

8. The Debtors provide certain accommodations to their customers to attract and maintain positive customer relationships (such programs, as described below, collectively the "Customer Programs"). The Customer Programs promote customer satisfaction and inure to the goodwill of the Debtors' business and the value of their brand. The Debtors believe that their ability to continue the Customer Programs and to honor any obligations thereunder in the ordinary course of business is necessary to retain their reputation, attract new customers, and meet competitive market pressures. The Debtors further believe it is critical that they maintain positive customer relationships and their reputation for reliability to ensure that their customers continue to place and pay for orders with the Debtors during the pendency of these chapter 11 cases. Because maintaining their reputation and the goodwill of customers is important to the Debtors' ability to efficiently administer their estates during the pendency of these chapter 11 cases, maintaining the Customer Programs is of vital importance.

9. By this motion, the Debtors seek authority, but not direction, to continue to honor all customer-related obligations in the ordinary course of business and to pay any prepetition obligations associated therewith.

**A.    Discounts**

10. Eligible customers are provided a discount off retail price based on tiered amounts of products purchased. The Debtors assign the discount based on the anticipated volume of products a customer will purchase. At the customer's request, and in the Debtors' discretion, the discount may be adjusted based on changes to the volume of the customer's orders.

11. The discounts allow the Debtors to maintain customer satisfaction and loyalty, which, in turn, retains the customer base and stabilizes the flow of cash receipts into the business.

53100089.17 01/14/2025

The Debtors' ability to continue the discounts in the ordinary course of business is important to the Debtors' reputation and the uninterrupted distribution of their products to customers. Without the ability to continue offering discounts, the Debtors expect that customers may be unwilling to transact with the Debtors or purchase certain products, which could lead to a decline in revenues, the ultimate cost of which would be borne by the Debtors' estates.

12.     The Debtors request authority to continue to provide and honor the discounts, including by satisfying any prepetition price adjustments that were agreed upon with their customers and accommodations on a postpetition basis, in a manner consistent with the Debtors' historical practice.

**B.     Returns and Product Credit**

13.     The Debtors may issue credit to their customers under certain circumstances, including for products that have been damaged prior to delivery or become unavailable after an order is placed. When a product is either damaged and returned or unavailable, the customer receives either a replacement product or a credit on its next invoice.

14.     In addition to credits for damaged or unavailable products, for the Debtors' national sales channel, which distributes products to major retailers including Barnes & Noble, Amazon, Walmart, and Walgreen's, the Debtors accept eligible returns of books and graphic novels and credit the customer for the price of the returned item on the customer's next invoice.

15.      For the Debtors' direct sales channel, which primarily distributes to mom-and-pop comic book stores, the Debtors accept "affidavit returns." Publishers sometimes offer returns on a limited number of new products as a promotional marketing device. In those instances, the Debtors pass that promotion through to their customers, accepting returns of unsold copies and crediting the customer on their next invoice. The Debtors then collect the promotional credit from

4

the publisher.  In this way, the Debtors administer the affidavit return program without a net impact on their profits.

16. The Debtors believe that as of the Petition Date their outstanding obligations owed in connection with credits for damaged or unavailable products, affidavit returns and returnable products are de minimis.  The Debtors request authority to honor the credits for returned products in the ordinary course of business whether arising before or after the Petition Date, consistent with the Debtors' historical practices.

**C.     CGA's Premium Membership**

17. Collectible Grading Authority ("CGA"), a division of Debtor DCD, offers its customers a one-year premium membership for a $150 fee.  Premium members are entitled to special discounts, a $50 sign-up bonus, a welcome box of branded merchandise, and the ability to accumulate reward points that may be redeemed for credit.  Membership is valid for one year.

18. CGA's premium membership does not generate any outstanding obligations for the Debtors because the annual fee covers the member bonus and welcome box, and all other benefits take the form of credits or discounts that can only be applied to future purchases.  The Debtors request authority to honor the premium membership in the ordinary course of business.

**D.     Gentle Giant Premier Guild Program**

19. Gentle Giant, a division of Debtor DST, offers a one-year customer membership program.  Customers have the option to become a member of Gentle Giant's "Premier Guild" at either the "Apprentice" level (for $100 a year) or "Master" level (for $150 a year).  Members are granted, among other things, access to exclusive products, discounts on other products, sneak peeks of future products, and, for Master-level members, the ability to pre-order products before other customers.

20. The Premier Guild membership does not generate any outstanding obligations for the Debtors because the annual fee covers the gift products, and all other benefits take the form of credits or discounts that can only be applied to future purchases. The Debtors request authority to honor the Premier Guild membership in the ordinary course of business.

E.  **FandomWorld's Rewards and Referral Programs**

21. Debtor DCD offers a rewards and referral program for its U.S. customers that purchase items from DCD's FandomWorld business segment. Individual customers receive rewards points for purchases, which can be used as credits toward future purchases. FandomWorld's individual and retail customers may also take advantage of FandomWorld's referral program whereby the customer receives credits toward future purchases for directing consumers to FandomWorld who then complete a purchase.

22. FandomWorld's rewards and referral programs have a de minimis financial impact on DCD, but are nevertheless an important part of maintaining customer loyalty. The Debtors request authority to honor FandomWorld's rewards and referral program in the ordinary course of business.

F.  **Credit Card and Other Payment Processors**

23. In addition to cash, the Debtors accept a variety of payment methods from customers, including checks, ACH transactions or equivalents, and PayPal (collectively, the "Non-Cash Payments"). To process Non-Cash Payments, the Debtors are party to certain agreements (the "Payment Processing Agreements") with certain payment processors, including Authorize.net and PayPal (the "Payment Processing Companies"). Pursuant to the Payment Processing Agreements, the Debtors generally receive the net customer sales less any chargebacks and processing fees charged. The processing fees charged by each Payment Processing Company (the

6

"Processing Fees") are set off from the funds that are remitted to the Debtors on account of the Non-Cash Payments on a monthly basis. The additional fees owing to the Payment Processing Companies that are customarily charged with every credit card and debit card transaction (the "Interchange Rates" and together with the Processing Fees the "Processing Obligations") are generally set off from the funds that are remitted to the Debtors on account of the Non-Cash Payments on a daily basis.

24. The Debtors' continued acceptance of Non-Cash Payments is essential to the administration of the Debtors' estates because the majority of the Debtors' sales are made using Non-Cash Payments. Refusing to accept Non-Cash Payments would have a severe negative effect on the Debtors' efficient administration of their estates during the pendency of these chapter 11 cases—the cost of which would be borne by their estates and all stakeholders. To avoid disrupting these vital payment processing services, the Debtors seek authority to continue paying the Processing Obligations in the ordinary course of business pursuant to the terms of the Payment Processing Agreements, and request that the Court authorize the Payment Processing Companies to continue to set off the Processing Obligations against amounts remitted to the Debtors, whether arising before or after the Petition Date, in a manner consistent with the Debtors' historical practices.

## BASIS FOR RELIEF REQUESTED

**A.     Continuing to honor the Customer Programs in the ordinary course is warranted under sections 105(a) and 363(b) of the Bankruptcy Code.**

25. Under section 363(b)(1) of the Bankruptcy Code, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). This provision grants courts broad flexibility to authorize a debtor to pay prepetition claims where a sound business purpose exists. *See, e.g.*, *In re Ionosphere Clubs,*

*Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of certain prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).

26. In addition, under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Pursuant to section 105(a) and the doctrine of necessity, the bankruptcy court may exercise its broad equitable powers to authorize the payment of prepetition obligations when such payment is essential to the continued operation of a debtor's business. *See In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (finding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *see also In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 175).

27. Bankruptcy courts regularly rely on their authority under section 105(a) and the doctrine of necessity to grant debtors the discretionary authority to pay certain prepetition claims "if the movant establishes a good and sound business reason for the pre-confirmation proposed use, sale, or lease of the property." *In re Floyd*, 2020 WL 6164328, at *2 (Bankr. E.D.N.C. Oct. 20, 2020) (citing *In re Taylor*, 198 B.R. 142, 156–57 (Bankr. D.S.C. 1996)); *In re Synteen Techs., Inc.*, 2000 WL 33709667, at *2 (Bankr. D.S.C. Apr. 14, 2000) ("equitable powers specified in § 105(a) give bankruptcy courts the permission to allow payment of a pre-petition claim 'when

essential to the continued operation of the debtor.'") (quoting *In re NVR L.P.*, 147 B.R. at 127).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).

28. Continuing to administer the Customer Programs without interruption during these chapter 11 cases will help preserve and expand the Debtors' valuable customer relationships and goodwill, that will inure to the benefit of all the Debtors' creditors and stakeholders.  Failure to honor the Customer Programs could place the Debtors at a competitive disadvantage in the marketplace, amplifying the negative effect of any customer uncertainty that may arise from these chapter 11 cases.  If the Debtors are unable to continue the Customer Programs postpetition and satisfy obligations related thereto in the ordinary course of business, then the Debtors risk alienating customers and could suffer corresponding losses in customer loyalty and goodwill.  Loss of customer loyalty at this early stage in the cases could significantly impair the Debtors' prospects for value-maximizing chapter 11 cases.  Further, such uncertainty could erode the Debtors' hard-earned customer loyalty, which, in turn, could adversely impact its ability to successfully administer these chapter 11 cases.

29. For the foregoing reasons, the benefits of continuing to honor the Customer Programs outweigh the minimal associated costs.  As such, the Debtors respectfully request entry of the Proposed Orders authorizing the Debtors to continue to honor the Customer Programs in the ordinary course of business.

**B.    Cause exists to authorize the Debtors' financial institutions to honor checks and electronic fund transfers.**

30. The Debtors believe they have sufficient funds to pay the amounts sought to be paid

9

in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and debtor in possession financing. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the prepetition Customer Programs. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that this Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## Waiver of Memorandum of Law

20. Pursuant to rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

## Reservation of Rights

21. Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (i) an admission as to the validity, amount or priority of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (v) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (vi) a concession by the Debtors that any lien (contractual, common

law, statutory, or otherwise) satisfied pursuant to this Motion is valid, and the Debtors expressly reserve their right to contest the extent, validity, or perfection or seek avoidance of any such lien.

### The Requirements of Bankruptcy Rule 6003 are Satisfied

22. Bankruptcy Rule 6003 empowers the Court to issue an order granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief is "needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, entry of an order granting this Motion is integral to the Debtors' ability to successfully transition into chapter 11, preserve the ongoing value of their operations, and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

23. To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a). The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[u]nless the court orders otherwise, an order authorizing the use, sale or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As described above, the relief requested in this Motion is necessary for the Debtors to preserve the value of their estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

**Notice**

24. Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to JPMorgan Chase Bank, N.A., (iv) the United States Attorney for the District of Maryland; (v) the offices of the attorneys general for the states in which the Debtors operate; (vi) the Internal Revenue Service; (vii) Bank of Montreal; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit the no other or further notice is necessary.

*[Remainder of Page Left Intentionally Blank]*

**Conclusion**

WHEREFORE, the Debtors respectfully request the entry of the Proposed Orders, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: January 14, 2025                          **SAUL EWING LLP**

By: */s/ Jordan D. Rosenfeld*
Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (*pro hac vice* pending)
Adam H. Isenberg (*pro hac vice* pending)
Turner N. Falk (*pro hac vice* pending)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
         adam.isenberg@saul.com
         turner.falk@saul.com

-and-

Mark Minuti (*pro hac vice* pending)
Paige N. Topper (*pro hac vice* pending)
Nicholas Smargiassi (*pro hac vice* pending)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
         paige.topper@saul.com
         nicholas.smargiassi@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*