# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
# (Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF SHIPPERS AND FREIGHT FORWARDERS, AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (the "Debtors"), by and through their undersigned proposed counsel, respectfully move (the "Motion") as follows:

### Relief Requested

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order," and together with the Interim Order, the "Proposed Orders"), (i) authorizing, but not directing, the Debtors to pay certain prepetition claims of Shippers and Freight Forwarders (as defined herein) in an amount not to exceed $565,000 on an interim basis and $585,000 on a final basis; (ii) authorizing, but not directing, the Debtors to continue to honor obligations to Shippers and Freight Forwarders on a postpetition basis in the ordinary course of business and consistent with historical practice; and (iii) granting related relief.

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

53100040.8 01/14/2025

**Jurisdiction and Venue**

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

4. On the date hereof (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

5. A description of the Debtors' business, the reasons for commencing the chapter 11 cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petition and First Day Relief* (the "First Day Declaration") filed concurrently with this Motion and incorporated herein by reference.

**The Debtors' Supply, Delivery and Distribution System**

6. The Debtors are distributors of comic books, graphic novels, role-playing and tabletop game books, collectable card games and related merchandise. The Debtors' customers range from major retail customers, including Amazon, Target, Walmart, Barnes & Noble,

Scholastic, and Walgreen's, to smaller mom-and-pop comic book stores. As the Debtors transition into chapter 11, their primary goal is to preserve the value of the Debtors' assets. Ensuring the timely delivery from vendors, and the fulfillment of pending and future customer orders are key to meeting this goal. Indeed, in the normal course of operations, the Debtors heavily rely on a variety of shippers, delivery companies, and similar service providers (collectively, the "Shippers") to deliver inbound products from their vendors, and to deliver outbound orders to their customers. The Debtors also rely on certain freight forwarders to manage shipments (collectively, the "Freight Forwarders"). This distribution system is critical to meeting customer orders that are time-sensitive based on the need to place newly-released products in stores and maintain customers' stock of key products. Failure to maintain a functioning and reliable delivery network will negatively impact customer goodwill and cause customers to switch to competitors, thus harming the Debtors' operations and the value of their assets.

## Payments to Shippers and Freight Forwarders

7.      The Debtors expect that, as of the Petition Date, certain Shippers and Freight Forwarders may hold claims against the Debtors (collectively, the "Shipping Claims"). Some of the Debtors' Shippers and Freight Forwarders may also functionally act as warehousemen, to the extent that a particular Shipper warehouses the Debtors' products in its trucks or at its facilities.

8.      The Debtors' distribution system is an integrated network that is dependent upon the continued use of their existing Shippers and Freight Forwarders. Because the Debtors' business depends on the constant supply of both inbound products and outbound orders to customers through Shippers and Freight Forwarders, even minor disruptions to the supply of products could be detrimental to the going concern value of the Debtors' business.

9.      Under some nonbankruptcy laws, Shippers or Freight Forwarders may have a lien, or may be able to assert liens, on the goods in their possession to secure payment of the charges or

3

expenses incurred in connection with the Shipping Claims.[2] In the event these Shipping Claims remain unpaid, the Shippers and Freight Forwarders could attempt to assert liens or otherwise impede the Debtors' use of property until their claims are satisfied and their liens redeemed.

10. The Debtors anticipate that some Shippers and Freight Forwarders will demand immediate payment from the Debtors. Even absent a valid lien, a Shipper's or Freight Forwarder's mere possession (and retention) of the Debtors' products could severely disrupt, and potentially cripple, the Debtors' operations because of the time sensitive nature of the delivery timeline to the Debtors' customers. Additionally, pursuant to section 363(e) of the Bankruptcy Code, the Shippers and Freight Forwarders may be entitled to adequate protection of any valid possessory lien, which would drain estate assets.

11. The Debtors believe that the cost of replacing or reconstructing their existing supply chain network far exceeds the amount of Shipping Claims outstanding as of the Petition Date. If the Shippers or Freight Forwarders were to assert liens or refuse to deliver products, the cost of this disruption to the Debtors' estates would likely far outweigh the outstanding Shipping Claims.

12. Accordingly, the Debtors seek to prevent the breakdown of their delivery network by requesting authority to pay certain prepetition Shipping Claims, as they become due and payable, that the Debtors determine are necessary or appropriate to: (a) obtain release of critical or valuable products that may be subject to liens; (b) maintain a reliable, efficient, and smooth distribution system; and (c) induce critical Shippers and Freight Forwarders to continue to carry products and to make timely delivery. The Debtors shall only pay undisputed prepetition Shipping

---

[2] For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that a "carrier has a lien on the goods covered by a bill of lading for charges subsequent to the date of its receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to [law]." See U.C.C. § 7-307(1) (2003).

Claims that the Debtors have determined, in their business judgment, (i) are necessary or appropriate and (ii) provide a benefit to the Debtors' estates and creditors that exceeds the costs to commence an action to compel turnover of such products and the associated delays of such action. The Debtors request authority to make payments on account of prepetition Shipping Claims up to an aggregate amount of $565,000 on an interim basis and $585,000 on a final basis. The Debtors also seek authority to continue paying the Shipping Claims in the ordinary course of business.

13. The Debtors submit that the total proposed amount to be paid to the Shippers and Freight Forwarders is justified and reasonable compared to the importance and necessity of the delivery of the products and the losses the Debtors may suffer if their operations and the administration of their estates are disrupted. Moreover, in most cases, the Debtors do not believe that there are viable timely alternatives to the Shippers and Freight Forwarders that are to be paid pursuant to this Motion.

14. The Debtors further request that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment and to honor all electronic payment requests made by the Debtors related to the prepetition obligations described herein, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date. The Debtors further request that all such banks and financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

## Basis for Relief

**A.     The Court may authorize payment of the Shipping Claims under section 363(b) of the Bankruptcy Code.**

15.     Bankruptcy Code section 363(b) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under section 363(b) of the Bankruptcy Code. *See, e.g., See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to pay prepetition wages); *In re James A. Phillips, Inc.,* 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants). As discussed more fully herein, the Debtors' request to pay the Shipping Claims meets this standard because, given the nature of the Debtors' business, the failure to satisfy the Shipping Claims could have a material adverse effect on the Debtors' day-to-day operations.

**B.     The Court may rely on its general equitable powers to authorize payment of the Shipping Claims.**

16.     Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see also In re Just For Feet, Inc.,* 242 B.R. 821, 824 (Bankr. D. Del. 1999) (acknowledging that "[c]ertain pre-petition claims . . . may need to be paid to facilitate a successful reorganization" and that "[s]ection 105(a)

6

of the [Bankruptcy] Code provides a statutory basis for the payment of pre-petition claims"). Under section 105(a), courts may permit preplan payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business and, in particular, where nonpayment of a prepetition obligation would trigger a withholding of services essential to the debtors' business reorganization plan. *See In re Ionosphere Clubs, Inc.*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor); *In re Synteen Techs., Inc.*, 2000 WL 33709667, at *2 (Bankr. D.S.C. Apr. 14, 2000) ("equitable powers specified in § 105(a) give bankruptcy courts the permission to allow payment of a pre-petition claim 'when essential to the continued operation of the debtor.'") (quoting *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992)).

17. Payment of the Shipping Claims is imperative to the Debtors' continued operations and ability to maximize the value of their estates for the benefit of their creditors. Moreover, paying the Shipping Claims would permit the Debtors to maintain the value of the business, their client relations, and their revenue. Therefore, the Court should exercise its equitable power to grant the relief requested in this Motion.

C. **The doctrine of necessity supports payment of the Shipping Claims.**

18. The "doctrine of necessity" further supports the relief requested in this Motion. In a long line of well-established cases, federal courts have consistently permitted under the "doctrine of necessity" the postpetition payment of prepetition obligations when necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors when essential to the continued operation of the debtor. *See, e.g.*, *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286, 311 (1882) (articulating legal theory later termed "doctrine of necessity" or "necessity of payment rule" and holding that payment of pre-receivership claim before reorganization was permitted to

prevent stoppage of crucial business relations); *S. Ry. Co. v. Flournoy*, 301 F.2d 847, 852 (4th Cir. 1962) ("The principle of necessity of payment [espoused in Miltenberger] has since been carried into different factual surroundings as the basis for granting superiority to business operating accounts."); *In re Lehigh & N.E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (interpreting "necessity of payment" doctrine to mean that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of corpus").

19.    Today, the rationale for the necessity of payment rule, the rehabilitation of a debtor in reorganization cases, is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176; *see also In re Just For Feet, Inc.*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.,* 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) *(citing In re Chateaugay Corp.,* 80 B.R. 279 (S.D.N.Y. 1987) ("A general practice has developed, however, where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment")); *In re Eagle-Picher Indus., Inc.,* 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims as "necessary to avert a serious threat to the Chapter 11 process"); *see also In re NVR L.P.*, 147 B.R. at 127 (citing *Ionosphere Clubs*, 98 B.R. at 175).

20.    Bankruptcy courts regularly rely on their authority under section 105(a) and the doctrine of necessity to grant debtors the discretionary authority to pay certain prepetition claims "if the movant establishes a good and sound business reason for the pre-confirmation proposed use, sale, or lease of the property." *In re Floyd*, 2020 WL 6164328, at *2 (Bankr. E.D.N.C. Oct.

20, 2020) (citing *In re Taylor*, 198 B.R. 142, 156–57 (Bankr. D.S.C. 1996)).

21. The flexible approaches developed by bankruptcy courts are particularly applicable where a prepetition creditor, here, the Shippers and Freight Forwarders, provide vital services to the Debtors that would be otherwise unavailable if the Debtors were unable to satisfy their prepetition obligations. As set forth above, the Debtors have determined, in the exercise of their sound business judgment, that payment of the Shipping Claims is essential to the continued operation of the Debtors' business and directly affects the viability of the Debtors' ongoing day-to-day operations. Thus, the Debtors submit that the relief requested herein is necessary to facilitate the Debtors' chapter 11 process and to ensure that the value of the Debtors' business as a going concern is preserved through the pendency of these chapter 11 cases.

22. Furthermore, pursuant to section 363(e) of the Bankruptcy Code, the Shippers and Freight Forwarders may be entitled to adequate protection of a valid possessory lien to the extent that the Debtors use or sell the estate property against which a Shipping Claim is asserted. Given that the value of such property will generally exceed the value of the related Shipping Claim, creditors will not be harmed, in fact, creditors will be benefited by the satisfaction of certain amounts owed to the Shippers and Freight Forwarders. Those payments will facilitate the use and sale of estate property against which liens may otherwise be asserted, helping to preserve the going-concern value of the Debtors' business and enabling the Debtors to smoothly transition into chapter 11.

23. Based on the foregoing, the Debtors respectfully submit that honoring the Shipping Claims of the Shippers and Freight Forwarders is necessary and appropriate under the circumstances.

**D.      Cause exists to authorize the Debtors' financial institutions to honor checks and electronic fund transfers.**

24.     The Debtors believe that they have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of Shipping Claims.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that this Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## Waiver of Memorandum of Law

25.     Pursuant to Rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

## Reservation of Rights

26.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (i) an admission as to the validity, amount or priority of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (v) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or

any other applicable law; or (vi) a concession by the Debtors that any lien (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion is valid, and the Debtors expressly reserve their right to contest the extent, validity, or perfection or seek avoidance of any such lien.

## The Requirements of Bankruptcy Rule 6003 Are Satisfied

27. Bankruptcy Rule 6003 empowers the Court to issue an order granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief is "needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, entry of an order granting this Motion is integral to the Debtors' ability to successfully transition into chapter 11 and to avoid disruptions to the Debtors' operations, to the detriment of the Debtors' estates, customers and creditors. Specifically, if the Shipping Claims are not paid, then the Debtors will be at risk for the business disruptions that would result from the Shippers and Freight Forwarders, among other things: (i) exercising state law rights and remedies with respect to the products, and (ii) refusing to the deliver the products to the Debtors or their customers. Addressing any potential action taken by the Shippers or Freight Forwarders would be costly, place an administrative burden on management, and divert management's attention from administering these chapter 11 cases. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Waiver of Bankruptcy Rule 6004(h)

28. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[u]nless the court orders otherwise, an order authorizing the use, sale or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As described above, the relief requested in this Motion is necessary for

the Debtors to preserve the value of their estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## Notice

29. Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to JPMorgan Chase Bank, N.A., (iv) the United States Attorney for the District of Maryland; (v) the offices of the attorneys general for the states in which the Debtors operate; (vi) the Internal Revenue Service; (vii) Bank of Montreal; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit the no other or further notice is necessary.

## Conclusion

WHEREFORE, the Debtors respectfully request the entry of the Proposed Orders, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: January 14, 2025                     **SAUL EWING LLP**

By: */s/ Jordan D. Rosenfeld*
Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (*pro hac vice* pending)
Adam H. Isenberg (*pro hac vice* pending)
Turner N. Falk (*pro hac vice* pending)
1500 Market Street, 38th Floor

12

Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
      adam.isenberg@saul.com
      turner.falk@saul.com

-and-

Mark Minuti (*pro hac vice* pending)
Paige N. Topper (*pro hac vice* pending)
Nicholas Smargiassi (*pro hac vice* pending)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
      paige.topper@saul.com
      nicholas.smargiassi@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*