**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered) |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF RAYMOND JAMES & ASSOCIATES, INC., AS THE DEBTORS' INVESTMENT BANKER, EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors"), hereby apply (the "Application") to the Court as follows:

**Relief Requested**

1. The Debtors respectfully seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing the Debtors to retain and employ Raymond James & Associates, Inc. ("Raymond James"), as their investment banker, effective as of the Petition Date (as defined below), in accordance with the terms and conditions set forth in that certain engagement letter, dated September 30, 2024, as amended on January 5, 2025 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit B**, (ii) approving the provisions of the Engagement Letter, including, but not limited to, the proposed compensation arrangement, under section 328(a) of the Bankruptcy Code, (iii) waiving certain information requirements, and (iv) granting related relief.

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

2. In support of this Application, the Debtors rely upon and incorporate by reference the declaration of Geoffrey Richards (the "Richards Declaration"), attached hereto as **Exhibit C**. In further support of this Application, the Debtors respectfully state as follows:

## Jurisdiction

3. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Application is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 105(a), 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

5. On January 14, 2025 (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the chapter 11 cases, and no committees have been appointed or designated.

6. A description of the Debtors' businesses and the reasons for commencing the chapter 11 cases are set forth in the *Declaration of Robert Gorin in Support of First Day Motions for Relief* [D.I. 20] (the "First Day Declaration"), which is incorporated herein by reference.

7. As set forth in the Richards Declaration, on September 30, 2024, the Debtors engaged Raymond James as investment banker. Since its engagement, Raymond James has worked closely with the Debtors and their other professionals and advisors to assist the Debtors in evaluating various strategies and financial alternatives. Specifically, Raymond James has assisted

the Debtors in analyzing their in- and out-of-court restructurings alternatives, obtaining post-petition financing, initiating a robust marketing process for a stalking horse bidder and other potential bidders, and preparing for the chapter 11 cases.  As a result of Raymond James's work to date, Raymond James has become well-acquainted with the Debtors' business operations and financial affairs, including the Debtors' current liquidity situation and financing requirements.

8. The Debtors believe that the services provided by Raymond James will continue to enhance the Debtors' efforts to maximize the value of their assets and permit the Debtors to navigate the proposed sale process in these cases most efficiently.  Raymond James has worked extensively and effectively with the Debtors' senior management to, among other things, analyze and market the Debtors' assets, and has gained valuable institutional knowledge regarding the Debtors' assets and business operations.  Given Raymond James's continued involvement in the Debtors' proposed sale process and its extensive experience providing investment banking services to financially distressed companies, the Debtors believe that Raymond James is well-suited to effectively and efficiently market the Debtors' assets in connection with the Debtors' proposed postpetition sale process.

9. Moreover, in providing prepetition services to the Debtors, Raymond James worked closely with the Debtors' senior management and their other professionals and advisors, on the one hand, and with the professionals and advisors of other major stakeholders, on the other hand, that will be involved in the chapter 11 cases.  Accordingly, Raymond James has developed relevant experience and expertise regarding the Debtors that (a) make Raymond James a natural selection as the Debtors' investment banker and (b) will assist Raymond James in providing effective and efficient services in the chapter 11 cases.

**Raymond James' Qualifications**

10. Raymond James is a subsidiary of Raymond James Financial, Inc. ("RJF"), a publicly traded (NYSE:RJF) full-service global investment banking firm offering investment banking, equity research, wealth management, institutional and private brokerage, and other service offerings to individual and institutional clients. RJF and its subsidiaries employ over 15,000 individuals in the United States alone, of which over 515 provide investment banking advisory services to firm clients. Since 2019, Raymond James has participated in 860 capital raises and completed more than 1,115 advisory assignments, including over 925 M&A buy-side or sell-side advisory assignments.

11. Raymond James has a dedicated restructuring investment banking group of more than 20 professionals with extensive experience advising companies, creditors' committees, and other constituents in complex situations involving underperforming or unsuitably capitalized businesses facing difficult financial conditions, liquidity crises, out-of-court restructurings, or bankruptcy proceedings. Investment bankers at Raymond James have advised on, or been involved with, numerous restructuring-related or distressed transactions, both out-of-court and in chapter 11 cases, including, without limitation, sale, restructuring, reorganization, financing, financial opinion, and special advisory transactions.

12. Some representative engagements that investment bankers at Raymond James have led in prior chapter 11 cases and restructurings include: American Eagle Energy Corporation; American IronHorse Motorcycles, Inc.; ATLS Acquisition, LLC; BI-LO, LLC; BJ Services, LLC; Bluestem Brands, Inc.; Buccaneer Energy; Calpine Energy; CB Holding Corp.; CCNG Energy Partners; Clarus Therapeutics Holdings, Inc.; ColorSpot Holdings, Inc.; Dakota Plains Holdings, Inc.; Diamond Glass Companies, Inc.; Gateway Ethanol, LLC; Giordano's Enterprises, Inc.; Gulf Fleet Holdings, Inc.; Halt Medical, Inc.; Hipcricket, Inc.; HMX Acquisition Corp.; Hooper

4

Holmes, Inc.; International; Garden Products, Inc.; Just One More Restaurant Corp.; KeyLime Cove Waterpark, Inc.; Loehmann's, Inc.; LVI Intermediate Holdings, Inc.; Max & Erma's, Inc.; National Envelope Corporation; Novan, Inc.; Personal Communication Devices, LLC; Phoenix Payment Systems, Inc.; PLx Pharma, Inc.; Proteus Digital Health, Inc.; Quanergy Systems, Inc.; Renew Energy, Inc.; Response Genetics, Inc.; Robbins Bros. Corporation; Santa Fe Gold Corporation; SynCardia Systems, Inc.; SP Newsprint Holding LLC; Teligent, Inc.; and The Palm Restaurant Group, Inc.

13. Raymond James is well suited to provide the Debtors with the investment banking services contemplated by the Engagement Letter.

## Scope of Services

14. The Debtors and Raymond James have entered into the Engagement Letter, which governs the current relationship between Raymond James and the Debtors. The terms and conditions of the Engagement Letter were negotiated in good faith and at arm's-length and reflect the parties' mutual agreement as to the substantial efforts and resources that have been and will continue to be required in connection with Raymond James's engagement.

15. Subject to further order of the Court, Raymond James will continue to perform necessary investment banking services to the Debtors, in each case as the Debtors shall request, and as Raymond James and the Debtors shall deem appropriate and feasible, in order to advise the Debtors in the course of these chapter 11 cases. Specifically, the Debtors anticipate that Raymond James will perform investment banking services with respect to the following, in each case subject to the terms of and to the extent set forth in the Engagement Letter and in consideration for the compensation contemplated therein[2]:

---

[2] The Engagement Letter also describes various additional services that Raymond James would provide upon reasonable request. To the extent that there is any conflict between the actual terms of the Engagement Letter

i. review and analyze the Debtors' business, operations, properties, financial condition and Interested Parties;

ii. evaluate the Debtors' debt capacity, including by advising the Debtors generally as to available financing and assist in the determination of an appropriate capital structure;

iii. evaluate potential Transaction alternatives and strategies;

iv. prepare documentation within Raymond James's expertise that is required in connection with a Transaction;

v. identify Interested Parties regarding one or more particular Transactions;

vi. contact Interested Parties on behalf of the Debtors and with prior written consent by the Debtors, which Raymond James, after consultation with the Debtors' management, believes meet certain industry, financial, and strategic criteria and assist the Debtors in negotiating and structuring a Transaction; and

vii. advise the Debtors as to potential Business Combination Transactions.

16. The services that Raymond James will provide to the Debtors are necessary to assist the Debtors with their restructuring efforts and to maximize the value of their estates. The resources, capabilities, and experience of Raymond James in advising the Debtors are important to the Debtors' chapter 11 efforts. A highly qualified investment banker, such as Raymond James, fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.

## Professional Compensation

17. Investment bankers such as Raymond James do not charge for their services on an hourly basis. Instead, they customarily charge fees that are contingent upon the occurrence of a specified type of transaction. As set forth more fully in the Engagement Letter, Raymond James

---

or the Indemnification Provisions (as such may be modified by order of the Court) and any description or summary of the same in the Application, the actual terms of the Engagement Letter or the Indemnification Provisions (as such may be modified by order of the Court) shall control, as applicable. Capitalized terms not otherwise defined herein are defined in the Engagement Letter.

and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee Structure"):

    i.    *Monthly Advisory Fee and Database Expense Amount*. Upon the execution of the Engagement Letter and on the first business day of every month thereafter during the term of the Engagement Letter, the Debtors shall pay Raymond James an amount equal to $50,000 (the "Advisory Fee"). Additionally, the Debtors will pay Raymond James a flat expense charge of $5,000 for Raymond James's access to electronic financial databases pertinent to this engagement, upon the Debtors' execution of the Engagement Letter (the "Database Expense Amount").

    ii.    *Financing Transaction Fee*. If, during the Term or during the twelve (12) months following any termination of the Engagement Letter (the "Tail Period"), any Financing Transaction is agreed upon and subsequently closes (the "Financing Transaction Closing"), whether on a stand-alone basis or to consummate any other Transaction, the Debtors shall pay Raymond James immediately and directly out of the proceeds of the placement, at the Financing Transaction Closing of each Financing Transaction as a cost of sale of each Financing Transaction, a non-refundable cash transaction fee (the "Financing Transaction Fee") equal to the sum of:

        1)    one and one-half percent (1.5%) of the Proceeds of any senior secured debt,

        2)    three percent (3.0%) of the Proceeds of all other debt, and

        3)    six percent (6.0%) of equity or equity-linked securities raised.

Notwithstanding the foregoing, in the event that the incumbent senior secured lender provides debtor-in-possession financing (the "DIP Financing"), the debtor-in-possession financing fee (the "DIP Financing Fee") shall equal $150,000, one-half of which shall be paid upon the closing of the DIP Financing and one-half of which shall be paid upon entry of a final order approving the DIP Financing and shall be fully credited against the Business Combination Transaction Fee.

    iii.    *Business Combination Transaction Fee*. If, during the Term or during the Tail Period, any Business Combination Transaction closes (the "Business Combination Closing" and together with any Financing Transaction Closing, each a "Closing"), regardless of when such Business Combination Closing occurs, the Debtors shall pay Raymond James immediately and directly out of the proceeds at the Business Combination Closing, as a cost of sale of such Business Combination Transaction, a non-refundable cash transaction fee (the "Business Combination Transaction Fee" and together with any Financing Fee, each a "Transaction Fee") based upon the

7

        Transaction Value. The Business Combination Transaction Fee shall be equal to the greater of (i) $1,250,000 or (ii) the sum of (A) three and one-half percent (3.5%) of Transaction Value up to $35,000,000 and (B) five percent (5.0)% of Transaction Value greater than $35,000,000.

      i.    *Expense Reimbursement*. Regardless of whether a Transaction is consummated, the Debtors will reimburse Raymond James, upon the earlier of (a) thirty (30) days of the Debtors' receipt of an invoice from Raymond James or (b) the Closing of any Transaction, by wire transfer of immediately available funds via wire transfer instructions set forth in Raymond James's invoice for such amounts to the Debtors, for all expenses (including, without limitation, the fees and disbursements of its outside legal counsel) reasonably incurred by Raymond James in connection with entering into and performing the services pursuant to this Agreement ("Expenses").

18.    The Debtors believe that the Fee Structure set forth in the Engagement Letter is reasonable. The Fee Structure appropriately reflects the nature of the services to be provided by Raymond James and the fee structures typically utilized by leading financial advisory and investment banking firms of similar stature to Raymond James for comparable engagements, both in and out of court. The Fee Structure is consistent with Raymond James's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined herein. Moreover, the Fee Structure is reasonable in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) Raymond James's substantial experience with respect to financial advisory and investment banking services, and (d) the nature and scope of work to be performed by Raymond James in these chapter 11 cases.

19.    The Debtors and Raymond James negotiated the Fee Structure to function as and be an interrelated, integrated unit, in correspondence with Raymond James's services, which Raymond James renders not in parts, but as a whole. It would be contrary to the intention of Raymond James and the Debtors for any isolated component of the entire Fee Structure to be treated as sufficient consideration for any isolated portion of Raymond James's services. Instead,

the Debtors and Raymond James intend that Raymond James's services be considered as a whole, for which Raymond James is to be compensated by the Fee Structure in its entirety.

20. In light of the foregoing, and given the numerous issues that Raymond James may be required to address in the performance of its services under the Engagement Letter, Raymond James's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Raymond James's services for engagements of this nature both in the in- and out-of-court contexts, the Debtors believe that the Fee Structure is fair and reasonable and market based under the standards set forth in section 328(a) of the Bankruptcy Code.

21. In accordance with section 504 of the Bankruptcy Code, Raymond James has informed the Debtors that there is no agreement or understanding between Raymond James and any other entity, other than the members and employees of Raymond James, for the sharing of compensation received or to be received for services rendered in connection with these chapter 11 cases.

## Payments to Raymond James Prior to the Petition Date

22. During the 90-day period prior to the Petition Date, the Debtors paid Raymond James $150,000 in fees and $16,000 as reimbursement for Raymond James's actual and estimated expenses.

23. As of the Petition Date, Raymond James did not hold a prepetition claim against the Debtors for services rendered in connection with the engagement.

**Raymond James's Disinterestedness**

24.     To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein and in the Richards Declaration, Raymond James: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code;  (b) does not hold or represent an interest materially adverse to the Debtors, their creditors, and shareholders for the matters for which Raymond James is to be employed;  and (c) has no connection to the Debtors, their creditors, shareholders, or related parties herein except as disclosed in the Richards Declaration.

25.     The Debtors' knowledge, information, and belief regarding Raymond James's disinterestedness as set forth in this Application are based on, and made in reliance upon, the Richards Declaration.  To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Raymond James's retention are discovered or arise, the Debtors understand that Raymond James will use reasonable efforts to promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

**No Duplication of Services**

26.     The Debtors believe that the services provided by Raymond James will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases.  Specifically, Raymond James will carry out unique functions directly related to a potential Transaction and will use reasonable efforts to coordinate with the Debtors and their professionals retained in these cases to avoid the unnecessary duplication of services.

**Recordkeeping Requirements**

27.     It is not the general practice of investment banking firms, including Raymond James, to keep detailed time records similar to those customarily kept by attorneys.  Raymond James does not maintain contemporaneous time records in one-tenth hour increments or provide

or conform to a schedule of hourly rates for its professionals. Moreover, the Fee Structure does not rely on the amount of time spent by Raymond James, but instead is results-driven and will be determined by the ultimate success of Raymond James's efforts to successfully consummate a Transaction. Notwithstanding that Raymond James does not charge for its services on an hourly basis, Raymond James will maintain time records in half-hour (0.5) increments, setting forth, in a summary format, a description of the services rendered and the professional rendering such services on behalf of the Debtors.

28. Raymond James will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. Raymond James's application for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter, in accordance with any procedures established by the Court.

### Indemnification Provisions

29. The Debtors have agreed, among other things, to indemnify and to provide contribution and reimbursement to, Raymond James and certain related parties in accordance with the indemnification provisions attached as Addendum A to the Engagement Letter (the "Indemnification Provisions").

30. The Debtors believe such provisions are customary and reasonable for Raymond James's engagement. Unlike the market for other professionals that the Debtors may retain, such provisions are standard terms of the market for investment bankers. Raymond James and the Debtors believe that such provisions are comparable to those generally obtained by investment banking and financial advisory firms of similar stature to Raymond James and for comparable engagements, both in and out of court.

31. The terms and conditions of the Engagement Letter were negotiated by the Debtors and Raymond James at arm's length and in good faith. The Debtors respectfully submit that the

11

indemnification, contribution, exculpation, reimbursement and other provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Raymond James's proposed retention, are reasonable and in the best interests of the Debtors and all other stakeholders. Accordingly, as part of this Application, the Debtors request that the Court approve the Engagement Letter.

**Basis for Relief**

32. Section 327(a) of the Bankruptcy Code provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtors] in carrying out their duties under this title." 11 U.S.C. § 327(a). Additionally, section 328(a) of the Bankruptcy Code provides, in relevant part, that the debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . ." 11 U.S.C. § 328(a).

33. Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrett Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court

12

approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted), *cited in Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs, LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008).

34. Courts in the Fourth Circuit have adopted the reasoning of *National Gypsum* to approve flexible compensation arrangements under section 328(a) of the Bankruptcy Code. *See, e.g.*, *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327, 337 (Bankr. D. Md. 2000) (contingency "fee agreement was expressly approved at the outset under section 328(a) as reasonable"). Reasonable arrangements may include transaction-based compensation and protective indemnification provisions. *See, e.g.*, *In re Baltimore Emergency Servs. II, LLC*, 291 B.R. 382, 384 (Bankr. D. Md. 2003) (indemnification for financial advisor approved with minor modifications because such provisions "may be expected in the market, and reorganizing debtors should not be denied the opportunity to retain a financial advisor on marketplace terms that are reasonable").

35. Moreover, retention of an estate professional under sections 327(a), 328, 329, 330, and 331 of the Bankruptcy Code effective as of the filing of a bankruptcy petition is commonly authorized in the Fourth Circuit via a "'post-hoc' or 'after-the-fact' application." *David v. King*, 109 F.4th 653, 664 n.6 (4th Cir. 2024). "[P]rofessionals sometimes begin work before receiving the bankruptcy court's approval. As a result, trustees must sometimes apply for retroactive permission to employ their professionals." *Id.* at 664; *see also In re Neogenix Oncology, Inc.*, No. 12-23557 (TJC), 2013 WL 12576085, at *1 (Bankr. D. Md. Oct. 1, 2013) (approving retention effective as of the petition date).

36. Raymond James has provided services to the Debtors' estate since the Petition Date, so retention of Raymond James effective as of the Petition Date is appropriate.

37. The terms of the Engagement Letter appropriately account for the nature and scope of services that Raymond James will provide, Raymond James's substantial experience providing investment banking and financial advisory services, and the fee and expense structures typically utilized by Raymond James and other leading investment bankers that do not bill their clients on an hourly basis.

38. The Debtors maintain that the Fee Structure is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code. The Fee Structure reflects Raymond James's commitment to the variable level of time and effort necessary to perform the services to be provided, its particular expertise, and the market prices for its services for engagements of this nature both out of court and in the chapter 11 context.

39. Indeed, Raymond James's industry and restructuring experience, its capital markets knowledge, financing skills, and mergers and acquisitions capabilities, some or all of which may be required by the Debtors during the term of Raymond James's engagement, were important factors in determining the terms of the Engagement Letter. The ultimate benefit to the Debtors of Raymond James's services could not be measured merely by reference to the number of hours to be expended by Raymond James's professionals in the performance of such services. Moreover, the Fee Structure set forth in the Engagement Letter takes into consideration Raymond James's anticipation that it will need to provide a substantial commitment of professional time and effort to perform its duties under the Engagement Letter and such commitment may foreclose other opportunities for Raymond James. Further, the commitment required of Raymond James and its

professionals to render services to the Debtors may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

40. Thus, because of Raymond James's expertise, commitment of resources to this engagement to the exclusion of other possible employment, and the time that Raymond James has devoted and will continue to devote to this engagement, the Debtors request that the Court approve the Fee Structure pursuant to section 328(a) of the Bankruptcy Code and that the Court evaluate Raymond James's final compensation and reimbursement of expenses in these chapter 11 cases under the standards of section 328(a) of the Bankruptcy Code rather than under those of section 330 of the Bankruptcy Code, subject to Raymond James filing a final fee application seeking approval of the payment of its fees and expenses.

## WAIVER OF MEMORANDUM OF LAW

41. Pursuant to rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Debtors state that, in lieu of submitting a memorandum in support of this Application, the Debtors will rely solely upon the grounds and authorities set forth herein.

## NOTICE

42. Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to JPMorgan Chase Bank, N.A.; (iv) the United States Attorney for the District of Maryland; (v) the offices of the attorneys general for the states in which the Debtors operate; (vi) the Internal Revenue Service; and (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

53240640.2 01/17/2025

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: January 17, 2025

Diamond Comic Distributors, Inc., *et al.*
(for itself and on behalf of its affiliated debtors as debtors and debtors in possession)

By: */s/ Robert Gorin*
Name: Robert Gorin
Title: Chief Restructuring Officer