IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING (I) RETENTION AND EMPLOYMENT OF GETZLER HENRICH & ASSOCIATES LLC, TO PROVIDE INTERIM MANAGEMENT SERVICES, AND (II) THE DESIGNATION OF ROBERT GORIN AND WILLIAM HENRICH AS CO-CHIEF RESTRUCTURING OFFICERS TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned proposed counsel, respectfully move this Court (the "Motion") and state as follows:

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing the retention and employment of Getzler Henrich & Associates LLC ("Getzler Henrich"), to provide interim management services as set forth in the engagement letter entered on March 7, 2024, and amended on July 17, 2024 (the "Engagement Letter"), attached hereto as **Exhibit B**,[2] effective as of the Petition Date (as defined below), and (ii) approving the designation of Robert Gorin and William Henrich as Co-Chief Restructuring Officers to the Debtors (each, the "CRO").

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] Capitalized terms used but not defined herein are defined in the Engagement Letter.

2.  In support of this Motion, the Debtors rely on and incorporate by reference the *Declaration of Robert Gorin in Support of the Debtors' Application for Entry of an Order Authorizing (I) Retention and Employment of Getzler Henrich & Associates LLC, to Provide Interim Management Services, and (II) the Designation of Robert Gorin and William Henrich as Co-Chief Restructuring Officers to the Debtors, Effective as of the Petition Date* (the "Gorin Declaration"), attached hereto as **Exhibit C**. In further support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction

3.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The statutory bases for the relief requested herein are sections 105 and 363(b) of Title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

5.  On January 14, 2025 (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the chapter 11 cases, and no committees have been appointed or designated.

6.  A description of the Debtors' businesses and the reasons for commencing the chapter 11 cases are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petitions*

*and First Day Relief* [D.I. 20] (the "First Day Declaration") and are incorporated herein by reference.

### Getzler Henrich's Retention

**A.    Getzler Henrich's Qualifications**

7.    Getzler Henrich is a middle-market corporate turnaround and restructuring firm that provides strategic financial services in large-scale corporate restructuring transactions, including turnarounds, workouts, crisis management, interim management, corporate restructuring, bankruptcy advisory, Lean-Six Sigma analysis and implementation, and distressed mergers and acquisitions. Getzler Henrich also assists companies in achieving operational efficiency through process improvement, the implementation of supply chain solutions, sales and marketing effectiveness, technology advisory, and transaction advisory services.

8.    Getzler Henrich is one of the oldest and most respected names in middle-market corporate restructuring, assisting companies all over the world with their unique approach that emphasizes rapid and pragmatic decision making. Since its founding in 1968, Getzler Henrich has developed a strong track record, assisting both underperforming and healthy companies. Getzler Henrich has demonstrated its ability to implement realistic solutions to complex challenges confronting business and their creditors, and to help companies improve their operations. Getzler Henrich's engagements have spanned a broad spectrum of industries. Getzler Henrich executes solutions with unmatched competency and stark integrity and adapts its approach to the specific needs of each individual client to ensure the most practical proposals prevail.

9.    Getzler Henrich has been retained to provide financial advisory and other related services in connection with the restructuring of the following companies, among others, in jurisdictions around the country: *In re Hamon Holdings Corp., et al.*, Case No. 22-10375 (Bankr.

D. Del. June 10, 2022); *In re Urban Commons 2 West LLC, et al.*, Case No. 22-11509 (Bankr. S.D.N.Y. Dec. 1, 2022); *In re SC Healthcare Holdings, LLC*, Case No. 24-10443 (Bankr. D. Del. Apr. 23, 2024); *In re ConnectEdu, Inc., et al.*, Case No. 14-11238 (Bankr. S.D.N.Y. June 16, 2024); *In re Aztec Fund Holding Inc., et al.*, Case No. 24-90436 (Bankr. S.D. Tex. Sep. 27, 2024); *In re Presperse Corp.*, Case No. 24-18921(Bankr. D.N.J. Oct. 10, 2024).

10. Robert Gorin is a Managing Director of Getzler Henrich with over 30 years of experience in business strategy and turnaround consulting. His expertise includes advising insolvent and troubled companies in turnaround and crisis situations and navigating such companies through turnaround, process design and improvements, and merger and acquisition processes. He has frequently been involved in complex matters requiring expertise in corporate turnarounds and operational analysis.

11. Mr. Gorin leads Getzler Henrich's consumer products practice. He has served as the CRO of a $250 million cleaning products manufacturer and distributor, CRO of a $350 million luxury home appliance company, and CRO of a $120 million home goods distributor and wholesaler. Mr. Gorin has worked with many consumer product companies, including multiple firms in the toys, crafts, home goods, food, hardware, and specialty clothing spaces. Mr. Gorin has also served in advisory roles for companies that produce and sell items such as tabletop kitchen appliances, hardware products, luxury kitchen appliances, outdoor furniture, toys, and more.

12. William Henrich, co-chairman of Getzler Henrich, has over 40 years of corporate restructuring experience. Mr. Henrich's experience includes more than 400 engagements in turnaround and crisis management, loan workout, bankruptcy consulting and performance improvement. Prior to joining Getzler Henrich, Mr. Henrich was managing director and founder of the New York practice of a prominent middle-market corporate restructuring firm. He also

founded and served in Arthur Andersen's New York corporate recovery services group. Mr. Henrich is currently Treasurer and an executive Board member of the American Bankruptcy Institute, a former president and current advisory board member of the Turnaround Management Association's New York chapter, former TMA Global executive board member and Corporate Secretary, member of the Association of Corporate Growth and frequently lectures and writes on turnaround and bankruptcy issues. Accordingly, Mr. Henrich has developed significant relevant experience and expertise that will assist him in providing effective and efficient services in these chapter 11 cases.

13. Examples of companies Mr. Henrich has served in the CRO role include Mammoet-Starneth, LLC, NYC Constructors, National Fish & Seafood Inc., Zloop Inc., National Envelope Corporation, Moonlight Basin, Marcal Paper, Precision Valve, PhotoMedex Inc., Meadowcraft Furniture Company and O-Cedar Brands. Additionally, Mr. Henrich has led restructurings in the role of Independent Board Member for Snow Joe LLC, Brooklyn Boulders, Hussey Copper, Vision Group Holdings, Emtec Inc., Custom Ecology Inc., Empire CLS, National Label Company, Coyne Textile Service and Daticon Inc.

14. As set forth in the Gorin Declaration, Getzler Henrich was engaged by the Debtors on or about July 17, 2024 to provide a CRO and related services to the Debtors pursuant to the Engagement Letter and, prior thereto, provided financial advisory services to the Debtors since March 2024. As a result, Getzler Henrich has become intimately familiar with the Debtors' corporate and capital structure, management, operations, and various other aspects of their businesses. Getzler Henrich has also developed a significant amount of institutional knowledge regarding the Debtors' operations, finances and systems. Mr. Gorin and Mr. Henrich have taken an active role in the Debtors' restructuring efforts and their efforts to prepare for their chapter 11

5

filings, including participating in the negotiations concerning the Debtors' postpetition financing and prepetition marketing process, and communicating with the Debtors' various constituencies. On the basis of this experience and knowledge, the Debtors believe that Getzler Henrich is uniquely positioned and well-qualified to perform these services and represent the Debtors' interests in these chapter 11 cases.

**B.      Services to Be Provided**

15.      Subject to Court approval of this Motion and consistent with the terms of the Engagement Letter,[3] Getzler Henrich will provide such turnaround management services as Getzler Henrich and the Debtors deem appropriate, including, but not limited to, the following:

CRO Services:

a. Review management's current revenue generation, cost reduction and working capital management initiatives; identify and implement additional revenue enhancement and expense control initiatives as appropriate;

b. Participate in the weekly preparation of and review of the Debtors' rolling 13-week cash flow forecast and approve all proposed weekly cash disbursements by the company, for appropriateness;

c. Participate in the preparation of financial projections;

d. Facilitate the Debtors' communication and negotiation with other parties-in-interest, including other retained parties, secured lender, and vendors;

e. Identify and work with management to prioritize projects and actions to enhance performance and cash flow through supplemental revenue/margin generation, cost reduction, working capital enhancement initiatives and financial analytic means;

f. Assist the Debtors in efforts to engage and work with third parties to identify and implement new sources of liquidity, up to and including a complete refinancing of the Debtors' obligations to the existing secured lender;

g. Facilitate and support the Debtors' communications with the existing secured lender, including periodic reports to and other communications with the lender as

---

[3] The summary set forth herein is qualified in its entirety by the terms of the Engagement Letter, and the terms of the Engagement Letter shall control in the event of a conflict.

appropriate regarding the Debtors' financial and operational status and the results of Getzler Henrich's engagement;

h. Work with the Debtors' other professionals to ensure that work is performed efficiently; and

i. Assist in such other matters as the management or counsel to the Debtors may request from time to time.

Chapter 11 Planning and Execution Services:

a. Review and vet the Debtors' existing 13-week cash flow, including all underlying assumptions. Where appropriate, make recommendations for enhancements;

b. On a weekly basis, review the company's 13-week cash flow with accompanying variance and make enhancement recommendations, when needed;

c. Oversee a section 363 sale process;

d. Assist with the preparation of Court motions as requested by counsel;

e. Assist with compliance with the reporting requirements of the Bankruptcy Code, Bankruptcy Rules and local rules, including reports, monthly operating statements and schedules;

f. Participate in Court hearings and, if necessary, provide testimony in connection with any hearings before the Court;

g. Consult with all other retained parties, secured lender, creditors' committee (if any), and other parties-in-interest;

h. Assist with the analysis and reconciliation of claims against the Debtors and other bankruptcy avoidance actions; and

i. Perform such other tasks as appropriate as may reasonably be requested by the Debtor's management or Company counsel.

16. The Debtors require qualified professionals to render these essential professional services. As noted above, Getzler Henrich has substantial expertise in all areas for which it is proposed to be retained. Accordingly, the Debtors submit that Getzler Henrich is well qualified and best suited to perform these services and to assist the Debtors in these cases.

17. All of the services that Getzler Henrich will provide to the Debtors will be undertaken at the request of the Debtors and will be appropriately directed by the Debtors so as to avoid duplicative efforts among the professionals retained in these chapter 11 cases. Getzler Henrich will also use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

C. **Professional Compensation**

18. Subject to this Court's approval and as set forth in the Engagement Letter,[4] the Debtors and Getzler Henrich have agreed to the following compensation and expense structure (the "Compensation Structure") in consideration for the services to be rendered by Getzler Henrich in these chapter 11 cases:

   a. The fee for the CRO Services will be Mr. Gorin's and Mr. Henrich's standard hourly rates of $755 and $855 per hour, respectively, and include the services performed by Mr. Gorin and Mr. Henrich only. Additional Getzler Henrich personnel assisting Mr. Gorin or Mr. Henrich will be billed at Getzler Henrich's standard hourly rates, as follows:

      | | |
      |---|---|
      | Principal/Managing Director | $735 - $895/hr. |
      | Director/Specialist | $595 - $795/hr. |
      | Associate Professionals | $225 - $595/hr. |

   b. The Debtors shall reimburse Getzler Henrich for reasonable out-of-pocket expenses incurred in connection with the performance of its services. Such expenses include, but are not limited to air travel, meals, local transportation, lodging, parking, delivery services, and photocopying.

19. Because Getzler Henrich is not being employed as a professional under section 327 of the Bankruptcy Code, Getzler Henrich is not required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. On a monthly basis, Getzler Henrich will file with the Court and serve on the Office of the United States Trustee and counsel for any official

---

[4] The summary set forth herein is qualified in its entirety by the terms of the Engagement Letter, and the terms of the Engagement Letter shall control in the event of a conflict.

committee appointed in these chapter 11 cases (collectively, the "Notice Parties") a summary fee statement covering work performed for the previous month, which will include the names of and tasks fulfilled by the CROs and additional personnel assisting the CROs, and itemize any expenses incurred for the relevant period (the "Compensation Report").

20. The Notice Parties shall have 10 days after the date each Compensation Report is served on the Notice Parties to object to such Compensation Report. The Compensation Report, Getzler Henrich's staffing decisions, and all compensation identified in the Compensation Report will be subject to review by the Court in the event an objection is filed. The compensation provided for in the Engagement Letter shall constitute full payment for the services to be rendered to the Debtors by Getzler Henrich, Mr. Gorin and Mr. Henrich.

21. Prior to the Petition Date, pursuant to the Engagement Letter, the Debtors paid an initial retainer of $25,000 and an additional $25,000 retainer when the parties amended the Engagement Letter to expand the scope of services. The retainer was to be applied to Getzler Henrich's professional fees, charges and disbursements for the engagement, (the "Cash on Account"). As of the Petition Date, after applying the Cash on Account to unpaid pre-filing fees, charges and disbursements, there remains a balance of $356,034.69 which will be applied to Getzler Henrich's final invoice.

22. The Compensation Structure described above is comparable to compensation for turnaround management services, both in and out of court. The Compensation Structure is also consistent with Getzler Henrich's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined. Getzler Henrich and the Debtors also believe that the Compensation Structure is reasonable and at favorable market rates.

D. **Getzler Henrich's Disinterestedness**

9

23. To the best of the Debtors' knowledge, information and belief, other than as set forth in the Gorin Declaration, Getzler Henrich: (i) has no connection with the Debtors, their creditors, their direct and indirect owners, other parties in interest, or the Office of the United States Trustee for the District of Maryland or any person employed in the Office of the United States Trustee; and (ii) does not hold any interest adverse to the Debtors' estates, except that Getzler Henrich and Messrs. Gorin and Henrich are connected to the Debtors by virtue of the Engagement Letter.

24. Although the Debtors respectfully submit that the retention of Getzler Henrich is not governed by section 327 of the Bankruptcy Code, the Gorin Declaration discloses, among other things, any relationship that Getzler Henrich, Mr. Gorin and Mr. Henrich has with the Debtors, their significant creditors, or other significant parties in interest known to Getzler Henrich. Based upon such disclosures, the Debtors submit that Getzler Henrich is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

25. In addition, as set forth in the Gorin Declaration, if any new relevant facts or relationships are discovered or arise, Getzler Henrich will use reasonable efforts to identify such further developments and will file promptly a supplemental declaration where appropriate.

**Indemnification**

26. The Debtors are permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' directors and officers insurance policy. Accordingly, as part of this Motion, the Debtors request that the Court approve the indemnification provisions included in the Engagement Letter, as modified by the Proposed Order.

**Basis for Relief**

27. The Debtors seek authority to retain and employ Getzler Henrich and appoint Messrs. Gorin and Henrich as CROs pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, effective as of the Petition Date. Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under applicable case law in this and other circuits, courts will approve a debtor's proposed use of assets under section 363(b) if it represents a sound business purpose on the part of the debtor. *See, e.g., In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a business judgment test."); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (explaining that courts defer to a trustee's judgment concerning use of property under Bankruptcy Code section 363(b) when there is a legitimate business justification); *Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that the use, sale or lease of property of the estate is justified if its is supported by a good business reason).

28. Under the business judgment test, a court will not interfere with the judgment of a board of directors unless there is a showing of "gross and palpable overreaching." *In re Marvel Entm't Group, Inc.*, 273 B.R. 58, 78 (Bankr. D. Del. 2002) ("[U]nder the business judgment rule, a board's 'decisions will not be disturbed if they can be attributed to any rational purpose' and a court 'will not substitute its own notions of what is or is not sound business judgment.'") (*citing Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 719–20 (Del. 1971)).

29. Further, the Court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide additional authority for the relief requested herein. Section 105(a) of

11

the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." *See* 11 U.S.C. § 105(a); *see also US. v. Energy Res. Co.*, 495 U.S. 545, 549 (1990); *Adelphia Commc'ns Corp. v. Am. Channel (In re Adelphia Commc'ns Corp.)*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process."); *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code.").

30. The retention of a restructuring firm and appointment of a CRO is an appropriate exercise of a debtor's business judgment under Section 363(b). *See In re Nine West Holdings, Inc.*, 588 B.R. 678, 686-87 (Bankr. S.D.N.Y. 2018) (recognizing the "mountain of precedent" in which other courts have authorized debtors to retain professionals, including CROs, under Section 363(b)).

31. The employment of Getzler Henrich and its professionals is a sound exercise of the Debtors' business judgment. As detailed herein, the Debtors selected Getzler Henrich to provide their Co-CROs because of the significant relevant experience and reputation of Messrs. Gorin and Henrich. Moreover, Getzler Henrich has acquired substantial knowledge of the Debtors and their operations as a result of the extensive prepetition work that it performed on the Debtors' behalf in the time leading up to the Petition Date, making Getzler Henrich the obvious choice to provide the services detailed in the Engagement Letter.

32. Further, the Debtors believe that the Compensation Structure is fair and reasonable in light of the types of services being provided and is consistent with the fee structures generally

12

offered by firms of similar stature to Getzler Henrich for comparable engagements. In addition, given the numerous issues Getzler Henrich has addressed prior to the Petition Date and may need to address during these chapter 11 cases, Getzler Henrich's commitment to the variable level of time and effort necessary to address all such related issues as they arise, and the market prices for Getzler Henrich's services for engagements of this nature, the Debtors believe that the Compensation Structure is fair and reasonable.

33. In light of the foregoing, the Debtors believe that the relief requested herein is appropriate, a sound exercise of their business judgment, and should be approved.

### Post-Hoc Retention

34. Retention of an estate professional under sections 327(a), 328, 329, 330, and 331 of the Bankruptcy Code effective as of the filing of a bankruptcy petition is commonly authorized in the Fourth Circuit via a "'post-hoc' or 'after-the-fact' application." *David v. King*, 109 F.4th 653, 664 & n.6 (4th Cir. 2024). "[P]rofessionals sometimes begin work before receiving the bankruptcy court's approval. As a result, trustees must sometimes apply for retroactive permission to employ their professionals." *Id*. at 664; *see also In re Neogenix Oncology, Inc.*, No. 12-23557 (TJC), 2013 WL 12576085, at *1 (Bankr. D. Md. Oct. 1, 2013) (approving retention effective as of the petition date).

### Waiver of Memorandum of Law

35. Pursuant to rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely solely upon the grounds and authorities set forth herein.

### Notice

13

36. Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) counsel to JPMorgan Chase Bank, N.A.; (iv) the United States Attorney for the District of Maryland; (v) the offices of the attorneys general for the states in which the Debtors operate; (vi) the Internal Revenue Service; and (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request the entry of an order, substantially in the form of the Proposed Order, (i) authorizing the employment and retention of Getzler Henrich to provide interim management services, effective as of the Petition Date; (ii) approving the designation of Robert Gorin and William Henrich as Co-CROs in these chapter 11 cases, effective as of the Petition Date, pursuant to the terms and conditions of the Engagement Letter; and (iii) granting such other and further relief as this Court deems just and proper.

Dated: February 6, 2025

**SAUL EWING LLP**

By: */s/ Jordan D. Rosenfeld*
Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
Turner N. Falk (admitted *pro hac vice*)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
        adam.isenberg@saul.com
        turner.falk@saul.com

14

-and-

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
paige.topper@saul.com
nicholas.smargiassi@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*