Entered: February 11th, 2025
Signed: February 11th, 2025

**SO ORDERED**



DAVID E. RICE
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**Re: D.I. 18** |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION OBLIGATIONS OWED TO CRITICAL VENDORS, AND (II) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (i) authorizing, but not directing, the Debtors to pay certain prepetition obligations owed to Critical Vendors, including Foreign Critical Vendors, and (ii) granting related relief, all as more fully set forth in the Motion; and the Court having previously entered the Interim Order; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] Capitalized terms used but not defined herein are defined in the Motion.

pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and the evidence in support thereof and having heard the statements in support of the relief requested in the Motion at a hearing before this Court ("Hearing"), if any; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on a final basis to the extent set forth herein.

2. The Debtors are authorized, but not directed, in their discretion, after consultation with the Official Committee of Unsecured Creditors (the "Committee"), to make payments toward prepetition Critical Vendor Claims as described in the Motion in amounts not to exceed $7,000,000 in the aggregate.

3. The Debtors are further authorized, but not directed, to undertake appropriate efforts to enter into Trade Agreements with the Critical Vendors if the Debtors determine, in their discretion, after consultation with the Committee, that such an agreement is necessary to their postpetition operations, including, without limitation on the following terms:

    a. The amount of such Critical Vendor's estimated claim, after accounting for any setoffs, other credits and discounts thereto, shall be as mutually determined in good faith by the Critical Vendor and the Debtors (but such amount shall be used only for purposes of the Interim or Final Order, as applicable, and shall not be deemed a

      claim allowed by the Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of the Court);

    b. The amount of payment toward the Critical Vendor's estimated claim;

    c. The Critical Vendor's agreement to be bound by the Customary Trade Terms, or such other trade terms as mutually agreed to by the Debtors and such Critical Vendor;

    d. The Critical Vendor's agreement to provide goods and services to the Debtors based upon Customary Trade Terms, and the Debtors' agreement to pay the Critical Vendor postpetition in accordance with such terms;

    e. The Critical Vendor's agreement not to file or otherwise assert against the Debtors, their estates or their respective assets or property (real or personal) any lien (a "Lien") (regardless of the statute or other legal authority upon which such Lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to the Critical Vendor by the Debtors arising from goods or services provided to the Debtors prior to the Petition Date, and that, to the extent that the Critical Vendor has previously obtained such a Lien, the Critical Vendor shall immediately take all necessary action to release such Lien;

    f. The Critical Vendor's acknowledgement that it has reviewed the terms and provisions of the Interim or Final Order, as applicable, and consents to be bound thereby;

    g. The Critical Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation or Bankruptcy Code section 503(b)(9) claim; and

    h. If a Critical Vendor who has received payment toward a Critical Vendor Claim subsequently refuses to supply goods or services to the Debtors on Customary Trade Terms or other terms as mutually agreed by the Critical Vendor and the Debtors, the Debtors may seek a judicial determination that any payment received by the Critical Vendor on account of its Critical Vendor Claim will be deemed to have been in payment of then outstanding postpetition obligations owed to such Critical Vendor pursuant to section 549(a) of the Bankruptcy Code, whereupon such Critical Vendor shall immediately repay to the Debtors any payments received on account of its Critical Vendor Claim to the extent that the aggregate amount of such payments exceed the postpetition obligations then outstanding, without the right of setoff or reclamation.

    4. Notwithstanding the foregoing, the Debtors may, in their discretion, after consultation with the Committee, reinstate a Trade Agreement if the underlying default under the Trade Agreement is fully cured by the Critical Vendor not later than five (5) business days following the Debtors' notification to the Critical Vendor of such default; or the Debtors, in their

discretion, after consultation with the Committee, reach a favorable alternative agreement with the Critical Vendor.

5. The Debtors shall provide the Committee (a) on a bi-weekly basis, a schedule of all payments of Critical Vendor Claims that includes the applicable Critical Vendors and amounts paid, and (b) copies of all Trade Agreements, on a professional eyes' only basis.

6. For the avoidance of doubt and notwithstanding the foregoing, the Debtors may, in their discretion, after consultation with the Committee, negotiate and agree on Customary Trade Terms with Critical Vendors absent a Trade Agreement, and as such, a Critical Vendor who enters into an agreement with the Debtors absent a Trade Agreement shall be treated as a Critical Vendor under this Order.

7. The Debtors' banks are hereby authorized, when requested by the Debtors in the Debtors' sole discretion, to receive, process, honor and pay all prepetition and postpetition checks and fund transfers on account of the Critical Vendor Claims that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments and the payments are in compliance with any orders approving the Debtors' use of cash collateral and/or any postpetition financing facilities. The Debtors shall be and hereby are authorized to issue new postpetition checks or effect new postpetition fund transfers on account of the Critical Vendor Claims to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

8. Nothing herein shall be construed to limit, or in any way affect, the ability of the Debtors, the Committee, or any other estate fiduciary to dispute any Critical Vendor Claim.

9. The authorization granted hereby to pay Critical Vendor Claims shall not create any obligation on the part of the Debtors or their officers, directors, attorneys or agents to pay the

Critical Vendor Claims, none of the foregoing persons shall have any liability on account of any decision by the Debtors not to pay a Critical Vendor Claim, and nothing contained in this Final Order shall be deemed to increase, reclassify, elevate to an administrative expense status or otherwise affect the Critical Vendor Claims to the extent they are not paid.

10. Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

11. Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

12. The Debtors are authorized to take all steps necessary or appropriate to carry out this Final Order.

13. Nothing in this Order permits the transfer of cash or any interest in property to any insiders or non-Debtor affiliate, including any entities controlled by or affiliated with current or former insiders of the Debtors.

14. This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation or enforcement of this Final Order.

**END OF ORDER**