Entered: February 11th, 2025
Signed: February 11th, 2025

**SO ORDERED**



**DAVID E. RICE**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 68.** |

**ORDER (I) AUTHORIZING AND APPROVING BIDDING PROCEDURES FOR THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) APPROVING BID PROTECTIONS, (III) SCHEDULING AN AUCTION AND A SALE HEARING, (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (V) ESTABLISHING NOTICE AND PROCEDURES OF ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND LEASES, AND (VI) GRANTING RELATED RELIEF**

Upon the motion ("Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (the "Bidding Procedures Order") (i) authorizing

and approving the bidding procedures attached hereto as Exhibit 1 (the "Bidding Procedures") in

---

[1]    The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585).  The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2]    Capitalized terms used but not defined herein are defined in the Motion.

connection with one or more sales or dispositions (collectively, the "Sale") of the Alliance Assets, the Diamond UK Assets, and all other assets of the Debtors (collectively, the "Assets"), (ii) approving the Bid Protections, (iii) establishing certain dates and deadlines for the sale process, including scheduling an auction of the Assets (the "Auction"), if necessary, in accordance with the Bidding Procedures, and the hearing with respect to the approval of the Sale (the "Sale Hearing"), (iv) approving the form and manner of notice of the Auction, if any, the Sale and the Sale Hearing, attached hereto as Exhibit 2 (the "Sale Notice"), (v) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale and approving the form and manner of notice thereof, attached hereto as Exhibit 3 (the "Contract Notice"), and (vi) granting related relief, as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and the evidence in support thereof and having heard the statements in support of the relief requested in the Motion at a hearing before this Court ("Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND, CONCLUDED AND DETERMINED THAT:[3]

A.      Bidding Procedures. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of, the Assets, as determined by the Debtors in an exercise of their business judgment in consultation with the Consultation Parties.

B.      Sale Notice. The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the Sale and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Assets for sale; (v) instructions for promptly obtaining a copy of the Stalking Horse Agreement; and (vi) representations describing the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds subject to customary exceptions for permitted liens, and no other or further notice of the Sale shall be required.

C.      Auction. The Auction, if held, is necessary to determine (i) the highest or otherwise best bid for the Debtors' Assets, and (ii) with respect to the Alliance Assets, whether any entity other than the Stalking Horse Bidder is willing to enter into a definitive agreement on terms or conditions more favorable to the Debtors and their estates than the Stalking Horse Agreement.

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.    <u>Assumption and Assignment Procedures</u>. The Contract Notice is reasonably calculated to provide counterparties to certain executory contracts and unexpired leases (the "<u>Assumed Contracts</u>") with proper notice of the intended assumption and assignment of their executory contracts, any Cure Amounts (as defined below) and the Assumption and Assignment Procedures (as defined below).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Motion is granted to the extent set forth in this Bidding Procedures Order.

2.    All objections to the Motion and the relief granted therein, to the extent not resolved as set forth herein or on the record at the Bidding Procedures Hearing, are hereby overruled.

**SALE TIMELINE**

3.    <u>Bid Deadline</u>. **March 19, 2025, at 5:00 p.m. (ET)** shall be the deadline by which all Qualifying Bids (except a credit bid by the Lender) must be actually received by the Debtors and their advisors.

4.    <u>Auction</u>.  The Auction, if any, shall be held on **March 24, 2025, at 10:00 a.m. (ET)** (i) at the offices of Raymond James & Associates, Inc., 320 Park Avenue, 12th Floor, New York, New York 10022 or (ii) on such other date and/or at such other location or by virtual means as determined by the Debtors in consultation with the Consultation Parties.  For the avoidance of doubt, the Debtors, after consulting with the Consultation Parties, may also conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets.  The Debtors shall send written notice of the date, time, and place of the Auction to the Qualifying Bidders no later than one (1) business day before such Auction, and will post notice of the date, time, and place of the Auction no later than one (1) business day before such Auction on the website of the

4

Debtors' claims and noticing agent, Omni Agent Solutions, https://cases.omniagentsolutions.com/home?clientId=3721.

5. <u>Sale Objection Deadline</u>. Any and all objections to a Sale of the Assets and entry of a Sale Order must (i) be made in writing; (ii) state with particularity the grounds for the response or objection; (iii) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (iv) be filed with the Court no later than March 14, 2025 (the "<u>Sale Objection Deadline</u>"), or with respect to objections solely related to the adequate assurance of future performance by a Successful Bidder(s) (other than the Stalking Horse Bidder), March 25, 2025 at noon (ET) (the "<u>Adequate Assurance Objection Deadline</u>"); and (v) be served on the following parties (collectively, the "<u>Objection Notice Parties</u>"): (a) proposed counsel to the Debtors, Saul Ewing LLP, 1500 Market Street, 38th Floor, Philadelphia, Pennsylvania 19102, Attn: Jeffrey C. Hampton (jeffrey.hampton@saul.com) and Adam H. Isenberg (adam.isenberg@saul.com), and 1201 N. Market Street, Suite 2300, Wilmington, Delaware 19801, Attn: Paige N. Topper (paige.topper@saul.com); (b) counsel to the DIP Lender, Troutman Pepper Locke LLP, 111 Huntington Avenue, 9th Floor, Boston, Massachusetts 02199, Attn: Jonathan W. Young (jonathan.young@troutman.com) and David Ruediger (david.ruediger@troutman.com); (c) the Office of the United States Trustee for the District of Maryland, Attn: Gerard R. Vetter (gerard.r.vetter@usdoj.gov); (d) proposed counsel to the Committee, (i) Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York 10020, Attn: Bruce S. Nathan (bnathan@lowenstein.com) and Gianfranco Finizio (gfinizio@lowenstein.com), and (ii) Tydings & Rosenberg LLP, One E. Pratt St., Suite 901, Baltimore, Maryland 21202, Attn: Stephen B. Gerald (sgerald@tydings.com) and Dennis J. Shaffer (dshaffer@tydings.com); and (e) any Successful Bidders.

6. Any party or entity that fails to timely make an objection to the Sale on or before the Sale Objection Deadline may be forever barred from asserting any objection to the Sale, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances, and other interests.

7. <u>Sale Hearing</u>. The Sale Hearing to approve the Sale of the Assets shall be held on March 27, 2025 at 10:00 a.m. (ET); *provided, however*, after consultation with the Consultation Parties, that the Sale Hearing may be continued by the Debtors in accordance with the Bidding Procedures, from time to time, without further notice to creditors or parties in interest (other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket in these chapter 11 cases).

8. The dates and deadlines set forth in this Bidding Procedures Order are subject to modification by the Debtors, after consultation with the Consultation Parties, in accordance with the Bidding Procedures.

## BIDDING PROCEDURES

9. <u>Bidding Procedures</u>. The Bidding Procedures, in the form attached hereto as <u>Exhibit 1</u> are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Bidding Procedures Order. The Debtors are authorized to take any and all reasonable actions necessary to implement the Bidding Procedures.

10. <u>Bid Protections</u>. The Bid Protections are approved and the Debtors are authorized to incur and pay the Bid Protections. If applicable, the Debtors shall pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder no later than five business days after the

closing of the sale of the Purchased Assets to a Successful Bidder other than the Stalking Horse Bidder, to the extent due and payable. The Bid Protections apply only to a sale of the Alliance Assets.

11.     Other than the Stalking Horse Bidder, no person or entity shall be entitled to any expense reimbursement, break-up fee, "topping", termination, or other similar fee or payment in connection with any Sale, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise. Notwithstanding the foregoing, the Debtors, in consultation with the Consultation Parties, reserve the right to (i) select a stalking horse bidder or bidders for the Debtors' assets other than the Alliance Assets and enter into a purchase agreement with such stalking horse bidder(s) and (ii) in connection with any stalking horse purchase agreements for the Debtors' assets other than the Alliance Assets, and upon notice to all parties in interest and an opportunity to object, provide bid protections to such stalking horse bidder(s).

12.     <u>Credit Bid</u>. Any Qualifying Bidder that has a valid, unavoidable and perfected lien on any assets of the Debtors' estates (a "<u>Secured Creditor</u>"), unless the Court for cause orders otherwise, shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral over which such Secured Creditor has a valid lien; and provided further that any credit bid by a Secured Creditor shall contain a cash component sufficient to repay in full in cash secured claims of a senior Secured Creditor, if any (unless such senior Secured Creditor agrees to a different treatment). For the avoidance of doubt, the Lender has the right to credit bid the full amount of

the then outstanding Prepetition Debt and DIP Debt[4] in accordance with section 363(k) of the Bankruptcy Code; provided that if the Lender elects to credit bid, then the Lender shall notify the Debtors and the Committee of its credit bid  no later than twenty-four (24) hours after the last bid has been received and shared with the Consultation Parties.  Nothing in this Order shall impair or adversely affect the right of the Office of the United States Trustee or any party in interest to object to any credit bid for cause under section 363(k) of the Bankruptcy Code.

### NOTICE OF THE AUCTION, SALE AND SALE HEARING

13.     The Sale Notice, substantially in the form attached hereto as <u>Exhibit 2</u>, is hereby approved.  No later than five (5) business days after entry of this Bidding Procedures Order, the Debtors will cause the Sale Notice to be served on the following parties or their respective counsel, if known (collectively, the "<u>Sale Notice Parties</u>"): (i) the Office of the United States Trustee for the District of Maryland; (ii) counsel to the Lender; (iii) counsel to the Committee; (iv) all parties known by the Debtors to assert a lien on any of the Assets; (v) all persons known or reasonably believed to have asserted an interest in any of the Assets; (vi) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Assets within the one (1) year prior to the Petition Date; (vii) the Office of the United States Attorney for the District of Maryland; (viii) the Office of the Attorney General in each state in which the Debtors operate; (ix) the Office of the Secretary of State in each state in which the Debtors have operated; (x) the United States Attorney General; (xi) the civil process clerk for the United States Attorney for the District of Maryland; (xii) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (xiii) all environmental authorities having jurisdiction over

---

[4]     "Prepetition Debt" and "DIP Debt" shall have the meaning ascribed in the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* (D.I. 54).

any of the Assets, including the Environmental Protection Agency; (xiv) the Federal Trade Commission; (xv) the United States Attorney General/Antitrust Division of Department of Justice; (xvi) all non-Debtor parties to any of the Assumed Contracts; (xvii) all of the Debtors' other known creditors and equity security holders; and (xviii) all parties that have filed a notice of appearance and demand for service of papers in these chapter 11 cases as of the service date.

14.     In addition, as soon as practicable, after entry of this Bidding Procedures Order, the Debtors will publish the Sale Notice, with any modification necessary for ease of publication, once in the national edition of *Wall Street Journal*, *The Baltimore Sun*, and the local newspaper for the locations of each of the Debtors' distribution facilities: (i) Red Lion, Pennsylvania, (ii) Fort Wayne, Indiana, (iii) Visalia, California, (iv) Round Rock, Texas, and (v) Olive Branch, Mississippi, to provide notice to any other potential interested parties.

## THE ASSUMPTION AND ASSIGNMENT PROCEDURES

15.     The procedures set forth below regarding the assumption and assignment of the executory contracts proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder(s) pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale(s) (the "Assumption and Assignment Procedures") are hereby approved to the extent set forth herein.

16.     These Assumption and Assignment Procedures shall govern the assumption and assignment of all of the Debtors' executory contracts and unexpired leases to be assumed and assigned in connection with the Sale(s), subject to the payment of any amounts necessary to cure any defaults arising under any Assumed Contract (as defined below) (the "Cure Amount"):

      a.   Within five (5) business days following entry of the Bidding Procedures Order (the "Contract Notice Deadline"), the Debtors shall file with the Court and serve on each counterparty to an Assumed Contract (each, a "Counterparty," and collectively, the "Counterparties") the Contract Notice.

b. The Contract Notice shall include, without limitation, the cure amount (each, a "Cure Amount"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assumed Contracts. If a Counterparty objects to (i) the assumption and assignment of the Counterparty's Assumed Contract, (ii) the Cure Amount for its Assumed Contract or (iii) the provision of adequate assurance of future performance, the Counterparty must file with the Court and serve on the Objection Notice Parties a written objection (a "Contract Objection").

c. Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, the Local Bankruptcy Rules and all orders of the Court entered in these chapter 11 cases; (iii) state the basis for such objection; (iv) if such objection is to the Cure Amount, state with specificity what Cure Amount the Counterparty believes is required (in all cases, with appropriate documentation in support thereof); and (v) be filed with the Court and served on the Objection Notice Parties by no later than twenty-one (21) days following mailing of the Contract Notice (the "Contract Objection Deadline").

*Any objections to adequate assurance of performance by the Stalking Horse Bidder shall be filed by the Contract Objection Deadline.*

*Any objections to adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder shall be filed in accordance with subparagraph (e) below.*

d. As soon as reasonably practicable after the completion of the Auction, or to the extent an Auction is not necessary, then after the Debtors' determination of the Qualifying Bids (in consultation with the Consultation Parties), the Debtors shall file with the Court a notice identifying the Successful Bidder(s) (a "Notice of Successful Bidder(s)"), which shall set forth, among other things, (i) the Successful Bidder(s) and Back-Up Bidder(s) (if any), (ii) the Selected Assumed Contracts, and (iii) the proposed assignee(s) of such Selected Assumed Contracts. For the avoidance of doubt, if the Debtors do not timely receive any Qualifying Bids for the Alliance Assets other than the Stalking Horse Bid, the Stalking Horse Bidder shall be deemed the Successful Bidder for the Alliance Assets.

e. As soon as reasonably practicable after the completion of the Auction or, to the extent an Auction was not necessary, after the Debtors' determination of the Qualifying Bids (in consultation with the Consultation Parties), the Debtors will cause to be served by overnight mail upon each affected Counterparty and its counsel (if known) the Notice of Successful Bidder(s).

*Contract Objections __solely__ on the basis of adequate assurance of future performance shall be filed not later than March 25, 2025 at noon (ET), except with respect to Contract Objections to the Stalking Horse Bidder's adequate*

*assurance of future performance, which shall be filed not later than the Contract Objection Deadline.*

f.  At the Sale Hearing, the Debtors will seek Court approval of their assumption and assignment to the Successful Bidder(s), of only those Assumed Contracts that have been selected by the Successful Bidder(s), to be assumed and assigned (the "Selected Assumed Contracts"). The Debtors and their estates reserve any and all rights with respect to any Assumed Contracts that are not ultimately designated as Selected Assumed Contracts.

g.  If no Contract Objection is timely received with respect to a Selected Assumed Contract: (i) the Counterparty to such Selected Assumed Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Successful Bidder of the Selected Assumed Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) any and all defaults under the Selected Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Selected Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Assumed Contract against the Debtors and their estates or the Successful Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.

h.  To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors or fixed by the Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, the Selected Assumed Contract may be assumed by the Debtors and assigned to the applicable Successful Bidder provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the applicable Successful Bidder, pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

i.  Notwithstanding anything to the contrary herein, if after the Sale Hearing or the entry of the Sale Order additional executory contracts or unexpired leases of the Debtors are determined to be Assumed Contracts, as soon as practicable

11

thereafter, the Debtors shall file with the Court and serve, by overnight delivery, on the Counterparties a Contract Notice, and such Counterparties shall file any Contract Objections not later than fourteen (14) days thereafter; provided, however, that any additional Assumed Contracts shall be identified no later than the deadline set forth in section 365(d) of the Bankruptcy Code. If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Assumed Contracts to the applicable Successful Bidder without further notice to creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be subject to the terms of the Sale Order.

17.    The Debtors' decision to assume and assign the Assumed Contracts to the Successful Bidder(s) is subject to this Court's approval and the closing of the Sale. Accordingly, absent this Court's approval and the closing of the Sale, the Assumed Contracts shall not be deemed assumed or assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these chapter 11 cases.

18.    The inclusion of a contract, lease or other agreement on a Contract Notice shall not constitute or be deemed a determination or admission by the Debtors and their estates or any other party in interest that such contract, lease or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of the Debtors and their estates with respect thereto shall be reserved.

**RELATED RELIEF**

19.    All rights of the Debtors, as they may reasonably determine to be in the best interest of their estates, in consultation with the Consultation Parties, to modify the Bidding Procedures in good faith, to further the goal of attaining the highest or otherwise best offer for the Assets, or impose, at or prior to selection of the Successful Bidder(s), additional customary terms and conditions on the Sale of the Assets, are reserved to the extent set forth in the Bidding Procedures; provided, however that the Debtors shall not modify the terms of the Stalking Horse Agreement,

the Break-Up Fee or Expense Reimbursement.  The Debtors shall provide reasonable notice of any modification to any Qualifying Bidder, including the Stalking Horse Bidder.

20.     The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

21.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Bidding Procedures Order shall not diminish or impair the effectiveness or enforceability of such a provision.

22.     Nothing in this Bidding Procedures Order or the Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of a Debtor or any of its Debtor or non-debtor affiliates to take any action, or to refrain from taking any action, with respect to the Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body reasonably determines in good faith, after consultation with their counsel, that taking such action, or refraining from taking such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

23.     In the event of any inconsistencies between this Bidding Procedures Order and the Motion, this Bidding Procedures Order shall govern in all respects. In the event of any inconsistencies between this Bidding Procedures Order and the Bidding Procedures, the Bidding Procedures shall govern in all respects.

24.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), 7052 or 9014, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

25.    The Debtors are authorized and empowered to execute and deliver such documents, and to take and perform all actions, necessary to implement and effectuate the relief granted in this Bidding Procedures Order.

26.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Bidding Procedures Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Bidding Procedures, the Stalking Horse Agreement or the asset purchase agreement with any Successful Bidder(s).

# **EXHIBIT 1**

## **Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

## BIDDING PROCEDURES

On January 14, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are maintaining their business and managing their property as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On [●], 2025, the United States Bankruptcy Court for the District of Maryland (the "Court") entered an order [D.I. ●] (the "Bidding Procedures Order"),[2] which, among other things, authorized the Debtors to solicit bids in accordance with the procedures outlined herein (the "Bidding Procedures") for one or more sales or dispositions (collectively, the "Sale(s)") of the Alliance Assets, the Diamond UK Assets and all other assets of the Debtors (collectively, the "Assets") or subgroups thereof. In connection therewith, the Debtors have secured a stalking horse bid from Universal Distribution LLC (the "Stalking Horse Bidder"), for a subset of the Debtors' assets, constituting substantially all of the assets used in the Debtors' Alliance Game Distributors business (the "Alliance Assets"). Pursuant to the parties' stalking horse asset purchase agreement (the "Stalking Horse Agreement")[3], the Stalking Horse Bidder, among other things, has committed to (a) purchase, acquire, and take assignment and delivery of, free and clear of all liens, claims, encumbrances, and other interests (except as otherwise provided in the Stalking Horse Agreement) of the Alliance Assets, and (b) assume certain liabilities associated with the Debtors' operations as set forth in the Stalking Horse Agreement (the "Stalking Horse Bid").

The Bidding Procedures set forth the process by which the Debtors are authorized to solicit the highest or otherwise better bid for the Debtors' Assets culminating in an auction (the

---

[1]   The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585).  The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2]   Capitalized terms used but not defined herein are defined in the Bidding Procedures Order.

[3]   The Stalking Horse Agreement is attached to the Bidding Procedures Motion as Exhibit B, copies of which can be obtained at https://cases.omniagentsolutions.com/home?clientId=3721.

"Auction") if competing Qualifying Bids (as defined below) are received.  The Sale(s) are contemplated to be implemented pursuant to the terms and conditions of either (a) the Stalking Horse Agreement, as the same may be amended pursuant to the terms thereof, or (b) such other applicable asset purchase agreement upon the receipt of a Successful Bid(s) (as defined herein) that the Debtors have determined in their business judgment is the best or highest bid for the applicable Assets in accordance with the Bidding Procedures.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT GEOFFREY RICHARDS (GEOFFREY.RICHARDS@RAYMONDJAMES.COM) AND ALEC HAESLER (ALEC.HAESLER@RAYMONDJAMES.COM).**

### Summary of Important Dates and Deadlines

| Deadline | Date |
|---|---|
| Deadline to mail Sale Notice and Contract Notice | **Within 5 business days following entry of the Bidding Procedures Order** |
| Sale Objection Deadline[4] | **March 14, 2025** |
| Contract Objection Deadline | **21 days following mailing of the Contract Notice** |
| Bid Deadline | **March 19, 2025, at 5:00 p.m. (ET)** |
| Deadline for Debtors to Designate Qualifying Bids and Baseline Bid | **March 21, 2025, at 1:00 p.m. (ET)** |
| Auction | **March 24, 2025, commencing at 10:00 a.m. (ET)** |
| Deadline to File and Serve Notice of Successful Bidder | **As soon as practicable after completion of the Auction** |
| Adequate Assurance Objection Deadline for Successful Bidder other than the Stalking Horse Bidder | **March 25, 2025, at noon (ET)** |
| Debtors' Deadline to Reply to Sale Objections (other than Adequate Assurance Objections) | **March 25, 2025, at noon (ET)** |
| Sale Hearing (subject to Court availability) | **March 27, 2025, at 10:00 a.m. (ET)** |

---

[4] The Sale Objection Deadline and Contract Objection Deadline apply to all objections to the sale of the Assets and the assumption and assignment of the Assumed Contracts (including adequate assurance of future performance by the Stalking Horse Bidder), respectively, with the exception of objections related to adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder.

55051408.5 02/10/2025

| | |
|---|---|
| Sale Closing | **April 10, 2025** |

## I.    Participation Requirements

Any person or entity that wishes to participate in the bidding process for the Alliance Assets, the Diamond UK Assets or any other Assets (each, a "Potential Bidder") must first become a "Qualifying Bidder" in the reasonable discretion of the Debtors.  To become a Qualifying Bidder, and thus conduct due diligence and gain access to the Debtors' confidential electronic data room (the "Data Room"), a Potential Bidder must submit to the Debtors and their advisors (unless waived by the Debtors):

a.    Documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

b.    An executed nondisclosure or confidentiality agreement in form and substance satisfactory to the Debtors;

c.    A statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the interested party has a *bona fide* interest in consummating a sale transaction; and

d.    Sufficient information, as determined by the Debtors to allow the Debtors to determine that the interested party (x) has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their discretion), and (y) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder, pursuant to section 365 of the Bankruptcy Code, in connection with the Sale.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures: (i) the Stalking Horse Bidder is a Qualifying Bidder, and the Stalking Horse Agreement is a Qualifying Bid; and (ii) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets.

## II.    Due Diligence

The Debtors will provide any Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate

under the circumstances. All additional due diligence requests shall be directed to: (a) Geoffrey Richards (geoffrey.richards@raymondjames.com) and Alec Haesler (alec.haesler@raymondjames.com) and/or (b) Jeffrey C. Hampton (jeffrey.hampton@saul.com) and Adam H. Isenberg (adam.isenberg@saul.com).

The due diligence period shall extend through and including the Bid Deadline. The Debtors may, but shall not be obligated to, in their reasonable discretion, furnish any due diligence information after the Bid Deadline.

The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder. Notwithstanding any prepetition limitations, including, without limitation, any nondisclosure, confidentiality or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and the Sale.

## III.   **Bid Requirements**

Other than in the case of the Stalking Horse Bid and any credit bid submitted by JPMorgan Chase Bank, N.A. (the "Lender"), to be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements (each, a "Bid Requirement"):

a.    be in writing;

b.    fully disclose the identity of the Qualifying Bidder and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

c.    set forth the purchase price to be paid by such Qualifying Bidder in U.S. dollars. For Qualifying Bidders seeking to purchase the Alliance Assets, such purchase price must equal or exceed $40,865,000 (i.e., the Purchase Price of the Stalking Horse Bid plus the Break-Up Fee and Expense Reimbursement plus $500,000);

d.    not propose payment in any form other than cash (except as otherwise expressly set forth in the Bidding Procedures);

e.    state the liabilities proposes to be paid or assumed by such Qualifying Bidder;

f.    specify the Assets that are included in the bid and state that such Qualifying Bidder offers to (i) purchase the Assets, and (ii) assume, if applicable, liabilities; *provided, however*, that if the Qualifying Bidder seeks to purchase the Alliance Assets it shall

do so based upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the Stalking Horse Agreement;

g. specify whether the bid includes the proposed purchase of (i) some or all of the assets of Diamond UK, (ii) the equity of Diamond UK, or (iii) the stock of Comic Exporters, Inc., and Comic Holdings Inc.;

h. if the Qualifying Bidder seeks to purchase the Alliance Assets, be accompanied by an asset purchase agreement (a "Modified Agreement") marked to reflect any variations from the Stalking Horse Agreement;

i. if the Qualifying Bidder solely seeks to purchase Assets other than the Alliance Assets, be accompanied by an asset purchase agreement;

j. to the extent applicable, be accompanied by a form of agreement for any Diamond UK transaction;

k. at the Debtors' request, allocate the bid among the assets proposed to be purchased;

l. state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until two (2) business days after the closing of the Sale;

m. state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by its bid and provide written evidence in support thereof;

n. contain such financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the bid, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B), including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to serve such information on any counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale within one (1) business day after the Debtors' receipt of such information;

o. identify with particularity each executory contract and unexpired lease the assumption and assignment of which is a condition to close the transactions contemplated by the Qualifying Bidder's bid;

p. contain a commitment to close the transactions contemplated by the Qualifying Bidder's bid by no later than April 10, 2025, as may be extended by the Debtors, in consultation with the Consultation Parties, to the extent that the Qualifying Bidder seeks to purchase assets other than the Alliance Assets;

q. not request or entitle such Qualifying Bidder to any break-up fee, termination fee,

expense reimbursement or similar type of fee or payment;

r.    not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval or due diligence;

s.    contain written evidence satisfactory to the Debtors that the Qualifying Bidder has a commitment for financing or other evidence of the ability to close the transactions contemplated by its bid, with appropriate contact information for such financing sources;

t.    contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets it seeks to acquire, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale;

u.    sets forth (i) a statement or evidence that the Qualifying Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable, and pay the fees associated with such filings, and (ii) any regulatory and third-party approval required for the Qualifying Bidder to close the transactions contemplated by the bid, and the time period within which the Qualifying Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than five (5) days following execution and delivery of such transaction documents contemplated by the bid, those actions the bidder will take to ensure receipt of such approval(s) as promptly as possible); provided that a Qualifying Bidder agrees that its legal counsel will coordinate in good faith with Debtors', Committee's, and Lender's legal counsel to discuss and explain Qualifying Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and for those Qualifying Bidders seeking to acquire the Alliance Assets in no event later than the time period contemplated in the Modified Agreement; provided, further that the offer contains a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

v.    provides for the Qualifying Bidder to serve as a backup bidder (the "Back-Up Bidder") if the Qualifying Bidder's bid is the next highest and best bid (the "Back-Up Bid") after the Successful Bid;

w.    includes written evidence of authorization and approval from the Qualifying

Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the bid and the transactions contemplated therein;

x.      if the Qualifying Bidder's bid seeks to acquire only the Alliance Assets, provides a good faith cash deposit (the "Deposit") in an amount equal to $3,000,000; and

y.      if the Qualifying Bidder's bid seeks to acquire Assets other than, or in addition to, the Alliance Assets, provides a Deposit of equal to 10% of the proposed purchase price; and

z.      provides that the Deposit shall be forfeited to the Debtors in the event of the Qualifying Bidder's breach of, or failure to perform under, the Qualifying Bidder's bid, including any agreements set forth in such bid, without prejudice to any and all other rights and remedies of the Debtors.

A bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors reserve the right to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.  For the avoidance of doubt, the Lender shall be deemed a "Qualifying Bidder" in all respects and any bid, including a credit bid under section 363(k) of the Bankruptcy Code, shall be deemed a "Qualifying Bid" in all respects; provided that if the Lender elects to credit bid, the Lender shall notify the Debtors and the Committee of its credit bid no later than twenty-four (24) hours after the last bid has been received and shared with the Consultation Parties.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

## IV.    <u>Bid Protections</u>

The Court has approved the following Bid Protections in favor of the Stalking Horse Bidder: (a) a break-up fee of three percent (3%) of the Purchase Price (the "Break-Up Fee"); (b) reimbursement of the Stalking Horse Bidder's reasonable and actual documented out-of-pocket expenses incurred in respect of considering, negotiating and consummating the Sale of up to one-half percent (0.5%) of the Purchase Price (the "Expense Reimbursement"); (c) an initial overbid of the Stalking Horse Bid that equals or exceeds the sum of: (i) the Purchase Price (as defined in the Stalking Horse Agreement); (ii) the Break-Up Fee and Expense Reimbursement; and (iii) $500,000 (the "Initial Overbid", and together with the Break-Up Fee and Expense Reimbursement, the "Bid Protections").  The Break-Up Fee is $1,170,000 and the Expense Reimbursement is up to $195,000.

The Debtors, in consultation with the Consultation Parties, reserve the right to (i) select a stalking horse bidder or bidders for the Debtors' assets other than the Alliance Assets and enter

into a purchase agreement with such stalking horse bidder(s) and (ii) in connection with any stalking horse purchase agreements for the Debtors' assets other than the Alliance Assets, and upon notice to all parties in interest and an opportunity to object, provide bid protections to such stalking horse bidder(s).

## V.    Bid Deadline

A Qualifying Bidder, other than the Stalking Horse Bidder, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Bidding Procedures Notice Parties and the Consultation Parties so as to be received on or before **March 19, 2025 at 5:00 p.m. (ET)** (the "Bid Deadline"); provided that the Debtors may extend the Bid Deadline without further order of the Court, after consultation with the Consultation Parties. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of the Chapter 11 Cases indicating the same. **Any party that does not submit a bid by the Bid Deadline (other than a credit bid by the Lender) will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction**.

## VI.    Evaluation of Qualifying Bids

The Debtors will deliver, within one (1) business day after receipt thereof, copies of all bids from Qualifying Bidders to the Consultation Parties.

The Debtors, after consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid.

No later than **March 21, 2025, at 1:00 p.m. (ET)**, the Debtors shall: (i) notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid; and (ii) determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or best bid for purposes of constituting the opening bid of the Auction (the "Baseline Bid" and the Qualifying Bidder submitting the Baseline Bid, the "Baseline Bidder") and shall promptly notify the Stalking Horse Bidder and all Qualifying Bidders with Qualifying Bids of the Baseline Bid.

The Debtors reserve the right, in consultation with the Consultation Parties, to withdraw any Assets (except for the Alliance Assets) from the sale process at any time before the Auction.

## VII.    No Qualifying Bids

If no Qualifying Bids other than the Stalking Horse Bid are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that the Court approve the Stalking Horse Agreement and the transactions contemplated thereunder.

## VIII.    Right to Credit Bid

8

Any Potential Bidder that has a valid, unavoidable and perfected lien on any assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; and provided further that any credit bid by a Secured Creditor shall contain a cash component sufficient to repay in fully the secured claims of a senior Secured Creditor, if any (unless such senior Secured Creditor agrees to a different treatment).  For the avoidance of doubt, the Lender has the right to credit bid the full amount of the then outstanding Prepetition Debt and DIP Debt[5] in accordance with section 363(k) of the Bankruptcy Code, pursuant to the Interim DIP Order.[6]  Any such bid by the Lender shall be deemed a "Qualifying Bid" for all purposes within the meaning of the Bidding Procedures; provided that if the Lender elects to credit bid, the Lender shall notify the Debtors and Committee of its credit bid no later than twenty-four (24) hours after the last bid has been received and shared with the Consultation Parties.

## IX.    Auction

If the Debtors receive one or more timely Qualifying Bids for the same Assets, other than the Stalking Horse Bid, then the Debtors shall conduct the Auction. Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or best bid for the applicable Assets, which will be determined by considering, among other things, the following non-binding factors: (a) with respect to the Alliance Assets, the number, type and nature of any changes to the Stalking Horse Agreement requested by each bidder and the extent to which such modifications are likely to delay closing of the Sale and the cost to the Debtors and their estates of such modifications or delay; and (b) with respect to all Assets, (i) the total consideration to be received by the Debtors and their estates, (ii) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval, (iii) the net benefit to the Debtors' estates, and (iv) any other factors the Debtors may reasonably deem relevant.

The Auction shall be governed by the following procedures:

a.    the Auction shall be held on **March 24, 2025, at 10:00 a.m. (ET)** (i) at the offices of Raymond James & Associates, Inc., 320 Park Avenue, 12th Floor, New York, New York 10022 or (ii) on such other date and/or at such other location or by virtual means as determined by the Debtors in consultation with the Consultation Parties;

b.    only the Qualifying Bidders with Qualifying Bids (the "Auction Bidders"), shall be

---

[5]    "Prepetition Debt" and "DIP Debt" shall have the meaning ascribed in the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* (D.I. 54) (the "Interim DIP Order").

[6]    Any credit bid for any of the Debtors' Assets is subject to the right of the Office of the United States Trustee and any other party in interest to object to the credit bid for cause under section 363(k) of the Bankruptcy Code.

entitled to make any subsequent bids at the Auction;

c.     each Auction Bidder must attend the Auction, either on its own behalf or through a duly authorized representative with power to bind such Auction Bidder at the Auction;

d.     only the Debtors, the Auction Bidders, the Consultation Parties, and all creditors of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction; provided that any such creditors provide counsel for the Debtors one (1) day's prior written notice of their intent to attend the Auction, including the name, title, contact information, and affiliation of any individual attending on behalf of such creditor; provided that creditors may only attend the auction to observe the proceedings and shall not be entitled to participate; provided further that the Debtors' right to object on an emergency basis to any such creditor's proposed attendance at the Auction is reserved;

e.     the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

f.     the Auction Bidders shall confirm on the record that they have not engaged in any collusion with respect to their bid, the Bidding Procedures, the Auction or the Sale;

g.     bidding shall commence at the amount of the Baseline Bid, and subsequently continue in minimum increments of at least $250,000 (each, an "Overbid"), provided that: (i) each Overbid must be a Qualifying Bid; and (ii) the Debtors, in consultation with the Consultation Parties, shall retain the right to modify the bid increment requirements at the Auction, provided further, for the avoidance of doubt, that the Debtors shall have the right to impose other bid increments for Assets other than the Alliance Assets;

h.     any Overbid must remain open and binding on the Qualifying Bidder until and unless (i) the Debtors accept a higher or otherwise better bid submitted by another Qualifying Bidder during the Auction as an Overbid and (ii) such Overbid is not selected as the Back-Up Bid;

i.     the Auction may include separate discussions or negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all Auction Bidders;

j.     all material terms of the bid that is deemed to be the highest or otherwise best bid for Assets for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest and best bid;

k.     the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional or modified procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted

to make subsequent bids) for conducting the Auction; provided that such rules are (i) not materially inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or any applicable order of the Court entered in connection with the chapter 11 cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders; provided further that such rules shall not modify the terms of the Stalking Horse Agreement, the Stalking Horse's Break-Up Fee or Expense Reimbursement or the consultation rights of the Consultation Parties set forth in these Bidding Procedures;

l.      each Auction Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of the Auction Bidders, (ii) bring any such action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

m.      the Auction Bidders shall have the right to make additional modifications to their Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) with respect to Qualifying Bids on the Alliance Assets, any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of the Stalking Horse Agreement, and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Sale Hearing, whichever occurs sooner, unless such bid is selected as the Successful Bid or the Back-Up Bid, which shall remain binding as provided for herein;

n.      the Debtors and the Consultation Parties shall have the right to request any additional financial information that will allow the Debtors and the Consultation Parties to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate its proposed Qualifying Bid, as it may be amended during the Auction and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

o.      upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, subject to Court approval, the offer or offers for the Assets that is or are the highest or otherwise best from among the Qualifying Bids submitted at the Auction (the "Successful Bid(s)"). In making this decision, the Debtors may consider, in consultation with the Consultation Parties, among other things, the amount of the purchase price, the likelihood of the bidder's ability to

close a transaction and the timing thereof, the number, type and nature of any changes to the Stalking Horse Agreement requested by each bidder for the Alliance Assets, and the net benefit to the Debtors' estates. The bidder(s) submitting such Successful Bid(s) shall become the "Successful Bidder(s)". The Debtors may, in their sole discretion, designate one or more Back-Up Bids (and the corresponding Back-Up Bidder(s)) to purchase the Assets in the event that the Successful Bidder(s) do not close the Sale(s); and

p.    before the Sale Hearing, the Successful Bidder(s) and any Back-Up Bidder(s) shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

**THE SUCCESSFUL BID(S) AND ANY BACK-UP BID(S) SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE SUCCESSFUL BIDDER(S) AND THE BACK-UP BIDDER(S), RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED. EACH QUALIFYING BID THAT IS NOT DESIGNATED A SUCCESSFUL BID OR BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.**

## X.    Sale Hearing

The Successful Bid(s) and any Back-Up Bid(s) (or if no Qualifying Bid other than the Stalking Horse Bid is received, then the Stalking Horse Bid as the Successful Bid) will be subject to approval by the Court. The Sale Hearing to approve the Successful Bid(s) and any Back-Up Bid(s) shall take place on **March 27, 2025, at 10:00 a.m. (ET)** subject to Court availability. After consultation with the Consultation Parties, the Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket of these chapter 11 cases.

## XI.    Back-Up Bidder

Notwithstanding any of the foregoing, in the event that Successful Bidder fails to close the Sale on or before April 10, 2025 (or such date as may be extended by the Debtors, in consultation with the Consultation Parties), the Back-Up Bid will be deemed to be the Successful Bid, the Back-Up Bidder will be deemed to be the Successful Bidder, and the Debtors shall be authorized, but not directed, to close the Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

## XII.    Return of Deposits

All Deposits shall be returned to each bidder not selected by the Debtors as the applicable Successful Bidder, other than the Stalking Horse Bidder, no later than five (5) business days following the closing of the Sale. The deposit of the Successful Bidder or, if the Sale is closed with

the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale. If the Successful Bidder(s) (or, if any Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform. For the avoidance of doubt, the Debtors' retention of a Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Successful Bidder's or Back-Up Bidder's breach or failure to close and all such rights and remedies are preserved.

## XIII.    **Bankruptcy Court Jurisdiction**

Any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of such parties, (b) bring any such action or proceeding in the Court, and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

## XIV.    **Notice and Consultation Parties**

The term "Bidding Procedures Notice Parties" as used in these Bidding Procedures shall mean: (i) counsel to the Debtor, Saul Ewing LLP, 1500 Market Street, 38th Floor, Philadelphia, Pennsylvania 19102, Attn: Jeffrey C. Hampton (jeffrey.hampton@saul.com) and Adam H. Isenberg (adam.isenberg@saul.com), and 1201 N. Market Street, Suite 2300, Wilmington, Delaware 19801, Attn: Paige N. Topper (paige.topper@saul.com); and (ii) investment banking advisor to the Debtors, Raymond James & Associates, Inc., Geoffrey Richards (geoffrey.richards@raymondjames.com) and Alec Haesler (alec.haesler@raymondjames.com).

The term "Consultation Parties" as used in these Bidding Procedures shall mean: (i) the official committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors' Committee"), and notice to the Creditors' Committee under these Bidding Procedures should be sent to (i) Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York 10020, Attn:    Bruce    S.    Nathan    (bnathan@lowenstein.com)    and    Gianfranco    Finizio (gfinizio@lowenstein.com), and (ii) Tydings & Rosenberg LLP, One E. Pratt St., Suite 901, Baltimore, Maryland 21202, Attn: Stephen B. Gerald (sgerald@tydings.com) and Dennis J. Shaffer (dshaffer@tydings.com); and (ii) the Lender, and notice to the Lender under these Bidding Procedures shall be sent to counsel for the Lender, Troutman Pepper Locke LLP, 111 Huntington Avenue,    9th    Floor,    Boston,    Massachusetts    02199,    Attn:    Jonathan    W.    Young (jonathan.young@troutman.com) and David Ruediger (david.ruediger@troutman.com).

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment

Any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not waive, impair, or limit any rights of the Consultation Parties, including, without limitation, the right to oppose any relief sought by the Debtors pursuant to or under the Bidding Procedures or the Bidding Procedures Order.  All rights of the Consultation Parties with respect to any proposed Sale Transaction(s) are fully reserved.

In the event that any Consultation Party or any member of any Creditors' Committee or an affiliate of any of the foregoing submits a bid that is a Qualifying Bid, including a credit bid, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived without further action; provided that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

If a member of any Creditors' Committee submits a Qualifying Bid, any Creditors' Committee will continue to have consultation rights as set forth in these Bidding Procedures; provided that any Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any information regarding the sale of the Assets to such member

## XV.    **Reservation of Rights**

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right, after consultation with the Consultation Parties, to modify the Bidding Procedures at, before, or during the Auction, including, without limitation, to extend the deadlines set forth herein, modifying bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or before the Auction, and adjourn the Sale Hearing.

Nothing in these Bidding Procedures shall require the Debtors to take any action, or to refrain from taking any action to the extent the Debtors determine that refraining from taking such action or taking such action, as applicable, would be inconsistent with applicable law or their fiduciary obligations under applicable law.

**<u>EXHIBIT 2</u>**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF SALE, BIDDING PROCEDURES, POTENTIAL
AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE** that, on January 14, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Maryland (the "Court"), commencing these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that, on January 17, 2025, the Debtors filed a motion [D.I. [●]] (the "Bidding Procedures Motion") seeking entry of an order (the "Bidding Procedures Order"), (i) authorizing and approving bidding procedures (the "Bidding Procedures")[2] in connection with one or more sales or dispositions (collectively, the "Sale(s)") of the Alliance Assets, the Diamond UK Assets, and all other assets of the Debtors (collectively, the "Assets"), (ii) approving certain Bid Protections, (iii) establishing certain dates and deadlines for the sale process, including scheduling an auction of the Assets (the "Auction"), if applicable, in accordance with the Bidding Procedures, and the hearing with respect to the approval of the Sale (the "Sale Hearing"), (iv) approving the form and manner of notice of the Auction, if any, the Sale and the Sale Hearing, (v) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale and approving the form and manner of notice thereof, and (vi) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that, attached hereto as **Schedule 1**, is a description of the Assets for sale in connection with the Debtors' postpetition sale process.

---

[1]    The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585).  The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2]    Capitalized terms not defined in this notice are used as defined in the Bidding Procedures Motion or the Bidding Procedures, as applicable.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2025, the Court entered the Bidding Procedures Order [D.I. [●]], approving, among other things, the Bidding Procedures, which establish key dates and times relating to the Sale(s) and the Auction.  All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

### Contact Persons for Parties Interested in Submitting a Bid

The Bidding Procedures set forth in detail the requirements for submitting Qualifying Bids, and any person interested in making an offer to purchase the Assets must comply strictly with the Bidding Procedures. Only Qualifying Bids that are submitted in accordance with the Bidding Procedures will be considered by the Debtors.

Any persons interested in making an offer to purchase the Assets should contact the Debtors' investment banker as soon as possible: Raymond James & Associates, Inc., Attn: Geoffrey Richards (geoffrey.richards@raymondjames.com) and Alec Haesler (alec.haesler@raymondjames.com).

### Important Dates and Deadlines[4]

- **Bid Deadline.**  The deadline to submit a Qualifying Bid is **March 19, 2025 at 5:00 p.m. (ET).**

- **Auction.** If one or more Qualifying Bids for the same Assets (other than the Stalking Horse Bid) are received by the Bid Deadline, the Debtors will conduct the Auction, which shall take place on **March 24, 2025, at 10:00 a.m. (ET)** (i) at the offices of Raymond James & Associates, Inc., 320 Park Avenue, 12th Floor, New York, New York 10022 or (ii) on such other date and/or at such other location or by virtual means as determined by the Debtors in consultation with the Consultation Parties.  If the Debtors do not receive any Qualifying Bids (other than the Stalking Horse Bid), the Debtors will not conduct the Auction and will designate the Stalking Horse Bid as the Successful Bid.

- **Objection Deadlines.** The deadline to file an objection with the Court to the consummation of the Sale(s) (excluding objections relating solely to the conduct of the Auction or identity of any Successful Bidder other than the Stalking Horse Bidder) is **March 14, 2025** (the "Sale Objection Deadline"). If the Auction is held, objections relating solely to the identity of the Successful Bidder(s) (other than the Stalking Horse Bidder) or adequate assurance of future performance provided by the Successful Bidder(s) must be filed with the Court by **March 25, 2025, at noon (ET)** (the

---

[3]    To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

[4]    The following dates and deadlines may be extended by the Debtors (in consultation with the Consultation Parties) or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

"Adequate Assurance Objection Deadline"). Any objections not resolved prior to the Sale Hearing shall be argued at the Sale Hearing or such other time as set by the Court.

- **Sale Hearing.** The Sale Hearing to consider the proposed Sale will be held before the Honorable Chief Judge Rice on **March 27, 2025, at 10:00 a.m. (ET)**, or such other date as determined by the Court, at the United States Bankruptcy Court for the District of Maryland,  101 W. Lombard St., Baltimore, Maryland 21201.

## Filing Objections

Objections to the Sale(s) or conduct of the Auction, if any, must (i) be made in writing; (ii) state with particularity the grounds for the response or objection; (iii) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (iv) be filed with the Court by the Sale Objection Deadline or Adequate Assurance Objection Deadline, as applicable; and (v) be served on the following parties (collectively, the "Objection Notice Parties"): (a) proposed counsel to the Debtors, Saul Ewing LLP, 1500 Market Street, 38th Floor, Philadelphia, Pennsylvania 19102, Attn: Jeffrey C. Hampton (jeffrey.hampton@saul.com) and Adam H. Isenberg (adam.isenberg@saul.com), and 1201 N. Market Street, Suite 2300, Wilmington, Delaware 19801, Attn: Paige N. Topper (paige.topper@saul.com); (b) counsel to the DIP Lender, Troutman Pepper Locke LLP, 111 Huntington Avenue, 9th Floor, Boston, Massachusetts 02199, Attn: Jonathan W. Young (jonathan.young@troutman.com) and David Ruediger (david.ruediger@troutman.com); (c) the Office of the United States Trustee for the District of Maryland, Attn: Gerard R. Vetter (gerard.r.vetter@usdoj.gov); (d) proposed counsel to the Committee, (i) Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York 10020, Attn: Bruce S. Nathan (bnathan@lowenstein.com) and Gianfranco Finizio (gfinizio@lowenstein.com), and (ii) Tydings & Rosenberg LLP, One E. Pratt St., Suite 901, Baltimore, Maryland 21202, Attn: Stephen B. Gerald (sgerald@tydings.com) and Dennis J. Shaffer (dshaffer@tydings.com); and (e) any Successful Bidders.

## Consequences of Failing to Timely File an Objection

**ANY PARTY WHO FAILS TO MAKE A TIMELY SALE OBJECTION ON OR BEFORE THE SALE OBJECTION DEADLINE OR, SOLELY WITH RESPECT TO OBJECTIONS RELATED TO THE IDENTITY OF THE SUCCESSFUL BIDDER(S) (OTHER THAN THE STALKING HORSE BIDDER) OR ADEQUATE ASSURANCE OF FUTURE PERFORMANCE PROVIDED BY THE SUCCESSFUL BIDDER(S), ADEQUATE ASSURANCE OBJECTION DEADLINE, AS APPLICABLE, IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER MAY BE FOREVER BARRED FROM ASSERTING ANY SALE OBJECTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS.**

## Sale Free and Clear

**The Sale(s) will be free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale(s), whether known or unknown,**

whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale(s). Accordingly, as a result of the Sale(s), the Purchaser(s) will not be a successor to any of the Debtors by reason of any theory of law or equity, and the Purchaser(s) will have no liability, except as expressly provided in the Purchaser's Asset Purchase Agreement, for any liens, claims, encumbrances and other interests against or in any of the Debtors under any theory of law, including successor liability theories.

## Obtaining Additional Information

Copies of the Bidding Procedures Motion, the Bidding Procedures, the Bidding Procedures Order, the Stalking Horse Agreement and all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at https://cases.omniagentsolutions.com/home?clientId=3721, or can be requested by calling the Debtors' claims and noticing agent, Omni Agent Solutions, at 866-771-0556 (U.S. & Canada toll free) or 818-639-4849 (International).

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE COURT IN THE CHAPTER 11 CASES MAY RESULT IN REJECTION OF YOUR BID.**

Dated: February 10, 2025

**SAUL EWING LLP**

By: *DRAFT*_____

Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
Turner N. Falk (admitted *pro hac vice*)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
            adam.isenberg@saul.com
            turner.falk@saul.com

-and-

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
1201 N. Market Street, Suite 2300

Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
       paige.topper@saul.com
       nicholas.smargiassi@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*

## Schedule 1

| | Business | Description |
|---|---|---|
| 1 | Diamond Comic Distributors | Division of Debtor Diamond Comic Distributors, Inc., that distributes comic books, graphic novels, toys, games, and other pop culture-related merchandise. |
| 2 | Diamond Book Distributors | Division of Debtor Diamond Comic Distributors, Inc., that distributes English-language graphic novels, manga, games, and merchandise. |
| 3 | Alliance Game Distributors | Division of Debtor Diamond Comic Distributors, Inc., that distributes board games, card games, role-playing games, miniatures, and other gaming products. |
| 4 | Collectible Grading Authority (CGA) | Division of Debtor Diamond Comic Distributors, Inc., that provides professional evaluation, authentication and grading services of vintage and modern toys, video games and other related collectible assets. |
| 5 | FandomWorld | Division of Debtor Diamond Comic Distributors, Inc., that operates a direct-to-consumer e-commerce platform offering a range of collectible merchandise for sale. |
| 6 | FreeComicBookDay.com | Division of Debtor Diamond Comic Distributors, Inc., that operates an annual promotional event where participating comic bookstores give away free comic books to drive product awareness and attract new customers. |
| 7 | Diamond Select Toys & Collectibles, LLC | Manufactures collectible toys and animated style statues based on licensed intellectual property from companies like Disney, Marvel, and Warner Bros. |
| 8 | Gentle Giant Ltd. | Division of Debtor Diamond Select Toys & Collectibles, LLC, that manufactures collectible toys and statues based on licensed intellectual property from, among others, Disney and Marvel. |
| 9 | Ironguard Supplies | Division of Debtor Diamond Select Toys & Collectibles, LLC, that manufactures card supplies, comic supplies, and displays, including card binders, card sleeves, magna-armor, backer boards, and comic bags. |
| 10 | Comic Exporter, Inc. | Holding company that owns 50% of non-debtor Diamond Comic Distributors UK, a distributor of comic books, collectibles, and related merchandise in the United Kingdom. |
| 11 | Comic Holdings, Inc. | Holding company that owns 50% of non-debtor Diamond Comic Distributors UK, a distributor of comic books, collectibles, and related merchandise in the United Kingdom. |
| 12 | Diamond Comic Distributors UK | Distributes comic books, collectibles, and related merchandise in the United Kingdom. |

**<u>EXHIBIT 3</u>**

**Contract Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**PLEASE TAKE NOTICE** that, on January 14, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Maryland (the "Court"), commencing these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that, on January 17, 2025, the Debtors filed a motion [D.I. 68] (the "Bidding Procedures Motion") seeking entry of an order (the "Bidding Procedures Order"), (i) authorizing and approving bidding procedures (the "Bidding Procedures")[2] in connection with one or more sales or dispositions (collectively, the "Sale(s)") of the Alliance Assets, the Diamond UK Assets, and all other assets of the Debtors (collectively, the "Assets"), (ii) approving certain Bid Protections, (iii) establishing certain dates and deadlines for the sale process, including scheduling an auction of the Assets (the "Auction"), if applicable, in accordance with the Bidding Procedures, and the hearing with respect to the approval of the Sale (the "Sale Hearing"), (iv) approving the form and manner of notice of the Auction, if any, the Sale and the Sale Hearing, (v) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale and approving the form and manner of notice thereof, and (vi) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2025, the Court entered the Bidding Procedures Order [D.I. [●]], approving, among other things, the Bidding Procedures, which establish key dates and times relating to the Sale and the Auction. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.

---

[1]   The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2]   Capitalized terms not defined in this notice are used as defined in the Bidding Procedures Motion or the Bidding Procedures, as applicable.

**PLEASE TAKE FURTHER NOTICE** that, upon the closing of the Sale(s), the Debtors intend to assume and assign to the Successful Bidder certain executory contracts and unexpired leases (the "Assumed Contracts"). A schedule listing the contracts and leases that may potentially be assumed and assigned as part of the Sale(s) is attached hereto as **Exhibit 1** (the "Contracts Schedule") and may also be viewed free of charge on the Debtors' case information website, located at https://cases.omniagentsolutions.com/home?clientId=3721, or can be requested by calling the Debtors' claims and noticing agent, Omni Agent Solutions, at 866-771-0556 (U.S. & Canada toll free) or 818-639-4849 (International).

**PLEASE TAKE FURTHER NOTICE** that Cure Amounts, if any, for the assumption and assignment of such contracts and leases are also set forth on the Contracts Schedule. Each Cure Amount listed on the Contracts Schedule represents all liabilities of any nature of the Debtors arising under a contract or lease prior to the closing of the Sale(s) or other applicable effective date of the assumption and assignment of such contract or lease, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale(s) or other applicable effective date of the assumption and assignment of such contract or lease.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A CONTRACT OR LEASE THAT MAY BE ASSUMED AND ASSIGNED AS PART OF THE SALE(s).** *The presence of a contract or lease listed on **Exhibit 1** attached hereto does not constitute an admission that such contract or lease is an executory contract or unexpired lease or that such contract or lease will be assumed and assigned as part of the Sale(s). The Debtors reserve all their rights, claims and causes of action with respect to the contracts and leases listed on **Exhibit 1** attached hereto.*

### Filing Objections

Pursuant to the Assumption and Assignment Procedures, objections to the proposed assumption and assignment of a contract or lease on any basis (other than objections related solely to adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder), including any objection relating to Cure Amounts or adequate assurance of the Stalking Horse Bidder's future ability to perform, must (i) be made in writing; (ii) state with particularity the grounds for the response or objection; (iii) if such objection is to the Cure Amount, state with specificity what Cure Amount the counterparty believes is required (in all cases, with appropriate documentation in support thereof); (iv) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (iv) be filed with the Court no later than [●], 2025; and (v) be served on the following parties (collectively, the "Objection Notice Parties"): (a) proposed counsel to the Debtors, Saul Ewing LLP, 1500 Market Street, 38th Floor, Philadelphia, Pennsylvania 19102, Attn: Jeffrey C. Hampton (jeffrey.hampton@saul.com) and Adam H. Isenberg (adam.isenberg@saul.com), and 1201 N. Market Street, Suite 2300, Wilmington, Delaware 19801, Attn: Paige N. Topper (paige.topper@saul.com); (b) counsel to the DIP Lender, Troutman Pepper Locke LLP, 111 Huntington Avenue, 9th Floor, Boston, Massachusetts 02199, Attn: Jonathan W. Young (jonathan.young@troutmant.com) and David Ruediger (david.ruediger@troutman.com); (c) the Office of the United States Trustee for the District of Maryland, Attn: Gerard R. Vetter (gerard.r.vetter@usdoj.gov); (d) proposed counsel to the Committee, (i) Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York 10020, Attn: Bruce S. Nathan

(bnathan@lowenstein.com) and Gianfranco Finizio (gfinizio@lowenstein.com), and (ii) Tydings & Rosenberg LLP, One E. Pratt St., Suite 901, Baltimore, Maryland 21202, Attn: Stephen B. Gerald (sgerald@tydings.com) and Dennis J. Shaffer (dshaffer@tydings.com); and (e) the Stalking Horse Bidder.

The Debtors shall file a notice identifying the Successful Bidder(s) and Back-Up Bidder(s) (if selected) (the "Notice of Successful Bidder") and shall serve the Notice of Successful Bidder on each counterparty to a potential Assigned Contract as soon as reasonably practicable after closing the Auction, if any. Each counterparty to a potential Assigned Contract will then have an opportunity to object to the identity of the Successful Bidder(s) (other than the Stalking Horse Bidder) or adequate assurance of future performance with respect to such counterparty's contract or lease provided by the Successful Bidder(s), which must (i) be in writing, (ii) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (iii) state, with specificity, the legal and factual bases thereof, (iv) be filed with the Court by **March 25, 2025, at noon (ET)** (the "Adequate Assurance Objection Deadline"), and (v) be served on the Objection Notice Parties.

The Court will hear and determine any objections to the assumption and assignment of the Assumed Contracts to the Purchaser at the Sale Hearing or at a later hearing, as determined by the Debtors. The Sale Hearing to consider the proposed Sale(s) shall be held before the Honorable Chief Judge Rice on March 27, 2025, at 10:00 (ET), or such other date as determined by the Court, at the United States Bankruptcy Court for the District of Maryland,  101 W. Lombard St., Baltimore, Maryland 21201.

## Consequences of Failing to Timely Assert an Objection

**UNLESS YOU FILE AN OBJECTION TO THE CURE AMOUNT AND/OR THE ASSUMPTION OR ASSIGNMENT OF YOUR CONTRACT OR LEASE IN ACCORDANCE WITH THE INSTRUCTIONS AND DEADLINES SET FORTH HEREIN, YOU SHALL BE (A) BARRED FROM OBJECTING TO THE CURE AMOUNT SET FORTH ON EXHIBIT 1, (B) ESTOPPED FROM ASSERTING OR CLAIMING ANY CURE AMOUNT AGAINST THE DEBTORS, THE STALKING HORSE BIDDER OR OTHERWISE SUCCESSFUL BIDDER(S) THAT IS GREATER THAN THE CURE AMOUNT SET FORTH ON EXHIBIT 1 AND (C) DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND/OR ASSIGNMENT OF YOUR CONTRACT OR LEASE AND THE ADEQUACY OF THE STALKING HORSE BIDDER'S ASSURANCE OF FUTURE PERFORMANCE.**

## Obtaining Additional Information

Copies of the of the Bidding Procedures Motion, the Bidding Procedures, the Bidding Procedures Order, the Stalking Horse Agreement and all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at https://cases.omniagentsolutions.com/home?clientId=3721, or can be requested by calling the Debtors' claims and noticing agent, Omni Agent Solutions, at 866-771-0556 (U.S. & Canada toll free) or 818-639-4849 (International).

Adequate assurance of future performance information for the Stalking Horse Bidder is available by contacting counsel to the Stalking Horse Bidder at: Whiteford, Taylor & Preston LLP, Attn: Brent C. Strickland (bstrickland@whitefordlaw.com).

Dated: February 10, 2025

**SAUL EWING LLP**

By: _DRAFT_ _____

Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
Turner N. Falk (admitted *pro hac vice*)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
       adam.isenberg@saul.com
       turner.falk@saul.com

-and-

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
       paige.topper@saul.com
       nicholas.smargiassi@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*