**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**Hearing Date**:<br>March 5, 2025 at 2:00 p.m. (ET)<br>**Objection Deadline**:<br>February 26, 2025 |

**DEBTORS' MOTION TO REJECT AGREEMENT WITH JANNEY MONTGOMERY
SCOTT LLC, EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned proposed counsel, respectfully move (the "Motion") and state as follows:

**Relief Requested**

1. The Debtors respectfully seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), rejecting that certain Agreement, dated November 10, 2023 (as amended on July 24, 2024, the "Agreement"), between Debtor Diamond Comic Distributor, Inc. ("DCD") and Janney Montgomery Scott LLC ("Janney"), effective as of the Petition Date (as defined below).

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

**Jurisdiction and Venue**

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a) and 365(a) of Title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6006-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Bankruptcy Rules").

**Background**

4. On January 14, 2025 (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the chapter 11 cases. On January 29, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

5. A description of the Debtors' businesses and the reasons for commencing the chapter 11 cases are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petitions and First Day Relief* (D.I. 20) (the "First Day Declaration") and incorporated herein by reference.

6. Prior to filing these chapter 11 cases, the Debtors considered various strategic options, including a refinancing or sale of certain of their assets. To that end, Debtor DCD entered into the Agreement with Janney on November 10, 2023, pursuant to which Janney agreed to

-3-

provide DCD investment banking services and market DCD's Alliance Game Distributors division.

7. DCD ultimately determined that a termination of Janney's services under the Agreement was in DCD's best interests. By letter dated September 20, 2024, DCD provided written notice to Janney, pursuant to Section 3 of the Agreement, that the Agreement was terminated. A copy of DCD's notice terminating the Agreement is attached hereto as **Exhibit B**. In accordance with the terms of the Agreement, DCD reimbursed Janney for any expenses it had incurred prior to the termination date. Janney has not provided any services under the Agreement to DCD since September 20, 2024. Although DCD terminated the Agreement prepetition in accordance with its terms, the Debtors nonetheless seek to reject the Agreement, out of an abundance of caution, to ensure that the Debtors will not incur further obligations to Janney under the Agreement.

8. After DCD terminated the Agreement with Janney, the Debtors engaged Raymond James & Associates, Inc. ("Raymond James"), as the Debtors' investment banker, to construct and consummate a marketing process in connection with a section 363 sale. On February 10, 2025, the Court approved Raymond James's retention as the Debtors' investment banker. *See Order (I) Authorizing the Retention and Employment of Raymond James & Associates, Inc., as the Debtors' Investment Banker, Effective as of the Petition Date, and (II) Granting Related Relief* [D.I. 126]. Because the Debtors have retained Raymond James, the Agreement with Janney provides no benefit to the Debtors' estates and should be rejected, effective as of the Petition Date.

**Basis for Relief Requested**

A.  **Rejection of the Agreement Reflects the Debtors' Sound Business Judgment.**

9. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

10. Courts routinely approve motions to reject executory contracts upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. *See Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046 (4th Cir. 1985) (noting that a debtor's decision to reject an executory contract "is to be accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors." (citing *NLRB v. Bildisco & Bildisco (In re Bildisco)*, 465 U.S. 513, 523 (1984))); *see also In re Extraction Techs. of VA, L.L.C.*, 296 B.R. 393, 399 (Bankr. E.D. Va. 2001) ("Section 365(a) of the Bankruptcy Code authorizes a debtor with approval of the court to assume or reject an executory contract or unexpired lease if the action is a reasonable exercise of debtor's business judgment and benefits debtor's estate."); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) ("A debtor's decision to reject an executory contract under section 365 is governed by the business judgment standard." (citing *Group of Instit. Investors v. Chi., Milwaukee, St. Paul. & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943))).

11. Courts generally will not second-guess a debtor's business judgment concerning the rejection of an executory contract "unless there is a showing of bad faith or gross abuse of discretion." *In re Alpha Nat. Res., Inc.*, 555 B.R. 520, 530 (Bankr. E.D. Va. 2016) (*citing Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d at 1047); *see also In re HQ Global*

-4-

*Holdings, Inc.*, 290 B.R. at 511 (applying a business judgment standard, absent a showing of bad faith, whim or caprice); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). "Under the business judgment standard, the sole issue is whether the rejection benefits the estate." *In re HQ Global Holdings, Inc.*, 290 B.R. at 511.

12. Rejection of the Agreement is an appropriate exercise of the Debtors' business judgment. While the Debtors terminated the Agreement prepetition and do not believe that they have any outstanding obligations under the Agreement, the Debtors, out of an abundance of caution, seek to reject the Agreement. Janney has not provided any services to the Debtors since the Debtors terminated the Agreement. Moreover, the Debtors have retained Raymond James as their investment banker and thus, Janney's services are no longer needed. For these reasons, the Agreement provides no benefit to the estates and should be rejected.

**B.     Rejection of the Agreement Effective as of the Petition Date is Warranted.**

13. Bankruptcy courts are empowered to grant retroactive rejection of an executory contract under section 105(a) and 365(a) of the Bankruptcy Code based on the equities of the circumstances. *See, e.g.*, *Thinking Machines Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1028–29 (1st Cir. 1995) (finding that, "[i]n the section 365 context, this means that bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation"); *In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 185 (Bankr. E.D. Pa. 2010) (authorizing retroactive rejection of executory contract where there was "no obvious prejudice to [the counterparty] in approving rejection retroactively").

-5-

14. Courts have further held that the retroactive rejection of executory contracts and unexpired leases may be approved "after balancing the equities" of a case and concluding that such equities weigh in favor of the debtor. *See In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) ("Thus, only after balancing the equities in a particular case, should the court approve a retroactive rejection of nonresidential lease."). In balancing these equities, courts typically examine a number of factors, including the costs that a delayed rejection would impose on a debtor. *See, e.g.*, *Constant Ltd. P'ship v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33, 33–39 (S.D.N.Y. 1995).

15. The balance of equities favors rejection of the Agreement effective as of the Petition Date, because a retroactive rejection date will ensure that Janney cannot assert any administrative expenses under the Agreement. Given that the Debtors have not received any benefit from the Agreement since before the Petition Date, and the fact that Janney has not been retained pursuant to section 327 of the Bankruptcy Code, Janney will not be prejudiced by the relief sought herein. Janney received notice well before the Petition Date that Debtor DCD was terminating the Agreement and has not provided any services under the Agreement since DCD sent the termination notice. Accordingly, the Debtors believe that it is proper under the circumstances for the Agreement to be rejected retroactively to the Petition Date.

### Reservation of Rights

16. Nothing contained herein or any actions taken by the Debtors is intended (and should not be construed) as: (i) an implication or admission that the Agreement is an executory contract; (ii) an admission as to the amount of, basis for, priority or validity of any particular claim under the Bankruptcy Code or applicable non-bankruptcy law; (iii) a waiver of the Debtors' or any other party's right to dispute any claim; or (iv) a promise or requirement to pay any particular

claim. The Debtors reserve their rights with respect to all defenses and counterclaims to any rejection-damages claims are expressly preserved.

## Waiver of Memorandum of Law

17. Pursuant to rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

## Notice

18. Notice of this Motion will be given to the following parties or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) Janney; (iii) the Committee; (iv) counsel to JPMorgan Chase Bank, N.A.; (v) the United States Attorney for the District of Maryland; (vi) the offices of the attorneys general for the states in which the Debtors operate; (vii) the Internal Revenue Service; (viii) the Office of the Attorney General; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court deems just and warranted.

Dated: February 12, 2025                    **SAUL EWING LLP**

                                          By: */s/ Jordan D. Rosenfeld*
                                              Jordan D. Rosenfeld (MD Bar No. 13694)
                                              1001 Fleet Street, 9th Floor
                                              Baltimore, MD 21202
                                              Telephone: (410) 332-8600
                                              Email: jordan.rosenfeld@saul.com

                                              -and-

    Jeffrey C. Hampton (admitted *pro hac vice*)
    Adam H. Isenberg (admitted *pro hac vice*)
    Turner N. Falk (admitted *pro hac vice*)
    1500 Market Street, 38th Floor
    Philadelphia, PA 19102
    Telephone: (215) 972-7777
    Email: jeffrey.hampton@saul.com
          adam.isenberg@saul.com
          turner.falk@saul.com

    -and-

    Mark Minuti (admitted *pro hac vice*)
    Paige N. Topper (admitted *pro hac vice*)
    Nicholas Smargiassi (admitted *pro hac vice*)
    1201 N. Market Street, Suite 2300
    Wilmington, DE 19801
    Telephone: (302) 421-6800
    Email: mark.minuti@saul.com
          paige.topper@saul.com
          nicholas.smargiassi@saul.com

    *Proposed Counsel for Debtors and Debtors in Possession*