# EXHIBIT "A"

First Amendment to Debtor-In-Possession Credit Agreement

EXECUTION COPY

# FIRST AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT

This FIRST AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT, dated as of February 11, 2025 (this "Amendment"), is by and among debtor-in possession DIAMOND COMIC DISTRIBUTORS, INC., a Maryland corporation ("Diamond") as the "Borrower" (in such capacity, the "Borrower"), the other Loan Parties from time to time party to the DIP Credit Agreement referenced below, Stephen A. Geppi (the "Individual Guarantor"), and JPMORGAN CHASE BANK, N.A., as the "DIP Lender" (in such capacity, the "DIP Lender").

WHEREAS, reference is made to the Debtor-in-Possession Credit Agreement dated as of January 16, 2025 (the "DIP Credit Agreement") by and among the Borrower, the other Loan Parties that are parties to the DIP Credit Agreement, the Individual Guarantor and the DIP Lender;

WHEREAS, capitalized terms used herein without definition shall have the meanings ascribed to such terms in the DIP Credit Agreement, as applicable;

WHEREAS, the parties to the DIP Credit Agreement desire to amend certain provisions of the DIP Credit Agreement, all as more fully set forth herein;

NOW, THEREFORE, in consideration of the foregoing and the agreements contained herein, the parties hereby agree as follows:

1. **Amendments to the DIP Credit Agreement**. In reliance on the terms and conditions set forth in this Amendment, the DIP Lender hereby agrees with the Borrower, the other Loan Parties and the Individual Guarantor that the DIP Credit be, and it hereby is, amended as follows:

(a) Section 2.05 of the DIP Credit Agreement is hereby amended and restated in its entirety to read as follows (with deleted text shown in the same manner as the following example: ~~deleted text~~ and with added text shown in the same manner as the following example: added text):

> "SECTION 2.05  Letters ~~Prepetition Letter~~ of Credit.
>
> ~~(a)~~  General. A portion of the Revolving Commitment equal to the LC Sublimit shall be available for the issuance and maintenance of (i) the Prepetition Letter of Credit and (ii) one or more Post-Petition Letters of Credit to be issued after the Effective Date. Upon entry of the Interim Order, the Prepetition Letter of Credit shall be deemed issued by the DIP Lender and outstanding hereunder. In the event of any inconsistency between the terms and conditions of this DIP Credit Agreement and the terms and conditions of the documents governing the Prepetition Letter of Credit, the terms and conditions of this DIP Credit Agreement shall control. ~~The DIP Lender shall have no obligation hereunder to issue, and shall not issue, and shall not permit to remain outstanding, any letter of credit other than the Prepetition Letter of Credit.~~
>
> (b)  Subject to the terms and conditions set forth herein, the Borrower may request the issuance of one or more Post-Petition Letters of Credit for its own account denominated in dollars, as the applicant thereof for support of its obligations, in a form reasonably acceptable to the DIP Lender at any time and from time to time during the Availability Period, and the DIP Lender may, but shall have no obligation to, issue such requested Post-Petition Letters of Credit in accordance with and subject to the terms hereof.  In the event of any inconsistency between the terms and conditions of this Agreement and the terms and conditions of any LC Agreement relating to any Post-Petition Letter of Credit, the terms and conditions of this Agreement shall control. Notwithstanding anything herein to the contrary, the DIP Lender shall have no obligation hereunder

to issue, and shall not issue, any Post-Petition Letter of Credit (i) the proceeds of which would be made available to any Person (A) to fund any activity or business of or with any Sanctioned Person, or in any country or territory that, at the time of such funding, is the subject of any Sanctions or (B) in any manner that would result in a violation of any Sanctions by any party to this DIP Credit Agreement, (ii) if any order, judgment or decree of any Governmental Authority or arbitrator shall by its terms purport to enjoin or restrain the DIP Lender from issuing any such Post-Petition Letter of Credit, or any Requirement of Law relating to the DIP Lender or any request or directive (whether or not having the force of law) from any Governmental Authority with jurisdiction over the DIP Lender shall prohibit, or request that the DIP Lender refrain from, the issuance of letters of credit generally or any such Post-Petition Letter of Credit in particular or shall impose upon the DIP Lender with respect to such Post-Petition Letter of Credit any restriction, reserve or capital requirement (for which the DIP Lender is not otherwise compensated hereunder) not in effect on the Effective Date, or shall impose upon the DIP Lender any unreimbursed loss, cost or expense which was not applicable on the Effective Date and which the DIP Lender in good faith deems material to it, or (iii) if the issuance of such Post-Petition Letter of Credit would violate one or more policies of the DIP Lender applicable to letters of credit generally; provided that, notwithstanding anything herein to the contrary, (x) the Dodd-Frank Wall Street Reform and Consumer Protection Act and all requests, rules, guidelines, requirements or directives thereunder or issued in connection therewith or in the implementation thereof, and (y) all requests, rules, guidelines, requirements or directives promulgated by the Bank for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States or foreign regulatory authorities, in each case pursuant to Basel III, shall in each case be deemed not to be in effect on the Effective Date for purposes of clause (ii) above, regardless of the date enacted, adopted, issued or implemented.

(c)     Notice of Issuance, Amendment, Renewal, Extension; Certain Conditions.  To request the issuance of a Post-Petition Letter of Credit (or the amendment, renewal or extension of an outstanding Post-Petition Letter of Credit), the Borrower shall deliver by hand or facsimile (or transmit through Electronic System, if arrangements for doing so have been approved by the DIP Lender) to the DIP Lender prior to 9:00 am, Chicago time, at least three Business Days prior to the requested date of issuance, amendment, renewal or extension) a notice requesting the issuance of a Post-Petition Letter of Credit, or identifying the Post-Petition Letter of Credit to be amended, renewed or extended, and specifying the date of issuance, amendment, renewal or extension (which shall be a Business Day), the date on which such Post-Petition Letter of Credit is to expire (which shall comply with paragraph (d) of this Section), the amount of such Post-Petition Letter of Credit, the name and address of the beneficiary thereof and such other information as shall be necessary to prepare, amend, renew or extend such Post-Petition Letter of Credit.  In addition, as a condition to any such Post-Petition Letter of Credit issuance, the Borrower shall have entered into a continuing agreement (or other letter of credit agreement) for the issuance of letters of credit and/or shall submit a letter of credit application, in each case, as required by the DIP Lender and using the DIP Lender's standard form (each, a "LC Agreement").  A Post-Petition Letter of Credit shall be issued, amended, renewed or extended only if (and upon issuance, amendment, renewal or extension of each Post-Petition Letter of Credit the Borrower shall be deemed to represent and warrant that), after giving effect to such issuance, amendment, renewal or extension (i) the LC Exposure shall not exceed the LC Sublimit, and (ii) the Revolving Exposure shall not exceed the lesser of (x) the Revolving Commitment and (y) the Borrowing Base.

(d)(b)    Expiration Date. The Prepetition Letter of Credit shall expire (or be subject to termination or non-renewal by notice from the DIP Lender to the beneficiary thereof) on the date set forth in the Prepetition Letter of Credit.  Each Post-Petition Letter of Credit shall expire (or be subject to termination or non-renewal by notice from the DIP Lender to the beneficiary thereof) at

2

or prior to the close of business on the date that is five Business Days prior to the Maturity Date or such other date as shall be acceptable to the DIP Lender.

(e)(c)   Reimbursement. If the DIP Lender shall make any LC Disbursement in respect of the Prepetition Letter of Credit or any Post-Petition Letter of Credit, the Borrower shall reimburse such LC Disbursement by paying to the DIP Lender an amount equal to such LC Disbursement on the date that such LC Disbursement is made; provided that the Borrower may, subject to the conditions to borrowing set forth herein, request in accordance with Section 2.03 or 2.04 that such payment be financed with a CBFR Revolving Borrowing in an equivalent amount and, to the extent so financed, the Borrower's obligation to make such payment shall be discharged and replaced by the resulting CBFR Revolving Borrowing.

(f)(d)   Obligations Absolute. The Borrower's obligation to reimburse LC Disbursements as provided in paragraph (e)(c) of this Section shall be absolute, unconditional and irrevocable, and shall be performed strictly in accordance with the terms of this DIP Credit Agreement under any and all circumstances whatsoever and irrespective of (i) any lack of validity or enforceability of the Prepetition Letter of Credit or any Post-Petition Letter of Credit, the documents governing the Prepetition Letter of Credit or any Post-Petition Letter of Credit, or this DIP Credit Agreement, or any term or provision herein or therein, (ii) any draft or other document presented under the Prepetition Letter of Credit proving to be forged, fraudulent or invalid in any respect or any statement therein being untrue or inaccurate in any respect, (iii) any payment by the DIP Lender under the Prepetition Letter of Credit or any Post-Petition Letter of Credit against presentation of a draft or other document that does not comply with the terms of the Prepetition Letter of Credit or any Post-Petition Letter of Credit, or (iv) any other event or circumstance whatsoever, whether or not similar to any of the foregoing, that might, but for the provisions of this Section, constitute a legal or equitable discharge of, or provide a right of setoff against, the Borrower's obligation hereunder. Neither the DIP Lender nor any of its Related Parties, shall have any liability or responsibility by reason of or in connection with the issuance or transfer of the Prepetition Letter of Credit or any Post-Petition Letter of Credit or any payment or failure to make any payment thereunder (irrespective of any of the circumstances referred to in the preceding sentence), or any error, omission, interruption, loss or delay in transmission or delivery of any draft, notice or other communication under or relating to the Prepetition Letter of Credit or any Post-Petition Letter of Credit (including any document required to make a drawing thereunder), any error in interpretation of technical terms or any consequence arising from causes beyond the control of the DIP Lender; provided that the foregoing shall not be construed to excuse the DIP Lender from liability to the Borrower to the extent of any direct damages (as opposed to special, indirect, consequential or punitive damages, claims in respect of which are hereby waived by the Borrower to the extent permitted by applicable law) suffered by the Borrower that are caused by the DIP Lender's failure to exercise care when determining whether drafts and other documents presented under the Prepetition Letter of Credit or any Post-Petition Letter of Credit comply with the terms thereof. The parties hereto expressly agree that, in the absence of gross negligence or willful misconduct on the part of the DIP Lender (as finally determined by a court of competent jurisdiction), the DIP Lender shall be deemed to have exercised care in each such determination. In furtherance of the foregoing and without limiting the generality thereof, the parties agree that, with respect to documents presented which appear on their face to be in substantial compliance with the terms of the Prepetition Letter of Credit or any Post-Petition Letter of Credit, the DIP Lender may, in its sole discretion, either accept and make payment upon such documents without responsibility for further investigation, regardless of any notice or information to the contrary, or refuse to accept and make payment upon such documents if such documents are not in strict compliance with the terms of the Prepetition Letter of Credit or any Post-Petition Letter of Credit.

(g)(e). Disbursement Procedures. The DIP Lender shall, promptly following its receipt thereof, examine all documents purporting to represent a demand for payment under the Prepetition Letter of Credit or any Post-Petition Letter of Credit. The DIP Lender shall promptly notify the Borrower by telephone (confirmed by fax or through Electronic Systems) of such demand for payment and whether the DIP Lender has made or will make an LC Disbursement thereunder; provided that any failure to give or delay in giving such notice shall not relieve the Borrower of its obligation to reimburse the DIP Lender with respect to any such LC Disbursement.

(h)(f). Interim Interest. If the DIP Lender shall make any LC Disbursement, then, unless the Borrower shall reimburse such LC Disbursement in full on the date such LC Disbursement is made, the unpaid amount thereof shall bear interest, for each day from and including the date such LC Disbursement is made to but excluding the date that the Borrower reimburses such LC Disbursement, at the rate per annum then applicable to CBFR Revolving Loans and such interest shall be due and payable on the date when such reimbursement is payable; provided that, if the Borrower fails to reimburse such LC Disbursement when due pursuant to paragraph (e)(c) of this Section, then Section 2.12(c) shall apply.

(i)(g). Cash Collateralization. Upon entry of the Supplemental Interim Order Final Financing Order, the Borrower shall promptly request a CBFR Borrowing in an amount equal to $1,510,000 $1,300,000 (which amount (the "LC and Commercial Card Collateral Amount") is equal to (x) 105% the amount of the LC Exposure in respect of the Prepetition Letter of Credit and the Initial Post-Petition Letter of Credit and (y) $250,000 in respect of the Borrower's obligations for commercial credit cards provided by the DIP Lender), and shall remit the proceeds of such CBFR Borrower to the DIP Lender to be held in a deposit account maintained at the DIP Lender, in the name and for the benefit of the DIP Lender (the "LC and Commercial Card Collateral Account"). Such deposit and all other amounts from time to time deposited in the LC and Commercial Card Collateral Account shall be held by the DIP Lender as collateral for the payment and performance of the DIP Obligations. The DIP Lender shall have exclusive dominion and control, including the exclusive right of withdrawal, over the LC and Commercial Card Collateral Account and the Borrower hereby grants the DIP Lender a security interest in the LC and Commercial Card Collateral Account and all money or other assets on deposit therein or credited thereto. Other than any interest earned on the investment of such deposits, which investments shall be made at the option and sole discretion of the DIP Lender and at the Borrower's risk and expense, such deposits shall not bear interest. Interest or profits, if any, on such investments shall accumulate in the LC and Commercial Card Collateral Account. Moneys in the LC and Commercial Card Collateral Account shall be applied by the DIP Lender for LC Disbursements and obligations of the Borrower in respect of commercial credit cards provided by the DIP Lender for which the DIP Lender has not been reimbursed and, to the extent not so applied, shall be held for the satisfaction of the reimbursement obligations of the Borrower for the LC Exposure and for obligations of the Borrower in respect of commercial credit cards provided by the DIP Lender at such time or, if the maturity of the Loans has been accelerated, shall be applied to satisfy other DIP Obligations."

(b) Section 2.11(b) of the DIP Credit Agreement is hereby amended and restated in its entirety to read as follows (with deleted text shown in the same manner as the following example: deleted text and with added text shown in the same manner as the following example: added text):

"(b) The Borrower agrees to pay (i) to the DIP Lender a letter of credit fee with respect to the Prepetition Letter of Credit and each Post-Petition Letter of Credit, which shall accrue at the Applicable Margin on the average daily amount of the LC Exposure (excluding any portion thereof attributable to unreimbursed LC Disbursements) during the period from and including the Effective Date to but excluding the later of the date on which the Revolving Commitment terminates and the

4

date on which the DIP Lender ceases to have any LC Exposure, and (ii) the DIP Lender's standard fees and commissions with respect to the issuance, amendment, cancellation, negotiation, transfer, presentment, renewal or extension of the Prepetition Letter of Credit, or any Post-Petition Letter of Credit or any processing of drawings thereunder. Accrued letter of credit fees shall be payable in arrears on the first Business Day of each calendar month and on the date on which the Revolving Commitment terminates; provided that any such fees accruing after the date on which the Revolving Commitment terminates shall be payable on demand. Any other fees payable to the DIP Lender pursuant to this paragraph shall be payable within 10 days after demand. All letter of credit fees shall be computed on the basis of a year of 360 days and shall be payable for the actual number of days elapsed (including the first day but excluding the last day)."

(c) Sections 2.14(a), 2.14(b), 3.18, 3.21, 3.24 and 8.03 of the DIP Credit Agreement are hereby amended by replacing all references to "the Prepetition Letter of Credit" with a reference to "the Prepetition Letter of Credit or any Post-Petition Letter of Credit".

(d) Sections 4.01, 4.02 and 5.08 of the DIP Credit Agreement are hereby amended by replacing all references to "the Prepetition Letter of Credit" with a reference to "the Prepetition Letter of Credit and each Post-Petition Letter of Credit".

(e) Clause (i) of Article VII of the DIP Credit Agreement is hereby amended and restated in its entirety to read as follows (with deleted text shown in the same manner as the following example: ~~deleted text~~ and with added text shown in the same manner as the following example: added text):

"(i) entry of the Final Financing Order shall not have occurred within thirty-six (36) ~~twenty-five (25)~~ days after the Filing Date;~~.~~

(f) Sections 8.04 of the DIP Credit Agreement are hereby amended by replacing all references to "the Prepetition Letter of Credit" with a reference to "the Prepetition Letter of Credit, each Post-Petition Letter of Credit".

(g) Section 8.05 of the DIP Credit Agreement is hereby amended and restated in its entirety to read as follows (with deleted text shown in the same manner as the following example: ~~deleted text~~ and with added text shown in the same manner as the following example: added text):

"SECTION 8.05. Survival. All covenants, agreements, representations and warranties made by the Loan Parties in the DIP Loan Documents and in the certificates or other instruments delivered in connection with or pursuant to this DIP Credit Agreement or any other DIP Loan Document shall be considered to have been relied upon by the other parties hereto and shall survive the execution and delivery of the DIP Loan Documents, ~~and~~ the making of any Loans and the maintenance of the Prepetition Letter of Credit and each Post-Petition Letter of Credit, regardless of any investigation made by any such other party or on its behalf and notwithstanding that the DIP Lender may have had notice or knowledge of any Event of Default or incorrect representation or warranty at the time any credit is extended hereunder, and shall continue in full force and effect as long as the principal of or any accrued interest on any Loan or any fee or any other amount payable under this DIP Credit Agreement is outstanding and unpaid or the Prepetition Letter of Credit or any Post-Petition Letter of Credit is outstanding and so long as the Revolving Commitment has not expired or terminated. The provisions of Sections 2.14, 2.16 and Article VIII shall survive and remain in full force and effect regardless of the consummation of the transactions contemplated hereby, the repayment of the Loans, the expiration or termination of the Prepetition Letter of Credit, the expiration or termination of all Post-Petition Letters of Credit, the expiration or termination of

5

~~and~~ the Revolving Commitment or the termination of this DIP Credit Agreement or any other DIP Loan Document or any provision hereof or thereof."

(h)     The Definitions Schedule to the DIP Credit Agreement is hereby amended by amending and restating the defined terms "DIP Loan Documents", "DIP Obligations", "Financing Order", "Interim Order", "LC Disbursement", "LC Exposure", "LC Sublimit", "Material Indebtedness", "Maturity Date", "Maximum Increase Amount", "Other Connection Taxes" and "Paid-in-Full" to read as follows (with deleted text shown in the same manner as the following example: ~~deleted text~~ and with added text shown in the same manner as the following example: <u>added text</u>):

"<u>DIP Loan Documents</u>" means, collectively, this DIP Credit Agreement, the Financing Order, any promissory notes issued pursuant to this DIP Credit Agreement, any agreement relating to the Prepetition Letter of Credit, <u>any agreement relating to any Post-Petition Letter of Credit,</u> the DIP Collateral Documents, the Loan Guaranty, any Obligation Guaranty, and all other agreements, instruments, documents and certificates identified in or contemplated by Section 4.01 executed and delivered to, or in favor of, the DIP Lender and including all other pledges, powers of attorney, consents, assignments, contracts, notices, letter of credit agreements, letter of credit applications and all other written matter whether heretofore, now or hereafter executed by or on behalf of any Loan Party, or any employee of any Loan Party, and delivered to the DIP Lender in connection with this DIP Credit Agreement or the transactions contemplated hereby. Any reference in this DIP Credit Agreement or any other DIP Loan Document to a DIP Loan Document shall include all appendices, exhibits, riders or schedules thereto, and all amendments, restatements, supplements or other modifications thereto, all waivers thereunder, and shall refer to this DIP Credit Agreement or such other DIP Loan Document as the same may be in effect at any and all times such reference becomes operative.

"<u>DIP Obligations</u>" means (a) all unpaid principal of and accrued and unpaid interest on the Loans, all LC Exposure, all accrued and unpaid fees and all expenses, reimbursements, indemnities and other obligations and indebtedness (including interest and fees accruing during the pendency of the Chapter 11 Cases or any other bankruptcy, insolvency, receivership or similar proceeding, regardless of whether allowed or allowable in such proceeding), obligations and liabilities of any of the Loan Parties to the DIP Lender or any indemnified party individually or collectively, existing on the Effective Date or arising thereafter, direct or indirect, joint or several, absolute or contingent, matured or unmatured, liquidated or unliquidated, secured or unsecured, arising by contract, operation of law or otherwise, arising or incurred under this DIP Credit Agreement or any of the other DIP Loan Documents or in respect of any of the Loans made or reimbursement or other obligations incurred or the Prepetition Letter of Credit <u>or any Post-Petition Letter of Credit</u> or other instruments at any time evidencing any thereof, and (b) all Banking Services Obligations owing to the DIP Lender or its Affiliates.

"<u>Financing Order</u>" means, as applicable, the Interim Order<u>, the Supplemental Interim Order,</u> and Final Financing Order, as the same may be amended or modified from time to time with the DIP Lender's written consent.

"<u>Interim Order</u>" means that certain Interim Order (I) Authorizing the Debtors to Obtain Postpetition Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief, entered on January 16, 2025 in the Chapter 11 Cases, <u>as amended and supplemented by the Supplemental Interim Order.</u>

6

"LC Disbursement" means any payment made by the DIP Lender pursuant to the Prepetition Letter of Credit or any Post-Petition Letter of Credit.

"LC Exposure" means, at any time, the sum of the Dollar Equivalent of (a) the aggregate undrawn amount of the Prepetition Letter of Credit and all Post-Petition Letters of Credit outstanding at such time plus (b) the aggregate amount of all LC Disbursements relating to the Prepetition Letter of Credit or any Post-Petition Letter of Credit that have not yet been reimbursed by or on behalf of the Borrower at such time.

"LC Sublimit" means a sublimit of the Revolving Commitment in the amount of $1,200,000 $1,000,000.

"Material Indebtedness" means Indebtedness (other than the Loans, and the Prepetition Letter of Credit or any Post-Petition Letters of Credit) or obligations in respect of one or more Swap Agreements, of any one or more of the Loan Parties or any Subsidiary in an aggregate principal amount exceeding the Threshold Amount. For purposes of determining Material Indebtedness, the "principal amount" of the obligations of the Loan Parties or any Subsidiary in respect of any Swap Agreement at any time shall be the maximum aggregate amount (giving effect to any netting agreements) that such Loan Party or Subsidiary would be required to pay if such Swap Agreement were terminated at such time.

"Maturity Date" means, at the election of the DIP Lender, the earliest to occur of: (a) the date on which the DIP Lender provides, via electronic or overnight mail, written notice to counsel for the Debtors and counsel for any Committee of the occurrence and continuance of an Event of Default; (b) the date that is thirty-seven (37) thirty (30) days following the Interim Order Date if the Final Financing Order is not entered in form and substance satisfactory to the DIP Lender by such date; (c) the date of the Final Hearing, if the Interim Order is modified at the Final Hearing in a manner that is not reasonably acceptable to the DIP Lender; (d) the closing date of the Sale Transaction; (e) the date on which the Aggregate Credit Obligations are indefeasibly paid in full in cash; (f) the effective date of an Approved Plan; (g) the filing of any chapter 11 plan other than an Approved Plan by the Debtors or any party in interest; unless such plan contemplates the indefeasible payment in full in cash of the Aggregate Credit Obligations; (h) the date that the Bankruptcy Court orders (x) the conversion of the Chapter 11 Cases to Chapter 7 liquidations, or (y) a dismissal of the Chapter 11 Cases; or (i) May 21, 2025.

"Maximum Interim Increase Amount" means $6,500,000 $5,500,000.

"Other Connection Taxes" means, with respect to the DIP Lender, Taxes imposed as a result of a present or former connection between the DIP Lender and the jurisdiction imposing such Taxes (other than a connection arising from the DIP Lender having executed, delivered, become a party to, performed its obligations under, received payments under, received or perfected a security interest under, engaged in any other transaction pursuant to, or enforced, any DIP Loan Document, or sold or assigned an interest in any Loan, the Prepetition Letter of Credit, the Post-Petition Letters of Credit or any DIP Loan Document).

"Paid in Full" or "Payment in Full" means, (i) the indefeasible payment in full in cash of all outstanding Loans and LC Disbursements, together with accrued and unpaid interest thereon, (ii) the termination, expiration, or cancellation and return of the Prepetition Letter of Credit and all Post-Petition Letters of Credit (or alternatively, with respect to each the Prepetition Letter of Credit and all Post-Petition Letters of Credit, the furnishing to the DIP Lender of a cash deposit, or at the discretion of the DIP Lender one or more a backup standby letters letter of credit satisfactory to the

7

DIP Lender, in an amount equal to 105% of the LC Exposure as of the date of such payment), (iii) the indefeasible payment in full in cash of the accrued and unpaid fees, (iv) the indefeasible payment in full in cash of all reimbursable expenses and other DIP Obligations (other than, in connection with the foregoing, Unliquidated Obligations for which no claim has been made and other obligations expressly stated to survive such payment and termination of this DIP Credit Agreement), together with accrued and unpaid interest thereon, (v) the termination of the Revolving Commitment, (vi) the termination of the Banking Services Obligations or entering into other arrangements satisfactory to the Secured Parties counterparties thereto; (vii) the indefeasible payment in full in cash of the Prepetition Obligations (including any Reinstated Prepetition Obligations and Allowable 506(b) Amounts) and (viii) delivery of a general release of any and all claims and causes of action of Loan Parties against the DIP Lender. Any reference herein or in any DIP Loan Document to the satisfaction, repayment, or payment in full of the Prepetition Obligations shall mean the payment or repayment in full in immediately available funds of all outstanding Prepetition Obligations (including all Reinstated Prepetition Obligations and all Allowable 506(b) Amounts).

(i) The Definitions Schedule to the DIP Credit Agreement is hereby further amended by adding the following new defined terms:

"First Amendment" means the First Amendment to Debtor-in-Possession Credit Agreement dated as of the First Amendment Effective Date by and among the Borrower, the other Loan Parties, the Individual Guarantor and the DIP Lender, which amends certain terms and provisions of the DIP Credit Agreement.

"First Amendment Effective Date" means February 11, 2025, the effective date of the First Amendment.

"Initial Post-Petition Letter of Credit" means that certain letter of credit in the original face amount of $200,000 issued by the DIP Lender for the account of the Borrower and for the benefit of American Casualty Co. of Reading, PA and/or Western Surety Company on the First Amendment Effective Date.

"LC Agreement" has the meaning assigned to it in Section 2.05(c).

"Post-Petition Letters of Credit" means the Initial Post-Petitions Letter of Credit and any additional letters of credit issued by the DIP Lender for the account of the Borrower hereunder after the Effective Date.

"Supplemental Interim Order" means that certain Supplemental Interim Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief, entered on February 11, 2025 in the Chapter 11 Cases, amending and supplementing the Interim Order.

(j) The Borrowing Base Schedule to the DIP Credit Agreement is hereby amended by replacing all references to "the Prepetition Letter of Credit" in the defined terms "Eligible Accounts", "Eligible COD Accounts" and "Eligible Inventory" with a reference to "the Prepetition Letter of Credit and all Post-Petition Letters of Credit".

8

(k)     The Milestones attached as **Exhibit B** to the DIP Credit Agreement are amended as set forth in **Annex I** attached to the First Amendment (with deleted text shown in the same manner as the following example: ~~deleted text~~ and with added text shown in the same manner as the following example: <u>added text</u>).

2.     <u>Representations and Warranties, Etc</u>.  The Loan Parties hereby confirm that after giving effect to this Amendment, the representations and warranties of the Loan Parties set forth in <u>Article III</u> of the DIP Credit Agreement are true and correct in all material respects (provided that if any representation or warranty is by its terms qualified by concepts of materiality, such representation or warranty shall be true and correct in all respects) on and as of the date of this Amendment as if made on such date (except to the extent that such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall have been true and correct as of such earlier date).

3.     <u>Ratification, Confirmation and Acknowledgment</u>.  The Borrower, the other Loan Parties, and the Individual Guaantor hereby ratify and confirm all terms and provisions of the DIP Credit Agreement and the other Loan Documents and agree that all such terms and provisions, as amended hereby, remain in full force and effect.

4.     <u>Certain Conditions to this Amendment</u>.  This Amendment shall become effective on the date on which each of the following conditions is satisfied:

(a)     The DIP Lender shall have received (i) a counterpart of this Amendment signed on behalf of each party hereto or (ii) written evidence satisfactory to the DIP Lender (which may include telecopy or electronic mail transmission of a signed signature page to this Amendment) that each party hereto has signed a counterpart of this Amendment;

(b)     The Supplemental Interim Order shall have been entered by the Bankruptcy Court in the Chapter 11 Cases; and

(c)     The Borrower shall have delivered to the DIP Lender the cash collateral required to be delivered pursuant to Section 2.05(i) of the DIP Credit Agreement.

5.     <u>Miscellaneous</u>.

(a)     Except as otherwise expressly set forth herein, nothing herein shall be deemed to constitute an amendment, modification or waiver of any of the provisions of the DIP Credit Agreement or the other DIP Loan Documents, all of which remain in full force and effect as of the date hereof and are hereby ratified and confirmed.

(b)     This Amendment may be executed in any number of counterparts, each of which, when executed and delivered, shall be an original, but all counterparts shall together constitute one instrument.  Delivery of an executed counterpart of a signature page of this Amendment by facsimile or electronic mail shall be equally effective as delivery of a manually executed counterpart of this Amendment.

(c)     This Amendment shall be governed by the laws of the State of New York and shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

(d)     This Amendment constitutes a "DIP Loan Document" as such term is defined in the DIP Credit Agreement.

9

(e) The Borrower agrees to pay all reasonable and documented out-of-pocket expenses (including the reasonable legal fees and disbursements of Troutman Pepper Locke LLP, special US counsel to the DIP Lender), incurred by the DIP Lender in connection with this Amendment and the transactions contemplated hereby.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties hereto have executed this First Amendment to Debtor-in-Possession Credit Agreement, which shall be deemed to be a sealed instrument as of the date first above written.

BORROWER:

**DIAMOND COMIC DISTRIBUTORS, INC.**

By: *[signature]*
Name: CHARLES PARKER
Title: President

**OTHER LOAN PARTIES:**

**COMIC EXPORTERS, INC.**

By: *[signature]*
Name: CHARLES PARKER
Title: Director

**COMIC HOLDINGS, INC.**

By: *[signature]*
Name: CHARLES PARKER
Title: Director

**DIAMOND SELECT TOYS AND COLLECTIBLES, LLC**

By: *[signature]*
Name: Stephen A. Geppi
Title: Manager

**DIAMOND COMIC DISTRIBUTORS**, an unlimited company incorporated under the laws of England and Wales

By: *[signature]*
Name: CHARLES PARKER
Title: Director

**ROSEBUD ENTERTAINMENT, LLC**

By: *[signature]*
Name: Stephen A. Geppi
Title: Member

[Signature Page to First Amendment to DIP Credit Agreement]

**RENEGADE GAMES, LLC**

By: *[signature]*
Name: STEPHAN A GEPPI
Title: MANAGER

**GAME CONSOLIDATORS, LLC**

By: *[signature]*
Name: STEPHAN A GEPPI
Title: MANAGER

**INDIVIDUAL GUARANTOR:**

*[signature]*
Stephen A. Geppi, individually

**DIP LENDER:**

**JPMORGAN CHASE BANK, N.A.**

By: _____
Name: Angela Leake
Title:   Authorized Officer

[Signature Page to First Amendment to DIP Credit Agreement]

Annex I to First Amendment
to Debtor-in-Possession Credit Agreement

**EXHIBIT B**

to DIP Credit Agreement

**Milestones**

The following events constitute the Chapter 11 Case milestones required under the DIP Credit Agreement (each, a "Milestone"), which Milestones may be extended in writing by the DIP Lender in its sole and absolute discretion:

(a) on or within one (1) day after the Filing Date, the Borrower shall have filed: (i) a motion seeking approval of the DIP Facility, including the Interim Order; and (ii) other customary "first day orders" (including the Cash Management Order), all in form and substance reasonably acceptable to the DIP Lender;

(b) no later than three (3) Business Days after the Filing Date, the Bankruptcy Court shall have entered the Interim Order;

(c) no later than three (3) Business Days after the Filing Date, the Debtors shall have filed a motion, in form and substances reasonably acceptable to the DIP Lender, seeking approval of the Debtors' retention of Raymond James;

(d) no later than thirty-six (36) ~~twenty-five (25)~~ days after the Filing Date, the Bankruptcy Court shall have entered the Final Financing Order;

(e) no later than thirty (30) ~~twenty-five (25)~~ twenty-five (25) days after the Filing Date, the Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the DIP Lender (the "Bidding Procedures Order"), approving (i) the Bidding Procedures and (ii) seeking approval of a stalking horse asset purchase agreement as the stalking horse bid for the purchase of the Debtors' assets, which asset purchase agreement shall be in form and substance reasonably acceptable to the DIP Lender;

(f) no later than thirty (30) ~~twenty-five (25)~~ twenty-five (25) days after the Filing Date, the Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the DIP Lender, approving the Debtors' retention of Raymond James;

(g) no later than forty-five (45) days after the Filing Date, the Debtors shall have filed Schedules of Assets and Liabilities and Statement of Financial Affairs;

(h) no later than forty-five (45) days after the entry of the Bidding Procedures Order, the Debtors shall have conducted an auction in accordance with the Bidding Procedures Order (the "Auction");

(i) no later than seven (7) days after conclusion of the Auction, the Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the DIP Lender, approving the Sale Transaction (the "Sale Transaction Order"); and

(j) no later than fifteen (15) days after the entry of the Sale Transaction Order, the Debtors shall have consummated the Sale Transaction.