# EXHIBIT B

**Redline**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE DIVISION)**

| | |
|---|---|
| In re: | Chapter 11 |
| DIAMOND COMIC DISTRIBUTORS, INC., *et al.*[1] | Case No. 25-10308 (DER) |
| Debtors. | (~~Joint Administration Requested~~Jointly Administered) |

**~~INTERIM~~FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SENIOR SECURED FINANCING AND THE USE OF CASH COLLATERAL;
(II) GRANTING ADEQUATE PROTECTION; (III) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (IV) MODIFYING THE AUTOMATIC STAY~~; AND~~ (V) ~~SCHEDULING A FINAL HEARING; AND (VI)~~ GRANTING RELATED RELIEF**

**THIS MATTER** having come before this Court (this "***Court***" or "***Bankruptcy Court***") upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* (the "***Motion***"), filed by the above-captioned debtors, as debtors-in-possession (the "***Debtors***") in the above-captioned cases (the "***Chapter 11 Cases***"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "***Bankruptcy Code***"), Rules 2002, 4001, ~~6003,~~ 6004, and 9014 of the Federal

---

[1] The Debtors in these chapter 11 cases and the last four (4) digits of each Debtor's federal taxpayer identification number are as follows: Diamond Comic Distributors, Inc. (3450), Comic Exporters, Inc (7457), Comic Holdings, Inc. (7458), and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rules 2002-1 and 4001-5 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "***Local Rules***"), seeking, ~~among other things~~on a final basis:

    (a)    authorization for the Debtors to obtain senior secured postpetition financing on a superpriority basis in the form of a superpriority senior secured revolving credit facility (the "***DIP Facility***"), pursuant to which revolving loans (the "***DIP Loans***"), in a maximum outstanding principal amount not to exceed $~~41,000,000~~ 42,200,000[2] (the "***Maximum DIP Facility Amount***"), ~~of which the maximum amount available to be drawn under the interim DIP Facility (the "Interim Facility") shall not result in an increase in the outstanding principal amount of the Aggregate Credit Obligations (as defined below) from the Petition Date through the entry of the Final Order in excess of $5,500,000, shall be made available upon entry of this interim order (this "Interim Order")~~all pursuant to the terms and conditions of this ~~Interim Order, the~~ Final Order (~~upon entry~~this "***Final Order***"), and that certain senior secured Debtor-in-Possession Credit Agreement, dated as of January 16, 2025 (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "***DIP Credit Agreement***"[~~2~~3] together with the schedules and exhibits attached thereto, and all agreements, documents, and instruments executed and delivered in connection therewith, the "***DIP Loan Documents***") by and among Diamond Comic Distributors, Inc., a Maryland Corporation (the "***Borrower***" or "***Diamond Comic***"), and JPMorgan Chase Bank, N.A., as lender (the "***DIP Lender***"), and unconditionally guaranteed by Comic Exporters, Inc., a Maryland corporation ("***Comic Exporters***"), Comic Holdings, Inc., a Maryland Corporation ("***Comic Holdings***") and Diamond Select Toys & Collectibles, LLC, a Maryland limited liability company (individually, "***Diamond Select***" and collectively, the "***Debtor Guarantors***"), and Diamond Comic Distributors, an unlimited liability company incorporated under the laws of England and Wales ("***DCDUK***"), Rosebud Entertainment, LLC, a Maryland limited liability company ("***Rosebud***"), Renegade Games, LLC, a Delaware limited liability company ("***Renegade***"), and Game Consolidator, LLC, a Delaware limited liability company (individually, "***Consolidator***" and collectively with DCDUK, Rosebud and Renegade, the "***Non-Debtor Entity Guarantors***," and together with the Debtor Guarantors and Non-Debtor Guarantors collectively referred to herein as the "***DIP Entity Guarantors***"), and individually guaranteed by Stephen A. Geppi (the "***Individual Guarantor***"), substantially in the form of **Exhibit A** attached hereto;

---

[2] The Maximum DIP Facility Amount includes the outstanding amounts available to be drawn under letters of credit issued under the DIP Credit Agreement.

[~~2~~] [3] Capitalized terms used but not otherwise defined shall have the respective meanings ascribed to such terms in the DIP Credit Agreement.

(b)  approval of the terms of, and authorization for the Debtors (i) to ~~execute,~~ enter into and deliver the DIP Loan Documents, including without limitation, definitive pledge and security agreements granting first priority liens in substantially all of the Debtors' assets to secure the obligations under the DIP Credit Agreement (collectively, the "***Pledge and Security Agreement***"), ~~and~~(ii) to perform and continue performing their obligations under the DIP Loan Documents, and (iii) to perform such other acts as may be reasonably necessary, desirable, or appropriate in connection with the DIP Loan Documents;

(c)  subject to the Carve-Out (as defined below), granting to the DIP Lender fully-perfected, priming, first priority senior security interests in and liens on all assets that constitute the DIP Collateral (as defined below) to secure the DIP Facility and all obligations owing and outstanding thereunder and under the DIP Loan Documents and this ~~Interim~~Final Order (collectively, and including indebtedness or obligations of the Debtors to DIP Lender incurred on or after the Petition Date pursuant to this ~~Interim~~Final Order or otherwise, including, without limitation, all Obligations and any advances made by the DIP Lender to pay the Carve-Out, the "***DIP Debt***"), which shall rank senior in priority to all other liens, claims and encumbrances, subject to Permitted Priority Liens (as defined below);

(d)  subject to the Carve-Out (as defined below), the granting of adequate protection to the Prepetition Lender (as defined below), in its capacity as lender under that certain Credit Agreement, dated as of May 16, 2019 (as amended, amended and restated, supplemented or otherwise modified from time to time, pursuant to various amendments and letter agreements, including, without limitation, the most recent Fifteenth Amendment to Credit Agreement dated as of December 20, 2024 (as so amended, the "***Prepetition Credit Agreement***" and together with all related loan documents, as more specifically defined below, the "***Prepetition Loan Documents***"~~,~~ and the outstanding obligations under the Prepetition Credit Agreement and Prepetition Loan Documents shall be referred to collectively as the "***Prepetition Debt***"), among the borrowers thereto, the guarantors from time to time thereto, and JPMorgan Chase Bank, N.A., as lender (the "***Prepetition Lender***" and collectively with the DIP Lender, the "***Lenders***"), for any diminution in value of its interests in the applicable Prepetition Collateral (as defined below), including as a result of any or all of the imposition of the automatic stay and the Debtors' use, sale, or lease of the Prepetition Collateral, including Cash Collateral (collectively, the "***Diminution in Value***"), subject to the restrictions set forth in the DIP Loan Documents and this Final Order;

(e)  subject to the restrictions, terms and conditions set forth in the DIP Loan Documents and this ~~Interim~~Final Order, authorization for the Debtors to use Cash Collateral (as defined below) and all other Prepetition Collateral (as defined below) in which the Prepetition Secured Lender has an interest and the granting of adequate protection to the Prepetition ~~Lender~~Secured Lenders with respect to, *inter alia*, such use of Cash Collateral (as defined below) and the other Prepetition Collateral;

(f)     subject to the Carve-Out, the granting of superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code to the DIP Lender as well as liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, subject to the Permitted Priority Liens, and priming liens pursuant to section 364(d) of the Bankruptcy Code, as further described herein, on all DIP Collateral (as defined below) and all proceeds thereof (including, ~~upon entry of the Final Order,~~ any Avoidance Actions/Proceeds (as defined below)), including, without limitation, all property constituting "Cash Collateral" as defined in section 363(a) of the Bankruptcy Code (including, without limitation, all cash and cash equivalents and other amounts from time to time on deposit or maintained by the Debtors in any deposit or securities account or accounts as of the Petition Date and any cash or cash equivalents received by the Debtors after the Petition Date as proceeds of the Prepetition Collateral) (collectively, and as more specifically defined below, "***Cash Collateral***");

(g)     ~~upon entry of the Final Order,~~ the waiver of the Debtors' right to surcharge the Prepetition Collateral or DIP Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code;

(h)     ~~subject to entry of the Final Order,~~ a finding that neither the DIP Lender nor the Prepetition Lender, in their respective capacities as such, shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral, as applicable;

(i)     authorization and direction for the Debtors to make non-refundable, irrevocable, and final payments on account of the principal, interest, fees (including, the Unused Line Fee and ~~Success~~DIP Facility Fee, under and as defined in the DIP Credit Agreement), expenses and other amounts payable under the DIP Loan Documents, each as applicable, as such become due and payable, all to the extent provided in, and in accordance with~~, this~~ the *Interim Order*~~, the Final Order (upon entry)~~ *(I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [ECF No. 54] (the "***Interim Order***"), the *Supplemental Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [ECF No. 132](the "***First Supplemental Order***"), the Second Supplemental Order *(I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [ECF No. 158] (the "***Second Supplemental Order and, collectively with the First Supplemental Order, the***

*"Bridge Order"*), this Final Order (together with the Interim Order and the Bridge Order, the "***DIP Orders***"), and the applicable DIP Loan Documents;

(j)     subject to the restrictions set forth in the DIP Loan Documents and this ~~Interim~~Final Order, authorization for the Debtors to use the proceeds of the DIP Facility and the Cash Collateral (as defined below) in accordance with both the Budget (as defined below) and the DIP Loan Documents;

(k)     the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of ~~this Interim Order, the Final Order~~the DIP Orders and the DIP Loan Documents;

~~(l) setting the date for the hearing (the "*Final Hearing*") to consider, on a final basis, the Motion and the entry of a final order (the "*Final Order*" and together with the Interim Order, the "*DIP Orders*"), authorizing and approving the transactions described in the foregoing clauses, which Final Order shall be in form and substance (including with respect to any subsequent modifications made in response to any objections or comments made by this Court) acceptable to the Debtors and the DIP Lender;~~

(l)     ~~(m)~~ providing for the immediate effectiveness of this ~~Interim Order and~~ Final Order ~~(upon entry)~~ and waiving any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness; and

(m)     ~~(n)~~ granting the Debtors such other and further relief as is just and proper.

The Court having considered the Motion, the exhibits attached thereto, the DIP Loan Documents, the *Declaration of Robert Gorin in Support of Debtors' Chapter 11 Petition and First Day Motions* (the "***First Day Declaration***"), and the evidence submitted both at the interim hearing (the "***Interim Hearing***") held ~~before this Court~~ on January 15, 2025 and February 10 2025, and the final hearing held on February 20, 2025 (the "***Final Hearing***"); and adequate notice of the Motion and the ~~Interim~~Final Hearing having been given under the circumstances and in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and Local Rules 2002-1, 4001-1 and 4001-5 and no further notice being necessary or required; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein and that such relief is fair and reasonable and in the best interests of the Debtors, their respective estates, and their creditors and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets ~~pending the Final Hearing~~; and any objections to the entry of this ~~Interim~~Final Order having been withdrawn or overruled on the merits; and upon the record herein and after due deliberation thereon, and good and sufficient cause appearing therefor:

### IT IS HEREBY FOUND AND DETERMINED THAT:~~3~~4

A.    <u>Debtor-in-Possession Operation.</u> On January 14, 2025 (the "***Petition Date***"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland (Baltimore Division). The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.    <u>Jurisdiction and Venue.</u> The Court has jurisdiction over the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and *Standing Order 2012-05* from the United States District Court for the District of Maryland. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and proceeding on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors have consented to the Court's entry of a final order regarding the Motion, and the Court may enter a final order consistent with Article III of the United States Constitution.

---

~~3~~ 4 The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

C.      Committee. ~~As of the date of the Interim Hearing~~On January 29, 2025, the United States Trustee for Region 4 (the "*U.S. Trustee*") ~~has not yet~~ appointed an official committee of unsecured creditors (~~a~~the "*Committee*") in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [ECF No. 90].

D.      Notice. Proper, timely, adequate and sufficient notice under the circumstances of the Motion and the ~~Interim~~Final Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the ~~Interim~~Final Hearing or the entry of this ~~Interim~~Final Order shall be required. ~~The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, for purposes of Bankruptcy Rule 6003.~~

~~E. Intentionally Deleted.~~

E.      ~~F.~~ Debtors' and DIP Entity Guarantors' Stipulations. Without prejudice and subject in all respects to the rights~~of~~, obligations and limitations governing other parties in interest ~~as~~ set forth in paragraph 21 herein, the Debtors, on their behalf and on behalf of their estates, and the DIP Entity Guarantors, admit, acknowledge, agree and stipulate to the following, which stipulations shall be binding on the Debtors ~~and~~, their estates, and the DIP Entity Guarantors~~,~~ and all parties in interest (Paragraphs F(i) through F(viii) below are referred to, collectively, as the "*Stipulations*"):

(i)      Prepetition Loan Documents. Diamond Comic, as Borrower, is party to the following pre-bankruptcy agreements:  (a) the Prepetition Credit Agreement, by and among the Borrower, Comic Exporters, Comic Holdings, DCDUK, Rosebud, Consolidators, Renegade and Diamond Select, as joint and several guarantors (the "*Prepetition Entity Guarantors*"), and the

-7-

Prepetition Lender; (b) the Security Agreement dated as of May 16, 2019, as amended, by and among the Borrower, the Prepetition Entity Guarantors, and the Prepetition Lender (the "***Prepetition Security Agreement***"); (c) the Pledge Agreement dated as of May 16, 2019, from the holders of all outstanding equity interests in the Borrower in favor of the Prepetition Lender (the "***Prepetition Borrower Equity Pledge Agreement***"); (d) the Charge Over Shares dated as of May 16, 2019, from the holders of all outstanding shares of equity issued by DCDUK in favor of the Prepetition Lender (the "***DCDUK Share Charge***"); (e) the Personal Guaranty dated as of January 15, 2024, from the Individual Guarantor in favor of the Prepetition Lender (the "***Geppi Guaranty***"); (f) the Pledge Agreements dated as of March 21, 2024, from the holders of all outstanding membership interests in Rosebud, Consolidators and Renegade in favor of the Prepetition Lender (the "***Rosebud/Consolidators/Renegade Pledge Agreements***"); and (g) the Pledge Agreement dated as of September 13, 2024, from the holders of all outstanding membership interests in Diamond Select in favor of the Prepetition Lender (collectively with the Prepetition Credit Agreement, Prepetition Security Agreement, Prepetition Borrower Equity Pledge Agreement, DCDUK Share Charge, Geppi Guaranty, Rosebud/Consolidators/Renegade Pledge Agreements, and all other "Loan Documents" as such term is defined in the Prepetition Credit Agreement, as the same have been amended, restated, modified or supplemented from time to time prior to the date hereof, including all exhibits thereto, the "***Prepetition Loan Documents***").

        (ii)    <u>Prepetition Debt</u>. Prior to the Petition Date and pursuant to the Prepetition Credit Agreement, the Debtors were indebted and liable to the Prepetition <u>Secured</u> Lender with respect to the outstanding obligations under the Prepetition Credit Agreement, for loans advanced under the Prepetition Credit Agreement in an aggregate amount of approximately

$32,600,000 (together with (a) all secured indebtedness or obligations under the Prepetition Loan Documents as of the Petition Date, including all "Secured Obligations" (as defined in the Prepetition Credit Agreement), and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Loan Documents, plus (b) all Allowable 506(b) Amounts (defined below), collectively the "***Prepetition Debt***"). As used herein, "***Allowable 506(b) Amounts***" shall mean, to the extent allowable under Bankruptcy Code section 506(b), interest at the default rate of interest as set forth in Section 2.12(d) of the Prepetition Credit Agreement, all fees, costs, expenses, and other charges due or coming due under the Prepetition Loan Documents (regardless of whether such fees, costs, interest and other charges are included in the Budget), and all costs and expenses at any time incurred by Prepetition Lender in connection with (a) the negotiation, preparation and submission of this Final Order and any other order or document related hereto, and (b) the representation of Prepetition Lender in the Chapter 11 Cases, including in defending any Challenge (as defined herein).

        (iii)    <u>Prepetition Liens and Prepetition Collateral</u>.  As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date, the Debtors granted to the Prepetition Lender a first priority security interest in, and continuing lien on, substantially all of their assets and personal property (subject only to the exceptions set forth in the Prepetition Loan Documents) (the "***Prepetition Liens***") and all proceeds, products, and accessions thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "***Prepetition Collateral***") to secure the Prepetition Debt, including the Debtors' respective obligations under the Prepetition Credit Agreement.  Upon entry of this ~~Interim~~Final Order, for purposes of sections 506(c) and 507(b) of the Bankruptcy Code and Bankruptcy Rule 3012, as of the Petition Date, the Prepetition Debt is fully secured by Prepetition Collateral with a value in

-9-

excess of the Prepetition Debt; *provided, however,* that nothing herein shall prejudice Prepetition Lender's right to later assert that its interest in the Prepetition Collateral has not received or is not receiving sufficient adequate protection.

        (iv)    <u>Validity, Perfection and Priority of Prepetition Liens and Prepetition Debt.</u> As of the Petition Date, (a) the Prepetition Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable, and properly perfected; (b) were granted to, or for the benefit of, the Prepetition Lender for fair consideration and reasonably equivalent value; (c) the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, except in the case of the Permitted Priority Liens (as defined below); (d) the Prepetition Debt constitutes legal, valid, binding, and non-avoidable obligations of the Borrower and the Prepetition Entity Guarantors enforceable in accordance with the terms of the applicable Prepetition Loan Documents; (de) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature, whether arising at law or in equity, to any of the Prepetition Liens or Prepetition Debt exist, and no portion of the Prepetition Liens nor the Prepetition Debt is subject to any challenge or defense including, without limitation, impairment, set-off, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, subordination (whether equitable or otherwise), counterclaims, or cross-claims pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (ef) each of the Debtors, and their respective estates, and the DIP Entity Guarantors, do not have any claims, objections, challenges, causes of action, and/or choses in action against the Prepetition Lender (solely in its capacity as such) or any of its affiliates, agents, attorneys, advisors, professionals, officers, consultants, directors, and employees (in each case, solely, in such respective capacity) arising out of, based upon, or related to the Prepetition Loan Documents (the "***Estate Claims***"); and (fg) the Prepetition Debt

constitutes allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(v)    Cash Collateral.    As of the Petition Date, all or substantially all of the Debtors' cash and cash equivalents, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral, as such term is defined in section 363(a) of the Bankruptcy Code, of the Prepetition Lender under the Prepetition Loan Documents. The Debtors have an immediate need to use Cash Collateral and to incur the DIP Debt as provided herein through the conclusion of the Final Hearing in order to prevent immediate and irreparable harm to the estates, minimize disruption to and avoid the termination of business operations, and to maintain the value of their assets and businesses and maximize return to all creditors.

(vi)    Releases.    Subject to entry of the Final Order, theThe Debtors, on behalf of themselves and their respective estates (including any successor, trustee, or other estate representative in the Chapter 11 Cases and any Successor Cases (as defined herein), and any party acting by, through, or under the Debtors or their estates) and the DIP Entity Guarantors[4] by their execution of the DIP Credit Agreement, hereby forever, unconditionally, and irrevocably release, discharge, and acquit the Prepetition Lender (solely in its capacity as such) and its successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, agents, and professionals, and its heirs, predecessors, successors, and assigns (in each case, solely in such respective capacity) (collectively, the "*Released Parties*") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses

---

[4]    The proposed Final Order will include language that the Debtors' Releases shall be binding upon successors, trustees or other estate representatives.

(including, without limitation, reasonable attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the Prepetition Documents, and/or the transactions contemplated hereunder or thereunder including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, and (b) any Estate Claims; provided that no party shall be released from any claims found in a final, nonappealable judgment of a court of competent jurisdiction to have resulted from such party's actual fraud.

(vii)    No affiliation. The Debtors and the DIP Entity Guarantors by their execution of the DIP Credit Agreement acknowledge and agree that the Prepetition Lender is not directly or indirectly, through one or more intermediaries, nor will it be by operation of this ~~Interim~~Final Order, controlling, controlled by or under common control with the Debtors and DIP Entity Guarantors. As used herein, control shall mean possessing, directly or indirectly, the power to direct or cause the direction of the management, policies and operations of the Debtors and DIP Entity Guarantors, whether through ownership of voting securities, by contract, or otherwise.

(viii)    DIP Liens and DIP Debt. The liens and security interests granted to the DIP Lender pursuant to this ~~Interim~~Final Order and the DIP Loan Documents shall be valid, binding, properly perfected, enforceable and non-avoidable liens against the Debtors. Until such time as all DIP Debt has been indefeasibly paid in full in cash, the Debtors shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens and security interests provided to the DIP Lender by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code, or otherwise, except with respect to (a) prior payment of the Carve-Out and (b) the Permitted

Priority Liens. Until such time as all DIP Debt has been indefeasibly paid in full in cash, the Debtors shall not in any way or at any time permit to exist an administrative expense claim against any Debtor of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses of the kind specified in, or arising or ordered under sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code, that is superior to or *pari passu* with the DIP Superpriority Claim (as defined below) provided herein, subject to the Carve-Out.

F. ~~G.~~ <u>Purpose and Necessity of Financing.</u> An immediate and ongoing need exists for the Debtors to obtain the DIP Loans to permit, among other things, the Debtors to fund their sale process and to meet their obligations arising during the Chapter 11 Cases.  The Debtors require the DIP Loans (i) for working capital and general corporate purposes, (ii) to pay fees and expenses incurred by the DIP Lender in connection with the DIP Loan Documents as provided therein, (iii) to pay restructuring costs and Professional Fees (as defined below) relating solely to the Chapter 11 Cases, and (iv) for other purposes as provided in and subject to the terms of the DIP Credit Agreement, and subject to compliance with the Budget and the Permitted Variances, as provided in the DIP Credit Agreement. If the Debtors do not obtain authorization to borrow under the DIP Credit Agreement, they will suffer immediate and irreparable harm. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) of the Bankruptcy Code, on more favorable terms than those set forth in the DIP Loan Documents, based on the totality of the circumstances. A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtors without granting the DIP Lender superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), 364(c)(2) and 364(d)(1) of

-13-

the Bankruptcy Code, as provided in ~~this Interim Order~~the DIP Orders and the DIP Loan Documents. After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to it at this time.

G.    ~~H.~~ Adequate Protection. The Prepetition Lender is entitled to receive adequate protection on account of the Prepetition Debt for any Diminution in Value of its interests in the Prepetition Collateral from and after the Petition Date resulting from, among other things, the use of Cash Collateral, the imposition of priming liens on the Prepetition Collateral by the DIP Lender, the use, sale, or lease~~, consumption, or disposition~~ of Prepetition Collateral, or the imposition of the automatic stay pursuant to sections 361, 362, 363, 364, 503(b), and 507(b) of the Bankruptcy Code.  Consequently, as adequate protection, and subject to the Carve-Out (i) the Prepetition Lender shall be granted the Adequate Protection Liens (as defined below) and the Adequate Protection Superpriority Claim (as defined below), and (ii) the Prepetition Lender shall receive the Adequate Protection Payments (as defined below). The adequate protection provided herein and other benefits and privileges contained herein are necessary to protect the Prepetition Lender from any Diminution in Value of its interests in the Prepetition Collateral and to obtain the consents and agreements contained herein, including that the adequate protection provided herein is subject and subordinate to the Carve-Out (as defined below).  As described in the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) were negotiated in good faith, are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration.

55117086.8

H.   ~~I.~~  Good Cause Shown. The Debtors have requested immediate entry of this ~~Interim~~Final Order pursuant to Bankruptcy Rule 4001(b)(2) and Bankruptcy Local Rule 4001-2(b).  Good cause has been shown for entry of this ~~Interim~~Final Order and authorization for: (i) the DIP Lender to provide the Debtors with the DIP Loans and (ii) the Debtors to accept, incur and undertake the DIP Debt pursuant to the DIP Credit Agreement as hereinafter provided. The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents is vital to the Debtors' estates and their creditors. The liquidity to be provided under the DIP Loan Documents will enable the Debtors to continue to operate their businesses in the ordinary course, to preserve the value of the Debtors' assets, and to proceed with an orderly sale process. Among other things, entry of this ~~Interim~~Final Order is necessary to maximize the value of the Debtors' assets and to avoid immediate and irreparable harm to the Debtors and their estates, and, accordingly~~,~~ is in the best interests of the Debtors, their estates and their stakeholders. Based on the Motion, the First Day Declaration, and the record presented to the Court at the Interim ~~Hearing~~and Final Hearings, the terms of the DIP Credit Agreement, ~~this Interim Order,~~the DIP Orders and the DIP Loan Documents are fair and reasonable, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

I.   ~~J.~~No Credit Available on More Favorable Terms.  Despite diligent efforts and a sufficient marketing process, the Debtors have been unable to obtain post-petition financing on terms more favorable than those offered by the DIP Lender under the DIP Loan Documents.

J.   ~~K.~~  Sections 506(c), 552(b) and Marshaling. In light of the DIP Lender's agreement to permit its DIP Liens and DIP Superiority Claim (as defined below) to be subject to prior payment of the Carve-Out, and in exchange for and as a material inducement to the DIP

Lender to agree to provide the DIP Facility, and in light of the Prepetition Lender's agreement to permit its Prepetition Liens to be subject to prior payment of the Carve-Out and the DIP Liens, ~~subject to, and only~~ upon~~,~~ entry of ~~the~~this Final Order, the DIP Lender and the Prepetition Lender are each entitled to the rights and benefits of section 552(b) of the Bankruptcy Code, a waiver of the provision of section 506(c) of the Bankruptcy Code, and a waiver of the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral and the Prepetition Collateral, respectively, and ~~the Debtors intend to seek in the Final Order~~ a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code, a waiver of the provisions of section 506(c) of the Bankruptcy Code, and a waiver of the "marshaling" doctrine with respect to the Aggregate Collateral (as defined below).

K.    ~~L.~~ Good Faith.

(i)    The DIP Lender has indicated a willingness to provide financing to the Debtors, but solely on the terms and conditions set forth in the DIP Loan Documents and this Final Order, including, without limitation: (a) entry of ~~this~~the Interim Order; (b) entry of this Final Order; (c) approval of the terms and conditions of the DIP Facility and the DIP Loan Documents, including, without limitation, the Debtors' ability to enter into such documents and to incur all of the obligations thereunder, and to confer upon the DIP Lender all rights, powers and remedies thereunder; (~~c~~d) satisfaction of the closing conditions set forth in the DIP Loan Documents; and (~~d~~e) findings by this Court that the DIP Facility and the ~~Debtor's~~Debtors' use of the DIP Loans are essential to the Debtors' estates, that the DIP Lender is extending credit to the Debtors pursuant to the DIP Loan Documents and this ~~Interim~~Final Order in good faith, and that the DIP Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to this ~~Interim~~Final Order and the DIP Loan Documents will have the

-16-

protections provided by section 364(e) of the Bankruptcy Code. Accordingly, after considering all of their practical alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the DIP Loans to be provided by the DIP Lender, pursuant to the terms of the DIP Loan Documents, represent the best financing currently available to the Debtors.

(ii)   The terms of the DIP Loan Documents, including, without limitation, the interest rates and fees applicable, are more favorable to the Debtors than any available from alternative sources. Based upon the record before the Court, the DIP Loan Documents have been negotiated in good faith and at arm's-length among the Debtors and the DIP Lender. Any DIP Loans and other financial accommodations made to the Debtors by the DIP Lender pursuant to the DIP Loan Documents and this ~~Interim~~Final Order shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Lender shall be entitled to all protections afforded thereby.

L.   ~~M.~~ Fair Consideration and Reasonably Equivalent Value. The Debtors have received and will receive fair and reasonable consideration in exchange for access to the DIP Loans and all other financial accommodations provided under the DIP Loan Documents and this ~~Interim~~Final Order. The terms of the DIP Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

M.   ~~N.~~ Third Party Consent. To the extent consent is required, the Prepetition Lender has consented or is deemed to have consented to the DIP Loan Parties' entry into the DIP Loan Documents in accordance with and subject to the terms and conditions in this ~~Interim~~Final Order and the DIP Loan Documents.

55117086.8

N.    ~~O.~~ Good Cause Shown; Best Interest.  The Debtors have requested immediate entry of this ~~Interim~~Final Order pursuant to Bankruptcy Rule 4001(b)(2) and Bankruptcy Local Rule 4001-2(b).  Absent entry of this ~~Interim~~Final Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed.  This Court concludes that good cause has been shown and entry of this ~~Interim~~Final Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for a successful chapter 11 process.

~~P. Final Hearing.  The Debtors will seek approval of the relief requested in the Motion on a final basis pursuant to a Final Order at the Final Hearing.~~

Based upon the foregoing findings, acknowledgements and conclusions, and upon the record made before this Court at the ~~Interim~~Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    ~~Motion~~Final DIP Financing Approved. The Motion is granted as and to the extent set forth herein, and the Court hereby authorizes and approves the Debtors' execution and delivery of the DIP Credit Agreement, in substantially the form annexed hereto, and the Debtors' execution and delivery of all instruments, guaranties, security agreements, assignments, pledges, mortgages, reaffirmations and other documents referred to therein or requested by the DIP Lender (including but not limited to the Pledge and Security Agreement), to give effect to the terms thereof and as will be drafted and executed as contemplated therein, each in final form and substance acceptable to the DIP Lender, but subject in all respects to the terms of this Final Order.

55117086.8

2.      <u>Objections Overruled.</u> Any objections, reservations of rights or other statements with respect to the Motion and entry of this ~~Interim~~<u>Final</u> Order, to the extent not withdrawn or resolved, are overruled on the merits. This ~~Interim~~<u>Final</u> Order shall become effective immediately upon its entry.

<u>**AUTHORIZATION FOR DIP FINANCING**</u>

3.      <u>Authorization for DIP Financing Pursuant to Budget</u>.

(a)      The Debtors are hereby authorized to incur DIP Debt, subject to the terms of this ~~Interim~~<u>Final</u> Order, the Budget (subject to the Permitted Variances) and the DIP Loan Documents, and also subject to any conditions and limitations on availability in the DIP Credit Agreement, plus all interest, fees and other charges payable in connection with such DIP Loans as provided in the DIP Credit Agreement and other DIP Loan Documents.

(b)      The Debtors have delivered to the DIP Lender, the United States Trustee's Office and counsel to ~~any~~<u>the</u> Committee, ~~if appointed, a 13-week~~<u>a</u> cashflow forecast of receipts and disbursements, and sources and uses of the Borrower, broken down by week, including the anticipated uses of the DIP Facility for ~~such~~<u>the</u> period <u>through June 30, 2025 </u>(a "***Budget***"~~), in each case, in form and substance acceptable to the DIP Lender. The initial~~<u>). Such</u> Budget  is attached to this ~~Interim~~<u>Final</u> Order as **<u>Exhibit B</u>**. ~~The Debtors shall update the Budget monthly subject to the Borrower's month-end closing process, but no later than ten (10) calendar days after month-end~~.  The Debtors shall update the Budget at the end of each two-week period and provide ~~an updated Budget for the subsequent two-week period ~~<u>to the DIP Lender, the United States Trustee, and Committee such updated Budget </u>(which in each case must be satisfactory to <u>and approved </u>the DIP Lender<u>, in accordance with the DIP Credit Agreement</u>) extending and supplementing the Budget; *provided, however,* if a line item is not approved by the DIP Lender it

shall be deemed excluded and disregarded. For the avoidance of doubt, Budget payments shall be funded through the issuance of DIP Debt and not through the use of Prepetition Lender's Cash Collateral; for the further avoidance of doubt, no use of Prepetition Lender's Cash Collateral will be permitted without the Prepetition Lender's consent.

~~(c) The Budget shall at all times be in form and substance acceptable to, and as approved by, the DIP Lender, in accordance with the DIP Credit Agreement. The Debtors shall deliver notice copies of each updated Budget to the DIP Lender, the United States Trustee's Office and counsel to any Committee, if appointed.~~

(c)    ~~(d)~~ Together with the delivery of each updated Budget, the Debtors shall also provide a bi-weekly report/reconciliation to the DIP Lender and Committee setting forth the immediately preceding two weeks, the actual and budgeted results for such week by line item in the Budget (the "***Budget Variance Report***"), as well as additional customary reporting to be agreed among the Debtors and the DIP Lender. Any such additional customary reporting shall be simultaneously provided to the Committee.

(d)    ~~(e)~~ Funds borrowed under the DIP Credit Agreement shall be used by the Debtors in accordance with the Budget (subject to the Permitted Variances), the DIP Loan Documents and this ~~Interim~~Final Order. The consent of the DIP Lender to any Budget shall not be construed as a commitment to provide DIP Loans after the occurrence of the ~~Termination~~Maturity Date (as defined in the DIP Credit Agreement), regardless of whether the aggregate funds shown on the Budget have been expended. If the DIP Lender advances monies to the Debtors and the Debtors use such monies other than in accordance with the terms or provisions of this ~~Interim~~Final Order, such advances shall be considered DIP Debt for purposes of this ~~Interim~~Final Order.

(e)    (f) Any amendments, supplements or modifications to the Budget must be consented to in writing by the DIP Lender, in accordance with the DIP Credit Agreement, prior to the implementation thereof and shall not require further notice, hearing, or court order. to the extent such amendments, supplements or modifications are non-material.  Any amendments, supplements or modifications to the Budget resulting in a change to the aggregate amount of any line item for the period through June 30, 2025 of more than 25% of the amount set forth in the Budget (an "*Excess Variance Amount*") must be provided to the Committee with two (2) days' notice (or one (1) day's notice in the event of a business emergency).  All rights of the Committee with respect to any such Excess Variance Amounts shall be reserved. Notwithstanding anything to the contrary herein, any amendment, supplement, or modification to a line item for Professional Fees (as defined herein) must be agreed to in writing by the applicable Professional(s).

(f)    (g) The DIP Lender (i) may assume the Debtors will comply with the Budget (subject to the Permitted Variances), (ii) shall have no duty to monitor such compliance, and (iii) shall not be obligated to pay (directly or indirectly from the DIP Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to any Budget. The DIP Lender may rely on the Debtors' representations that the amount of the DIP Debt requested at any time, and the use thereof, are in accordance with the requirements of this Interim Final Order, the Budget, the DIP Loan Documents, the Bankruptcy Code and the Bankruptcy Rules.  All advances and extensions of credit shall be based upon the terms and conditions of the DIP Loan Documents, as the same may be adjusted from time to time.

(g)    (h) Notwithstanding anything in this Interim Final Order to the contrary and upon the Termination Maturity Date, the DIP Lender's obligation to make loans under the

-21-

DIP Loan Documents shall expire, and the DIP Loans made pursuant to this ~~Interim~~Final Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this ~~Interim~~Final Order by way of acceleration or otherwise). Absent an earlier Maturity Date under the DIP Loan Documents and this Final Order, the Maturity Date will occur on June 30, 2025, unless otherwise agreed to by the Debtors, the DIP Lender, and the Committee, or as approved by the Court with the consent of the DIP Lender as provided in Section 8 herein. Following the sale of the Debtors' Alliance gaming division, the Maximum DIP Facility Amount under the DIP Credit Agreement shall be reduced to $8,200,000, inclusive of $1,200,000 on account of issued and outstanding letters of credit.

4.      Authority to Execute and Deliver Necessary Documents.

(a)      The Debtors are authorized to negotiate, prepare, enter into, and deliver the DIP Loan Documents, in each case including any amendments thereto. The Debtors are further authorized to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, deposit account control agreements, mortgages or deeds of trust, or similar documents or agreements encumbering all of the DIP Collateral and securing all of the Debtors' Obligations under the DIP Loan Documents, each as may be provided for under the DIP Credit Agreement or as otherwise reasonably requested by the DIP Lender, subject to the terms of this Final Order.

(b)      The Debtors are further authorized to (i) perform and incur all of their Obligations under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein and in

55117086.8

this ~~Interim~~Final Order, and (ii) perform all acts required under the DIP Loan Documents and this ~~Interim~~Final Order.

(c)     The DIP Loan Documents and any amendments thereto may be executed and delivered on behalf of the Debtors by any officer, director or agent of the Debtors, who by signing shall be deemed to represent himself or herself to be duly authorized and empowered to execute such DIP Loan Documents and amendments for and on behalf of the Debtors and the DIP Lender shall be authorized to rely upon any such person's execution and delivery of any of the DIP Loan Documents and any amendments thereto as having done so with all requisite power and authority to do so; and the execution and delivery of any of the DIP Loan Documents or any amendments thereto by any such person on behalf of the Debtors shall be conclusively presumed to have been duly authorized by all necessary corporate, limited liability company or other entity action (as applicable) of the Debtors.

5.     <u>Valid and Binding Obligations</u>.  All DIP Debt under the DIP Loan Documents shall constitute valid, binding, and nonavoidable obligations of the Debtors, enforceable against them and their successors and assigns, in accordance with their terms and the terms of this ~~Interim~~Final Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Loan Documents or this ~~Interim~~Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity. Without limiting the generality of the foregoing, in no event shall the Debtors be authorized to offset or recoup any amounts owed, or

allegedly owed, by the DIP Lender to the Debtors or any of their affiliates against any of the DIP Debt without the prior written consent of the DIP Lender, and no such consent shall be implied by any action, inaction, or acquiescence by the DIP Lender.

6.      Additional Terms of DIP Debt.  The following terms shall apply to the DIP Debt:

(a)      Maximum DIP Facility Amount. The ~~sum of (i) the~~ maximum principal amount of the DIP Debt ~~and (ii) the principal amount of the Prepetition Debt (including Allowable 506(b) Amounts)~~ outstanding at any time shall not exceed the lesser of $~~41,000,000~~42,200,000 (the "*Maximum DIP Facility Amount*") and the Borrowing Base (as defined in the DIP Credit Agreement)~~; provided that, until entry of the Final Order, the maximum amount available to be drawn under the Interim Facility shall be limited to an amount that shall not result in a total increase in the outstanding principal amount of the Prepetition Debt and DIP Debt (collectively, the "Aggregate Credit Obligations") from the Petition Date through the date of entry of the Final Order in excess of $5,500,000. All DIP Loans made under the Interim Facility shall be subject to (a) Availability, and (b) compliance with the terms, conditions and covenants set forth in the DIP Documents and the Interim Order (including compliance with the Budget). All DIP Loans made under the Interim Facility shall be due and payable on the date that is the earlier of (a) twenty-five (25) days after the entry of the Interim Order, (the "Interim Facility Maturity Date") unless a Final Order shall have been entered on or before each such date (provided, however, that the Interim Facility Maturity Date may be extended from time to time by the prior written consent of the DIP Lender) and (b) the occurrence of an Event of Default. Upon the Bankruptcy Court's entry of the Final Order (the date upon which the Final Order is entered, the "Final Order Entry Date"), the~~. The full Maximum DIP Facility Amount shall be available to the Debtors from time to time, subject to (a) Availability, and (b)

compliance with the terms, conditions and covenants as set forth in the DIP Loan Documents and ~~the~~this Final Order (including compliance with the Budget).  Without limiting the generality of the foregoing, and subject to the terms of the DIP Loan Documents, the Maximum DIP Facility Amount shall be reduced to $8,200,000 (inclusive of $1,200,000 on account of issued and outstanding letters of credit) upon the closing of the sale of the Debtors' Alliance gaming division.

      (b)   <u>Roll-Up</u>.  Upon entry of ~~the~~this Final Order, the Borrower shall borrow DIP Loans sufficient to pay the full amount of the Prepetition Debt then due and owing under the Prepetition Facility as of the <u>date of this</u> Final Order ~~Entry Date~~. The proceeds of such DIP Loans shall be remitted to the Prepetition Lender to pay down the Prepetition Facility (the "***Roll-Up***").  If for any reason the Roll-up is not approved or effectuated, the Maximum DIP Facility Amount shall be reduced by the portion of the Roll-up not approved or otherwise effectuated.  For the avoidance of doubt, notwithstanding anything to the contrary in this Final Order or the DIP Loan Documents, the Roll-Up shall be subject in all respects to the rights, obligations and limitations governing parties in interest set forth in paragraph 21 herein, and the Roll-Up shall be without prejudice to any remedy available following a timely and successful Challenge to the validity, enforceability, extent, perfection, or priority of the Prepetition Lender's claims or liens, or a determination that the Prepetition Debt was undersecured as of the Petition Date.

      (c)   <u>Interest</u>.  The DIP Debt shall bear interest at a per annum rate equal to the Adjusted REVSOFR30 Rate (as defined in the Prepetition Credit Agreement) plus 4.50%. Interest shall accrue on the principal balance of the DIP Debt, from time to time, based on a 365-day year and charged for the actual number of days outstanding.  Interest shall accrue and be

55117086.8

payable in cash monthly in arrears. Default interest shall be payable upon the DIP Lender's demand (subject to the terms of DIP Loan Documents). Any fees or expenses required to be paid or reimbursed, as applicable, pursuant to the DIP Loan Documents shall be payable upon the DIP Lender's demand.

      (d)    <u>Unused Line Fee</u>. Consistent with the Prepetition Credit Agreement, an unused line fee shall accrue at the rate of 0.25% per annum on the average daily amount by which (i) the Maximum DIP Facility Amount exceeds (ii) the outstanding principal amount of the Aggregate Credit Obligations, and shall be payable in arrears on the first Business Day of each calendar month.

      ~~(e)~~ ~~<u>Success Fee</u>.~~ ~~Subject to, and only upon, entry of the Final Order, a fee in an amount equal to the Applicable Success Fee Percentage (as defined below) of the Maximum DIP Facility Amount shall be due and payable on or before the sixtieth (60th) day following the Termination Date (the "**_Success Fee Payment Date_**").~~ ~~The Applicable Success Fee Percentage shall equal: (i) 0% if the aggregate gross proceeds from the Sale Transaction and all other asset sales consummated prior to the Success Fee Payment Date (collectively, the "**_Aggregate Sale Proceeds_**") are less than $42,000,000, (ii) 1.50% if the Aggregate Sale Proceeds equal or exceed $42,000,000 but are less than $43,000,000, and (iii) 2.50% if the Aggregate Sale Proceeds are greater than $43,000,000.~~

      (e)    <u>DIP Facility Fee</u>. The DIP Lender shall be paid a DIP Facility Fee of $575,000, of which $300,000 is due and payable upon the closing of the sale of the Debtors' Alliance gaming division, and $275,000 is due and payable upon the Maturity Date.

      (f)    <u>Letter of Credit and Commercial Credit Cards</u>. Upon entry of the Interim Order and the Bridge Order, (i) the letter of credit in favor of BC Industrial Exchange Portfolio II

55117086.8

in the amount of $1,000,000 that ~~is~~was issued and is outstanding under the Prepetition Credit Agreement ~~shall be~~was deemed issued under the DIP Credit Agreement, ~~and~~ (ii) the DIP Lender ~~shall~~was authorized to issue an additional letter of credit in the amount of $200,000 on account of a surety bond provided in connection with the Debtors' obligations regarding customs duties and/or import taxes, (iii) the DIP Lender agreed to maintain the Debtors' commercial credit card programs under the terms and conditions of those programs.  ~~Upon entry of the Final Order,~~, (iv) the Borrower ~~shall immediately borrow~~borrowed $~~1,300,000~~1,510,000 under the DIP Credit Agreement, with such proceeds transmitted to ~~be~~and held by DIP Lender in a segregated blocked account maintained by and in the name of the DIP Lender (the "***LC and Commercial Card Collateral Account***") as cash collateral to secure (A) the Borrower's reimbursement obligations in connection with any draws under the letter of credit, (B) the Borrower's payment obligations in connection with the commercial credit card programs and (C) the Borrower's other obligations under the DIP Credit Agreement, including, but not limited to, the obligation to repay the Aggregate Credit Obligations in full.  The DIP Lender shall continue to hold the LC and Commercial Card Collateral Account, and is authorized to draw the funds on deposit in such LC and Commercial Card Collateral Account—without further order of the Court—as and when reimbursement or other amounts are owing to the DIP Lender in connection with the Letters of Credit or the Commercial Card program.

(g)    Maturity.  ~~The~~Subject to the terms of this Final Order, the DIP Debt shall mature and be due and payable in full by the Borrower on the ~~Termination Date~~Maturity Date.

(h)    DIP Entity Guarantors.  The DIP Entity Guarantors shall be guarantors of the DIP Debt and shall likewise reaffirm their prior guaranties of the Prepetition Debt. The joint and several nature of the obligations of the DIP Entity Guarantors as guarantors relating to the

Prepetition Debt and all related security documents shall remain in full force and effect. The DIP Entity Guarantors shall reaffirm, and be deemed to have reaffirmed, their joint and several liability under the Prepetition Loan Documents. The DIP Entity Guarantors shall be required to execute the DIP Credit Agreement and all applicable DIP Loan Documents.

(i)     <u>Collateral Access Agreements</u>. All "Collateral Access Agreements" (as defined in the DIP Credit Agreement) relating to the Borrower and DIP Entity Guarantors in effect as of the Petition Date shall remain in full force and effect and in favor of both Prepetition Lender and DIP Lender, notwithstanding the entry of the ~~Interim Order or any subsequent orders amending the Interim Order.~~<u>DIP Orders.</u>

(j)     <u>Compliance with Budget</u>. The Debtors shall be required to comply with the Budget (including any Permitted Variances as defined in the DIP Credit Agreement).

(k)     <u>Compliance with Availability Requirement</u>. DIP Loans will be limited to <u>the</u> Availability.

(l)     <u>Milestones</u>. The Debtors shall comply in all respects with the following milestones (the "***Milestones***"), which are also set forth in Exhibit B to the DIP Credit Agreement~~, and will likewise be set forth in the Final Order~~. These Milestones may be extended in writing by the DIP Lender in its sole and absolute discretion. Failure to comply fully and timely with these Milestones will be an Event of Default under the DIP Facility:

(a)     on or one (1) day after the Petition Date, the Borrower shall have filed: (i) a motion seeking approval of the DIP Facility, including the Interim Order; and (ii) other customary First Day Pleadings (including the cash management first day order), all in form and substance reasonably acceptable to the DIP Lender;

(b)     no later than three (3) Business Days after the Petition Date, the Bankruptcy Court shall have entered the Interim Order;

(c)     no later than three (3) Business Days after the Petition Date, the Debtors shall have filed an application, in form and substances reasonably acceptable to the DIP Lender,

seeking approval of the Debtors' retention of Raymond James & Associates, Inc., as investment banker to the Debtors ("**Raymond James**");

(d)    no later than ~~twenty-five~~thirty-eight (~~25~~38) days after the Petition Date, the Bankruptcy Court shall have entered the Final Order;

(e)    no later than ~~twenty-five~~thirty (~~25~~30) days after the Petition Date, the Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the DIP Lender, approving (i) the Bidding Procedures and (ii) seeking approval of a stalking horse asset purchase agreement as the stalking horse bid for the purchase of the Debtors' assets (the "**Sale Transaction**"), which asset purchase agreement shall be in form and substance reasonably acceptable to the DIP Lender (the "**Bidding Procedures Order**");

(f)    no later than ~~twenty-five~~thirty (~~25~~30) days after the Petition Date, the Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the DIP Lender, approving the Debtors' retention of Raymond James;

(g)    no later than forty-five (45) days after the Petition Date, the Debtors shall have filed Schedules of Assets and Liabilities and Statement of Financial Affairs;

(h)    no later than forty-five (45) days after entry of the Bidding Procedures Order, the Debtors shall have conducted an auction in accordance with the Bidding Procedures;

(i)    no later than seven (7) days after conclusion of the auction, the Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the DIP Lender, approving the Sale Transaction; and

(j)    no later than fifteen (15) days after the entry of the order of the Bankruptcy Court approving the Sale Transaction, the Debtors shall have consummated the Sale Transaction, and indefeasibly paid all amounts owing to the Lenders.

7.    <u>DIP Charges</u>. All DIP Charges[5] are hereby approved and shall be promptly paid by the Debtors in accordance with this ~~Interim~~Final Order and the DIP Loan Documents, without need for filing an application with the Court for approval or payment of the DIP Charges. Reasonable professional fees and expenses incurred by the Lenders in connection with the Chapter 11 Cases in their respective administration of the Prepetition Loan Documents and DIP Loan Documents shall be paid in each case within five (5) Business Days subsequent to the

---

[5] The term "**DIP Charges**", as used herein shall mean interest at the applicable rate of interest ~~and,~~ the Unused Line Fee, and the DIP Facility Fee under the DIP Credit Agreement.

receipt by the Debtors, ~~any~~the Committee and the U.S. Trustee of summary form invoices (the "***Invoiced Fees***") which may be redacted for privileged information (the "***Review Period***"). The Debtors, the Committee and the U.S. Trustee may object to any portion of the Invoiced Fees (the "***Disputed Invoiced Fees***") within the Review Period. Any disputes regarding the professional fees that are not resolved consensually shall be submitted to the Bankruptcy Court for resolution. The Debtors shall pay (i) any Invoiced Fees that are not Disputed Invoiced Fees promptly after expiration of the Review Period; and (ii) any Disputed Invoiced Fees that the Court approves in a final order requiring payment thereof within five (5) Business Days after entry of that order. The submission of such summary invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. The DIP Charges, including all professional fees and expenses, shall constitute a portion of the adequate protection required to be provided to the DIP Lender under the terms of this ~~Interim~~Final Order.

8.    Amendments, Consents, Waivers, and Modifications. The Debtors, with the express written consent of the DIP Lender and in accordance with the DIP Credit Agreement, may enter into any non-material amendments, consents, waivers, or modifications to the DIP Loan Documents without the need for further notice and hearing or any order of this Court, it being further understood that further approval of this Court, upon notice and a hearing, shall be required for any such authorizations, amendments, waivers, consents or other modifications to and under the DIP Loan Documents ~~(and any fees and other expenses (including attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that are material or~~ that shorten or extend the maturity of the extensions of credit thereunder, modify the events of default thereunder, or increase the aggregate commitments or the rate of interest payable thereunder (each, a "***Material***

55117086.8

*DIP Facility Amendment"*); *provided* that~~, for the avoidance of doubt, updates and supplements to the Budget required to be delivered under the DIP Loan Documents shall not be considered amendments or modifications to the Budget or the DIP Loan Documents; *provided further* that,~~ the Debtors and the DIP Lender shall have the right to seek approval from the Court of ~~material amendments, waivers, consents or other modifications~~any proposed Material DIP Facility Amendment on an expedited basis with notice to the Committee and the United States Trustee, conditioned upon the DIP Lender having agreed to the terms of such Material DIP Facility Amendment.

**CASH COLLATERAL AND ADEQUATE PROTECTION**

9.    <u>Authorization to Use Cash Collateral.</u>  ~~Upon entry of this Interim Order, the~~The Debtors are authorized to use Cash Collateral solely in accordance with the terms and provisions of this ~~Interim~~Final Order.

10.    <u>Procedure for Use of Cash Collateral.</u>

(a)    <u>Delivery of Cash Collateral to DIP Lender.</u> Debtors shall deposit all Cash Collateral now or hereafter in their possession or control into one or more Blocked Accounts (or otherwise deliver such Cash Collateral to the DIP Lender and the Prepetition Lender) promptly upon receipt thereof. As used herein, the "*Blocked Account*" shall mean the Lock Box or Collateral Deposit Account, in each case, as such term is defined in the DIP Credit Agreement.

(b)    <u>Cash Collateral in Lenders' Possession.</u>  The Lenders are authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into their possession or control that constitute Aggregate Collateral (defined below) or the proceeds thereof, and to apply such amounts in accordance with this ~~Interim~~Final Order.

55117086.8

(c)      _Application of Cash Collateral_.  The Lenders are authorized to apply all Cash Collateral now or hereafter in their possession or control as follows: (i) first, to the payment of all Prepetition Debt (including Allowable 506(b) Amounts); (ii) second, to payment of DIP Charges; and (iii) third, to payment of all other DIP Debt in accordance with the DIP Credit Agreement. All such applications to DIP Debt shall be final and not subject to challenge by any person, including any chapter 7 or chapter 11 trustee (the "**_Trustee_**") appointed or elected. All such applications to Prepetition Debt shall be final, subject only to the right of the parties in interest to assert a Challenge in accordance with paragraph 21 that such applications to other Prepetition Debt resulted in payment of an unsecured prepetition claim of Prepetition Lender. Any amounts disgorged in connection with any such objection or determination shall be first applied to reduce the DIP Debt, dollar-for-dollar. The Lenders shall have the right (but not the obligation) to apply Cash Collateral to amounts of the DIP Debt ahead of amounts of Prepetition Debt in their discretion.

(d)      _Prohibition Against Use of Cash Collateral_.  Except as provided for in this ~~Interim~~Final Order, the Debtors will not use Cash Collateral, unless, in addition to the satisfaction of all requirements of section 363 of the Bankruptcy Code, the Lenders have consented to such use.

11.      _Adequate Protection_. The Prepetition Lender is entitled on account of the Prepetition Debt and the Prepetition Liens, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral (including Cash Collateral) (such adequate protection as set forth in clauses (a)–(e) below, the "**_Adequate Protection Obligations_**"). Accordingly, the Prepetition Lender is hereby granted, as applicable, the following liens, claims, rights and protections:

55117086.8

(a)    <u>Adequate Protection Liens</u>.  As adequate protection of the interests of the Prepetition Lender in the Prepetition Collateral against any Diminution in Value of such interests, pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Debtors are authorized to grant, and as of entry of this ~~Interim~~Final Order are deemed to have granted, to the Prepetition Lender additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens on (~~collectively,~~ the "***Adequate Protection Liens***") all of each Debtor's presently owned or hereafter acquired property and assets (, including, ~~subject to entry of a Final Order,~~ without limitation any proceeds of, or property recovered in connection with, any of the Debtors' Avoidance Actions)[6], commercial tort claims and other claims and causes of action, whether such property and assets were acquired by such Debtor before or after the Petition Date or were subject to a lien that was avoided pursuant to ~~section~~any and all of sections 502, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, of any kind or nature, whether real or personal, tangible or intangible, wherever located, including, without limitation, all inventory, accounts receivable, general intangibles, chattel paper, contracts, owned real estate, real and personal property leaseholds, property, plants, fixtures and machinery and equipment, vehicles, vessels, deposit accounts, cash and any investment thereof, letter of credit rights, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property and stock of subsidiaries of the Debtors,  claims, causes of action, Avoidance Actions and commercial tort claims and the proceeds and products of the foregoing (collectively, together with the Prepetition Collateral and any Cash Collateral, the "***Collateral***"); *provided, however,* that notwithstanding anything to the

---

[6] "***Avoidance Actions***" means any and all claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or applicable state or federal law.

contrary in this Final Order or the DIP Loan Documents, (i) the Lenders shall share with the Debtors' estates 50% of the net proceeds recovered from the Avoidance Actions and commercial tort claims (collectively, the "***Shared DIP Collateral***") until the DIP Obligations have been paid in full, (ii) the Lenders shall not seek to realize upon the Shared DIP Collateral earlier than September 30, 2025, with the Lenders utilizing and applying other available sources of recovery in the interim pursuant to paragraph 24 of this Final Order, and (iii) to the extent that any of the Debtors' estates holds any Avoidance Actions against the Prepetition Lender, such Avoidance Actions against the Prepetition Lender and any proceeds or property recovered therefrom shall not be part of the DIP Collateral or subject to any of the DIP Liens, DIP Superpriority Claims, Adequate Protection Superpriority Claims and Adequate Protection Liens (other than any rights of setoff and recoupment as set forth in subpart (y) immediately below).  Nothing contained in this Final Order shall be deemed an admission or acknowledgement that the Prepetition Lender has any Avoidance Action liability, and the Prepetition Lender and DIP Lender reserve all rights, remedies, claims, defenses and positions in connection with any such Avoidance Action that may be commenced against the Prepetition Lender, including but not limited to (x) the right of the DIP Lender to immediately discontinue further loans under the DIP Credit Facility should a Challenge or Avoidance Action be commenced against the Prepetition Lender, and (y) any and all rights of setoff and recoupment available to the Prepetition Lender, whether with respect to the Adequate Protection Superpriority Claim or otherwise.  The Adequate Protection Liens shall be enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any Trustee or other estate representative appointed in these Chapter 11 Cases, or any proceedings under other Chapters of the Bankruptcy Code to which these Chapter 11 Cases may be converted.  Except as expressly provided herein, the Adequate Protection Liens shall not be

-34-

made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases, and the Adequate Protection Liens shall be valid and enforceable against any Trustee or other estate representative appointed in any of these Chapter 11 Cases or any Successor Cases, or upon the dismissal of any of these Chapter 11 Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to section 510, 549, or 550 of the Bankruptcy Code and ~~subject to entry of the Final Order,~~ the Adequate Protection Liens and the Collateral shall not be subject to surcharge under section 506(c) of the Bankruptcy Code. The Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment, or avoidance, for all purposes in these Chapter 11 Cases and any Successor Cases.  For the avoidance of doubt, the Adequate Protection Liens shall be deemed to be effective and perfected automatically as of the Petition Date and without the necessity of the execution by the Debtors, or the filing of, as applicable, mortgages, security agreements, pledge agreements, financing statements, state or federal notices, recordings (including, without limitation, any recordings with the United States Patent and Trademark or Copyright Office), or other agreements, and without the necessity of taking possession or control of any Collateral.  Except as otherwise expressly provided herein, under no circumstances shall the Adequate Protection Liens be made subordinate to the lien of any other party, no matter when arising. The Adequate Protection Liens granted to the Prepetition Lender hereunder shall be subject only to (i) the ~~Carve-Out~~ sharing mechanism with respect to the Shared DIP Collateral set forth herein, (ii) Carve-Out, (iii) the DIP Liens, and (~~iii~~iv) any existing liens in favor of third parties upon the Prepetition Collateral (including, without limitation, any purchase money security interests), which third-party liens, as of the Petition Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not

subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Petition Date, the "***Permitted Priority Liens***"), and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.  The Adequate Protection Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this ~~Interim~~Final Order, without the necessity of execution by the Debtors of mortgages, control agreements, security agreements, pledge agreements, financing agreements, financing statements or any other agreements or instruments, such that no additional actions need be taken by the Prepetition Lender to perfect such interests. Nothing herein shall preclude the Debtors' estates from commencing and prosecuting an Avoidance Action at any time; *provided*, *however*, that any judgments, collections, settlements or other recoveries made on account of Avoidance Actions (other than any Avoidance Actions against the Prepetition Lender) shall be deposited in a segregated deposit account established and held by the DIP Lender, with such deposit account and the amounts deposited therein to be expressly subject to the Adequate Protection Lien (the "***Avoidance Action Deposit Account***").  The Debtor shall execute and deliver to the DIP Lender—for the benefit of both the DIP Lender and the Prepetition Lender, a Deposit and Control Agreement with respect to such Avoidance Action Deposit Account.

(b)    Adequate Protection Superpriority ~~Claims~~Claim. As additional adequate protection, the Prepetition Lender shall be granted an allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "***Adequate Protection Superpriority Claim***") to the extent of any Diminution in Value.  The Adequate Protection Superpriority Claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors and the proceeds thereof, ~~but~~ subject to (i)

55117086.8

the terms, conditions and requirements set forth in paragraphs 11(a) and 24 of this Final Order and (ii) the Carve-Out.  Subject only to the sharing mechanism set forth in paragraph 11(a) hereof, the Carve-Out, and the DIP Debt, the Adequate Protection Superpriority Claim granted to the Prepetition Lender hereunder shall not be junior to any administrative expense claims and shall have priority over all administrative expense claims against each of the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 726, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment.

> (c)    Adequate Protection Payments.  Current cash payments payable under the Prepetition Credit Agreement shall be made to the Prepetition Lender of all interest then due and owing under the applicable contract rate (or, to the extent applicable and at the option of the Prepetition Lender, the default rate under the Prepetition Credit Agreement), as well as all undisputed reasonable professional fees and expenses incurred by the Prepetition Lender in connection with the Chapter 11 Cases and in its administration of the Prepetition Loan Documents, in each case subject to the procedures set forth in Paragraph 7 of this InterimFinal Order (such payments, collectively, the "**Adequate Protection Payments**").  Notwithstanding anything to the contrary contained herein, any Adequate Protection Payments shall be without prejudice, and with a full reservation of rights, for any party to seek that such payments should be recharacterized pursuant to section 506(b) of the Bankruptcy Code as payments of principal or such other remedy as may be determined by the Court following a successful Challenge.

55117086.8

(d)    Budget and Variance Reporting. The Borrower and the Debtor Entity Guarantors shall provide the Prepetition Lender, the Committee, and ~~its~~their advisors with (i) monthly financial reports within thirty (30) days after the end of each calendar month consistent with Section (B)(ii) of the Reporting Schedule attached to the Prepetition Credit Agreement, (ii) weekly Borrowing Base Certificates and related collateral reports consistent with Section (C) of the Reporting Schedule attached to the Prepetition Credit Agreement, (iii) such other information as may from time to time be requested by the DIP Lender consistent with Section (D) of the Reporting Schedule attached to the Prepetition Credit Agreement, and (iv) as well as the Budget and variance reporting described in Paragraph 3 hereof.

(e)    Right to Seek Additional Adequate Protection. This ~~Interim~~Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Lender to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request, *provided, that* such further or alternative forms of adequate protection shall be subject to Court approval.

12.    Prepayments. The DIP Facility may be prepaid in whole or in part without premium or penalty at any time. The Debtors shall make the following mandatory prepayments in an amount not to exceed the outstanding Aggregate Credit Obligations:

(1)    Asset Sales: Prepayments in the amount of all cash proceeds of the sale or other disposition of any property or assets of the Borrower or the DIP Entity Guarantors (pursuant to Bankruptcy Code section 363 or otherwise), net of payments of or reservations for required tax payments, the amount secured by valid and perfected liens, if any, that are senior to the liens on such assets held by the Lenders, customary closing costs, and to the extent the Bankruptcy Court enters an Order authorizing the retention of Raymond James as

-38-

investment banker for the Debtors, payment of the following fees and reimbursement of the following expenses of Raymond James: (i) the Business Combination Transaction Fee described in Section 2(c)(i) of that certain Engagement Letter dated September 30, 2024, between Raymond James and the Borrower (as amended, the "***RJ Engagement Letter***"), and (ii) reimbursement of Expenses as provided for in Section 3 of the RJ Engagement Letter; provided, however, that no other amounts shall be permitted to be paid by the Borrower or the DIP Entity Guarantors to Raymond James without the prior written approval of the Lenders. For the avoidance of doubt, the authority to make prepayments pursuant to this paragraph shall be subject in all respects to the closing of the relevant transaction or transactions in accordance with any order approving the applicable sale or other disposition of property or assets.

(2)    <u>Insurance Proceeds</u>:  Prepayments in the amount of all cash proceeds of insurance on account of any loss of any property or assets of the DIP Loan Parties net of payments of or reservations for required tax payments and the amount secured by valid and perfected liens, if any, that are senior to the liens on such property or assets held by the Lenders.

(3)    <u>DIP Debt in Excess of Availability</u>:  Prepayments to the extent that the DIP Debt outstanding at any time exceeds the lesser of (i) ~~either (A) under the Interim Facility, the maximum amount that shall not result in an increase in the outstanding principal amount of the Aggregate Credit Obligations from the Petition Date through the entry of the Final Order in excess of $5,500,000, or (B) from and after the entry of the Final Order,~~ the Maximum DIP Facility Amount, and (ii) the Borrowing Base.

(4)    All such prepayments shall be applied without penalty or premium, first, to outstanding Prepetition Debt, and second, to outstanding DIP Debt.

**DIP LIENS AND DIP SUPERPRIORITY CLAIMS**

13.    DIP Liens.

(a)    To secure the DIP Debt, the DIP Lender is hereby granted (i) pursuant to section 364(c)(2), a fully-perfected, priming, first priority senior secured lien on the DIP Collateral~~,~~ (as defined below), subject only to any Permitted Priority Liens and the Carve-Out, and (ii) pursuant to section 364(d)(1), a fully-perfected, priming, first priority senior secured lien on the DIP Collateral (as defined below), which lien shall have priority over all other liens, including, for the avoidance of doubt, the Prepetition Liens and the Adequate Protection Liens and shall be junior only to any Permitted Priority Liens (the liens described in (i) and (ii) hereof, collectively, the "***DIP Liens***").

(b)    The DIP Liens shall attach to all of the property, assets or interests in property or assets of the Debtors, and all "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtors, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, including, without limitation, all the Debtors' now owned or hereafter acquired right, title, and interest in and to: (i) all of the property, assets or interests in property or assets of the Debtors and all "property of the estate"~~(other than Excluded Assets (as defined in the DIP Credit Agreement)),~~ expressly including without limitation all of the Prepetition Collateral~~, and subject to entry of the Final Order, any and all claims and causes of action under sections 502(d), 544, 545, 547, 548, 550, and 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "*Avoidance Actions*") and, to the extent any property, assets or interests of any Debtor is excluded from the DIP Collateral, the proceeds of such property, assets or interests~~ and all of the Debtors' other Avoidance Actions, commercial tort claims, other estate causes of action and

other Collateral specified in the DIP Credit Agreement; (ii) the proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any money or other tangible or intangible property resulting from the sale, exchange, collection or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof; and (iii) all other property and assets including, without limitation, cash collateral and all cash and non-cash proceeds, rents, products, substitutions, accessions, offspring and profits of any of the collateral described above (collectively with (i)-(iv), the "***DIP Collateral***", and, together with the Prepetition Collateral, the "***Aggregate Collateral***"); subject only to (1) the Permitted Priority Liens, and (2) prior payment of the Carve-Out.  Notwithstanding the foregoing or anything to the contrary in this Final Order or the DIP Loan Documents, (i) the Lenders shall share with the Debtors' estates 50% of the net proceeds recovered from the Shared DIP Collateral until the DIP Obligations have been paid in full, (ii) the Lenders shall not seek to realize upon the Shared DIP Collateral earlier than September 30, 2025, with the Lenders utilizing and applying other available sources of recovery in the interim pursuant to paragraph 24 of this Final Order, and (iii) to the extent that the estate holds any Avoidance Actions against the Prepetition Lender, such Avoidance Actions and any proceeds or property recovered therefrom shall not be part of the DIP Collateral or subject to any of the DIP Liens, DIP Superpriority Claims, Adequate Protection Superpriority Claims and Adequate Protection Liens (other than any rights of setoff and recoupment as set forth in subpart (y) immediately below).  Nothing contained in this Final Order shall be deemed an admission or acknowledgement that the Prepetition Lender has any Avoidance Action Liability, and the Prepetition Lender and DIP Lender reserve all rights, remedies, claims, defenses and positions in connection with any such Avoidance Action that may be commenced against the Prepetition

-41-

Lender, including but not limited to (x) the right of the DIP Lender to immediately discontinue further loans under the DIP Credit Facility should a Challenge or Avoidance Action be commenced against the Prepetition Lender and (y) any and all rights of setoff and recoupment available to the Prepetition Lender and DIP Lender, whether with respect to the Adequate Protection Superpriority Claim, the DIP Superpriority Claim or otherwise.

(c)     The DIP Liens shall be effective immediately upon the entry of this ~~Interim~~Final Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364 of the Bankruptcy Code or otherwise, other than (i) the Permitted Priority Liens as provided herein, and (ii) prior payment of the Carve-Out.

(d)     The DIP Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this ~~Interim~~Final Order, without the necessity of execution by any Debtor of mortgages, control agreements, security agreements, pledge agreements, financing agreements, financing statements or any other agreements or instruments, such that no additional actions need be taken by the DIP Lender to perfect such interests.

14.     <u>DIP Lender's Superpriority Claim.</u> The DIP Lender is hereby granted, on a final basis, an allowed superpriority administrative expense claim (the "***DIP Superpriority Claim***") pursuant to section 364(c)(1) of the Bankruptcy Code in the Debtors' Chapter 11 Cases and in ~~or~~ any proceedings under other Chapters of the Bankruptcy Code to which these Chapter 11 Cases may be converted (the "***Successor Case***") for all DIP Debt, having priority over any and all other administrative expenses of and unsecured claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b),

506(c)(upon entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claim shall be payable from and have recourse to all pre- and postpetition property of the Debtors, including all cash and cash equivalents, and all proceeds thereof including, without limitation, any Avoidance Actions Proceeds(other than from the Shared DIP Collateral and subject to the terms, conditions and requirements set forth in paragraphs 11(a), 13(b), and 24 hereof). The DIP Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to prior payment of the Carve-Out and the sharing mechanism set forth in paragraphs 11(a) and 13(b) of this Final Order. Except as referenced in this InterimFinal Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases or in any Successor Case. Other than the Adequate Protection Superpriority Claim, theThe DIP Superpriority Claim shall be senior in all respects to any superpriority claims granted in thisthese Chapter 11 CaseCases.

15. **Survival of DIP Liens and DIP Superpriority Claim.** The DIP Liens, DIP Superpriority Claim and other rights and remedies granted under this InterimFinal Order to the DIP Lender, shall continue in these cases and any Successor Cases and shall be valid and enforceable against any Trustee appointed in any Debtor's Chapter 11 Case and/or upon the dismissal of any Debtor's Chapter 11 Case or any Successor Case and such liens and security interests shall maintain their priority as provided in this InterimFinal Order until all the DIP Debt has been indefeasibly paid in full in cash and the DIP Lender's commitments have been terminated in accordance with the DIP Loan Documents.

-43-

55117086.8

**CARVE-OUT; RESTRICTIONS ON USE OF FUNDS**

16.      Carve-Out.

(a)      The Prepetition Liens, the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens and the Adequate Protection Superpriority Claim shall be subject and subordinate only to prior payment of: (i) fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Court as and when they are due without reference to the Budget (the "*Case Administration Fees*"); (ii) the allowed fees and costs of the Debtors' claims and noticing agent, (iii) unpaid professional fees and expenses payable to any the Carveout Professionals[67] (collectively, the "*Professional Fees*") that are incurred or accrued prior to the date on which the DIP Lender provides written notice to the Debtors, Debtors' counsel, the U.S. Trustee and counsel to the Committee ~~(if any)~~ of the occurrence of either an Event of Default or the Termination Date (such notice, the "*Carve-Out Notice*", and the date of a delivery of such notice, the "*Carve-Out Effective Date*"), but solely if, as and to the extent such Professional Fees (whenever incurred prior to the Carve-Out Effective Date)~~,~~ are allowed at any time whether by interim order or procedural order~~,~~ and, unless and until the DIP Debt has been fully and indefeasibly paid and satisfied, have been provided for in, and are consistent with, the Budget (subject to the Permitted Variances), and (iv) unpaid Professional Fees of the Debtors

---

[6] [7] "*Carveout Professionals*" means Professionals retained by the Debtors, including Saul Ewing LLP, as counsel for the ~~Debtor~~Debtors ("*Saul Ewing*"), Getzler Henrich & Associates, LLC, as financial advisor to the Debtors ("*Getzler Henrich*"), Stephenson Harwood, LLP, as U.K. counsel to the Debtors ("*Stephenson Harwood*"), Raymond James, as investment banker to the Debtors, any counsel and financial advisor that may be authorized by the Court to be retained by a Committee, and the U.S. Trustee (solely to the extent of fees required pursuant to 28 U.S.C. § 1930(a)). For the avoidance of doubt, no other investment bank or financial advisor of the Debtors other than Getzler Henrich and Raymond James shall be deemed a Carveout Professional or otherwise eligible to share in the Carveout.

-44-

and the Committee (if any), in each case incurred or accrued on or after the Carve-Out Effective Date in an aggregate amount not to exceed $150,000225,000 to the extent allowed at any time, whether by interim order or procedural order (clauses (i)—(iii), collectively, the "***Carve-Out***", and clause (iv) alone, the "***Capped Carve-Out***"). Subject to the immediately preceding sentence, so long as the Carve-Out Effective Date has not occurred, the Debtors shall be permitted to pay Case Administration Fees and Professional Fees allowed and payable under the Bankruptcy Code as provided in the DIP Loan Documents and the Budget (subject to the Permitted Variances).[8] Any payment of Carve-Out expenses incurred after the occurrence of the Carve-Out Effective Date, including any payment of Professional Fees, shall permanently reduce the Capped Carve-Out on a dollar-for-dollar basis. Without limiting the generality of the foregoing, the Carve-Out shall not include, apply to or be available for any success fee or similar payment to any professionals or other persons, including, without limitation, any such fee payable in connection with a restructuring or asset disposition with respect to the Debtors unless agreed to in writing by the DIP Lender.

(b)    The Debtors shall maintain a segregated account (the "***Carve-Out Reserve Account***") with Saul Ewing for the payment of Professional Fees for Saul Ewing, Getzler Henrich, Stephenson Harwood, and any counsel and financial advisor that may be authorized by the Court to be retained by the Committee (the "***Carve-Out Reserve Professionals***"), which account shall be funded by the Debtors in accordance with the Budgets on a weekly basis, until the occurrence of the Carve-Out Effective Date. No funding shall be provided over and above

---

[8] Notwithstanding anything to the contrary in this Final Order or the DIP Loan Documents, the Permitted Variances for Professional Fees incurred through June 30, 2025 shall be determined on a cumulative basis from the Petition Date through June 30, 2025. Any amounts that are overbudget during a particular period shall otherwise be payable if the applicable Carveout Professional is within budget on a cumulative and aggregate basis through June 30, 2025, to the extent that funds have been reserved for such Carveout Professional in accordance with the Budget.

55117086.8

the amounts set forth in the Budgets proposed by the Debtors and approved by the DIP Lender. After the Carve-Out Effective Date, the Capped Carve-Out and all fees reflected in the Budget for the Carve-Out Reserve Professionals prior to the Carve-Out Effective Date, but not paid or funded by the Debtors as of that date, will be funded to the Carve-Out Reserve Account, but no further amounts shall be funded to this account.  From funds in the Carve-Out Reserve Account, Saul Ewing shall pay the Carve-Out Reserve Professionals in compliance with an interim compensation procedures order and in the manner set forth in this ~~Interim~~Final Order; *provided, however,* prior to payment in full of the Prepetition Debt and termination of the Carve-Out, to the extent that Professional Fees for the Carve-Out Reserve Professionals that have accrued from the Petition Date through and including the Carve-Out Effective Date are less than the amounts funded into the Carve-Out Reserve Account, or to the extent that any portion of these Professional Fees are ultimately disallowed by the Bankruptcy Court by Final Order, then Saul Ewing shall immediately refund these excess monies to the DIP Lender.  For the avoidance of doubt, (i) in making payments from the Carve-Out Reserve Account, Saul Ewing shall be entitled to conclusively rely upon written certifications of each Professional as to the amount due and owing to such Professional from the Carve-Out Reserve Account and in accordance with the Budget and shall have no liability to any party based upon its commercially reasonable reliance on such certifications; and (ii) in no circumstances shall Saul Ewing be obligated to pay any Professional other than from funds held in the Carve-Out Reserve Account.

(c)     Carveout Usage. No portion of the Carveout and no DIP Debt or Aggregate Collateral may be used to pay any fees or expenses incurred by any entity, including the Debtors, ~~any~~the Committee or the Carveout Professionals, in connection with claims or causes of action adverse to Lenders' interests in the Aggregate Collateral, including (i) preventing,

hindering or delaying Lenders' enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred; (ii) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral outside the ordinary course of business without Lenders' consent; or (iii) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Aggregate Credit Obligations or any mortgages, liens or security interests with respect thereto or any other rights or interests of Lenders, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Lenders; *provided, however*, that the foregoing shall not apply to costs and expenses, in an amount not to exceed $100,000, incurred by ~~any~~the Committee's professionals in connection with the investigation of a potential Challenge in accordance with ~~Paragraph~~paragraph 21 of this ~~Interim~~Final Order; provided, further, however, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation, preparation and entry of this ~~Interim Order, the~~ Final Order or any amendment hereto consented to by DIP Lender.

(d)    Carveout Procedure. The Debtors shall periodically, upon the request of the DIP Lender, provide to the DIP Lender a written report (the "***Carveout Report***"), in which the Debtors disclose their then-current, documented estimate of (i) the aggregate amount of unpaid professional fees, costs and expenses accrued or incurred by the Carveout Professionals, through the date of the Carveout Report and (ii) projected fees, costs and expenses of the Carveout Professionals for the two-week period following the date of such Carveout Report. Nothing herein shall be construed as consent by the DIP Lender or the Prepetition Lender to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of the

-47-

DIP Lender or the Prepetition Lender to object to the allowance and payment of such fees, costs or expenses, or the right of the DIP Lender or the Prepetition Lender to the return of any portion of the Carve-Out that is funded with respect to fees and expenses for a Carveout Professional that are approved on an interim basis that are later denied on a final basis. ~~For the avoidance of doubt, no Carveout Professional shall be entitled to any portion of the Carve-Out allocated for any other Carveout Professional in the Budget.~~

(e)    The DIP Lender shall not be responsible for the payment or reimbursement of any fees or disbursements of any professionals incurred in connection with ~~the~~these Chapter 11 ~~Case~~Cases or any Successor Case under any chapter of the Bankruptcy Code. Nothing in this ~~Interim~~Final Order or otherwise shall be construed to obligate the DIP Lender in any way, to pay compensation to, or to reimburse expenses of, professionals retained by the Debtors or, if applicable, the Committee, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

17.    <u>Restrictions on Use of Funds.</u>

(a)    The Debtors are authorized to use the DIP Debt solely: (i) in accordance with the terms of this ~~Interim Order,~~ Final Order ~~(upon entry)~~ and the DIP Loan Documents; (ii) to fund the LC and Commercial Card Collateral Account; (iii) to pay those expenses in the amounts set forth in the Budget (including any Permitted Variance therefrom, solely as allowed under the DIP Credit Agreement), including funding of the Carve-Out, as and when such expenses become due and payable in accordance with the Budget; (iv) to pay Allowable 506(b) Amounts and the DIP Charges; and (v) ~~upon entry of the Final Order,~~ to repay the remaining outstanding amount of the Prepetition Debt.

-48-

(b)    Notwithstanding anything in this ~~Interim~~Final Order or the DIP Loan Documents to the contrary, no portion of the DIP Facility~~, DIP Collateral, the Cash Collateral or any portion of the~~ or Carve-Out may be used in any manner to, and it shall constitute an Event of Default under the DIP Loan Documents if any DIP Proceeds are used to: (i) request authorization to obtain DIP Loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code or otherwise that are senior to or *pari passu* with the DIP Debt, the DIP Liens or the DIP Superpriority Claim, other than from the DIP Lender, unless the proceeds of such loans or accommodations are or will be sufficient, and will be used, to indefeasibly pay in full in cash all DIP Debt; (ii) pay any amount for any use not provided for in this ~~Interim Order and/or the~~ Final Order, as applicable, the DIP Credit Agreement and as set forth in the Budget (subject to the Permitted Variances) or otherwise approved by the DIP Lender; (iii) without the prior written consent of the DIP Lender, to make any payment or distribution to or for the benefit of any non-Debtor affiliate or insider of the Debtors (other than ordinary course wages, payments made pursuant to employment agreements, or payments made in accordance with the Budget); (iv) make any payment, advance, intercompany advance or transfer, or any other remittance or transfer whatsoever that is not in accordance with the DIP Credit Agreement and Budget; (v) to finance in any way: (1) any adversary action, contested matter, suit, arbitration, proceeding, application, motion, objection or other litigation of any type adverse to the interests of any or all of the DIP Lender or the Prepetition Lender or their respective rights and remedies under DIP Loan Documents, the ~~Interim Order, the Final Order~~DIP Orders or the Prepetition Loan Documents, or (2) any other action which with the giving of notice or passing of time would result in an Event of Default as defined under the DIP Loan Documents or the Prepetition Loan Documents; (vi) to make a distribution (other than payments to creditors specifically authorized

-49-

by Order of the Court) to creditors in the Chapter 11 Cases without the prior written consent of the DIP Lender; (vii) pay any prepetition Claim of a Creditor (as such terms are defined in the Bankruptcy Code) without the prior written consent of the DIP Lender or order of the Court; (viii) for any purpose that is prohibited under the Bankruptcy Code or this ~~Interim~~Final Order; and/or (ix) to make any payment in excess of $50,000 in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the DIP Lender. Notwithstanding the foregoing, nothing in this paragraph shall be construed as precluding or otherwise limiting the Debtors' or Committee's right to use DIP Facility proceeds to contest whether an Event of Default has occurred.

18. <u>Prohibition on Granting of Additional Liens and Interests.</u> No liens, claims, interests or priority status, other than the Carve-Out or Permitted Priority Liens, having a lien or administrative priority superior to, *pari passu* with, or junior to that of the DIP Liens or the DIP Superpriority Claim granted by this ~~Interim~~Final Order, shall be granted while any portion of the DIP Debt remains outstanding, or any commitment under the DIP Loan Documents remains in effect, without the prior written consent of the DIP Lender.

19. <u>Release.</u> ~~The~~Subject to the rights, obligations and limitations governing parties in interest set forth in paragraph 21 herein, the release, discharge, waivers, settlements, compromises, and agreements set forth in this paragraph shall be deemed effective upon entry of ~~the~~this Final Order. The Debtors and the DIP Entity Guarantors, by their execution of the DIP Credit Agreement, on behalf of themselves and on behalf of their successors and assigns (collectively, "**Releasors**" and, individually, a "**Releasor**"), each hereby (a) releases, acquits, and forever discharges the DIP Lender, and any of its officers, directors, employees, agents, attorneys, representatives, subsidiaries, affiliates or shareholders (the "**Releasees**") from any and

55117086.8

all liabilities, claims, demands, actions or causes of action of every kind or nature (if any there be), whether absolute or contingent, due or to become due, disputed or undisputed, liquidated or unliquidated, at law or in equity, or known or unknown, that any Releasor now has, ever had or hereafter may have against the Releasees based on acts, transactions or circumstances that have occurred or been consummated on or before the closing of the DIP Credit Agreement and that arise out of or relate to (i) the DIP Facility or any other extension of credit by the DIP Lender to any Debtor including any equitable subordination or recharacterization claims or defenses; (ii) any of the DIP Loan Documents or DIP Collateral; (iii) any transaction, act or omission contemplated by or described in or concluded under any of the DIP Loan Documents; or (iv) any aspect of the dealings or relationships between or among the Releasors, on the one hand, and the Releasees on the other hand, under or in connection with any of the DIP Loan Documents or any transaction, act or omission contemplated by or described in or concluded under any of the DIP Loan Documents (collectively, the "*Claims*"); and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the DIP Debt and the DIP Liens. The provisions of this paragraph shall survive the termination of the DIP Facility and any other DIP Loan Documents and payment in full of any Obligations thereunder. Each of the Debtors and the DIP Entity Guarantors, by their execution of the DIP Credit Agreement, on behalf of themselves and on behalf of their successors, assigns and other legal representatives, hereby unconditionally and irrevocably agrees that such Releasor shall not sue any Releasee on the basis of any Claim released, remised and discharged pursuant to the foregoing provisions of this paragraph, and if any Releasor violates the foregoing covenant, such Releasor, for itself and its successors and assigns, agrees to pay, in addition to such other damages as any Releasee may sustain as a result

of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.  For the avoidance of doubt, nothing contained in this ~~Interim~~Final Order shall be construed to release, discharge or acquit the DIP Lender from any of their Obligations hereunder or under the DIP Loan Documents.

**REMEDIES; MODIFICATION OF AUTOMATIC STAY**

20.    <u>Remedies and Stay Modification.</u>

(a)    The occurrence of any of the following events, unless waived by the DIP Lender in writing and in accordance with the terms of the DIP Loan Documents, shall constitute an event of default (an "***Event of Default***") of this ~~Interim~~Final Order: (i) the failure of any Debtor to perform, in any respect, any of the material terms, provisions, covenants, or obligations under this ~~Interim~~Final Order, or (ii) the occurrence of an "Event of Default" under the DIP Credit Agreement.

(b)    The automatic stay provisions of section 362 of the Bankruptcy Code are, to the extent applicable, vacated and modified without further application or motion to, or order from, the Court, to the extent necessary so as to permit the following, and neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable), whether or not an Event of Default under the DIP Loan Documents or a default by any Debtor of any of its obligations under this ~~Interim~~Final Order has occurred, including without limitation: (i) to require all cash, checks or other collections or proceeds from DIP Collateral received by the Debtors to be deposited in accordance with the requirements of the DIP Loan Documents, and to apply any amounts so deposited and other amounts paid to or received by the DIP Lender under

-52-

the DIP Loan Documents in accordance with any requirements of the DIP Loan Documents; (ii) the right to file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral; (iii) the right to charge and collect any interest, fees, costs and other expenses accruing at any time under the DIP Loan Documents as provided therein; (iv) the right to give the Debtors any notice provided for in any of the DIP Loan Documents or this ~~Interim~~Final Order; and (v) the right to declare (1) the termination, reduction or restriction of any further commitment under the DIP Loan Documents to the extent any such commitment remains unfunded; (2) all DIP Debt to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are hereby expressly waived by the Debtors; and/or (3) the termination of the DIP Loan Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Liens on the DIP Collateral or the Obligations of the Debtors; *provided* that with respect to the enforcement of the DIP Liens on the DIP Collateral or the exercise of any other rights or remedies with respect to the DIP Collateral (including rights to set-off or to apply any amounts in any bank accounts that are a part of the DIP Collateral), the DIP Lender shall file a written notice with the Court, which notice can be the same as the Carve-Out Notice (the "***Default Notice***") setting forth the Event ~~of Default~~(s) of Default and, if a Default Notice is filed, shall serve such Default Notice upon the Debtors, their counsel, counsel to the ~~Creditors'~~ Committee ~~(if any)~~, counsel to the Prepetition Lender, and the U.S. Trustee.  Effective after the later of (i) five (5) Business Days after the Default Notice is filed and (ii) where the Debtors or the Committee have, within three (3) Business Days after the Default Notice has been filed, requested that the Court conduct a Notice Enforcement Hearing, the date on which the Court conducts such hearing (the "***Enforcement  Notice Period***") ~~is filed~~ (and during which time the DIP Lender shall permit the

55117086.8

Debtors to cure such Event of Default ~~and use cash collateral~~ in accordance with the Budget)(to the extent the default is so curable), the DIP Lender shall be deemed to have received complete relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code and shall be authorized, without further notice to the Debtors or any other interested party, to enforce the DIP Liens on the DIP Collateral or exercise any other rights or remedies with respect to the DIP Collateral (including rights to set-off or to apply any amounts in any bank accounts that are a part of the DIP Collateral).

(c)     During the Enforcement Notice Period, (i) the Debtors shall be prohibited from requesting any further draws under the DIP Facility and (ii) the only basis on which the Debtors and the Committee shall be entitled to seek an emergency hearing within the Enforcement Notice Period with the Court shall be to contest whether an Event of Default has occurred and/or is continuing or seek any other relief from the Court (a "*Notice Enforcement Hearing*"). The Enforcement Notice Period shall run concurrently with any notice period provided for under the DIP Loan Documents.

(d)     The automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Committee ~~(if any)~~, any other party in interest and/or the U.S. Trustee have not obtained an order from this Court to the contrary prior to the expiration of the Enforcement Notice Period.

(e)     If the DIP Lender is entitled, and has elected in accordance with the provisions hereof, to enforce the DIP Liens or exercise any other default-related remedies following expiration of the Enforcement Notice Period, the Debtors shall cooperate with the DIP Lender in connection with such enforcement by, among other things, (i) providing at all reasonable times

access to the Debtors' premises to representatives or agents of the DIP Lender (including any collateral liquidator or consultant), (ii) providing the DIP Lender and its representatives or agents, at all reasonable times access to the Debtors' non-privileged books and records and any information or documents requested by the DIP Lender or its representatives, (iii) performing all other Obligations set forth in the DIP Loan Documents, and (iv) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the DIP Lender's enforcement of rights.

(f)     Upon the occurrence of the ~~Termination~~Maturity Date, the DIP Lender shall have no further obligation to provide financing under the DIP Loan Documents; provided that the DIP Debt shall remain subject to the Carve-Out.

(g)     Unless extended by the Court upon written agreement of the DIP Lender, upon the Termination Date and without further notice or order of Court: (i) the Debtors' authorization to use Cash Collateral and incur DIP Debt hereunder will automatically terminate and (ii) at DIP Lender's election: (~~1~~i) the DIP Debt shall immediately be due and payable and (~~2~~iii) DIP Lender shall be entitled to setoff any cash in DIP Lender or Prepetition Lender's possession or control and apply such cash to the Aggregate Credit Obligations.

**BAR OF CHALLENGES AND CLAIMS**

21.     Reservation of Certain Committee and Third-Party Rights and Bar of Challenges and Claims. The stipulations, releases, and admissions contained in this ~~Interim~~Final Order, including, without limitation, the Debtors' Stipulations, shall be binding upon the Debtors in all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below). The stipulations, releases, and admissions contained in this ~~Interim~~Final Order, including, without limitation, the ~~Debtors'~~ Stipulations,

55117086.8

shall be binding upon all other parties-in-interest, including, without limitation, any Trustee appointed or elected for ~~a~~any Debtor or ~~any~~the Committee ~~(if appointed)~~, unless and to the extent that (a) ~~a~~the Committee ~~(if any)~~, a Trustee appointed prior to the Challenge Period Termination Date (as defined below), or any other party in interest (other than any Debtor), after obtaining requisite standing, has duly filed an adversary proceeding challenging in whole or part any such stipulations, releases and admissions, including the ~~Debtors'~~ Stipulations, or has otherwise asserted an Estate Claim (each, a "***Challenge***") by no later than (i) in the case of any party other than the Committee, the earlier of (1) the date upon which a Sale Transaction is closed~~;~~ and (2) seventy-five (75) days following the date of entry of ~~this~~the Interim Order ~~for any party in interest other than a Committee; and (3) sixty (60) days following the date of appointment of a Committee, and (ii)~~; (ii) in the case of the Committee, April 10, 2025; or (iii) in either case, any such later date agreed to in writing by the Debtors and the Prepetition Lender or such later date as may be ordered by the Court for cause upon a motion filed and served within the applicable period, subject to Prepetition Lender's standing objection to any extension of this deadline and right to be heard on same (the time period established by the later of the foregoing clauses, the "***Challenge Period***" and the date of expiration of each Challenge Period being a "***Challenge Period Termination Date***"), and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such Challenge in any such duly filed adversary proceeding. Notwithstanding the foregoing, if a Trustee is appointed or elected prior to the Challenge Period Termination Date, such Trustee shall have until the longer of (i) thirty (30) days after such appointment or election, and (ii) the remaining time under the Challenge Period to commence a Challenge. Further, notwithstanding anything to the contrary in this Final Order, the filing of a motion seeking standing to file a

Challenge (a "***Standing Motion***") before the expiration of the Challenge Period, which attaches a proposed Challenge, shall extend the Challenge Period and Challenge Period Termination Date solely with respect to the party (or parties) that filed the Standing Motion(s) until three (3) business days after the Court approves the Standing Motion or such other time period ordered by the Court in approving the Standing Motion.  Nothing contained in this Final Order shall be deemed to confer standing upon the Committee to bring a Challenge.  For the avoidance of doubt, the filing of a Challenge shall constitute an Event of Default under the DIP Credit Agreement, and shall entitle the DIP Lender to the full range of rights and remedies available following an Event of Default, including but not limited to the right to immediately discontinue making further DIP Loans or advances under the DIP Credit Agreement.

22.    Upon the expiration of the Challenge Period Termination Date without the filing of a Challenge (or if any such Challenge is filed and overruled, or if a Standing Motion is resolved adversely to the Committee or other Party asserting standing to bring a Challenge):  (a) any and all such Challenges shall be deemed to be forever waived, released, and barred; (b) the Prepetition Debt shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Debtors' Chapter 11 Cases and any Successor Cases; (c) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected first priority liens in the Prepetition Collateral, not subject to recharacterization, subordination, or avoidance; (d) all of the Debtors' stipulations and admissions contained in this InterimFinal Order, including, without limitation, the Debtors' Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition Debt and Prepetition Liens shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy

-57-

estates, and all creditors, interest holders, and other parties-in-interest in these Chapter 11 Cases and any Successor Cases; and (e) all Estate Claims shall be waived.  If any such adversary proceeding is timely filed, the stipulations and admissions contained in this ~~Interim~~Final Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive on the Debtors' estates, successors, any Committee and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such adversary proceeding prior to the Challenge Period Termination Date.  Nothing in this ~~Interim~~Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee appointed in these Chapter 11 Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges, and an order of the Court conferring such standing on ~~a~~the Committee ~~(if appointed)~~ or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by the Committee ~~(if appointed)~~ or such other party-in-interest.

## **MISCELLANEOUS**

23.    <u>Limitation on Section 506(c) Claims.</u> ~~Subject to, and only upon, entry of the Final Order, no~~No costs or expenses of administration which have been or may be incurred in ~~this~~these Chapter 11 ~~Case~~Cases or any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against, the Lenders or any of their respective claims, the Carve-Out or the DIP Collateral or the Prepetition Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Lenders. No action, inaction, or acquiescence by the Lenders shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the ~~Lenders~~DIP

Lender or the Prepetition Lender, as applicable, any of their respective claims, the Carve-Out, the DIP Collateral or the Prepetition Collateral.

24.    No Marshaling. ~~Subject to, and only upon, entry of the Final Order, the~~The Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral. Without limiting the generality of the immediately preceding sentence, no party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral after an Event of Default under the DIP Loan Documents or termination or breach under the DIP Loan Documents, or of the Prepetition Collateral after an Event of Default under the Prepetition Loan Documents or termination or breach under the Prepetition Loan Documents~~.~~, other than the terms, conditions and restrictions governing the realization upon the Shared DIP Collateral, as set forth in greater detail in paragraphs 11(a) and 13(b) of this Final Order.  Notwithstanding anything to the contrary in this Final Order or the DIP Loan Documents and prior to seeking payment or satisfaction of any DIP Superpriority Claims, DIP Liens, Adequate Protection Superpriority Claims or Adequate Protection Liens from the Shared DIP Collateral or any other Aggregate Collateral that was previously unencumbered as of the Petition Date or rendered unencumbered as a result of a successful Challenge (collectively with the Shared DIP Collateral, the "***Last-Out Collateral***"), the Lenders shall not seek to realize upon the Last-Out Collateral earlier than September 30, 2025, with the Lenders utilizing and applying other available sources of recovery in the interim from (a) assets of the Non-Debtor Entity Guarantors and (b) all other DIP Collateral and Prepetition Collateral (other than the Last-Out Collateral), as applicable.

55117086.8

25.     <u>Waiver of Right to Return/Consent to Setoff</u>. The Debtors shall not, without the prior written consent of the Lenders, exercise their rights: (a) to return any of the Aggregate Collateral pursuant to section 546(h) of the Bankruptcy Code; (b) to consent to any order permitting any claims pursuant to section 503(b)(9) of the Bankruptcy Code; and (c) to consent to setoff pursuant to section 553 of the Bankruptcy Code.

26.     <u>Indemnification</u>. The Debtors shall indemnify and hold harmless each Lender in accordance with the DIP Credit Agreement and the Prepetition Credit Agreement, as applicable, provided that no such Lender will be indemnified for costs, expenses, or liabilities to the extent determined by final, non-appealable judgment of a court of competent jurisdiction to have been incurred solely by reason of the actual fraud, gross negligence, or willful misconduct of such person (or their related persons).

27.     <u>Payments Free and Clear</u>. ~~Any~~ <u>Subject to the rights, obligations and limitations of parties in interest set forth in paragraph 21 herein, any</u> and all payments or proceeds remitted to DIP Lender or its counsel pursuant to the provisions of this ~~Interim~~<u>Final</u> Order~~, or~~ the DIP Loan Documents ~~or any subsequent order of the Court~~ shall be irrevocable, received free and clear of any claim, charge, assessment or other liability<u>, including, without limitation, any claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code whether asserted or assessed by, through, or on behalf of the Debtors</u>.

28.     <u>Additional Perfection Measures.</u> The DIP Liens shall be perfected by operation of law immediately upon entry of this ~~Interim~~<u>Final</u> Order. None of the Debtors nor the DIP Lender shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or any other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any

jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the DIP Liens.

(a)    If the DIP Lender chooses to take any action to obtain consents from any landlord, licensor or other party in interest, to file mortgages, financing statements, notices of lien or similar instruments or to otherwise record or perfect such security interests and liens, the DIP Lender is hereby authorized, but not directed, to take such action or to request that the Debtors take such action on its behalf (and the Debtors are hereby authorized and directed to take such action), and no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(b)    In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the DIP Lender may choose to file a true and complete copy of this ~~Interim~~Final Order in any place at which any such instruments would or could be filed, together with a description of the Collateral and such filing by the DIP Lender shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this ~~Interim~~Final Order.

(c)    Upon entry of ~~the~~this Final Order, the DIP Lender shall establish the LC and Commercial Card Collateral Account referenced in paragraph 6(f), and such account and the monies deposited therein shall be deemed a portion of the DIP Collateral, and shall secure all of the DIP Obligations (as defined in the DIP Credit Agreement), including, but not limited to, the

-61-

commercial credit card obligations and the letter of credit reimbursement obligations described in paragraph 6(f). The DIP Lender's lien encumbering the LC and Commercial Card Collateral Account shall be deemed fully attached, valid, enforceable and perfected in accordance with the other terms of this ~~Interim~~Final Order.

29.    <u>Limitation on Protective Advances. Notwithstanding anything to the contrary in this Final Order or the DIP Loan Documents, Protective Advances shall not exceed the Maximum DIP Facility Amount.</u>

30.    ~~29.~~ <u>Delivery of Documentation.</u> The Debtors (and/or their legal or financial advisors) shall deliver to the DIP Lender ~~and~~, counsel to the DIP Lender, <u>and the Committee's professionals</u> all financial reports, budgets, forecasts, and all other legal or financial documentation, pleadings and/or filings that are either (a) required to be provided (by the Debtors and/or their legal or financial advisors) to the DIP Lender pursuant to the DIP Loan Documents or (b) reasonably requested by the DIP Lender (or their legal and financial advisors), as the case may be.

31.    ~~30.~~ <u>Access to Books and Records.</u> The Debtors (and/or their legal and financial advisors) will (a) keep proper books, records and accounts in accordance with GAAP in which full, true, and correct entries shall be made of all dealings and transactions in relation to their business and activities, (b) cooperate, consult with and provide to the DIP Lender all such information as required or allowed under the DIP Loan Documents or the provisions of this ~~Interim~~Final Order, (c) permit, consistent with the DIP Loan Documents, representatives of the DIP Lender to visit and inspect any of their respective properties (to the extent practicable, during customary business hours), to examine and make abstracts or copies from any of their non-privileged respective books and records, to conduct a collateral audit and analysis of their

respective inventory and accounts, to tour the Debtors' business premises and other properties (to the extent practicable, during customary business hours), and to discuss and be informed as to the Debtors' respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as often as may reasonably be desired, and (d) permit, consistent with the DIP Loan Documents, representatives of the DIP Lender to consult with and be informed by the Debtors' management on matters concerning the general status of the Debtors' businesses, financial condition and operations.

32.     31. Lenders Not Responsible Persons; No Control. In (a) making the decision to make the DIP Loans; (b) administering the DIP Loans; (c) extending other financial accommodations to the Debtors under the DIP Loan Documents; and (d) making the decision to collect the indebtedness and obligations of the Debtors, the DIP Lender shall not be considered to (i) owe any fiduciary obligation to any Debtor or any other party with respect to their exercise of any consent rights afforded them under the DIP Loan Documents or this InterimFinal Order or (ii) be exercising control over the Debtors or their operations, have authority to determine the manner in which any of the Debtors' operations are conducted, or acting in any way as a responsible person, a control person, insider or as an owner or operator of any Debtor or any of its affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this InterimFinal Order, the DIP Facility, and/or the DIP Loan Documents, under any applicable law.

33.     32. Successors and Assigns. The DIP Loan Documents and the provisions of this InterimFinal Order shall be binding upon each Debtor, the DIP Lender, and each of their respective successors and assigns, and shall inure to the benefit of each Debtor, the DIP Lender, and each of their respective successors and assigns including, without limitation, any trustee,

-63-

examiner with expanded powers, responsible officer, estate administrator or representative or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code. The terms and provisions of this ~~Interim~~Final Order shall also be binding on all of the Debtors' creditors, equity holders and all other parties in interest, including, but not limited to any Trustee appointed or elected.

34.    ~~33.~~ DIP Credit Bid Rights. The DIP Lender shall be entitled to credit bid up to the full amount of the outstanding DIP Debt, including, without limitation, any accrued interest and expenses, in any sale of any DIP Collateral, whether such sale is effectuated through section 363 of the Bankruptcy Code in a chapter 11 or chapter 7 proceeding, under section 1129 in a chapter 11 proceeding, by a chapter 7 trustee in a chapter 7 proceeding or otherwise, and the DIP Lender expressly reserves the right to credit bid up to the full amount of its outstanding DIP Debt including, without limitation, all principal, interest, fees, expenses, call and make-whole premiums, yield maintenance premiums and other fees and charges. Nothing in this ~~Interim~~Final Order shall impair or adversely affect the right of the Committee or the United States Trustee's Office to object to any credit bid for cause under section 363(k) of the Bankruptcy Code.

35.    ~~34.~~ Prepetition Credit Bid Rights.  Subject to the consent of the DIP Lender, the Prepetition Lender shall be entitled to credit bid up to the full amount of the outstanding Prepetition Debt, including, without limitation, any accrued interest and expenses, in any sale of any Prepetition Collateral, whether such sale is effectuated through section 363 of the Bankruptcy Code in a chapter 11 or chapter 7 proceeding, under section 1129 of the Bankruptcy Code in a chapter 11 proceeding, by a chapter 7 trustee in a chapter 7 proceeding or otherwise, and the Prepetition Lender expressly reserves the right to credit bid up to the full amount of its outstanding Prepetition Debt including, without limitation, all principal, interest, fees, expenses,

call and make-whole premiums, yield maintenance premiums and other fees and charges. Nothing in this ~~Interim~~Final Order shall impair or adversely affect the right of the Committee or the United States Trustee's Office to object to any credit bid for cause under section 363(k) of the Bankruptcy Code.

36.    ~~35.~~ Binding Nature of Agreement. Each of the DIP Loan Documents to which any of the Debtors are or will become a party shall constitute legal, valid and binding obligations of the Debtors party thereto, enforceable in accordance with their terms. Unless otherwise consented to in writing, the rights, remedies, powers, privileges, liens and priorities of the DIP Lender provided for in this ~~Interim~~Final Order, the DIP Loan Documents or otherwise shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation or sale order), by any plan of reorganization or liquidation in the Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code.

37.    ~~36.~~ Subsequent Reversal or Modification. This ~~Interim~~Final Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), and the DIP Lender is accordingly entitled to all protections afforded by section 364(e) of the Bankruptcy Code with respect to all right, claims, liens and interests granted under this ~~Interim~~Final Order.

38.    ~~37.~~ Collateral Rights. If any party who holds a lien or security interest in DIP Collateral that is junior and/or subordinate to the DIP Liens in such DIP Collateral receives or is paid the proceeds of such DIP Collateral prior to the indefeasible payment in full in cash and the complete satisfaction of all DIP Debt under the DIP Loan Documents and termination of the commitment in accordance with the DIP Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust

55117086.8

for the DIP Lender and shall immediately turn over such proceeds for application by the DIP Lender, in accordance with the DIP Loan Documents to repay the DIP Debt in accordance with the DIP Loan Documents, and this ~~Interim~~Final Order until indefeasibly paid in full in cash.

39.    ~~38.~~ No Waiver. This ~~Interim~~Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender may have to bring or be heard on any matter brought before this Court.

40.    ~~39.~~ No Discharge.  None of the DIP Debt (unless paid in full in cash) shall be discharged by the entry of any order confirming a plan of reorganization or liquidation in these Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived such discharge.

41.    ~~40.~~ Limits on Lender's Liability. Nothing in this ~~Interim~~Final Order or in any of the DIP Loan Documents or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts, including the negotiation and entry into any agreements, or documents relating to the DIP Loans. The DIP Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral; (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause; (iii) any diminution in the value thereof; or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person; and all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Debtors.

42.    ~~41.~~ Priority of Terms; Inconsistencies. To the extent of any conflict or inconsistencies between or among (a) the express terms or provisions of any of the DIP Loan

Documents, the relief requested in the Motion, any other order of this Court or any other agreements, on the one hand, and (b) the terms and provisions of this ~~Interim~~Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as more fully described in" the DIP Loan Documents (or words of similar import), the terms and provisions of this ~~Interim~~Final Order shall govern and control.

43.    ~~42.~~ No Third-Party Beneficiary. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

44.    ~~43.~~ Survival.

(a)    Upon the occurrence of any Event of Default, interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Credit Agreement. Notwithstanding any order that may be entered dismissing any of these Chapter 11 Cases under section 1112 of the Bankruptcy Code: (i) the DIP Superpriority Claim, the DIP Liens, the Adequate Protection Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this ~~Interim~~Final Order until all DIP Debt shall have been paid in full (and that such DIP Superpriority Claim, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this ~~Interim~~Final Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this ~~Interim~~Final Order.

(b)    If any or all of the provisions of this ~~Interim~~Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect: (i) the

validity, priority or enforceability of any DIP Debt incurred prior to the actual receipt of written notice by the DIP Lender, as applicable, of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens. Prior to the actual receipt of written notice by the DIP Lender of the effective date of any such reversal, modification, or vacatur of this ~~Interim~~Final Order, the DIP Loans shall be governed in all respects by the original provisions of this ~~Interim~~Final Order and the DIP Loan Documents, and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted in sections 364(e) of the Bankruptcy Code, this ~~Interim~~Final Order and the DIP Loan Documents with respect to the DIP Debt, and all DIP Loans under the DIP Loan Documents are deemed to have been made in reliance upon this ~~Interim~~Final Order, and, therefore, the indebtedness resulting from such DIP Loans prior to the effective date of any modification or reversal of this ~~Interim~~Final Order cannot as a result of any subsequent order the Debtor's Chapter 11 Case, or any Successor Case, (i) be subordinated or (ii) be deprived of the benefit or priority of the DIP Superpriority Claim or DIP Liens granted to the DIP Lender under this ~~Interim~~Final Order or the DIP Loan Documents.

(c)     Except as otherwise provided herein, (i) the protections afforded under this ~~Interim~~Final Order, and any actions taken pursuant thereto, shall survive the entry of an order (1) dismissing these Chapter 11 Cases or (2) converting these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code; and (ii) the DIP Liens, the DIP Superpriority Claim shall, Adequate Protection Liens and Adequate Protection Superpriority Claim continue to be valid and enforceable in these Chapter 11 Cases, in any such successor case or after any such dismissal. Except as otherwise provided herein, the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens and the Adequate Protection Superpriority Claim shall

-68-

maintain their priorities as provided in this ~~Interim~~Final Order and the DIP Loan Documents, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness (except with respect to any additional financing to be provided by the DIP Lender in accordance with the ~~Interim~~Final Order), or any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of this Chapter 11 Case or by any other act or omission until all DIP Debt is indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents are terminated in accordance therewith.

45.    ~~44.~~ Adequate Notice. The notice given by the Debtors of the ~~Interim~~Final Hearing was given in accordance with Bankruptcy Rules and the Local Rules, such notice was sufficient under the particular circumstances, and no other or further notice of the request for relief granted at the ~~Interim~~Final Hearing is required. The Debtors shall promptly mail copies of this ~~Interim~~Final Order to any known party affected by the terms of this ~~Interim~~Final Order and any other party requesting notice after the entry of this ~~Interim Order.  Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be actually received no later than seven (7) days prior to the Final Hearing at 4:00 p.m. (Eastern) by the following: (a) proposed counsel to the Debtors, Saul Ewing LLP, (i) Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102, Attn:, Jeffrey C. Hampton and Adam H. Isenberg (jeffrey.hampton@saul.com and adam.isenberg@saul.com) and (ii) 1201 N. Market St., Suite 2300, Wilmington, DE 19801, Attn: Mark Minuti and Paige N. Topper (mark.minuti@saul.com) and (paige.topper@saul.com); (b) counsel to the DIP Lender and Prepetition Lender, Troutman Pepper Locke, 701 8th Street, N.W., Suite 500, Washington DC 200001, Attn: Jonathan W.~~

~~Young and Katherine Culbertson (Jonathan.young@troutman.com and katherine.culbertson@troutman.com); (e) the Office of the United States Trustee, 101 West Lombard Street, Suite 2625, Baltimore, Maryland 21201, Attn: Gerard R. Vetter (gerard.r.vetter@usdoj.gov); and (f) any Creditors' Committee appointed in these cases. The Court shall conduct a Final Hearing on the Motion commencing on February 6, 2025 at 10:00 a.m. (Eastern).~~ Final Order.

46.    ~~45.~~ Immediate Binding Effect; Entry of ~~Interim~~Final Order. This ~~Interim~~Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry. The Clerk of the Court is hereby directed to enter this ~~Interim~~Final Order on the Court's docket in ~~this~~these Chapter 11 ~~Case~~Casse; there shall be no stay of execution or effectiveness of this ~~Interim~~Final Order and any stay of the effectiveness of this ~~Interim~~Final Order that might otherwise apply is hereby waived for cause shown.

47.    ~~46.~~ Headings. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this ~~Interim~~Final Order.

48.    ~~47.~~ Proofs of Claim. Notwithstanding any order of this Court to the contrary, each of the DIP Lender and the Prepetition Lender are hereby relieved of any obligation or requirement to file proofs of claim or applications for administrative claims in this Chapter 11 Case with respect to any of the DIP Debt or the Prepetition Debt and any other claims or liens granted hereunder or created hereby.

49.    ~~48.~~ Retention of Jurisdiction. This Court shall retain exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this ~~Interim~~Final Order.

Dated: _____, 2025

_____
THE HONORABLE DAVID E. RICE
UNITED STATES BANKRUPTCY JUDGE

-71-

55117086.8

# **EXHIBIT A**

**DIP Credit Agreement**

55117086.8

# **EXHIBIT B**

## **Budget**

| Summary report: Litera Compare for Word 11.10.0.38 Document comparison done on 2/19/2025 2:15:29 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Diamond Comics - Interim DIP Order - AS ENTERED (01-16-25).docx | |
| **Modified filename:** 55117086-v8-Diamond Comics - Final DIP Order.docx | |
| **Changes:** | |
| Add | 374 |
| Delete | 361 |
| Move From | 11 |
| Move To | 11 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 757 |