**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
(Baltimore Division)

| | |
|---|---|
| In Re<br><br>**DIAMOND COMIC DISTRIBUTORS,** *et al.*<br><br>Debtors. | Bankruptcy Case: 25-10308-DER<br><br>Chapter 11<br>(Jointly Administered) |

**THE UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING (I) RETENTION AND EMPLOYMENT OF GETZLER HENRICH & ASSOCIATES LLC, TO PROVIDE INTERIM MANAGEMENT SERVICES, AND (II) THE DESIGNATION OF ROBERT GORIN AND WILLIAM HENRICH AS CO-CHIEF RESTRUCTURING OFFICERS TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

Matthew W. Cheney, Acting United States Trustee for Region Four, which includes the District of Maryland, Baltimore Division (the "United States Trustee"), in accordance with the statutory and administrative duties imposed by 28 U.S.C. § 586(a)(3)(I), files this Objection to Debtors' Motion For Entry Of An Order Authorizing (i) Retention and Employment of Getzler Henrich & Associates LLC, to Provide Interim Management Services, and (ii) the Designation of Robert Gorin and William Henrich as Co-Chief Restructuring Officers to the Debtors, Effective as of the Petition Date, filed as document 114 (the "Application").

## INTRODUCTION

In light of what they determined to be unsustainable losses, the debtors in these

cases (collectively "Diamond Comics") retained the services of Getzler Henrich & Associates, LLC ("Getzler Henrich") as turnaround specialists and to provide a chief restructuring officer ("CRO"). Diamond Comics subsequently commenced these Chapter 11 cases and now seeks court approval to continue to retain Getzler Henrich's management services and to employ two of its principals, Robert Gorin and William Henrich, as co-CROs. In connection therewith, Diamond Comics filed the Application.

The United States Trustee has no problem with, and does not object in principle to, the employment of Getzler Henrich or Messrs. Gorin and Henrich for the purposes sought in the Application. The United States Trustee does, however, object to some of the terms of the proposed employment. Specifically, the United States Trustee objects to certain proposed indemnification provisions and liability limitations, the length of certain objection periods, and a few minor but important miscellaneous provisions or omissions.

## ARGUMENT

### A. Indemnification and Liability Limitations.

#### 1. Indemnification.

It is common, if not universal, that contracts for the types of services being provided by Getzler Henrich contain broad indemnification provisions and broad limitations on the professional's potential liability. Outside of bankruptcy, such provisions are generally limited only by the willingness of the contracting parties to agree. Within a bankruptcy case, however, such provisions face additional constraints. In this district, indemnification

provisions in such contracts are governed by the case of *In re Baltimore Emergency Serv. II, LLC*, 291 B.R. 382 (Bankr. D. Md. 2003).

In *Baltimore Emergency Services*, Judge Derby held that, while an acceptable engagement agreement may require the debtor to indemnify a financial professional from liability resulting from the professional's ordinary negligence, the agreement must exclude indemnification for the professional's gross negligence. *Id.* at 384. Furthermore, the agreement cannot narrow or limit this gross negligence exclusion to situations resulting "solely" or "primarily" from the professional's gross negligence. *Id.* at 385. Rather, if the professional's liability is the result in any part from its own gross negligence, the debtor cannot be required to indemnify the professional.

Thus, in *Baltimore Emergency Serv.*, the proposed engagement agreement provided that:

> [Debtor] will not, however, be liable under the foregoing indemnification provision for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the bad faith, gross negligence or willful misconduct of [the professional].

*Id.*

In refusing to approve such a provision, Judge Derby held limiting language such as the term "primarily" used to modify the gross negligence exclusion "has no place" in a permissible indemnification clause. *Id.*

Getzler Henrich's engagement letter contains a nearly identical provision to the one rejected in *Baltimore Emergency Serv.* Specifically, the Getzler Henrich engagement letter

provides, in its indemnification exclusion:

> [T]his indemnity and exculpation shall not apply where a court of competent jurisdiction has found by a final judgment (not subject to further appeal) that such Covered Losses resulted *primarily* from willful misconduct on the part of Getzler Henrich in the performance of its services under this Agreement.

(Application, Doc. 114-3 at 10; emphasis added.) This provision is inappropriate and, unless modified, precludes approval of the Getzler Henrich's employment. *Baltimore Emergency Serv.*, 291 B.R. at 385; *see also United Artists Theater Co. v. Walton*, 315 F.3d 217, 234 (3d Cir. 2003) (rejecting an indemnification provision that required indemnification unless the liability resulted "solely" from the professional's gross negligence and holding that requiring indemnification where the professional's gross negligence even partially contributed to the liability was out of bounds for acceptable public policy.)

**2. <u>Limitations of Liability.</u>**

A subsequent provision of Getzler Henrich's engagement agreement purports to limit the amount of its liability for wrongdoing to the fees it actually received under the agreement. (*See* Application, Doc. 114-3 at 10-11.) Such a limitation is inappropriate. If Getzler Henrich, as a professional employed by Diamond Comics, commits wrongful acts that result in damage to Diamond Comics or others, it must be liable for those damages regardless of whether those damages exceed the fees it received. There is simply no rational connection between the damage that a wrongful act may cause (which constitutes the basis for awards of damages under the American judicial system) and the fees the

wrongful actor received. Thus, courts have found such limitations on liability to be inappropriate in the context of a bankruptcy professional. *In re Glosser Bros., Inc.,* 102 B.R. 38, 42 (Bankr. W.D. Pa. 1989); *see also In re Gillette Holdings*, 137 B.R. 452, 459 n.17 (Bankr. D. Colo. 1991).

**B. Objection Periods.**

Paragraph 5 of the proposed Order requires Getzler Henrich to file monthly time records and compensation reports so that the Court, creditors and other interested parties, including the United States Trustee, can review and, if appropriate, object. (*See* Doc. 114-2 at ¶ 5.) Similarly, paragraph 6 of the proposed Order requires Getzler Henrich to file monthly staffing reports showing who worked on the case and the individual's billing rate, again so these can be reviewed by the Court, creditors, and other interested parties. (*See* Doc. 114-2 at ¶ 6.)

Both paragraphs provide only a 10-day objection period. This is not sufficient or reasonable and allows insufficient review time. Parties should have at least 21 days to object to the monthly compensation and staffing reports.

**C. Court Oversight of Disputes.**

It is critical that the Court retain control over all professionals and all disputes that arise under approved contracts employing professionals. Thus, the Order should provide that, during the pendency of these bankruptcy cases, all disputes arising out of the Getzler

Henrich employment be resolved in this Court. Thus, the Order should contain language substantially to the effect of the following "With respect to controversies or claims arising out of or in any way related to the services in the Engagement Letter, notwithstanding any arbitration, dispute resolution, or exclusive jurisdiction provisions contained in the Engagement Letter, any disputes arising under the Engagement Letter shall be heard in this Court during the pendency of these Chapter 11 Cases."

### D. Miscellaneous Provisions.

#### 1. Third-Party Contractors.

The Getzler Henrich agreement allows for Getzler Henrich to engage the services of third-party contractors. While there is nothing wrong with such a provision as far as it goes, Getzler Henrich should not be permitted to increase its fees by using such contractors or attempt to avoid conflicts of interest by using such contractors. Thus, the proposed Order should include language to the effect of the following: "Notwithstanding anything in this Application or the Engagement Letter to the contrary, (i) to the extent that Getzler Henrich uses the services of independent contractors, subcontractors, or third party contractors (collectively, the "Contractors") in these cases, they shall pass through the cost of the Contractors to the applicable Debtors at the same rate that they pay the Contractors; and (ii) seek reimbursement for actual costs only. Contractors from whom Getzler Henrich seeks to pass through fees on an hourly basis to the applicable Debtors shall be subject to the same conflicts checks as required for Getzler Henrich."

**2. Time Keeping.**

As noted above, paragraph 5 of the proposed Order requires Getzler Henrich to file monthly time records for interested parties to review. The proposed Order, however, allows for time records to be kept in increments of 0.5 hours. It is typical for professionals in bankruptcy cases to keep time records in increments of 0.1 hours and, the Application provides no reason to deviate from that practice here. Thus, Getzler Henrich should be required to maintain and file time records in increments of 0.1 hours.

**3. Terms of Order Control.**

Paragraph 2 of the proposed Order provides that Getzler Henrich and Messrs. Gorin and Henrich will be employed "pursuant to the terms and conditions of the Engagement Letter . . . ." however, those terms are modified by the Order approving the employment. (*See* Doc. 114-2 at ¶ 2.) Thus, the Order should contain the qualifier, "as modified by this Order."

Similarly, paragraph 4 also provides that Getzler Henrich will be compensated in accordance with the "Compensation Structure set forth in the Motion, the Gorin Declaration, and the Engagement Letter." (*See* Doc. 114-2 at ¶ 4.) This provision too should contain the qualifier, "as modified by this Order."

**CONCLUSION**

For the reasons stated above, the Court should not approve the Application in its present form.

Dated: February 20, 2025

Respectfully submitted,

Matthew W. Cheney,
Acting United States Trustee for Region Four

By: */s/ Hugh M. Bernstein*

Hugh M. Bernstein
Fed. Bar No.: 23489
United State Department of Justice
101 West Lombard Street
Baltimore, Maryland 21201
(410) 962-4300
E-mail: hugh.m.bernstein@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY FURTHER CERTIFY** that, on this 20th day of February, 2025, according to the Court's ECF records, electronic notice of this motion should be provided to the following persons:

- **Hugh M. (UST) Bernstein hugh.m.bernstein@usdoj.gov**
- **Daniel Jack Blum jack.blum@polsinelli.com, lsuprum@polsinelli.com;delawaredocketing@polsinelli.com**
- **Thomas K. Bredar thomas.bredar@wilmerhale.com, andrew.goldman@wilmerhale.com;benjamin.loveland@wilmerhale.com;yolande.thompson@wilmerhale.com**
- **Andrew Brown abrown@klestadt.com**
- **Richard L. Costella rcostella@tydings.com, scalloway@tydings.com**
- **David W.T. Daniels ddaniels@perkinscoie.com, docketnyc@perkinscoie.com;nvargas@perkinscoie.com;KMcClure@perkinscoie.com**
- **Turner Falk turner.falk@saul.com, tnfalk@recap.email;Veronica.Marchiondo@saul.com**
- **Justin Philip Fasano jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com;tmackey@mhlawyers.com;hleaphart@mhlawyers.com;cmartin@mhlawyers.com;Fasano.JustinR92003@notify.bestcase.com**
- **Ashley N Fellona ashley.fellona@saul.com, janice.mast@saul.com**
- **Gianfranco Finizio gfinizio@lowenstein.com**
- **Chelsea R Frankel cfrankel@lowenstein.com**
- **Stephen B. Gerald sgerald@tydings.com**
- **Zvi Guttman zvi@zviguttman.com, zviguttman@gmail.com,zviguttman@outlook.com**
- **Jeffrey C. Hampton jeffrey.hampton@saul.com**
- **Adam H Isenberg adam.isenberg@saul.com**
- **C. Kevin Kobbe kevin.kobbe@us.dlapiper.com, docketing-baltimore-0421@ecf.pacerpro.com**
- **Eric George Korphage korphagee@whiteandwilliams.com**
- **Jung Yong Lee jlee@tydings.com, mhickman@tydings.com**
- **Gary H. Leibowitz gleibowitz@coleschotz.com, pratkowiak@coleschotz.com;bankruptcy@coleschotz.com;lmorton@coleschotz.com**
- **Mark Minuti mark.minuti@saul.com, robyn.warren@saul.com**
- **Bruce S. Nathan bnathan@lowenstein.com**
- **Michael Papandrea mpapandrea@lowenstein.com**
- **Steven Gregory Polard steven.polard@ropers.com**
- **Jordan Rosenfeld jordan.rosenfeld@saul.com**
- **Dennis J. Shaffer dshaffer@tydings.com, scalloway@tydings.com;mhickman@tydings.com;jlee@tydings.com**
- **Indira Kavita Sharma indira.sharma@troutman.com,**

**katherine.culbertson@troutman.com;jonathan.young@troutman.com;david.ruediger@troutman.com;errol.chapman@troutman.com;toyja.kelley@troutman.com**

- **Nicholas Smargiassi nicholas.smargiassi@saul.com**
- **Brent C. Strickland bstrickland@wtplaw.com, mbaum@wtplaw.com;brent-strickland-3227@ecf.pacerpro.com**
- **Paige Noelle Topper paige.topper@saul.com**
- **US Trustee - Baltimore USTPRegion04.BA.ECF@USDOJ.GOV**

And that further notice is being provided to all required parties by Omni Agent Solutions, Inc.

/s/ *Hugh M. Bernstein*
Hugh M. Bernstein