IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.¹ | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br><u>Hearing Date</u>:<br>March 27, 2025 at 10:00 a.m. (ET)<br><u>Objection Deadline</u>:<br>March 14, 2025 |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), by and through their undersigned proposed counsel, respectfully move (the "<u>Motion</u>") as follows:

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "<u>Sale Order</u>"):²

   i. authorizing and approving one or more sales or dispositions (collectively, the "<u>Sale</u>") of the Debtors' Assets to the Stalking Horse Bidder (as defined below) and/or otherwise successful bidder(s) for the Assets as a result of the sale process (the "<u>Successful Bidder(s)</u>"), as applicable (the "<u>Purchaser</u>"), free and clear of all liens, claims, interests, and encumbrances to the extent set forth in the Stalking Horse Agreement and/or asset purchase

---

¹ The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

² The Sale Order attached to this Motion is a form order because the identity of the Successful Bidder(s) for the Debtors' Assets is not yet known. The Debtors will file one or more revised Sale Orders before the Sale Hearing to reflect the Sale(s) to the Stalking Horse Bidder and/or other Successful Bidder(s), as applicable.

    agreement(s) with the otherwise Successful Bidder(s), as applicable (the "Asset Purchase Agreement(s)");

  ii.  authorizing and approving the assumption and assignment of the Assigned Contracts (as defined below) as set forth in the Asset Purchase Agreement(s); and

  iii.  granting related relief.

## Jurisdiction and Venue

2.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory bases for the relief requested herein are sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), as supplemented by rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 6004-3 and 6006-1(a) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Bankruptcy Rules").

## Background

4.  On January 14, 2025 (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On January 29, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

5.  A description of the Debtors' business, the reasons for commencing these cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set

forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petitions and First Day Relief* (D.I. 20) (the "First Day Declaration") and incorporated herein by reference.

## The Sale Process

6.  Before the Petition Date, the Debtors retained Raymond James & Associates, Inc. ("Raymond James"), a highly experienced and qualified investment banker, to commence and run a sales process for all or substantially all of the Debtors' assets in connection with a section 363 sale. Immediately upon its retention, Raymond James focused its efforts on developing marketing materials and marketing the Debtors' Assets to parties to serve as the stalking horse bidder. In short order, the Debtors and Raymond James prepared extensive diligence materials to support a marketing effort, including a virtual data room, a non-confidential investment overview, and a confidential information memorandum (collectively, the "Investment Material").

7.  Raymond James spearheaded an all-inclusive marketing process, and solicited interest from potential financial and strategic investors for bids for all or substantially all the Debtors' Assets, on a going concern basis. Beginning on October 7, 2024, the Debtors and Raymond James contacted numerous prospective acquirers, certain of which executed non-disclosure agreements to access the data room and review the Investment Material. After negotiating with those parties that submitted indications of interest in the Debtors' Assets, the Debtors decided to proceed with Universal Distribution LLC, as the stalking horse bidder (the "Stalking Horse Bidder") for a subset of the Debtors' assets, constituting substantially all of the assets used in the Debtors' Alliance Game Distributors business (the "Alliance Assets"). For the avoidance of doubt, the Debtors are seeking authority to sell all the Debtors' Assets, including but not limited to the Alliance Assets. A description of the Debtors' various Assets is attached hereto as **Exhibit B**.

8. On January 21, 2025, the Debtors filed a motion for, among other things, approval of (i) proposed bidding procedures and established deadlines for the postpetition sale process, (ii) certain bid protectections with respect to the Stalking Horse Bidder's bid, and (iii) procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale(s) (D.I. 68) (the "Bidding Procedures Motion").[3]

9. On February 11, 2025, the Court entered an order granting the Bidding Procedures Motion (D.I. 136) (the "Bidding Procedures Order"). Among other things, the Bidding Procedures Order established the following key deadlines in connection with the sale process:

| Deadline | Date |
| --- | --- |
| Contract Objection Deadline | March 12, 2025 |
| Sale Objection Deadline | March 14, 2025 |
| Bid Deadline | March 19, 2025, at 5:00 p.m. (ET) |
| Auction | March 24, 2025, commencing at 10:00 a.m. (ET) |
| Sale Hearing | March 27, 2025, at 10:00 a.m. (ET) |

10. The Bidding Procedures Order further approved the Debtors' proposed sale process and bidding procedures, including the form and manner of notice of the Auction, the Sale and the Sale Hearing (the "Sale Notice") attached as Exhibit 2 to the Bidding Procedures Order. In accordance with the Bidding Procedures Order, the Debtors filed and served the Sale Notice on February 18, 2025, on the following parties or their respective counsel if known (collectively, the "Sale Notice Parties"): (i) the Office of the United States Trustee for the District of Maryland; (ii) counsel to JPMorgan Chase Bank, N.A. (the "Lender"); (iii) counsel to the Committee; (iv) all parties known by the Debtors to assert a lien on any of the Assets; (v) all persons known or

---

[3] Capitalized terms used but not defined herein are defined in the Bidding Procedures Motion.

reasonably believed to have asserted an interest in any of the Assets; (vi) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Assets within the one (1) year prior to the Petition Date; (vii) the Office of the United States Attorney for the District of Maryland; (viii) the Office of the Attorney General in each state in which the Debtors operate; (ix) the Office of the Secretary of State in each state in which the Debtors have operated; (x) the United States Attorney General; (xi) the civil process clerk for the United States Attorney for the District of Maryland; (xii) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (xiii) all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency; (xiv) the Federal Trade Commission; (xv) the United States Attorney General/Antitrust Division of Department of Justice; (xvi) all non-Debtor parties to any of the Assigned Contracts; (xvii) all of the Debtors' other known creditors and equity security holders; and (xviii) all parties that have filed a notice of appearance and demand for service of papers in these chapter 11 cases as of the service date. *See Notice of Sale, Bidding Procedures, Potential Auction, and Sale Hearing* (D.I. 159).

11. The Debtors are also in the process of coordinating the publication of the Sale Notices in the national edition of *Wall Street Journal*, *The Baltimore Sun*, and the local newspaper for the locations of each of the Debtors' distribution facilities: (i) Red Lion, Pennsylvania; (ii) Fort Wayne, Indiana; (iii) Visalia, California; (iv) Round Rock, Texas; and (v) Olive Branch, Mississippi, to provide notice to any other potential interested parties.

12. The Bidding Procedures Order further approved assumption and assignment procedures regarding the executory contracts and unexpired leases to be potentially assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful

Bidder(s) pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale(s) (the "Assigned Contracts").  In accordance with the Bidding Procedures Order, on February 18, 2025, the Debtors filed the *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* (D.I. 160) (the "Contract Notice"), identifying potential contracts to be assumed and assigned in connection with the sale process, along with the amount, if any, that the Debtors believe is required to be paid to the applicable non-debtor contract counterparty to cure any defaults arising under the contract pursuant to section 365(b)(1) of the Bankruptcy Code for each of the identified contracts (the "Cure Amount"), and notifying contract counterparties of the Contract Objection Deadline.

13. As detailed in the Bidding Procedures Motion, the Debtors intend to conduct a competitive postpetition sale process to maximize the value of their estates for creditors and other stakeholders.  To that end, the Debtors and Raymond James are working diligently to conduct the sale process in an efficient and value-maximizing manner.  With the sale process underway, the Debtors file this Motion to effectuate one or more sale transactions to the Stalking Horse Bidder and/or other Successful Bidder(s), subject to the Bidding Procedures Order and to be heard at the scheduled Sale Hearing in these chapter 11 cases.  To be clear, the relief sought herein applies to any sale of the Alliance Assets or any other Assets of the Debtors.

**Provisions to be Highlighted Pursuant to Local Bankruptcy Rule 6004-3**

14. The following chart discloses certain information required to be disclosed pursuant to Local Bankruptcy Rule 6004-3 with respect to the asset purchase agreement for the Stalking Horse Bidder (the "Stalking Horse Agreement").  A copy of the Stalking Horse Agreement is attached as Exhibit B to the Bidding Procedures Motion.

| Rule | Disclosure/Location |
|---|---|
| **Sale to Insider** <br> *Local Bankruptcy Rule 6004-3(a)* | The Stalking Horse Bidder is not an insider of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code. |
| **Agreements with Management** <br> *Local Bankruptcy Rule 6004-3(b)* | Not applicable. |
| **Releases** <br> *Local Bankruptcy Rule 6004-3(c)* | None. |
| **Private Sale/No Competitive Bidding** <br> *Local Bankruptcy Rule 6004-3(d)* | Not applicable. The Sale to the Stalking Horse Bidder is subject to higher or otherwise better bids pursuant to the bidding procedures set forth in the Bidding Procedures Order. |
| **Closing and Other Deadlines** <br> *Local Bankruptcy Rule 6004-3(e)* | The Sale to the Stalking Horse Bidder has an outside Closing Date of April 10, 2025. |
| **Good Faith Deposit** <br> *Local Bankruptcy Rule 6004-3(f)* | The Stalking Horse Bidder submitted a $3,000,000 good faith deposit. If the Debtors terminate the Stalking Horse Agreement due to the Stalking Horse Bidder materially breaching any provision of the Stalking Horse Agreement, then the Deposit is to be paid to the Debtors. *See* Stalking Horse Agreement, Sections 8.1 and 8.2. |
| **Interim Arrangements with Proposed Buyer** <br> *Local Bankruptcy Rule 6004-3(g)* | The Debtors are not entering into any interim arrangements with the Stalking Horse Bidder. |
| **Use of Proceeds** <br> *Local Bankruptcy Rule 6004-3(h)* | The Debtors anticipate that substantially all sale proceeds minus certain closing costs and fees associated with a sale of the Alliance Assets to the Stalking Horse Bidder will be remitted to the Lender to reduce the secured debt owed to the Lender. |
| **Record Retention** <br> *Local Bankruptcy Rule 6004-3(i)* | The Acquired Assets (as defined in the Stalking Horse Agreement) include all books and records related to the Acquired Assets. |
| **Sale of Avoidance Actions** <br> *Local Bankruptcy Rule 6004-3(j)* | The Stalking Horse Agreement includes the sale of avoidance actions with respect to any Critical Vendor or Foreign Critical Vendor (each as defined in the Stalking Horse Agreement). *See* Stalking Horse Agreement, Section 2.1(h). |
| **Requested Findings as to Successor Liability** | The Sale Order will include findings that the Stalking Horse Bidder is not a mere continuation of the Debtors or their estates, and that the Stalking Horse Bidder shall not have any successor liability of any |

7

| | |
|---|---|
| *Local Bankruptcy Rule 6004-3(k)* | kind or character.  *See* Stalking Horse Agreement, Section 6.6(b). |
| **Sale Free and Clear of Unexpired Leases** *Local Bankruptcy Rule 6004-3(l)* | Not applicable. |
| **Credit Bid** *Local Bankruptcy Rule 6004-3(m)* | Pursuant to the Bidding Procedures Order, any potential bidder that has a valid and perfected lien on any assets of the Debtors' estates has the right to credit bid all or a portion of the value of such bidder's secured claims within the meaning of section 363(k) of the Bankruptcy Code.  *See* Bidding Procedures Order ¶ 12. |
| **Relief from Bankruptcy Rule 6004(h)** *Local Bankruptcy Rule 6004-3(n)* | The Debtors seek a waiver of the 14-day stays under Bankruptcy Rules 6004(h) and 6006(d), as described in more detail below. |

**Basis for Relief**

**I.   Sufficient business justification exists for consummation of the Sale(s) under sections 105(a) and 363(b) of the Bankruptcy Code.**

15. Pursuant to section 105(a) of the Bankruptcy Code, a "[c]ourt may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have required that such use, sale or lease be based upon the sound business judgment of the debtor.  *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (internal citation omitted); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147–48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *In re Lionel Corp.*).

16. The demonstration of a valid business justification by the debtor leads to a strong

presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

17. The Debtors submit that their decision to consummate the Sale(s) represents a reasonable exercise of the Debtors' business judgment and, accordingly, the Sale(s) should be approved under sections 105(a) and 363(b) of the Bankruptcy Code. The Debtors are conducting an extensive and fulsome process to market the Assets. The open and fair auction and sale process approved by the Court, as detailed in the Bidding Procedures Order, will ensure that the Debtors' estates receive the highest or otherwise best value available for the Assets, and will provide a greater recovery than would be provided by any other available alternative. Further, the bidding procedures approved by the Court will ensure the fairness and reasonableness of the consideration to be paid by the Stalking Horse Bidder or other Successful Bidder, and establish that the Debtors and such bidder have proceeded in good faith.

18. Additionally, the Debtors believe that the notice procedures approved in the Bidding Procedures Order are reasonable and adequate under the circumstances. Bankruptcy Rules 2002(a) and (c) require the Debtors to notify creditors of the Sale, the terms and conditions of the Sale, the time and place of the Auction, and the deadline for filing any objections. The Debtors believe that the approved notice procedures fully comply with Bankruptcy Rule 2002, and are reasonably calculated to provide timely and adequate notice of the Stalking Horse Agreement, the Sale, bidding procedures, auction and Sale Hearing to the Debtors' creditors and all other parties in interest that are entitled to notice, as well as those parties that have expressed a *bona fide*

interest in acquiring the Assets.

19. The Sale(s) of the Debtors' Assets will generate significant value for the Debtors' estates and represent the best path forward for maximizing recoveries to the estates, the Debtors' creditors, and all parties in interest. The Debtors submit that ample business justification exists for the consummation of the Sale(s) and, therefore, request that this Court approve such Sale(s).

## II. The Sale(s) of the Assets free and clear of all encumbrances is authorized under section 363(f) of the Bankruptcy Code.

20. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is a bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

21. Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens and interests. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that because section 363(f) is written in the disjunctive, a court may approve a sale free and clear if any one subsection is met); *see also Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (same); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same). Furthermore, a debtor possesses broad authority to sell assets free and clear of liens. *See In re*

*Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003).

22. The Debtors submit that, in the interest of attracting the best offers, it is appropriate to sell the Assets on a final "as is" basis, free and clear of any and all liens, claims, interests, and encumbrances (except as otherwise expressly set forth in the Sale Order and the Stalking Horse Agreement or an Asset Purchase Agreement with a Successful Bidder, as applicable) in accordance with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) are satisfied with respect to such Sale. In particular, the Debtors believe that section 363(f)(2) of the Bankruptcy Code will be met as to their senior secured lender, JPMorgan Chase Bank, N.A., because the Debtors anticipate the Lender will consent to the Sale(s).

23. Moreover, with respect to any other party asserting a lien, claim or encumbrance against the Assets, the Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f) of the Bankruptcy Code. The Debtors have conducted a UCC lien search in the jurisdiction in which the Debtors are incorporated and, other than the Lender, no liens against the Assets were of record. Such lienholders that do not object to the Sale should be deemed to have consented. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285–86 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); *In re TE Holdcorp LLC*, Case No. 22-1807, 2023 WL 418059, at *3 (3d Cir. Jan. 26, 2023) ("We agree with the Seventh Circuit that 'lack of objection (provided of course there is notice) counts as consent' under 11 U.S.C. § 363) (citing *FutureSource LLC*, 312 F.3d at 285); *Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that creditor's failure to object to sale free and clear of liens, claims and encumbrances

satisfies section 363(f)(2)); *In re Elliot*, 94 B.R. at 345 (same).

24. A sale of the Assets other than one free and clear of all interests would yield substantially less value for the Debtors' estates. The Debtors submit that the Stalking Horse Bidder will not, and other bidders are unlikely to, consummate the Sale absent the ability to purchase the Assets free and clear of all interests. Accordingly, the Debtors request that the Assets be sold free and clear with such interests attaching to the proceeds of the Sale(s), subject to any rights and defenses of the Debtors and other parties in interest with respect thereto.

### III. The Sale(s) should be subject to the protections of section 363(m) of the Bankruptcy Code.

25. Section 363(m) of the Bankruptcy Code provides, in part, that the reversal or modification on appeal of an authorization of a sale pursuant to section 363(b) or section 363(c) of the Bankruptcy Code does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. See 11 U.S.C. § 363(m). In approving the Sale(s) free and clear of all interests and encumbrances, the Debtors request that the Court find and hold that all purchasers of Assets purchased in accordance with the Debtors' bidding procedures are entitled to the protections afforded by section 363(m) of the Bankruptcy Code. Such relief is appropriate in that selection of the Successful Bidder(s) will be the result of a competitive bidding process and arm's-length, good-faith negotiations, and parties in interest will have the opportunity to review and object to a proposed transaction. *See Esposito v. Title Ins. Co. of Pa (In re Fernwood Mkts)*, 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (good faith purchasers are protected under section 363(m) where notice is provided to lienholders).

## IV. The assumption and assignment of the Assigned Contracts in connection with the Sale(s) satisfies section 365 of the Bankruptcy Code.

26. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 COLLIER ON BANKRUPTCY ¶ 365.01[1] (15th ed. 1993)).

27. A debtor's decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. *See, e.g.*, *Grp of Inst'l Invrs. v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 318 U.S. 523 (1943) (applying Bankruptcy Act section 77(b), predecessor to section 365 of the Bankruptcy Code, and rejecting test of whether executory contract was burdensome in favor of whether rejection is within debtor's business judgment); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989) (describing deference to a debtor's business judgment as "breathing space afforded [to] the debtor to consider whether to reject or assume executory contracts under the [Bankruptcy] Code."); *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006) ("The propriety of a decision to reject an executory contract is governed by the business judgment standard").

28. The business judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a

13

presumption of reasonableness attaches to a debtor's management decisions."). Generally, courts defer to a debtor in possession's business judgment to assume or reject an executory contract or lease. *See Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (stating that the business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption or] rejection of the executory contract will benefit the estate."); *see also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Control Data Corp. v. Zelman (In re Minges)*, 602 F.2d 38, 42–43 (2d Cir. 1979); *In re Riodizio, Inc.*, 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997).

29. Here, the Debtors' decision to assume and assign certain designated executory contracts and unexpired leases in connection with the Sale(s) is a sound exercise of the Debtors' business judgment. These contracts are necessary to operate the Assets and, as such, they are essential to inducing the best offer for the Assets. It is unlikely that any purchaser would want to acquire the Assets unless a significant number of the executory contracts and unexpired leases needed to manage the Debtors' day-to-day operations were included in the transaction. To that end, the assumption and assignment of those Assigned Contracts that have been designated for assignment by the applicable Purchaser(s) is necessary for the Debtors to obtain the benefits of any Asset Purchase Agreement or Stalking Horse Agreement, as applicable.

30. In addition, under section 365(k) of the Bankruptcy Code, the assignment by a debtor to an entity of a contract or lease "relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment." 11 U.S.C. § 365(k). Thus, following an assignment to the Successful Bidder of any Assigned Contract, the Debtors will be relieved from any liability for any subsequent breach associated therewith.

31. Furthermore, section 365(b)(1) of the Bankruptcy Code requires that any

outstanding defaults under the Assigned Contracts must be cured or that adequate assurance be provided that such defaults will be promptly cured. 11 U.S.C. § 365(b)(1). In accordance with the Bidding Procedures Order, the Debtors have filed and served the Contract Notice on non-debtor contract counterparties of the Assigned Contracts. The Contract Notice indicates the proposed Cure Amount for each such contract. As such, each contract counterparty will have the opportunity to object to the proposed assumption and assignment to the Successful Bidder and to the proposed Cure Amount, if applicable, Moreover, the payment or reserve of the applicable Cure Amount, as provided for in the bidding procedures, will be a condition to the Debtors' assumption and assignment of any Assigned Contract.

32. Relatedly, section 365(f)(2) of the Bankruptcy Code provides that a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2). The words "adequate assurance of future performance" must be given a "practical, pragmatic construction" in light of the facts and circumstances of the proposed assumption. *See In re Fleming Cos., Inc.*, 499 F.3d 300, 307 (3d Cir. 2007) (internal citation omitted); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (same); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (finding that adequate assurance of future performance does not mean absolute assurance that debtor will thrive and profit); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

33. Specifically, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re*

*Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (holding that adequate assurance of future performance is given where the assignee of lease has financial resources and expressed a willingness to devote sufficient funding to the business to ensure its success, and that in the leasing context, the chief determinant of adequate assurance is whether rent will be paid).

34. Here, the Successful Bidder(s) will have provided adequate assurance of future performance with respect to any Assigned Contract. In order for its bid to be deemed a Qualifying Bid in accordance with the Debtors' bidding procedures, each Qualifying Bidder will be required to provide evidence supporting its ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, including the bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to such potential bidder. *See Bidding Procedures*, Section III(n) (D.I. 68-2). To the extent available, the adequate assurance information may also include: (i) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee; and (ii) financial statements, tax returns, annual reports or summaries thereof. Furthermore, given that the Debtors will submit evidence that all requirements for the assumption and assignment of such contracts at the Sale Hearing, the Court and other interested parties will have the opportunity to evaluate the ability of each Successful Bidder to provide adequate assurance of future performance.

35. Therefore, the Debtors respectfully submit that the Court approve the assumption and assignment of the Assigned Contracts, as applicable, and find that all anti-assignment provisions of such contracts are unenforceable under section 365(f) of the Bankruptcy Code.[4]

---

[4] Section 365(f)(1) provides that "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease . . ." 11 U.S.C. § 365(f)(1). Section 365(f)(3) further provides that "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that

**Waiver of Memorandum of Law**

36. Pursuant to Local Bankruptcy Rule 9013-2, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

**Waiver of Bankruptcy Rule 6004(h) and 6006(d)**

37. Pursuant to Bankruptcy Rule 6004(h), "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). Furthermore, Bankruptcy Rule 6006(d) provides that "[u]nless the court orders otherwise, an order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6006(d). As set forth throughout this Motion and the Bidding Procedures Motion, any delay in the Debtors' ability to consummate the Sale(s) would be detrimental to the Debtors, their creditors and estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h).

**Notice**

38. Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Committee; (iii) counsel to the Lender; (iv) the Office of the United States Attorney for the District of Maryland; (v) the offices of the attorneys general for the states in which the Debtors operate; (vi) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (vii) Bank of Montreal; (viii) all persons known by the Debtors to assert a lien on any of

---

terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3).

17

the Assets; (ix) all persons known or reasonably believed to have asserted an interest in any of the Assets; (x) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Assets within the one (1) year prior to the Petition Date; (xi) the office of the Secretary of State in each state in which the Debtors have operated; (xii) all environmental authorities having jurisdiction over any of the Assets; (xiii) the United States Attorney General; (xiv) the civil process clerk for the United States Attorney for the District of Maryland; and (xv) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors have already provided notice of the Sale to the Sale Notice Parties through the Sale Notice and will further publish the Sale Notice as set forth above in this Motion.  In light of the nature of the relief requested and the facts and circumstances of these chapter 11 cases, the Debtors submit the no other or further notice is necessary.

## Conclusion

WHEREFORE, the Debtors respectfully request the entry of one or more Sale Order(s), as applicable, granting the relief requested herein and such other and further relief as is just and proper.

Dated: February 21, 2025	**SAUL EWING LLP**

By:*/s/ Jordan D. Rosenfeld*
Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
Turner N. Falk (admitted *pro hac vice*)
1500 Market Street, 38th Floor

Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
adam.isenberg@saul.com
turner.falk@saul.com

-and-

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
paige.topper@saul.com
nicholas.smargiassi@saul.com

*Proposed Counsel for Debtors and Debtors in Possession*