IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re: | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO RETAIN AND EMPLOY BERKELEY RESEARCH GROUP, LLC, AS FINANCIAL ADVISOR EFFECTIVE AS OF JANUARY 31, 2025**

The Official Committee of Unsecured Creditors (the "Committee") of Diamond Comic Distributors, Inc., as debtors and debtors in possession (the "Debtors" or "Diamond"), submits this application (the "Application") for an order, substantially in the form filed herewith, pursuant to Sections 328 and 1103 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Appendix D to the Local Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Rules"), authorizing the employment of Berkeley Research Group, LLC ("BRG"), as financial advisor to the Committee. In support of this Application, the Committee submits the Declaration of David Galfus (the "Galfus Declaration") which is incorporated herein as **Exhibit A**. In further support of this Application, the Committee respectfully represents as follows:

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

6319369.1

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Maryland (the "Court") has jurisdiction in this matter pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from this Court.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are sections 328, and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Appendix D to the Local Rules.

**BACKGROUND**

4. On January 14, 2025, (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Cases") with the Court. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

5. These Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the Court's *Order Directing Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. 41], entered on January 16, 2025.

6. On January 29, 2025, (the "Formation Date"), the Office of the United States Trustee for the District of Maryland (the "U.S. Trustee") appointed the Committee. The Committee is presently comprised of the following members: (i) Little Buddy Toys, LLC; (ii) Titan Publishing Group Limited/Titan Comics; and (iii) Simon & Schuster, LLC.

7. On January 31, 2025, the Committee selected BRG to serve as its financial advisor. The Committee has also selected Lowenstein Sandler LLP ("Lowenstein") to serve as its counsel

and Tydings & Rosenberg LLP ("Tydings" and together with Lowenstein, "Counsel") to serve as its local counsel.

**REQUESTED RELIEF AND REASONS THEREFOR**

8. The Committee respectfully requests entry of an order pursuant to sections 328, 330, and 1103(a) of the Bankruptcy Code authorizing BRG to perform financial advisory services for the Committee that will be necessary during these Cases. The Committee requires the services of an experienced financial advisor such as BRG to provide financial advisory services that are critical to the success of these Cases and to enable the Committee to fulfill its fiduciary duties.

9. The Committee determined that the services of BRG are necessary to enable the Committee to assess and monitor the efforts of the Debtors and their professionals, to ensure that the Debtors are able to maximize the value of the Debtors' estates for the benefit of the unsecured creditors.

10. Immediately upon its selection, BRG commenced work on several time-sensitive matters and promptly devoted substantial resources to these Cases pending submission and approval of this Application. In order to allow BRG to be compensated for work performed prior to and after the submission of this Application, the Committee seeks to employ BRG as its financial advisor effective as of January 31, 2025.

  A. **Qualifications of Professionals**

11. BRG has significant qualifications and experience in providing the services contemplated herein. BRG's Corporate Finance practice consists of senior financial, management consulting, accounting, and other professionals who specialize in providing restructuring, transaction advisory, litigation support, solvency, and valuation assistance and providing a focus on viable solutions that maximize value for companies and creditors, typically in distressed

business settings. BRG has acted as financial advisor, crisis manager, and corporate officer in middle market to large multinational restructurings across a wide array of industries. Moreover, the professionals at BRG have assisted and advised debtors, creditors, creditors' committees, bondholders, investors, and others in numerous bankruptcy cases, including Vyaire Medical, Inc.; Tupperware Brands Corporation; SVB Financial Group; Meier's Wine Cellars Acquisition, LLC (a.k.a Vintage Wine Estates); H-Food Holdings, LLC; Ebix, Inc.; Kidde-Fenwal, Inc.; Bird Global, Inc.; Endo International, plc; CBC Restaurant Corp.; The Hertz Corporation; Genesis Care Pty Limited; The McClatchy Company; Gissing North America, LLC; Centric Brands Inc.; VitaminWorld, Inc.; First Guaranty Mortgage Corporation; Nine West Holdings, Inc.; Aluminum Shapes, L.L.C.; Peabody Energy Corporation; General Wireless Operations Inc. d/b/a Radioshack; Bouchard Transportation; and Verity Health System of California.[2]

12. The Committee chose BRG to act as its financial advisor in these Cases based in large part on the experience outlined above. The Committee believes that BRG's services are necessary to enable the Committee to assess and monitor the Debtors' restructuring and/or sale and wind down efforts in furtherance of the Committee's obligations to protect the interests of and maximize value for all unsecured creditors. Moreover, based on the experience of BRG's professionals in large, complex chapter 11 cases, the Committee believes that BRG is well-qualified to provide such services in a cost-effective, efficient, and timely manner.

B. **Services to be Provided**

13. BRG will provide such financial advisory services to the Committee as the Committee deems appropriate and necessary in order to advise the Committee during the course of these Cases. The services to be rendered by BRG, which services may be subject to

---

[2] The professionals were employed in certain of these engagements prior to joining BRG.

6319369.1

modification at the Committee's request, are necessary to enable the Committee to faithfully execute its statutory duties to unsecured creditors.

14. Subject to further order of this Court, and only on an as-needed basis as requested by the Committee and/or Counsel at the direction of the Committee, the Committee has requested that BRG render financial advisory services with respect to the following areas:

a) Analyze the Debtors' assets (tangible and intangible) and possible recoveries to creditor constituencies under various scenarios and develop strategies to maximize recoveries, including development of recovery models for use by the unsecured creditors;

b) Monitor liquidity and cash flows throughout these Cases and scrutinize cash disbursements and capital requirements on an on-going basis;

c) Develop and issue periodic monitoring reports to enable the Committee to evaluate effectively the Debtor's performance relative to projections, any 363 sale processes (and, if applicable, any subsequent wind-down activities), ability to realize or settle claims for avoidance actions, and any relevant operational issues, including liquidity and sales of equity or debt securities/capital raise on an ongoing basis;

d) Evaluate and participate in any 363 sale process to ensure the adequacy of such process and that it proceeds in the most efficient manner to maximize recoveries to the unsecured creditors;

e) Advise and assist the Committee with respect to any debtor-in-possession financing arrangements and/or the use of cash collateral including evaluation of asserted liens thereon;

f) Evaluate relief requested in cash management motion, including proper controls related to and financial transparency into intercompany and related party transactions including cross-border transactions and debtor to non-debtor transactions;

g) Analyze both historical and ongoing intercompany and/or related party transactions and/or material unusual transactions of the Debtors and non-debtor affiliates. Such analysis to include developing an oversight protocol with the Debtors' advisors to closely monitor such transactions to prevent value leakage;

h) Advise and assist the Committee in its analysis and monitoring of the historical, current and projected financial affairs of the Debtors, including schedules of assets and liabilities and statements of financial affairs;

i) Advise the Committee and Counsel in evaluating any court motions, applications, or other forms of relief, filed or to be filed by the Debtors, or any other parties in interest;

j) Advise and assist the Committee in its assessment of the Debtors' employee needs and related costs, including the appropriateness of any proposed employee retention plan or incentive plan, and providing expert testimony related thereto;

k) Analyze the Debtors' business plan and monitor the implementation of any strategic initiatives and prepare reports related thereto as needed;

l) Identify and develop strategies related to the Debtors' intellectual property;

m) Review and provide analysis of any bankruptcy plan and disclosure statement, including the assessment of projections to ensure any plan of reorganization is supported by credible business and operational plans, and if appropriate, the development of alternative bankruptcy plans proposed by the Committee to assess their achievability;

n) Prepare valuations of the Debtors' assets, including the value of equity of any consolidated and/or publicly traded subsidiary;

o) Assist Counsel in evaluating all purported lien claims by creditors, including the validity and enforcement of such claims;

p) Evaluate and advise on the Debtors' assumption and or rejection of executory contracts and or leases;

q) Work with the Debtors' tax advisors to ensure that any restructuring or sale transaction is structured in a tax efficient manner as well as assist with the Committee's review of any tax issues;

r) Monitor Debtor's claims management process, including analyzing proofs of claim;

s) Advise the Committee in connection with any potential claims and causes of action, including preference payments, fraudulent conveyances, and other potential causes of action that the Debtors' estate may hold against insiders and/or third parties;

  t) Participate in meetings, discussions, and negotiations with the Committee, the Debtors, and the other parties in interest and with their respective professionals and attend court hearings as may be required;

  u) Providing any expert reports and/or testimony as requested by the Committee and Counsel; and

  v) Perform other matters as may be requested by the Committee or Counsel from time to time, including: rendering expert testimony, issuing expert reports, and/or preparing litigation, valuation, and/or forensic analyses that have not yet been identified but as may be requested by the Committee and Counsel, consistent with the role of a financial advisor.

15. In addition to services related to these areas, BRG understands that it may be requested to participate, at the Committee's request and to the extent appropriate, in meetings and discussions with the Committee, the Debtors, and the other parties-in-interest and with their respective professionals.

  **C.** **No Duplication of Services**

16. The services to be provided by BRG will be at the request and direction of the Committee so as to avoid duplicative efforts among the Committee's professionals retained in these Cases.

17. BRG intends to communicate regularly with the Committee and its Counsel to ensure that the actual financial advisory services performed are appropriate based on the status of these Cases and needs of the Committee. BRG will coordinate all tasks with Counsel to achieve case efficiencies and avoid duplication of efforts. The Committee believes it is necessary to employ BRG as its financial advisor to render the foregoing professional services. In light of BRG's substantial experience and expertise and the complex nature of the Debtors' business and financial affairs, the Committee believes that BRG is well qualified to advise it in these Cases.

    **D.**    **Use of Contractors**

18. Notwithstanding anything in this Application to the contrary, BRG shall, to the extent that it uses the services of independent contractors or subcontractors (the "Contractors") in these Cases, (i) pass-through the cost of Contractors to the Debtors at the same rate that BRG pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflict checks and compensation procedures as required for BRG; and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

    **E.**    **Disinterestedness of Professionals**

19. To the best of the Committee's knowledge and based upon and subject to the disclosures made in the Galfus Declaration filed contemporaneously herewith, BRG (inclusive of its affiliates, subsidiaries and parent entities) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and the Committee is satisfied that (i) BRG represents no interest adverse to the Committee, the Debtors, their estates, or any other party in interest in the matters upon which it is to be engaged and that its employment is in the best interest of the estate; (ii) BRG together with its Managing Directors and Directors do not have any financial interest in or business with the Debtors; (iii) BRG has no connection with the U.S. Trustee or any other person employed in the office of the U.S. Trustee; and (iv) BRG has no connection with the bankruptcy judge approving the employment of BRG as the Committee's financial advisor. BRG has not provided, and will not provide, any professional services to the Debtors, any other creditors, other parties in interest, or their respective attorneys and accountants with regard to any matter related to this Case.

    **F.**    **Professional Compensation**

20. BRG advised the Committee that it intends to charge its standard hourly rates for

professional services rendered, plus reimbursement of actual and necessary expenses incurred by BRG. The professional fees shall be calculated by multiplying the hours worked by the standard hourly billing rates in effect for the specific personnel involved. The hourly rates charged by BRG for the services provided by its personnel differ based upon, among other things, each professional's level of experience, geographic differentials, and types of services being provided. In the ordinary course of business, BRG periodically revises its hourly rates to reflect promotions and other changes in personnel responsibilities, increases in experience, and increases in the cost of doing business.

21.    BRG has advised the Committee that its fees will be commensurate with the fees charged to its other clients and in other cases of this size (provided such clients are billed hourly). BRG has also advised the Committee that it intends to make application to the Court for allowance of its compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the 1996 *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Unser 11 U.S.C. 330* (the "UST Guidelines") and the terms of any order establishing procedures for interim compensation that may be entered in these Cases. BRG's compensation for services rendered on behalf of the Committee shall be fixed by the Court after due application.

22.    For professional services, fees are based on BRG's standard hourly rates. The proposed rates of compensation, subject to final Court approval, are the customary hourly rates in effect when services are performed by the professionals and paraprofessionals who provide services to the Committee. The current standard hourly rates for BRG personnel that will work on this engagement are as follows:

| Position | Hourly Rate[3] |
|---|---|
| Managing Directors | $1,140 - $1,395 |
| Associate Directors & Directors | $900 - $1,100 |
| Professional Staff | $445 - $885 |
| Support Staff | $185 - $395 |

23. These standard hourly rates are subject to periodic adjustment, which shall be noted on the invoices for the first time period in which the revised rates become effective. The standard hourly rates for the BRG experts anticipated to be assigned to this engagement are as follows: David Galfus ($1,395), Christopher Kearns ($1,395), and Jonathan Emerson ($1,000) (together with the assigned professional staff the "BRG Personnel"). BRG believes that its standard hourly rates are at or below those of firms it considers its peers.

24. Consistent with BRG's policy with respect to its other clients, BRG will charge for all other services provided and for other charges and disbursements incurred in rendering services to the Committee. These customary items include, among other things, travel and lodging expenses, business meals, costs of reproduction, research, communications, our legal counsel, any applicable sales or excise taxes and other direct expenses. Internal costs or overhead cost and document production services (including regular secretarial and word processing time) will not be charged for separately.

25. BRG will also request compensation for any time and expenses (including, without limitation, reasonable legal fees and expenses, except in the case of legal fees pertaining to any fee defense) that may be incurred in considering or responding to discovery requests or other requests

---

[3] The below ranges are for BRG professionals in the Corporate Finance practice group who may practice bankruptcy and non-bankruptcy related matters. They exclude BRG professionals in other industry practice groups who may also provide specialized services in these Cases. To the extent such other professionals provide services, they will charge their standard hourly rates as they would in non-bankruptcy matters and in no event do their standard hourly rates exceed the ranges set forth below for the Corporate Finance practice group.

6319369.1

10

for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings, including, without limitation, those other than the instant matter, as a result of BRG's performance of these services.

26. BRG acknowledges that neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to Counsel), shall be liable for the fees, expenses or other amounts payable to BRG.

27. Regardless of the time and manner of interim compensation, BRG understands that, subject to this Court's orders, BRG will be required to follow the procedures for final allowance of fees at the end of the Cases.

28. No promises have been received by BRG, nor any employee thereof, as to payment or compensation in connection with these Cases other than in accordance with the provisions of section 504 of the Bankruptcy Code. Except for internal agreements among the employees of BRG regarding the sharing of revenue or compensation, neither BRG nor any of its employees has entered into an agreement or understanding to share compensation with any other entity as described in Bankruptcy Code section 504 and Bankruptcy Rule 2016.

## **NO PRIOR REQUEST**

29. No prior application has been made in this or any other court.

30. The Committee submits that this Application does not present novel issues of law requiring the citation to any authority, other than the statutes and rules cited above and, accordingly, submits that no brief is necessary.

## WAIVER OF MEMORANDUM OF LAW

31. Pursuant to Local Bankruptcy Rule 9013-2, the Committee states that, in lieu of submitting a memorandum in support of this Application, the Committee will rely solely upon the grounds and authorities set forth herein.

WHEREFORE, the Committee respectfully requests that it be authorized to employ BRG as its financial advisor on the terms set forth herein, effective as of January 31, 2025, and that BRG be paid such compensation as may be allowed by this Court, and for such other further relief as is just and proper.

Dated: February 24, 2025

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF DIAMOND COMIC DISTRIBUTORS, INC.

By: Simon & Schuster, LLC

*/s/ Gregory Andonian*
Gregory Andonian of Simon & Schuster, LLC, solely in his capacity as the Chairperson of the Official Committee of Unsecured Creditors of Diamond Comic Distributors, Inc. and not in his personal capacity or any other capacity

**CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that on the 24th day of February, 2025, the foregoing was served via the Court's CM/ECF filing system on the parties set forth below and by first class mail, postage prepaid, on the parties set forth on the attached service list:

Hugh M. (UST) Bernstein     hugh.m.bernstein@usdoj.gov
Daniel Jack Blum     jack.blum@polsinelli.com, lsuprum@polsinelli.com;delawaredocketing@polsinelli.com
Thomas K. Bredar     thomas.bredar@wilmerhale.com, andrew.goldman@wilmerhale.com;benjamin.loveland@wilmerhale.com;yolande.thompson@wilmerhale.com
Andrew Brown     abrown@klestadt.com
David W.T. Daniels     ddaniels@perkinscoie.com, docketnyc@perkinscoie.com;nvargas@perkinscoie.com;KMcClure@perkinscoie.com
Turner Falk     turner.falk@saul.com, tnfalk@recap.email;Veronica.Marchiondo@saul.com
Ashley N Fellona     ashley.fellona@saul.com, janice.mast@saul.com
Gianfranco Finizio     gfinizio@lowenstein.com
Chelsea R Frankel     cfrankel@lowenstein.com
Zvi Guttman     zvi@zviguttman.com, zviguttman@gmail.com,zviguttman@outlook.com
Jeffrey C. Hampton     jeffrey.hampton@saul.com
Adam H Isenberg     adam.isenberg@saul.com
C. Kevin Kobbe     kevin.kobbe@us.dlapiper.com, docketing-baltimore-0421@ecf.pacerpro.com
Eric George Korphage     korphagee@whiteandwilliams.com
Mark Minuti     mark.minuti@saul.com, robyn.warren@saul.com
Bruce S. Nathan     bnathan@lowenstein.com
Michael Papandrea     mpapandrea@lowenstein.com
Jordan Rosenfeld     jordan.rosenfeld@saul.com
Dennis J. Shaffer     dshaffer@tydings.com, scalloway@tydings.com;mhickman@tydings.com;jlee@tydings.com
Indira Kavita Sharma     indira.sharma@troutman.com, katherine.culbertson@troutman.com;jonathan.young@troutman.com;david.ruediger@troutman.com;errol.chapman@troutman.com;toyja.kelley@troutman.com
Nicholas Smargiassi     nicholas.smargiassi@saul.com
Brent C. Strickland     bstrickland@wtplaw.com, mbaum@wtplaw.com;brent-strickland-3227@ecf.pacerpro.com
Paige Noelle Topper     paige.topper@saul.com
US Trustee - Baltimore     USTPRegion04.BA.ECF@USDOJ.GOV

       **TYDINGS & ROSENBERG LLP**
       */s/ Dennis J. Shaffer*
       Dennis J. Shaffer (MD Bar No. 25680)
       1 East Pratt Street, Suite 901
       Baltimore, MD 21202
       Telephone: (410) 752-9700
       Email: dshaffer@tydings.com
       *Proposed local counsel to the Official Committee of Unsecured Creditors*