IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re: | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors. | (Jointly Administered) |

**OBJECTION OF IMAGE COMICS, INC. (A) TO DEBTORS' PROPOSED ASSUMPTION AND ASSIGNMENT OF ITS CONTRACT AND (B) TO DEBTORS' PROPOSED CURE AMOUNT**

Image Comics, Inc. ("Image") files this objection (the "Objection") with respect to the *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [D.I. 160] (the "Notice")[1] filed by the above-captioned debtors and debtors in possession (the "Debtors"). In support of the Objection, Image respectfully states as follows:

**Introduction**

1. Image is a publisher and seller of comic books, graphic novels and related products such as posters, statues, and other merchandise (collectively, the "Products"). Image and Debtor Diamond Comic Distributors, Inc. ("Diamond") are parties to that certain *Agreement* entered into in April 2024 (the "Agreement"), a copy of which is attached hereto as **Exhibit A**. Pursuant to the Agreement, Image consigns a substantial inventory of Products to Diamond and Diamond acts as Image's "exclusive agent" to facilitate sale of those consigned Products to customers in distribution channels outside the United States, Canada and Mexico (the "International Channel").

2. By the Notice, the Debtors gave notice of their potential assumption and assignment of the Agreement to the Successful Bidder as part of the Sale of the Debtors assets pursuant to the

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Notice.

terms of the Bidding Procedures and the Bidding Procedures Order. The Notice lists a proposed cure amount of $25,666.87 regarding the Agreement (the "Proposed Cure Amount").

3. Image hereby objects to the potential assumption and assignment of the Agreement as set forth in the Notice for two reasons. *First*, the Agreement cannot be assumed and assigned by the Debtor at all under 11 U.S.C. § 365(c)(1) because the Agreement establishes an agency relationship between Diamond and Image, and applicable non-bankruptcy law prohibits an agent or other fiduciary from assigning the contract that creates that relationship without the consent of the principal. *Second*, the Proposed Cure Amount is incorrect. Image is owed at *least* $69,224.63 from Diamond (net of certain amounts owed by Image to Diamond under the Agreement). Indeed, Image is likely owed more than that, but Image cannot determine the precise amount currently owed because Diamond has not sent Image the required reporting of sales of the consigned Products (which is used to calculate how much is due to Image under the Agreement) that have occurred after November of 2024.

4. Accordingly, Image respectfully requests this Court enter an order denying the Debtors' assumption and assignment of the Agreement to a Successful Bidder. In the alternative, if assumption and assignment of the Agreement is approved, Image requests that the Debtors be required to pay the correct cure amount that is determined after Diamond provides the missing required reporting of Diamond sales of the consigned Products, which total cure amount is significantly in excess of the Proposed Cure Amount.

## Background

5. Image is engaged in publishing and selling the Products, which consist of comic books, graphic novels and related products such as posters, statues, and other merchandise. Image utilizes different agents to distribute and sell its Products in different distribution channels (which

channels are differentiated by the nature of the customers and the territory in which those customers are located).

6. Prior to the Petition Date, Diamond and Image entered into the Agreement pursuant to which "Diamond [was] *appointed* Image's exclusive *agent* to perform the services of selling, billing, warehousing, shipping, collecting, returns handling, and other customary customer services for distribution of Image's Products" in the International Channel. *See* Exhibit A at § 1.1(a) (emphasis added).

7. To enable Diamond to execute its duties as Image's exclusive agent in the International Channel, Image consigns a substantial inventory of its Products to Diamond, which are held by Diamond. *See Id.* at 4th 'whereas' clause and §§ 6(d) and 6(i) (all referencing that the Products are consigned to Diamond). Image retains title to the consigned Products held by Diamond until title transfers to a customer (referred to in the Agreement as an "Account") pursuant to a consignment sale to the customer facilitated by Diamond. *Id.* at § 6(a).

8. As Image's agent, Diamond markets and distributes the consigned Products for sale to customers on Image's behalf. *Id.* at § 1.2. Diamond has significant discretion in how it exercises its agency authority to bind Image in transactions with customers. For example, Diamond: "make[s] all required credit decisions" with respect to the customers to whom the consigned Products are sold, including "whether to extend credit" and "the extent of the credit to be granted"; can "sue any delinquent Account to seek recovery of amounts owed"; and can "enter into any settlement with such delinquent Account in [Diamond's] reasonable discretion." *Id.* at § 5(a). And Image bears the majority of the bad debt risk associated with non-payment by customers that Diamond, as Image's agent, determined the consigned Products would be sold to on credit. *Id.* at § 5(b).

9. Given the broad agency authority granted under the Agreement, Image specifically selected Diamond as it's agent because of Diamond's experience, knowledge, and skill in the industry. Thus, as one would expect, the Agreement gives Image the right to terminate the Agreement following a "Change in Control," defined, in pertinence, as "a sale of all or substantially all of the assets of Diamond, unless Diamond's shareholders of record, as constituted immediately prior to such combination or sale, will, immediately after such combination or sale (by virtue of securities issued as consideration for Diamond's acquisition or sale or otherwise) hold at least 50% of the voting power of the surviving or acquiring entity." *Id.* at § 2.2(b).

10. The amounts to be remitted to Image on account of sales of the consigned Products facilitated by Diamond are calculated based on sales reporting that Diamond is required to provide to Image and, without such reporting, Image cannot determine what is due from Diamond. *See Id.* at § 1.4 (setting out calculation of payment and fees), *esp.* § 1.4(a) (establishing the reporting requirement).[2]

11. Diamond currently owes Image outstanding remittances of $135,283.31 for previously reported sales of consigned Products in the International Channel through November of 2024. Diamond has not delivered the required sales reporting to Image for sales that occurred after November of 2024, and it is Image's understanding and belief that additional remittances (in a currently unknown amount) are due to Image on account of those unreported sales. Furthermore, Image acknowledges that Image owes Diamond $66,058.68 in fees payable to Diamond under the Agreement, which will function as an offset or recoupment against the amount owed to Image by

---

[2] The Agreement also permits Diamond to utilize Products consigned to Diamond by Image to facilitate sales to non-exclusive US customers with whom Diamond has relationships, rather than having to order the same Products from Image's exclusive US distributor, Lunar Distribution, in which case the Agreement requires Diamond to remit payment for such Products to Lunar, rather than Image. *See* Exhibit A at § 1.4(h). Diamond has not reported any of such sales to Image, however, so Image cannot determine how much should have been remitted to Lunar by Diamond.

Diamond. But even after taking that offset into consideration, Diamond owes a net amount of at least $69,224.63 to Image on account of already reported sales of consigned Products through November 2024, as well as any amounts owed on sales after November of 2024 that have not yet been reported.[3]

12. On March 21, 2025, Image and the Debtors filed the *Stipulation to Extend Objection Deadline* [D.I. 250], which extended the deadline for Image to file this objection to March 26, 2025 at 12:00 p.m. (Prevailing Eastern Time).

## **Objection**

**A.     The Agreement Cannot Be Assumed and Assigned under Applicable Law.**

13. The Agreement cannot be assumed by Diamond and assigned to the Successful Bidder because the Agreement creates an agency relationship under which Diamond serves as Image's agent, which cannot be assigned under applicable state law.

14. Section 365(c) provides that unless the counterparty to an executory contract consents, the contract cannot be assumed and assigned if "applicable law excuses a party, other than the debtor, to such contract…from accepting performance from or rendering performance to an entity other than the debtor or debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties[.]" 11 U.S.C. § 365(c)(1). "[T]he term 'applicable law' [as used in 11 U.S.C. § 365(c)(1)] means 'applicable non-bankruptcy law.'" *In re Sunterra Corp.*, 361 F.3d 257, 261 n.5 (4th Cir. 2004) (citing *In re Pioneer Ford Sales, Inc.*, 729 F.2d 27, 28 (1st Cir.1984)).

---

[3] Because Diamond holds and sells the Products on consignment (a form of trust relationship), Image does not hereby concede that Diamond's obligations to remit funds under the Agreement constitute a "claim" within the meaning of the Bankruptcy Code and Image reserves all rights with regard to the characterization of the amounts owed beyond the fact that such amounts would have to be remitted to Image as the required cure if Diamond is permitted to assume the Agreement.

5

15.     The Agreement is governed by Maryland law.  *See* Exhibit A at § 13.  Under Maryland law, agreements that contain personal obligations are not assignable. *See Macke Co. v. Pizza of Gaithersburg, Inc.*, 259 Md. 479, 482 (1970) (stating that "duties under a contract to provide personal services may never be delegated, nor rights be assigned under a contract where delectus personae was an ingredient of the bargain"); *Tarr v. Veasey*, 125 Md. 199, 206 (1915) ("The contract clearly involved an element of personal trust and confidence, and the unvarying rule is that, in the absence of the mutual assent of the immediate parties, such an agreement is not subject to assignment.").  Maryland law (like that of many states) holds that unassignable contracts involving personal obligations include those under which one party is specifically relying on the knowledge, expertise, and skill of the other party. *See, e.g., Crane Ice Cream Co. v. Terminal Freezing & Heating Co.*, 128 A. 280, 282 (Md. 1925).

16.     As explained in further detail above (*see* supra ¶¶ 6-8), the Agreement is a clear example of a contract that cannot be assigned by Diamond under Maryland law because it involves personal obligations of Diamond.  The Agreement "appoints" Diamond as Image's "exclusive agent" (a form of fiduciary relationship) to hold Products on consignment (itself a form of trust relationship) and facilitate sales of those consigned Products to customers in the International Channel.  Diamond has wide discretion as agent to market the Products, select the customers to whom they are sold, decide the credit limit (if any) those customers should be given, and collect amounts due from those customers (and sue or settle with them if necessary).  Image is bound by these actions of Diamond as its agent and thereby exposed to credit risks associated with customers that Image selects (and determines that Products should be sold to on credit).

17.     Image selected Diamond as its agent based on Diamond's decades of knowledge, expertise, and skill in this specific market, its reputation, and Image's long-standing relationship

with Diamond. Indeed, that the specific identity of Diamond was vital to the bargain is evidenced by the fact that the Agreement permits Image to terminate the Agreement upon a change of control of Diamond. Therefore, Maryland law does not require Image to accept substitute performance from a stranger to the contract that Image never selected for this important role as its agent. And, thus, Diamond cannot assume and assign the Agreement under Section 365.

18. The situation here is the same as that in *In re Cicirello*, No. 11-32676, 2018 WL 4008349 (Bankr. E.D. Wis. Aug. 16, 2018). Under the contract at issue in that case, the debtor served as an insurance agent for the counterparty, selling and servicing insurance policies, and the contract required the debtor as the counterparty's fiduciary to, among other things, collect premiums, maintain a good reputation, and advance the counterparty's interests. *Id.* at *3. The court held that "the Agreement thus indisputably requires a person with special characteristics, skills, and business judgment to perform the duties it requires of [the debtor]. Consequently, Wisconsin law would not require [the counterparty] to accept performance from someone other than [the debtor], and, as a result, the trustee cannot assume the Agreement." *Id.*

19. Similarly, in *EBC I, Inc. v. Am. Online, Inc. (In re EBC I, Inc.)*, even though the relationship created by the contract in question was not fiduciary in nature (as is the case with an agency relationship), the court rejected the debtor's attempt to assume under Section 365 an agreement to provide online marketing and advertising services, explaining that applicable state law would excuse the counterparty from accepting performance from a party other than the debtor because the party's "business relationship" under the contract "was founded on [the counterparty's] trust and confidence in [the debtor's] unique attributes, as well as its experience, all of which were relevant to [the debtor's] ability to serve the [counterparty's] Members" as required by the contact. 380 B.R. 348, 363-64 (Bankr. D. Del. 2008), *aff'd*, 400 B.R. 13.

7

20. As explained above, it is readily apparent from the Agreement that Image selected Diamond to serve as its exclusive agent in the International Channel on the basis of Diamond's unique skill, experience, reputation, and other attributes, and that Image did not intend or expect to accept performance of that role from any party other than Diamond itself. As such, under the applicable governing law of Maryland, and just as in *Cicirello* and in *EBC I*, the Agreement could not be assigned by Diamond under state law and so Diamond should not be permitted to assume and assign it to a Successful Bidder under Section 365 either.

**B. If Diamond Is Permitted to Assume and Assign the Agreement, All Outstanding Amounts Due and Owing to Image under the Agreement Must Be Paid as Cure.**

21. In the alternative, if the Court finds that the Agreement may be assumed by Diamond and assigned to the Successful Bidder, then the Debtors must pay all outstanding amounts due and owing to Image under the Agreement, which is far more than the Proposed Cure Amount.

22. Section 365(b)(1) provides that if there has been a default by the debtor under an executory contract, then the debtor cannot assume the contact unless it first "cures…such default." Here, Diamond is in default under the Agreement because amounts due and owing to Image remain unpaid. As discussed above (*see* supra ¶ 11), Diamond currently owes at <u>least</u> $69,224.63 to Image on accounts of reported sales of consigned Products through November 2024 (*after* netting $66,058.68 of fees owed by Image to Diamond). And Diamond likely owes Image additional amounts for sales that occurred after November 2024, but Image cannot determine how much until Diamond provides Image the sales reporting required under the Agreement.

23. Thus, if the Court determines that Diamond can assume the Agreement and assign it to the Successful Bidder, then Image requests that the Court: (a) direct Diamond to promptly provide Image with the required reporting of sales after November 2024 so that Image can determine how much Diamond owes Image for such sales; and (b) order that Diamond pay to

8

Image as the cure associated with the assumption of the Agreement all amounts due and owing to Image under the Agreement (after netting the $66,058.68 of fees Image acknowledges it owes to Diamond under the Agreement) for all sales of consigned Products to date, including sales after November 2024.

## Conclusion

24. For the reasons set forth above, the Court should deny Diamond's attempt to assume the Agreement and assign it to the Successful Bidder under 11 U.S.C. § 365. However, if such assumption and assignment is approved, then the Court should require Diamond to first cure its defaults under the Agreement by paying all amounts currently due and owing to Image, which amount greatly exceeds the Proposed Cure Amount listed in the Notice.

Dated: March 26, 2025

Respectfully submitted,

/s/ Elizabeth A. Scully
Elizabeth A. Scully (Md. Bar No. 27402)
Baker & Hostetler LLP
Washington Square, Suite 100
1050 Connecticut Avenue, NW
Washington, D.C. 20036-5304
Telephone: 202.861.1500
escully@bakerlaw.com

-and-

Adam L. Fletcher (admitted *pro hac vice*)
Scott E. Prince (admitted *pro hac vice*)
Baker & Hostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: 216.621.0200
afletcher@bakerlaw.com
sprince@bakerlaw.com

*Counsel for Image Comics, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 26, 2025, the foregoing objection was served on the following via the Court's CM/ECF filing system:

- **Jan Berlage**   JBerlage@GHSLLP.com, tcollins@ghsllp.com
- **Hugh M. (UST) Bernstein**   hugh.m.bernstein@usdoj.gov
- **Daniel Jack Blum**   jack.blum@polsinelli.com, lsuprum@polsinelli.com; delawaredocketing@polsinelli.com
- **Laura Skowronski Bouyea**   lsbouyea@venable.com, dmdierdorff@venable.com
- **Thomas K. Bredar**   thomas.bredar@wilmerhale.com, andrew.goldman@wilmerhale.com; benjamin.loveland@wilmerhale.com; yolande.thompson@wilmerhale.com
- **Andrew Brown**   abrown@klestadt.com
- **Richard L. Costella**   rcostella@tydings.com, scalloway@tydings.com
- **David W.T. Daniels**   ddaniels@perkinscoie.com, docketnyc@perkinscoie.com; nvargas@perkinscoie.com; KMcClure@perkinscoie.com
- **Turner Falk**   turner.falk@saul.com, tnfalk@recap.email; Veronica.Marchiondo@saul.com
- **Justin Philip Fasano**   jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com; tmackey@mhlawyers.com; leaphart@mhlawyers.com; cmartin@mhlawyers.com; Fasano.JustinR92003@notify.bestcase.com
- **Ashley N Fellona**   ashley.fellona@saul.com, janice.mast@saul.com
- **Gianfranco Finizio**   gfinizio@lowenstein.com
- **Chelsea R Frankel**   cfrankel@lowenstein.com
- **Stephen B. Gerald**   sgerald@tydings.com
- **Christopher J. Giaimo**   christopher.giaimo@squirepb.com, christopher.giaimo@squirepb.com; christopher-j-giaimo-6409@ecf.pacerpro.com
- **Zvi Guttman**   zvi@zviguttman.com, zviguttman@gmail.com, zviguttman@outlook.com
- **Jeffrey C. Hampton**   jeffrey.hampton@saul.com
- **Adam H Isenberg**   adam.isenberg@saul.com
- **Toyja E. Kelley**   toyja.kelley@lockelord.com
- **C. Kevin Kobbe**   kevin.kobbe@us.dlapiper.com, docketing-baltimore-0421@ecf.pacerpro.com
- **Eric George Korphage**   korphagee@whiteandwilliams.com
- **Jung Yong Lee**   jlee@tydings.com, mhickman@tydings.com
- **Gary H. Leibowitz**   gleibowitz@coleschotz.com, pratkowiak@coleschotz.com; bankruptcy@coleschotz.com; lmorton@coleschotz.com
- **Mark Minuti**   mark.minuti@saul.com, robyn.warren@saul.com
- **Bruce S. Nathan**   bnathan@lowenstein.com
- **Michael Papandrea**   mpapandrea@lowenstein.com
- **Steven Gregory Polard**   steven.polard@ropers.com
- **Jordan Rosenfeld**   jordan.rosenfeld@saul.com
- **Nikolaus F. Schandlbauer**   nick.schandlbauer@arlaw.com, lianna.sarasola@arlaw.com
- **Elizabeth Anne Scully**   escully@bakerlaw.com
- **Dennis J. Shaffer**   dshaffer@tydings.com, scalloway@tydings.com; mhickman@tydings.com; jlee@tydings.com
- **Indira Kavita Sharma**   indira.sharma@troutman.com, katherine.culbertson@troutman.com; jonathan.young@troutman.com; david.ruediger@troutman.com; errol.chapman@troutman.com; toyja.kelley@troutman.com
- **Nicholas Smargiassi**   nicholas.smargiassi@saul.com

- **Brent C. Strickland**   bstrickland@wtplaw.com, mbaum@wtplaw.com; brent-strickland-3227@ecf.pacerpro.com
- **Paige Noelle Topper**   paige.topper@saul.com
- **US Trustee - Baltimore**   USTPRegion04.BA.ECF@USDOJ.GOV

Via regular, U.S. Mail:

Saul Ewing LLP
Attn: Jeffrey C. Hampton and Adam H. Isenberg
1500 Market Street, 38th Floor
Philadelphia, PA  19102

Saul Ewing LLP
Attn: Paige N. Topper
1201 N. Market Street, Suite 2300
Wilmington, DE  19801

Troutman Pepper Locke LLP
Attn: Jonathan W. Young and David Ruediger
111 Huntington Avenue, 9th Floor
Boston, MA  02199

Office of the United States Trustee
Attn: Gerard R. Vetter
101 West Lombard Street, Suite 2625
Baltimore, MD 21201

Lowenstein Sandler LLP
Attn: Bruce Nathan and Gianfranco Finizio
1251 Avenue of the Americas
New York, NY  10020

Tydings & Rosenberg LLP
Attn: Stephen B. Gerald and Dennis J Shaffer
One E. Pratt Street, Suite 901
Baltimore, MD  21202

Whiteford, Taylor & Preston LLP
Attn: Brent C. Strickland
8830 Stanford Boulevard, Suite 400
Columbia, MD 21045

*/s/ Elizabeth A. Scully*
Elizabeth A. Scully