**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>Related to D.I. 168 |

**DECLARATION OF ALEC HAESLER IN SUPPORT OF DEBTORS'
MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) APPROVING THE
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, I, Alec Haesler, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Director at Raymond James & Associates, Inc. ("Raymond James"), which has its principal office at 880 Carillon Parkway, St. Petersburg, Florida 33716. I am authorized to submit this Declaration in support of *Debtors' Motion for Entry of an Order (I) Approving the Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances; (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (D.I. 168) (the "Sale Motion").[2] Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein or

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] Unless otherwise indicated, capitalized terms not otherwise defined herein shall have the meaning set forth in the Sale Motion.

55347780.3

provide this declaration based upon information provided to me by other Raymond James professionals.

2. Raymond James is a subsidiary of Raymond James Financial, Inc. ("RJF"), a publicly traded (NYSE:RJF) full-service global investment banking firm offering investment banking, equity research, wealth management, institutional and private brokerage, and other service offerings to individual and institutional clients. RJF and its subsidiaries employ over 17,000 individuals in the United States alone, of which over 515 provide investment banking advisory services to firm clients. Since 2019, Raymond James has participated in 860 capital raises and completed more than 1,115 advisory assignments, including over 925 M&A buy-side or sell-side advisory assignments.

3. Raymond James has a dedicated restructuring investment banking group of more than 20 professionals with extensive experience advising companies, creditors' committees, and other constituents in complex situations involving underperforming or unsuitably capitalized businesses facing difficult financing conditions, liquidity crises, out-of-court restructurings, or bankruptcy proceedings. Investment bankers at Raymond James have advised on, or been involved with, numerous restructuring-related or distressed transactions, both out-of-court and in chapter 11 cases, including, without limitation, sale, restructuring, reorganization, financing, financial opinion, and special advisory transactions.

4. Raymond James's professionals have considerable expertise and experience in providing investment banking services to financially distressed companies and to creditors, purchasers, bondholders, and other constituencies in chapter 11 as well as in out of court proceedings. Representative engagements that investment bankers at Raymond James have led in prior chapter 11 cases and restructurings include: *American Eagle Energy Corporation*, Case No.

15-15073 (KHT) (Bankr. D. Colo.); *American IronHorse Motorcycles*, Inc. Case No. 08- 40926 (RFN) (Bankr. N.D. Tex.); *ATLS Acquisition, LLC*, Case No. 13-10262 (LSS) (Bankr. D. Del.); *BI-LO, LLC*, Case No. 09-02140 (HB) (Bankr. D.S.C.); *BJ Services, LLC*, Case No. 20-33627 (MI) (Bankr. S.D. Tex.); *Bluestem Brands, Inc.*, Case No. 20-10566 (MFW) (Bankr. D. Del.); *Buccaneer Energy,* Case No. 14-60041 (CML) (Bankr. S.D. Tex.); *Calpine Corporation*, Case No. 05-60200 (CGM) (Bankr. S.D.N.Y.); *CB Holding Corp.*, Case No. 10-13683 (MFW) (Bankr. D. Del.); *CCNG Energy Partners, LP*, Case No. 15-70136 (TMD) (Bankr. W.D. Tex.); *Clarus Therapeutics Holdings, Inc.*, Case No. 22-10845 (MFW) (Bankr. D. Del.); *Color Spot Holdings, Inc.*, Case No. 18-11272 (LSS) (Bankr. D. Del.); *Dakota Plains Holdings, Inc.*, Case No. 16-43711 (MER) (Bankr. D. Minn.); *Diamond Glass Companies, Inc.*, Case No. 08-10601 (CSS) (Bankr. D. Del.); *Gateway Ethanol, L.L.C.*, Case No. 08-22579 (DLS) (Bankr. D. Kan.); *GIORDANO'S LLC*, Case No. 11-06146 (ERW) (Bankr. N.D. Ill.); *Gulf Fleet Holdings, Inc.*, Case No. 10-50713 (JWK) (Bankr. W.D. La.); *Halt Medical, Inc.*, Case No. 17-10810 (LSS) (Bankr. D. Del.); *Hipcricket, Inc.*, Case No. 15-10104 (LSS) (Bankr. D. Del.); *HMX Acquisition Corp.*, Case No. 12-14300 (MEW) (Bankr. S.D.N.Y.); *Hooper Holmes, Inc.*, Case No. 18-23302 (RDD) (Bankr. S.D.N.Y.); *International Garden Products, Inc.*, Case No. 10- 13207 (KJC) (Bankr. D. Del.); *Just One More Restaurant Corp.*, Case No. 19-01947 (FMD) (Bankr. M.D. Fla.); *KeyLime Cove Waterpark, Inc.*, Case No. 09-14418 (KJC) (Bankr. D. Del.); *Loehmann's, Inc.*, Case No. 99-01138 (JHW) (Bankr. D. Del.); *LVI Intermediate Holdings, Inc.*, Case No. 20-11413 (KBO) (Bankr. D. Del.); *Max & Erma's, Inc.*, Case No. 09-27807 (JAD) (Bankr. W.D. Pa.); *National Envelope Corporation*, Case No. 10-11891 (BLS) (Bankr. D. Del.); *Novan, Inc.*, Case No. 23-10937 (LSS) (Bankr. D. Del.); *Personal Communication Devices, LLC*, Case No. 13-74303 (AST) (Bankr. E.D.N.Y.); *Phoenix Payment Systems, Inc.*, Case No. 14-11848 (MFW) (Bankr. D. Del.); *Proteus Digital Health, Inc.*,

3

Case No. 20-11580 (BLS) (Bankr. D. Del.); *Quanergy Systems, Inc.*, Case No. 22-11305 (CTG) (Bankr. D. Del.); *Renew Energy, LLC*, Case No. 09-10491 (RDM) (Bankr. W.D. Wis.); *Response Genetics, Inc.*, Case No. 15-11663 (LSS) (Bankr. D. Del.); *Robbins Bros. Corporation*, Case No. 09-10708 (PJW) (Bankr. D. Del.); *Santa Fe Gold Corporation*, Case No. 15-11761 (MFW) (Bankr. D. Del.); *SynCardia Systems, Inc.*, Case No. 16-11599 (MFW) (Bankr. D. Del.); *SP Newsprint Holding LLC,* Case No. 11-13649 (CSS) (Bankr. D. Del.); *Teligent, Inc.*, Case No. 21-11332 (BLS) (Bankr. D. Del.).

     5.     I have more than 13 years of restructuring and financial advisory experience. Prior to joining Raymond James, I spent nearly a decade at two middle market restructuring advisory firms. My role included advising on a range of special situations investment banking, restructuring advisory, and operational performance improvement initiatives. During my career, I have advised various stakeholders to nearly 50 companies. Many companies were experiencing some form of financial distress at the time of my engagement.

     6.     On September 30, 2024, the above-captioned debtors and debtors-in-possession (the "Debtors") engaged Raymond James as investment banker to, among other things, assist the Debtors in pursuing strategic alternatives in the midst of an increasingly difficult liquidity situation, including to construct and commence a marketing process for the Debtors' assets.

     7.     The Raymond James team assigned to this matter include me and Geoffrey Richards, Senior Managing Director and Head of Raymond James' Capital Structure Advisory Group. The Raymond James team spent the early stages of the assignment gathering information from the Debtors' management and learning about the Debtors' assets and business.

8. The Raymond James team then developed marketing materials, including a seven (7) page non-confidential investment overview and sixty-one (61) page confidential information memorandum (collectively, the "Investment Materials").

9. Working with the Debtors' management, Raymond James populated a virtual data room ("VDR") for purposes of providing potential bidders with an opportunity to undertake due diligence.

10. Prior to the Petition Date, the Raymond James team devised a marketing process and solicited interest from potential financial and strategic investors for bids for all or substantially all the Debtors' assets on a going concern basis. Beginning on or about October 7, 2024, Raymond James contacted over 110 prospective acquirers, of which more than 30 executed non-disclosure agreements to access the VDR and review the Investment Materials.

11. Multiple parties submitted indications of interest in the Debtors' assets. After negotiating with these parties, including extensive, arm's-length negotiations regarding various asset purchase agreements, the Debtors decided to proceed with Universal Distribution LLC ("Universal"), to serve as a stalking horse bidder for the Alliance Assets.

12. The Debtors signed the Stalking Horse Agreement with Universal on January 13, 2025 and filed for bankruptcy the next day.

13. Promptly after the Petition Date, Raymond James restimulated the market and solicited interest in substantially all of the Debtors' assets.

14. On January 21, 2025, the Debtors filed the *Debtors' Motion for an Order (I) Authorizing and Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling an Auction and a Sale Hearing, (IV) Approving the Form and Manner of Notice Thereof, and (V) Establishing Notice and*

*Procedures for the Assumption and Assignment of Certain Executory Contracts and Leases* (D.I. 68) (the "Bidding Procedures Motion").

15. On February 11, 2025, the Court entered an order granting the Bidding Procedures Motion (D.I. 136) (the "Bidding Procedures Order"). Among other things, the Bidding Procedures Order established the following key deadlines in connection with the sale process:

| Deadline | Date |
|---|---|
| Contract Objection Deadline | March 12, 2025 |
| Sale Objection Deadline | March 14, 2025 |
| Bid Deadline | March 19, 2025, at 5:00 p.m. (ET) |
| Auction | March 24, 2025, commencing at 10:00 a.m. (ET) |
| Sale Hearing | March 27, 2025, at 10:00 a.m. (ET) |

16. After the Petition Date, Raymond James contacted 140 parties, 62 of which were previously contacted pre-petition and 78 of which were new post-petition outreaches. Approximately 54 of the 78 new parties contacted after the Petition Date stemmed from inbound expressions of interest. Subsequent to the Petition Date, 38 parties signed NDAs and performed different levels of due diligence.

17. Both before and after the Petition Date, I and the other members of the Raymond James team conducted a full and complete marketing process for the Debtors' assets.

18. As noted above, the deadline for submitting bids for the Debtors' assets was March 19, 2025. A total of nine bids were received by the deadline.

19. Following receipt of the bids, I and the other members of the Raymond James team consulted with the Debtors, the Debtors' professionals and counsel to the Official Committee of

Unsecured Creditors (the "Committee") and JP Morgan Chase Bank, N.A. ("JPMC," and, together with the Committee, the "Consultation Parties") to analyze the bids.

20. All of the bids received by the deadline required changes and/or clarifications before the bids were deemed "Qualified" within the meaning of the Bidding Procedures Order.

21. Consistent with the Bidding Procedures Order, on March 21, 2025, Raymond James informed the parties who submitted bids that, subject to changes and/or clarifications, seven bids, including two distinct bids from one bidder for different groups of assets, would be deemed "Qualified." Further, on March 21, 2025, Raymond James informed the bidders of which bids, once Qualified, would serve as the baseline bid for specific assets.

22. Ultimately, and following discussions with several of the bidders and consultation with the Consultation Parties, on March 23, 2025, Raymond James informed the bidders that seven bids were deemed Qualified and also informed each Qualified Bidder which Qualified Bids would serve as the baseline bid for specific assets.

23. Not all Qualified Bidders bid on the same assets. So, the Debtors, in consultation with the Consultation Parties, segregated the Debtors' assets into the following "Lots":

      Lot A: Substantial all assets of the Debtors' Collectible Grading Authority division ("CGA").

      Lot B: Substantially all assets of the following divisions (i) Diamond Comic Distributors ("DCD"); (ii) CGA; and (iii) Diamond Select Toys & Collectibles, LLC ("DST").

      Lot C: Substantially all assets of the Debtors' Alliance Game Distributors division ("AGD").

      Lot D: Substantially all assets of AGD, DCD, DST and CGA

24. Consistent with the Bidding Procedures and the Bidding Procedures Order, the Debtors convened the Auction on March 24, 2025 at 10:00 a.m. at the offices of Raymond James & Associates, Inc., 320 Park Avenue, 12th Floor, New York, New York 10022.

25. I, along with my Raymond James colleague Geoffrey Richards, ran the Auction.

26. Working with my Raymond James team, the Debtors' co-Chief Restructuring Officers and the Debtors' professionals, we spent most of the morning of March 24, 2025 speaking with qualified bidders, clarifying bids and facilitating a combined bid for substantially all of the Debtors' assets in Lot D from two separate bidders who bid on different Lots of assets. Our efforts to facilitate an additional bid for the Lot D assets was successful, and we started the Auction with three Qualified Bids, including the combined bid of a Lot C bidder and a Lot B bidder, for the Lot D assets.

27. The bidding at the Auction started at approximately 7 p.m. on March 24, 2025 and concluded shortly after 12 a.m. on March 25, 2025. There were frequent breaks during the Auction.

28. Throughout the Auction, the Debtors consulted with counsel to the Consultation Parties.

29. Following eight rounds of bidding on the Lot D assets, Alliance Entertainment LLC ("Alliance Entertainment") was determined to be the highest and best bidder for the assets in Lot D with a gross bid of $72,245,000, equivalent to $70,880,000 net of Bid Protections due to the Stalking Horse Bidder. Universal Distribution, LLC and Ad Populum LLC (collectively, "Universal/AP") was declared the Back-Up Bidder for the Lot D assets with a gross bid of $69,130,000. As the Back-Up Bidder included the Stalking Horse Bidder, no Bid Protections would be due on the bid, and the gross and net value of the bid were both $69,130,000.

30. Following the conclusion of the auction for the Lot D assets, we then solicited bids for the assets in Lot A, then Lot B and then Lot C, but there was no competitive bidding for the assets in Lots B or C.

31.     There was further bidding from two bidders for the CGA assets alone in Lot A. Following four rounds of bidding, the highest and best bid for the Lot A assets alone was for total consideration of $1,625,000.

32.     Because the bids received before and during the Auction for the assets in Lots A, B and C, when added together, were significantly less than the bids received from Alliance Entertainment and Universal/AP for the Lot D assets, the Debtors, after consulting with the Consultation Parties, declared Alliance Entertainment as the winning bidder for the Debtors' assets and designated Universal/AP as the backup bidders under the Bidding Procedures Order.

33.     The Auction concluded at approximately 12:10 a.m. on March 25, 2025.

34.     I respectfully encourage the Court to approve the Sale Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  April 1, 2025                                By: */s/Alec Haesler*
                                                     Alec Haesler, Director
                                                     Raymond James & Associates, Inc.