**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>Related to D.I. 168 |

**DECLARATION OF ROBERT GORIN IN SUPPORT OF DEBTORS'
MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) APPROVING THE
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

I, Robert Gorin, hereby declare as follows:

1. I am the co-Chief Restructuring Officer ("CRO") of the above-captioned debtors and debtors in possession (collectively, the "Debtors").[2] I have been engaged as CRO of Diamond Comic Distributors, Inc. ("DCD"), since July 17, 2024, and before that provided financial advisory services to DCD since March 7, 2024. I was more recently appointed Co-CRO of the other Debtors herein. Through such capacities, I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records. I am submitting this Declaration in support of *Debtors' Motion for Entry of an Order (I) Approving the Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances; (II) Approving the*

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] I serve as co-CRO with my colleague, William H. Henrich, co-chairman of Getzler Henrich (as defined above).

55202539.3

*Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (D.I. 168) (the "Sale Motion").[3]

2. I am a Managing Director at Getzler Henrich & Associates LLC ("Getzler Henrich") and lead Getzler Henrich's consumer products practice. I have more than thirty years of business strategy and turnaround experiences, as well as extensive experience advising insolvent companies in turnaround and crisis situations and navigating such companies through turnaround, process design and improvements, and merger and acquisition processes. I have frequently been involved in complex matters requiring expertise in corporate turnarounds and operational analysis.

3. Except as otherwise indicated, the statements set forth in this declaration are based upon my personal knowledge, information learned from my review of relevant documents, information supplied to me from other members of the Debtors' management or the Debtors' advisors, or my opinion based on my knowledge, experience and information concerning the Debtors' operations and financial condition. I am authorized to submit this declaration on behalf of the Debtors. If called to testify, I could and would testify competently to the matters set forth in this declaration.

4. On January 14, 2025, I signed the *Declaration of Robert Gorin in Support of Chapter 11 Petitions and First Day Relief* (D.I. 20) (the "First Day Declaration"). The information contained in the First Day Declaration remains true and correct.

5. As set forth in my First Day Declaration, prior to the Petition Date, the Debtors determined that pursuing a going concern section 363 sale in chapter 11 represents the best path forward to preserve and maximize value for the benefit of their stakeholders.

---

[3] Unless otherwise indicated, capitalized terms not otherwise defined herein shall have the meaning set forth in the Sale Motion.

6. On January 21, 2025, the Debtors filed the *Debtors' Motion for an Order (I) Authorizing and Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling an Auction and a Sale Hearing, (IV) Approving the Form and Manner of Notice Thereof, and (V) Establishing Notice and Procedures for the Assumption and Assignment of Certain Executory Contracts and Leases* (D.I. 68) (the "Bidding Procedures Motion").

7. On February 11, 2025, the Court entered an order granting the Bidding Procedures Motion (D.I. 136) (the "Bidding Procedures Order"). Among other things, the Bidding Procedures Order established the following key deadlines in connection with the sale process:

| Deadline | Date |
| --- | --- |
| Contract Objection Deadline | March 12, 2025 |
| Sale Objection Deadline | March 14, 2025 |
| Bid Deadline | March 19, 2025, at 5:00 p.m. (ET) |
| Auction | March 24, 2025, commencing at 10:00 a.m. (ET) |
| Sale Hearing | March 27, 2025, at 10:00 a.m. (ET) |

8. Before the Petition Date, the Debtors retained Raymond James & Associates, Inc. ("Raymond James"), a highly experienced and qualified investment banker, to commence and run a sales process for all or substantially all of the Debtors' assets.

9. As detailed in the Bidding Procedures Motion, Raymond James spearheaded an all-inclusive marketing process, and solicited interest from potential financial and strategic investors for bids for all or substantially all the Debtors' assets, on a going concern basis.

10. After a diligent and widespread marketing process, six parties ultimately submitted indications of interest in the Debtors' assets. After negotiating with these parties, including

3

extensive, arm's-length negotiations regarding various asset purchase agreements, the Debtors decided to proceed with Universal Distribution LLC ("Universal"), to serve as the Stalking Horse Bidder for the Alliance Assets.

11. On January 13, 2025, the Debtors signed a Stalking Horse Agreement with Universal, which provided for, among other things: (i) a purchase price valued at $39,000,000 (subject to adjustments) and (ii) the assumption of certain liabilities as described in the Stalking Horse Agreement.

12. Both before and after entry of the Bidding Procedures Order, Raymond James continued to market substantially all of the Debtors' assets for sale.

13. As part of the sale process I, other members of the Debtors' management team and Raymond James, met with prospective bidders, provided facilities tours, answered questions and responded to due diligence requests for information.

14. As noted above, the deadline for submitting bids for the Debtors' assets was March 19, 2025. A total of nine bids were received by the deadline.

15. Following receipt of the bids, I participated in calls and/or meetings with Raymond James, the Debtors' professionals, counsel to the Official Committee of Unsecured Creditors (the "Committee") and JPMorgan Chase Bank, N.A. ("JPMC," together with the Committee, the "Consultation Parties") to analyze the bids.

16. Ultimately, the Debtors determined, in consultation with the Committee and JPMC, to qualify seven bids pursuant to the Bidding Procedures and the Bidding Procedures Order.

17. Consistent with the Bidding Procedures, Raymond James convened the Auction on March 24, 2025 at 10:00 a.m. at the offices of Raymond James & Associates, Inc., 320 Park Avenue, 12th Floor, New York, New York 10022.

18. Raymond James, the Debtors' professionals, the Debtors' Co-Chief Restructuring Officer and I spent most of the morning of March 24, 2025, speaking with qualified bidders, clarifying bids and facilitating a joint bid from two separate bidders who bid on different assets.

19. The Auction itself started at approximately 7:00 p.m. on March 24, 2025, and concluded shortly after 12:00 a.m. on March 25, 2025.

20. Throughout the Auction, the Debtors consulted with counsel to the Consultation Parties.

21. Following multiple rounds of bidding on the record, Alliance Entertainment LLC ("Alliance Entertainment") was determined at the auction to be the highest and best bidder for most of the Debtors' assets with a bid of $72,245,000. Universal Distribution, LLC and Ad Populum LLC (together "Universal/AP") was declared the Back-Up Bidder for most of the Debtors' assets with a bid of $69,130,000.

22. The Debtors fully complied with the Bidding Procedures and the Bidding Procedures Order at all times.

23. Following the Auction, the Debtors have continued to negotiate in good faith and at arm's-length with Alliance Entertainment and Universal/AP with respect to their respective transactions. I understand that further evidence with respect to these negotiations, including my supplemental testimony, will be presented at the Sale Hearing.

24. For all of the foregoing reasons, and as I will further testify at the Sale Hearing, I believe that the sale process and Auction for the Debtors' assets have maximized value for the Debtors' estates, creditors and parties in interest, and yielded the highest or otherwise best price available for the Debtors' assets under the circumstances. I further believe the sale of substantially all the Debtors' assets in accordance with the Debtors' sale process represents a sound exercise of

55202539.3

the Debtors' business judgment. Accordingly, I would encourage the Court to approve the proposed sale.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: April 1, 2025                    Respectfully submitted,

                                        */s/ Robert Gorin*
                                        Robert Gorin
                                        Chief Restructuring Officer

6

55202539.3