```
                    UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF MARYLAND

                                          .
   IN RE:                                 .     Chapter 11
                                          .
   Diamond Comic Distributors,            .
   Inc.,                                  .
                                          .
               Debtor.                    .     Bankruptcy #25-10308 (DER)
   ..........................................................

                          Baltimore, Maryland
                            March 27, 2025
                              10:06 a.m.

                 BEFORE THE HONORABLE DAVID E. RICE
               UNITED STATES BANKRUPTCY COURT CHIEF JUDGE


                             TRANSCRIPT OF:

      [68]   MOTION DEBTORS MOTION FOR ENTRY OF AN ORDER (I)
    AUTHORIZING AND APPROVING BIDDING PROCEDURES FOR THE SALE OF
    ALL OR SUBSTANTIALLY ALL OF THE DEBTORS ASSETS, (II) APPROVING
        BID PROTECTIONS, (III) SCHEDULING AN AUCTION AND A SALE
    HEARING, (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,
    AND (V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION
    AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND LEASES FILED
                  BY DIAMOND COMIC DISTRIBUTORS, INC.

   [160]   NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN
     EXECUTORY CONTRACTS AND UNEXPIRED LEASES FILED BY DIAMOND
                      COMIC DISTRIBUTORS, INC.

       [168]   MOTION TO SELL DESCRIPTION OF ASSETS ATTACHED AS
    EXHIBIT B FREE AND CLEAR OF LIENS AND NOTICE OF MOTION FILED
                  BY DIAMOND COMIC DISTRIBUTORS, INC

       [194]   SUPPLEMENTAL NOTICE OF POSSIBLE ASSUMPTION AND
   ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES
                FILED BY DIAMOND COMIC DISTRIBUTORS, INC.

     [196]   MOTION FOR ENTRY OF AN ORDER APPROVING KEY EMPLOYEE
    INCENTIVE PROGRAM AND KEY EMPLOYEE RETENTION PROGRAM (HEARING
    DATE: MARCH 27, 2025 AT 10:00 A.M. (ET) / OBJECTION DEADLINE:
      MARCH 20, 2025) FILED BY DIAMOND COMIC DISTRIBUTORS, INC.
```

[197]   MOTION TO SEAL CERTAIN UNREDACTED EXHIBITS TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING KEY EMPLOYEE INCENTIVE PROGRAM AND KEY EMPLOYEE RETENTION PROGRAM (HEARING DATE: MARCH 27, 2025 AT 10:00 A.M. (ET) / OBJECTION DEADLINE: MARCH 20, 2025) FILED BY DIAMOND COMIC DISTRIBUTORS, INC.

[211]   OBJECTION TO CURE AMOUNT FILED BY KATHERINE GOVIER

[215]   OBJECTION ON BEHALF OF ANSON LOGISTICS ASSETS LLC, AIREIT OLIVE BRANCH DC LLC FILED BY LAURA SKOWRONSKI BOUYEA

[216]   OBJECTION ON BEHALF OF ANSON LOGISTICS ASSETS LLC, AIREIT OLIVE BRANCH DC LLC FILED BY LAURA SKOWRONSKI BOUYEA

[217]   RESPONSE ON BEHALF OF DYNAMIC FORCES, INC. FILED BY JUSTIN PHILIP FASANO

[245]   OBJECTION ON BEHALF OF US TRUSTEE - BALTIMORE FILED BY HUGH M. (UST) BERNSTEIN

[249]   LIMITED OBJECTION AND RESERVATION OF RIGHTS ON BEHALF OF UNSECURED CREDITORS COMMITTEE FILED BY STEPHEN B. GERALD

[251]   OBJECTION ON BEHALF OF JPMORGAN CHASE BANK, N.A. FILED BY TOYJA E. KELLEY SR

[262]   STATEMENT AND RESERVATION OF RIGHTS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' KEY EMPLOYEE INCENTIVE PROGRAM FILED BY STEPHEN B. GERALD

[264]   OBJECTION ON BEHALF OF AIREIT OLIVE BRANCH DC LLC, ANSON LOGISTICS ASSETS LLC FILED BY LAURA SKOWRONSKI BOUYEA

[269]   SUPPLEMENTAL RESPONSE ON BEHALF OF THE POKEMON COMPANY INTERNATIONAL, INC. FILED BY DAVID W.T. DANIELS

[270]   NOTICE OF DESIGNATION OF SUCCESSFUL BIDDER AND BACK-UP BIDDER FILED BY DIAMOND COMIC DISTRIBUTORS, INC

[271]   OBJECTION ON BEHALF OF IMAGE COMICS, INC. FILED BY ELIZABETH ANNE SCULLY

[277]   RESPONSE ON BEHALF OF DIAMOND COMIC DISTRIBUTORS, INC. FILED BY JORDAN ROSENFELD

[280]   DECLARATION RE: SUPPLEMENTAL DECLARATION OF ROBERT GORIN IN SUPPORT OF DEBTORS MOTION FOR ENTRY OF AN ORDER APPROVING KEY EMPLOYEE INCENTIVE PROGRAM AND KEY EMPLOYEE RETENTION PROGRAM FILED BY JORDAN ROSENFELD

3

**APPEARANCES:**

| | |
|---|---|
| For The Debtor: | Mark Minuti, Esq.<br>Saul Ewing, LLP<br>1201 North Market St.-Ste. 2300<br>Wilmington, DE 19899 |
| | Jordan Rosenfeld, Esq.<br>Saul Ewing, LLP<br>1001 Fleet Street-9th Fl.<br>Baltimore, MD 21202 |
| For Unsecured Creditor's Committee: | Dennis J. Shaffer, Esq.<br>Tydings & Rosenberg<br>1 E. Pratt St.-Ste. 901<br>Baltimore, MD 21202 |
| | Stephen B. Gerald, Esq.<br>Tydings & Rosenberg, LLP<br>200 Continental Dr.-Ste. 401<br>Newark, DE 19713 |
| For Alliance Entertainment, LLC: | Jonathan A. Grasso, Esq.<br>YVS Law, LLC<br>Ste. 130<br>185 Admiral Cochrane Drive<br>Annapolis, MD 21401 |
| | S. Jason Teele, Esq.<br>YVS Law, LLC<br>Ste. 130<br>185 Admiral Cochrane Drive<br>Annapolis, MD 21401 |
| For AIREIT Olive Branch DC, LLC and Anson Logistic Assets, LLC: | Darek S. Bushnaq, Esq.<br>Venable, LLP<br>750 Pratt St.-Ste. 900<br>Baltimore, MD 21202 |
| | Deborah Perry, Esq.<br>Munsch Hardt Kopf & Harr, PC<br>500 N.Akard St.-Ste. 4000<br>Dallas, TX 75201 |
| For Creditor, JPMorgan Chase Bank, NA: | Indira K. Sharma, Esq.<br>Troutman Pepper Locke, LLP<br>701 8th St., NW, Ste. 500<br>Washington, DC 20001 |

                                                                4

    For U.S. Trustee's Office:    Hugh M. Bernstein, Esq.
                                  Office of the U.S. Trustee
                                  101 W. Lombard St.-Ste. 2625
                                  Baltimore, MD 21201

    Audio Operator:               Cherita Scott

    Transcribing Firm:            Writer's Cramp, Inc.
                                  1027 Betty Lane
                                  Ewing, NJ 08628
                                  609-588-8043

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1   THE CLERK:  All rise.  The United States Bankruptcy
2   Court for the District of Maryland is now in session, the
3   Honorable Chief Judge David E. Rice presiding.  Please be
4   seated and come to order.  On the 10:00 o'clock Docket,
5   calling the case of <u>Diamond Comic Distributors, Inc.</u>, Case
6   #25-10308.  Counsels, please identify yourselves and your
7   clients for the record.
8   　　MR. MINUTI:  Good morning, Your Honor.  Mark Minuti
9   from Saul Ewing.  I'm here today on behalf of the Debtors.
10   　　THE COURT:  Good morning.
11   　　MR. MINUTI:  Good morning.
12   　　MR. SHAFFER:  Good morning, Your Honor.  Dennis
13   Shaffer and Steve Gerald of Tydings & Rosenberg on behalf of
14   the Official Committee of Unsecured Creditors.
15   　　THE COURT:  Good morning.
16   　　MR. GERALD:  Good morning.
17   　　MR. GRASSO:  Good morning, Your Honor.  Jonathan
18   Grasso, counsel for Alliance Entertainment, LLC, the
19   successful bidder of the Debtor's auction.  And on the phone
20   should be my co-counsel, Jason Teele.  We filed a Motion for
21   Admission pro hac vice for Mr. Teele yesterday evening at
22   Docket #275, which is still pending before the Court.  Thank
23   you.
24   　　THE COURT:  Good morning.
25   　　MR. BUSHNAQ:  Good morning, Your Honor.  Darek

                                                                  6

1    Bushnaq on behalf of AIREIT Olive Branch DC, LLC, and Anson
2    Logistic Assets, LLC.  On the phone -- two landlords.  On the
3    phone should be Deborah Perry from Munsch Hardt, also counsel
4    for the two landlords.
5             THE COURT:  Good morning.
6             MS. SHARMA:  Good morning, Your Honor.  Indira
7    Sharma from Troutman Pepper Locke on behalf of JPMorgan Chase
8    Bank.
9             THE COURT:  Good morning to you.
10            MR. BERNSTEIN:  And good morning, Your Honor.  Hugh
11   Bernstein on behalf of the United States Trustee.
12            THE COURT:  Good morning.  Well, we're here this
13   morning, Mr. Minuti, for a long list of items that are on the
14   Docket.  Let me turn the proceedings over to you.
15            MR. MINUTI:  Thank you very much, Your Honor.
16   Again, for the record, Mark Minuti from Saul Ewing.  Let me
17   point out, Your Honor, also with me in Court today is my
18   colleague, Jordan Rosenfeld, sitting at counsel table, and
19   sitting in the first row is Robert Gorin.  He is the managing
20   director of Getzler Hendrich, and he is our co-CRO of the
21   Debtors.
22        We are pleased to be here today to provide the Court with
23   a report or update on the results of our Sale process and
24   auction and also to request a brief continuance of today's
25   hearing.  I am very happy to report that the auction for

7

1  substantially all of the Debtors' assets was held on Monday of
2  this week.  That auction spilled into Tuesday of this week,
3  and it was very successful.  As the Court may recall, we
4  started this process with a stalking horse bid only for the
5  Debtors' Alliance assets.  That bid was valued at
6  approximately $39 million.
7      At the end of the day, Your Honor, following the auction,
8  the winning high bid at the auction was $72,245,000 by an
9  entity known as Alliance Entertainment, LLC.  Our backup
10 Bidder was a -- were two Bidders together, Universal
11 Distribution, LLC -- that was our stalking horse bidder -- and
12 a company called Ad Populum, LLC.  That backup bid is
13 $69,130,000.  Those bids, Your Honor, are essentially for all
14 of the divisions, all the assets of the Debtor.  So an
15 extremely successful auction.
16     And while we're certainly anxious to present our evidence
17 in support of the Sale, we're here today to ask the Court for
18 a brief continuance of the Sale hearing so we can finalize our
19 APA with our new stalking horse bidder.  We can have
20 additional time, particularly with our new bidder, to deal
21 with some of the objections.  And if the Court has had an
22 opportunity to look at any of the Sale objections, most of
23 what I'll call the "objections to the Sale" have been
24 resolved.  What remains open are some of the landlord contract
25 party objections, and those objections primarily go to cure

8

1   and adequate assurance.  So additional time is going to give
2   us the ability to continue to talk to those folks, facilitate
3   discussions with our winning bidder, and hopefully, resolve a
4   number of those before we get to the hearing.
5        I would also point your point Your -- point out, Your
6   Honor, that the last few days, I would say maybe the last
7   week, has been a little stressful on Mr. Goran.  He's been up
8   late.  He's been running the company.  He participated full in
9   the auction, and I'm certain that brief continuance would
10  allow him to get some sleep and lead to a much more sharper
11  and organized presentation when we are before the Court.  But
12  let me give the Court a little more color in terms of the
13  auction because I think that would be helpful.
14       On January 21, the Debtor filed their Motion Seeking
15  Court Approval of Bid Procedures, and that motion was
16  supported by our stalking horse bid of Universal Distribution,
17  LLC, that I mentioned a moment ago.  By Order dated February
18  11, the Court approved those bidding procedures.  And among
19  other relief, that Order set forth the procedures to solicit
20  bids, approved the notice of the Sale, approved notice and
21  procedures for the assumption and assignment of contracts and
22  leases, approved stalking horse protections, and established a
23  number of dates governing the Sale, including a bid deadline
24  of March 19, an auction of March 24, and again, returning
25  today for the Sale hearing.

9

1          Consistent with the Bid Procedures Order, the Debtor
2    served and filed a Notice of Sale on February 18.  That
3    appears at Docket #159.  Also, on February 18, we served and
4    filed a Notice of Possible Assumption and Assignment of
5    Contracts and Leases, which included an asserted cure
6    schedule.  That appears at Docket #160.  On March 5, the
7    Debtor served and filed a supplemental Notice of Possible
8    Assumption and Assignment of Contracts and Leases.  That
9    appears at Docket #194.  Notice of the Sale and the bid
10   procedures was also published in the Wall Street Journal, the
11   Baltimore Sun, and the papers that were local to the Debtors'
12   distribution centers.  That notice of publication was filed
13   and appears at Docket #238.
14          As I noted, the bid deadline was March 19.  The Debtor
15   received a total of nine bids by the bid deadline.  Of the
16   bids received and in consultation with the Committee and
17   JPMorgan Chase, the Debtors qualified seven of those bids.
18   The bids were not all apples to apples.  Some people bid on
19   discrete assets.  Other people bid on what I'll call a "whole-
20   company bid."  And so our investment banker, Raymond James,
21   had divided the bids essentially into lots.
22          Lot A was the Collectible Grading Authority division.
23   Lot B was the Diamond Comic Distributors division, the Diamond
24   Select Toys and Collectibles division, and the Collectible
25   Grading Authority division.  Lot C was just the Alliance Game

1   Distributors division.  Again, that was what our stalking
2   horse bidder had been on.  And then finally, Lot B was
3   essentially all of those divisions that I previously
4   mentioned.
5       Consistent with the Bid Procedures Order, all bids needed
6   some work to get them qualified.  But on March 25, the Debtors
7   notified the bidders which bids tentatively would be qualified
8   and what bids tentatively would serve as the baseline bids for
9   each of the lots.  We then worked over the next couple of days
10  to get those bids to the point where they were qualified.  And
11  we provided final notice on March 23 to the bidders as to
12  which bids were qualified and which served as the baseline bid
13  for the auction.
14      Raymond James, the Debtors' Court-approved investment
15  banker, conducted the auction of the Debtors' assets on March
16  24 at their offices in New York.  And while the auction was
17  scheduled to begin at 10:00 a.m., most of that day was spent
18  speaking to the bidders, clarifying the bids, and facilitating
19  a joint bid from two bidders for the whole company Lot D
20  assets.  Those efforts were ultimately successful.  And when
21  we started the auction, we actually had three separate bidders
22  that were bidding on the assets, what I'll call the whole
23  company asset bidder, or the Lot D.
24      The auction itself, the actual rounds of bidding, I would
25  say began approximately at 7:00 p.m.  I should point out I was

1     at the auction.  There were frequent breaks during the
2     auction.  The Committee consulted with JPMorgan Chase, and --
3     I'm sorry.  The Debtors consulted with the Committee and
4     JPMorgan Chase throughout the process, and I want to thank
5     both for their input and their collaborative approach.  And
6     while I'm giving out thank you, Your Honor, I do want to thank
7     everyone who attended the auction to make it a success and the
8     great staff and team at Raymond James.
9          After eight rounds of bidding on Lot D, Alliance
10    Entertainment, LLC, was declared the high bidder for Lot D
11    with a bid of $72,245,000.  The second highest bid was the
12    combined bid of Universal Distribution, LLC, our stalking
13    horse bidder, and a company called Ad Populum, LLC, at
14    $69,130,000.
15         Once the bidding for Lot D was concluded, Raymond James
16    then turned to auction the other asset lots.  There were no
17    additional bids received for Lots B or Lot C alone.  There was
18    an auction held for Lot A.  That is the Collectible Grading
19    Authority assets.  There were four rounds of bidding.  But at
20    the end of the day, when we looked at the value for the
21    individual bids for the lots and compared it to the bidding on
22    the whole on Lot D for everything, it was clear, Your Honor,
23    that the Lot D bid was the highest and best bid for the
24    Debtors' assets.  And the backup bid, again, was higher and
25    better than any individual bid stacked together and put

1   together.
2         So at the end of the auction, Your Honor, Alliance
3   Entertainment was declared the winning bidder.  Universal and
4   Ad Populum were designated the backup bidder.  The --
5   ultimately, the auction colluded -- excuse me, concluded
6   shortly after 12:00 o'clock midnight on Tuesday.  The auction
7   was transcribed.  I just saw some e-mail traffic this morning
8   that suggests to me that the auction transcript will be filed.
9   It may have already been filed, but it will certainly be filed
10  this morning.
11        And consistent with the Court-approved bidding
12  procedures, we served and filed notice of the successful
13  bidder and backup bidder yesterday, March -- I'm sorry, on
14  March 25.  And that notice included a list of leases,
15  contracts that may be assumed and assigned to Alliance
16  Entertainment.  That appears at Docket #270.
17        Now, because the auction spilled into Tuesday morning and
18  we are dealing with it with not our stalking horse bidder but
19  a new successful bidder, we do need some additional time to
20  finalize the APA with Alliance Entertainment.  I can tell,
21  Your Honor, there was a call as early as -- I think it was
22  8:30 or 9:00 o'clock this morning to review red lines of that
23  APA.  So the parties are working hard to finalize that.
24        We do have some outstanding issues related to cure and
25  adequate assurance.  I think the idea, Your Honor, is to try

1  to resolve all of those before we come back before Your Honor
2  at the Sale hearing.  To the extent we don't have resolution
3  on cure claims, those matters will likely be continued until
4  we can get that resolution.  I think the current plan, Your
5  Honor, is that if there's not agreement on adequate assurance,
6  we'll deal with that at the Sale hearing.  I believe that's
7  the current plan.
8       We have attempted to address some of the issues with the
9  contract and lease parties, but again, we need more time.  The
10 continuance will allow us to come before the Court again with
11 a smoother, and I'm certain, a better presentation.  Our
12 Buyers -- as you may have heard, Your Honor, we talked to your
13 clerk before you took the bench -- our Buyers, JPMorgan Chase
14 and the Committee, all support this request.  We are not aware
15 of anybody objecting to the continuance, and therefore, we're
16 respectfully asking the Court for a continuance of the hearing
17 for the reasons I indicated.
18      The other matter that was scheduled for today's hearing
19 was the Debtor's Motion for Approval of a Key Employee
20 Incentive Plan and a Key Employee Retention Plan, we are
21 asking that that matter also be continued to the date of the
22 Sale hearing.  We were able to resolve the concerns that were
23 raised by the Official Committee of Unsecured Creditors.  We
24 filed last night a new Proposed Form of Order that includes
25 some changes to satisfy the Committee.  We've made some

1   changes to the Plans themselves.  We filed those, and we filed
2   a supplemental declaration of Mr. Goran, I believe, late
3   yesterday or this morning, Your Honor.  We'd like to give the
4   U.S. Trustee, who is continuing to object to that matter, an
5   opportunity to review those documents.  And again, I think
6   we'll have a much smoother presentation when we come back.
7          So that is our report.  That is our update, Your Honor.
8   It's very good news from the Debtors' perspective.  I can tell
9   the Court that both the bid and the backup bid are going to be
10  sufficient, we believe, to pay off JPMorgan Chase and leave
11  behind funds here for the Estates.  So, you know, going from a
12  bid of 39 million to 72 was not easy, but I'm pleased that we
13  got there.  And again, I'm pleased that everybody hung in at
14  the auction because it was a very long day.
15         So again, that's our update.  That is our request.  We
16  would respectfully request that the Court reschedule the
17  matter.  We had originally thought Monday or Tuesday, but I
18  understand that Mr. Bernstein from the United States Trustee's
19  Office is not available.  So we're looking for a hearing on
20  Wednesday.  And I understood from your clerk that Your Honor
21  does have time at 2:00 o'clock on Wednesday.  So that would be
22  our request.
23              THE COURT:  All right, thank you.
24              MR. MINUTI:  Thank you.
25              THE COURT:  Let me ask this.  I'll give those who

15

1   wish to speak to this an opportunity to do so if you wish to.
2   But is there anyone present in Court today who opposes the
3   Debtors' request for a continuance to Wednesday at 2:00 p.m.
4   as Mr. Minuti just outlined?
5         ALL:  (No verbal response).
6         THE COURT:  Hearing none.  Does anyone wish to say
7   anything in response to what Mr. Minuti has reported to the
8   Court?  Mr. Shaffer.
9         MR. SHAFFER:  Your Honor, Dennis Shaffer on behalf
10  of the Committee, just very briefly.  We do support the
11  adjournment of both matters.  I did want to clarify one point.
12  We did -- the Committee did file a limited objection and
13  reservation of rights that those issues are still out there.
14  We are hopeful that once we get the final Form of Revised Sale
15  Order and the APA gets cleaned up that we will be able to
16  hopefully work -- towards resolution of those issues.  Thank
17  you.
18        THE COURT:  Okay.  Yes, sir.
19        MR. GRASSO:  Good morning again, Your Honor.
20  Jonathan Grasso, on behalf of Alliance Entertainment.  I'll
21  largely just echo the statements of Debtors' counsel.  We have
22  been in contact with the objectors and are working to
23  diligently resolve those, and we'll hopefully have an update
24  on that position by the time of the hearing next week.  We are
25  diligently working towards addressing the remaining issues

16

1  with respect to the APA.  And the statement was accurate that
2  we would like to deal with any remaining adequate assurance
3  issues at the hearing next week.  Thank you.
4            MR. MINUTI:  All right.
5            MS. SHARMA:  Good morning.  Your Honor, just on
6  behalf of JPMorgan Chase, I just briefly wanted to state that
7  we are extremely pleased with the result of the auction.  We
8  believe it is a great result for all parties and the Estate.
9  We agree with the presentation made by Debtors' counsel today
10 and consent to the continuance request.  Thank you.
11           THE COURT:  Thank you.  I think I saw Mr. Bushnaq
12 indicating he didn't have anything he wanted to add.
13           MR. BUSHNAQ:  Nothing, Your Honor.  Thank you.
14           THE COURT:  Mr. Bernstein, you're seldom at a loss
15 for words.
16           MR. BERNSTEIN:  Nothing today, Your Honor.
17           THE COURT:  Okay.
18           MR. BERNSTEIN:  I spoke enough yesterday.
19           THE COURT:  All right.  Well, I'm glad that this
20 progress is happening.  I'm glad that the parties are talking
21 and apparently working together to have this be a successful
22 Sale.  I will grant the continuance, as requested by the
23 Debtor, these matters to Wednesday at 2:00 p.m. and look
24 forward to seeing you all at that time.  Thank you.
25           THE COURT:  Thank you.

1          THE CLERK:  All rise.  This Court is adjourned.

2      (Court adjourned)

3

4                        CERTIFICATION
5   I, Lewis Parham, certify that the foregoing is a correct
6   transcript from the electronic sound recording of the
7   proceedings in the above-entitled matter.
8
9
10   *[signature: Lewis Parham]*                    3/28/25
11
12   _____        _____
13   Signature of Transcriber                  Date