**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re:<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors¹ | Case No. 25-10308-DER<br>(Jointly Administered)<br><br>Chapter 11 |

**EMERGENCY MOTION TO COMPEL DEBTORS TO ASSUME OR
REJECT DISTRIBUTION AGREEMENT WITH TITAN PUBLISHING
GROUP, LTD. BY APRIL 25, 2025, AND RELATED RELIEF, OR IN THE
<u>ALTERNATIVE FOR ADMINISTRATIVE EXPENSE</u>**

**THE MOVANT HAS ALSO FILED A MOTION TO SHORTEN THE TIME FOR RESPONSE AND FOR AN EXPEDITED HEARING ON THIS MOTION. IF THAT MOTION TO SHORTEN AND EXPEDITE IS GRANTED, THE TIME TO OBJECT AND DATE FOR HEARING ON THIS ORDER WILL BE CHANGED AS PROVIDED IN SUCH ORDER.**

Titan Publishing Group, Ltd. d/b/a Titan Comics ("<u>Movant</u>"), by and through its undersigned counsel, files this Emergency Motion for Rejection of Distribution Agreement with Titan Publishing Group, Ltd. Effective April 25, 2025, and Related Relief ("<u>Motion</u>"). In support of the Motion, Movant respectfully states as follows:

**<u>BACKGROUND</u>**

1.  On or about January 1, 2024, Diamond Comics Distributors, Inc. ("Diamond") and Movant entered into a Distribution Agreement ("Distribution Agreement"). A copy of the Distribution Agreement is attached hereto and incorporated herein by reference as **<u>Exhibit A</u>**.²

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] Movant has been unable to find a fully executed copy of the Distribution Agreement, but, believes that the attached is an final version of the Distribution Agreement.

2.      Pursuant to the Distribution Agreement, Diamond is the non-exclusive distributor of various comic-related products (the "Products") produced by Movant.

3.      Although it is not fully detailed in the Distribution Agreement, upon information and belief, the relationship between the parties includes an advance order system that works as follows:

(i) Movant informs Diamond of the Products that it expects to release three to four months in advance.

(ii) Diamond publishes that information in its catalog such that retailers have the necessary information for place orders for Movant's Products through Diamond.

(iii) Diamond collects orders from retailers.

(iv) Roughly two months before product delivery, Diamond places an order for the Products that it will receive from Movant on consignment to distribute to its customers.

(v) Movant begin producing Products based on the quantity of orders received from Diamond and any other distributors.

(vi) Roughly one month before product delivery, Diamond pays Movant for a portion of the consigned goods that it has already sold to retailers.

(vii) Products are delivered to Diamond.

(viii) To the extent that any Products delivered to Diamond have not been sold, Diamond will hold such Products on consignment until they are sold or returned to Movant.

4.      Diamond and Movant have continued to do business in the ordinary course since the filing of this bankruptcy case.

5.      Pursuant to an order entered April 14, 2025 (Dkt. No. 335; the "Sale Order") and the Asset Purchase Agreement (the "APA") attached thereto, Diamond will soon consummate of sale (the "Sale") of substantially all its assets to Alliance Entertainment, LLC ("Alliance").

6.      Pursuant to the Sale Order and the APA, certain executory contracts were assigned ("Assigned Contracts") to Alliance Entertainment, LLC ("Purchaser").  A list of the Assigned Contracts that the Purchaser agreed to assume was identified on Schedule 2.1(c) of the APA.

7. The Asset Purchase Agreement contemplates, and the Sale Order approved, the closing of the sale to occur no later than April 25, 2025.

8. Notably, the Distribution Agreement is not an Assigned Contract.

9. This is not surprising because the Distribution Agreement is a non-exclusive agreement, the cure amount is in excess of $413,898.17 and it could be terminated as early as January 1, 2027.

10. As Diamond is selling substantially all its assets, it is apparent that, once the Sale closes, Diamond will no longer be operating, or able to operate, as a distribution company.

11. Once Diamond ceases to operate as a distributor, Diamond will be unable to fulfill its obligations under the Distribution Agreement. Despite that, Diamond has provided Movant with no information regarding a potential rejection of the Distribution Agreement or cessation of ordering under the same.

12. At this time, there are several deadlines under the Distribution Agreement which will occur before the end of the month. Namely, on or about April 26, 2025, Movant would typically provide Diamond with a list of Products to be released in July 2025, and, on April 29, 2025, Diamond would normally provide Movant with its orders for Products to be released in June, 2025. After these dates, there are recurrent weekly deadlines for the order process as many comic books are published on a weekly schedule.

13. Upon termination of the Distribution Agreement, Movant is required to "remove at its own expense all Products held on consignment ('Inventory') from Buyer's distribution center; unless Buyer has chosen to sell or remainder this Inventory to offset amounts due from Seller to Buyer." Distribution Agreement, § 11(f).

14. Prior to filing this Motion, Movant reached out to counsel for Diamond to try to understand Diamond's plans for the Distribution Agreement. Movant also sought written

confirmation from Diamond that, to the extent that Diamond placed any orders under the Distribution Agreement after the Sale closed, Diamond would consider any payments subsequently due for such Products as administrative expenses of the estate. Movant has not heard back from Diamond on this.

## **REQUEST FOR RELIEF**

15. Movant requests that this court require Diamond to make a determination on assumption or rejection of the Distribution Agreement by April 25, 2025, with any such assumption or rejection effective on April 25, 2025.

16. To the extent that Diamond elects to reject the Distribution Agreement, Movant shall be immediately entitled to refuse to fill any orders from Diamond placed April 25, 2025, or later, and to exercise its rights upon termination of the Distribution Agreement, including the reclamation of unsold Products.

17. Upon the rejection of the Distribution Agreement, Movant requests that it be allowed to immediately terminate the Distribution Agreement, although Movant may, at its option, honor orders already placed by Diamond.

## **LEGAL BASIS**

**A. Diamond should be Required to Promptly Reject the Distribution Agreement if it is No Longer Necessary or Beneficial to the Estate.**

18. Section 365(a) of the Bankruptcy Code permits the Debtor to assume or reject any executory contract or unexpired lease of the Debtor. 11 U.S.C. § 365(a).

19. Pursuant to Section 365(d)(2), Diamond would typically have until a plan is confirmed to determine whether to assume or reject the Distribution Agreement. However, "the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease." 11 U.S.C. § 365(d)(2).

4

20. The legislative history of section 365(d) indicates that the purpose of this section is to "prevent parties in contractual or lease relationships with a debtor from being left in doubt concerning their status vis-a-vis the estate." H. REP. No. 95-595, 95th Cong. 1st Sess. at 348 (1977); S. REP. No. 989, 95th Cong., 2d Sess. at 59 (1978); *see also, In re Univ. Med. Ctr.,* 973 F.2d 1065, 1078-79 (3d Cir. 1992). "Parties who wish to know where they stand may, pursuant to 11 U.S.C. § 365(d)(2), seek to compel an early election . . . ." *In re El Paso Refinery, L.P.*, 220 B.R. 37 (Bankr. W.D. Tex. 1998) (quoting *In re Public Service Co. of New Hampshire*, 884 F.2d 11, 14–15 (1st Cir. 1989)).

21. When deciding whether to set a deadline for assumption or rejection, courts weigh "the nature of the interests at stake, the balance of hurt to the litigants, the good to be achieved, and the safeguards afforded those litigants." *In re St. Mary Hosp.*, 89 B.R. 503, 513 (Bankr. E.D. Penn. 1988). Courts will also consider the "damage that the non-debtor will suffer beyond the compensation available through the Bankruptcy Code" if a deadline were not set. *In re Teligent*, 268 B.R. 723, 738–39 (Bankr. S.D.N.Y. 2001). In exercising its discretion to compel assumption or rejection, a court must balance the interests of the non-debtor party to the contract against the bankruptcy estate's interest. In re Physician Health Corp., 262 B.R. 290, 292 (Bankr. D. Del. 2001).

22. Here, there is substantial doubt as to the status of the Distribution Agreement. Due to the Sale to Alliance, Diamond cannot provide the distribution services that it is required to provide under the Distribution Agreement. In addition, the Distribution Agreement includes a constant cycle of pre-orders that make it essential to promptly terminate the Distribution Agreement before Diamond begins soliciting orders from retailers for Products that will not be delivered until June or July, and may not be delivered at all if Diamond is unable to provide the appropriate services.

23. The parties that will be harmed by a failure to promptly terminate new orders under the Distribution Agreement are not only Movant, but also the many retailers who order Movant's Products through Diamond. While Movant may be able to refuse to ship goods to Diamond if Diamond fails to pay for them, that will ultimately harm the retailers who will not receive their Products promptly.

24. Especially when it comes to Products such as weekly issues of comics, receiving Products even a few days late (much less weeks late) can suppress sales as customers generally expect that new comics will be available on a certain date.

25. On the other hand, requiring Diamond to reject the Distribution Agreement effective April 25th will not harm it once the Sale has been consummated because by that point Diamond will have sold its distribution business.

26. Movant has sought to clarify Diamond's position regarding the Distribution Agreement, but without success.

27. Movant is concerned that if it accepts orders on or after the closing of the sale, and produces Products to fulfill those orders, Diamond may subsequently claim that those Products are without value to the estate, as Diamond can no longer distribute the Products, and refuse to pay for those Products in the ordinary course of business as an administrative expense. In that case, Movant may have excess Products and retailers, who expect those Products, will not be able to receive them or will receive them long after the expected publication date.

28. Movant is also concerned that if Diamond is allowed to continue to solicit orders from retailers for Movant's Products, it is retailers who will ultimately suffer if Diamond is subsequently unable to fill those orders.

29. As a result, it is imperative that the court set a deadline of April 25, 2025, for Diamond to determine if it will assume or reject the Distribution Agreement.

**B. In the Alternative, the Court should Confirm that Amounts Due on All Orders Placed Until the Date of Rejection will be Paid as an Administrative Expense.**

30. In the alternative, Movant requests that the court enter an order confirming that all amounts due for orders placed post-Sale and until the Distribution Agreement is rejected should be paid as administrative expenses pursuant to section 503(b)(1)(A).

31. It is well settled that "[p]ending the decision to reject, the non-debtor entity to the contract is entitled to payment as an administrative expense for goods and services provided during the period of time before the debtor assumes or rejects the contract." *In re Bethlehem Steel Corp.*, 291 B.R. 260, 264 (Bankr. S.D.N.Y. 2003).

32. To show that a claimant is entitled to an administrative expense, "(1) there must be a post-petition transaction between the creditor and the debtor; and (2) the estate must receive a benefit from the transaction." *In re Waste Sys. Int'l, Inc.*, 280 B.R. 824, 826 (Bankr. D. Del. 2002). The Supreme Court in *Reading v. Brown* provided an expansive interpretation of what is an "actual, necessary cost" entitled to priority, and stated that " 'actual and necessary' costs should include costs ordinarily incident to operation of a business, and not be limited to costs without which rehabilitation would be impossible." *Reading Co. v. Brown*, 391 U.S. 471, 483 (1968).

33. Movant satisfies each requirement of section 503(b)(1)(A) of the Bankruptcy Code because the distribution of comics-related products like those supplied by Movant is that the heart of Diamond's business.

34. Additionally, it would be inequitable to require Movant to bear the costs of Diamond's refusal to promptly reject the Distribution Agreement.

## WAIVER OF MEMORANDUM OF LAW

35. Pursuant to rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Debtors state that, in lieu of submitting a

memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

**NOTICE**

36. Notice of this Motion will be given to the following parties or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Debtors; (iii) the Official Committee of Unsecured Creditors; (iv) counsel to JPMorgan Chase Bank, N.A.; (v) the Internal Revenue Service; and (vi) the Office of the Attorney General. In light of the nature of the relief requested, Movant submits that no other or further notice is necessary.

WHEREFORE, Movant respectfully requests this Court enter an order: requiring Diamond to determine whether to assume or reject the Distribution Agreement and effectuating the same by April 25, 2025; to the extent that Diamond rejects the Distribution Agreement, allowing for an immediate termination of the Distribution Agreement, including Movant's acceptance or solicitation of new orders under the Distribution Agreement; and permitting Movant to reclaim its consigned Products pursuant to Section 11(f) of the Distribution Agreement; or in the alternative, confirming that Movant is entitled to administrative expense priority for payments related to orders placed until the date that the Distribution Agreement is rejected; and entering such other and further relief as justice requires.

DATED: April 17, 2025                                              Respectfully submitted,

*/s/ Emily K. Devan*
Emily K. Devan, Bar No. 18595
Miles & Stockbridge P.C.
100 Light Street, 7th Floor
Baltimore, Maryland 21202
Phone: 410-385-3413
Email: edevan@milesstockbridge.com

*Counsel for Titan Publishing Group, Ltd.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of April, 2025, a true and correct copy of the foregoing was electronically filed with the Court and served via the Court's ECF filing system, on the following:

- **Jan Berlage**    JBerlage@GHSLLP.com, tcollins@ghsllp.com
- **Hugh M. (UST) Bernstein**    hugh.m.bernstein@usdoj.gov
- **Daniel Jack Blum**    jack.blum@polsinelli.com, lsuprum@polsinelli.com; delawaredocketing@polsinelli.com
- **Laura Skowronski Bouyea**    lsbouyea@venable.com, dmdierdorff@venable.com
- **Thomas K. Bredar**    thomas.bredar@wilmerhale.com, andrew.goldman@wilmerhale.com; benjamin.loveland@wilmerhale.com; yolande.thompson@wilmerhale.com
- **Andrew Brown**    abrown@klestadt.com
- **Richard L. Costella**    rcostella@tydings.com, scalloway@tydings.com
- **David W.T. Daniels**    ddaniels@perkinscoie.com, docketnyc@perkinscoie.com; nvargas@perkinscoie.com; KMcClure@perkinscoie.com
- **Turner Falk**    turner.falk@saul.com, tnfalk@recap.email; Veronica.Marchiondo@saul.com
- **Justin Philip Fasano**    jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com; tmackey@mhlawyers.com; mevans@mhlawyers.com; cmartin@mhlawyers.com; Fasano.JustinR92003@notify.bestcase.com
- **Ashley N Fellona**    ashley.fellona@saul.com, janice.mast@saul.com
- **Gianfranco Finizio**    gfinizio@lowenstein.com
- **Adam Fletcher**    afletcher@bakerlaw.com
- **Chelsea R Frankel**    cfrankel@lowenstein.com
- **Stephen B. Gerald**    sgerald@tydings.com
- **Christopher J. Giaimo**    christopher.giaimo@squirepb.com, christopher.giaimo@squirepb.com; christopher-j-giaimo-6409@ecf.pacerpro.com
- **Jonathan A. Grasso**    jgrasso@yvslaw.com, pgomez@yvslaw.com; r39990@notify.bestcase.com
- **Zvi Guttman**    zvi@zviguttman.com, zviguttman@gmail.com, zviguttman@outlook.com
- **Jeffrey C. Hampton**    jeffrey.hampton@saul.com
- **Adam H Isenberg**    adam.isenberg@saul.com
- **Toyja E. Kelley**    toyja.kelley@lockelord.com
- **C. Kevin Kobbe**    kevin.kobbe@us.dlapiper.com, docketing-baltimore-0421@ecf.pacerpro.com
- **Eric George Korphage**    korphagee@whiteandwilliams.com
- **Jung Yong Lee**    jlee@tydings.com, mhickman@tydings.com
- **Gary H. Leibowitz**    gleibowitz@coleschotz.com, pratkowiak@coleschotz.com; bankruptcy@coleschotz.com; lmorton@coleschotz.com
- **Mark Minuti**    mark.minuti@saul.com, robyn.warren@saul.com
- **Bruce S. Nathan**    bnathan@lowenstein.com
- **Michael Papandrea**    mpapandrea@lowenstein.com

- **Steven Gregory Polard**   steven.polard@ropers.com
- **Scott Prince**   sprince@bakerlaw.com
- **Jordan Rosenfeld**   jordan.rosenfeld@saul.com
- **Nikolaus F. Schandlbauer**   nick.schandlbauer@arlaw.com, lianna.sarasola@arlaw.com
- **Elizabeth Anne Scully**   escully@bakerlaw.com
- **Dennis J. Shaffer**   dshaffer@tydings.com, scalloway@tydings.com; mhickman@tydings.com;jlee@tydings.com
- **Indira Kavita Sharma**   indira.sharma@troutman.com, katherine.culbertson@troutman.com; jonathan.young@troutman.com; david.ruediger@troutman.com; errol.chapman@troutman.com; toyja.kelley@troutman.com
- **Nicholas Smargiassi**   nicholas.smargiassi@saul.com
- **Brent C. Strickland**   bstrickland@wtplaw.com, mbaum@wtplaw.com; brent-strickland-3227@ecf.pacerpro.com
- **Paige Noelle Topper**   paige.topper@saul.com
- **US Trustee - Baltimore**   USTPRegion04.BA.ECF@USDOJ.GOV

and via U.S. mail on the following:

>Office of the United States Trustee
>6305 Ivy Lane, Suite 600
>Greenbelt, MD 20770
>
>Internal Revenue Service
>Attn: Centralized Insolvency Operation
>P.O. Box 7346
>Philadelphia, PA 19101-7346
>
>United States Attorney
> for the District of Maryland
>Attn: Civil Process Clerk
>36 S. Charles Street, 4th Floor
>Baltimore, MD 21201

*/s/ Emily K. Devan*
Emily K. Devan