```
                    UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF MARYLAND

                                     .
 IN RE:                              .       Chapter 11
                                     .
 Diamond Comic Distributors,         .
 Inc.,                               .
                                     .
            Debtor.                  .       Bankruptcy #25-10308 (DER)
.................................................................

                           Baltimore, Maryland
                             April 8, 2025
                              12:59 9.m.

                  BEFORE THE HONORABLE DAVID E. RICE
                UNITED STATES BANKRUPTCY COURT CHIEF JUDGE


                              TRANSCRIPT OF:
```

[160]   NOTICE FILED BY DEBTOR DIAMOND COMIC DISTRIBUTORS, INC.,

[168]   MOTION TO SELL FREE AND CLEAR OF LIENS AND NOTICE OF MOTION FILED BY DEBTOR DIAMOND COMIC DISTRIBUTORS, INC.

[194]   NOTICE FILED BY DEBTOR DIAMOND COMIC DISTRIBUTORS, INC.,

[211]   MOTION TO SEAL FILED BY DEBTOR DIAMOND COMIC DISTRIBUTORS, INC.

[215]   OBJECTION FILED BY INTERESTED PARTY AIREIT OLIVE BRANCH DC LLC, INTERESTED PARTY ANSON LOGISTICS ASSETS LLC

[216]   RESPONSE FILED BY CREDITOR THE POKEMON COMPANY INTERNATIONAL, INC.

[217]   RESPONSE FILED BY CREDITOR DYNAMIC FORCES, INC.

[249]   OBJECTION FILED BY CREDITOR COMMITTEE UNSECURED CREDITORS COMMITTEE

[251]   OBJECTION FILED BY CREDITOR JPMORGAN CHASE BANK, N.A

[264]   OBJECTION FILED BY INTERESTED PARTY AIREIT OLIVE BRANCH DC LLC, INTERESTED PARTY ANSON LOGISTICS ASSETS LLC

[269]   RESPONSE FILED BY CREDITOR THE POKEMON COMPANY INTERNATIONAL, INC.

[270]   NOTICE FILED BY DEBTOR DIAMOND COMIC DISTRIBUTORS, INC.

[271]   OBJECTION FILED BY CREDITOR IMAGE COMICS, INC.

[306]   OBJECTION FILED BY CREDITOR BANDAI NAMCO TOYS & COLLECTIBLES AMERICA, INC, AND BANDAI CO., LTD.

[308]   DECLARATION FILED BY INTERESTED PARTY ALLIANCE ENTERTAINMENT, LLC

[309]   OBJECTION FILED BY INTERESTED PARTY SKYRUSH MARKETING, INC.

[312]   OBJECTION FILED BY INTERESTED PARTY AIREIT OLIVE BRANCH DC LLC, INTERESTED PARTY ANSON LOGISTICS ASSETS LLC

APPEARANCES:

| | |
|---|---|
| For The Debtor: | Mark Minuti, Esq.<br>Saul Ewing, LLP<br>1201 North Market St.-Ste. 2300<br>Wilmington, DE 19899 |
| | Paige N. Topper, Esq.<br>Saul Ewing, LLP<br>1001 Fleet Street-9th Fl.<br>Baltimore, MD 21202 |
| For Unsecured Creditor's Committee: | Dennis J. Shaffer, Esq.<br>Tydings & Rosenberg<br>1 E. Pratt St.-Ste. 901<br>Baltimore, MD 21202 |
| | Stephen B. Gerald, Esq.<br>Tydings & Rosenberg<br>200 Continental Drive-Ste. 401<br>Newark, DE 19713 |
| | Gianfranco Finizio, Esq.<br>Lowenstein Sandler, LLP<br>1251 Ave. Of the Americas<br>New York, NY 10020 |

|  |  |
|---|---|
|  | Michael Papandrea, Esq.<br>Lowenstein Sandler, LLP<br>One Lowenstein Drive<br>Roseland, NJ 07068 |
| For Alliance Entertainment, LLC: | Jonathan A. Grasso, Esq.<br>YVS Law, LLC<br>Ste. 130<br>185 Admiral Cochrane Drive<br>Annapolis, MD 21401 |
|  | S. Jason Teele, Esq.<br>Sills Cummis & Gross<br>The Legal Center<br>One Riverfront Plaza<br>Newark, NJ 07102 |
| For Creditor: JPMorgan Chase Bank, NA: | Katherine Culbertson, Esq.<br>Troutman Pepper Locke, LLP<br>701 8th St., NW, Ste. 500<br>Washington, DC 20001 |
|  | David L. Ruediger, Esq.<br>Troutman Pepper Locke, LLP<br>701 8th St., NW, Ste. 500<br>Washington, DC 20001 |
| For U.S. Trustee's Office: | Hugh M. Bernstein, Esq.<br>Office of the U.S. Trustee<br>101 W. Lombard St.-Ste. 2625<br>Baltimore, MD 21201 |
| Audio Operator: | Cherita Scott |
| Transcribing Firm: | Writer's Cramp, Inc.<br>1027 Betty Lane<br>Ewing, NJ 08628<br>609-588-8043 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

                                                                    4

1          THE CLERK:  The United States Bankruptcy Court for
2   the District of Maryland is now in session, the Honorable
3   Chief Judge David E. Rice presiding.  Please be seated and
4   come to order.  On the 1:00 o'clock Docket, calling the case
5   of <u>Diamond Comic Distributors, Inc.</u>, Case #25-10308.
6   Counsels, please identify yourselves and your clients for the
7   record.
8          MR. MINUTI:  Good afternoon, Your Honor.  Mark
9   Minuti from Saul Ewing, representing the Debtors.  With me at
10  counsel table is my colleague, Paige Topper.  Good afternoon.
11         THE COURT:  Good afternoon.
12         MR. TEELE:  Good afternoon, Your Honor.  Jason
13  Teele, Sills Cummis & Gross, appearing on behalf of Alliance
14  Entertainment, LLC, and in the courtroom with me is Jonathan
15  Grasso, our Baltimore counsel.
16         THE COURT:  Good afternoon.
17         MR. FINIZIO:  Good afternoon, Your Honor.  Nice to
18  see you again.  Gianfranco Finizio, Lowenstein Sandler,
19  counsel to the Committee.  I'm joined by my colleague, Mike
20  Papandrea, as well as our local counsel from the Tydings firm,
21  Steve Gerald and Dennis Shaffer.  Thank you.
22         THE COURT:  Good afternoon to all you.
23         MS. CULBERTSON:  Good afternoon, Your Honor.
24  Katherine Culbertson on behalf of JPMorgan Chase Bank, the DIP
25  lender.

5

1        THE COURT:  Good afternoon.

2        MR. BERNSTEIN:  Good afternoon, Your Honor.  Hugh
3   Bernstein on behalf of the United States Trustee.

4        THE COURT:  Good afternoon to you.  Well, Mr.
5   Minuti, I understand from the Courtroom Deputy that the Debtor
6   would ask the Court to continue this matter for an hour to
7   permit parties to have further discussions, is that true?

8        MR. MINUTI:  That is correct, Your Honor.

9        THE COURT:  Is there anyone in the Court today who
10  opposes that request?

11       ALL:  (No verbal response).

12       THE COURT:  All right, then we'll adjourn to 2
13  o'clock.

14       MR. MINUTE:  Thank you, Your Honor.

15       THE CLERK:  All rise.  This Court is in recess until
16  2 p.m.

17     (Recess)

18       THE CLERK:  All rise.  The United States Bankruptcy
19  Court for the District of Maryland is now in session, the
20  Honorable Chief Judge David E. Rice presiding.  Please be
21  seated and come to order.  Recalling the case of <u>Diamond Comic</u>
22  <u>Distributors, Inc.</u>, case #25-10308.  Counsels, please identify
23  yourselves and your clients for the record.

24       THE COURT:  Mr. Minuti, I think we're all
25  reassembled and it's not necessary to enter your appearance.

6

1  I think you -- I've heard from everybody; it looks like
2  everybody is here.  I think you have some positive news to
3  report to the Court.
4          MR. MINUTI:  I do, Your Honor.  Again, Mark --
5          THE COURT:  Before you do that, I want to clear up
6  one thing from yesterday.
7          MR. MINUTI:  Yes, Sir.
8          THE COURT:  You may recall that during your
9  examination of one of the witnesses, you and I had a differing
10 recollection with respect to the testimony of Mr. Gorin with
11 respect to a particular point.  Immediately following the
12 hearing my law clerk informed me that her recollection and her
13 notes agreed with you and not me, and I have listened to the
14 tape and she and you were correct about what Mr. Gorin's
15 testimony was, so I apologize.  Carry on.
16         MR. MINUTI:  Thank you, Your Honor.  Appreciate
17 that.  Well, Your Honor, at the outset of the hearing I do
18 want to thank the Court and its staff for accommodating us
19 yesterday.  I appreciate it was a long day and so we wanted to
20 say thank you, and I know I speak for everybody in the
21 courtroom in doing so.  As I said yesterday, Your Honor, the
22 Debtors have a fiduciary duty to exercise their best business
23 judgment and to maximize value for the Estates, and that duty
24 does not end at the auction, and in fact it continues through
25 today and, frankly, up 'til this hearing, and it's going to

7

1   continue after this hearing.  The Debtors obviously listened
2   carefully yesterday to the evidence offered by Alliance
3   Entertainment.  We considered the comments from the Court
4   during yesterday's hearing which were very helpful.  And after
5   yesterday's hearing, Your Honor, the Committee had productive
6   discussions with Alliance Entertainment and ultimately
7   facilitated discussions among the Debtors, Alliance
8   Entertainment, JPMorgan Chase, and the Committee regarding
9   clarification of a number of issues and some proposals that
10  were made to maybe clear up some things and change a few
11  things around.  The parties have discussed a number of issues,
12  Your Honor, late into the night last night as well as this
13  morning, and Your Honor was gracious enough to give us an hour
14  before the Court -- before the hearing started again today,
15  and we continued those discussions.  Those discussions have
16  led to a number of changes that I'm -- that I would like to
17  read into the record.
18       Alliance Entertainment, Your Honor, and the Debtors are
19  now in agreement to move forward with Alliance Entertainment
20  as the successful bidder.  The agreements, Your Honor, or the
21  changes that we've agreed upon are the following:  All sides
22  are in agreement that there is going to be a full closing of
23  the transaction no later than April 25, '25.  That's going to
24  be subject to extension on mutual agreement.  I think I speak
25  for everybody when we hope it doesn't need to be extended.

8

1   The parties are going to use commercially reasonable efforts
2   to get to the closing, and all sides are going to commit and
3   dedicate the resources necessary to timely close the
4   transaction.  Those discussions and those resources, Your
5   Honor, things are going to start happening as early as today,
6   after this hearing.  But to be clear, Your Honor, Alliance
7   Entertainment has agreed that they're not going to reach out
8   to any vendors, any retailers, any customers, or any of the
9   Debtors' employees without the Debtors' prior written consent.
10  Alliance Entertainment has agreed to increase its deposit.
11  Its current deposit is $3.6 million.  They're going to
12  increase that deposit by $4.9 million, for a total deposit of
13  $8.5 million, and we understand that that increase in deposit
14  is going to occur by close of business tomorrow.
15       The Alliance Entertainment Asset Purchase Agreement is
16  going to be modified in several respects.  #1, Your Honor, the
17  current Asset Purchase Agreement provided for a lock box
18  arrangement.  Your Honor will recall there is an incentive
19  payment based on future events, and the lock box construct was
20  designed to protect the Debtor.  The APA is going to be
21  amended to essentially do away with the lock box, and in lieu
22  of the lock box, Alliance Entertainment is going to post the
23  4½-million-dollar letter of credit.  There is a number of
24  details that go along with that, Your Honor, but I am not
25  going to burden the record with that.  The Asset Purchase

1   Agreement is also going to be amended to create certain guard
2   rails for tracking the sale of inventory and collection of AR.
3   Again, that relates to the incentive payment.  We need to do
4   some wordsmithing there, Your Honor, but that doesn't seem to
5   be too complicated, and all parties are in agreement that
6   we're going to get there.
7        As part of this, moving forward, Your Honor, upon
8   approval of the Sale Order, Alliance Entertainment has agreed
9   to withdraw its adversary proceeding with prejudice, and that
10  obviously would include its request for injunctive relief and
11  so on.
12       We heard some testimony yesterday about Alliance
13  Entertainment's lender, White Oak, Your Honor.  White Oak, or
14  whoever is going to be providing the financing to allow
15  Alliance Entertainment to close this transaction, they are
16  updating their information to demonstrate that there is the
17  ability and financial ability to close.  We understand that
18  that's going to be provided by the end of today, and that
19  ability is going to show the ability to pay in cash the amount
20  necessary to pay the purchase price, and that would include
21  the breakup fee and the expense reimbursement.
22       We are going to add language to the proposed Sale Order,
23  Your Honor, to include limited releases of the parties'
24  disputes.  Remember, there was some dialogue yesterday about
25  the Debtors' allegations that Alliance Entertainment, for

1   example, breached the NDA.  We've got -- obviously we've got
2   the adversary proceeding.  We're going to include limited
3   releases, but those releases are not going to extend to claims
4   under the Asset Purchase Agreement, obviously, going forward.
5         Finally, Your Honor, the Order is going to provide that
6   the proceeds of the sale when closed are going to be used to
7   pay JPMorgan Chase's secured claim in full at closing.  Just
8   by way of coming attractions, Your Honor, given that we have
9   now agreed on a closing date of the 25th of this month, if
10  Your Honor is inclined to enter the Sale Order, we are going
11  to need additional financing or an amendment to our financing
12  to get there, so we are likely to be filing in the next day
13  another motion to amend our financing, along with a motion to
14  expedite, and so I just didn't want the Court to be surprised.
15  And we will obviously be here, to the extent Your Honor is
16  willing to give us a hearing, with evidence and ready to go to
17  prove the need and the propriety of that.
18        So that's what was agreed to, Your Honor.  I can tell you
19  it's been a lot of back-and-forth, a lot of sleepless nights,
20  but I am pleased that we are able to finally reach those
21  terms.  Now based on those discussions, Your Honor, the
22  Committee made it pretty clear to the Debtor that it believed
23  the transaction with Alliance Entertainment, as we've just
24  discussed and modified, is the highest and best transaction.
25  JPMorgan Chase, Your Honor, is supportive of the Committee's

1   position, or supportive of really going with whatever
2   transaction is going to get them paid off sooner rather than
3   later, as I am sure Your Honor can appreciate.  But sort of
4   bringing this back to the Debtors' business judgment, all of
5   those twists and turns, as I said, the testimony yesterday,
6   the evidence yesterday, the Court's comments, obviously all
7   caused the Debtors' management team to sort of reassess the
8   situation where we are.  And obviously the Committee is -- or
9   excuse me, the Debtors were very influenced by the views of
10  the consultation parties, because in some respects, Your
11  Honor, at the end of the day we're all working together to
12  maximize value and looking after the Debtors' Estates.  So all
13  of those things, Your Honor, now convinced the Debtors that
14  moving forward with the transaction with Alliance
15  Entertainment, subject to the changes and the amendments I
16  just put on the record, that is the best path, that is what's
17  in the best interest of the Debtor, and the Debtors believe in
18  their business judgment that we should move forward.
19       So what we would propose to do, Your Honor, if Your Honor
20  is willing, is to obviously go back and make the changes and
21  amendments I have put on the record.  We are obviously -- we
22  will file an updated Asset Purchase Agreement with those
23  changes, we will file a Sale Order, we will endeavor to serve
24  that Sale Order on all the parties in interest, for example
25  the landlord parties.  The landlord for the Olive Branch

12

1   facility grabbed me right before the hearing and said am I
2   going to have a chance to see the Sale Order before it gets
3   filed, and I told her we would, we would do that, so I am
4   committing that on the record.  And so the idea would be for
5   us to finalize the Sale Order, circulate that, make sure we
6   have folks' comments, file the Amended Asset Purchase
7   Agreement, and file the Sale Order; we would ask that Your
8   Honor, if you're inclined, to sign that.  Obviously if Your
9   Honor has any questions or concerns, we can obviously come
10  back for a hearing, but we're mindful that these hearings are
11  very expensive, and so if there is no need for that, that
12  would be our preference.  But again, if the Court has any
13  concerns or wants any clarifications, we're happy to do that.
14  So that's where we are, Your Honor.  Again, we appreciate the
15  time.  I know yesterday was long, but I think we've used the
16  time productively.  I'm certain other people are going to want
17  to speak and comment and correct maybe what I said, but again,
18  Your Honor, let me just pause and ask if you have any
19  questions of me.
20          THE COURT:  So how soon do you think we should be
21  looking for the Sale Order?  Just my information.  I'm not
22  trying to pressure you one way or the other.
23          MR. MINUTI:  Your Honor, Thursday.
24          THE COURT:  Today is --
25          MR. MINUTI:  Tuesday, right?

```
 1              THE COURT:  -- Tuesday.  Okay.  Time starts to run
 2   together, even for us on this side of the bench.  The hearing
 3   on the DIP financing, what sort of timing do you have on that?
 4              MR. MINUTI:  I think we were thinking about late
 5   next week.
 6              THE COURT:  Late next week.  Monday is too soon for
 7   you?
 8              MR. MINUTI:  It wouldn't be too soon for us, Your
 9   Honor.  We'd obviously have to get the -- I think we can do
10   the amendment pretty quickly.  It's obviously going to require
11   a motion to expedite.  But if Your Honor is available Monday,
12   we can come in Monday.
13              THE COURT:  Well, I was just trying to accommodate
14   whatever deadline you might have in mind or you were worried
15   about.
16              MR. RUEDIGER:  Well, Your Honor, sorry, David
17   Ruediger for JPMorgan.  I just need to clarify one thing, if I
18   could come up.  Sorry to do this to you.  We don't have
19   approval --
20              THE CLERK:  You can't speak from back there.  You
21   have to be at the podium.
22              MR. RUEDIGER:  We just want to clarify, and my
23   colleague is going to go through our position on all of these
24   items, but just on --
25              THE COURT:  Who are you, sir?
```

14

1            MR. RUEDIGER:  David Ruediger.
2            THE COURT:  Are you an attorney?
3            MR. RUEDIGER:  I am an attorney, yes.
4            THE COURT:  Okay.
5            MR. RUEDIGER:  Yes.  I was read in yesterday.
6    Sorry.  I just wanted to point out that JPMorgan has not
7    approved any DIP increase because they have not received a
8    budget, so the timing on Monday, we'd be fine with that if we
9    can get a budget prior to that to be able to -- I just -- we
10   don't have any approval because we don't what the ask is.
11   Just letting you --
12           THE COURT:  Okay.
13           MR. RUEDIGER:  I didn't want to in any way have the
14   -- Your Honor think otherwise.
15           THE COURT:  I understand.
16           MR. RUEDIGER:  So, sorry.
17           THE COURT:  I'm not trying to rush the process, I'm
18   only trying to accommodate the Debtors' desire to move it
19   along.
20           MR. RUEDIGER:  And we appreciate and want to do
21   that, too.  We just learned of it, essentially last night,
22   that we would need to increase it.
23           THE COURT:  So Mrs. Scott is telling me we could do
24   it at 2 p.m. on the 17th, is that better?
25           MR. MINUTI:  Your Honor, do you have any time

                                                                 15

1    available on Tuesday, Your Honor, or Wednesday?
2              THE COURT:  Monday.  Monday at 9:30; 17th at 2 p.m.
3              MR. MINUTI:  Monday at 9:30.
4              THE COURT:  Okay.
5              MR. MINUTI:  Thank you, Your Honor.  Your Honor,
6    before I cede the podium to any others, I have been asked to
7    put the -- I mentioned that 4½-million-dollar letter of credit
8    in place of the lock box concept.  I have been asked to put a
9    couple of terms on the record related to that.  The letter of
10   credit, Your Honor, is going to be in the amount of $4½
11   million.  It can be drawn in full.  If in fact -- if Alliance
12   Entertainment misses a payment, the term of that LC is going
13   to be 12 months, and we obviously have the ability to sue for
14   the balance if the LC is withdrawn.  I believe that's the
15   understanding; I wanted to put those terms on the record.
16   Again, if the Court has any questions of me before I cede the
17   podium, I am happy to answer those.  But again, we're pleased
18   to where we are and it was painful getting here, but it's
19   what's best for the Estate, Your Honor.
20             THE COURT:  All right, I understand.  Thank you.  I
21   don't have any questions.
22             MR. MINUTI:  Thank you.
23             THE COURT:  Mr. Teele?
24             MR. TEELE:  Thank you, Your Honor.  Jason Teele on
25   behalf of Alliance Entertainment.  First, thank you for your

1   courtesies yesterday as well as today.  I think we did use the
2   time after the hearing and this morning productively.
3   Alliance Entertainment is supportive of the settlement that
4   Mr. Minuti just read into the record.  The terms that he
5   stated are accurate to our knowledge.  It was the subject of
6   very lengthy and sometimes very hard negotiations among
7   multiple parties, so we would urge Your Honor to approve that
8   once you see the Sale Order and are comfortable with the terms
9   of the Sale Order.
10              THE COURT:  Okay, thank you.
11              MR. TEELE:  Thank you.
12              THE COURT:  Committee?
13              MR. FINIZIO:  For the record, Gianfranco Finizio,
14  Lowenstein Sandler, for the Creditors Committee.  I'll echo
15  what some party said before me.  The evidence and hearing that
16  evidence yesterday was extremely helpful.  As I said in my
17  opening remarks, the Committee found itself in the middle of a
18  pretty aggressive rock fight between the bidder and the
19  Debtors' Estate.  We used that position to play honest broker,
20  and I think doing that was really effective and ultimately got
21  parties that had retreated into their separate camps to come
22  together in a room together, and I think what was the result
23  of that was a settlement that maybe a week ago no one thought
24  was possible.  So I'm happy that we have reached this point.
25  I think the record that Mr. Minuti made is correct.  We look

1  forward the seeing the documents, the Sale Order and the APA,
2  and we are glad that we have reached this point, and we are
3  looking forward to a closing on April 25th, Your Honor.
4           THE COURT:  All right, good.  Thank you.  Does the
5  DIP lender want to be heard?
6           MS. CULBERTSON:  Katherine Culbertson of Troutman
7  Pepper Locke, on behalf of JPMorgan Chase Bank, the DIP
8  lender.  You met my colleague, Dave Ruediger.  I'm clarifying
9  a couple points that counsel earlier touched on.  So at the
10 start of yesterday, we argued that speed and certainty of
11 closing were paramount to the sale transaction closing.  Based
12 on that perspective, we agreed and -- in support of Universal
13 and Ad Populum, following the Debtors' business judgment.
14 After a full day of evidence and an evening and morning of
15 discussion and negotiation, the Debtors have made a further
16 decision that Alliance is now the highest and best bidder.
17 JPMorgan is still willing to defer to the Debtors' business
18 judgment on this point, but our client still has strong
19 concerns about execution risk and certainty of closing.  We
20 understand that the closing date could now go as far out as
21 April 25th.  That's a far cry from yesterday's testimony that
22 they would close in one to three days.  Accordingly, JPMorgan
23 has requested that Alliance provide an updated commitment
24 letter from its financing sources, assuring that Alliance has
25 the financial wherewithal to meet its funding obligations.  We

1  understand that Alliance has agreed to provide such letter by
2  the end of today, which is sufficient for our clients.
3       In order to accommodate the April 25th closing, JPMorgan
4  would need to agree to extensions of milestones in the DIP
5  Order and DIP Credit Agreement, currently requiring approval
6  and closing of this sale transaction well before April 25th.
7  We further understand that the Debtors will be seeking an
8  increase in the maximum DIP facility amount.  We have not
9  received an updated budget or a specific request for an
10 increase, all of which would require JPMorgan approval.  While
11 JPMorgan is supportive, there can be no assurance that any
12 such increase will be approved as it's been a very hectic 24
13 hours and we haven't got approval from our clients.
14      Before providing any such consent, we'll also need to be
15 comfortable with the proposed Sale Order and updating budget
16 for the intervening period.  JPMorgan will also need assurance
17 that the closing will be accompanied by a clean payoff of the
18 DIP facility, a termination of the DIP facility, and waiver of
19 any challenged rights upon closing.  If JPMorgan cannot get
20 satisfactory assurances on these points, then JPMorgan
21 reserves all rights and objections to both the Sale Order and
22 connection with resulting defaults under the DIP Order.  Those
23 factors should be taken into account and addressed before the
24 current sale transaction is approved.
25      In sum, JPMorgan wants to see a successful transaction as

1   much as any other party, but the timing and terms of the
2   transaction must be consistent with JPMorgan's rights, claims
3   and liens under the final DIP Order and DIP Credit Agreement.
4   Thank you, Your Honor.  We appreciate the Court's
5   consideration of these issues.
6              THE COURT:  Thank you.  Before I turn to Mr.
7   Bernstein, is there anyone else who wishes to be heard?
8              ALL:  (No verbal response).
9              THE COURT:  No takers.  Mr. Bernstein.
10             MR. BERNSTEIN:  Your Honor, we have no objection to
11  the proposals that are being made today.  Obviously I'm not
12  involved in those, you know, negotiations, but that seems fine
13  with us.
14             THE COURT:  Okay, thank you.
15             MR. BERNSTEIN:  Thank you.
16             THE COURT:  Anything else from you, Mr. Minuti?
17             MR. MINUTI:  Your Honor, I apologize for doing this,
18  but if we could, I'd like to revisit the date of the potential
19  DIP hearing.  When I sat down, what I'm hearing from my client
20  is they need the numbers to come in to create the budget for
21  that, and it's just not going to be possible to have it done
22  in time for a hearing on Monday.
23             THE COURT:  Okay.
24             MR. MINUTI:  I think Your Honor said you had time on
25  Thursday.  If that's true, we would take that time.

1          THE COURT:  April 17th at 2 p.m.

2          MR. MINUTI:  Thank you, Your Honor.

3          THE COURT:  Okay, so that's what we'll do.  All

4   right, well, based upon all of that, I'm glad to see that this

5   progress has been made.  I hope a successful transaction does

6   close and I am prepared to review and approve an Order that's

7   consistent with what's been represented to the Court today to

8   be the agreement of the parties.  Thank you all and

9   congratulations on the progress.

10         ALL:  Thank you, Your Honor.

11         THE CLERK:  All rise.  This Court is adjourned.

12     (Court adjourned)

13

14                        CERTIFICATION
15  I, Lewis Parham, certify that the foregoing is a correct
16  transcript from the electronic sound recording of the
17  proceedings in the above-entitled matter.
18
19
20  *Lewis Parham* (signature)                    4/11/25
21
22  _____        _____
23  Signature of Transcriber                  Date