Entered: May 1st, 2025
Signed: May 1st, 2025

**SO ORDERED**



DAVID E. RICE
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 387** |

### ORDER APPROVING THIRD STIPULATION BETWEEN DEBTORS AND JPMORGAN CHASE BANK, N.A., AMENDING DIP CREDIT AGREEMENT

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order pursuant to section 105(a) and 364 of the Bankruptcy Code, approving the third stipulation between the Debtors and JPMorgan Chase Bank, N.A. (the "DIP Lender") amending the DIP Credit Agreement (the "Third Stipulation"); and it appearing that this Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these chapter 11 cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is

---

[1]    The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585).  The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2]    Capitalized terms used but not defined herein are defined in the Motion or the Third Stipulation, as applicable.

55499140.8

a core proceeding pursuant to 28 U.S.C. § 157(b); and upon the testimony of Robert Gorin in support of the *Debtors' Motion for Entry of Order Approving Third Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement*; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Third Stipulation attached hereto as **<u>Exhibit 1</u>** is approved.  Subject to the modifications provided for and authorized by this Order, the Third Stipulation and the DIP Credit Agreement Amendment—the Final DIP Order and DIP Credit Agreement remain in full force and effect in accordance with their terms.

3.      The Debtors and DIP Lender are authorized to enter into, perform, and consummate the transactions set forth in and contemplated under the Third Stipulation.

4.      Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon its entry.

5.      The Debtors and DIP Lender are authorized to take all actions that are necessary and appropriate to effectuate the relief granted in this Order.

55499140.8

6.      This Court retains jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

**END OF ORDER**

55499140.8

**Exhibit 1**

**Stipulation**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

**THIRD STIPULATION BETWEEN DEBTORS AND JPMORGAN CHASE
BANK, N.A., AMENDING DIP CREDIT AGREEMENT**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") and JPMorgan Chase Bank, N.A. (the "DIP Lender", and together with the Debtors, the "Parties"), hereby stipulate and agree (this "Third Stipulation") as follows:

**WHEREAS**, on January 14, 2025, the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") and, since filing their petitions for relief, have continued to manage their businesses and assets as debtors in possession pursuant to section 1107 and 1108 of the Bankruptcy Code;

**WHEREAS**, on February 19, 2025, the Bankruptcy Court entered its *Final Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* (D.I. 163) (the "Final DIP Order") pursuant to which, among other things, the Debtors were granted authority to obtain senior secured postpetition financing pursuant to the terms and

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

conditions of the Final DIP Order and that certain senior secured Debtor-in-Possession Credit Agreement, dated as of January 16, 2025 (as amended by that certain First Amendment to Debtor-in-Possession Credit Agreement, dated as of February 11, 2025, and that certain Second Amendment to Debtor-in-Possession Credit Agreement dated as of February 25, 2025, that certain Third Amendment to the Debtor-in-Possession Credit Agreement dated as of March 19, 2025, and that certain Fourth Amendment to the Debtor-in-Possession Credit Agreement dated as of April 30, 2025 the "DIP Credit Agreement");

**WHEREAS**, on March 19, 2025, the Court entered the Order Approving Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement., and on April 17, 2025, the court entered the Order Approving Second Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement.

**WHEREAS**, subject to approval of the Court, the Parties have agreed to amend the provision of the DIP Credit Agreement that defines "Maturity Date" to be defined as:

> "Maturity Date" means, at the election of the DIP Lender, the earliest to occur of: (a) the date on which the DIP Lender provides, via electronic or overnight mail, written notice to counsel for the Debtors and counsel for any Committee of the occurrence and continuance of an Event of Default; (b) the effective date of an Approved Plan; (c) the filing of any chapter 11 plan other than an Approved Plan by the Debtors or any party in interest; unless such plan contemplates the indefeasible payment in full in cash of the Aggregate Credit Obligations; (d) the date that the Bankruptcy Court orders (x) the conversion of the Chapter 11 Cases to Chapter 7 liquidations, or (y) a dismissal of the Chapter 11 Cases; or (e) May 31, 2025.

**WHEREAS**, subject to approval of the Court, the Parties have agreed on the other terms and conditions of the DIP Credit Agreement Amendment (as defined below); and

**WHEREAS**, the DIP Lender is prepared to consent to the requested modification to the Maturity Date, and the other terms and conditions set forth in the DIP Credit Agreement

55499140.8

Amendment, subject to the terms and conditions of this Third Stipulation and the approval of the Court.

**NOW, THEREFORE**, subject to the approval of the Bankruptcy Court, the Parties hereby stipulate and agree as follows:

1.     The Parties shall enter into an amendment (the "DIP Credit Agreement Amendment") to the DIP Credit Agreement in substantially the form attached hereto as Exhibit A to, among other things, modify the definition of Maturity Date, and shall file the Debtors executed DIP Credit Agreement Amendment on the docket in these cases.

2.     The modification of the term Maturity Date and the Debtors' related rights to borrow shall be deemed authorized and approved pursuant to section 364 of the Bankruptcy Code effective upon the Bankruptcy Court's entry of an order approving this Third Stipulation (the "Stipulation Order").

3.     Subject to the modifications provided for and authorized by the Stipulation Order, this Third Stipulation and the DIP Credit Agreement Amendment—the Final Order and DIP Credit Agreement remain in full force and effect in accordance with their terms, and the Debtors reaffirm and ratify all of such terms.

4.     Each Party is duly authorized and empowered to execute this Third Stipulation.

5.     The Bankruptcy Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Third Stipulation or the Stipulation Order.

6.     All of the recitals set forth above are incorporated by reference as if fully set forth herein.   This Third Stipulation constitutes the complete express agreement of the Parties concerning the subject matter hereof.

55499140.8

7.    Each Party has participated in and jointly consented to the drafting of this Third

Stipulation and any claimed ambiguity shall not be construed for or against either Party on account

of such drafting.

Dated: April 30, 2025

**SAUL EWING LLP**

*/s/ Jordan D. Rosenfeld*
Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
Turner N. Falk (admitted *pro hac vice*)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
adam.isenberg@saul.com
turner.falk@saul.com

-and-

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
paige.topper@saul.com
nicholas.smargiassi@saul.com

*Counsel for Debtors and Debtors in Possession*

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Jonathan W. Young*
Toyja E. Kelley
Indira K. Sharma
Jonathan W. Young
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004
Tel: (202) 274-2950
Email: Toyja.Kelley@troutman.com
Indira.Sharma@troutman.com
Jonathan.Young@troutman.com

-and-

David L. Ruediger
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 239-0100
Email: David.Ruediger@troutman.com

*Counsel for JPMorgan Chase Bank N.A.*

Exhibit A

DIP Credit Agreement Amendment

**FIFTH AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT**

This FIFTH AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT, dated as of April 30, 2025 (this "Amendment"), is by and among debtor-in possession DIAMOND COMIC DISTRIBUTORS, INC., a Maryland corporation ("Diamond") as the "Borrower" (in such capacity, the "Borrower"), the other Loan Parties from time to time party to the DIP Credit Agreement referenced below, Stephen A. Geppi (the "Individual Guarantor"), and JPMORGAN CHASE BANK, N.A., as the "DIP Lender" (in such capacity, the "DIP Lender").

WHEREAS, reference is made to the Debtor-in-Possession Credit Agreement dated as of January 16, 2025 (as amended by that certain First Amendment to Debtor-in-Possession Credit Agreement, dated as of February 11, 2025, that certain Second Amendment to Debtor-in-Possession Credit Agreement dated as of February 25, 2025, that certain Third Amendment to Debtor-in-Possession Credit Agreement dated as of March 19, 2025, and that certain Fourth Amendment to Debtor-in-Possession Credit Agreement, dated as of April 22, 2025, the "DIP Credit Agreement") by and among the Borrower, the other Loan Parties that are parties to the DIP Credit Agreement, the Individual Guarantor and the DIP Lender;

WHEREAS, capitalized terms used herein without definition shall have the meanings ascribed to such terms in the DIP Credit Agreement, as amended by this Amendment, as applicable; and

WHEREAS, the parties to the DIP Credit Agreement desire to amend certain provisions of the DIP Credit Agreement, all as more fully set forth herein;

NOW, THEREFORE, in consideration of the foregoing and the agreements contained herein, the parties hereby agree as follows:

1.      Amendments to the DIP Credit Agreement.  In reliance on the terms and conditions set forth in this Amendment, the DIP Lender hereby agrees with the Borrower, the other Loan Parties and the Individual Guarantor that the Definitions Schedule to the DIP Credit Agreement and the Borrowing Base Schedule to the DIP Credit Agreement be, and they hereby are, amended as follows:

(a)      Amendment to Section 6.06.  Section 6.06 of the DIP Credit Agreement is hereby amended by amending clause (d) of Section 6.06 to read as follows (with deleted text shown in the same manner as the following example: ~~deleted text~~ and with added text shown in the same manner as the following example: added text):

"(d)      the ~~Alliance Game Division Sale~~ Sale Transactions; or

(b)      Amendment to Definitions Schedule.  The Definitions Schedule to the DIP Credit Agreement is hereby amended by amending and restating the defined terms "Maturity Date" and "Maximum DIP Facility Amount" to read as follows (with deleted text shown in the same manner as the following example: ~~deleted text~~ and with added text shown in the same manner as the following example: added text):

"Maturity Date" means, at the election of the DIP Lender, the earliest to occur of: (a) the date on which the DIP Lender provides, via electronic or overnight mail, written notice to counsel for the Debtors and counsel for any Committee of the occurrence and continuance of an Event of Default; ~~(b) the closing date of the Sale Transactions; (c)~~ (b) the effective date of an Approved Plan; ~~(d)~~ (c) the filing of any chapter 11 plan other than an Approved Plan by the Debtors or any party in interest; unless such plan contemplates the indefeasible payment in full in cash of the Aggregate Credit Obligations; ~~(e)~~ (d) the

date that the Bankruptcy Court orders (x) the conversion of the Chapter 11 Cases to Chapter 7 liquidations, or (y) a dismissal of the Chapter 11 Cases; or ~~(f) April 30, 2025~~ (e) May 31, 2025.

"Maximum DIP Facility Amount" means (a) from the Petition Date through and including the closing of the Sale Transaction~~s~~, $47,700,000 and (b) at all times after the closing of the Sale Transaction~~s~~, ~~$0~~$5,800,000.

(c)    Amendment to Definitions Schedule.  The Definitions Schedule to the DIP Credit Agreement is hereby further amended by adding the following new defined term (with deleted text shown in the same manner as the following example: ~~deleted text~~ and with added text shown in the same manner as the following example: added text):

"Sale Transaction~~s~~" means the sale~~s~~ of substantially all of the Debtors' assets to ~~Alliance Entertainment, LLC ("Alliance")~~ Universal Distribution, LLC, and Sparkle Pop, LLC – an affiliate of Ad Populum, LLC, in accordance with ~~the~~ order~~s~~ to be entered by the Bankruptcy Court on or about April ~~11~~30, 2025, the closing of which sale~~s~~ are ~~is~~ anticipated to occur on or ~~about April 25, 2025~~ before May 17, 2025.

(d)    Amendment to Borrowing Base Schedule.  The Borrowing Base Schedule to the DIP Credit Agreement is hereby amended by amending and restating the defined term "Overadvance Amount" to read as follows (with deleted text shown in the same manner as the following example: ~~deleted text~~ and with added text shown in the same manner as the following example: added text):

"Overadvance Amount" means the applicable amounts set forth below during the applicable periods set forth below:

| Applicable Period | Overadvance Amount |
|---|---|
| Filing Date through date of entry of Final Financing Order | $6,750,000 |
| Date of entry of Final Financing Order through the closing of the Sale Transaction~~s~~ | ~~$20,500,000~~$23,150,000 |
| First day following the closing of the Sale Transaction~~s~~ through the Maturity Date | ~~$0~~$4,500,000 |

2.    Approved Budget.    The updated Approved Budget attached as **Exhibit A** to this Amendment is hereby approved by the DIP Lender and shall constitute the "Approved Budged" for purposes of the DIP Credit Agreement and the Financing Order as in effect on the date of this Amendment and shall remain in effect until such time as further updated Budgets have been delivered to, and approved by, the DIP Lender, as provided in the Reporting Schedule to the DIP Credit Agreement.

3.    Updated Milestones.  The updated Milestones attached as **Exhibit B** to this Amendment shall replace the Milestones previously set forth on "Exhibit B" to the DIP Credit Agreement (with deleted text shown in the same manner as the following example: ~~deleted text~~ and with added text shown in the same manner as the following example: added text).  The Borrower acknowledges and agrees that, unless

waived by the DIP Lender in its sole discretion, the failure of any of the updated Milestones to be timely satisfied shall constitute an immediate Event of Default under the DIP Credit Agreement.

4.       <u>Continuing Lien on Residual Assets</u>.  Pursuant to the DIP Loan Documents and the Financing Order, at all times prior to and after the closing of the Sale Transaction, the DIP Obligations shall continue to be secured by first priority liens on all assets of the Debtors and the other Loan Parties (other than those assets sold by the Debtors pursuant to the Sale Transaction following the consummation of the Sale Transaction), including, without limitation, all of the Debtors' rights and interests in and to any holdback or escrow amounts, incentive fee payments or other contingent consideration that may from time to time be due and owing to the Debtors arising out of or relating to the Sale Transaction, the Debtors' interests in any funds deposited by any Persons pursuant to the Bidding Procedures, the Debtors' claims against any Persons arising out of or relating to the Bidding Procedures or the Sale Transaction, any and all Avoidance Actions, the Debtors' equity interests in DCDUK, and all other rights, claims and interests of the Debtors in and to any other assets of the Debtors or the other Loan Parties.  For the avoidance of doubt, the Sale Transaction shall not constitute a release or modification of any rights of the DIP Lender or the Prepetition Lender under any and all guaranties made by the Loan Parties and/or the Individual Guarantor of the DIP Obligations and/or the Prepetition Obligations.

5.       <u>Representations and Warranties, Etc</u>.  The Loan Parties hereby confirm that after giving effect to this Amendment, the representations and warranties of the Loan Parties set forth in <u>Article III</u> of the DIP Credit Agreement are true and correct in all material respects (provided that if any representation or warranty is by its terms qualified by concepts of materiality, such representation or warranty shall be true and correct in all respects) on and as of the date of this Amendment as if made on such date (except to the extent that such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall have been true and correct as of such earlier date).

6.       <u>Ratification, Confirmation and Acknowledgment</u>.  The Borrower, the other Loan Parties, and the Individual Guarantor hereby ratify and confirm all terms and provisions of the DIP Credit Agreement and the other Loan Documents and agree that all such terms and provisions, as amended hereby, remain in full force and effect.

7.       <u>Certain Conditions to this Amendment</u>.  This Amendment shall become effective on the date on which each of the following conditions is satisfied:

(a)       The DIP Lender shall have received (i) a counterpart of this Amendment signed on behalf of each party hereto or (ii) written evidence satisfactory to the DIP Lender (which may include telecopy or electronic mail transmission of a signed signature page to this Amendment) that each party hereto has signed a counterpart of this Amendment; and

(b)       The Bankruptcy Court in the Chapter 11 Cases shall have approved (whether by oral ruling and/or written order) the extension of the Maturity Date of the DIP Credit Facility as contemplated by this Amendment.

(c)       The Bankruptcy Court in the Chapter 11 Cases shall have approved (whether by oral ruling and/or written order) the sales of substantially all of the Debtors' assets to Universal Distribution, LLC, and Sparkle Pop, LLC – an affiliate of Ad Populum, LLC.

8.       <u>Miscellaneous</u>.

(a)       Except as otherwise expressly set forth herein, nothing herein shall be deemed to constitute an amendment, modification or waiver of any of the provisions of the DIP Credit

Agreement or the other DIP Loan Documents, all of which remain in full force and effect as of the date hereof and are hereby ratified and confirmed.

(b)     This Amendment may be executed in any number of counterparts, each of which, when executed and delivered, shall be an original, but all counterparts shall together constitute one instrument.   Delivery of an executed counterpart of a signature page of this Amendment by facsimile or electronic mail shall be equally effective as delivery of a manually executed counterpart of this Amendment.

(c)     This Amendment shall be governed by the laws of the State of New York and shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

(d)     This Amendment constitutes a "DIP Loan Document" as such term is defined in the DIP Credit Agreement.

(e)     The Borrower agrees to pay all reasonable and documented out-of-pocket expenses (including the reasonable legal fees and disbursements of Troutman Pepper Locke LLP, special US counsel to the DIP Lender), incurred by the DIP Lender in connection with this Amendment and the transactions contemplated hereby.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties hereto have executed this Fifth Amendment to Debtor-in-Possession Credit Agreement, which shall be deemed to be a sealed instrument as of the date first above written.

BORROWER:

**DIAMOND COMIC DISTRIBUTORS, INC.**

By: _____
Name: CHARLES PARKER
Title: President

**OTHER LOAN PARTIES:**

**COMIC EXPORTERS, INC.**

By: _____
Name: CHARLES PARKER
Title: President

**COMIC HOLDINGS, INC.**

By: _____
Name: CHARLES PARKER
Title: Director

**DIAMOND SELECT TOYS AND COLLECTIBLES, LLC**

By: _____
Name: STEPHEN A GEPPI
Title: MANAGER

**DIAMOND COMIC DISTRIBUTORS,** an unlimited company incorporated under the laws of England and Wales

By: _____
Name: CHARLES PARKER
Title: DIRECTOR

**ROSEBUD ENTERTAINMENT, LLC**

By: _____
Name: STEPHEN A Geppi
Title: Member

[Signature Page to Fifth Amendment to DIP Credit Agreement]

**RENEGADE GAMES, LLC**

By: _____

Name: STEPHEN A. Geppi

Title: MANAGER

**GAME CONSOLIDATORS, LLC**

By: _____

Name: STEPHEN A. Geppi

Title: MANAGER

**INDIVIDUAL GUARANTOR:**

_____

Stephen A. Geppi, individually

**DIP LENDER**:

**JPMORGAN CHASE BANK, N.A.**

By: _____
Name: Angela Leake
Title:   Authorized Officer

**<u>Exhibit A</u>**

**Approved Budget**

[See Attached]

| x | CONSOLIDATED_WF CF FORECAST WEEK WEEK ENDED | FORECAST 1 4/26/2025 | FORECAST 2 5/3/2025 | FORECAST 3 5/10/2025 | FORECAST 4 5/17/2025 | FORECAST 5 5/24/2025 | FORECAST 6 5/31/2025 | FORECAST GRAND TOTAL |
|---|---|---|---|---|---|---|---|---|
| x | **CASH RECEIPTS** | 4/26/2025 | 5/3/2025 | 5/10/2025 | 5/17/2025 | 5/24/2025 | 5/31/2025 | TOTAL |
| | Customer Receipts | 4,445,818 | 5,002,053 | 4,267,208 | 4,278,942 | – | – | 17,994,020 |
| | **TOTAL CASH RECEIPTS** | **4,445,818** | **5,002,053** | **4,267,208** | **4,278,942** | **–** | **–** | **17,994,020** |
| x | **CASH DISBURSEMENTS** | 4/26/2025 | 5/3/2025 | 5/10/2025 | 5/17/2025 | 5/24/2025 | 5/31/2025 | TOTAL |
| | ***OPERATING DISBURSEMENTS*** | | | | | | | |
| | Bank/Credit Card Fees | – | (139,304) | – | – | (21,000) | – | (160,304) |
| | Contingency | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (150,000) |
| | Employee Benefits | (200,000) | (87,290) | (200,000) | (75,000) | (200,000) | (175,000) | (937,290) |
| | Freight | (874,825) | (359,050) | (293,209) | (344,215) | (653,545) | – | (2,524,844) |
| | Insurance | – | – | – | – | – | – | – |
| | Inventory | (2,265,458) | (3,365,574) | (3,571,465) | (3,534,894) | – | – | (12,737,391) |
| | Other Operating Expense | (155,222) | (180,222) | (155,222) | (155,222) | (155,222) | (130,222) | (931,332) |
| | Payroll | – | (1,216,366) | – | (1,114,750) | – | (557,375) | (2,888,491) |
| | Payroll - Accrued PTO | – | – | – | – | – | (175,000) | (175,000) |
| | Payroll - KEIP | – | – | – | – | – | – | – |
| | Rent & Utilities | (4,065) | (384,954) | (31,598) | (4,065) | – | – | (424,682) |
| | Temporary Labor | (194,718) | (194,718) | (194,718) | (194,718) | – | – | (778,872) |
| | Total Operating Disbursements | (3,719,287) | (5,952,479) | (4,471,212) | (5,447,864) | (1,054,767) | (1,062,597) | (21,708,206) |
| | **NET OPERATING CASH FLOW** | **726,531** | **(950,426)** | **(204,004)** | **(1,168,923)** | **(1,054,767)** | **(1,062,597)** | **(3,714,186)** |
| | ***NON-OPERATING DISBURSEMENTS*** | | | | | | | |
| | Claims & Noticing Agent | (275,000) | – | – | – | – | – | (275,000) |
| | GUC's Professional Fees | (100,000) | (100,000) | (100,000) | (100,000) | (100,000) | (100,000) | (600,000) |
| | Independent Board Director | – | – | (45,000) | – | – | – | (45,000) |
| | RJ DIP Fee, Monthly Fee + Expenses | – | (50,000) | – | – | – | – | (50,000) |
| | Raymond James Transaction Fee[1] | – | – | – | (2,942,170) | – | – | (2,942,170) |
| | Lender Professional Fees | – | (275,000) | – | (125,000) | – | – | (400,000) |
| | Professional Fees - Debtor | (225,000) | (225,000) | (225,000) | (225,000) | (225,000) | (225,000) | (1,350,000) |
| | US Trustee | – | – | – | (250,000) | – | – | (250,000) |
| | Total Non-Operating Disbursements | (600,000) | (650,000) | (370,000) | (3,642,170) | (325,000) | (325,000) | (5,912,170) |
| | DIP Interest | – | (287,081) | – | (146,146) | – | – | (433,227) |
| | Financing Fees | – | – | – | (575,000) | – | – | (575,000) |
| | Total Credit Disbursements | – | (287,081) | – | (721,146) | – | – | (1,008,227) |
| | **TOTAL DISBURSEMENTS** | **(4,319,287)** | **(6,889,559)** | **(4,841,212)** | **(9,811,181)** | **(1,379,767)** | **(1,387,597)** | **(28,628,603)** |
| x | **NET CASH FLOW** | **126,531** | **(1,887,507)** | **(574,004)** | **(5,532,239)** | **(1,379,767)** | **(1,387,597)** | **(10,634,583)** |
| | *Cum. Change in Cash* | *126,531* | *(1,760,976)* | *(2,334,980)* | *(7,867,219)* | *(9,246,986)* | *(10,634,583)* | *(10,634,583)* |

| RECONCILIATION SUMMARY WEEK ENDED | FORECAST 4/26/2025 | FORECAST 5/3/2025 | FORECAST 5/10/2025 | FORECAST 5/17/2025 | FORECAST 5/24/2025 | FORECAST 5/31/2025 | FORECAST TOTAL |
|---|---|---|---|---|---|---|---|
| Book Cash Balance, Beginning of period | – | – | – | – | – | – | – |
| Net Change in Cash | 126,531 | (1,887,507) | (574,004) | (5,532,239) | (1,379,767) | (1,387,597) | (7,867,219) |
| Net Change in Debt | (126,531) | 1,887,507 | 574,004 | 5,532,239 | 1,379,767 | 1,387,597 | 7,867,219 |
| **Book Cash Balance, End of period** | **–** | **–** | **–** | **–** | **–** | **–** | **–** |
| DIP Revolver, Beginning of Period | 41,719,484 | 41,592,953 | 43,480,460 | 44,054,464 | 1,790,542 | 3,170,309 | 41,719,484 |
| DIP Revolver Paydown | (4,445,818) | (5,002,053) | (4,267,208) | (4,278,942) | – | – | (17,994,020) |
| DIP Revolver Draw | 4,319,287 | 6,889,559 | 4,841,212 | 6,869,011 | 1,379,767 | 1,387,597 | 25,686,433 |
| Net Sale Proceeds | – | – | – | (44,853,991) | – | – | (44,853,991) |
| *DIP Revolver, End of Period / (Cash on Hand)* | *41,592,953* | *43,480,460* | *44,054,464* | *1,790,542* | *3,170,309* | *4,557,906* | *4,557,906* |
| *Total Debt, End of Period / (Cash on Hand)* | *41,592,953* | *43,480,460* | *44,054,464* | *46,644,533* | *3,170,309* | *4,557,906* | *4,557,906* |
| Gross Sale Proceeds | – | – | – | (47,796,161) | – | – | – |
| Raymond James Transaction Fee | – | – | – | 2,942,170 | – | – | – |
| ***Total Debt Balance / (Cash on Hand)*** | *41,592,953* | *43,480,460* | *44,054,464* | *1,790,542* | *3,170,309* | *4,557,906* | *4,557,906* |
| Borrowing Base Availability | 24,594,011 | 23,081,926 | 23,022,584 | 23,265,503 | | | |
| Cash Collateral LC / Credit Card | 1,510,000 | 1,510,000 | 1,510,000 | 1,510,000 | 1,510,000 | 1,510,000 | 1,510,000 |
| Total Debt, End of Period | (41,592,953) | (43,480,460) | (44,054,464) | (46,644,533) | (3,170,309) | (4,557,906) | (4,557,906) |
| Letter of Credit | – | – | – | – | – | – | – |
| Rent Reserve | (53,705) | (53,705) | (53,705) | (53,705) | (53,705) | (53,705) | (53,705) |
| **Net Availability / (Overadvance)** | **(15,542,648)** | **(18,942,239)** | **(19,575,576)** | **(21,922,735)** | **(1,714,014)** | **(3,101,611)** | **(3,101,611)** |
| **Post Close - Net Availability / (Overadvance)** | **(15,542,648)** | **(18,942,239)** | **(19,575,576)** | **–** | **–** | **–** | **–** |

**Exhibit B**

**Milestones**

The following events constitute the Chapter 11 Case milestones required under the DIP Credit Agreement (each, a "Milestone"), which Milestones may be extended in writing by the DIP Lender in its sole and absolute discretion:

(a)    on or within one (1) day after the Filing Date, the Borrower shall have filed: (i) a motion seeking approval of the DIP Facility, including the Interim Order; and (ii) other customary "first day orders" (including the Cash Management Order), all in form and substance reasonably acceptable to the DIP Lender;

(b)    no later than three (3) Business Days after the Filing Date, the Bankruptcy Court shall have entered the Interim Order;

(c)    no later than three (3) Business Days after the Filing Date, the Debtors shall have filed a motion, in form and substances reasonably acceptable to the DIP Lender, seeking approval of the Debtors' retention of Raymond James;

(d)    no later than thirty-eight (38) days after the Filing Date, the Bankruptcy Court shall have entered the Final Financing Order;

(3)    no later than thirty (30) days after the Filing Date, the Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the DIP Lender (the "Bidding Procedures Order"), approving (i) the Bidding Procedures and (ii) seeking approval of a stalking horse asset purchase agreement as the stalking horse bid for the purchase of the Debtors' assets, which asset purchase agreement shall be in form and substance reasonably acceptable to the DIP Lender;

(f)    no later than thirty (30) days after the Filing Date, the Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the DIP Lender, approving the Debtors' retention of Raymond James;

(g)    no later than forty-five (45) days after the Filing Date, the Debtors shall have filed Schedules of Assets and Liabilities and Statement of Financial Affairs;

(h)    no later than forty-five (45) days after the entry of the Bidding Procedures Order, the Debtors shall have conducted an auction in accordance with the Bidding Procedures Order (the "Auction");

(i)    no later than ~~seven (7) days after conclusion of the Auction~~ April 30, the Bankruptcy Court shall have ~~entered an order~~, in form and substance reasonably acceptable to the DIP Lender, approving the Alliance Game Division Sale (the "Alliance Game Division Sale Transaction Order") approved (whether by oral ruling and/or written order) the Sale Transactions; and

(j)    no later than ~~fifteen (15) days after the entry of the Alliance Game Division Sale Transaction Order~~ May 17, 2025 (or such later date as may be agreed to by the DIP Lender in its sole discretion), the Debtors shall have consummated the ~~Alliance Game Division Sale~~ Sale Transactions.