# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER EXTENDING THE DEADLINE FOR THE DEBTORS TO ASSUME OF REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY PURSUANT TO 11 U.S.C. 365(d)(4)**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move (this "Motion") as follows:

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 365(d)(4) of title 11 of the United States Code (the "Bankruptcy Code"), granting the Debtors a ninety (90)-day extension, through and including August 12, 2025, of the statutory deadline for the Debtors to assume or reject unexpired leases (and sub-leases) of nonresidential real property (collectively, the "Real Property Leases").

**Jurisdiction and Venue**

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

55551523.2

3. The statutory basis for the relief requested herein is section 365(d)(4) of the Bankruptcy Code and rule 9006-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Bankruptcy Rules").

4. On January 14, 2025 (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On January 29, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

5. A description of the Debtors' business, the reasons for commencing these cases and the facts and circumstances supporting this Motion are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petitions and First Day Relief* [D.I. 20] (the "First Day Declaration").

6. As stated in the First Day Declaration, the Debtors' goal in these chapter 11 cases was to conduct a value-maximizing sale process of all or substantially all the Debtors' assets. To effectuate that goal, the Debtors prepared and obtained court approval of bidding procedures that provided for a sale process on a timeline consistent with the Debtors' DIP financing milestones. The Debtors have conducted an extensive post-petition marketing process that culminated in the Court entering an order (the "AENT Sale Order") approving, among other things, the sale of all or substantially all the Debtors' assets to Alliance Entertainment, LLC ("AENT").

7. After the Court entered the AENT Sale Order, AENT advised the Debtors that it was terminating its asset purchase agreement with the Debtors, forcing the Debtors to promptly pivot to finalizing two asset purchase agreements with the back-up bidders – Universal Distribution, LLC ("Universal") and Sparkle Pop, LLC ("Sparkle Pop"). To that end, on April 29,

2025, the Debtors filed a motion on an emergency basis for Court approval of the sale of substantially all the Debtors' assets to Universal and Sparkle Pop. The Court approved the sales to Universal and Sparkle Pop pursuant to Orders entered on May 1, 2025 [D.I. 407 & 408] (together, the "Sale Orders"). The anticipated sale closing date for the sales to Universal and Sparkle Pop is May 14, 2025 (the "Sale Closing Date"). The Debtors are diligently working with Universal and Sparkle Pop to consummate the sales, and will continue to operate in the ordinary course through the Sale Closing Date.

### The Real Property Leases

8. As a part of the Debtors' sale process, the Debtors filed a notice of possible assumption [D.I. 136] and a supplemental notice of possible assumption [D.I. 194] (together, the "Assumption Notice"). The Real Property Leases were included in the Assumption Notice as unexpired leases that potentially could be assumed by a purchaser in connection with the sale of the Debtors' assets. Pursuant to the Sale Orders, the Debtors are required to file a schedule containing a list of contracts that will be assigned to Universal and Sparkle Pop after the Sale Closing Date. At this time, the Debtors require the use of their Real Property Leases, which includes the Debtors' corporate office as well as their distribution and warehouse facilities, to operate their business. Because the Real Property Leases remain crucial to the continuance of the Debtors' business operations and restructuring efforts and because continuation of such leases is an important element of transition services agreements expected to be executed in connection with one or both sales, the Debtors believe that the requested extension of the deadline to assume or reject the Real Property Leases under section 365(d)(4) of the Bankruptcy Code is appropriate.

**Basis for Relief Requested**

9. Pursuant to section 365(d)(4) of the Bankruptcy Code, the Debtors' deadline to assume or reject the Real Property Leases is the date that is 120 days after the Petition Date, *i.e.*, May 14, 2025. *See* 11 U.S.C. § 365(d)(4). Section 365(d)(4)(B) of the Bankruptcy Code provides, however, that on a motion by a debtor, the Court may extend the initial 120-day deadline by 90 days "for cause." *See* 11 U.S.C. § 365(d)(4)(B). Any subsequent extensions of the deadline may only be granted with the prior written consent of the affected lessors. *See* 11 U.S.C. § 365(d)(4)(B)(ii).

10. Under section 365(d)(4) of the Bankruptcy Code, if a debtor fails to assume or reject an unexpired lease of nonresidential real property under which the debtor is a lessee prior to the applicable deadline, such lease automatically will be deemed rejected. *See* 11 U.S.C. § 365(d)(4)(A). However, pursuant to Local Rule 9006-2, "if a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Bankruptcy Code, . . . the time is automatically extended until the Court acts on the motion, without the necessity for the entry of a bridge order."

11. In the present case, the Debtors believe that ample cause exists to extend the deadline to assume or reject the Real Property Leases. Since the commencement of the chapter 11 cases, the Debtors' management and professional advisors have been working diligently to ensure the Debtors' smooth entry into chapter 11 and have devoted a significant amount of time and effort in dealing with the myriad of issues attendant to the commencement of a chapter 11 case.

12. In the approximately four months that the chapter 11 cases have been pending, the Debtors have, among other things, have devoted significant resources and efforts to maximizing the value of their estates and focusing on certain pressing and essential matters such as (i) procuring

debtor-in-possession financing from JPMorgan Chase Bank, N.A. (the "DIP Lender") and negotiating certain amendments to the Credit agreement for such debtor-in-possession financing, (ii) establishing bidding procedures and conducting a robust sale process, (iii) developing and conducting a lengthy auction that yielded multiple bids for substantially all the Debtors' assets, (iv) obtaining Court approval of the sale of substantially all of the Debtors' assets, (v) negotiating the Debtors' KEIP and KERP with the Committee and obtaining Court approval of same, (vi) preparing and filing the Debtors' schedules of assets and liabilities and statements of financial affairs, (vii) responding to various due diligence requests from key constituents and communicating with the Debtors' creditors, (viii) meeting the general requirements under the chapter 11 process, (ix) addressing various vendor and vendor contract issues, (x) establishing several bar dates and obtaining Court approval of same, and (xi) responding to inquiries received from the Committee.

13. As the bankruptcy court in one frequently-cited decision observed, there are essentially three factors that are weighed by courts in determining whether cause exists to extend the deadline to assume or reject unexpired leases of nonresidential real property:

> (a) whether the leases are an important asset of the estate such that the decision to assume or reject would be central to any plan of reorganization that may be proposed by the debtor;
>
> (b) whether the case is complex and involves large numbers of leases; and
>
> (c) whether or not the debtor has had sufficient time to intelligently appraise the value of each lease for purposes of a plan of reorganization.

*In re Wedtech Corp.*, 72 B.R. 464, 471–72 (Bankr. S.D.N.Y. 1987); *accord In re Channel Home Ctrs., Inc.*, 989 F.2d 682, 689 (3d Cir. 1993) (noting that "it is permissible for a bankruptcy court to consider a particular debtor's need for more time in order to analyze leases in light of the plan it is formulating").

5

14. The Debtors submit that a consideration of the *Wedtech* factors supports the requested extension of the deadline to assume or reject the Real Property Leases. First, until the Debtors, in their business judgment, determine otherwise, the Real Property Leases are important assets of the Debtors' estates, and therefore the decision to assume or reject the Real Property Leases is necessarily of significant importance to the Debtors' chapter 11 efforts. Pending the sale closing of the Debtors' assets, the Real Property Leases must remain in place so that the Debtors can continue to operate in the ordinary course of business. Certain of the Real Property Leases may be assumed and assigned in connection with the sale process and pursuant to the terms set forth in the asset purchase agreements with Universal and Sparkle Pop. In addition, the Debtors require use of their office spaces as they continue to work through the sale process and wind down the businesses. Displacement of the Debtors' places of business would only cause unnecessary burdens and delays, to the detriment of the Debtors' estates and creditors.

15. As to the second and third prongs of the *Wedtech* standard, the chapter 11 cases are large and complex bankruptcy cases. *See Notice of Application of Complex Chapter 11 Case Procedures* [D.I. 3]. The Debtors are (and were) appropriately focused on the sale process and the smooth transition of their operations in connection with the sales. Given the Debtors' focus on these matters and the large volume of other tasks required of the Debtors' personnel and professional advisors to date, the Debtors require additional time to evaluate carefully the remaining Real Property Leases to determine the best path forward for such leases. An extension of the deadline under section 365(d)(4) of the Bankruptcy Code is thus necessary to allow the Debtors sufficient time to evaluate fully the Real Property Leases and afford the Debtors flexibility in prosecuting the chapter 11 cases.

**Reservation of Rights**

16. Nothing contained in the Motion or any actions taken by the Debtors pursuant to relief granted in the Proposed Order is intended or should be construed as (a) an assumption or rejection of any of the Real Property Leases under section 365(a) of the Bankruptcy Code or (b) an admission by the Debtors that a particular agreement is or is not a true lease or subject to section 365 of the Bankruptcy Code. If the Court grants the relief sought herein, any and all of the Debtors' rights, claims, and defenses with respect to the characterization of the Real Property Leases pursuant to sections 365(d)(3) and 365(d)(4) of the Bankruptcy Code or otherwise are expressly reserved. Any such extension granted pursuant to this Motion is without prejudice to the Debtors' rights, pursuant to section 365(d)(4)(B)(ii) of the Bankruptcy Code, to request further extensions with the consent of the affected lessors.

**Automatic Extension Under Local Rule 9006-2**

17. Pursuant to Local Bankruptcy Rule 9006-2, the deadline to assume or reject the Real Property Leases shall automatically be extended until the Court acts on this Motion, without the necessity for entry of a bridge order.

**Waiver of Memorandum of Law**

18. Pursuant to Local Bankruptcy Rule 9013-2, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

**Notice**

19. Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Committee; (iii) counsel to JPMorgan Chase Bank, N.A.; (iv) the United States Attorney for the

District of Maryland; (v) the offices of the attorneys general for the states in which the Debtors operate; (vi) the Internal Revenue Service; (vii) the United States Attorney general; (viii) the civil process clerk for the United States Attorney for the District of Maryland; (ix) the counterparties to the Real Property Leases; (x) and any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: May 13, 2025                         **SAUL EWING LLP**

By:/s/ *Jordan D. Rosenfeld*
Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
Turner N. Falk (admitted *pro hac vice*)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
           adam.isenberg@saul.com
           turner.falk@saul.com

-and-

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
           paige.topper@saul.com
           nicholas.smargiassi@saul.com

*Counsel for Debtors and Debtors in Possession*

9