IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered) |

**DEBTORS' OBJECTION TO EMERGENCY MOTION TO COMPEL DEBTORS TO ASSUME OR REJECT DISTRIBUTION AGREEMENT WITH TITAN PUBLISHING GROUP, LTD. BY APRIL 25, 2025, AND RELATED RELIEF, OR IN THE ALTERNATIVE FOR ADMINISTRATIVE EXPENSE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, file this objection (the "Objection") to the *Emergency Motion to Compel Debtors to Assume or Reject Distribution Agreement with Titan Publishing Group, Ltd. by April 25, 2025, and Related Relief, or in the Alternative for Administrative Expense* (the "Motion")[2] [D.I. 347] filed by Titan Publishing Group, Ltd. ("Titan") and state as follows:

**Preliminary Statement**

1. The Debtors have obtained Court approval of a sale of their assets to Universal Distribution LLC and Sparkle Pop LLC ("Sparkle Pop", and collectively with Universal Distribution LLC, the "Purchasers"), and are targeting a closing by May 16, 2025.

2. The asset purchase agreement with Sparkle Pop gives Sparkle Pop twenty days after the closing on the sale to designate additional executory contracts for assumption. The Motion should be denied in order to permit Sparkle Pop to evaluate whether to add the Distribution

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] Capitalized defined terms not otherwise defined herein have the same meaning as in the Motion.

55471135.1 05/16/2025

-2-

Agreement to the contracts it wishes to assume.

3. Following closing on the sale and the expiration of Sparkle Pop's designation period, the Debtors intend to reject certain contracts not assumed by the Purchaser. The Debtors anticipate that they will reject Titan's Distribution Agreement if it is not designated.

4. However, the Motion is premature: the Debtors should not be forced to make an election to assume or reject the Distribution Agreement until the sale has actually closed and the applicable designation period has passed.

5. Further, the Motion mischaracterizes the effect of rejection. Rejection is an uncurable breach, not a termination of the contract. Only termination gives Titan the right to immediately retake goods from the Debtors. Even if the contract is rejected, Titan does not have an immediate right to reclaim the goods. The Debtors could elect to retain the goods delivered by Titan, sell these goods and pay Titan consistent with the Bankruptcy Code and the Distribution Agreement.

6. The Debtors will evaluate whether retention or return of the goods is in the best interest of the estates and act accordingly. The Court may not modify the underlying contract to mandate the return of the goods upon rejection. If the Court is inclined to grant the Motion, it must do so via an order that merely compels rejection, but does not terminate the Distribution Agreement in violation of its own terms.

7. The alternative relief requested in the Motion – an allowed administrative expense – is also premature. The Motion requests an administrative expense in an unknown amount for orders that may or may not be filled accurately and properly. This request in the Motion must be denied without prejudice to Titan's rights to assert an administrative expense at the proper time.

**<u>Background</u>**

8. On January 14, 2025 (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On January 29, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

9. A description of the Debtors' business, and the reasons for commencing these cases, are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petitions and First Day Relief* (D.I. 20) (the "First Day Declaration") and incorporated herein by reference.

10. Prepetition, the Debtors commenced a process to market and sell their assets.

11. In furtherance of that process, on January 21, 2025, the Debtors filed the *Debtors' Motion for an Order (I) Authorizing and Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling an Auction and a Sale Hearing, (IV) Approving the Form and Manner of Notice Thereof, and (V) Establishing Notice and Procedures for the Assumption and Assignment of Certain Executory Contracts and Leases* (D.I. 68), which was granted by the Court on February 11, 2025.

12. The Court entered orders approving the sales to the Purchasers on May 1, 2025 (D.I. 407, 408).

13. The sales to the Purchasers are anticipated to close by May 16, 2025.

14. Pursuant to the Sparkle Pop asset purchase agreement, Sparkle Pop has twenty days post-closing to designate additional contracts for assumption:

> If, within twenty (20) business days after the Closing Date, Purchaser designates, in writing and delivers to Seller, a list of the Additional Assigned Contracts, and additional Facility Assigned Contracts, Seller shall use commercially reasonable efforts to assume and assign such Additional Assigned Contracts and additional

-3-

> Facility Assigned Contracts to Purchaser; provided, however, that Seller shall not be required to incur any liabilities with respect to Additional Assigned Contracts during such twenty (20) day period.

See (D.I. 407, Ex. 1 ¶ 2.3).

15. The Debtors object to the relief requested in the Motion to allow Sparkle Pop to evaluate the Distribution Agreement for potential assumption, and to otherwise object to the premature relief sought by Titan.

## Argument

**A.   Rejection of the Distribution Agreement Must Wait Until After the Designation Period.**

16. "A debtor's decision to reject an executory contract under section 365 is governed by the business judgment standard." *In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (*citing Grp. of Inst.. Invs. v. Chi., Milwaukee, St. Paul. & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943)); *see also In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003) ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion."). "Under the business judgment standard, the sole issue is whether the rejection benefits the estate." *In re HQ Glob. Holdings, Inc.*, 290 B.R. at 511; *see also NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) (noting that the "usual test for rejection of an executory contract is simply whether rejection would benefit the estate"), *aff'd*, 465 U.S. 513 (1984); s*ee In re Alongi,* 272 B.R. 148, 153 (Bankr. D.Md. 2001) ("A purpose of § 365 is to avoid giving administrative priority to executory contracts that are not a good bargain for a debtor's estate.").

17. While a court may compel a debtor to assume or reject a contract, it should only do so after the moving party carries its burden to demonstrate "cause" based on consideration of the following factors:

-4-

(1) the importance of the contracts to the debtor's business and reorganization;
(2) the debtor's failure or ability to satisfy postpetition obligations;
(3) the nature of the interests at stake;
(4) the balance of hurt to the litigants and the good to be achieved;
(5) whether the debtor has sufficient time to appraise its financial situation and the potential value of the assets in formulating a plan;
(6) the safeguards afforded to the litigants;
(7) the damage the nondebtor will suffer beyond the compensation available under the Bankruptcy Code;
(8) whether there is a need for judicial determination as to whether an executory contract exists;
(9) whether exclusivity has been terminated;
(10) whether the action to be taken is so in derogation of Congress's scheme that the court may be said to be arbitrary; and
(11) the purpose of chapter 11, which is to permit successful rehabilitation of debtors.

*In re Dana Corp.*, 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006); *see also In re Adelphia Commc'ns Corp.*, 291 B.R. 283, 293 (Bankr. S.D.N.Y. 2003) (listing similar factors).

18. Here, these factors weigh against granting the Motion.

19. Titan is the Debtors' source for certain goods; if the Debtors or Sparkle Pop wish to distribute these Titan-specific goods they can only do so via orders from Titan. As a result, the Distribution Agreement is an important part of the Debtors' collection of contracts and rejection should not be compelled.

20. The Motion does not allege any missed postpetition payments. If the Distribution Agreement is assumed by Sparkle Pop, then Sparkle Pop will have to provide adequate assurances of future performance. The consistent postpetition payment and go-forward assurances of payment demonstrate that there is little risk to Titan, and rejection should not be compelled.

21. Here, the interests at stake are purely commercial. Titan understandably wants to ensure it is paid for postpetition goods, but there is no unique social policy that impacts this analysis. Rejection should not be compelled.

22. The balance of harms favors the Debtors: Titan's contract will either be assumed or rejected in short order. Titan has been paid postpetition and does not identify any specific risk

of nonpayment: even in the worst-case scenario imagined in the Motion, Titan could still assert an administrative expense. Meanwhile the harm to the Debtors could be substantial, cutting off in-progress deliveries of crucial products, especially if Sparkle Pop wishes to designate the Titan contract.

23. The fifth factor also cuts against granting the Motion: rejection should only come after Sparkle Pop's designation period has passed. Sparkle Pop, as a Purchaser, obtained a twenty-day post-closing period to evaluate the financial status of the Distribution Agreement. It must be given an opportunity to make this evaluation and apply its business judgment – especially since a potential assumption may be beneficial for Sparkle Pop, Titan and the Debtors. Rejection should not be compelled.

24. The paragraphs above lay out a strong set of protections for Titan – several different ways it may vindicate its rights – that will not be prejudiced if it must wait for the end of the designation period. Rejection should not be compelled.

25. Titan has not identified any non-monetary harm, or made any allegation that it will be undercompensated. This cuts against rejection.

26. The "executoriness" of the Distribution Agreement is not at issue here: Titan and the Debtors acknowledge that the Distribution Agreement is one that could be assumed and assigned to a Purchaser. Titan correctly understands that it cannot cease performance. Rejection should not be compelled.

27. The remaining factors all relate to one of the core purposes of chapter 11: a successful rehabilitation. In the context of a sale, as here, the business in the hands of the Purchasers will be more successful if appropriate contracts are assumed and assigned, and assumption will likely reduce the claims against the estate. This Court should not compel

-6-

immediate rejection of the Distribution Agreement, when doing so would harm an in-progress designation period to the detriment of the Debtors, Titan, Sparkle Pop and the creditors of the Debtors.

28. The Debtors and Sparkle Pop must be given the full opportunity to apply their business judgment to the treatment of the Distribution Agreement.

29. If the Distribution Agreement is not designated by Sparkle Pop, the Debtors intend to quickly move to reject contracts to minimize any unnecessary costs to the estate.

30. For all these reasons, the Motion must be denied.

31. In the alternative, if the Court is inclined to grant the Motion, the Debtors respectfully submit that Court should compel the Debtors to assume or reject the Distribution Agreement only after the designation period has elapsed.

**B.  The Debtor Retains Rights to the Goods After Rejection.**

32. Titan's Motion and the proposed order thereto conflate the concepts of "rejection" and "termination." "Turning to § 365, the terms rejection, breach and termination are used differently, but not inconsistently or interchangeably, as some courts have suggested." *Eastover Bank for Sav. v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077, 1082 (5th Cir. 1994).

33. "While rejection is treated as a breach, it does not completely terminate the contract." *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 387 (2d Cir. 1997).

34. "Under section 365, rejection constitutes a statutory breach, but does not repudiate or terminate the [contract]. The parties must, therefore, resort to state law to determine their rights as a result of the breach." *In re Yasin*, 179 B.R. 43, 50 (Bankr. S.D.N.Y. 1995).

35. Here, the Distribution Agreement itself controls the effect of breach.

36. Pursuant to the Distribution Agreement, Titan may reclaim the goods only upon a "termination." See Distribution Agreement ¶ 11(a) (Debtors lose rights to sell goods upon termination); Distribution Agreement ¶ 11(f) (Titan may remove goods upon termination).

37. In relevant part, the Distribution Agreement provides that it may be terminated within 45 days of written notice of an uncured breach (Distribution Agreement ¶ 10(b)) or on 90 days' written notice (Distribution Agreement ¶ 10(a)).

38. Titan has not sent a written notice of a breach or other writing to terminate the contract, so the Distribution Agreement cannot be terminated for at least 45 days after the effective date of any rejection.

39. During that time, the Debtors retain the rights to the goods and may sell them in the ordinary course.

40. The Debtors object to the Motion's inaccurate characterization of the effect or rejection – at most, rejection could commence a 45-day process leading to a potential termination.

41. In the event that the Court grants the relief requested by Titan, the underlying contract rights may not be modified to immediately terminate the Distribution Agreement and call into question the Debtors' rights to hold and monetize the goods. Any order granting the Motion must compel only rejection, and not effect an immediate termination.

    **C.    The Request for an Unliquidated, Prospective Administrative Expense is Premature.**

42. The Motion accurately recites the requirements for an administrative expense: "(1) there must be a post-petition transaction between the creditor and the debtor; and (2) the estate must receive a benefit from the transaction." *In re Waste Sys. Int'l, Inc.*, 280 B.R. 824, 826 (Bankr. D. Del. 2002).

43. The Motion's request for an administrative expense is both insufficient and premature.

44. First, the request is insufficient: it does not include any facts regarding any specific orders, when these orders were placed, whether the goods in these orders were delivered, whether delivery was accepted, or the amount owed for these goods.

45. The Motion requests unliquidated prospective relief deeming all pre-rejection orders, whatever the amount, as administrative expenses.

46. Most crucially, the Motion does not state how potential orders that have not yet been delivered can benefit the estate, so the Motion omits the key requirement for an administrative expense identified in *Waste Systems*.

47. The Motion is also premature; it seek prospective administrative expense status for transactions that have not yet occurred.

48. The Debtors request that the Motion be denied without prejudice to Titan's rights to assert an administrative expense at an appropriate time.

## Waiver of Memorandum of Law

49. Pursuant to Local Bankruptcy Rule 9013-2, the Debtors state that, in lieu of submitting a memorandum in support of this Objection, the Debtors will rely on the grounds and authorities set forth herein.

## Notice

50. Notice of this Objection will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Committee; (iii) counsel to JPMorgan Chase Bank, N.A.; (iv) Titan; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested

and the facts and circumstances of these chapter 11 cases, the Debtors submit that no other or further notice is necessary.

## Conclusion

WHEREFORE, the Debtors respectfully request that the Court deny the Motion, or in the alternative, compel the Debtors to assume or reject the Distribution Agreement only after the designation period has elapsed, and such other and further relief as is just and proper.

Dated: May 16, 2025             **SAUL EWING LLP**

            By: */s/ Jordan D. Rosenfeld*
                 Jordan D. Rosenfeld (MD Bar No. 13694)
                 1001 Fleet Street, 9th Floor
                 Baltimore, MD 21202
                 Telephone: (410) 332-8600
                 Email: jordan.rosenfeld@saul.com

            -and-

            Jeffrey C. Hampton (admitted *pro hac vice*)
            Adam H. Isenberg (admitted *pro hac vice*)
            Turner N. Falk (admitted *pro hac vice*)
            1500 Market Street, 38th Floor
            Philadelphia, PA 19102
            Telephone: (215) 972-7777
            Email: jeffrey.hampton@saul.com
                     adam.isenberg@saul.com
                     turner.falk@saul.com

            -and-

            Mark Minuti (admitted *pro hac vice*)
            Paige N. Topper (admitted *pro hac vice*)
            Nicholas Smargiassi (admitted *pro hac vice*)
            1201 N. Market Street, Suite 2300
            Wilmington, DE 19801
            Telephone: (302) 421-6800
            Email: mark.minuti@saul.com
                     paige.topper@saul.com
                     nicholas.smargiassi@saul.com

            *Counsel for Debtors and Debtors in Possession*