IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>July 16, 2025 at 10:00 a.m. (ET)<br>**Objection Deadline:**<br>June 13, 2025 |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE REJECTION OF HUNT VALLEY LEASE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, respectfully move (the "Motion") as follows:

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") authorizing the Debtors to reject the Hunt Valley Lease (as defined below), effective as of 11:59 p.m., May 31, 2025 (the "Rejection Date"), and granting related relief.

**Jurisdiction and Venue**

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

55653020.3 05/30/2025

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), as supplemented by rules 2002 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 6006-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Bankruptcy Rules").

**Background**

4. On January 14, 2025 (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On January 29, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

5. A description of the Debtors' business, the reasons for commencing these cases, the relief sought from the Court, and the facts and circumstances supporting this Motion are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petitions and First Day Relief* (D.I. 20) (the "First Day Declaration") and incorporated herein by reference.

6. Prepetition, Debtor Diamond Comic Distributors, Inc. and SFV York Road, LLC (the "**Landlord**") were parties to a lease dated December 10, 2012 (as amended, the "**Hunt Valley Lease**") for the premises located at 10150 York Road, Suite 300, Hunt Valley, Maryland 21030 (the "**Premises**").

7. On January 21, 2025, the Debtors filed the *Debtors' Motion for an Order (I) Authorizing and Approving Bidding Procedures for the Sale of All or Substantially All of the*

-2-

*Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling an Auction and a Sale Hearing, (IV) Approving the Form and Manner of Notice Thereof, and (V) Establishing Notice and Procedures for the Assumption and Assignment of Certain Executory Contracts and Leases* (D.I. 68), which was granted by the Court on February 11, 2025.

8. The Court entered orders approving the sale of certain assets to Universal Distribution LLC and Sparkle Pop LLC ("Sparkle Pop") respectively, on May 1, 2025 (D.I. 407, 408). The sale to Sparkle Pop subsequently has closed and Sparkle Pop is continuing to operate certain of the Debtors' business operations from the Premises.

9. Pending the designation by Sparkle Pop of the Hunt Valley Lease for assumption or rejection, Sparkle Pop is responsible for the post-closing rent for the Premises. The Debtors were advised recently by Sparkle Pop that Sparkle Pop has negotiated with the Landlord the terms of its own lease for the Premises, effective June 1, 2025.

10. Now that the Debtors have sold substantially all their assets, and transferred their operations, and Sparkle Pop has negotiated its own lease for the Premises, the Hunt Valley Lease and its associated costs are not longer of any benefit to the estates. Accordingly, in the exercise of their business judgment, the Debtors seek to reject the Hunt Valley Lease effective as of the Rejection Date.

## Basis for Relief Requested

**A.    Rejection of the Hunt Valley Lease Reflects the Debtors' Sound Business Judgment.**

12. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a). "A debtor's decision to reject an executory contract under section 365 is governed by the business judgment standard." *In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511

(Bankr. D. Del. 2003) (*citing Grp. of Inst.. Invs. v. Chi., Milwaukee, St. Paul. & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943)); *see also In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003) ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion."). "Under the business judgment standard, the sole issue is whether the rejection benefits the estate." *In re HQ Glob. Holdings, Inc.*, 290 B.R. at 511; *see also NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) (noting that the "usual test for rejection of an executory contract is simply whether rejection would benefit the estate"), *aff'd*, 465 U.S. 513 (1984); s*ee In re Alongi,* 272 B.R. 148, 153 (Bankr. D.Md. 2001) ("A purpose of § 365 is to avoid giving administrative priority to executory contracts that are not a good bargain for a debtor's estate.").

13. Under the circumstances, the rejection of the Hunt Valley Lease is an appropriate exercise of the Debtors' business judgment that will reduce financial and administrative burdens on the Debtors' estates. The Hunt Valley Lease is no longer necessary now that the Debtors' assets have been sold. Accordingly, the Debtors' continued performance under the Hunt Valley Lease would be an unnecessary depletion of value of the Debtors' estates with no accompanying benefit. For these reasons, the Court should authorize the Debtors to reject the Hunt Valley Lease.

**B.    Rejection of the Hunt Valley Lease effective as of the Rejection Date is warranted.**

14. The Debtors seek an effective rejection date for the Hunt Valley Lease on the Rejection Date. While section 365 of the Bankruptcy Code does not specifically address the issue, courts in this district and others have held that bankruptcy courts may exercise their equitable powers in granting such an order when doing so promotes the purposes of section 365(a). *See, e.g.*, *Thinking Machines Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1028–29 (1st Cir. 1995) (holding that "rejection under section 365(a) does not take

-5-

effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate" as of the motion filing date); *In re Parking Mgmt., Inc.*, 620 B.R. 544, 553 (Bankr. D. Md. 2020) (noting that rejection order rejected unexpired leases as of the petition date); *In re Fieldstone Mortg. Co.*, 427 B.R. 364, 372 (Bankr. D. Md. 2010) (contracts were "deemed rejected as of February 11, 2008, the date the debtor filed its first rejection motion.").

15. Courts have further held that the rejection of executory contracts and unexpired leases effective as of an earlier date may be approved "after balancing the equities" of a case and concluding that such equities weigh in favor of the debtor. *See In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) ("Thus, only after balancing the equities in a particular case, should the court approve a retroactive rejection of nonresidential lease."). In balancing these equities, courts typically examine a number of factors, including the costs that a delayed rejection would impose on a debtor. *See, e.g.*, *Constant Ltd. P'ship v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33, 33–39 (S.D.N.Y. 1995).

16. The balance of equities favors the Debtors' rejection of the Hunt Valley Lease effective as of the Rejection Date. The Debtor will advise the Landlord of its intention to surrender the Premises as of 11:59 p.m. on March 31, 2025 and the Debtor will have surrendered its keys to the Premises on or before that date. The Hunt Valley Lease no longer provides any value to the Debtors' estates and continued maintenance of, and performance under, the Hunt Valley Lease is both burdensome and wasteful of estate resources. Any postponement of the Rejection Date could cause the Debtors to incur unnecessary administrative expenses for a lease that provides no tangible benefit to the Debtors' estates, which would be inequitable and prejudicial to the Debtors.

17. Further, no parties in interest will be prejudiced by the relief sought herein. The Debtor will have surrendered the Premises before the Rejection Date. The Landlord has negotiated a new lease for the same Premises with Sparkle Pop, and as such it has mitigated its own risks to its satisfaction. It would be inequitable to the estate to permit a landlord to make claims against the Debtors' estates regarding premises the landlord has already re-rented the Premises to a paying tenant.

18. Accordingly, the Debtors believe that it is proper under the circumstances for the Hunt Valley Lease to be rejected as of the Rejection Date.

## Reservation of Rights

19. The Debtors hereby reserve their rights with respect to any existing defaults of the Landlord regarding the Hunt Valley Lease, and all defenses and counterclaims to any rejection damages claims are preserved, including without limitation defenses or counterclaims relating to the Hunt Valley Lease's expiration, the Landlord's default or the Landlord's mitigation of damages.

## Waiver of Memorandum of Law

20. Pursuant to Local Bankruptcy Rule 9013-2, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

## Notice

21. Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Committee; (iii) counsel to JPMorgan Chase Bank, N.A.; (iv) the Landlord; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief

requested and the facts and circumstances of these chapter 11 cases, the Debtors submit the no other or further notice is necessary.

## Conclusion

WHEREFORE, the Debtors respectfully request the entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: May 30, 2025                                    **SAUL EWING LLP**


By:*/s/ Jordan D. Rosenfeld*
    Jordan D. Rosenfeld (MD Bar No. 13694)
    1001 Fleet Street, 9th Floor
    Baltimore, MD 21202
    Telephone: (410) 332-8600
    Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
Turner N. Falk (admitted *pro hac vice*)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
     adam.isenberg@saul.com
     turner.falk@saul.com

-and-

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
     paige.topper@saul.com
     nicholas.smargiassi@saul.com

*Counsel for Debtors and Debtors in Possession*