UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| IN RE: | . | Chapter 11 |
|  | . |  |
| Diamond Comic Distributors, | . |  |
| Inc., | . |  |
|  | . |  |
| Debtor. | . | Bankruptcy #25-10308 (DER) |

...........................................................

Baltimore, Maryland
May 29, 2025
10:34 a.m.

BEFORE THE HONORABLE DAVID E. RICE
UNITED STATES BANKRUPTCY COURT CHIEF JUDGE


TRANSCRIPT OF:

458  MOTION TO APPROVE STIPULATION/SETTLEMENT AND NOTICE OF
MOTION FILED BY DEBTOR DIAMOND COMIC DISTRIBUTORS, INC.


APPEARANCES:

For The Debtor:                 Mark Minuti, Esq.
                                Saul Ewing, LLP
                                1201 North Market St.-Ste. 2300
                                Wilmington, DE 19899

                                Austin G. Strine, Esq.
                                Saul Ewing, LLP
                                1001 Fleet St.-9th Fl.
                                Baltimore, MD 21202

For Unsecured Creditor's        Michael Papandrea, Esq.
Committee:                      Lowenstein Sandler, LLP
                                One Lowenstein Drive
                                Roseland, NJ 07068

                                Dennis J. Shaffer, Esq.
                                Tydings & Rosenberg
                                1 E. Pratt St.-Ste. 901
                                Baltimore, MD 21202

2

```
For Creditor, JPMorgan Chase    David L. Ruediger, Esq.
Bank, MR. NASH:                 Troutman Pepper Locke, LLP
                                701 8th St., NW, Ste. 500
                                Washington, DC 20001

                                Katherine Culbertson, Esq.
                                Troutman Pepper Locke, LLP
                                701 8th St., NW, Ste. 500
                                Washington, DC 20001

Audio Operator:                 Cherita Scott

Transcribing Firm:              Writer's Cramp, Inc.
                                1027 Betty Lane
                                Ewing, NJ 08628
                                609-588-8043
```

**Proceedings recorded by electronic sound recording, transcript produced by transcription service.**

3

## Index

|  | Direct | Cross | Redirect | Recross | Further Redirect |
|---|---|---|---|---|---|

**Witnesses For The Debtor:**

| Mr. Gorin | 12 | | | | |
|---|---|---|---|---|---|

**EXHIBITS:**

|  |  | Marked | Received |
|---|---|---|---|
| D-1 | Budget Draft | 15 | 18 |

**SUMMATION BY:**

**THE COURT:** Finding

4

1          THE CLERK:  All rise.  The United States Bankruptcy

2  Court for the District of Maryland is now in session, the

3  Honorable Chief Judge David E. Rice presiding.  Please be

4  seated and come to order.  On the 10:30 Docket, calling the

5  case of Diamond Comic Distributors, Inc., case #25-10308.

6  Counsel, please identify yourselves and your clients for the

7  record.

8          MR. MINUTI:  Good morning, Your Honor.  Mark Minuti

9  from Saul Ewing.  I'm here today for the Debtors.  With me is

10  my colleague, Austin Strine.  Good morning.

11          THE COURT:  Good morning.

12          MR. STRINE:  Good morning, Your Honor.

13          MR. RUEDIGER:  Good morning, Your Honor.  David

14  Ruediger from Troutman Pepper Locke, counsel for JPMorgan.

15  I'm here with my colleague, Katie Culbertson.

16          THE COURT:  Good morning.

17          MR. PAPANDREA:  Good morning, Your Honor.  Michael

18  Papandrea from Lowenstein Sandler on behalf of the Committee.

19  I'm here with Dennis Shaffer, our co-counsel from the Tydings

20  firm.

21          THE COURT:  Good morning.  Well, Mr. Minuti, we're

22  here on your motion -- your client's motion.

23          MR. MINUTI:  Thank you, Your Honor.  Your Honor, I

24  should have pointed out that Robert Gorin, the Debtor's CRO,

25  is in the courtroom, sitting in the first row as well.

1          THE COURT:  I see him.  Thank you.

2          MR. MINUTI:  Thank you.  Your Honor, we want to

3    thank the Court for scheduling the hearing today on an

4    expedited basis.  There is only one matter going forward and

5    that's the Debtor's motion for entry of an order approving the

6    Fourth Stipulation between the Debtors and JPMorgan Chase to

7    amend the Debtor-In-Possession financing Credit Agreement.

8    That motion appears at Docket #458, was filed on May 23rd,

9    along with a motion to shorten.  The Court granted that motion

10   to shorten by order dated May 27, setting a hearing for today

11   and objections to be filed on or before the time of the

12   hearing.  Your Honor, the Debtors are not aware of any

13   objections to the motion other than the Unsecured Creditors

14   Committee, and I'll address that in a moment.

15        By this motion, the Debtors are seeking approval for the

16   Debtors to enter into the Fourth Amendment to the DIP Credit

17   Agreement.  As the Court will recall, on February 19th the

18   Court approved on a final basis Debtor-In-Possession financing

19   from JPMorgan Chase Bank, N.A.  That appears at Docket #163.

20   The original maturity date of that Debtor-In-Possession loan

21   was June 30th of 2025.  That date was moved to May 31, 2025,

22   pursuant to the Fifth Amendment of the Credit Agreement, and

23   the maximum barring under the final DIP order and the Credit

24   Agreement was capped at $5.8 million.  Those changes were

25   approved by the Court on May 1, 2025, and that appears at

1    Docket #409.  By order dated May 1, the Court approved the

2    sale of substantially of the Debtor's assets to Universal

3    Distribution, LLC, and Sparkle Pop, LLC.  I'm pleased to

4    report to the Court that those sales have now closed.  As

5    contemplated by each of those Asset Purchase Agreements, the

6    Debtors have entered into Transition Services Agreement with

7    each of the buyers, and we need to perform under those

8    Transition Services Agreements.  Accordingly, Your Honor,

9    because the current Debtor-In-Possession loan expires on the

10   30th, we need to amend the current DIP agreement to both

11   extend the maturity date, and that is going to increase the

12   need for borrowing under that facility.

13        So the Debtors, Your Honor, and JPMorgan have been

14   engaged in good faith negotiations for quite some time.  Your

15   Honor may have heard that we had reached out to chambers this

16   morning to see if we could push this hearing back to 2 o'clock

17   to give us some more time a) to get bank approval, and to

18   finalize the documents and so on, and obviously have an

19   opportunity to speak to the Committee.  The hearing was not

20   moved.  The good news is, Your Honor, we were able to get

21   bankruptcy approval, that literally just happened -- I'm

22   sorry, bank approval.  We were able to get that approval

23   literally minutes before Your Honor took the bench and so

24   we're grateful to JPMorgan Chase for that.

25        What the Fourth Amendment does, Your Honor, is really

1    just a couple of things.  #1) It extends the maturity date of
2    the DIP loan to June 28 of 2025, and it increases the maximum
3    borrowing under that facility from 5.8 million to
4    approximately $8,860,000.  In addition, Your Honor, what we've
5    agreed with JPMorgan Chase is that we are going to make an
6    amendment to the proposed Form of Order to approve this
7    amendment, and that amendment to the proposed Form of Order is
8    going to require the Debtors to provide JPMorgan Chase with
9    sort of an updated budget and cash flow by June 10.  The idea
10   there, Your Honor, is that will then facilitate further
11   discussions and what Debtors hope will be a longer-term
12   facility as we decide where -- you know, where -- in terms of
13   where these cases are going into the future.

14        Your Honor, Mr. Gorin is in the courtroom and I'm going
15   to put him on the stand with Your Honor's permission in
16   support, but before we do that, Your Honor, I would request a
17   30-minute continuance of the hearing for the following reason:
18   Literally, Your Honor, right before we took the bench, the
19   budget arrived that goes hand in hand with respect with this
20   proposed amendment.  We have provided a copy of that to the
21   Unsecured Creditors Committee.  I was not personally involved
22   in the negotiations and the sharing of budgets, but what the
23   Committee's counsel has suggested is, this is the first time
24   they've seen it.  I know they have some questions, so we're
25   looking for 30 minutes, Your Honor, to hopefully answer those

1    questions and give them an opportunity to look at the budget

2    before we come back and put Mr. Gorin on the stand.  Hopefully

3    those -- that 30 minutes will give us an opportunity to

4    satisfy the Committee's concerns and avoid a contested hearing

5    today.  But if not, we'll be prepared to go forward.  So that

6    is our request, Your Honor.

7                THE COURT:  All right.  Mr. Papandrea, is the

8    Committee agreeable?

9                MR. PAPANDREA:  Thank you, Your Honor.  Michael

10   Papandrea from Lowenstein Sandler on behalf of the Committee.

11   So the bottom line is yes, we agree to the -- to a short

12   adjournment so that we can try to wrap our arms around this

13   budget.  We're frankly frustrated that we're being handed the

14   budget that's being proposed for approval today minutes before

15   the hearing when, you know, the last time we were here, I

16   think April 30th, a few weeks ago, we said that, you know, the

17   budget was unclear and we would need to have a clear budget on

18   a path forward and it's been weeks since then.  The fire drill

19   seems unnecessary from our perspective, but here we are, so

20   having that additional time would certainly be helpful for us.

21   So thank you, Your Honor.

22                THE COURT:  All right.  Mr. Ruediger, anything from

23   the bank?

24                MR. RUEDIGER:  Thank you.  David Ruediger, Troutman

25   Pepper Locke, counsel for JPMorgan.  This has been a really

1    difficult case.  Your Honor I think knows, all of the --
2    substantially all the operating assets of the companies were
3    sold.  The bank made this loan initially as an asset-based
4    loan, lending against eligible accounts receivable and
5    inventory.  Those assets don't exist anymore.  So what the
6    bank is being asked to do is to fund additional monies with
7    the hope that under the timing with the way the Debtor's
8    expect to receive additional funds from the two entities they
9    sold the assets to -- this is really a timing issue.  The bank
10   is being asked to extend $3 million essentially with the hope
11   of recovering that when we receive money at the end of the
12   month.  This has not been an easy situation for the bank and I
13   apologize that we're at the last minute, but we, too, got a
14   budget that was just completely unacceptable, would have
15   requested the bank to extend way beyond that.  We were very
16   close to questioning whether to even extend that money.  We do
17   believe giving the Debtors time to the end of this month to
18   complete their obligations on the Transition Services
19   Agreement with the two buyers, to collect the remaining assets
20   and monies owed from those two buyers makes sense, and that's
21   why we're willing to support this.  But it is a difficult
22   situation.  We're prepared to give the Committee 30 minutes.
23   We understand their concerns and frustrations.  We did
24   literally work all through the night last night trying to come
25   up with a budget that we could approve and that would also

1   support operations so they could fulfill their obligations in

2   the TSA.

3          THE COURT:  So when you said this month, I think you

4   mean through the end of June, right?

5          MR. RUEDIGER:  Through the end of June, right.

6          THE COURT:  Yes, okay.

7          MR. RUEDIGER:  I forgot we're in May.

8          THE COURT:  No, I just want to make sure that's

9   clear for the record.

10          MR. RUEDIGER:  It feels like we're in the middle of

11   June after last night, Your Honor.  Sorry.

12          THE COURT:  I understand completely.  Okay, thank

13   you.

14          MR. RUEDIGER:  Thank you.

15          THE COURT:  Let me just say for the record, we --

16   you know, this case was set for 10:30.  The case was called;

17   no one else has appeared to raise any objections, so I just

18   think that's important to make clear for the record.  All

19   right, well, we will adjourn pursuant to the Debtor's request

20   and recall the case at 11:15.

21          MR. MINUTI:  Thank you, Your Honor.

22          THE CLERK:  All rise.  This Court is in recess.

23      (Recess)

24          THE CLERK:  Please remain seated and come to order.

25   The United States Bankruptcy Court for the District of

1   Maryland now resumes its regular session.

2           THE COURT:  All right, Mr. Minuti, what do you have

3   to report, sir?

4           MR. MINUTI:  Your Honor, thank you again for giving

5   us the time.  We've used it wisely.  We have agreement and I

6   think we've satisfied the Committee's concerns.  By way of

7   spoiler alert, I do want to put Mr. Gorin on the stand, but

8   what you're going to hear Mr. Gorin testify about, Your Honor,

9   is that we are going to change the budget slightly in that we

10  are going to increase the weekly line item in the budget for

11  the Committee's professionals by $25,000 a week.  We are going

12  to lower the post-petition AP line item by $25,000 a week.

13  That's going to resolve the Committee's concerns, or that will

14  resolve the Committee's concerns.  As I indicated, I think it

15  would be helpful to put Mr. Gorin on the stand.  It's probably

16  going to be ten minutes, unless Your Honor has any specific

17  issues, just to lay a foundation as to why we believe this is

18  in the best interest of the Debtor's estates, so that's what I

19  would like to do if your Court -- if the Court will permit me.

20          THE COURT:  All right, Mr. Papandrea, is that

21  agreeable to the Committee as a way to proceed?

22          MR. PAPANDREA:  Yes, it is, Your Honor.

23          THE COURT:  Okay.  Yes, it's fine.  Go ahead.

24          MR. MINUTI:  I would call to the stand then Mr.

25  Gorin.

1          THE COURT:  Come forward, sir.

2          MR. MINUTI:  And Your Honor, we have one exhibit.

3    Does Your Honor have a copy?

4          THE COURT:  I do.

5          MR. MINUTI:  Thank you.

6          ROBERT GORIN, DEBTOR'S WITNESS, SWORN

7          THE CLERK:  Please be seated.  Please state your

8    full name and business address for the record.

9          MR. GORIN:  Robert Gorin, 295 Madison Avenue, New

10   York, New York 10017.

11         THE CLERK:  Your witness, Mr. Minuti.

12         MR. MINUTI:  Thank you very much.

13                    DIRECT EXAMINATION

14   BY MR. MINUTI:

15   Q.  Good morning, Mr. Gorin.

16   A.  Good morning.

17   Q.  What is your current position with the Debtors?

18   A.  Chief Restructuring Officer.

19   Q.  Okay, and how long have you held that position?

20   A.  Since July of --

21   Q.  Could you just remind the Court sort of what your job

22   duties are, what you've been doing for the Debtors since the

23   petition date?

24   A.  Absolutely.  It's really  -- really spans the gamut,

25   helping to run the company, vendor management, client

1  management, working on the sale of assets, and interacting
2  with the consultation parties and negotiating APAs and trying
3  to get this over the finish line.
4  Q.  And you are aware that on May 1 of 2025, the Court
5  approved the sale of substantially all of the Debtor's assets
6  to Universal Distribution Inc. and Sparkle Pop, LLC?
7  A.  Yes, sir.
8  Q.  And what was your role, if any, in connection with those
9  sales?
10  A.  I was part of the group that negotiated those deals with
11  both buyers.  I interfaced with both the lender and the
12  Committee to help try to, you know, as I said, get those over
13  the finish line, get those finalized.
14  Q.  And did those deals get over the finish line?  Did they
15  close?
16  A.  They did.
17  Q.  Okay.  And you were in Court earlier today when I talked
18  about the Transition Services Agreement, or Transition
19  Services Agreements.  Are you familiar with those?
20  A.  I am.
21  Q.  And can you tell the Court or give the Court, you know, at
22  a high level, what sort of services are the Debtors providing
23  under those agreements?
24  A.  Absolutely.  The -- it takes some time to, as you can
25  imagine, to transfer the employees over to a new payroll

1   system, new healthcare system, new health -- medical

2   insurance, and to get bank accounts shifted from the estate to

3   the new -- to the buyers.  So we are helping to run the

4   company with the pre-funding of the buyer -- of both buyers.

5   We're helping to oversee the running of that company while all

6   of those true transition items are implemented and get

7   finalized.

8   Q.  And are you familiar with the Debtor's court-approved

9   post-petition financing with JPMorgan Chase Bank?

10  A.  I am.

11  Q.  And can you tell the Court, as we sit here today, what the

12  current post-petition maximum borrowing is, under those --

13  that facility?

14  A.  It's about 5.8 million.

15  Q.  And when does that current post-petition loan expire?

16  A.  May 30th.

17  Q.  And what is the current outstanding balance on that loan,

18  if you know?

19  A.  I think it's about 4.8, maybe a little bit more at this

20  point.  That's a day or two old.

21  Q.  Okay.  And as you know, we're here today to ask the Court

22  to approve the proposed Fourth Amendment to that facility and

23  there's a budget that goes along with that, correct?

24  A.  Yes, sir.

25  Q.  And are you familiar with that budget?

Gorin - Direct                    15

1   A.   I am.

2   Q.   And what role, if any, did you have in preparing that

3   budget?

4   A.   I worked with the team -- with our team to put that

5   together, talked to the bank, talked to the Committee, to try

6   to get this to a place where it was palatable for everybody so

7   that we could continue to function over the next few weeks.

8   Q.   Okay.  Now you should have in front of you what we're

9   going to mark as Debtor's Exhibit #1.  Do you have that

10  document?

11       (Debtor's Exhibit-1 marked for identification)

12  A.   I do.

13  Q.   And can you identify that document?

14  A.   I can.  This is the -- this is a draft of the budget.

15  Q.   Okay, and this is the budget that's going to take the

16  company through July -- I'm sorry, through June 28th, I guess,

17  is the forecast at least, correct?

18  A.   Yes.

19  Q.   Okay.  And you heard me indicate to the Court that there's

20  been -- there's going to be a change to the budget based on

21  discussions with the Committee, correct?

22  A.   There is, yes.

23  Q.   And can you tell the Court what those changes will be?

24  A.   Yes, we're going to take 25,000 a week from the AP lines,

25  from AP, and we're going to move that to the Committee fees.

1  Q.   Okay.  And then in terms of negotiating with the lender

2  for the Fourth Amendment, what role if any did you have in

3  that negotiation?

4  A.   I -- you know, that was mostly led by the -- by counsel,

5  but we were involved.  We helped with the budget, we answered

6  questions around the budget and interacted, did the analysis

7  associated with it.

8  Q.   And you heard Mr. Ruediger talk about the fact that there

9  was some long negotiations here into the night?

10  A.   Well into the night, yes, sir.

11  Q.   And how would you describe those negotiations?

12  A.   Look, I think long is a very good adjective, so does my

13  family, but I think also the -- there -- it was hard-fought.

14  There was a lot of back-and-forth; there are a lot of moving

15  parts; there are a lot of in-flows and out-flows, and we had

16  to cover off on all of it.  The bank has a lot of reasonable

17  questions and we have to get -- we had to get them and still

18  get them answers.

19  Q.   And can you tell the Court, what are the key provisions of

20  the proposed amendment to the DIP facility?

21  A.   The changes, you mean?

22  Q.   Correct.

23  A.   It's primarily two key changes.  It's moving the maturity

24  date from the 30 -- May 30th to June 28th, and it is extending

25  the max borrowing from about 5.8 to just under 8.9.

1   Q.  Okay, and if we look back at the budget we've marked as

2   Debtor's Exhibit #1, at the bottom of the page, sort of second

3   to the last column, you see that 8.866?  Are you with me?

4   A.  I am.

5   Q.  And that's when we've reached the maximum borrowing point,

6   correct?

7   A.  Yes.

8   Q.  Okay.  And why is the amendment necessary?

9   A.  It's necessary for a couple of reasons.  1) Obviously,

10  it's always good to get more time.  We -- you know, we

11  continue to operate the company, we continue to make payments.

12  But we have Transition Services Agreements with both buyers

13  that run through the end of June, all right, and we need to be

14  able to honor that so that, you know, so that everything can

15  get transitioned smoothly so that there are no issues.  There

16  are also, you know, funds that are going to be coming in as,

17  you know, over the -- over this time.  We want to give them

18  time to do that -- time for those funds to come in, and we

19  have additional analysis obviously that we've got to keep

20  doing -- we've got to keep running.  The hope, obviously, is

21  to keep this -- is to go beyond the 28th so that we can track

22  down all of those various potential in-flows.

23  Q.  And do you believe the Court approval of the Fourth

24  Amendment that you've described is in the best interest of the

25  Debtor's estates?

1   A.  I do.

2   Q.  And why is that?

3   A.  Again, it allows us to fulfill our obligations under the

4   TSAs, and it allows us to continue to get -- to work towards

5   capturing and collecting potential in-flows of cash, which is

6   good for everybody, and it allows us to keep moving forward

7   and, God willing, plod a path, you know, all the way to the

8   end.

9   Q.  Thank you, Mr. Gorin.

10          MR. MINUTI:  Your Honor, I have no further

11   questions.  Before I pass the witness, however, I would like

12   to move into admission Debtor's Exhibit #1.

13          THE COURT:  All right, I hear no objections.

14   Debtor's 1 is admitted.

15      (Debtor's Exhibit-1 admitted into evidence)

16          MR. MINUTI:  Very well.  I will pass the witness.

17          THE COURT:  Cross examination, Mr. Ruediger?

18          MR. RUEDIGER:  None, Your Honor.

19          THE COURT:  Okay.  Mr. Papandrea?

20          MR. PAPANDREA:  None, Your Honor.

21          THE COURT:  Okay.

22   BY THE COURT:

23   Q.  So sir, if the Court approves this budget and we get to

24   the end of June, the -- am I reading this correctly that the

25   budget is projecting that the balance due JPMorgan will be 6.8

1   million?

2   A.  I'm sorry, sir, I didn't hear the number.

3   Q.  6.8 million?

4   A.  Yes, sir.

5   Q.  What cash flow or assets are going to be available at that

6   point to pay off the loan?

7   A.  Well, we have hold-backs, we have the hold-back, we have

8   the incentive payment, the universal APA has a hold-back that

9   can collect -- hopefully collect that back.  The Sparkle Pop

10  Ad Populum APA has an incentive tail that has a $5 million

11  minimum, so we have that.  Obviously we have some litigation

12  opportunities out there that counsel is looking at and is

13  talking to me about as well.

14  Q.  Okay.

15          THE COURT:  I have no further questions for the

16  witness.  Does anyone wish to ask the witness further

17  questions in light of the Court's questions?

18          MR. MINUTI:  No, Your Honor.

19          THE COURT:  All right.  Thank you for your

20  testimony, sir.

21          MR. GORIN:  Thank you.

22          MR. MINUTI:  Your Honor, that completes the Debtor's

23  evidence in support of the amendment.

24          THE COURT:  Okay, thank you.  Is anyone else wishing

25  to put on evidence?

1              ALL:  (No verbal response).

2              THE COURT:  No takers on that.  So Mr. Minuti, how

3    do you suggest we proceed?  Go ahead.

4              MR. MINUTI:  So Your Honor, obviously the Debtor's

5    decision to amend a prior approved credit agreement is

6    governed by the Business Judgment Rule.  The case law supports

7    the approval of such financing if it is justified by sound

8    business purpose.  I won't belabor the record; I think Mr.

9    Gorin's unrebutted testimony supports the idea that we do need

10   additional financing and we do need to extend the maturity

11   date for all the reasons Mr. Gorin testified to.  Under the

12   circumstances, we believe the amendment is in the best

13   interest of the Debtor's estates and supported by sound

14   business judgment.  For all the reasons we've indicated, Your

15   Honor, we need to obviously make changes to the budget that

16   were discussed on the record here today, #1.  #2) We need to

17   finalize the stipulation, Your Honor, that moves the maturity

18   date and plugs in the maximum barring amount.  As I indicated

19   at the outset of the hearing, we are going to add a provision

20   to the order that requires the Debtor to provide the lenders -

21   - and the Committee will get this as well, Your Honor -- with

22   sort of an updated budget and cash flow by the 10th, so that

23   will be included.  So what we would propose, if Your Honor is

24   inclined to approve the motion before you today, we would work

25   on that as soon as we are done today, and submit that under

1    certification or upload it to chambers, however best to do

2    that.  So that is how I would suggest we proceed, but we would

3    first and foremost ask that Your Honor approve the amendment

4    as described here today.

5              THE COURT:  All right, thank you.  Anyone else wish

6    to be heard?  Mr. Ruediger.

7              MR. RUEDIGER:  David Ruediger, Troutman Pepper Locke

8    for JPMorgan.  Just to reiterate, and I know you heard it so I

9    won't take too much of the Court's time.  This has been a very

10   difficult process.  The bank was asked to provide additional

11   funding, employees have worked and are continuing to work.

12   There are employee claims that I think everyone here believes

13   should be paid.  We had hoped, really hoped that the sale of

14   the assets to the Debtors would have produced enough cash to

15   pay the bank in full and also provide for Unsecured Creditors

16   and others.  Unfortunately, that didn't work out.  I think

17   Your Honor is aware of the twists and turns of the last

18   several weeks, which have been unfortunate, and I think in

19   light of that, there are significant potential sources of

20   recovery that we think the Debtors will pursue, including

21   potential claims against parties who may not have acted in the

22   best interests of everyone involved, let's put it that way.

23   So it's a difficult situation for us to have to fund into this

24   without complete assurance that there will be recovery, but we

25   are confident, based on what the Debtors have provided to us

1  that providing support for the next four weeks will enable
2  them to fulfill their obligations under the Transition
3  Services Agreement, and at least have the recovery of some of
4  those assets that are -- that the money is due to them from
5  those buyers.  Plus we hope recoveries from other areas.
6  Thank you.

7          THE COURT:  All right, thank you.  Mr. Papandrea?
8          MR. PAPANDREA:  Thank you, Your Honor.  Michael
9  Papandrea from Lowenstein Sandler, on behalf of the Committee.
10 So in light of the changes that counsel put on the record,
11 ultimately the Committee is not going to oppose, you know,
12 entry of the stipulation and modified budget -- and go-forward
13 budget today, but just did want to address, it was said that
14 the Committee's concerns have been satisfied, and I think
15 that's a broad characterization.  The Committee, frankly, has
16 a number of concerns, particularly about how this came
17 together today.  There's -- and the Committee needs to be an
18 active participant in the process.  There's a lot of -- we do
19 think that there's value here in this case that could flow to
20 the benefit of Creditors, and that's why ultimately we do
21 believe it's absolutely necessary to not see this case die on
22 the vine today, and that a budget is approved today that
23 allows the case to proceed.  But the Committee was put between
24 a rock and a hard place today because we didn't -- you know,
25 we, the Committee, Committee's advisors didn't necessarily

1   have an opportunity to believe that -- what goes into every

2   line item of the budget.  We know what goes into certain of

3   those line items, which is part of what prompted the decision-

4   making today.  But, you know, ultimately the Committee wants

5   to be sure that the picture comes into view over the next

6   coming weeks.  We know there is a pending motion with respect

7   to the Debtor's request to extend their exclusivity period.

8   We certainly hope that we have a better view with respect to

9   the path forward, as of the time that hearing date comes

10  around.  So the bottom line is as far as today and making sure

11  this case proceeds forward for the benefit of all parties, you

12  know, our concerns are resolved but there is a lot of work to

13  be done in this case, and the Committee still doesn't

14  currently have the full picture with respect to how that work

15  is going to get done.  But with that being said, Your Honor,

16  subject to seeing the form of stipulation and what have you

17  that ultimately is being submitted to the Court today, the

18  Committee is on board with the approach of the Debtors today.

19            THE COURT:  All right.

20            MR. PAPANDREA:  Thank  you.

21            THE COURT:  Thank you.

22            MR. RUEDIGER:  Your Honor -- sorry.  May I add one

23  thing?  Sorry.

24            THE COURT:  Yes.

25            MR. RUEDIGER:  Dave Ruediger from Troutman Pepper

1    Locke for JPMorgan.  One of the items that the stipulation

2    will require that was not mentioned is the delivery of a go-

3    forward budget by the 10th of June, that will extend out for

4    at least 13 weeks and provide supplemental information.

5    Because I understand the Committee's concern; the bank has

6    concerns, too, about what happens after.  And obviously there

7    can be no assurance that the bank will continue to fund, I

8    think that's clear.  But we do need that information to make

9    any decision going forward as to where this case goes after

10   the 28th of June.  So I did want to indicate that will be in

11   the stipulation, a requirement to deliver that by the 10th of

12   June.

13           THE COURT:  All right.  Mr. Minuti, you get the last

14   word, sir.

15           MR. MINUTI:  Yes, Your Honor.  In terms of the

16   Committee's comments, Your Honor, I'm not going to burden the

17   record.  I will just say we disagree.  And we fully

18   understand, Your Honor, that we have to deliver this sort of

19   budget cash flow going forward by the 10th.  I thought I had

20   said that twice, but certainly we hear Mr. Ruediger loud and

21   clear and we're prepared to do that.  So thank you very much

22   for the time, Your Honor, and we would request you approve the

23   amendment.  Thank you.

24           THE COURT:  All right, thank you.  Well, I'm

25   satisfied, based upon the record that I have, that the Court

1   should approve the proposed amendment and I will do so.  I

2   will expect, Mr. Minuti, once it's all drafted and in place,

3   if it can just be submitted with the certification it's been

4   reviewed by all counsel, I will consider it promptly in

5   chambers.  Thank you.

6           MR. MINUTI:  Thank you, Your Honor.

7           THE CLERK:  All rise.  This Court is in recess until

8   2 p.m.

9       (Court adjourned)

10

11                   CERTIFICATION
12   I, Lewis Parham, certify that the foregoing is a correct
13   transcript from the electronic sound recording of the
14   proceedings in the above-entitled matter.
15
16
17                                           6/2/25
18
19   _____      _____
20   Signature of Transcriber                Date