**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**Hearing Date**:<br>TBD<br>**Objection Deadline**:<br>July 16, 2025 |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING (I) PROCEDURES FOR SALE OR OTHER DISPOSITION OF CONSIGNED INVENTORY, (II) APPROVING SALES OR OTHER DISPOSITION OF CONSIGNED INVENTORY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS OR ENCUMBRANCES AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, respectfully move (the "Motion") as follows:

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"):

   a. Approving the Consignment Sale Procedures (as defined below);

   b. authorizing and approving sales or other dispositions of the consigned inventory substantially in compliance with the Consignment Sale Procedures (collectively, the "Consignment Sales"), free and clear of all liens, claims, interests, and encumbrances; and

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

55724991.15

  c. granting certain related relief.

## Preliminary Statement

  2. Following the closing of the sales of a substantial majority of their assets, the Debtors are in possession of significant inventory that was shipped to the Debtors on a consignment basis.

  3. The consignors have not satisfied the requirements under applicable law to perfect their interests in this consigned inventory. As further explained below, this give the Debtors the right to transfer title to this inventory free and clear of the consignor's interests.

  4. The Debtors accordingly seek to sell or otherwise dispose of the consigned inventory free and clear of the interests, if any, of the consignors.

  5. To that end, the Debtors seek approval of Consignment Sale Procedures (as described and defined herein) to permit them to market, sell, and/or otherwise dispose of consigned inventory expeditiously, minimizing costs and maximizing recoveries in order to generate the best result for the estates.

## Jurisdiction and Venue

  6. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

  7. The statutory bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "<u>Bankruptcy Code</u>"), rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rules

6004-3, 6004-4 and 6004-5 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Bankruptcy Rules").

## Background

8. On January 14, 2025 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On January 29, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

9. A description of the Debtors' business and the reasons for commencing these cases are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petitions and First Day Relief* (D.I. 20) (the "First Day Declaration") and incorporated herein by reference.

10. As of the Petition Date, the Debtors were a leading distributor of comics, graphic novels, toys, games and other pop culture related merchandise to retailers across the world. The Debtors sold product to various end users, through three sales channels: (i) mass market retailers, including Walmart, Target, and Amazon, (ii) specialty stores, such as comic book shops and collectible stores that focus on graphic novels, statues, and toys, and (iii) bookstores, including Barnes & Noble. The Debtors distributed products to over 4,000 mass market retail stores and over 2,500 comic book and collectible stores.

11. Most of such product was purchased by the Debtors from vendors and placed into the Debtors' inventory until sold to customers. Other inventory was provided to the Debtors on consignment with the Debtors pursuant to various distribution or similar agreements.

12. Consigned inventory is stored in the Debtors' distribution facility located in Olive Branch, Mississippi.

13. None of the vendors that provided consigned inventory to any of the Debtors filed a U.C.C.-1 financing statement against any of the Debtors prior to the Petition Date.

14. On January 21, 2025, the Debtors filed the *Debtors' Motion for an Order (I) Authorizing and Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling an Auction and a Sale Hearing, (IV) Approving the Form and Manner of Notice Thereof, and (V) Establishing Notice and Procedures for the Assumption and Assignment of Certain Executory Contracts and Leases* (D.I. 68), which was granted by the Court on February 11, 2025.

15. The Court entered orders approving the sale of certain assets to Universal Distribution LLC and Sparkle Pop LLC, respectively, on May 1, 2025 (D.I. 407, 408). The sales subsequently closed.

16. A list of the vendors that provided consigned inventory that is the subject of this Motion (the "Consignment Vendors") that is currently in the possession of the Debtors is set forth on **Exhibit B**.

17. The Debtors' prepetition secured lender, and their debtor-in-possession lender, JPMorgan Chase Bank N.A. (the "DIP Lender") has a valid lien on the Debtors' interest in the consigned inventory pursuant to the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay and (V) Granting Related Relief.* (D.I. 163).

55724991.15

-5-

18. The Debtors seek to sell or otherwise dispose of the consigned inventory pursuant to the procedures described in this motion (the "Consignment Sale Procedures") to maximize its value for their estates. To that end, the Debtors and their professionals, in the exercise of their business judgment and in consultation with the DIP Lender and the Committee, and subject to Court approval of this Motion, will work diligently to conduct the Consignment Sales in an efficient and value-maximizing manner consistent with the Consignment Sale Procedures.

**Provisions to be Highlighted Pursuant to Local Bankruptcy Rule 6004-4**

19. The following chart discloses certain information required to be highlighted pursuant to Local Bankruptcy Rule 6004-4:

| Rule | Disclosure |
|---|---|
| **Qualification of Bidders** *Local Bankruptcy Rule 6004-4(b)(1)* | In the exercise of the Debtors' business judgment and in consultation with the DIP Lender and the Committee, the Debtors may qualify any person or entity that makes an offer for any portion of the consigned inventory. |
| **Bid Deadline** *Local Bankruptcy Rule 6004-4(b)(2)(A)* | N/A |
| **Qualifying Bid Requirements** *Local Bankruptcy Rule 6004-4(b)(2)* | N/A |
| **Good Faith Deposit** *Local Bankruptcy Rule 6004-4(b)(2)(C)* | In the exercise of the Debtors' business judgment and in consultation with the DIP Lender and the Committee, the Debtors may require a good faith deposit from potential purchasers. |
| **Stalking Horse Bid Protections** *Local Bankruptcy Rule 6004-4(b)(3)* | N/A |
| **Modification of Bidding and Auction Procedures** *Local Bankruptcy Rule 6004-4(b)(4)* | The Debtors and their estates reserve the right, after consultation with the DIP Lender and the Committee, to modify the Consignment Sale Procedures in a manner that is not inconsistent with this Motion, including the right to require interested parties to bid at an auction. |

55724991.15

| | |
|---|---|
| **Closing with Alternative Back-Up Bidders**<br>*Local Bankruptcy Rule 6004-4(b)(5)* | In the event that a selected purchaser fails to close on the applicable Consignment Sale, the Debtors are authorized, but not directed, to close a Consignment Sale to another interested party without the need for further order of the Court and without the need for further notice to any interested parties. |

**Provisions to be Highlighted Pursuant to Local Bankruptcy Rule 6004-3**

20. The following chart discloses certain information required to be disclosed pursuant to Local Bankruptcy Rule 6004-3.

| Rule | Disclosure/Location |
|---|---|
| **Sale to Insider**<br>*Local Bankruptcy Rule 6004-3(a)* | In the event that an insider makes an offer, the Debtors will evaluate it in accordance with their business judgment and in consultation with the DIP Lender and the Committee. If the Debtors elect to pursue such a sale to an insider, they will file a notice with the Court identifying the insider, the consigned inventory to be sold to the insider and the consideration for the proposed transaction, and shall serve the notice on (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 and (ii) any Consignment Vendor whose consigned inventory is the subject of the proposed sale to an insider. Unless a party objects within five (5) business days of the service of the notice, the Debtors may close the proposed sale to the insider. |
| **Agreements with Management**<br>*Local Bankruptcy Rule 6004-3(b)* | None. |
| **Releases**<br>*Local Bankruptcy Rule 6004-3(c)* | None. |
| **Private Sale/No Competitive Bidding**<br>*Local Bankruptcy Rule 6004-3(d)* | The Debtors contemplate that Consignment Sales may include private sales without competitive bidding, and may include competitive bidding for some consigned inventory, as determined by the Debtors in consultation with the DIP Lender and the Committee.<br><br>The Debtors may evaluate the consideration, and the terms and conditions of delivery, offered by a potential purchaser. |
| **Closing and Other Deadlines**<br>*Local Bankruptcy Rule 6004-3(e)* | N/A |

55724991.15

| | |
|---|---|
| **Good Faith Deposit** *Local Bankruptcy Rule 6004-3(f)* | In the exercise of the Debtors' business judgment and in consultation with the DIP Lender and the Committee, the Debtors may require a good faith deposit from potential purchasers. |
| **Interim Arrangements with Proposed Buyer** *Local Bankruptcy Rule 6004-3(g)* | The Debtors reserve the right to enter into interim arrangements with a proposed purchaser, as determined by the Debtors in the exercise of their business judgment, in consultation with the DIP Lender and the Committee. If the Debtors enter into any interim arrangement, the Debtors will seek court approval thereof, to the extent required by the Bankruptcy Code. |
| **Use of Proceeds** *Local Bankruptcy Rule 6004-3(h)* | The Debtors anticipate that substantially all sale proceeds will be applied to the secured claim of the DIP Lender until the DIP Lender's outstanding claims are fully satisfied. |
| **Record Retention** *Local Bankruptcy Rule 6004-3(i)* | The Debtors will retain records related to the Consignment Sales sufficient to administer the bankruptcy estates. |
| **Sale of Avoidance Actions** *Local Bankruptcy Rule 6004-3(j)* | N/A |
| **Requested Findings as to Successor Liability** *Local Bankruptcy Rule 6004-3(k)* | All Consignment Sales will be free and clear of all liens, encumbrances or interests pursuant to section 363(f) of the Bankruptcy Code. |
| **Sale Free and Clear of Unexpired Leases** *Local Bankruptcy Rule 6004-3(l)* | All Consignment Sales will be free and clear of all liens, encumbrances or interests pursuant to section 363(f) of the Bankruptcy Code. |
| **Credit Bid** *Local Bankruptcy Rule 6004-3(m)* | No Consignment Vendor has a valid and perfected lien that secures an allowed claim, or a right to credit bid. |
| **Relief from Bankruptcy Rule 6004(h)** *Local Bankruptcy Rule 6004-3(n)* | The Debtors seek a waiver of the 14-day stay under Bankruptcy Rule 6004(h), as described in more detail below. |

**Basis for Relief Requested**

**I.   The Consignment Sale Procedures are appropriate and will maximize value for the Debtors' estates.**

21.    The key objective in any sale of property of a debtor's estate is to maximize the value received by the estate. *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004)

(finding that debtor "had a fiduciary duty to protect and maximize the estate's assets"); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (recognizing that a main goal of any proposed sale of property of a debtor's estate is to maximize value). Procedures used to enhance competitive bidding support this objective and, therefore, are appropriate in the context of bankruptcy sales. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 536–37 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding provide a benefit to a debtor's estate); *see also Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (stating that bidding procedures "encourage bidding and . . . maximize the value of the debtor's assets"). Likewise, courts authorize streamlined procedures for wind-down sales when these procedures will reduce sale costs and maximize value. *See In re Movie Gallery, Inc.*, No. 10-30696 (DOT), 2010 WL 8033248, at *4 (Bankr. E.D. Va. May 20, 2010) (approving store closing and going-out-of-business sale procedures for the orderly liquidation of debtor's remaining inventory).

22. The Debtors have designed the Consignment Sale Procedures to promote a value-maximizing process. Pursuant to the Consignment Sale Procedures, the Debtors may sell consigned inventory in large or small quantities, on terms that may include private sales (in order to minimize costs) and/or competitive bidding or auction processes (for highly-desirable consigned inventory). Alternatively, the Debtors may dispose of consigned inventory through other means, in consultation with the DIP Lender and the Committee.

23. The authorization requested herein, to sell consigned inventory free and clear, and to grant purchasers the protections of section 363(f) and 363(m) of the Bankruptcy Code, gives purchasers certainty that their purchases are valid and will incentivize them to make value-maximizing offers while minimizing the procedural and administrative costs to the estates.

24. Furthermore, the Debtors will consult with the DIP Lender and the Committee regarding the sale process.

25. The Debtors submit that the Consignment Sale Procedures are fair and transparent and will deliver the greatest net return for the estates. The Debtors request the Court approve the Consignment Sale Procedures.

II. **Sufficient business justification exists for consummation of the Consignment Sales under sections 105(a) and 363(b) of the Bankruptcy Code.**

26. Pursuant to section 105(a) of the Bankruptcy Code, a "[c]ourt may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have required that such use, sale or lease be based upon the sound business judgment of the debtor. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (internal citation omitted); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147–48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *In re Lionel Corp.*).

27. The demonstration of a valid business justification by the debtor leads to a strong presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

28. The Debtors submit that their decision to consummate the Consignment Sales represents a reasonable exercise of the Debtors' business judgment and, accordingly, the Consignment Sales should be approved under sections 105(a) and 363(b) of the Bankruptcy Code.

29. The Consignment Sale Procedures, the consultation rights of the DIP Lender and the Committee, and the reporting requirements described below, will ensure that the Debtors' estates receive the highest or otherwise best value available for the consigned inventory, and will provide a greater recovery than would be provided by any other available alternative. Further, the Consignment Sale Procedures will ensure the fairness and reasonableness of the consideration to be paid by a purchaser of consigned inventory, and establish that the Debtors and such purchaser have proceeded in good faith.

30. Additionally, the Debtors believe that notice of the Consignment Sales is reasonable and adequate under the circumstances. Bankruptcy Rules 2002(a) and (c) require the Debtors to notify creditors of the Consignment Sales, the terms and conditions of the Consignment Sales, the time and place thereof, and the deadline for filing any objections. The Debtors believe that the Consignment Sale Procedures and the service of the instant Motion on all Consignment Vendors complies with Bankruptcy Rule 2002, and is reasonably calculated to provide timely and adequate notice of the Consignment Sale Procedures, the Consignment Sales, and applicable hearing and objection dates, to the Debtors' creditors and all other parties in interest that are entitled to notice.

31. The Debtors believe that the Consignment Sales will generate significant value for the Debtors' estates, and that they represent the best path forward for maximizing recoveries to the estates, the Debtors' creditors, and parties in interest. The Debtors submit that ample business

justification exists for the consummation of the Consignment Sales and, therefore, request that this Court approve such Consignment Sales.

### III. The Consignment Sales free and clear of all encumbrances are authorized under section 363(f) of the Bankruptcy Code.

32. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is a bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

33. Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the consigned inventory "free and clear" of liens and interests. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that because section 363(f) is written in the disjunctive, a court may approve a sale free and clear if any one subsection is met); *see also Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (same); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same). Furthermore, a debtor possesses broad authority to sell assets free and clear of liens. *See In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003).

34. The Debtors submit that, in the interest of attracting the best offers, it is appropriate to sell the consigned inventory on a final "as is" basis, free and clear of any and all liens, claims,

interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) are satisfied with respect to such Consignment Sales. In particular, the Debtors believe that section 363(f)(2) of the Bankruptcy Code will be met as to the DIP Lender, JPMorgan Chase Bank, N.A., because the Debtors anticipate the DIP Lender will consent to the Consignment Sales.

**IV. Consignment vendors' interests in the consigned inventory are in bona fide dispute.**

35. Even if a consignment vendor objects to the Consignment Sales, the Debtors submit that the Court may still authorize the sale of their consigned inventory because each Consignment Vendor's interest is, at best, unperfected and is thus in bona fide dispute.

36. Section 363(f)(4) of the Bankruptcy Code provides that the Debtors may "sell property ... free and clear of any interest in such property of an entity other than the estate, ... if ... such interest is in bona fide dispute." A bona fide dispute exists when "there is an objective basis for either a factual or legal dispute as to the validity of the asserted interest." *In re Taylor*, 198 B.R. 142, 162 (Bankr. D.S.C. 1996); *Revel AC v. IDEA Boardwalk, LLC*, 802 F.3d 558 (3d. Cir. 2015) (same).

37. The Court does not need to resolve the dispute; rather, it should merely determine whether a dispute exists. *In re Oneida Lake Dev., Inc.,* 114 B.R. 352, 357–58 (Bankr. N.D.N.Y. 1990) (concluding that § 363(f)(4) was satisfied even though the debtor had yet to commence an action against the secured creditor).

38. The Debtors submit that the deliveries of goods by which the Debtors obtained possession of the consigned inventory are "consignments" within the meaning of the Uniform Commercial Code ("U.C.C."), section 9-102(a)(20). *See also* Md. Code Ann., Com. Law § 9-102(a)(20).

39. U.C.C. section 9-319(a)[2] provides that "while the goods are in the possession of the consignee, the consignee is deemed to have rights and title to the goods identical to those the consignor had or had power to transfer." *See also* Md. Code Ann., Com. Law § 9-319(a). This provision permits the consignee to transfer good title or validly encumber the goods with a lien.

40. In effect, the value of consigned inventory is available to creditors of a consignee unless the consignor protects the value of its consigned inventory from the consignee's creditors by perfecting its interest under other law – generally, by filing a U.C.C.-1 financing statement. *In re Valley Media, Inc.*, 279 B.R. 105 (Bankr. D. Del. 2002). *See also* Md. Code Ann., Com. Law § 9-319(b).

41. Put differently, a consignment vendor is deemed to have a purchase money security interest in its consigned inventory, but if that interest is unperfected, U.C.C. section 9-319(a) applies and "consigned goods are therefore subject to the claims of [a bankruptcy debtor's] creditors . . ." *In re Wicaco Mach. Corp.*, 49 B.R. 340, 343 (E.D. Pa. 1984), aff'd sub nom. *Quaker City Iron Works, Inc. v. Ganz*, 770 F.2d 1074 (3d Cir. 1985).

42. Bankruptcy Courts hold that an unperfected consignor's rights are junior to those of the bankruptcy estate. *See In re Niblett,* 441 B.R. 490, 493 (Bankr. E.D. Va. 2009) (authorizing chapter 7 trustee to sell consigned goods free and clear over objection of

---

[2] Prior to its amendment in 2001, former U.C.C. § 2-326(3) included a provision substantially similar to the definition of "consignment" in current U.C.C. § 9-102(a)(20). The U.C.C. Permanent Editorial Board Comments note the transfer of this provision: "Certain true consignments transactions were dealt with in former Sections 2-326(3) and 9-114. These provisions have been deleted and have been replaced by new provisions of Article 9. See e.g., Sections 9-109(a)(4); 9-103(d); 9-319." U.C.C. § 2-326, PEB Comment, 2003.

Case law treats former U.C.C. § 2-326 and current U.C.C. § 9-102(a)(20), 9-319 as substantially-identical substantive law regarding the perfection of a consignor's interest. *See In re Valley Media, Inc.*, 279 B.R. at 123 ("Vendors' rights to the Contested Inventory remain[] the same under either the former [Article 2] or the revised [Article 9] U.C.C. provisions as enacted in California."); *see also In re Downey Creations, LLC*, 414 B.R. at 469 (relying on former U.C.C. § 2-326 to interpret current U.C.C. § 9-102(a)(20), 9-319).

unperfected consignor); *In re TSAWD Holdings, Inc.*, 601 B.R. 599, 608 (Bankr. D. Del. 2019) (unperfected consignor's interest was junior); *In re Int'l Home Design, Inc.,* 28 B.R. 584 (Bankr. W.D. Mo. 1983) (in absence of perfection of security interest, trustee in bankruptcy prevails over consignor and has interest in goods which became property of estate under Section 541); *In re Flo-Lizer, Inc.,* 121 B.R. 324 (S.D. Ohio 1990) (similar); *In re Auclair,* 131 B.R. 185 (Bankr. M.D. Ala. 1991) (similar).

43.    As a result of their unperfected junior status, a consignor's interest could be avoided pursuant to the "strong arm powers" of section 544(a)(1) of the Bankruptcy Code. *In re Valley Media, Inc.*, 279 B.R. at 133 & n.58. "[C]ourts concur that the consignor holds an unsecured claim against the Debtor as a result …" Id.; *see also In re BRI Corp.*, 88 B.R. 71, 75 (Bankr. E.D. Pa. 1988) (consignor has an unsecured claim against the estate subordinated to the rights of the trustee under 11 U.S.C. § 544(a)(1)).

44.    Unperfected Consignment Vendors hold, at best, a deemed unperfected lien, junior to the interests of the estate and other perfected liens. This puts the deemed lien in bona fide dispute. For this reason, courts approve the sale of consigned inventory free and clear of the interest of the consignor. *See In re Valley Media, Inc.*, 279 B.R. at 124 (granting debtor's motion for consignment auction procedures and free-and-clear sales over objection of unperfected consignors); *In re Morgansen's LTD*, 302 B.R. 784, 787 (Bankr. E.D.N.Y. 2003), as corrected (Oct. 14, 2003) (same).

45.    The Debtors have conducted a U.C.C. lien search in the jurisdiction in which the Debtors are incorporated and, other than the DIP Lender, no liens against the consigned inventory were of record. See U.C.C. lien search results as of June 20, 2025, attached as **Exhibit C**.

55724991.15

46. The consignment vendor has the burden of proof to demonstrate the perfection of its interest or the inapplicability of U.C.C. Article 9. *See In re Downey Creations, LLC*, 414 B.R. 463, 465 (Bankr. S.D. Ind. 2009) ("the burden on the party who bears the risk under § 9–102(a)(20), i.e., the consignor."); *see also In re G.S. Distribution, Inc.*, 331 B.R. 552 (Bankr. S.D.N.Y. 2005) (consignor bears burden of proof to establish interest superior to the estate); *In re Valley Media, Inc.*, 279 B.R. at 124 (same).

47. Even if a consignment vendor wishes to carry its burden in future proceedings, the Consignment Vendor's interest is still in bona fide dispute at the present, and the consigned inventory can still be sold free and clear of that interest.

48. A sale of the consigned inventory other than one free and clear of all interests would yield substantially less value for the Debtors' estates. The Debtors submit that interested purchasers will not consummate Consignment Sales absent the ability to purchase the consigned inventory free and clear of all interests. Accordingly, the Debtors request that the consigned inventory be sold free and clear of the interests of the Consignment Vendors.[3]

## V. The Consignment Sales should be subject to the protections of section 363(m) of the Bankruptcy Code.

49. Section 363(m) of the Bankruptcy Code provides, in relevant part, that the reversal or modification on appeal of an authorization of a sale pursuant to section 363(b) or section 363(c) of the Bankruptcy Code does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. *See* 11 U.S.C. § 363(m).

---

[3] The Debtors reserve their rights to assert against the Consignment Vendors any surcharge under 11 U.S.C. § 506(c), any rights under 11 U.S.C. § 552, or any other rights or defenses under applicable law.

50. As part of the Consignment Sale Procedures, the Debtors seek approval of the form of a declaration, substantially in the form attached to the Proposed Order as **Exhibit 1**, that purchasers may sign in order to aver that they closed the applicable Consignment Sale for valid consideration via an arm's length transaction, without any fraud, collusion or attempt to take unfair advantage.

51. The proposed Consignment Sale Procedures provide that the Debtors shall file executed declarations promptly after any closing on a sale of Consigned Inventory for a purchase price that is less than $100,000. For all other proposed Consignment Sales, the Debtors shall file any applicable declaration at least seven (7) business days prior to the closing on such sale, and shall provide notice of such declaration to the applicable Consignment Vendor. Parties in interest shall have five (5) business days from such notice to file an objection with the Court as to whether or not the proposed purchaser is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code. If a timely objection is made to a declaration, a hearing on such objection shall be scheduled. Such hearing shall be limited solely to a determination of the purchaser's good faith.

52. Unless the Court orders otherwise, a purchaser of consigned inventory that purchased such inventory in accordance with the Consignment Sale Procedures, and that executes a declaration, is entitled to the protections afforded by section 363(m) of the Bankruptcy Code.

53. Such relief is appropriate in that any Consignment Sales will be the result of arm's-length, good-faith negotiations, and the key parties in interest will have the opportunity to consult on a proposed transaction. *See Esposito v. Title Ins. Co. of Pa (In re Fernwood Mkts)*, 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (good faith purchasers are protected under section 363(m) where notice is provided to lienholders).

## VI. Modification of Sale Reporting Requirements

54. Pursuant to Bankruptcy Rule 6004(f)(1)(A), for a public auction or private sale of estate property out of the ordinary course of business,

> Unless it is impracticable, when the sale is completed, an itemized statement must be filed that shows:
>
> • the property sold;
> • the name of each purchaser; and
> • the consideration received for each item or lot or, if sold in bulk, for the entire property.

55. Local Rule 6004-5 requires the seller to file this statement within seven days of the consummation of the sale.

56. The Debtors submit that it is impractical to file such a statement on the timeline suggested in the Bankruptcy and Local Rules, given the volume of consigned inventory and the possibility that there will be numerous purchasers.

57. The Debtors submit that they will keep a record of each Consignment Sale as though that sale occurred in the ordinary course of business.

58. The Debtors request that the reporting requirements so that the reports required by Bankruptcy Rule 6004(f)(1)(A) are to be filed on a monthly basis, rather than seven days after each sale.

## **Waiver of Bankruptcy Rule 6004(h)**

59. Pursuant to Bankruptcy Rule 6004(h), "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As set forth throughout this motion, any delay in the Debtors' ability to commence Consignment Sales would be detrimental to the Debtors, their

creditors and estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h).

## Waiver of Memorandum of Law

60. Pursuant to Local Bankruptcy Rule 9013-2, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

## Notice

61. Notice of this motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Committee; (iii) counsel to JPMorgan Chase Bank, N.A.; (iv) the Consignment Vendors; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested and the facts and circumstances of these chapter 11 cases, the Debtors submit the no other or further notice is necessary.

## Conclusion

WHEREFORE, the Debtors respectfully request the entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: June 25, 2025          **SAUL EWING LLP**

By: */s/ Jordan D. Rosenfeld*
    Jordan D. Rosenfeld (MD Bar No. 13694)
    1001 Fleet Street, 9th Floor
    Baltimore, MD 21202
    Telephone: (410) 332-8600
    Email: jordan.rosenfeld@saul.com

    -and-

    Jeffrey C. Hampton (admitted *pro hac vice*)
    Adam H. Isenberg (admitted *pro hac vice*)
    Turner N. Falk (admitted *pro hac vice*)
    1500 Market Street, 38th Floor
    Philadelphia, PA 19102
    Telephone: (215) 972-7777
    Email: jeffrey.hampton@saul.com
           adam.isenberg@saul.com
           turner.falk@saul.com

    -and-

    Mark Minuti (admitted *pro hac vice*)
    Paige N. Topper (admitted *pro hac vice*)
    Nicholas Smargiassi (admitted *pro hac vice*)
    1201 N. Market Street, Suite 2300
    Wilmington, DE 19801
    Telephone: (302) 421-6800
    Email: mark.minuti@saul.com
           paige.topper@saul.com
           nicholas.smargiassi@saul.com

    *Counsel for Debtors and Debtors in Possession*