# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
# (Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE REJECTION OF THE GLENDALE LEASE AND THE ABANDONMENT OF DE MINIMIS PROPERTY

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, respectfully move (the "Motion") as follows:

### Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") authorizing the Debtors to reject the Glendale Lease (as defined below), effective as of 11:59 p.m., June 30, 2025 (the "Rejection Date") and abandon any De Minimis Property (as defined below) located in the leased premises.

### Jurisdiction and Venue

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

55810477.3

3. The statutory bases for the relief requested herein are sections 365 and 554(a) of title 11 of the United States Code, (the "Bankruptcy Code"), as supplemented by rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 6006-1 and 6007-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Bankruptcy Rules").

**Background**

4. On January 14, 2025 (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are maintaining their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On January 29, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

5. A description of the Debtors' business as of the Petition Date and the reasons for commencing these cases are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petitions and First Day Relief* (D.I. 20) (the "First Day Declaration") and incorporated herein by reference.

6. Prepetition, Debtor Diamond Select Toys & Collectibles, LLC, as lessee, and Rubin & Frieda Fenster Family LTD Partnership (the "Landlord"), as lessor, were parties to a lease dated February 7, 2019 (as amended, the "Glendale Lease") for the premises located at 1546 Victory Blvd., Glendale, California 91201 (the "Premises"). The Premises contained a design studio and an office space whereby Diamond Select Toys & Collectibles, LLC, designed concepts and created three dimensional molds that were used in the manufacturing process.

7. The Debtors commenced these chapter 11 cases to run a sale process for all or

2

substantially all of their assets pursuant to section 363 of the Bankruptcy Code. To that end, on February 11, 2025, the Court entered an order establishing, among other things, bidding procedures and key deadlines for the Debtors' postpetition sale process (D.I. 136) (the "Bid Procedures Order"). On February 21, 2025, the Debtors filed a motion seeking authority to sell substantially all their assets free and clear of any liens, claims, interests and encumbrances, and to assume and assign executory contracts and unexpired leases in connection with the sale of the Debtors' assets (D.I. 168).

8. Consistent with the Bid Procedures Order, the Debtors held an auction on March 24 and 25, 2025. Following the Auction, the Debtors filed the *Notice of Designation of Successful Bidder and Back-Up Bidder* (D.I. 270) identifying Alliance Entertainment, LLC ("Alliance") as the successful bidder and a combination of Universal Distribution, LLC ("Universal") and Ad Populum, LLC, as the back-up bidders.

9. Ultimately, the sale to Alliance did not close and the Debtors pivoted to seeking authority to sell their assets to the designated back-up bidders. *See Debtors' Motion for Entry of Orders Authorizing the Sale of Substantially All of the Debtors' Assets to the Back-Up Bidders Pursuant to the Bidding Procedures Order* (D.I. 385). On May 1, 2025 the Court entered Orders approving the sale of substantially all the Debtors' assets to Universal and Sparkle Pop, LLC ("Sparkle Pop") (an affiliate of Ad Populum, LLC). *See* D.I. 407 & 408. The sales to Universal and Sparkle Pop have closed. *See* D.I. 499 and 500.

10. Now that the Debtors have sold substantially all their assets, the Lease is no longer necessary to the Debtors or their estates. The Lease has associated costs and, given that the Debtors no longer operate their business, such costs will provide no benefit to the estates. Furthermore, the Debtors confirmed that Sparkle Pop does not want the Lease to be assumed and assigned in

3

connection with its respective asset purchase agreements. Accordingly, in the exercise of their business judgment, the Debtors seek to reject the Lease in this Motion.

11. The Asset Purchase Agreement approving the sale to Sparkle Pop provides that the Debtors sold all "equipment, machinery, furniture, fixtures and improvements, shelving and cabinets, forklifts, tooling and spare parts, vehicles, office and computer equipment, and any other tangible personal property (including without limitation consumables located in the leased Premises to Sparkle Pop. See *Order (I) Approving Asset Purchase Agreement Among the Debtors and Sparkle Pop, LlC; (II) Approving Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (III) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [D.I. 407]. Although the Debtors accordingly believe that any tangible property remaining in the Premises are no longer property of the estate, in the event that any miscellaneous property located on the Premises remains the Debtors' property (the "De Minimis Property"), the Debtors seek authority to abandon it pursuant to this Motion. The Debtors have determined, in their business judgment, the De Minimis Property has little to no value to their estates.

**Basis for Relief Requested**

**1. Rejection of the Glendale Lease Reflects the Debtors' Sound Business Judgment.**

12. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a). "A debtor's decision to reject an executory contract under section 365 is governed by the business judgment standard." *In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (*citing Grp. of Inst.. Invs. v. Chi., Milwaukee, St. Paul. & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943)); *see also In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003)

("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion."). "Under the business judgment standard, the sole issue is whether the rejection benefits the estate." *In re HQ Glob. Holdings, Inc.*, 290 B.R. at 511; *see also NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) (noting that the "usual test for rejection of an executory contract is simply whether rejection would benefit the estate"), *aff'd*, 465 U.S. 513 (1984); s*ee In re Alongi,* 272 B.R. 148, 153 (Bankr. D.Md. 2001) ("A purpose of § 365 is to avoid giving administrative priority to executory contracts that are not a good bargain for a debtor's estate.").

13. Under the circumstances, the rejection of the Glendale Lease is an appropriate exercise of the Debtors' business judgment that will reduce financial and administrative burdens on the Debtors' estates. The Glendale Lease is no longer necessary now that the Debtors' assets have been sold. Accordingly, the Debtors' continued performance under the Glendale Lease would be an unnecessary depletion of value of the Debtors' estates with no accompanying benefit. For these reasons, the Court should authorize the Debtors to reject the Glendale Lease.

**2. Rejection of the Glendale Lease Effective as of the Rejection Date is Warranted.**

14. The Debtors seek an effective rejection date for the Glendale Lease on the Rejection Date. While section 365 of the Bankruptcy Code does not specifically address the issue, courts in this district and others have held that bankruptcy courts may exercise their equitable powers in granting such an order when doing so promotes the purposes of section 365(a). *See, e.g.*, *Thinking Machines Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1028–29 (1st Cir. 1995) (holding that "rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate" as of the motion filing date); *In re Parking Mgmt., Inc.*, 620 B.R. 544, 553

(Bankr. D. Md. 2020) (noting that rejection order rejected unexpired leases as of the petition date); *In re Fieldstone Mortg. Co.*, 427 B.R. 364, 372 (Bankr. D. Md. 2010) (contracts were "deemed rejected as of February 11, 2008, the date the debtor filed its first rejection motion.").

15. Courts have further held that the rejection of executory contracts and unexpired leases effective as of an earlier date may be approved "after balancing the equities" of a case and concluding that such equities weigh in favor of the debtor. *See In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) ("Thus, only after balancing the equities in a particular case, should the court approve a retroactive rejection of nonresidential lease."). In balancing these equities, courts typically examine a number of factors, including the costs that a delayed rejection would impose on a debtor. *See, e.g.*, *Constant Ltd. P'ship v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33, 33–39 (S.D.N.Y. 1995).

16. The balance of equities favors the Debtors' rejection of the Glendale Lease effective as of the Rejection Date. The Debtor has advised the Landlord through its counsel and its property manager of its intention to surrender the Premises as of 11:59 p.m. on June 30, 2025, and the Debtors have vacated the Premises. The Glendale Lease no longer provides any value to the Debtors' estates and continued maintenance of, and performance under, the Glendale Lease is both burdensome and wasteful of estate resources. Any postponement of the Rejection Date could cause the Debtors to incur unnecessary administrative expenses for a lease that provides no tangible benefit to the Debtors' estates, which would be inequitable and prejudicial to the Debtors. Further, no parties in interest will be prejudiced by the relief sought herein because the Debtors will have surrendered the Premises by the Rejection Date.

**3. Permitting the Debtors to Abandon De Minimis Property at the Premises is Appropriate under the Circumstances**

17. Section 554(a) of the Bankruptcy Code provides that a debtor in possession may

55810477.3

abandon, subject to Court approval, "property of the estate that . . . is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Before authorizing abandonment of property, a bankruptcy court must find either: (i) the property is burdensome to the estate or (ii) the property is both of inconsequential value and inconsequential benefit to the estate. *See, e.g.*, *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 497 (1986); *In re Texaco, Inc.*, 90 B.R. 38, 44 (S.D.N.Y. 1988).

18. The De Minimis Property, if any, that the Debtors propose to abandon in connection with the Lease is of inconsequential value to the Debtors' estates. The De Minimis Property consists of miscellaneous items not sold to Sparkle Pop that the Debtors no longer require following the rejection of the Lease, and is otherwise of immaterial value. The cost of retrieving, marketing and reselling, or disposing of such De Minimis Property far outweighs any recovery the Debtors could hope to attain for the property. Thus, the Debtors have determined that the abandonment of any such De Minimis Property is in the best interests of the Debtors and their estates and creditors.

## Reservation of Rights

19. The Debtors hereby reserve their rights with respect to any existing defaults of the Landlord regarding the Glendale Lease, and all defenses and counterclaims to any rejection damages claims are preserved, including without limitation defenses or counterclaims relating to the Glendale Lease's expiration, the Landlord's default or the Landlord's mitigation of damages.

## Waiver of Memorandum of Law

20. Pursuant to Local Bankruptcy Rule 9013-2, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

**Notice**

21. Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Committee; (iii) counsel to JPMorgan Chase Bank, N.A.; (iv) the Landlord; (v) the Office of the United States Attorney for the District of Maryland; (vi) the United States Attorney General; (vii) the civil process clerk for the United States Attorney for the District of Maryland;; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested and the facts and circumstances of these chapter 11 cases, the Debtors submit the no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request the entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

[*Remainder of Page Left Intentionally Blank*]

55810477.3

Dated: June 30, 2025 **SAUL EWING LLP**

By: */s/ Jordan D. Rosenfeld*
Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
Turner N. Falk (admitted *pro hac vice*)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
       adam.isenberg@saul.com
       turner.falk@saul.com

-and-

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
       paige.topper@saul.com
       nicholas.smargiassi@saul.com

*Counsel for Debtors and Debtors in Possession*

55810477.3