IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered) |

# NOTICE OF FILING SEVENTH AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT

**PLEASE TAKE NOTICE** that, in accordance with the *Order Approving Fifth Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement* [D.I. 569], the above-captioned debtors and debtors in possession hereby file the Seventh Amendment to Debtor-In-Possession Credit Agreement, which is attached hereto as **Exhibit A**.

[*Remainder of Page Left Intentionally Blank*]

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

55846850.1

| | |
|---|---|
| Dated: July 8, 2025 | **SAUL EWING LLP** |
| | By: /s/ *Jordan D. Rosenfeld* |
| | Jordan D. Rosenfeld (MD Bar No. 13694) |
| | 1001 Fleet Street, 9th Floor |
| | Baltimore, MD 21202 |
| | Telephone: (410) 332-8600 |
| | Email: jordan.rosenfeld@saul.com |
| | |
| | -and- |
| | |
| | Jeffrey C. Hampton (admitted *pro hac vice*) |
| | Adam H. Isenberg (admitted *pro hac vice*) |
| | Turner N. Falk (admitted *pro hac vice*) |
| | 1500 Market Street, 38th Floor |
| | Philadelphia, PA 19102 |
| | Telephone: (215) 972-7777 |
| | Email: jeffrey.hampton@saul.com |
| | adam.isenberg@saul.com |
| | turner.falk@saul.com |
| | |
| | -and- |
| | |
| | Mark Minuti (admitted *pro hac vice*) |
| | Paige N. Topper (admitted *pro hac vice*) |
| | Nicholas Smargiassi (admitted *pro hac vice*) |
| | 1201 N. Market Street, Suite 2300 |
| | Wilmington, DE 19801 |
| | Telephone: (302) 421-6800 |
| | Email: mark.minuti@saul.com |
| | paige.topper@saul.com |
| | nicholas.smargiassi@saul.com |
| | |
| | *Counsel for Debtors and Debtors in Possession* |

55846850.1

# Exhibit A

Seventh Amendment to Debtor-In-Possession Credit Agreement

Execution Version

**SEVENTH AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT**

This SEVENTH AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT, dated as of June 30, 2025 (this "Amendment"), is by and among debtor-in possession DIAMOND COMIC DISTRIBUTORS, INC., a Maryland corporation ("Diamond") as the "Borrower" (in such capacity, the "Borrower"), the other Loan Parties from time to time party to the DIP Credit Agreement referenced below, Stephen A. Geppi (the "Individual Guarantor"), and JPMORGAN CHASE BANK, N.A., as the "DIP Lender" (in such capacity, the "DIP Lender").

WHEREAS, reference is made to the Debtor-in-Possession Credit Agreement dated as of January 16, 2025 (as amended by that certain First Amendment to Debtor-in-Possession Credit Agreement, dated as of February 11, 2025, that certain Second Amendment to Debtor-in-Possession Credit Agreement dated as of February 25, 2025, that certain Third Amendment to Debtor-in-Possession Credit Agreement dated as of March 19, 2025, that certain Fourth Amendment to Debtor-in-Possession Credit Agreement, dated as of April 22, 2025, that certain Fifth Amendment to Debtor-in-Possession Credit Agreement dated as of April 30, 2025, and that certain Sixth Amendment to Debtor-in-Possession Credit Agreement dated as of May 30, 2025, the "DIP Credit Agreement") by and among the Borrower, the other Loan Parties that are parties to the DIP Credit Agreement, the Individual Guarantor and the DIP Lender;

WHEREAS, capitalized terms used herein without definition shall have the meanings ascribed to such terms in the DIP Credit Agreement, as amended by this Amendment, as applicable; and

WHEREAS, the parties to the DIP Credit Agreement desire to amend certain provisions of the DIP Credit Agreement, all as more fully set forth herein;

NOW, THEREFORE, in consideration of the foregoing and the agreements contained herein, the parties hereby agree as follows:

1. **Amendments to the DIP Credit Agreement**. In reliance on the terms and conditions set forth in this Amendment, the DIP Lender hereby agrees with the Borrower, the other Loan Parties and the Individual Guarantor that the Definitions Schedule to the DIP Credit Agreement be, and it hereby is, amended as follows:

    (a) **Amendment to Definitions Schedule**. The Definitions Schedule to the DIP Credit Agreement is hereby amended by amending and restating the defined term "Maturity Date" to read as follows (with deleted text shown in the same manner as the following example: ~~deleted text~~ and with added text shown in the same manner as the following example: added text):

    "Maturity Date" means, at the election of the DIP Lender, the earliest to occur of: (a) the date on which the DIP Lender provides, via electronic or overnight mail, written notice to counsel for the Debtors and counsel for any Committee of the occurrence and continuance of an Event of Default; (b) the effective date of an Approved Plan; (c) the filing of any chapter 11 plan other than an Approved Plan by the Debtors or any party in interest; unless such plan contemplates the indefeasible payment in full in cash of the Aggregate Credit Obligations; (d) the date that the Bankruptcy Court orders (x) the conversion of the Chapter 11 Cases to Chapter 7 liquidations, or (y) a dismissal of the Chapter 11 Cases; or (e) ~~June 28, 2025~~ August 23, 2025.

2. **Approved Budget**. The updated Approved Budget attached as **Exhibit A** to this Amendment is hereby approved by the DIP Lender and shall constitute the "Approved Budged" for purposes of the DIP Credit Agreement and the Financing Order as in effect on the date of this Amendment

145094865v.1

and shall remain in effect until such time as further updated Budgets have been delivered to, and approved by, the DIP Lender, as provided in the Reporting Schedule to the DIP Credit Agreement.

3. <u>Continuing Lien on Residual Assets</u>. Pursuant to the DIP Loan Documents and the Financing Order, at all times prior to and after the closing of the Sale Transaction, the DIP Obligations shall continue to be secured by first priority liens on all assets of the Debtors and the other Loan Parties (other than those assets sold by the Debtors pursuant to the Sale Transaction following the consummation of the Sale Transaction), including, without limitation, all of the Debtors' rights and interests in and to any holdback or escrow amounts, incentive fee payments or other contingent consideration that may from time to time be due and owing to the Debtors arising out of or relating to the Sale Transaction, the Debtors' interests in any funds deposited by any Persons pursuant to the Bidding Procedures, the Debtors' claims against any Persons arising out of or relating to the Bidding Procedures or the Sale Transaction, any and all Avoidance Actions, the Debtors' equity interests in DCDUK, and all other rights, claims and interests of the Debtors in and to any other assets of the Debtors or the other Loan Parties. For the avoidance of doubt, the Sale Transaction shall not constitute a release or modification of any rights of the DIP Lender or the Prepetition Lender under any and all guaranties made by the Loan Parties and/or the Individual Guarantor of the DIP Obligations and/or the Prepetition Obligations.

4. <u>Representations and Warranties, Etc</u>. The Loan Parties hereby confirm that after giving effect to this Amendment, the representations and warranties of the Loan Parties set forth in <u>Article III</u> of the DIP Credit Agreement are true and correct in all material respects (provided that if any representation or warranty is by its terms qualified by concepts of materiality, such representation or warranty shall be true and correct in all respects) on and as of the date of this Amendment as if made on such date (except to the extent that such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall have been true and correct as of such earlier date).

5. <u>Ratification, Confirmation and Acknowledgment</u>. The Borrower, the other Loan Parties, and the Individual Guarantor hereby ratify and confirm all terms and provisions of the DIP Credit Agreement and the other Loan Documents and agree that all such terms and provisions, as amended hereby, remain in full force and effect.

6. <u>Certain Conditions to this Amendment</u>. This Amendment shall become effective on the date on which each of the following conditions is satisfied:

(a) The DIP Lender shall have received (i) a counterpart of this Amendment signed on behalf of each party hereto or (ii) written evidence satisfactory to the DIP Lender (which may include telecopy or electronic mail transmission of a signed signature page to this Amendment) that each party hereto has signed a counterpart of this Amendment; and

(b) The Bankruptcy Court in the Chapter 11 Cases shall have approved (whether by oral ruling and/or written order) the extension of the Maturity Date of the DIP Credit Facility contemplated by this Amendment.

7. <u>Miscellaneous</u>.

(a) Except as otherwise expressly set forth herein, nothing herein shall be deemed to constitute an amendment, modification or waiver of any of the provisions of the DIP Credit

Agreement or the other DIP Loan Documents, all of which remain in full force and effect as of the date hereof and are hereby ratified and confirmed.

(b)     This Amendment may be executed in any number of counterparts, each of which, when executed and delivered, shall be an original, but all counterparts shall together constitute one instrument. Delivery of an executed counterpart of a signature page of this Amendment by facsimile or electronic mail shall be equally effective as delivery of a manually executed counterpart of this Amendment.

(c)     This Amendment shall be governed by the laws of the State of New York and shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

(d)     This Amendment constitutes a "DIP Loan Document" as such term is defined in the DIP Credit Agreement.

(e)     The Borrower agrees to pay all reasonable and documented out-of-pocket expenses (including the reasonable legal fees and disbursements of Troutman Pepper Locke LLP, special US counsel to the DIP Lender), incurred by the DIP Lender in connection with this Amendment and the transactions contemplated hereby.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties hereto have executed this Seventh Amendment to Debtor-in-Possession Credit Agreement, which shall be deemed to be a sealed instrument as of the date first above written.

BORROWER:

**DIAMOND COMIC DISTRIBUTORS, INC.**

By: *[signature]*
Name: CHARLES PARKER
Title: President

**OTHER LOAN PARTIES:**

**COMIC EXPORTERS, INC.**

By: *[signature]*
Name: CHARLES PARKER
Title: Director

**COMIC HOLDINGS, INC.**

By: *[signature]*
Name: CHARLES PARKER
Title: Director

**DIAMOND SELECT TOYS AND COLLECTIBLES, LLC**

By: *[signature]*
Name: STEPHEN A. GEPPI
Title: Manager

**DIAMOND COMIC DISTRIBUTORS**, an unlimited company incorporated under the laws of England and Wales

By: *[signature]*
Name: CHARLES PARKER
Title: Director

**ROSEBUD ENTERTAINMENT, LLC**

By: *[signature]*
Name: STEPHEN A. GEPPI
Title: Member

[Signature Page to Seventh Amendment to DIP Credit Agreement]

**RENEGADE GAMES, LLC**

By: _/s/ Stephen A. Geppi_
Name: STEPHEN A. GEPPI
Title: MANAGER

**GAME CONSOLIDATORS, LLC**

By: _/s/ Stephen A. Geppi_
Name: Stephen A. Geppi
Title: MANAGER

**INDIVIDUAL GUARANTOR:**

_/s/ Stephen A. Geppi_
Stephen A. Geppi, individually

[Signature Page to Seventh Amendment to DIP Credit Agreement]

**DIP LENDER:**

**JPMORGAN CHASE BANK, N.A.**

By: *Angela Leake* (DocuSigned)
Name: Angela Leake
Title:   Authorized Officer

[Signature Page to Seventh Amendment to DIP Credit Agreement]

## **Exhibit A**

**Approved Budget**

[See Attached]

6/30/2025

| DIAMOND POST CLOSING FORECAST WEEK # WEEK ENDED / MONTHLY DATE | FORECAST 1 7/5/2025 | FORECAST 2 7/12/2025 | FORECAST 3 7/19/2025 | FORECAST 4 7/26/2025 | FORECAST 5 8/2/2025 | FORECAST 6 8/9/2025 | FORECAST 7 8/16/2025 | FORECAST 8 8/23/2025 | FORECAST GRAND TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **Sources of Cash - Asset Monetization Recoveries** | 200,000 | 400,000 | 2,000,000 | – | 2,000,000 | – | 1,250,000 | 2,500,000 | 8,350,000 |
| Accrued Final Payroll | – | (105,000) | – | – | – | – | – | – | (105,000) |
| Bank Fees | – | – | (5,000) | – | – | – | (5,000) | – | (10,000) |
| Claims Agent - Omni | (25,000) | – | – | (100,000) | – | – | – | – | (125,000) |
| DIP Interest Expense | (49,813) | – | – | – | (69,304) | – | – | – | (119,117) |
| Employee Insurance Claims | (184,167) | (104,167) | (104,167) | (104,167) | (104,167) | (72,917) | (72,917) | (72,917) | (819,583) |
| Litigation Cost | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | – | (350,000) |
| KERP/KEIP | – | (276,900) | (363,988) | – | – | – | (385,512) | – | (1,026,400) |
| Miscellaneous Expense | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (400,000) |
| Professional Fees - Committee | (100,000) | (100,000) | (100,000) | (100,000) | (75,000) | (75,000) | (75,000) | (75,000) | (700,000) |
| Professional Fees - Debtor | (225,000) | (225,000) | (225,000) | (225,000) | (200,000) | (200,000) | (200,000) | (200,000) | (1,700,000) |
| Professional Fees - Lender | – | – | (30,000) | – | – | – | (30,000) | – | (60,000) |
| Professional Fees - UK Counsel | – | (100,000) | – | – | – | (100,000) | – | – | (200,000) |
| Sale Tax Estimate | – | – | – | (75,000) | – | – | – | – | (75,000) |
| Operating Expenses | (300,000) | (100,000) | – | – | – | (400,000) | – | – | (800,000) |
| Transaction Fee + Expenses | (50,000) | – | – | – | – | – | – | – | (50,000) |
| UST Fees - Q2 | – | – | (250,750) | – | – | – | – | – | (250,750) |
| **Total Uses of Cash** | **(1,033,980)** | **(1,111,067)** | **(1,178,905)** | **(704,167)** | **(548,471)** | **(947,917)** | **(868,429)** | **(397,917)** | **(6,790,851)** |
| **Net Cash Flow** | **(833,980)** | **(711,067)** | **821,095** | **(704,167)** | **1,451,529** | **(947,917)** | **381,571** | **2,102,083** | **1,559,149** |
| *Cumulative Net Cash Flow* | *(833,980)* | *(1,545,046)* | *(723,951)* | *(1,428,118)* | *23,411* | *(924,505)* | *(542,934)* | *1,559,149* | *1,559,149* |
| DIP Revolver, Beginning Balance | (7,222,564) | (8,056,543) | (8,767,610) | (7,946,515) | (8,650,681) | (7,199,153) | (8,147,069) | (7,765,498) | (7,222,564) |
| LC Sub-limit | – | – | – | – | – | – | – | – | – |
| Revolver Draw Paydown / (Draw) | (833,980) | (711,067) | 821,095 | (704,167) | 1,451,529 | (947,917) | 381,571 | 2,102,083 | 1,559,149 |
| **Total DIP Commitment** | **(8,056,543)** | **(8,767,610)** | **(7,946,515)** | **(8,650,681)** | **(7,199,153)** | **(8,147,069)** | **(7,765,498)** | **(5,663,415)** | **(5,663,415)** |