## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |
| | **<u>Hearing Date</u>:**<br>**July 21, 2025**<br>**<u>Objection Deadline</u>:**<br>**July 16, 2025** |

### OBJECTION OF THE GAME MANUFACTURERS ASSOCIATION TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING (I) PROCEDURES FOR SALE OR OTHER DISPOSITION OF CONSIGNED INVENTORY, (II) APPROVING SALES OR OTHER DISPOSITION OF CONSIGNED INVENTORY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS OR ENCUMBRANCES AND (III) GRANTING RELATED RELIEF

The Game Manufacturers Association ("<u>GAMA</u>"), in conjunction with certain of its members including Skyscraper Studios, Inc. d/b/a Roll for Combat and Liminal Esports LLC d/b/a Snowbright Studio (collectively, "GAMA"), by and through their undersigned counsel, hereby object (the "<u>Objection</u>") to entry of an order granting the *Debtors' Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances and (III) Granting Related Relief* [Docket No. 531] (the "<u>Motion</u>")[2] filed by the above-captioned debtors (the "<u>Debtors</u>").  In support hereof GAMA respectfully states as follows:

---

[1]     The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585).  The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2]     Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

## PRELIMINARY STATEMENT

1.      The Debtors should not be permitted to sell goods they are in possession of as a consignee (the "Consigned Goods") because the Consigned Goods are not property of the Debtors' bankruptcy estates.

2.      By the Motion, the Debtors assert that they may transfer good title for the Consigned Goods because Article 9 of the Uniform Commercial Code (the "UCC") applies to the consignment agreements (the "Consignment Agreements").  Motion, ¶ 38.  However, before the Debtors may be permitted to sell property under section 363 of title 11 of the United States Code (the "Bankruptcy Code"), the Court should first determine whether the property to be sold is property of the estate.  In either case, rule 7001(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") requires an adversary proceeding to determine the validity or extent of an interest in property, which the Debtors have not filed.

3.      If this issue is properly litigated by way of adversary proceeding, GAMA believes that evidence will remove any question that the Consignment Agreements are not subject to Article 9 of the UCC and are not property of the estate.  This belief is because, among other things, a sufficient number of the Debtors' creditors likely believe that the Debtors' are substantially engaged in the sale of consignment inventory.  Accordingly, the Court should deny the Motion.

4.      Additionally, the Consignment Agreements are seemingly executory contracts under section 365 of the Bankruptcy Code because both the Debtors and the consignors have unfulfilled obligations remaining that would constitute a material breach if either party failed to perform.  Selling the Consigned Goods is, in effect, akin to rejecting the contracts without Court approval.  Further, any benefit to the Debtors' estates of the proposed sale is limited because a

2

portion—perhaps a significant portion—of the Consigned Goods were sold post-petition and give rise to administrative expense priority claims.

## BACKGROUND

5.      On January 14, 2025 (the "Petition Date"), the Debtors each filed voluntary petitions under chapter 11 of the Bankruptcy Code thereby commencing these chapter 11 cases. The Debtors are operating their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

6.      On January 29, 2025, the Office of the United State Trustee appointed an official committee of unsecured creditors.

7.      GAMA is a non-profit trade association dedicated to the advancement of the hobby games industry.  Its members are game manufacturers, wholesalers, retailers, distributors, publishers, promoters and independent professionals related to the hobby games industry.

8.      The Debtors are a large distributor of pop culture related merchandise including comics, graphic novels, toys and games.  The Debtors sold products to various end users through mass market retailers, specialty stores, and bookstores.

9.      Prior to the Petition Date, several GAMA members provided Consigned Goods to the Debtors pursuant to the Consignment Agreements, which the Debtors placed into their inventory until sold to customers.  The Consigned Goods are stored in the Debtors' distribution facility located in Olive Branch, Mississippi.

10.     As set forth in the *Declaration of Stephen Glicker in Support of the Objection of the Game Manufacturers Association to the Debtors' Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other*

3

*Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances and (III) Granting Related Relief* (the "<u>Glicker Declaration</u>") and *Declaration of James Collins in Support of the Objection of the Game Manufacturers Association to the Debtors' Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances and (III) Granting Related Relief* (the "<u>Collins Declaration,</u>" and with the Glizker Declaration, the "Declarations), attached hereto as **Exhibits A and B**, it is widely known and understood amongst the Debtors' creditors that the Debtor is substantially engaged in selling the goods of others and that the majority of the Debtors' inventory consists of Consigned Goods.  Additionally, after the Petition Date, the Debtors returned certain consigned goods to the respective consignors, requiring only that the consignors pay shipping and processing costs. Moreover, the Debtors acquired certain of the Consigned Goods after the Petition Date.

11.     On June 25, 2025, the Debtors filed the Motion, which seeks entry of an order authorizing and approving the sale or other disposition of the Consigned Goods, free and clear of all liens, claims, interests, and encumbrances.

12.     At the time of filing this Objection, there are four other objections to the Motion on file from consignors [Docket Nos. 578, 585, 586, 595.]

13.     A hearing on the Motion is scheduled for July 21, 2025 [Docket No. 537.] However, on July 14, 2025, the Debtors filed the *Debtors' Expedited Motion to Adjourn the Hearing on Debtors' Motion for Entry of an Order (I) Approving Procedures for Sales or Other Disposition of Consigned Inventory, (II) Approving the Sales or Other Disposition of Consigned Inventory, and (III) Granting Related Relief* [Docket No. 590] (the "<u>Motion to Adjourn</u>").  The Motion to Adjourn seeks entry of an order adjourning the hearing on the Motion to July 24 or 25,

2025, while maintaining July 16, 2025 as the deadline for objecting to the Motion.  A hearing on

the Motion to Adjourn is scheduled for July 17, 2025, at 2:00 PM [Docket No. 591].

**OBJECTION**

**I.      The Court must determine the Debtors' rights and interests in the Consigned Goods
        before allowing a sale under section 363 of the Bankruptcy Code.**

        14.      A debtor is not entitled to sell an asset under section 363(f) of the Bankruptcy Code

before the bankruptcy court has determined that the asset is property of the estate.  *See Anderson*

*v. Conine (In re Robertson)*, 203 F.3d 855, 863 (5th Cir. 2000) (holding that the trustee was not

permitted to sell property of a nondebtor under section 363(f) because the property was not

property of the estate); *In re Coburn*, 250 B.R. 401, 403 (Bankr. M.D. Fla. 1999) (finding that the

court must first determine whether an asset is property of the estate before it can determine whether

the trustee is entitled to sell the asset under section 363(f)); *In re Whitehall Jewelers Holdings,*

*Inc.*, Ch. 11 Case No. 08-11261, 2008 WL 2951974, at *4 (Bankr. D. Del. July 28, 2008) ("A

bankruptcy court may not allow the sale of property as 'property of the estate' without first

determining whether the property is property of the estate.").

        15.      Property of the estate consists of all legal or equitable interests of the debtor in

property as of the commencement of the case. 11 U.S.C. § 541(a)(1).  If a consignment agreement

falls within the definition of a consignment contained in UCC section 9-102(a)(20), the consignee

is deemed to have the rights and title to the consigned goods identical to those the consignor had.

*See* Revised U.C.C. § 9-319(a); *Wilmington Savings Fund Society v. M J Soffe, LLC (In re TSAWD*

*Holdings, Inc.)*, 565 B.R. 292, 299 (Bankr. D. Del. 2019).  But if a consignment agreement does

not fit the UCC definition and therefore is not governed by UCC Article 9, the rights and interests

of a consignee will be determined by other means, such as common law.  *Whitehall*, 2008 WL

2951974, at *6 (stating that the terms of a consignment agreement may be relevant to determining

whether the agreement is property of the estate if the UCC does not apply). Therefore, whether UCC Article 9 applies to a consignment agreement is critical to determining what interests and rights in the consigned goods are property of the estate.

16. The UCC provides the following definition of a consignment:

"Consignment" means a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:

(A) the merchant:

(i) deals in goods of that kind under a name other than the name of the person making delivery;

(ii) is not an auctioneer; and

(iii) is not generally known by its creditors to be substantially engaged in selling the goods of others;

(B) with respect to each delivery, the aggregate value of the goods is $ 1,000 or more at the time of delivery;

(C) the goods are not consumer goods immediately before delivery; and

(D) the transaction does not create a security interest that secures an obligation.

Revised U.C.C. § 9-102(a)(20).

17. The consignor has the burden of proving that the transactions in question do not meet the UCC consignment definition. *French Design Jewelry, Inc. v. Downey Creations, LLC (In re Downey Creations, LLC)*, 414 B.R. 463, 469 (Bankr. S.D. Ind. 2009). If any prong of the UCC definition is not satisfied, then the consignment agreement does not fall under Article 9 and the UCC will not govern the Debtor's rights and interests in the consigned goods or the priority of the parties' interests. *See TSAWD Holdings*, 601 B.R. at 603.

18. The third prong of the UCC definition concerns whether the Debtors were "not generally known by [their] creditors to be substantially engaged in selling the goods of others."

24922368.v2

Revised U.C.C. § 9-102(a)(20)(A)(iii); s*ee also* Md. Code Ann., Com. Law § 9-102(a)(20)(A)(iii). The UCC will not govern the extent or priority of the parties' interests if a consignor can show that a consignee's creditors "generally know that . . . the consignee substantially engaged in selling the goods of others." *TSAWD Holdings*, 601 B.R. at 603. The UCC will also not apply to subordinate the interests of a consignor to the interests of another creditor if the consignor can show that the other creditor actually knew that the consignee "(1) substantially engaged in selling the goods of others" or "(2) sold the goods of the specific consignor in dispute." *Id.* (citing *TSA Stores, Inc. v. Wilmington Savings Fund Society, FSB*, 595 B.R. 676, 685 (Bankr. D. Del. 2018).

19.     When determining whether a creditor had actual knowledge of a consignee's substantial engagement in consignment sales, courts typically recognize a 20% threshold for what is "substantial." *See, e.g.*, *id.* at 605; *In re Valley Media, Inc.*, 279 B.R. 105, 132 (Bankr. D. Del. 2002). In other words, if consigned goods comprise 20% or more of the value of a consignee's inventory, the consignee is substantially engaged in selling the goods of others. *See In re Valley Media*, 279 B.R. at 123-24. To determine whether the other creditor had actual knowledge that the consignee sold the goods of the specific consignor in dispute, courts examine whether the other creditor actually knew that the consignor "was dealing on a consignment basis" with the consignee. *TSAWD Holdings*, 601 B.R at 607.

20.     As set forth in the Declarations, it is widely known amongst the Debtors' creditors that the Debtors are substantially engaged in selling the goods of others. Therefore, it is likely that the third prong of the UCC definition is not satisfied and the Consignment Agreements are not subject to UCC Article 9.

21.     Further, the Debtors' assertion that the Consigned Goods are property of their bankruptcy estates is contradicted by the Debtors' post-Petition Date actions. As set forth in the

7

Glicker Declaration, upon request of certain consignors the Debtors returned certain consigned inventory to the consignors after the Petition Date.  Upon information and belief based on GAMA's discussions with other vendors, if the Bankruptcy Rules are followed and adversary proceedings are commenced to determine the Debtors' interest in the Consigned Goods then further creditors will provide similar testimony.  Seemingly in these instances the Debtors recognized that they were holding property for third-parties and that this inventory was not property of the estate.  Indeed, if the Debtors actually believed that this consigned inventory was actually property of the estate they have created a separate issue for themselves.  Section 549(a) of the Bankruptcy Code provides that the trustee may avoid a transfer of property of the estate that occurs after the commencement of the case and is not authorized by the bankruptcy court.  11 U.S.C. § 549(a).  Seemingly if the Debtors were returning consigned inventory that was property of the estate, and were doing it without court orders, then they made many unauthorized and voidable transfers.

22.     Because the Debtors' rights and interests in the Consigned Goods are disputed and likely limited or nonexistent, the Court should deny the Motion until it determines that the Consigned Goods are property of the estate.

## II.     An adversary proceeding is required to determine the Debtors' rights and interests in the Consigned Goods.

23.     The Bankruptcy Rules require an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property."  FED. R. BANKR. P. 7001(2).  Courts have consistently applied this rule to require an adversary proceeding, rather than a contested matter such as a sale motion, to determine whether consigned goods are property of the estate.  *See, e.g.*, *Wilmington Savings Fund*, 565 B.R. at 295 (stating that the court had previously refused to let the debtors sell consigned goods until the court could determine in adversary proceedings the competing interests in the consigned goods); *Downey Creations*, 414 B.R. at 465 (stating that the

court previously instructed the parties to raise the issue of whether certain transactions were consignments under the UCC definition in an adversary proceeding because the dispute fell under Bankruptcy Rule 7001(2)); *Whitehall*, 2008 WL 2951974, at \*6.

24.    The dispute at issue here falls squarely within the type requiring an adversary proceeding under Bankruptcy Rule 7001(2).  Whether the Consignment Agreements fall within the consignment definition contained in UCC Article 9 directly affects the validity, priority and extent of the Debtors' interest in the Consigned Goods.  *See Downey Creations*, 414 B.R. at 465 (stating that the bankruptcy court had previously instructed the parties to raise the issue of whether a consignment agreement falls within the UCC definition in an adversary proceeding because the dispute concerned the validity, priority and extent of an interest in property).

25.    Because there is a dispute concerning the Debtors' rights and interests in the Consigned Goods, the Court has not determined whether the Consigned Goods are property of the estate.  To resolve this dispute, an adversary proceeding is required.  For this reason alone, the Motion should be denied.

26.    In the Motion, the Debtors simply assume that the Consigned Goods are property of the Debtors' bankruptcy estates and they do not address the exception to the UCC for consignment sales.  The Debtors do, however, note that if there is a *bona fide* dispute regarding liens that section 363 of the Bankruptcy Code may still authorize the sale of the property at issue while reserving for later the issue of what lien on that property had priority.  Section 363 though is discussing an issue regarding a *bona fide* dispute as to a lien or interest, not the fundamental question of whether the property to be sold is property of the estate.  *See Scherer v. Federal Nat'l Mortgage Ass'n (In re Terrace Chalet Apartments)*, 159 B.R. 821, 828 (N.D. Ill. 1993) ("A trustee can sell estate property free and clear of a lien if the lien is in bona fide dispute.").  *See also*

*Whitehall*, 2008 WL 2951974, at \*4 ("A bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the property is property of the estate.") An adversary proceeding to determine if the Consigned Goods are property of the estate therefore needs to be litigated first, before the *bona fide* dispute language in section 363 of the Bankruptcy Code becomes relevant.

### III.    The Debtors Must Fulfill their Obligations Under the Consignment Agreements Until the Contracts are Rejected or Assumed.

27.    An executory contract is "[a] contract under which the obligation of both the bankruptcy and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Countryman, *Executory Contracts in Bankruptcy*, 57 Minn. L. Rev. 439, 446 (1973); *see also Argonaut Ins. Co. v. Falcon V, L.L.C. (In re Falcon V, L.L.C.)*, 44 F.4th 348, 355 (5th Cir. 2022) ("[T]he test for an executory contract is whether, under the relevant state law governing the contract, each side has at least one material unperformed obligation as of the bankruptcy petition date."). A debtor in possession in a chapter 11 case must gain court approval to assume or reject an executory contract. *See Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1025 (1st Cir. 1995).

28.    Here, the Consignment Agreements are seemingly executory contracts under section 365 of the Bankruptcy Code because both the Debtors and the consignors have unfulfilled obligations remaining that would constitute a material breach if either party failed to perform. Selling the Consigned Goods is, in effect, akin to rejecting the contracts without Court approval. Therefore, the Court should deny the Debtors' Motion until it has properly rejected the Consignment Agreements under Section 365 of the Bankruptcy Code.

24922368.v2

IV.    **Any Benefit of the Proposed Sale to the Estates is Limited Because a Perhaps Significant Portion of the Consigned Goods Were Sold Post-Petition Date and Give Rise to Administrative Expense Priority Claims.**

29.    Creditors are entitled to administrative expenses for the actual, necessary costs and expenses of preserving the estate.  11 U.S.C. § 503(b)(1)(A).  For a claim to be entitled to administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code, the claim must arise from a transaction with the bankruptcy estate and the claim must have directly and substantially benefited the estate.  *See, e.g.*, *In re Eagle-Picher Indus., Inc.*, 447 F.3d 461 (6th Cir. 2006); *Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus. Inc.)*, 66 F.3d 1091, 1094 (9th Cir. 1995).  A debtor's estate is benefited if a creditor causes certain goods to be available for the debtor to conduct its business, even if those goods are ultimately not used.  *See In re Whistler Energy II, LLC*, 931 F.3d 432, 444 (5th Cir. 2019) ("[C]onducting business as usual often requires that certain goods and services be available, even if ultimately not used.").

30.    As set forth in the Declarations, for at least two parties (and likely far more if discovery is allowed) a significant portion of the Debtors' consigned inventory acquired after the Petition Date.  Additionally, the availability of inventory directly and substantially benefited the estate because it allowed the Debtors to continue operating their business as usual.  Therefore, the consignors who provided consigned inventory to the Debtors after the Petition Date are entitled to administrative expenses under section 503(b)(1)(A) of the Bankruptcy Code.  As such, the sale of the postpetition inventory will only increase administrative claims in these Chapter 11 Cases.  If the Motion is granted, then it appears that the sales may do little other than generate cash to reduce senior lien claims at the cost of creating a large class of administrative expense creditors who will never be repaid by the limited assets in the Debtors' bankruptcy estates.  This should not be

11

permitted, and unless the Debtors can provide a budget and detail on how all of the administrative expense claims in the Chapter 11 Cases will be satisfied the Motion should not be granted.

[*remainder of page intentionally left blank*]

24922368.v2

## CONCLUSION

Because (1) the Debtors' rights and interests in the Consigned Goods are disputed, (2) the Consignment Agreements are executory contracts under which the Debtors remain obligated and (3) any benefit to the estate from the sale of the Consigned Goods will be limited due to resulting administrative expenses, GAMA respectfully requests that the Court deny the Motion.

Dated: July 16, 2025

Respectfully submitted,

/s/ Sam J. Alberts
Sam J. Alberts (Md Fed Bar No. 22745)
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006-1102
Phone:  (202) 496-7381
Email:   sam.alberts@dentons.com

-and-

James R. Irving (*Pro Hac Vice Admission Pending*)
Patrick W. Navin (*Pro Hac Vice Admission Pending*)
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Phone:  (502) 589-4200
Email:   james.irving@dentons.com
             patrick.navin@dentons.com

*Counsel for the Game Manufacturers' Association and certain members*

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2025 a copy of the foregoing *Objection of the Game Manufacturer's Association to the Debtors' Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances and (III) Granting Related Relief* was served **electronically** on the date of filing through the court's ECF system on all ECF participants registered in this case at the email address registered with the Court.

/s/ Sam J. Alberts
Sam J. Alberts

24922368.v2