# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE: Diamond Comic Distributors, Inc., et al. : | Case No. 25-10308 (DER) |
| Debtors.[1] : | Chapter 11 |
| : | (Jointly Administered) |
| _____ : | |

## OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES FOR SALE OR OTHER DISPOSITION OF CONSIGNED INVENTORY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS OR ENCUMBRANCES AND (III) GRANTING RELATED RELIEF

Aspen MLT, LLC /a/ka Aspen Comics, Black Mask Studios, LLC, DSTLRY Media, Inc., Dynamic Forces, Inc. a/k/a Dynamite Entertainment, Heavy Metal International, LLC, Magnetic Press, LLC, Massive Publishing, LLC, Oni-Lion Forge Publishing Group, LLC f/k/a Oni Press, LLC, Panini UK Ltd., Punk Bot Comic Books, LLC a/k/a Alien Books, The Penn State University a/k/a Graphic Mundi, Titan Publishing Group, Ltd. and Vault Storyworks, LLC a/k/a Vault Comics f/k/a Creative Mind Energy (collectively the "Consignment Group"), by and through counsel, McNamee Hosea, P.A., file this objection (the "Objection") to the *Debtor's Motion for Entry of an Order (I) Approving Bidding Procedures for Sale or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances* (Dkt. No. 531) (the "Sale Motion"), stating as follows:

### Background

1.  The Consignment Group are publishers and sellers of comic books, graphic novels,

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

1

related products and other merchandise (collectively, the "Products"). The Consignment Group and Debtor Diamond Comic Distributors, Inc. ("Diamond") are parties to various agreements entered into between them respectively (the "Agreements"), the majority of which are in writing. Two of these Agreements are attached hereto as **Exhibits A and B**, respectively, as representative of Consignment Group's business relationship with the Debtor.  Pursuant to the Agreements, the members of the Consignment Group consign a substantial inventory of Products to Diamond (such Products, collectively, the "Consigned Goods"), and Diamond acts as the Consignment Group's distributor to facilitate sale of those Consigned Goods to customers. None of the Agreements transfers ownership or legal title to the Consigned Goods to the Debtor.

2. The Debtor's public statements and prior course of conduct also make clear that the members of the Consignment Group - not the Debtors - hold legal title to and ownership of their respective Consigned Goods, and therefore the Consigned Goods are not "property of the estate" for purposes of Sections 363(b) and 363(f)(4) of the Bankruptcy Code. For example, the Debtor sends annual notifications to the Consignment Group advising them of their ownership of their inventory and the need to file reports with DeSoto County, Mississippi for purposes of paying their respective Mississippi personal property tax obligations, one of which is attached as **Exhibit C.**

3. The Sale Motion was filed on June 25, 2025, as a contested matter.

4. The Sale Motion identifies 128 consignment vendors, including the members of the Consignment Group, that agreed to consign inventory to the Debtor that is the now subject of the relief requested (Sale Motion, Ex. B).  Such consignment arrangements are a common and widely known practice within the industry.

5. The Debtor, upon information and belief, maintains proper systems and internal controls at all times to track all consignment inventory.

6. The Motion asserts that none of the members of the Consignment Group has filed a UCC-1 financing statement, which is factually correct, but fails to recognize that the UCC may not even apply given the in the context of a "true consignment" established by contract and state law.

7. The Debtor argues in the Sale Motion that, because of the lack of a UCC-1 financing statement filing by any one of the Consignment Group members, that sale of the Consigned Goods is necessarily authorized under Section 363(f)(4) because (i) a "bona fide" dispute exists as to the Consigned Goods (even though ownership of, and title to, the Consigned Goods resides in the Consignment Group, not the Debtors) and (ii) no evidentiary proceeding or determination of ownership is required (whether in an adversary proceeding or otherwise) for this Court to conclude that a "bona fide dispute" exists under Section 363(f) to permit sale of the Consigned Goods as part the Debtors' planned auction "fire" sale of substantially all of their assets.

8. The Debtor further argues that it is sufficient for purposes of Section 363(f)(4) that it possesses Bankruptcy Code Section 544(a) powers of a hypothetical judgment creditor pursuant to which the Debtor *might* be able to "avoid" the ownership interests of certain vendors in their Consigned Goods, and the Consigned Goods *could* therefore become property of the estate. (Sale Motion, ¶ 43).

**Basis for Objection**

9. The Consignment Group opposes the Sale Motion because the divestiture of such property interests as the Debtor seeks in this case is improperly brought as a contested matter, ignoring Rule 7001(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which requires an adversary proceeding.  It is the Consignment Group and each of them, and not the Debtor, who owns and holds legal title to the Consigned Goods under relevant state law and

the governing Agreements. Therefore, in respect of the Consigned Goods, they are not "property of the estate" that can be sold under Section 363 of the Bankruptcy Code. There is simply no bona fide dispute as to ownership.

10. The Consignment Group further asserts in the alternative that the neither the Debtor, nor JPMorgan Chase Bank, have a superior interest in the Consigned Goods because Article 9 of the UCC is not applicable.

11. Lastly, the Consignment Group opposes the Sale Motion to the extent that it is the Debtor's intention by the Sale Motion to sell any goods delivered on consignment after the petition date of January 14, 2025, without providing payment to the Consignment Group in accordance with the terms of their Agreements as administrative expense claims.

### The Sale Motion is Procedurally Improper

12. Bankruptcy Rule 7001(2) requires that an adversary proceeding be commenced to "determine the validity, priority, or extent of [an] interest in property." Fed. R. Bankr. P. 7001(2).

13. Bankruptcy courts confronted with motions similar to the Debtor's Sale Motion have ruled that issues concerning the ownership of prepetition consigned goods have been improperly brought as contested matters, and not as adversary proceedings, when considering Bankruptcy Rule 7001(2). *See In re Whitehall Jewelers Holdings, Inc.*, No. 08-11261 (KG), 2008 WL 2951974, at *6 (Bankr. D. Del. July 28, 2008) (holding that issues regarding ownership of prepetition consigned goods and interrelated issues regarding the existence, perfection, and/or priority of any security interest in those goods can only be resolved in an adversary proceeding, not a section 363 sale), as cited by *In re TSAWD Holdings, Inc.*, 565 B.R. 292, 295 (Bankr. D. Del. 2017).

14. The Bankruptcy Court for the District of Connecticut has also held that a trustee

cannot sell inventory under Sections 363(b) or 363(f) "prior to successful avoidance of the [c]onsigners' interest in the [i]nventory." *In re Interiors of Yesterday, LLC,* 2007 WL 419646, at *7 (Bankr. D. Conn. Feb. 2, 2007). The court in *Interiors* also rejected the trustee's argument that a sale was permissible under section 363(f)(4) because the consignors' interest in the inventory was subject to *bona fide* dispute, holding that "a Section 363(f)(4) sale cannot be had when there is an unresolved issue of whether the subject property is 'property of the estate.'" *Id.* (quoting *In re Claywell*, 341 B.R. 396, 398 (Bankr. D. Conn. 2006)).

15. Thus, a threshold issue exists requiring a determination that property proposed to be sold pursuant to Bankruptcy Code section 363 is actually property of the estate. A bankruptcy court may not allow the sale of property as "property of the estate" without first determining whether the property is property of the estate. *See Moldo v. Clark (In re Clark),* 266 B.R. 163, 172 (B.A.P. 9th Cir. 2001) ("[T]he property that can be sold free and clear under section 363(f) is defined by subsections (b) and (c) of section 363 as 'property of the estate.'"); *Darby v. Zimmerman (In re Popp),* 323 B.R. 260, 266 (B.A.P. 9th Cir. 2005) (even before one gets to Section 363(f), Section 363(b), requires that the estate demonstrate that the property it proposes to sell is "property of the estate."); *Anderson v. Conine (In re Robertson),* 203 F.3d 855, 863 (5th Cir. 2000) (holding that section 363(f) does not permit a trustee to sell the property of a non-debtor spouse because such property was not "property of the estate"); *In re Coburn,* 250 B.R. 401, 403 (Bankr.M.D.Fla. 1999) (finding it necessary to determine whether an asset is property of the estate in order to decide whether the trustee is entitled to sell the asset pursuant to section 363(f)).

16. This procedural view is also supported by the Fourth Circuit's ruling in *Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir. 1995) holding in the context of a Chapter 13 Plan that treatment of a secured creditor as unsecured was insufficient to avoid its liens under Bankruptcy

Rule 7001(2) which expressly requires initiation of an *adversary proceeding* "to determine the validity, priority, or extent of a lien or other interest in property . . . [t]he procedural requirements of such an action, which include, *inter alia,* the filing of a complaint and service of a summons, are set out in the Bankruptcy Rules."

17. The Sale Motion can and should be denied on this basis alone.

### Article 9 of the UCC Does Not Apply

18. Notwithstanding the obvious procedural defect, the Sale Motion asserts that the failure of the Consignment Group to perfect interests in the Consigned Goods with the filing of UCC-1 financing statements is somehow dispositive of whether a bona fide dispute exists under Bankruptcy Code Section 363(f)(4) and sufficient to permit the sale to go forward. This view is disputed by the Consignment Group because it fails to take into consideration the possibility that the Uniform Commercial Code is inapplicable and that the consignments in question may be "true consignments."

19. "Consignments of personal property are, for the most part, governed by Revised Article 9 of the Uniform Commercial Code, which distinguishes between consignments that satisfy the definition contained in [section] 9–102(a)(20) and those that do not." 5–541 COLLIER ON BANKRUPTCY ¶ 541.05. Consignments that satisfy the UCC definition require perfection in accordance with the UCC. *See id.; see also* Md. Code Ann., Com. Law § 9–109(a)(4), Com. 6 (stating that "Article [9] applies to every 'consignment'" to the extent the consignment meets the definition under section Md. Code Ann., Com. Law § 9–102(a)(20)). Consignments that do not satisfy the UCC definition are governed by state common and statutory law. 5–541 COLLIER ON BANKRUPTCY ¶ 541.05. *See* Md. Code Ann., Com. Law § 9–319(b). The Consignment Group asserts that the arrangement between them and the Debtors does not qualify as an Article 9

6

consignment.

20. UCC Section 9–102(a)(20) of the UCC defines "consignment" as a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale" and:

(A) the merchant:
    (i) deals in goods of that kind under a name other than the name of the person making the delivery;
    (ii) is not an auctioneer; and
    (iii) is not generally known by its creditors to be substantially engaged in selling the goods of others.
(B) with respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery;
(C) the goods are not consumer goods immediately before delivery; and
(D) the transaction does not create a security interest that secures an obligation.

*Id.* § 9–102(a)(20).

21. An unperfected consignor may, however, prevent the application of section 9–319(a) if there is a finding, by a preponderance of the evidence, that the transaction is not governed by Article 9 because the consignment does not fit the UCC definition. In other words, the UCC definition would not fit if it is shown that the consignee was "generally known" by its creditors to be "substantially engaged" in selling the goods of others. See 58 A.L.R.6th 289 (2010).[2] For this, discovery would be required.

---

[2] In the Sale Motion, the Debtors assert that the consignment vendor bears the burden of proof to demonstrate that the UCC definition does not apply. However, while some courts have found that the burden is on the consignor, other courts have held that the burden falls on the debtor-consignee as the party seeking and asserting the benefit of the application of the UCC. *See In re Salander-O'Reilly Galleries, LLC*, 506 B.R. 600, 608–09 (Bankr. S.D.N.Y. 2014) ("[I]n the Second Circuit, the burden of proof falls on the party claiming applicability of § 9–102(a)(20) to show that each element of the definition is satisfied."); *In re G.S. Distribution, Inc.*, 331 B.R. 552, 561 (Bankr. S.D.N.Y. 2005) ("A transaction must satisfy each element of the definition to be considered a consignment under § 9–102(a)(20), and the burden of proof falls on the party claiming applicability of the section. The Debtor has the burden of proof because it asserts that the transfer of jewelry was a consignment under § 9–102(a)(20)."). To the extent this Court determines, as it should, that the Debtor bears the burden of proof, the Court should further find that the Debtor has failed to meet this burden and deny the Sale Motion for this additional independent ground.

22. Courts have varied in what constitutes the metrics for the "substantially engaged" and "generally known" prong of UCC Section 9–102(a)(20). The substantially engaged prong generally requires a threshold of twenty percent (20%). *See In re TSAWD Holdings, Inc.*, 601 B.R. 599, 605 (Bankr. D. Del. 2019) (stating the Court has previously held that the threshold for substantial engagement is met only if consigned goods comprise "20% or more" of the value of the Debtors' inventory as a rule of thumb).

23. Several courts have held that the "generally known" prong requires a majority in number. *See In re Valley Media, Inc.*, 279 B.R. 105, 125 (Bankr. D. Del. 2002) ("To satisfy the 'generally known' prong of the test, the Objecting Vendors must prove that a majority of the debtor-consignee's creditors were aware that the consignee was substantially engaged in selling the goods of others, i.e. consignment sales."); *In re BRI Corp.*, 88 B.R. 71, 73 (Bankr. E.D. Pa. 1988) (more than fifty percent (50%) is required).

24. Courts have further held that any secured creditor with actual knowledge that a consignee was substantially engaged in selling the goods of others also fall outside of the UCC definition. *See In Fariba v. Dealer Services Corp.*, 178 Cal. App. 4th 156, 100 Cal. Rptr. 3d 219, 70 U.C.C. Rep. Serv. 2d 193, 58 A.L.R.6th 787 (4th Dist. 2009), *review denied*, (Jan. 21, 2010 (the fact that a secured creditor had actual knowledge that the consignee was engaged in such sales brought the case within the "generally known" exception and precluded the subordination of the consignor's claim); *see also Europac Serv., Inc. v. Repub. Acceptance Corp.*, 37 P.3d 447, 450–51 (Colo. App. 2000) (finding that a creditor with actual knowledge of a consignment arrangement cannot benefit from section 9–319 of the UCC); *GBS Meat Indus. Pty. Ltd. v. Kress–Dobkin Co.*, 474 F.Supp. 1357, 1363 (W.D. Pa. 1979), *aff'd,* 622 F.2d 578 (3d Cir. 1980) (holding that a consignor has priority over a secured creditor with actual knowledge of the consignment

relationship because any other result would sanction the intentional conversion of goods). This factual inquiry would be relevant in the instant case as to the knowledge of the Debtor's secured creditor JPMorgan Chase Bank N.A., which would stand to benefit at the Consignment Group's expense if the Sale Motion were to be approved.  Discovery would also permit insight as to its knowledge of the Debtor's business operations.

25. The Consignment Group asserts in the alternative that neither the Debtor nor JPMorgan Chase Bank has a superior interest in the Consigned Goods because Article 9 of the UCC is not applicable. The Consignment Group argues that the arrangements each had with the Debtor does not fit the UCC definition of a consignment because the Debtors were generally known by their creditors to be substantially engaged in selling the goods of others and because JPMorgan Chase Bank N.A. had actual knowledge of the consignment arrangement.

26. Bankruptcy Rule 7001(2) requires that the Debtor seek any determination regarding the interest in the Consigned Goods in the context of an adversary proceeding that affords discovery and provides for a full and fair opportunity to present these defenses.

**The Sale Motion Should Not Be Approved as to Consigned Goods Shipped Post-Petition**

27. The Consignment Group further opposes the Sale Motion to the extent that it is the Debtor's intention by the Sale Motion to sell any Consigned Goods delivered after the petition date of January 14, 2025, without providing payment to the Consignment Group in accordance with the terms of their Agreements and as administrative expense claims.

28. Section 503(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, there shall be an allowed administrative expense claim for "the actual, necessary costs and expense of preserving the estate." 11 U.S.C. § 503(b)(1)(A). "[A]n administrative expense claim will be allowed [under section 503(b)(1)(A) of the Bankruptcy Code] where the expense

9

(1) arises post-petition; and (2) is beneficial to the Debtor's estate." *In re Lease-A-Fleet, Inc.*, 140 B.R. 840, 845 (Bankr. E.D. Pa. 1992).

29. A post-petition creditor is entitled to recover payments due under a contract, such as attorneys' fees, late fees, and interest, as administrative expenses if the debtor-in-possession's obligation has not been performed, or has not been modified by the court. *CIT Commun. Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229, 236 (4th Cir. 2005).

30. Any sale of Consigned Goods delivered to the Debtor post-petition should not be authorized to be sold free and clear of liens, claims, interests or encumbrances without providing payment to the Consignment Group in accordance with the terms of their respective Agreements and as administrative expense claims.

31. Consistent with the foregoing, any sale of Consigned Goods to approved under the Sale Motion should be accounted for to provide for proper allocation of funds as to each consignor and the extent to which the sale is for pre-petition and post-petition goods.

32. In the absence of any adequate assurance of payment to the Consignment Group in accordance with the terms of their Agreements and as administrative expense claims, such Consigned Goods should be returned to each respective consignor.

33. Pursuant to Local Bankruptcy Rule 9013-2, the Consignment Group states that, that no further memorandum in support of this Motion is presented, the Consignment Group will rely on the grounds and authorities set forth herein. In the unlikely event that the Sale Motion is the proposed procedures for the sale of the Consigned Goods, the Sale Motion and the proposed procedures are woefully inadequate. The Debtor essentially requests a blanket approval of any liquidation of these Consigned Goods with minimal court oversight and, in some cases, with any such court oversight occurring subsequent to the sale itself. The proposed procedures are replete

with issues, including the lack of notice to all parties in interest and a failure to effectively maximize the value of the estate (to the extent that such Consigned Goods are deemed assets of the estate). The Debtors have failed to demonstrate that the Sale Motion is in the best interest of the estate and its creditors and the Sale Motion should be denied on that basis as well.

## Reservation of Rights

34.     The Consignment Group expressly reserves and preserves all rights with respect to the Sale Motion and/or any proposed sale(s) of any of the Consigned Goods, including, without limitation, the right to assert and seek discovery in connection therewith or related thereto and to assert further or additional objections prior to or during any hearing on the Sale Motion. The Consignment Group further expressly reserves and preserves the right to seek payment of any and all amounts due or that may become due to the Consignment Group in full as administrative expense claims and/or to assert any and all rights, claims, counterclaims, and/or defenses in any adversary proceeding involving any members of the Consignment Group and/or the Consigned Goods.

**Conclusion**

35. WHEREFORE, the Consignment Group respectfully requests that the Sale Motion be denied and such other and further relief as is just and proper.

        Respectfully submitted,

        /s/ Craig M. Palik
        Craig M. Palik, Esquire (Bar No 15254)
        Justin P. Fasano, Esquire
        Janet M. Nesse, Esquire
        McNamee Hosea, P.A.
        6404 Ivy Lane, Suite 820
        Greenbelt, MD 20770
        T: (301) 441-2420
        cpalik@mhlawyers.com
        jfasano@mhlawyers.com
        jnesse@mhlawyers.com

*Attorneys for Aspen MLT, LLC, a/ka/ Aspen Comics,*
*Black Mask Studios, LLC,*
*DSTLRY Media, Inc.,*
*Dynamic Forces, Inc. a/k/a Dynamite Entertainment,*
*Heavy Metal International, LLC,*
*Magnetic Press, LLC,*
*Massive Publishing, LLC,*
*Oni-Lion Forge Publishing Group, LLC f/k/a Oni Press, LLC,*
*Panini UK Ltd.,*
*Punk Bot Comic Books, LLC a/k/a Alien Books,*
*The Penn State University a/k/a Graphic Mundi,*
*Titan Publishing Group, Ltd. and*
*Vault Storyworks, LLC a/k/a Vault Comics f/k/a Creative Mind Energy*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of July 2025, a copy of the foregoing was served in the manner set forth below, on the following:

**By CM/ECF and First-Class Mail:**

Jordan D. Rosenfeld
Saul Ewing LLP
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Email: jordan.rosenfeld@saul.com

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
Turner N. Falk (admitted *pro hac vice*)
Saul Ewing LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Email: jeffrey.hampton@saul.com
adam.isenberg@saul.com
turner.falk@saul.com

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
Saul Ewing LLP
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
paige.topper@saul.com
nicholas.smargiassi@saul.com

*Counsel for Debtors and Debtors in Possession*

And to all other registered users of CM/ECF receiving electronic notice in this case

/s/ Craig M. Palik
Craig M. Palik