IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>August 18, 2025 at 11:00 a.m. (ET)<br>**Objection Deadline:**<br>August 13, 2025 |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE SALE AND PURCHASE AGREEMENT AMONG DEBTORS COMIC EXPORTERS, INC. AND COMIC HOLDINGS, INC., AND DIAMOND DISTRIBUTORS UK, LTD; (II) APPROVING SALE OF SHARES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, respectfully move (the "Motion") as follows:

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Sale Order"), (i) authorizing and approving the sale of the shares (the "Shares") that Debtors Comic Exporters, Inc. and Comic Holdings Inc. hold in non-debtor affiliate Diamond Comic Distributors, a corporation organized under the laws of England and Wales ("Diamond UK"), to Diamond Distributors UK, Ltd. (the "Purchaser"), an entity formed and owned by certain members of the current U.K.-based management team of Diamond UK, free and clear of all liens,

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585).  The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

claims, interests, and encumbrances in accordance with the Share Sale and Purchase Agreement (including all exhibits, schedules, and ancillary documents related thereto, the "SPA"); and (ii) granting related relief.

**Jurisdiction and Venue**

2.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), as supplemented by rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 6004-3 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Bankruptcy Rules").

**Background**

4.  On January 14, 2025 (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On January 29, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

5.  A description of the Debtors' business as of the Petition Date and the reasons for commencing these cases are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petitions and First Day Relief* (D.I. 20) (the "First Day Declaration") and incorporated herein by

reference.

6. As stated in the First Day Declaration, the Debtors' goal in these chapter 11 cases was to conduct a value-maximizing sale process of all or substantially all the Debtors' assets. To that end, on February 11, 2025, the Court entered an order establishing, among other things, bidding procedures and key deadlines for the Debtors' postpetition sale process (D.I. 136) (the "Bid Procedures Order"). On February 21, 2025, the Debtors filed a motion seeking authority to sell substantially all their assets free and clear of any liens, claims, interests and encumbrances, and to assume and assign executory contracts and unexpired leases in connection with the sale of the Debtors' assets (D.I. 168). The postpetition sale process included marketing the Shares of Diamond UK.

7. Consistent with the Bid Procedures Order, the Debtors held an auction on March 24 and 25, 2025. Following the Auction, the Debtors filed the *Notice of Designation of Successful Bidder and Back-Up Bidder* (D.I. 270) identifying Alliance Entertainment, LLC ("Alliance") as the successful bidder and a combination of Universal Distribution, LLC ("Universal") and Ad Populum, LLC, as the back-up bidders. Neither Alliance's bid nor Universal's and Ad Populum's combined back-up bid contemplated the purchase of the Shares of Diamond UK.

8. Ultimately, the sale to Alliance did not close and the Debtors pivoted to seeking authority to sell their assets to the designated back-up bidders. *See Debtors' Motion for Entry of Orders Authorizing the Sale of Substantially All of the Debtors' Assets to the Back-Up Bidders Pursuant to the Bidding Procedures Order* (D.I. 385). On May 1, 2025, the Court entered Orders approving the sale of substantially all the Debtors' assets, excluding the Shares of Diamond UK, to Universal and Sparkle Pop, LLC ("Sparkle Pop") (an affiliate of Ad Populum, LLC). *See* D.I. 407 & 408. The sales to Universal and Sparkle Pop have closed. *See* D.I. 499 and 500.

9. Since the Universal and Sparkle Pop sale closings, the Debtors have been focused on monetizing their estates' remaining assets, including the assets and/or Shares of Diamond UK, to maximize value for the Debtors' estates and creditors. In particular, the Debtors and their investment banker, Raymond James & Associates, Inc., solicited interest from potential purchasers for the assets and/or for the Shares in Diamond UK. Ultimately, the Purchaser submitted a comprehensive proposal for purchasing the Shares that was the highest and best proposal received.

10. The Debtors engaged in extensive, arm's-length negotiations with the Purchaser to ensure that the transaction maximized the value of Diamond UK, which resulted in the SPA a and the heavily-negotiated purchase price of $2,100,000. The Debtors believe that the SPA is in the best interests of the Debtors and all parties in interest. Ultimately, approval of the sale to Purchaser will provide the most efficient path to divesting the Shares, which represent one-hundred percent of the Shares in Diamond UK, for fair consideration.

**Provisions to be Highlighted Pursuant to Local Bankruptcy Rule 6004-3**

11. The following chart discloses certain information required to be disclosed pursuant to Local Bankruptcy Rule 6004-3 with respect to the SPA. A copy of the SPA is attached hereto as **Exhibit B**.

| Rule | Disclosure/Location |
|---|---|
| **Sale to Insider** *Local Bankruptcy Rule 6004-3(a)* | The Purchaser is an entity formed by certain members of the UK-.based management team of Diamond UK, and therefore is an insider of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code. None of the Debtors' officers or directors are part of the ownership group of the newly-formed entity. At all relevant times, the Purchaser has been represented by separate counsel, and negotiations resulting in entry into the SPA have been conducted at arm's length and in good faith by the Debtors through the Debtors' advisors. |
| **Agreements with Management** *Local Bankruptcy* | Not applicable. |

| | |
|---|---|
| *Rule 6004-3(b)* | |
| **Releases** *Local Bankruptcy Rule 6004-3(c)* | The sale of the Shares to the Purchaser is conditioned upon JPMorgan Chase Bank, N.A. (the "Lender"), releasing Diamond UK from all of Diamond UK's obligations as guarantor under (i) that certain Credit Agreement between, among others, the Debtors, Diamond UK and the Lender, dated May 16, 2019, and (ii) that certain Debtor-in-Possession Credit Agreement between, among others, the debtors, Diamond UK and the Lender, dated January 16, 2025. *See* SPA, Section 3.1 & Schedule 3. In addition, the SPA provides that the Debtors are releasing any and all claims against Diamond UK and its employees. *See* SPA, Section 14.3 |
| **Private Sale/No Competitive Bidding** *Local Bankruptcy Rule 6004-3(d)* | The sale of the Shares was subject to the Debtors' postpetition sale process and the procedures set forth in the Bidding Procedures Order. An additional auction for the Shares is not contemplated; however, the Debtors are not prevented from entertaining competing offers, and maintain their fiduciary out. |
| **Closing and Other Deadlines** *Local Bankruptcy Rule 6004-3(e)* | The Sale to the Purchaser has a Long Stop Date (i.e., the outside closing date) of August 22, 2025. *See* SPA, Section 1.1 & 3.1. |
| **Good Faith Deposit** *Local Bankruptcy Rule 6004-3(f)* | The Purchaser submitted a $200,000 good faith deposit. *See* SPA, Section 4. |
| **Interim Arrangements with Proposed Buyer** *Local Bankruptcy Rule 6004-3(g)* | The Debtors are not entering into any interim arrangements with the Purchaser. |
| **Use of Proceeds** *Local Bankruptcy Rule 6004-3(h)* | The SPA does not contain any provision pursuant to which the Debtors propose to release sale proceeds on or after the closing without further Court order, or to provide for a definitive allocation of sale proceeds between or among various sellers or collateral. |
| **Record Retention** *Local Bankruptcy Rule 6004-3(i)* | The SPA provides that the Debtors will have access to books and records for at least six years after closing:<br><br>For a period of six years from Completion, the Buyer shall upon written request make available to each member of the Sellers' Group any notices, correspondence, orders, inquiries, books of account and other documents and all computer disks or tapes or other machine legible programs or other records (excluding software) of the Business (the "Books and Records") (or, if practicable, the relevant parts of those Books and Records) which are in the possession of the Buyer, not subject to legal privilege, and which are reasonably required by any member of the Sellers' Group for the purpose of |

5

| | |
|---|---|
| | dealing with its Taxation, accounting and insurance affairs and/or compliance with any regulatory or statutory duty and/or its obligations under the Transaction Documents and, accordingly, the Buyer shall, upon being given reasonable notice by the Sellers' Group and subject to the relevant member of the Sellers' Group giving such undertaking as to confidentiality as the Buyer shall reasonably require, procure that such Books and Records are made available to the relevant member of the Sellers' Group for inspection (during working hours) and copying (at the relevant member of the Sellers' Group's expense) for and only to the extent necessary for such purpose.<br><br>SPA, Section 8.2. |
| **Sale of Avoidance Actions**<br>*Local Bankruptcy Rule 6004-3(j)* | The SPA does not include the sale of avoidance claims under Chapter 5 of the Bankruptcy Code; however the Debtors are releasing any and all claims against Diamond UK and its employees. |
| **Requested Findings as to Successor Liability**<br>*Local Bankruptcy Rule 6004-3(k)* | The Sale Order will include findings that the Purchaser is not a mere continuation of the Debtors or their estates, and that the Purchaser shall not have any successor liability of any kind or character. *See* SPA, Section 1.1 (definition of Approval Order). |
| **Sale Free and Clear of Unexpired Leases**<br>*Local Bankruptcy Rule 6004-3(l)* | Not applicable. |
| **Credit Bid**<br>*Local Bankruptcy Rule 6004-3(m)* | Not applicable. |
| **Relief from Bankruptcy Rule 6004(h)**<br>*Local Bankruptcy Rule 6004-3(n)* | The Debtors seek a waiver of the 14-day stay under Bankruptcy Rule 6004(h), as described in more detail below. |

## Basis for Relief

**I. Sufficient business justification exists for consummation of the sale to Purchaser under sections 105(a) and 363(b) of the Bankruptcy Code.**

12. Pursuant to section 105(a) of the Bankruptcy Code, a "[c]ourt may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11

6

U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have required that such use, sale or lease be based upon the sound business judgment of the debtor. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (internal citation omitted); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147–48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *In re Lionel Corp.*).

13. The demonstration of a valid business justification by the debtor leads to a strong presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

14. The Debtors submit that their decision to sell the Shares to Purchaser represents a reasonable exercise of the Debtors' business judgment and, accordingly, the sale should be approved under sections 105(a) and 363(b) of the Bankruptcy Code and pursuant to the terms of the SPA. The Debtors conducted an extensive and fulsome process to market the assets of Diamond UK and/or the Shares, which yielded no third-party interest in the Shares on equal or better terms than those set forth in the SPA. Therefore, the Debtors' estates are receiving the highest or otherwise best value available for Diamond UK, and approval of the SPA will provide a greater recovery to the Debtors' estates and their creditors than would be provided by any other

available alternative. Further, the Debtors proceeded in good faith in negotiating the terms of the SPA with Purchaser and engaged in extensive negotiations to ensure a value-maximizing transaction was achieved.

15. For these reasons, the Debtors submit that their decision to enter into the SPA and consummate the sale of the Shares to the Purchaser represents a sound exercise of the Debtors' business judgment, such that the sale to the Purchaser should be approved under sections 105(a) and 363(b) of the Bankruptcy Code.

## II. The sale of the Shares free and clear of all encumbrances is authorized under section 363(f) of the Bankruptcy Code.

16. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is a bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

17. Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Shares "free and clear" of liens and interests. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that because section 363(f) is written in the disjunctive, a court may approve a sale free and clear if any one subsection is met); *see also Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir.

1991) (same); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same). Furthermore, a debtor possesses broad authority to sell assets free and clear of liens. *See In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003).

18. The Debtors submit that it is appropriate to sell the Shares on a final "as is" basis, free and clear of any and all liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) are satisfied with respect to such sale. The Debtors have conducted a UCC lien search in the jurisdiction in which the Debtors are incorporated and, other than the Lender, no liens against the Shares are of record. With respect to the Lender, the Debtors believe that section 363(f)(2) of the Bankruptcy Code will be met because it is anticipated that the Lender will consent to the sale.

19. A sale of the Shares other than one free and clear of all interests would yield substantially less value for the Debtors' estates. The Debtors submit that the Purchaser will not consummate the sale absent the ability to purchase the Shares free and clear of all interests. Accordingly, the Debtors request that the Shares be sold free and clear with such interests attaching to the proceeds of the sale, subject to any rights and defenses of the Debtors and other parties in interest with respect thereto.

### III. The sale should be subject to the protections of section 363(m) of the Bankruptcy Code.

20. Section 363(m) of the Bankruptcy Code provides, in part, that the reversal or modification on appeal of an authorization of a sale pursuant to section 363(b) or section 363(c) of the Bankruptcy Code does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. See 11 U.S.C. § 363(m). Although good faith is not specifically defined in the Bankruptcy Code, one court has stated that the "[g]ood faith of a purchaser is shown by the integrity of his

conduct during the course of the sale proceedings . . . A purchaser's good faith is lost by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) (internal quotations omitted).

21. In approving the sale of the Shares free and clear of all interests and encumbrances, the Debtors request that the Court find and hold that the Purchaser is entitled to the protections afforded by section 363(m) of the Bankruptcy Code. The SPA contemplated herein is the product of good-faith, arm's-length negotiations. There is no indication of fraud or any improper insider dealing. The consideration to be received by the Debtors pursuant to the SPA is substantial, fair and reasonable under the circumstances. As noted, the Debtors' businesses and assets, including the assets and/or Shares of Diamond UK, have been extensively marketed. No other buyer emerged with an actionable transaction for the assets and/or the Shares at a superior value. For these reasons, the Debtors request that the Court enter an order entitling each of the parties to the SPA to the full protections of section 363(m) of the Bankruptcy Code.

### IV. The Purchaser has not engaged in any conduct to control the sale price under section 363(n) of the Bankruptcy Code.

22. The sale of the Shares to the Purchaser, including but not limited to the sale process engaged in by the Debtors and Purchaser and entry into the SPA, is non-collusive, in good faith, from arm's-length bargaining positions, and substantively and procedurally fair to all parties in interest. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the SPA or the sale of the Shares to be avoided, or for any costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

23. As noted above, the SPA is the product of extensive, arm's-length negotiations. The Purchaser did not in any way unfairly influence the Debtors or the sale process, nor did the

Purchaser act in any way to control the price of the sale of the Shares. The Debtors believe that the contemplated sale to the Purchaser represents fair value for the Shares. No other buyer has emerged with an actionable transaction for the Shares on equal or better terms. Therefore, the Debtors submit that the sale of the Shares to the Purchaser represent the highest or otherwise best offer for the Shares.

## Waiver of Memorandum of Law

24.     Pursuant to Local Bankruptcy Rule 9013-2, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

## Waiver of Bankruptcy Rule 6004(h)

25.     Pursuant to Bankruptcy Rule 6004(h), "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As set forth herein, any delay in the Debtors' ability to consummate the sale would be detrimental to the Debtors, their creditors and estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h).

## Notice

26.     Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Committee; (iii) counsel to the Lender; (iv) counsel for the Purchaser; (v) the Office of the United States Attorney for the District of Maryland; (vi) the offices of the attorneys general for the states in which the Debtors operate; (vii) the federal and Maryland state taxing authorities, including the Internal Revenue Service; (viii) all persons known by the Debtors to assert a lien on the Shares;

(ix) all persons known or reasonably believed to have asserted an interest in the Shares; (x) all persons known or reasonably believed to have expressed an interest in acquiring the assets of Diamond UK and/or the Shares since the Petition Date; (xi) the office of the Secretary of State in each state in which the Debtors have operated; (xii) the United States Attorney General; (xiii) the civil process clerk for the United States Attorney for the District of Maryland; and (xiv) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested and the facts and circumstances of these chapter 11 cases, the Debtors submit the no other or further notice is necessary.

## Conclusion

WHEREFORE, the Debtors respectfully request the entry of the Sale Order granting the relief requested herein and such other and further relief as is just and proper.

Dated: July 23, 2025                                           **SAUL EWING LLP**


By:*/s/ Jordan D. Rosenfeld*
Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
Turner N. Falk (admitted *pro hac vice*)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
          adam.isenberg@saul.com
          turner.falk@saul.com

-and-

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
paige.topper@saul.com
nicholas.smargiassi@saul.com

*Counsel for Debtors and Debtors in Possession*

13