IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered) |

### AD HOC COMMITTEE OF CONSIGNORS' MOTION TO STAY DEBTORS' MOTION FOR ENTRY OF ORDER APPROVING (I) PROCEDURES FOR SALE OR OTHER DISPOSITION OF CONSIGNED INVENTORY, (II) APPROVING SALES OR OTHER DISPOSITION OF CONSIGNED INVENTORY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS OR ENCUMBRANCES AND (III) GRANTING RELATED RELIEF

The *Ad Hoc* Committee of Consignors (the "Consignors"[2]) by and through its undersigned counsel, files this Motion to Stay Debtors' Motion For Entry Of Order Approving (i) Procedures For Sale Or Other Disposition Of Consigned Inventory, (ii) Approving Sales Or Other Disposition Of Consigned Inventory Free And Clear Of Liens, Claims, Interests Or Encumbrances And (iii) Granting Related Relief, and in support thereof states as follows:

1. On January 21, 2025, the Debtors filed Debtors' Motion for Entry of an Order (I) Authorizing and Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling an Auction and a Sale Hearing, (IV) Approving the Form and Manner of Notice Thereof, and (V) Establishing Notice and Procedures for the Assumption and Assignment of Certain Executory Contracts and Leases [Dkt. 68] (the "Motion to Sell Substantially All Assets").

2. On May 1, 2025, in connection with the Motion to Sell Substantially All Assets, the Court entered two orders approving the sale of substantially all assets to Sparkle Pop, LLC and Universal Distribution, LLC [Dkts. 407 and 408] (the "Orders Approving Sale of Substantially All Assets").

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] The Consignors are comprised of 12 different consignors with another 2 who are in process of joining. Upon information and belief, there may be other parties who sold stock to the Debtors on a consignment basis but who are represented by counsel other than the undersigned. The Consignors believe that this objection is in the best interest of all similarly-situated consignors.

3. On June 10, 2025, the Debtors filed two Notice of Sale Closings, stating the sales contemplated by the Orders Approving Sale of Substantially All Assets each closed in mid-May 2025 [Dkts. 499 and 500].

4. Goods held on consignment by the Debtors were excluded from the Orders Approving Sale of Substantially All Assets. Furthermore, the Consignor's Contracts (defined below) were never assumed and assigned in connection with the Orders Approving Sale of Substantially All Assets.

5. On June 25, 2025, the Debtors filed the Motion [Dkt. 531], seeking to sell all consigned "inventory" (the "Stock") free and clear of the Consignors' interests, which collectively has a resale value of several million dollars.

6. On July 16, 2025, the Consignors filed an objection to the Motion (the "Objection") [Dkt. 601], setting forth the factual and legal arguments as to why the Motion should be denied.

7. As more fully set forth in the Objection, the Consignors do not have a competing security interest in the Stock; rather, the Consignors own the Stock and the DIP Lender's security interest has not attached in the Stock. The Stock at issue is titled to the Consignors in accordance with Article 9 and 2 of the Maryland Code Annotated Commercial Law Article and the Uniform Commercial Code, and other applicable Maryland law.

8. Because the Stock is not property of the Debtors' estates, the Consignors have alleged a *bona fide* dispute with respect to ownership of the Stock, and the Debtors are not permitted to sell the Stock for the benefit of the DIP Lender (or any other creditors other than the respective Consignors).

**I.     Factual Background**

9. Each of the Consignors has delivered Stock to the Debtors, which Stock is comprised of a mix of periodical comic books, graphic novels, graphic art publications, and other similar publications and/or games and related merchandise.

10. Each of the Consignors entered into an agreement with one or more of the Debtors (typically with Diamond Comic Distributors, Inc., ("Distributor")) governing the terms

of the Consignors' shipments of the Stock, the Debtors' storage and sale of the Stock, and the payment terms governing the Debtors' obligations to pay the Consignors upon sale of the Stock.

11. There appears to be no dispute that the Consignors made the Stock available to the Debtors on a consignment basis. Each of the agreements contains terms providing that (i) title to the respective Stock does not pass to the Debtor until sold by the Debtor(s) to a third-party purchaser. Importantly, title never passes to the Debtor(s) – it is retained by the Consignor until sold to the customer, and then it passes directly to the Debtor(s)' customers. Specifically, the agreements each contain provisions similar to the provision set forth in the Distribution Agreement attached hereto as **Exhibit A**, which provides that

> *All Products are to be held by Buyer on consignment, and remain the property of Seller until sold by Seller through Buyer. Seller shall retain title to Products while they are stored in Buyer's distribution center, which title will pass to Customers in accordance with the Buyer's Terms of Sale.*

(Distribution Agreement, ¶8(a))

12. Distributor has always maintained that the Stock is property of the respective Consignors and not Distributor. In addition to the terms set forth in the agreements with the Consignors, there exist allotment notices regarding specific Stock that was delivered to Distributors, which plainly identifies the stock as owned by the "Vendor," not Distributors. (Allotment Notice, attached hereto as **Exhibit B**) Distributor also required Consignors to pay taxes, and sent correspondence confirming Consignors' ownership of the Stock. For example, a March 1, 2024 communication from Distributor informed one Consignor that "As an owner of inventory in [Distributor's] designated Mississippi warehouse, [Consignor is] subject to Mississippi personal property tax.." and that "…DeSoto County requires Diamond Comic Distributors, Inc. to provide the name and address of each owner of property that was in our possession or under our management at year end…" (Email Dated March 1, 2024, attached as **Exhibit C**). This email was sent for multiple years, copies of which emails are contained within Exhibit C.

13. The Consignors also have continued to pay all personal property, inventory and other taxes on the Stock; and retained risk of loss, and can provide copies of annual reports filed with the pertinent taxing authorities confirming the value of the Stock and that the Consignors

- 3 -

hold title thereto for purposes of tax assessments. (*See, i.e.,* Distribution Agreement, ¶¶ 8(b-c)) (*see, e.g.,* Copy of Check to DeSoto County, attached as **Exhibit D**).

14. The Consignors' agreements appear to all be governed by the law of the State of Maryland. (*See, i.e.,* Distribution Agreement, ¶18)

15. None of the Consignors were granted a security interest in the Stock[3].

16. At least one Consignor, and possibly more, marked their Stock with placards/notices that unambiguously stated that the respective Stock was property of the respective Consignor, Herman and Geer Communications, Inc. d/b/a Hermes Press.

17. Many of the Consignors have terms included in their respective agreements that govern the use of various intellectual property rights. For example, the Debtor(s) are prohibited from "[doing] or caus[ing] to be done any act or thing contesting or impairing any part of such right, title, and interest" in the respective Consignor's intellectual property rights. (*See, i.e.,* Distribution Agreement, ¶9(b)).

18. Many of the Consignors have the right to terminate their respective agreements if the Debtor(s) fail to pay amounts owed to the Consignor within the time stated, upon sale of part of the stock delivered to the Debtor(s). (Id., ¶10(c)(ii)).

19. Furthermore, upon termination of the respective agreements, many of the Consignors have the right to demand return of the unsold Stock. (Id., ¶10(h)).

20. While the Consignors offer the Distribution Agreement as evidence of several of their agreements, some Consignors have other agreements with different terms. The Motion fails to identify which Stock of which Consignors is intended to be sold; thus, at this time, the Consignors do not intend to attach each and every one of their agreements to this Objection until such time that the Court requests this information and/or the Debtor identifies which Stock is included in the proposed sales.

21. The majority of Consignors also agreed to appoint the Debtor(s) as the sole and exclusive distributor worldwide for the sale and distribution of the Stock, or portions of the

---

[3] Counsel for the Consignors is still reviewing agreements but as of the filing of this Motion none of the agreements reviewed grant any security interests or contemplate that the respective Consignor would take back a security interest.

Stock. (*See, i.e.,* Distribution Agreement, ¶1(a)). However, if the Debtor(s) decline to offer any of the Stock for sale, the majority of Consignors have the right to sell those items to other retailers without any involvement from the Debtor(s), meaning that the exclusivity provision terminates if Debtor(s) no longer offer the Stock for sale. (*See, i.e.,* Distribution Agreement, ¶1(d)).

22. The Consignors have claims not limited to the following:

    a. Claims arising from stock that was delivered to the Debtor(s) prepetition and sold prepetition;

    b. Claims arising from stock that was delivered to the Debtor(s) pre or post-petition, and sold postpetition; and

    c. Claims arising from the Stock that is still held at the Debtor(s)' warehouse or at another third-party location but not yet sold to a third party.

23. As described in the Objection, the Consignors and other objecting parties have alleged sufficient facts to constitute a *bona fide* dispute as to the ownership of the Stock.

24. Notwithstanding the fact that goods held on consignment were sold to neither Sparkle Pop nor UDL; and the Debtor never assigned the underlying agreements with the Consignors that govern the Debtor's distribution of those goods; nevertheless, Diamond Distributor, Inc. ("Distributor"), sent an E-Mail communication to the Consignors on May 27, 2025 (the "May E-Mail") to the contrary. (E-Mail Dated May 27, 2025, attached hereto as **Exhibit E**). In that communication Distributor told Consignors that:

> *New Ownership Responsible for Invoicing Related to All Sales Activity May 16 Onward: These obligations are fully separate from the bankruptcy estate and are actively being processed and paid under normal operating procedures. …*
>
> **Diamond**, **now operating under the ownership of Ad Populum**, *is a new entity and the new organization, responsible for all obligations from May 16 onward.*
>
> (May E-Mail)

25. Accordingly, the May E-Mail indicated not only that Diamond was "operating under the ownership" of its purchaser Sparkle Pop d/b/a Ad Populum, but it misled Consignors

into thinking that the Asset Sale to Sparke Pop was actually a sale of ownership, because it indicated that Diamond continued to operate under the ownership of a new buyer. Worse, the May E-Mail confirmed that Ad Populum was financially responsible for the payments of the Consignors' stock, but Ad Populum never took assignment of the Consignors' executory agreements.

    A.  <u>Section 363 Does Not Authorize the Debtors to Sell the Stock because the Stock is Not Property of the Estates; a *Bona Fide* Dispute Exists as to Ownership of the Stock.</u>

26.    Before considering whether the Debtors have met the elements set forth in Bankruptcy Code §363(f), the Court must first evaluate whether the Stock is property of the Debtor(s) estate(s) in accordance with Bankruptcy Code § 541. Section 363(f) unambiguously authorizes *only* the sale of "property" in accordance with §363(b) and (c); §363(b), in turn, permits the sale of "property of the estate…." Bankruptcy Code §§363(b)(1); (f).

27.    There exist many cases (including the TSA/Sports Authority cases cited *supra*) wherein courts have been called to analyze a debtor's authority to sell estate property in light of a *bona fide* dispute as to whether the property at issue constituted estate property. *See In re Valley Media, Inc.,* 279 B.R. at 142. In *In re Valley Media*, the Bankruptcy Court for the District of Delaware held that because the consignment agreements governing the proposed sale property terminated prepetition, the stock was not property of the debtor and thus could not be sold. *Id.* The Bankruptcy Court for the Southern District of New York has also clarified this decision, expanding it to hold that a secured lender's interest could not attach in consigned goods that fell outside of Article 9 because the Debtor did not own the goods at issue. *See Jacobs v. Kraken Inv. Ltd. (In re Salander-O'Reilly Galleries, LLC)*, 506 B.R. 600, 612 (Bankr. S.D.N.Y. 2014).

28.    As to Stock delivered *postpetition*, this decision becomes even clearer. Once the Court determines that Article 9 does not apply, it must conclude that the postpetition Stock is not property of the estate in accordance with Bankruptcy Code § 552. Property that is not subject to UCC § 9-102 that is delivered postpetition is free not only from prepetition secured interests, but also free from the hypothetical judgment creditor interest of Bankruptcy Code § 544. *See Ellis v. IPC (USA), Inc. (In re Pettit Oil Co.)*, 2016 Bankr. LEXIS 2762 (Bankr. W.D. Wa. July 29, 2016) (Where the trustee argued that consigned goods delivered postpetition were subject to the § 544 hypothetical judgment lien creditor interest, the court rejected this argument and held "[a]s

indicated previously, this argument fails to explain how the property becomes an estate asset in the absence of an intervening lien creditor. As between [the consignor] and the Debtor, this should be analyzed as a consignment agreement, not a security agreement." *Id.* at *10-11;* "…the fuel delivered by IPC postpetition…is not property of the Debtor's estate, it is not necessary to determine whether the estate's interest, if one existed, would extend to proceeds." *Id.* at 11). That court went on to suggest that imposition of a resulting or constructive trust would be appropriate even if the goods had been subject to the trustee's hypothetical judgment lien creditor interests. *Id.*

29. Bankruptcy Rule 7001 requires commencement of an adversary proceeding to determine "the validity, priority, or extent of a lien *or other interest in property*," which determination may be sought by action for declaratory judgment. Bankruptcy Rules 7001(2); 7001(9). This relief cannot be sought by Motion.

30. Prior to being granted authority to sell estate property under §363(f), the Debtors must establish that the property to be sold is estate property. Given that the Debtors have not identified which stock, precisely, is expected to be sold, it becomes even clearer that the *Debtors* have the obligation to obtain a ruling as to ownership of the Stock rather than the consignor owners of the Stock. Indeed, the Consignors and all potential consignors who have delivered goods to the Debtor(s) currently lack sufficient information to even confirm whether the Motion contemplates selling their property or not.

31. Additionally, some of the Consignors may seek a termination of the respective agreements through the appropriate channels in this case, in which case the Debtor(s) will be required to return the Stock to the Consignors. It is imprudent to authorize a sale of the Stock at this time, without understanding which Stock is actually proposed to be sold; which Stock may be subject to return after termination of the respective Consignor agreements; and as stated above, without a proper finding as to whether the Stock is property of the Debtors' estates.

32. The stay of the Motion also is necessary given the Debtors' position regarding the Stock, as reflected in Distributor's May E-Mail. The Debtors have blatantly violated the Bankruptcy Code with respect to requirements relating to executory contracts with the

Consignors, and the assumption and assignment of the Consignors' agreements. The Consignors' Stock continues to be sold without payment to the Consignors, which gives rise to a plethora of actions against the Debtors, Ad Populum, and potentially the DIP Lender and other third parties to the extent that these parties received proceeds from the sale of non-estate property that the Consignors own. The Debtors must obtain a finding that the Stock (and all other stock sold post-petition) is property of the estate before this Court can authorize the sale of millions of dollars of Stock that clearly belongs to the Consignors and other parties similarly-situated.

33.  For these reasons, good cause exists to stay the Motion until such time as (1) the Debtors have obtained a declaratory judgment from this Court confirming that the proposed Stock to be sold is, in fact, property of the Debtors' estates; which declaratory judgment can only be achieved through (i) the Debtors' commencement <u>and service</u> of a complaint on each of the respective consignors who delivered the Stock proposed to be sold; (ii) opportunity for discovery by all parties to the declaratory judgment action; and (iii) dispositive motions and/or trial on the causes of action identified in the Debtors' prospective complaint; along with any subsequent appeals or expiration of deadline to appeal any such final order; and (2) the Debtors have amended the Motion to clarify which Stock is proposed to be sold.

WHEREFORE, the *Ad Hoc* Committee of Consignors respectfully requests that the Court stay the Motion, and all discovery related thereto; and for such other relief as this Court deems just and appropriate.

Dated: July 24, 2025                                         Respectfully submitted,

/s/ Catherine Keller Hopkin
Catherine Keller Hopkin (28257)
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401
(443) 569-0788
chopkin@yvslaw.com

*Counsel for the Ad Hoc Committee of Consignors*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of July 2025, notice of filing the foregoing Motion to Stay Debtors' Motion For Entry of Order was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service list.

          /s/ Catherine K. Hopkin
Catherine K. Hopkin

**The following parties received CM/ECF notice of the filing:**

Jan Berlage, Esquire
(jberlage@ghsllp.com)
Counsel for Katherine Govier
Gohn, Hankey & Berlage, LLP
201 North Charles Street, Suite 2101
Baltimore, Maryland  21201

Hugh M. Bernstein, Esquire
(hugh.m.bernstein@usdoj.gov)
Office of U.S. Trustee
101 West Lombard Street, Suite 2625
Baltimore, Maryland  21201

Daniel Jack Blum, Esquire
(jack.blum@polsinelli.com)
Counsel for Basic Fun, Inc.
Polsinelli PC
1401 I Street NW, Suite 800
Washington, D.C.  20005

Laura Skowronski Bouyea, Esquire
(lsbouyea@venable.com)
Counsel for AIREIT Olive Branch DC LLC
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland  21202

Thomas K. Bredar, Esquire
(thomas.bredar@wilmerhale.com)
Counsel for Disney and Marvel
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center, 250 Greenwich St.
New York, New York  10007

Andrew Brown, Esquire
(abrown@klestadt.com)
Counsel for NECA, LLC
Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York  10036-7203

Richard L. Costella, Esquire
(rcostella@tydings.com)
Counsel for Creditors Committee
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland  21202

David W.T. Daniels, Esquire
(ddaniels@perkinscoie.com)
Counsel for The Pokemon Company
Perkins Coie LLP
700 13th St NW, Suite 600
Washington, D.C.  20005

Emily Devan, Esquire
(edevan@milesstockbridge.com)
Counsel for Titan Publishing Group
Miles & Stockbridge P.C.
100 Light Street
Baltimore, Maryland  21202

Turner Falk, Esquire
(turner.falk@saul.com)
Counsel for Debtors
Saul Ewing LLP
1500 Market Street
Center Square West, 38th Floor
Philadelphia, Pennsylvania  19102

Justin Philip Fasano, Esquire
(jfasano@mhlawyers.com)
Counsel for Dynamic Forces, Inc.
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, Maryland  22070

Ashley N. Fellona, Esquire
(ashley.fellona@saul.com)
Counsel for Debtors
Saul Ewing LLP
1001 Fleet Street, 9th Floor
Baltimore, Maryland  21202-4359

Gianfranco Finizio, Esquire
(gfinizio@lowenstein.com)
Counsel for Creditors Committee
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, New York  10020

Adam Fletcher, Esquire
(afletcher@bakerlaw.com)
Counsel for Image Comics, Inc.
Baker & Hostetler LLP
127 Public Square, Suite 2000
Cleveland, Ohio  44114-1214

Chelsea R. Frankel, Esquire
(cfrankel@lowenstein.com)
Counsel for Creditors Committee
Lowenstein Sandler LLP
1271 Avenue of the Americas
New York, New York  10020

Stephen B. Gerald, Esquire
(sgerald@tydings.com)
Counsel for Creditors Committee
Tydings & Rosenberg LLP
200 Continental Drive, Suite 401
Newark, Delaware  19713

Christopher J. Giaimo, Esquire
(christopher.giaimo@squirepb.com)
Counsel for Blue Yonder, Inc.
Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C.  20037

Jonathan A. Grasso, Esquire
(jgrasso@yvslaw.com)
Counsel for Alliance Entertainment, LLC
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland  21401

Zvi Guttman, Esquire
(zvi@zviguttman.com)
Counsel for NECA, LLC
The Law Offices of Zvi Guttman, P.A.
P. O. Box 32308
Baltimore, Maryland  21282

Jeffrey C. Hampton I, Esquire
(jeffrey.hampton@saul.com)
Counsel for Debtors
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102

Adam H. Isenberg, Esquire
(adam.isenberg@saul.com)
Counsel for Debtors
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102

Toyja E. Kelley, Sr., Esquire
(toyja.kelley@lockelord.com)
Counsel for JPMorgan Chase Bank, N.A.
Troutman Pepper Locke LLP
701 8th Street N.W., Suite 500
Washington, D.C.  20001

C. Kevin Kobbe, Esquire
(kevin.kobbe@us.dlapiper.com)
Counsel for Renegade Games, et al.
DLA Piper LLP (US)
650 South Exeter Street, Suite 1100
Baltimore, Maryland  21202

Eric George Korphage, Esquire
(korphagee@whiteandwilliams.com)
Counsel for Fright Rigs, Inc.
White and Williams, LLP
600 Washington Avenue, Suite 303
Towson, Maryland  21204

Jung Yong Lee, Esquire
(jlee@tydings.com)
Counsel for Creditors Committee
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland  21202

Gary H. Leibowitz, Esquire
(gleibowitz@coleschotz.com)
Counsel for Bandai Namco Toys
Cole Schotz P.C.
1201 Wills Street, Suite 320
Baltimore, Maryland  21231

Mark Minuti, Esquire
(mark.minuti@saul.com)
Counsel for Debtor
Saul Ewing LLP
1201 North Market Street, Suite 2300
Wilmington, Delaware  19899

Bruce S. Nathan, Esquire
(bnathan@lowenstein.com)
Counsel for Creditors Committee
Lowenstein Sandler
65 Livingston Avenue
Roseland, New Jersey  07068

Michael Papandrea, Esquire
(mpapandrea@lowenstein.com)
Counsel for Creditors Committee
Lowenstein Sandler
One Lowenstein Drive
Roseland, New Jersey  07068

Steven Gregory Polard, Esquire
(steven.polard@ropers.com)
Counsel for Bandai Namco Toys
Ropers Majeski PC
801 South Figueroa Street, Suite 2100
Los Angeles, California  90017

Scott Prince, Esquire
(sprince@bakerlaw.com)
Counsel for Image Comics, Inc.
Baker & Hostetler LLP
3900 Key Center
127 Public Square
Cleveland, Ohio  44114

Jordan Rosenfeld, Esquire
(jordan.rosenfeld@saul.com)
Counsel for Debtors
Saul Ewing LLP
1001 Fleet Street, 9th Floor
Baltimore, Maryland  21202-4359

Nikolaus F. Schandlbauer, Esquire
(nick.schandlbauer@arlaw.com)
Counsel for Action Figure Authority, Inc.
Adams and Reese LLP
20 F Street NW, Suite 500
Washington, D.C.  20001

Elizabeth Anne Scully, Esquire
(escully@bakerlaw.com)
Counsel for Image Comics, Inc.
Baker & Hostetler LLP
1050 Connecticut Ave, NW, Suite 1100
Washington, D.C.  20036

Dennis J. Shaffer, Esquire
(dshaffer@tydings.com)
Counsel for Creditors Committee
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland  21202

Indira Kavita Sharma, Esquire
(indira.sharma@troutman.com)
Counsel for JPMorgan Chase Bank, N.A.
Troutman Pepper Locke LLP
401 9th Street NW, Suite 1000
Washington, D.C.  20004

Nicholas Smargiassi, Esquire
(nicholas.smargiassi@saul.com)
Counsel for Debtors
Saul Ewing LLP
1201 North Market Street, Suite 2300
Wilmington, Delaware  19801

Brent C. Strickland, Esquire
(bstrickland@wtplaw.com)
Counsel for Universal Distribution LLC
Whiteford Taylor & Preston L.L.P.
8830 Stanford Boulevard, Suite 400
Columbia, Maryland  21045

Paige Noelle Topper, Esquire
(paige.topper@saul.com)
Counsel for Debtors
Saul Ewing LLP
1201 North Market Street, Suite 2300
Wilmington, Delaware  19801

U.S. Trustee – Baltimore
(ustpregion04.ba.ecf@usdoj.gov)
101 West Lombard Street, Suite 2625
Baltimore, Maryland  21201