UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

```
                                .
  IN RE:                        .        Chapter 11
                                .
  Diamond Comic Distributors,   .
  Inc.,                         .
                                .
            Debtor.             .        Bankruptcy #25-10308 (DER)
  ...............................................................
                                .
  Diamond Select Toys           .
  & Collectibles, LLC, et al.,  .
                                .
            Plaintiffs,         .
                                .
               vs.              .
                                .
  Sparkle Pop, LLC, et al.,     .
                                .
            Defendants.         .        Adversary #25-157 (DER)
  ...............................................................
```

Baltimore, Maryland
July 16, 2025
10:06 a.m.

BEFORE THE HONORABLE DAVID E. RICE
UNITED STATES BANKRUPTCY COURT CHIEF JUDGE

TRANSCRIPT OF:
Main Case 25-10308 -

[462]  APPLICATION FOR ADMINISTRATIVE EXPENSES. FILED BY
DYNAMIC FORCES, INC

[501]  OBJECTION ON BEHALF OF DIAMOND COMIC DISTRIBUTORS, INC.
FILED BY JORDAN ROSENFELD

Adv. 25-157 –

[26]  MOTION TO INTERVENE DEBTORS MOTION FOR INTERVENTION
PURSUANT TO FEDERAL RULE 24 AND BANKRUPTCY RULE 7024 FILED BY
DIAMOND SELECT TOYS & COLLECTIBLES, LLC, COMIC EXPORTERS,
INC., COMIC HOLDINGS, INC., DIAMOND COMIC DISTRIBUTORS, INC

[44]  OBJECTION ON BEHALF OF ALLIANCE ENTERTAINMENT HOLDING
CORPORATION, A DELAWARE CORPORATION, ALLIANCE ENTERTAINMENT,
LLC, A DELAWARE LIMITED LIABILITY COMPANY FILED BY JONATHAN A.
GRASSO

[45]  LINE SUBMITTING EXHIBIT 1 TO OBJECTION OF ALLIANCE
ENTERTAINMENT HOLDING CORPORATION AND ALLIANCE ENTERTAINMENT,
LLC TO DEBTORS MOTION FOR INTERVENTION PURSUANT TO FEDERAL
RULE 24 AND BANKRUPTCY RULE 7024 FILED BY JONATHAN A. GRASSO

[48]  RESPONSE ON BEHALF OF SPARKLE POP LLC, A DELAWARE
LIMITED LIABILITY COMPANY FILED BY PETER J ARTESE

APPEARANCES:

For The Debtor:                    Mark Minuti, Esq.
                                   Saul Ewing, LLP
                                   1201 North Market St.-Ste. 2300
                                   Wilmington, DE 19899

                                   Ashley N. Fellona, Esq.
                                   Saul Ewing, LLP
                                   1001 Fleet St.-9th Fl.
                                   Baltimore, MD 21202

For Unsecured Creditor's           Dennis J. Shaffer, Esq.
Committee:                         Tydings & Rosenberg
                                   1 E. Pratt St.-Ste. 901
                                   Baltimore, MD 21202

For Sparkle Pop, LLC, a            Peter J. Artese, Esq.
Delaware Limited Liability         DLP Piper, LLP US
Company:                           Harbor East
                                   650 S. Exeter st.-Ste. 1100
                                   Baltimore, MD 21202

For Alliance                       Corrine D. Adams, Esq.
Entertainment, LLC &               YVS Law, LLC
Alliance Entertainment             Ste. 130
Holdings, Corporation:             185 Admiral Cochrane Drive
                                   Annapolis, MD 21401

                                   Jeffrey A. Kramer, Esq.
                                   Sills Cummis & Gross
                                   The Legal Center
                                   One Riverfront Plaza
                                   Newark, NJ 07102

3

Audio Operator:              Cherita Scott

Transcribing Firm:           Writer's Cramp, Inc.
                             1027 Betty Lane
                             Ewing, NJ 08628
                             609-588-8043


**Proceedings recorded by electronic sound recording, transcript produced by transcription service.**

4

## Index

|                                 | Direct | Cross | Redirect | Recross | Further Redirect |
|---------------------------------|--------|-------|----------|---------|------------------|
| **Witnesses For The Plaintiff:** |        |       |          |         |                  |
| **Witnesses For The Defendant:** |        |       |          |         |                  |

| EXHIBITS: | | Marked | Received |
|-----------|--|--------|----------|
| D-2 | Confidentiality Agreement | 7 | |
| D-3 | Sparkle Pop's Complaint | 9 | |
| D-4 | Debtors' Answer & Counterclaim | 10 | |

SUMMATION BY:

THE COURT: Finding          26

1        THE CLERK:  All rise.  The United States Bankruptcy

2   Court for the District of Maryland is now in session, the

3   Honorable Chief Judge David E. Rice presiding.  Please be

4   seated and come to order.  On the 10:00 o'clock Docket,

5   calling the case of Diamond Comic Distributors, Inc., Case

6   #25-10308, Adversary #25-157.  Counsels, please identify

7   yourselves and your clients for the record.

8        MR. MINUTI:  Good morning, Your Honor.  Mark Minuti

9   from Saul Ewing.  I'm here on behalf of the Debtor.  With me

10  today is my colleague, Ashley Fellona.  Good morning.

11       THE COURT:  Good morning to both of you.

12       MR. ARTESE:  Good morning, Your Honor.  P.J. Artese

13  of DLA Piper on behalf of Plaintiff, Sparkle Pop LLC.

14       THE COURT:  Good morning.

15       MS. ADAMS:  Good morning, Your Honor.  Corinne Adams

16  from YVS Law.  With me, I have Jeffrey Kraemer from Sills

17  Cummis & Gross, and we're here on behalf of Alliance

18  Entertainment Holdings Corporation and Alliance Entertainment

19  LLC.  Good morning.

20       THE COURT:  Good morning to both of you.

21       MR. SHAFFER:  Good morning, Your Honor.  Dennis

22  Shaffer of Tydings & Rosenberg on behalf of the Official

23  Committee of Unsecured Creditors.

24       THE COURT:  Good morning, Mr. Shaffer.  Before you

25  sit down --

6

```
 1          MR. SHAFFER:  Yes, Sir.
 2          THE COURT:  -- I reviewed what was, I believe, on
 3  the Docket.  I didn't see the Committee taking any position on
 4  this matter today.  Is the Committee taking a position?
 5          MR. SHAFFER:  No, we are not, Your Honor.
 6          THE COURT:  Okay.  Well, we're here on the Debtors'
 7  Motion to Intervene.  Mr. Minuti, I'll turn first to you.  Go
 8  ahead, sir.
 9          MR. MINUTI:  Thank you, Your Honor.  Again, for the
10  record, Mark Minuti from Saul Ewing on behalf of the Debtors.
11  Your Honor, I did provide to your clerk a binder of some
12  exhibits I'm going to refer to today.  I guess you --
13          THE COURT:  I have it.
14          MR. MINUTI:  Very well, Your Honor.  I don't believe
15  there are any objection to those exhibits, Your Honor.  And
16  they're all documents that have already been filed and been
17  part of the public record.  So may I proceed, Your Honor?
18          THE COURT:  Yes, go ahead.
19          MR. MINUTI:  Thank you.  Pursuant to Court-approved
20  bidding procedures, the Debtors engaged in a marketing process
21  for the sale of substantially all of their assets.  By Orders
22  dated May 1, the Court approved the Debtors' sale of assets to
23  two separate bidders, one of which was an entity called
24  Sparkle Pop LLC.  That Order appears at Docket #407.  The sale
25  of Sparkle Pop closed on May 16, and on May 15, the parties
```

1    entered into a transition services agreement.

2         As the Court is aware, Alliance Entertainment LLC was a

3    Court-approved purchaser of the same assets.  In the Debtors'

4    view, Alliance breached its agreement with the Debtors.  They

5    did not close on their transaction, and those issues are the

6    subject of Adversary Proceeding #25-112.  In connection with

7    its participation in the Court-approved sale process for the

8    Debtors' assets, Alliance had signed a non-disclosure

9    agreement or confidentiality agreement on October 18, 2024.

10   And that NDA, Your Honor, appears as Exhibit-#2 in the binder

11   that I've handed to the Court.

12        (Debtors' Exhibit-2 previously marked for identification)

13             MR. MINUTI:  As the Court would expect, Sections 1

14   and 2 of that NDA preclude Alliance from using confidential

15   information defined in that agreement as evaluation materials

16   for any purpose other than evaluating a potential acquisition

17   of the Debtors' assets.  Section 5 of the NDA provides that

18   for a period of two years from the date hereof, you shall not

19   solicit for employment or directly or indirectly hire any

20   employee of the company or any of its subsidiaries with whom

21   you have had contact during the period of your investigation

22   of the company or its subsidiaries or whose identity you

23   learned during such period.

24        There are two exceptions to this prohibition built into

25   the NDA.  The foregoing provision will not prevent you from

8

1    soliciting or employing any person who, one, responds to a

2    general solicitation of employment through an advertisement

3    not specifically targeted at the company or its employees, or

4    two, has not been an employee or an independent contractor of

5    the company for at least 180 days prior to the commencement of

6    employment or service discussed between you -- discussions

7    between you and such employees or independent contractors.

8        Pursuant to Section 10 of the NDA, Alliance agreed not to

9    hire the Debtors' employees for two years unless one of those

10   exceptions applied.  And as to trade secrets, Alliance's

11   obligation remains for as long as the information remains a

12   trade secret.  Below Section 18, Your Honor, the NDA provides

13   that the agreement is for the benefit of the company, that

14   would be the Debtor, and Raymond James, their financial

15   adviser -- excuse me, their investment banker, and their

16   respective successors and assigns.

17       Now, it is undisputed, Your Honor, that in May of 2025,

18   Alliance hired at least six of the Debtors' employees.  So on

19   June 9, 2025, Sparkle Pop filed the Adversary Proceeding

20   that's before you today -- that's Adversary Proceeding 25-157

21   -- against both Alliance Hold Co. or the holding company, Your

22   Honor.  They were the ones that originally signed the NDA as

23   well as Alliance Entertainment.

24       Sparkle Pop's complaint, Your Honor, is included in the

25   exhibit binder that I've handed you at Exhibit-3.

9

1          (Debtors' Exhibit-3 previously marked for identification)

2              MR. MINUTI:  And beginning at Paragraph 14, the

3      complaint goes into great detail regarding the NDA and its

4      provisions.  But to the Debtors' surprise, Your Honor, Sparkle

5      Pop did not assert that it was a successor or a third-party

6      beneficiary of the NDA confidentiality agreement.  Instead,

7      Sparkle Pop asserted related but direct claims for

8      misappropriation of trade secrets and rating of the Debtors'

9      employees.

10          What got to the Debtors' attention, Your Honor, was at

11     Paragraph 76 and 77 of Sparkle Pop's complaint -- that appears

12     on Page 15 of 17 -- in which Sparkle Pop asserts that

13     Alliance's actions have resulted in the Debtors reaching both

14     the asset purchase agreement with Sparkle Pop and the

15     transition services agreement.

16          So on June 16, Your Honor, the Debtor filed the present

17     Motion to Intervene.  That matter was scheduled for today by

18     Docket entry 38 and 39.  Objections were due on July 11th, and

19     there were two responses filed.  For its part, Sparkle Pop

20     filed a response, essentially agreeing that the Debtors could

21     or should intervene in the Adversary Proceeding.  That appears

22     at Docket #48.  And Alliance has filed in opposition to the

23     intervention.  That appears at Docket #44.

24          Meanwhile, Your Honor, on June 30th, the Debtors filed

25     their answer and counterclaim in the Alliance litigation.  A

1    copy of the Debtors' answer and counterclaim is included in

2    the Debtors' exhibit binder as Exhibit-4.

3        (Debtors' Exhibit-4 previously marked for identification)

4            MR. MINUTI:  And that counterclaim, Your Honor,

5    includes a counterclaim for breach of the confidentiality

6    agreement beginning at Paragraph -- I'm sorry.  It's beginning

7    at Page 38 of 51 of the -- of that counterclaim, and it's

8    entirely based upon the hiring of the same employees.

9        So by the present motion before Your Honor, the Debtors

10   seek to intervene in this Adversary Proceeding pursuant to

11   Federal Rule 24, made applicable herein by Bankruptcy Rule

12   7024.  Rule 24 provides for both mandatory and permissive

13   intervention, as I'm sure the Court is aware.  Under Section -

14   - or Rule 24(a), the Court must permit anyone to intervene who

15   claims an interest relating to the property or transaction

16   which is the subject of the action and is so situated that

17   disposing of the action may, as a practical matter, impair, or

18   impede the movement's ability to protect that interest unless

19   the existing parties adequately represent that interest.

20       Case law holds that intervention under 24(a)(2) is to be

21   interpreted broadly.  Courts determining whether a party

22   should be allowed to intervene or not typically look to four

23   different factors, that the intervener's motion is timely,

24   that its claim or defense in the main action have a common

25   question of law or fact, three, that there exists an

1    independent ground for subject matter jurisdiction, and

2    finally, number four, that intervention will not unduly delay

3    or prejudice the adjudication of the rights of the original

4    parties.  Here, Your Honor, there's no question that the

5    Motion to Intervene was timely.  In fact, it was filed before

6    any response was filed on behalf of Alliance, and Alliance

7    does not argue that it was untimely.

8         Is there a common question of law or fact between the

9    allegations of Sparkle Pop's complaint and the Debtors'

10   interest?  Well, this is conceded, Your Honor, at Paragraph 8

11   of Alliance's objection where, when describing the Debtors'

12   counterclaim in the Alliance litigation, Alliance states, and

13   I quote, "The Debtor even asserted a counterclaim against

14   Alliance seeking injunctive relief for the same conduct

15   alleged in Sparkle Pop's complaint" {close quote}.

16        In its complaint, Sparkle Pop alleges that Alliance

17   misappropriated trade secrets.  If it did so, Your Honor, the

18   Debtors may very well have a claim under the NDA and

19   confidentiality agreement as well.  There is no question, as I

20   said at the outset, Your Honor, that Alliance did, in fact,

21   hire the Debtors' employees.  The issue, of course, is going

22   to be whether one of the two exceptions I highlighted applies.

23   How did the employees learn about -- how did Alliance learn

24   about these employees, and how did these employees come to be

25   hired?

1    These issues no doubt will be explored in Sparkle Pop's

2    Adversary Proceeding.  Those issues overlap with the same

3    issues in the Debtors' counterclaim with respect to Alliance.

4    Further, the Debtors clearly have an interest in Sparkle Pop's

5    litigation to the extent that facts or evidence will be

6    developed in that matter to support the allegations in

7    Paragraph 76 and 77 of Sparkle Pop's complaint that the Debtor

8    somehow breached their asset purchase agreement with Sparkle

9    Pop or the transition services agreement with Sparkle Pop.

10    It should be clear, Your Honor, that none of the parties

11    will adequately represent the Debtors' interest.  For its

12    part, Alliance, Your Honor, is adverse to the Debtor already

13    in its litigation, and Sparkle Pop, based on the allegations I

14    mentioned just a moment ago, believes that the Debtor is in

15    breach of its agreements with them.  So neither side is going

16    to adequately represent the Debtors' interests here.

17    Under the circumstances of Sparkle Pop's Adversary

18    Proceeding, the Debtors' -- we believe the Debtors'

19    intervention is appropriate under Rule 24(a) for the reasons

20    I've already indicated.  Your Honor, alternatively, the

21    Debtors move for permissive intervention under 24(b).  Under

22    Federal Rule 24(b), (indiscern.) permissive intervention, it

23    provides that on timely a motion, the Court may permit anyone

24    to intervene who has a claim or defense that shares with the

25    main action a common question of law or fact.  As I've already

1   indicated, Your Honor, there are common questions of fact here
2   that are going to be explored in Sparkle Pop's litigation.
3       When courts look at permissive intervention, they
4   literally look at almost the same four factors that I've
5   already mentioned, Your Honor.  Is it timely?  Is there a
6   common question of fact?  For all the reasons I already
7   mentioned, Your Honor, we believe we satisfy either permissive
8   intervention or mandatory intervention.
9       In its objection, Your Honor, Alliance argues at
10  Paragraph 12 that the Debtors do not have a {quote}
11  "cognizable interest" {close quote} in the Sparkle Pop
12  Adversary Proceedings, suggesting in Paragraph 14 that unless
13  there is direct allegations and relief sought against the
14  Debtor, then intervention is inappropriate.  But they cited no
15  case for that proposition, Your Honor.
16      And I would submit that that proposition is incorrect
17  because, obviously, if the Debtors' -- if direct claims were
18  being made against the Debtor in the Sparkle Pop litigation,
19  they would be a party, and there would be no reason to
20  intervene.  I submit that intervention is designed for this
21  exact situation where there are common questions of fact at
22  issue in the litigation, the resolution of which could impact
23  the Debtors' own claims and defenses.
24      Next, Your Honor, Alliance suggests that it will suffer
25  prejudice as it will be forced to defend the same claims in

1   two separate lawsuits.  But they've made no showing, Your

2   Honor, of delay or prejudice.  And this is not true for

3   several reasons, Your Honor.  First, I would suspect, Your

4   Honor, that the parties are going to have going to cooperate

5   with regard to discovery, for example, so that there's no

6   duplication of effort here.  In fact, that's a large part of

7   why I think it makes sense for there to be intervention here.

8          Then why -- so -- you know, so why should we intervene,

9   Your Honor?  Obviously, if there are going to be depositions

10  of employees, you'd want those depositions to occur once.  If

11  there's going to be factual inquiry into how these employees

12  came to be employed by Alliance, you'd want that to happen

13  once.  And the Debtor wants to be there, Your Honor.  Sitting

14  here today, it's hard for me to predict how active the Debtor

15  will be if Your Honor grants this motion, how active we're

16  going to be in the Sparkle Pop litigation.

17         But we won't know that, Your Honor, until the case is

18  allowed to proceed, and we see what discovery is going to take

19  place, what pleadings or motion practice may occur.  And,

20  obviously, if something happens in those events, the Debtor

21  should be able to participate to protect its claims, Your

22  Honor, as well as its defenses.  So for all those reasons, we

23  believe Your Honor should approve intervention.  I'm happy to

24  answer any questions the Court may have of me.

25             THE COURT:  All right, thank you.  Why isn't the

1  counterclaim in the other Adversary Proceeding to which you

2  referred sufficient to protect the Debtors' interests here

3  without intervention in this case?  If you're making the same

4  claim there, why doesn't that protect the Debtors' interests?

5          MR. MINUTI:  Well, because for -- a simple example,

6  Your Honor.  There may be a deposition that may occur in the

7  Sparkle Pop litigation.  If we're not allowed to participate

8  in that because we're not a party, evidence could be developed

9  at that deposition that may deal with how these employees got

10 hired.  It may deal with Sparkle Pop's allegations that,

11 somehow, the Debtors breached the TSA or their asset purchase

12 agreement.  If we're not there to participate, and there's no

13 guarantee we will be if we're not a party to that litigation,

14 then that evidence could be discovered without my ability, for

15 example, to ask questions, to cross examine somebody based on

16 a document, all those sorts of things.

17         And so, you know, again, my view would be we would want

18 to coordinate those things so one deposition would take place

19 that could apply to both.  But without intervention, Your

20 Honor, there's a chance that we'll be shut out from

21 participating.  In addition, Your Honor, just practical things

22 like scheduling, like protective Orders, confidentiality

23 agreements.  If the Debtor is not going to be a party to that

24 in the Sparkle Pop litigation, then arguably, we wouldn't have

25 access to that type of information, and we'd wind up

1    duplicating those efforts over in the Alliance litigation.

2        So, again, Your Honor -- and look, here's what I would

3    say.  If this results in duplication of efforts or anybody

4    thinks it's going to result in duplication of efforts, we try

5    to work it out.  If we can't work it out, you're -- you know,

6    somebody's going to come to Your Honor and say, "Look, we

7    should only have to take this deposition once.  We should only

8    have to do this once.  Let's coordinate."  And I can't imagine

9    a reason why that wouldn't happen.

10        So, you know, again, I mean, as I sit here, I don't

11    really anticipate that we're going to be super active in this

12    Sparkle Pop litigation, but again, I won't know that until

13    that case is allowed to develop.

14            THE COURT:  All right, thank you.

15            MR. MINUTI:  Thank you, Your Honor.

16            THE COURT:  Mr. Artese, I believe your client is

17    supporting the motion.  Do you wish to be heard?

18            MR. ARTESE:  Thank you, Your Honor.  Your

19    understanding is correct.  Sparkle Pop does support the

20    motion.  We believe it's timely and will promote judicial

21    efficiency.  And unless the Court has any further questions,

22    that's my client's position.

23            THE COURT:  All right, thank you.  No, I don't have

24    any questions for you.  All right.  Who's speaking for

25    Alliance?

1          MR. KRAEMER:  Good morning, Your Honor.  Jeffrey

2   Kramer of Sills Cummis & Gross, for the record, on behalf of

3   Alliance Entertainment Holding {sic} Corporation and Alliance

4   Entertainment LLC, who I'll refer to collectively as Alliance

5   for simplicity.  With me is our Maryland counsel, Corrine

6   Adams of YVS Law.

7          Your Honor, Alliance filed its objection to the Motion to

8   Intervene on July 7th at Docket #44.  Alliance in this matter

9   has also filed a Motion to Dismiss this Adversary Proceeding.

10  They filed it -- we filed that on July 10, and we've just set

11  the hearing date for that on August 18th at 10:00 a.m.

12         Your Honor, by way of background, as Your Honor knows,

13  this matter rises out of the auction and the sale of the

14  Debtors' assets.  Alliance has filed a separate Adversary

15  Proceeding against the Debtors and other parties with respect

16  to the sale of those assets and the issues that arose

17  therefrom.  That's currently pending before Your Honor at

18  Adversary Proceeding 25-112.

19         Some of the complaints -- I'm sorry.  Some of the claims

20  made in that matter concern fraudulent misrepresentations

21  during the sale process regarding the Debtors' relationship

22  with its largest vendor.  Debtors have filed an answer and

23  counterclaim in that Adversary Proceeding at Docket 18, which

24  is included in the documents provided by Mr. Minuti.  In our

25  counterclaim, that Debtors assert the very same claims that

1    they seek to intervene to pursue -- apparently, to pursue in

2    this Adversary Proceeding.

3        Your Honor, if Your Honor will remember, during the TRO

4    hearing on June 17th, Mr. Minuti said that, you know, the

5    Debtors were intending to file the counterclaims at a later

6    date.  Again, those claims were filed.  Your Honor, in those

7    counterclaims, in Section -- in Paragraphs 107 and 143,

8    Debtors maintain that Sparkle Pop has alleged that the Debtor

9    -- that Debtor DCD is in breach of the Sparkle Pop APA and the

10   related transition services agreement.  As a result, Debtors

11   allege of Alliance's breach of the confidentiality agreement

12   in the final APA by rating the Debtors' employees.  The claims

13   that the Debtors will be forced to spend time, money, and

14   effort responding to Sparkle Pop's allegations.

15       However, Your Honor, in that counterclaim, Debtors also

16   raised other arguments and claims for damages regarding the

17   alleged breach of the confidentiality agreement and the final

18   APA that are not at issue in this Adversary Proceeding.  The

19   Debtors allege that Alliance's breach will negatively impact

20   the Debtors ability to sell inventory not sold to universal or

21   Sparkle Pop.  The Debtors also allege that the breaches may

22   impact the Debtors' ability to collect full consideration that

23   was provided for in the Sparkle Pop APA.

24       Your Honor, basically, what the Debtor is looking for is

25   to have two bites at the same apple here.  Your Honor, the

1    Defendants respectively request that the Court deny the

2    Plaintiff's Motion to Intervene because it does not meet the

3    standards for intervention as of right -- under Rule 24(a)(2)

4    or for permissive intervention under Rule 24(b).  Mr. Minuti

5    set forth the different standards for intervention here.

6         And with respect to intervention as of right, Debtors do

7    not meet the first standard, which is they do not have an

8    interest in the subject matter of this Adversary Proceeding.

9    The sole basis that they alleged in their -- in the motion --

10        THE COURT:  I mean, how can that be if they're --

11   the Plaintiff here is alleging that your client's conduct

12   caused the Debtors to breach their contract with Sparkle Pop?

13        MR. KRAEMER:  They do, but they plead that as a

14   predicate fact for their claims for tortious interference,

15   Your Honor.  In Paragraphs 76 and 77, they say that the

16   actions under the conduct of Alliance caused the Debtors to

17   breach the Sparkle Pop APA.  However, they don't bring any

18   claims against the Debtors in this.  They don't seek any

19   recovery from the Debtors on that.

20        For tortious interference, one of the things that has to

21   be pled is that there was a third party, that there was a

22   contract with that was interfered with.  And that's solely the

23   only place where they're mentioned -- I'm sorry.  That's the

24   only place where any allegation is made with respect to the

25   Debtors' breach of the APA, the Sparkle Pop APA, Your Honor.

1   They also don't seek any recovery from the Debtors in the

2   (indiscern.) for relief in the --

3            THE COURT:  Well, they're not parties.

4            MR. KRAEMER:  Right.

5            THE COURT:  They wouldn't.

6            MR. KRAEMER:  Yes, of course, Your Honor.  Instead,

7   the only -- the breach is discussed as an essential element of

8   the tortious interference claim against Alliance.  The

9   Debtors, you know, argue that given Sparkle Pop's allegations

10  in the motion the Debtors alleged, given the -- Sparkle Pop's

11  allegations regarding the outcome of the Adversary -- or I'm

12  sorry, Your Honor.  The Debtors make this -- make the claim

13  that given the allegations of Sparkle Pop, that the outcome of

14  the Adversary Proceeding could impact rights and claims by and

15  between the Debtors and Sparkle Pop, including obligations on

16  the Sparkle Pop APA.

17       But there's no discussion of what rights or claims bind

18  between Sparkle Pop and Debtors could be impacted.  Debtors

19  don't discuss how the outcome of the APA could impact those

20  rights and claims.  The Debtors are not Defendants.  There's

21  no claims that are brought against them in the -- in this

22  Adversary Proceeding.  They will not be bound by a judgment in

23  this Adversary Proceeding with respect to Sparkle Pop.

24       It's not clear how intervening as a Plaintiff against

25  Alliance will allow them to protect their claims with respect

1    to Sparkle Pop.  Other than Mr. Minuti discusses discovery

2    issues here that they could, you know -- the Debtors would

3    like to be a party to those discovery proceedings in order to

4    protect their interests or to develop facts that they may be

5    able to use in their other -- in the other Adversary

6    Proceeding with Alliance.

7         But, Your Honor, you know, while the Debtors say that

8    there's no prejudice to the Debtors -- I'm sorry, to Alliance

9    here, there's substantial potential prejudice to Alliance.

10   They're going to have to defend the same claims from the same

11   party in different Adversary Proceedings.  They run the risk

12   of inconsistent judgments between those.  Also, Alliance will

13   be forced -- I'm sorry.

14        You know, this matter may be unduly delayed because the

15   Debtors bring claims not related to Sparkle Pop in their

16   counterclaims.  Are those claims going to be brought in this

17   Adversary Proceeding as well?  These -- you know, the Debtors

18   alleged in their counterclaim that it's going to affect their

19   ability to sell other assets not related to Sparkle Pop that,

20   you know, they're not -- may not be able to get full

21   consideration here, Your Honor.  We submit that that's only

22   going to confuse and prejudice -- I -- it's only going to

23   confuse this matter and unduly delay it.

24        Your Honor, the Debtors -- I'm sorry, Alliance has filed

25   a Motion to Dismiss the Sparkle Pop complaint, including the

1    claims that are included -- that Paragraph 76 and 77 are part

2    of.  Your Honor, you know, those claims may be dismissed, and

3    there would be no basis for intervention by the Debtors here.

4         Your Honor, our position is that the Debtors are not

5    impacted by this Adversary Proceeding because anything that

6    occurs in this Adversary Proceeding will not bind them.  They

7    may want to sit in on depositions, but that is not -- we

8    submit that that is not a sufficient standard -- or a

9    sufficient interest to require intervention in this matter and

10   that it should not be permissively granted either because,

11   again, of the potential impact -- the potential prejudice to

12   Alliance.  Your Honor has any questions?

13        THE COURT:  Well, if the violation of the non-

14   disclosure agreement by -- alleged violation of by your client

15   as litigated in this case without the Debtors' presence and

16   the Court determines that your client did not violate the

17   agreement, doesn't that impact that issue in the other

18   Adversary Proceeding?

19        MR. KRAEMER:  Your Honor, the Debtors will not be

20   bound by that.  They are not -- if they are not a party to

21   this matter.

22        THE COURT:  So doesn't that -- okay.  So that

23   creates a possibility that the Court could hold in this case

24   somehow that there was no violation of the NDA but in the

25   other case that there was based upon the same conduct and

1  facts and circumstances.  How does that make any sense?

2          MR. KRAEMER:  Your Honor, in this case, the claims

3  with respect to -- by Sparkle Pop, against my client, are

4  based on tortious interference here.

5          THE COURT:  But isn't the violation of the NDA at

6  the heart of what they're alleging?

7          MR. KRAEMER:  Of what Sparkle Pop is alleging, Your

8  Honor?

9          THE COURT:  Yes.

10          MR. KRAEMER:  Yes, it is.

11          THE COURT:  And it's also an issue in the other

12  Adversary Proceeding.  Was the NDA violated?

13          MR. KRAEMER:  It is, Your Honor, but the Debtor has

14  the opportunity and is, in fact, pursuing claims with respect

15  to that matter in the other Adversary Proceeding.

16          THE COURT:  At the end of the day, is this Court

17  going to -- is a court, any court, would any court have these

18  two Adversary Proceedings conduct -- you know, have them

19  proceed to trial, assuming he gets a trial, and conduct trials

20  and with the possibility that the Court would reach one

21  conclusion in one case and an opposite conclusion in the

22  other?  I just don't think that sounds like anything that a

23  rational court would do.  It seems like they have to be

24  decided together whether it's one way or the other.

25          MR. KRAEMER:  Your Honor --

1          THE COURT:  I mean, if one -- if in both cases the

2     question is whether the light was red or green, why wouldn't

3     the Court handle these cases in a way so at least the ruling

4     in the two cases is consistent on whether the light was red or

5     green?  It had to be one or the other.

6          MR. KRAEMER:  Yeah.  Yes, Your Honor.  But our

7     position is that those matters should be handled in the

8     Adversary Proceeding between Alliance and the Debtors as

9     opposed to the separate matter involving Sparkle Pop that the

10    Debtors are not a party to or --

11         THE COURT:  Okay.  Anything else?

12         MR. KRAEMER:  No.  Thank you, Your Honor.

13         THE COURT:  All right, thank you.  Yes?

14         MR. KRAEMER:  Your Honor, there is one further --

15         THE COURT:  Go ahead.

16         MR. KRAEMER:  -- one further thing.  Your Honor, if

17    Your Honor is inclined -- so inclined, we would ask the Court

18    to delay any decision on this matter until after the hearing

19    on the Motion to Dismiss the Sparkle Pop complaint.

20         THE COURT:  Okay.  I understand.

21         MR. KRAEMER:  Thank you.

22         THE COURT:  Mr. Minuti, you get the last word.

23         MR. MINUTI:  Your Honor, I was going to say nothing

24    further until that last point, Your Honor.  I would ask that

25    the Court not delay intervention.  It is quite possible, Your

1   Honor, that something may occur in the briefing on the Motion

2   to Dismiss that would warrant the Debtor weighing in.

3        I read the Motion to Dismiss.  My initial read, Your

4   Honor, was "no."  But again, based on what might develop,

5   there may be something that the Debtors want to add in

6   connection with that.  I don't see any reason for there to be

7   a delay.  Obviously, if Your Honor ultimately grants the

8   Motion to Dismiss, this case goes away.

9        But the whole point here, Your Honor, is for the Debtor

10  to be able to participate, to protect its interest if it has

11  to.  And there's the possibility, maybe thin or slim, but

12  there's certainly the possibility that in the context of the

13  Motion to Dismiss, something could come up.  So we would ask

14  that you not delay.  Thank you, Your Honor.

15           THE COURT:  All right.  Mr. Shaffer, you haven't had

16  a chance to say anything.  If you want to, I'd be happy to

17  hear from you.

18           MR. SHAFFER:  Your Honor, thank you.  I do

19  appreciate the opportunity, but as I noted earlier, the

20  Committee takes no position on this motion.  Thank you.

21           THE COURT:  All right, thank you.  I'm going to take

22  a short recess.

23           THE CLERK:  All rise.  This Court is in recess.

24      (Recess)

25           THE CLERK:  Please remain seated and come to order.

1    The United States Bankruptcy Court for the District of

2    Maryland now resumes its regular session.

3         THE COURT:  Hello again, everyone.  During the

4    recess, I've considered this matter, and I'm prepared to make

5    a ruling on the question before the Court, which is the

6    Debtors' Motion to Intervene in this Adversary Proceeding.  I

7    thank counsel for their attendance today and the arguments.  I

8    always find that oral arguments help the Court focus its

9    attention on what the real issue are.

10        I'm going to rule on the motion and not delay the ruling.

11   That request is denied.  The motion will be granted.  I don't

12   think I really see -- need to say much more than I agree with

13   the position that the Debtors take as to why there is grounds

14   to permit intervention under Rule 24(a) as incorporated here

15   by the Federal Bankruptcy Rule 7024.

16        The -- I think that the Debtor succinctly stated in its

17   motion at Paragraphs 21 through Paragraph 25 grounds for

18   intervention under Rule 24(a), and Mr. Minuti has simply

19   elaborated on that argument here today, and I agree with the

20   position the Debtor takes on the Rule 24(a) application here,

21   and I'm going to grant the motion.  I also agree that in any

22   and all events, there's grounds here to permit permissive

23   intervention under Rule 24(b).  So under either 24(a) or

24   24(b), the motion is granted.  Mr. Minuti, if you will prepare

25   an Order consistent with my ruling, I will consider it

27

1    promptly in chambers.  Thank you.

2              MR. MINUTI:  We will, Your Honor.  Thank you.

3              THE CLERK:  All rise.  This Court is adjourned.

4         (Court adjourned)

5

6                        CERTIFICATION
7    I, Lewis Parham, certify that the foregoing is a correct
8    transcript from the electronic sound recording of the
9    proceedings in the above-entitled matter.
10
11
12    *Lewis Parham*                    7/17/25
13
14    _____        _____
15    Signature of Transcriber                Date