# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
# (Baltimore Division)

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

### DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT VOTES THERON

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move (this "Motion") as follows:

### Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), extending the deadline by which the Debtors have the exclusive right to (i) file a chapter 11 plan by 90 days through and including October 29, 2025 (the "Exclusive Filing Period"), and (ii) solicit votes thereon by 90 days through and including December 29, 2025 (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods"), without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods. Absent the relief requested herein, the Exclusive Filing Period expires on July 31, 2025, and the Exclusive Solicitation Period expires on September 29, 2025.

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

55899177.3

**Jurisdiction and Venue**

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for relief is section 1121 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and local rule 9006-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Bankruptcy Rules").

**Background**

4. On January 14, 2025 (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are maintaining their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On January 29, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

5. A description of the Debtors' business as of the Petition Date and the reasons for commencing these cases are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petitions and First Day Relief* [D.I. 20] (the "First Day Declaration").

6. As further detailed below, since the Petition Date, the Debtors have devoted significant resources and efforts to maximizing the value of their estates and focusing on certain pressing and essential matters such as (i) procuring debtor-in-possession financing from JPMorgan Chase Bank, N.A. (the "DIP Lender") and negotiating certain amendments to the credit agreement

for such debtor-in-possession financing, (ii) establishing bidding procedures and conducting a robust sale process that resulted in multiple successful sales, (iii) obtaining Court approval of the sales of substantially all of the Debtors' assets and coordinating with the purchasers to transition the Debtors' operations to the purchasers pursuant to transition services agreements, (iv) negotiating the Debtors' Key Employee Incentive Plan and Key Employee Retention Plan with the Committee and obtaining Court approval of both plans, (v) negotiating the sale of, and filing a related sale motion for, the Debtors' shares in non-debtor affiliate Diamond Comic Distributors, a corporation organized under the laws of England and Wales ("Diamond UK"), (vi) filing a motion for approval of sale procedures, and the subsequent sales, of the Debtors' consigned inventory, (vii) preparing and filing the Debtors' schedules of assets and liabilities and statements of financial affairs, (viii) responding to various due diligence requests from key constituents and communicating with the Debtors' creditors, (ix) meeting the general requirements under the chapter 11 process, (x) addressing various vendor and vendor contract issues, and (xi) establishing various bar dates and obtaining Court approval of a bar date motion.

7. As stated in the First Day Declaration, the Debtors' goal in these chapter 11 cases was to conduct a value-maximizing sale process of all or substantially all the Debtors' assets. To effectuate that goal, the Debtors prepared and obtained court approval of bidding procedures that provided for a sale process on a timeline consistent with the Debtors' DIP financing milestones. The Debtors conducted an extensive post-petition marketing process that culminated in the Court entering an order (the "AENT Sale Order") approving, among other things, the sale of all or substantially all the Debtors' assets to Alliance Entertainment, LLC ("AENT").

8. After the Court entered the AENT Sale Order, AENT advised the Debtors that it was terminating its asset purchase agreement with the Debtors, forcing the Debtors to promptly

3

pivot to finalizing two asset purchase agreements with the back-up bidders—Universal Distribution, LLC ("Universal"), and Sparkle Pop, LLC ("Sparkle Pop"). To that end, on April 29, 2025, the Debtors filed a motion on an emergency basis for Court approval of the sale of substantially all the Debtors' assets to Universal and Sparkle Pop. The Court approved the sale to Universal and Sparkle Pop pursuant to orders entered on May 1, 2025 [D.I. 407 & 408] (together, the "Sale Orders"). Following extensive efforts to work with Universal and Sparkle Pop both sales closed in May 2025. *See* D.I. 499 and 500.

9. The sale process would not have been possible without the Debtors' key employees. Recognizing that the employees would play a critical part in the postpetition sale process, the Debtors prepared and filed the *Debtors' Motion for Entry of an Order Approving Key Employee Incentive Program and Key Employee Retention Program* [D.I. 196] (the "KEIP/KERP Motion"). After filing the KEIP/KERP Motion, the Debtors engaged in extensive negotiations with the Committee that ultimately resulted in a revised order and Committee support for the proposed KEIP and KERP. The Debtors also engaged in discussions with the Office of the United States Trustee (the "U.S. Trustee") to address concerns raised in the U.S. Trustee's objection to the KEIP/KERP Motion. Following a contested hearing, on April 3, 2025, the Court entered an order granting the relief requested in the KEIP/KERP Motion [D.I. 304].

10. On May 13, 2025, prior to the closing of the sales to Universal and Sparkle Pop, the Debtors filed their first motion to extend their exclusive periods to file and solicit a plan (the "First Exclusivity Extension Motion"). *See* D.I. 443. The Debtors agreed to a revised proposed form of order extending the Exclusive Periods to the current deadlines of July 31, 2025, and September 29, 2025, following informal comments from the Committee. *See* D.I. 512 & 513.

4

11. Since the filing of the First Exclusivity Extension Motion, the Debtors have been focused on transitioning their business operations to Universal and Sparkle Pop and monetizing the Debtors' remaining assets for the benefit of all creditors. In particular, the Debtors spent significant time negotiating the transition services agreements with Universal and Sparkle Pop, and then fulfilling the Debtors' obligations under the agreements to ensure a smooth and efficient transition of the business operations.

12. The Debtors also have focused on monetizing their remaining assets - most notably, the incentive payments due to the Debtors pursuant to the Sparkle Pop asset purchase agreement, the Debtors' consigned inventory and the Debtors' shares in Diamond UK. To that end, on June 25, 2025, the Debtors filed the motion for approval of (i) procedures for the sale or other disposition of the Debtors' consigned inventory and (ii) the ultimate sale(s) or other disposition of the consigned inventory free and clear of all liens, claims, interests and encumbrances [D.I. 531] (the "Consignment Sale Motion"). The Debtors have been engaging with numerous consignors regarding the consignors' respective objections to the Consignment Sale Motion and informal information requests regarding the consigned inventory at issue.

13. On July 23, 2025, the Debtors filed a motion to approve the sale of the shares that Debtors Comic Exporters, Inc. and Comic Holdings Inc. hold in non-debtor affiliate Diamond UK to Diamond Distributors UK, Ltd. (the "Purchaser"), free and clear of all liens, claims, interests and encumbrances [D.I. 638] (the "Diamond UK Sale Motion"). The Debtors engaged in extensive, arm's-length negotiations with the Purchaser to ensure that the transaction contemplated in the Diamond UK Sale Motion maximized the value of Diamond UK for the benefit of the Debtors' estates and their creditors.

14. Furthermore, the Debtors remain focused on litigating their claims against AENT as a result of AENT's termination of its asset purchase agreement with the Debtors. The Debtors filed a motion to dismiss and counterclaims in the adversary proceeding commenced by AENT. *See* Adv. Proc. No. 25-00112 (DER), Adv. D.I. 18. The Debtors, along with the other defendants in the AENT adversary proceeding, have stipulated to extending AENT's deadline to respond to the motion to dismiss and counterclaims to August 18, 2025.

## Basis for Relief Requested

15. Section 1121(b) of the Bankruptcy Code provides that "only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter." 11 U.S.C. § 1121(b). Sections 1121(c)(2) and (3) further provide, in relevant part, that a party in interest may file a plan if and only if "the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter" or "the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief." *See* 11 U.S.C. § 1121(c)(2)–(3).

16. Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusive periods to file and solicit a plan "for cause." Specifically, section 1121(d)(1) provides that "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d)(1).

**I.  A Court May Extend the Exclusive Periods for "Cause"**

17. The term "cause" is not defined in the Bankruptcy Code; rather, courts have broad discretion to determine "cause" based on the facts and circumstances of each case. *See First Am. Bank of N.Y. v. Southwest Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986) (stating that section 1121(d)(1) provided the bankruptcy court with flexibility to increase the period of

6

55899177.3

exclusivity in its discretion); *see also In re Burns and Roe Enters., Inc.*, No 00-41610 (RG), 2005 WL 6289213, at *3–4 (D.N.J. Nov. 2, 2005) (discussing when "cause" may warrant extension of exclusivity).

18. Legislative history also makes clear that the term "cause" is intended to be a flexible standard aimed at balancing the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595 at 231–32 (1978). The purpose of exclusivity is to "promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated." *See* H.R. Rep. No. 95-595 at 36 (1994); *Burns and Roe*, 2005 WL 6289213, at *4. Accordingly, to fulfill Congress's legislative intent, debtors should be granted a reasonable opportunity to remain in control for a period of time to prepare adequate financial and non-financial information regarding the outcome of any proposed plan for disclosure to creditors. *See In re McLean Indus., Inc.*, 87 B.R. 830, 833–34 (Bankr. S.D.N.Y. 1987); *see also In re All Seasons Indus., Inc.*, 121 B.R. 1002, 1006 (Bankr. N.D. Ind. 1990) ("One of the most important reasons for extending the debtor's period of exclusivity is to give the chapter 11 process of negotiation and compromise an opportunity to be fulfilled, so that a consensual plan can be proposed and confirmed without opposition.").

19. Courts consider a variety of factors in determining whether "cause" exists to warrant an extension of the exclusive periods, including:

(i) the size and complexity of the case;

(ii) the necessity of sufficient time to negotiate and prepare adequate information;

(iii) the existence of good faith progress;

(iv) whether the debtor is paying its debts as they become due;

    (v)      whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    (vi)     whether the debtor has made progress negotiating with creditors;

    (vii)    the length of time a case had been pending;

    (viii)   whether the debtor is seeking an extension to pressure creditors; and

    (ix)     whether or not unresolved contingencies exist.

*See, e.g.*, *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *In re Dow Corning Corp.*, 208 B.R. 661, 664–65 (Bankr. E.D. Mich. 1997) (noting the generally accepted factors in determining whether to extend the exclusive periods); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re Adelphia Comm. Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006).

    20.     The decision to extend the Exclusive Periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case. *See, e.g.*, *First Am. Bank of N.Y.*, 64 B.R. at 965; *In re Dow Corning*, 208 B.R. at 664; *In re Express One*, 194 B.R. at 100; *In re McLean Indus.*, 87 B.R. at 834. No single factor is dispositive in determining whether to extend exclusivity; rather, courts can choose to rely on only a few factors or even altogether differing factors. *See In re Elder-Beerman Stores Corp.*, No. C-3-97-175, 1997 WL 1774880, at *4 (S.D. Ohio June 23, 1997); *In re Dow Corning,* 208 B.R. at 669–70 (noting that sometimes certain factors are more important or relevant than others). The size and complexity of a case alone can constitute cause to extend a debtor's exclusive periods to file and solicit a plan. *In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of the debtor and the consequent difficulty in formulating a plan . . . for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

8

## II. Cause Exists to Extend the Debtors' Exclusive Periods

### A. These Cases are Large and Complex

21. These chapter 11 cases involve four jointly-administered Debtors, which employed over four hundred people as of the Petition Date. As disclosed in the Debtors' schedules of assets and liabilities, the Debtors have over 1,000 creditors and had over $80 million in debt. The number of creditors and size of the debt mandated the Debtors to file the *Notice of Application of Complex Chapter 11 Case Procedures* [D.I. 3] as required by the Complex Chapter 11 Case Procedures of the Local Bankruptcy Rules.

### B. The Debtors Have Made Good Faith Progress in the Chapter 11 Cases

22. The Debtors' good faith progress in these chapter 11 cases warrants the extensions requested in this Motion. The Debtors and their professionals have made significant progress in moving these cases forward, including spending considerable time addressing numerous issues involving creditors and other parties in interest. Since the Petition Date, the Debtors have, among other things: (i) obtained significant "first day" and other relief; (ii) procured debtor-in-possession financing; (iii) retained various professionals; (iv) conducted a value-maximizing sale process that ultimately culminated in court approval of the sale of substantially all the Debtors' assets to the back-up bidders—Universal and Sparkle Pop; (v) obtained Court approval of the proposed KEIP and KERP for the Debtors' key employees; (vi) prepared and filed schedules and statements of financial affairs; (vii) engaged in extensive discussions and collaboration with the Committee; (viii) filed a motion to establish procedures to sell the Debtors' consigned inventory; (ix) negotiated, and filed a motion for court approval of, the sale of the Debtors' shares in Diamond UK; and (x) addressed a multitude of creditor and customer inquiries.

9

23.     The Debtors remain focused on the Consignment Sale Motion and the Diamond UK Sale Motion and are working on monetizing the Debtors' remaining assets for the benefit of the Debtors' estates and creditors.  As a result of the procedural posture of these cases, the Debtors submit that no party in interest is able or ready to submit a plan for these chapter 11 cases, and the Debtors should be provided sufficient time to develop a chapter 11 plan, as necessary and appropriate, that will be best for the Debtors' estates and their creditors.  The extension request is reasonable and consistent with the prosecution of these chapter 11 cases because it will provide the Debtors with additional time to consider important issues, negotiate, draft and finalize a plan, and solicit acceptances.  Allowing the Exclusive Periods to lapse now would defeat the purpose of section 1121 and deprive the Debtors and their creditors of the benefit of a meaningful and reasonable opportunity to negotiate the liquidation of certain assets and a consensual plan.

**C. The Debtors are Paying Their Bills as They Come Due**

24.     Since the Petition Date, the Debtors have paid, or are working to pay, their undisputed postpetition obligations in the ordinary course of business or as otherwise required by Court order.

**D. The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan or Plans**

25.     The Debtors' prospects for filing and ultimately confirming a viable chapter 11 plan are favorable.  The Debtors' progress in achieving their goals of obtaining court approval of the Sale Orders, and the subsequent closing of the sales to Universal and Sparkle Pop demonstrate that the Debtors will be able to approach the plan formulation in an effective manner.  An extension of the Exclusive Periods will allow the Debtors adequate time to monetize their remaining assets and then negotiate a chapter 11 plan with the key stakeholders, file the plan, and solicit votes on the plan.

### E. The Chapter 11 Cases Have Been Pending for a Short Period of Time

26. These chapter 11 cases have been pending for approximately seven months. During these seven months, the Debtors have made significant progress as highlighted in section B above. The Debtors need additional time to focus on the Consignment Sale Motion, the Diamond UK Sale Motion, and the prosecution of the Debtors' claims against AENT as well as to analyze claims in these cases. The requested extensions of the Exclusive Periods will provide the Debtors with the time needed to address these issues and allow the Debtors to focus on monetizing the estates' remaining assets in a manner that best serves the estates and the Debtors' creditors and establishing a framework for a chapter 11 plan, if appropriate.

### F. An Extension of the Exclusive Periods Will Not Pressure Creditors

27. The Debtors are not seeking an extension of the Exclusive Periods to pressure the Debtors' creditors or other parties in interest, and the Debtors believe that no party in interest will be prejudiced by the extension of the Exclusive Periods. This is the Debtors' second motion to extend the Exclusive Periods. The Debtors intend to use the extended Exclusive Periods to, among other things, seek court approval of the Consignment Sale Motion and the Diamond UK Sale Motion, analyze proof of claims, litigate claims against AENT, determine the best exit strategy for these cases, and negotiate with the Committee and other parties in interest.

28. The Debtors require additional time to administer these cases and monetize their remaining assets in a manner that maximizes value for the Debtors' estates and creditors while formulating a plan, if appropriate, to distribute those assets. As such, the Debtors submit that creditors will not be prejudiced by an extension of the Exclusive Periods.

55899177.3

**Automatic Extension Under Local Rule 9006-2**

29. Pursuant to Local Bankruptcy Rule 9006-2, the Exclusive Periods shall automatically be extended until the Court acts on this Motion, without the necessity for entry of a bridge order.

**Waiver of Memorandum of Law**

30. Pursuant to Local Bankruptcy Rule 9013-2, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

**Notice**

31. Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Committee; (iii) counsel to JPMorgan Chase Bank, N.A.; (iv) the United States Attorney for the District of Maryland; (v) the offices of the attorneys general for the states in which the Debtors operate; (vi) the Internal Revenue Service; (vii) the United States Attorney general; (viii) the civil process clerk for the United States Attorney for the District of Maryland; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: July 30, 2025                              **SAUL EWING LLP**

By: */s/ Jordan D. Rosenfeld*
Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
Turner N. Falk (admitted *pro hac vice*)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
          adam.isenberg@saul.com
          turner.falk@saul.com

-and-

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
          paige.topper@saul.com
          nicholas.smargiassi@saul.com

*Counsel for Debtors and Debtors in Possession*

55899177.3