IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered) |
|---|---|

**MOTION SEEKING ENTRY OF AN ORDER REQUIRING THE DEBTORS TO ASSUME OR REJECT EXECUTORY CONTRACTS WITH MEMBERS OF *AD HOC* COMMITTEE OF CONSIGNORS; AND FOR RELATED RELIEF**

The members of the *Ad Hoc* Committee of Consignors (the "Consignors"),[2] by and through their undersigned counsel, file this Motion Seeking Entry of an Order Requiring the Debtors to Assume or Reject Executory Contracts with Members of *Ad Hoc* Committee of Consignors and for Related Relief, and in support thereof state as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and procedural predicates for the relief requested in this Motion are §§ 105 and 365(d)(2) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 6006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6006-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Rules").

## Procedural Background

### I. General Background

3. On January 14, 2025 (the "Petition Date"), the Debtors each filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

[1] The Debtors in these chapter 11 cases (the "Debtors") along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] The Consignors/Movants herein are: (i) Ablaze, LLC, (ii) American Mythology Productions LLC, (iii) Avatar Press, Inc., (iv) Andrew Kafoury dba Battle Quest Comics, (v) Bryan Seaton dba Action Lab, (vi) Drawn & Quarterly Books Inc., (vii) Fantagraphics Books, Inc., (viii) Green Ronin Publishing LLC, (ix) Herman and Geer Communications, Inc., dba Hermes Press, (x) Living the Line LLC, (xi) Paizo, Inc., (xii) UDON Entertainment Inc., and (xiii) Zenescope Entertainment, Inc.

4. On January 21, 2025, the Debtors filed the Debtors' Motion for Entry of an Order (I) Authorizing and Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling an Auction and a Sale Hearing, (IV) Approving the Form and Manner of Notice Thereof, and (V) Establishing Notice and Procedures for the Assumption and Assignment of Certain Executory Contracts and Leases [Dkt. 68] (the "Motion to Sell Substantially All Assets").

5. On May 1, 2025, in connection with the Motion to Sell Substantially All Assets, the Court entered two orders approving the sale of substantially all assets to Sparkle Pop, LLC ("Sparkle Pop") and Universal Distribution, LLC ("UDL") [Dkts. 407 and 408] (the "Orders Approving Sale of Substantially All Assets").

6. On June 10, 2025, the Debtors filed two Notice of Sale Closings, stating the sales contemplated by the Orders Approving Sale of Substantially All Assets each closed in mid-May 2025 [Dkts. 499 and 500].

7. Goods held on consignment by the Debtors were excluded from the definition of Inventory sold to Sparkle Pop and/or UDL upon closing. *See* Dkt. No. 407, Ex. 1, p.8; Dkt. No. 408, Ex. 1, p.6. Sparkle Pop did not assume any contracts in its APA nor list any contracts being assumed in its Notice of Sale Closing. However, Sparkle Pop was given twenty (20) business days after closing to designate additional contracts to be assumed and assigned, which could have included the Consignors' Contracts (defined below). *See* Dkt. No. 407, Ex. 1, ¶2.3. Accordingly, the time for Sparkle Pop to request the Consignors' Contracts to be assumed and assigned ended in early June 2025, and the Debtors have filed no motions to have the Consignors' Contracts assumed and assigned.

8. As for UDL, in its Notice of Sale Closing [Dkt. 499] (filed almost a month after closing), UDL for the first time includes a schedule of purported assumed contracts. This schedule includes a Fulfillment Services Proposal with Green Ronin Publishing (this is a separate proposal from its Distribution Agreement for consigned goods with the Debtors) and a Distribution Agreement with Paizo. However, the UDL Order Approving Sale of Substantially All Assets [Dkt. 407] (the "UDL Sale Order") defines "Assigned Contracts" as those identified in the asset purchase agreement. (UDL Sale Order at p.1). The asset purchase agreement

attached to the UDL Sale Order (the "UDL APA") does not identify any assigned contracts. Neither the Order Establishing Notice and Procedures of Assumption and Assignment of Executory Contracts [Dkt. 136], the UDL Sale Order, or the UDL APA provides UDL with the ability to add the Debtors' Contracts (defined below) with Green Ronin Publishing or Paizo after closing of the sale. The only allowed changes to the "Assigned Contracts" list (which are none per the UDL Sale Order) was to remove contracts and otherwise address Adjourned Contract Objections. (UDL Sale Order ¶ 27).[3]

9. On June 25, 2025, the Debtors filed Debtors' Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances and (III) Granting Related Relief [Dkt. 531] (the "Motion to Sell Consigned Inventory").

10. On July 16, 2025, the Consignors filed the Ad Hoc Committee of Consignors' Objection to Debtors' Motion for Entry of Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances and (III) Granting Related Relief [Dkt. 601] (the "Objection to Sell Consigned Inventory").

## II. <u>Titan's Prior Motion to Assume or Reject</u>

11. On April 17, 2025, Titan Publishing Group, Ltd. ("Titan") filed an Emergency Motion to Compel Debtors to Assume or Reject Distribution Agreement with Titan Publishing Group, Ltd. by April 25, 2025, and Related Relief, or in the Alternative for Administrative Expense [Dkt. 347] (the "Titan Motion to Assume or Reject").

12. On May 16, 2025, the Debtors filed Debtors' Objection to Emergency Motion to Compel Debtors to Assume or Reject Distribution Agreement with Titan Publishing Group, Ltd.

---

[3] Furthermore, Paizo has never been paid the cure amount of its Contract, nor has it been provided any information about UDL segregating and removing Paizo's consigned stock from the Debtors' warehouse, or sending any payments to Paizo directly for the sale of said stock. Similarly, Green Ronin Publishing has received no cure amount, information regarding its consigned stock or payments for any stock sold after closing from UDL (although again, the contract attempted to be assigned appears to be unrelated to Green Ronin Publishing's consignment Contract).

To the extent that Green Ronin and Paizo's Contracts were not assigned or cured they stand in the same shoes as the other Consignors. Notwithstanding, to the extent the Court finds that Paizo and/or Green Ronin's Contracts were properly assigned and all cure amounts are paid, Paizo and Green Ronin reserves the right to enforce the post-assigned terms of the sale of consigned goods as against UDL.

by April 25, 2025, and Related Relief, or in the Alternative for Administrative Expense [Dkt. 447] (the "Objection to Titan's Motion").

13. In the Objection to Titan's Motion, the Debtors state, among other things:

(a) "The asset purchase agreement with Sparkle Pop gives Sparkle Pop twenty days after the closing on the sale to designate additional executory contracts for assumption." (Obj. ¶2); *see also* Dkt. 407, Ex. 1 ¶ 2.3;

(b) "Following closing on the sale and the expiration of Sparkle Pop's designation period, the Debtors intend to reject certain contracts not assumed by the Purchaser. The Debtors anticipate that they will reject Titan's Distribution Agreement if it is not designated." (Obj. ¶3); and

(c) "The 'executoriness' of the Distribution Agreement is not at issue here . . . ." (Obj. ¶ 26).

**Factual Background**

14. Each of the Consignors entered into an agreement (together, the "Contracts") with Diamond Comic Distributor, Inc.,[4] which governs their various rights and obligations for the consignment of products.[5] A copy of the Contract with Paizo, Inc. is attached hereto as **Exhibit A**.[6]

15. Each of the written Contracts provide for the following:

(a) the Consignors' obligation to ship their "inventory" (the "Stock") to the Debtors on a consignment basis;

(b) the Debtors' storage of the Stock;

(c) the Debtors' rights to sell and (and often be the exclusive distributor of) the Stock;

(d) the payment obligations to the Consignors being calculated based upon the value of the Stock sold to the Debtors' customers;

[4] The relief requested herein is with respect to all Debtors as the Contracts include provisions that they may be assigned to affiliates of Diamond Comic Distributors, Inc.

[5] Drawn & Quarterly Books Inc.'s agreement is governed by the parties' email correspondence and/or oral agreements with the Debtors. Drawn & Quarterly believes the material terms of its agreement with the Debtors are/should be determined to be the same as the Contracts. As such, Drawn & Quarterly seeks the same relief as is requested in this Motion by the other Consignors, and its agreement is included within the definition of "Contracts".

[6] Copies of all Contracts have been provided to the Debtors, the Committee and the U.S. Trustee. Copies of all of the Contracts will be made available to any party-in-interest upon execution of a non-disclosure agreement to protect the confidential information included therein.

(e) the Consignors retain the exclusive right, title and interest in the Stock and related trademarks;

(f) the Contracts terminate upon the Debtors failure to make payment when due and such failure continues for 15 days after written notice to the Debtors that such amounts are owing;

(g) the Debtors are to return the Stock to the Consignors upon termination of the Contracts; and

(h) the Contracts are governed by Maryland law.

16. Pursuant to the Contracts, each of the Consignors has delivered Stock to the Debtors, which Stock is comprised of a mix of periodical comic books, graphic novels, graphic art publications, and other similar publications and/or games and related merchandise. The wholesale value of the Stock in the Debtors' possession is estimated to be in excess of $13.5 million.

17. None of the Consignors were granted a security interest in the Stock.

18. Also, notwithstanding the fact that goods held on consignment were *not* sold to either Sparkle Pop nor UDL, and the Debtor never assigned the underlying agreements with the Consignors that govern the Debtor's distribution of those goods, Distributor sent an E-Mail communication to the Consignors on May 27, 2025 (the "May E-Mail") to the contrary. (E-Mail Dated May 27, 2025, attached hereto as **Exhibit B**). In that communication Distributor told Consignors that:

> *New Ownership Responsible for Invoicing Related to All Sales Activity May 16 Onward: These obligations are fully separate from the bankruptcy estate* ***and are actively being processed and paid*** *under normal operating procedures. ...*
>
> ***Diamond, now operating under the ownership of Ad Populum, is a new entity*** *and the new organization, responsible for all obligations from May 16 onward.*
>
> (May E-Mail, emphasis added)

19. Accordingly, the May E-Mail indicated not only that Diamond was "operating under the ownership" of its purchaser Sparkle Pop (the subsidiary of Ad Populum), but misled Consignors into thinking that the Asset Sale to Sparke Pop was actually a sale of ownership, because it indicated that Diamond continued to operate under the ownership of a new buyer. Worse, the May E-Mail confirmed that Ad Populum was financially responsible for the

payments of the Consignors stock, but Ad Populum never took assignment of the Consignors' executory agreements. The May E-Mail confirms that the Stock continued to be sold by someone after the Sparkle Pop and/or UDL sales closed, but it is unclear who is selling the Stock. The Debtor has confirmed that it has not sold stock after May 15, 2025, but has declined to voluntarily provide any information to the Consignors as to who sold Stock after May 15, 2025, which Stock was sold, or what payments remain due and owing to the Consignors on account of the sales. The Debtors have declined to voluntarily provide any information to the Consignors as to how any party other than the Diamond Distributor Debtor could sell Stock without a properly-assumed and assigned agreement to do so.

20. To the best of the Consignors' information and belief, the amounts due and owing to the Consignors for Stock sold from the Petition Date through May 15, 2025 (by the Debtor); and the amounts due and owing to the Consignors for Stock sold from May 15, 2025 through July 25, 2025 (presumably by Sparkle Pop), are not less than as follows:

| **Client** | **Total Post-Petition Amount Owed** | **Post-Petition Arrears (through May 15, 2025)** | **Post-Petition Arrears (after May 15, 2025)** |
|---|---|---|---|
| Ablaze, LLC | $45,522.27 | $30,000.51 | $15,521.76 |
| American Mythology | $34,329.86 | $12,302.24 | $22,027.62 |
| Avatar Press, Inc. | $52,695.48 | $4,938.02 | $47,757.46 |
| Battle Quest | $2,393.64 | $2,393.64 | $0.00 |
| Drawn & Quarterly | $1,105.50 | $511.94 | $593.56 |
| Fantagraphics Books, Inc. | $46,513.54 | $7,009.54 | $39,504.00 |
| Green Ronin | $8,286.21 | $7,820.06 | $ 466.15 |
| Hermes Press | $ TBD | TBD | TBD |
| Living the Line, LLC | $18,991.64 | - | $18,991.64 |
| Paizo Inc. | $255,937.97 | $73,201.70 | $182,736.27 |
| Udon Entertainment, Inc. | $20,192.32 | - | $ 20,192.32 |
| Zenescope Entertainment, Inc. | $70,003.41 | $25,190.69 | $44,812.72 |
| **TOTAL** | **$555,971.84** | **$163,368.34** | **$347,790.78** |

21. Because the Consignors do not have up-to-date accurate real-time reporting as to what has been sold or collected, these amounts will likely increase with respect to post-May 15, 2025 ("Post-Sale") transactions. Furthermore, the Post-Sale transactions do not appear to be authorized by this Court, and the numbers reflected herein constitute the amounts that would be due to the Consignors if the sales were governed by the respective Consignors' agreements with

the Debtor. The Consignors reserve all rights to any and all amounts recoverable against any party that sold Stock during the Post-Sale period without this Court's authority, including but not limited to a recovery of the full retail value of the Stock in accordance with applicable law (including but not limited to causes of action sounding in conversion).

## Argument

### I. The Consignors' Stock is Not Subject to Article 9, Not Subject to the DIP Lender's Lien, is Property of the Consignors, and is Not Subject to Sale by the Debtors

22. The Consignors hereby incorporate the legal arguments raised in the Objection to Sell Consigned Inventory regarding the positions that the Stock (i) is not subject to Uniform Commercial Code Article 9, (ii) is not subject to the DIP Lender's Lien, (iii) is property of the Consignors, and (iv) is not subject to sale by the Debtors. Notwithstanding this argument, this Court does not need to make any factual finding as to ownership of the Stock in order to consider the Consignors' request for an order compelling rejection or assumption of their respective agreements, because there is separate authority under Bankruptcy Code §365 to grant such an order.

### II. The Contracts Are Executory in Nature Within § 365 of the Bankruptcy Code

23. Most courts have adopted the definition of executory contracts articulated by Professor Vern Countryman to be those contracts where the "obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other." *RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 257, 264 (4th Cir. 2004) (quoting Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973)).

24. Here, both the Debtors and Consignors have outstanding obligations under the Contracts, including but not limited to the Consignors' obligation to ship Stock to the Debtors upon request and the Debtors obligation to properly store the Stock and pay the Consignors when the Stock is sold to the Debtors' customers.

25. Furthermore, the Debtors previously agreed that the substantially similar Distribution Agreement with Titan was executory.

26. As such, the Contracts are executory in nature within § 365 of the Bankruptcy Code.

## III. Immediate Assumption or Rejection of the Contracts Should be Compelled

27. Section 365(b)(1) of the Bankruptcy Code provides that a debtor may not assume an executory contract of a debtor unless at the time of assumption, the debtor (a) cures, or provides adequate assurance that the trustee will promptly cure, any default; (b) compensates, or provides adequate assurance that the trustee will promptly compensate the agreement counterparty for any actual pecuniary loss resulting from the default; and (c) provides adequate assurance of future performance under such contract. 11 U.S.C. § 365(b)(1).

28. Pursuant to § 365(d)(2) of the Bankruptcy Code, the debtor usually has until confirmation to assume or reject executory contracts. However, § 365(d)(2) permits a counter-party to an executory contract to seek entry of an order compelling the debtor-in-possession to assume or reject such a contract or lease by a specified period of time. 11 U.S.C. § 365(d)(2); *see also In re Mirant Corp.*, 440 F.3d 238, 254 (5th Cir. 2006) (recognizing the right of the non-debtor to file a motion to compel assumption or rejection of a lease or executory contract within a specified period of time).

29. The legislative history of § 365(d) indicates that the purpose of this section is to "prevent parties in contractual or lease relationships with a debtor from being left in doubt concerning their status vis-à-vis the estate." H. REP. No. 95-595, 95th Cong. 1st Sess. at 348 (1977) S. REP. 989, 95th Cong., 2d Sess. at 59 (1978); *see also In re Univ. Med. Ctr.*, 973 F.2d 1065, 1078-79 (3d Cir. 1992).

30. While § 365(d)(2) generally "allows the trustee or debtor-in-possession a reasonable time within which to determine whether assumption or rejection of an executory contract would be beneficial to an effective reorganization" it is "not without limits." *In re Adelphia Commc'ns Corp.*, 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003). "The determination of what constitutes a reasonable time to assume or reject is within the bankruptcy court's discretion based on the particular facts of each case." *Id.* (citing *In re Burger Boys*, 94 F.3d 755, 760 (2d Cir. 1996)) (other citations omitted).

31. In determining what is a reasonable time for a debtor to decide whether to assume or reject a contract, courts consider the following non-exhaustive list of factors:

1. the nature of the interests at stake;
2. the balance of the hurt to the litigants;
3. the good to be achieved;
4. the safeguards afforded to the litigants;
5. whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary;
6. the debtor's failure or ability to satisfy post-petition obligations;
7. the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;
8. the importance of the contract to the debtor's business and reorganization;
9. whether the debtor has sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan of reorganization;
10. whether there is a need for judicial determination as to whether an executory contract exists;
11. whether exclusivity has been terminated; and
12. above all, the broad purpose of Chapter 11, which is to permit successful rehabilitation of debtors.

*See In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 429 (Bankr. S.D.N.Y. 2012) (quotations and citations omitted); *see also In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr. D. Del. 2001) (stating that in exercising its discretion to compel assumption or rejection, a court should balance the interests of the bankruptcy estate with the interest of the counter party); *In re St. Mary Hosp.*, 89 B.R. 503, 513 (Bankr. E.D. Penn. 1988) (weighing "the nature of the interests at stake, the balance of hurt to the litigants, the good to be achieved, and the safeguards afforded those litigants").

32. These factors weigh heavily in favor of requiring the Debtors to assume or reject the Contracts now. As for the most important factor – the ability to successfully rehabilitate the Debtors (and the related factor of the importance of the contract to the Debtors business and reorganization) – this substantially weighs in favor of shortening the time period to assume or reject. Here, the Debtors have already sold substantially all of their assets, are no longer operating, and the Contracts were not assigned within the time period provided in the Order

Approving Sale of Substantially All Assets [Dkts. 68, 407, 408, 499, 500]. As such, there cannot be a successful reorganization/rehabilitation of the Debtors.

33. Additional facts that weigh in favor of shortening the time to assume or reject are plentiful. First and foremost, someone is selling the Stock post-May 15, 2025, but apparently not the Debtors; ***the Consignors are collectively owed and unpaid for post-May 15, 2025 Stock sales, but do not know who is selling their property***. This is not permissible, particularly where there has been no effective assumption or assignment of the Consignors' agreements. The Consignors expressly reserve all rights to seek recovery with respect to any claims that they may have against Sparkle Pop, or any third party that wrongfully received proceeds from the sale of the Consignors' stock without this Court's approval[7]. Even absent the May E-Mail, it is uncontroverted that the Debtors or their purchasers have sold Consignor goods post-petition without payment in full. The Debtors should not be permitted to continue operating under the Consignors' agreements at the sole risk of the Consignors, who will either have (i) growing administrative claims against the Debtors' estates; (ii) causes of action against the Debtors' purchasers who sold Consigned goods without proper assignment and cure of their agreements; (iii) the Debtors' DIP Lender to the extent that it received proceeds of unauthorized sales of the Consignors' property, or (iv) most likely, a combination of these causes of action against multiple parties.

34. Furthermore (i) upon information and belief, the Debtors are unable to satisfy their post-petition obligations under the Contracts, including payment to the Consignors of the Stock sold after the Petition Date, (ii) the Consignors will suffer substantial harm to the extent that they are prohibited from identifying replacement distributors, particularly because the Debtors are no longer operating the distribution business, (iii) the Debtors' exclusivity to file a plan will end in approximately one week (and would have ended two months ago, if were not for the extension of exclusivity) [Dkt. 513], and (iv) the Debtors' cases have been pending for over six months, providing the Debtors with sufficient time to appraise their financial situation and value their assets in connection with any formulation of a plan.

---

[7] The Consignors also reserve all rights with respect to any cause of action against any third party including, but not limited to, DIP Lender, Sparkle Pop and UDL, with respect to payments by the Debtors derived from the sale of the Consignors stock or any other property that the Consignors own that is not property of the Debtors' estates.

35. The Debtors' own arguments in the Objection to Titan's Motion support a finding that they should have to assume or reject the Contracts now. As stated in their Objection, the Debtors requested a delay in the determination of Titan's Motion to Assume or Reject until Sparkle Pop could decide whether they wished for Titan's Distribution Agreement to be assumed and assigned, and if the agreement was not assigned to Sparkle Pop that the Debtors would likely reject the agreement. (Obj. ¶¶ 2-3). The deadline for Sparkle Pop to assume or reject the Contracts was over a month ago, and the Contracts were not assumed and assigned. There is no basis to delay a determination of assumption and rejection of the Contracts, as there was with Titan.

## IV. If Rejected, the Contracts Should be Deemed Terminated Immediately

36. As stated in the Debtors' Objection to Titan's Motion, "[u]nder section 365, rejection constitutes a statutory breach, but does not repudiate or terminate the [contract]. The parties must, therefore, resort to state law to determine their rights as a result of the breach." (Obj. ¶ 34) (quoting *In re Yasin*, 179 B.R. 43, 50 (Bankr. S.D.N.Y. 1995)).

37. The Consignors agree with the Debtors that the contracts themselves control the effect of breach. (Obj. ¶ 35)

38. Pursuant to the Contracts, the Consignors may reclaim goods upon termination. *See* Obj. ¶ 39 (stating "the Debtors retain the rights to the goods and may sell them in the ordinary course" prior to termination). The Contracts also provide that termination occurs upon the Debtors' failure to make payment when due and such failure continues for 15 days after written notice to the Debtors that such amounts are owing.

39. Each of the Consignors are owed an outstanding balance under the Contracts as seen in their various proofs of claim and/or their debts scheduled by the Debtors to which no proof of claim was filed. The Consignors' various proofs of claim, the Consignors Objection to Sell Consigned Inventory, and this Motion, provide the Debtors with written notice of outstanding payments. It should be noted that the Consignors have not received timely reporting of sales post-petition (in and of itself a breach of the respective agreement terms) and thus they cannot calculate the total amounts due and owing at this time. The Consignors intend to conduct discovery to obtain this information if it is not voluntarily produced by the party that sold the Stock after the May 15, 2025, sale to Sparkle Pop.

40. As such, the Consignors respectfully request that the Contracts been deemed terminated upon the Debtors' rejection of the Contracts, which will occur more than 15 days following the filing of this Motion.

**Waiver of Memorandum of Law**

41. Pursuant to Local Rule 9013-2, the Consignors state that, in lieu of submitting a memorandum in support of this Motion, the Consignors will rely on the grounds and authorities set forth herein.

WHEREFORE, the members of the *Ad Hoc* Committee of Consignors respectfully requests that the Court enter an order (i) requiring the Debtors to determine immediately whether to assume or reject the Contracts, (ii) that to the extent the Contracts are rejected, the rejected Contracts be deemed terminated simultaneously with such rejection, and (iii) for such other relief as this Court deems just and appropriate.

Dated: August 1, 2025

Respectfully submitted,

/s/ Catherine Keller Hopkin

Catherine Keller Hopkin, 28257
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401
(443) 569-0788
chopkin@yvslaw.com

Counsel for the Ad Hoc Committee of Consignors

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 1st day of August 2025, notice of filing the Motion Seeking Entry of an Order Requiring the Debtors to Assume or Reject Executory Contracts with Members of Ad Hoc Committee of Consignors and for Related Relief was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service list.

/s/ Catherine Keller Hopkin
Catherine Keller Hopkin

**The following parties received CM/ECF notice of the filing:**

Jan Berlage, Esquire
(jberlage@ghsllp.com)
Counsel for Katherine Govier
Gohn, Hankey & Berlage, LLP
201 North Charles Street, Suite 2101
Baltimore, Maryland 21201

Hugh M. Bernstein, Esquire
(hugh.m.bernstein@usdoj.gov)
Office of U.S. Trustee
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201

Daniel Jack Blum, Esquire
(jack.blum@polsinelli.com)
Counsel for Basic Fun, Inc.
Polsinelli PC
1401 I Street NW, Suite 800
Washington, D.C. 20005

Laura Skowronski Bouyea, Esquire
(lsbouyea@venable.com)
Counsel for AIREIT Olive Branch DC LLC
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202

Thomas K. Bredar, Esquire
(thomas.bredar@wilmerhale.com)
Counsel for Disney and Marvel
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center, 250 Greenwich St.
New York, New York 10007

Andrew Brown, Esquire
(abrown@klestadt.com)
Counsel for NECA, LLC
Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036-7203

Richard L. Costella, Esquire
(rcostella@tydings.com)
Counsel for Creditors Committee
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland 21202

David W.T. Daniels, Esquire
(ddaniels@perkinscoie.com)
Counsel for The Pokemon Company
Perkins Coie LLP
700 13th St NW, Suite 600
Washington, D.C. 20005

Emily Devan, Esquire
(edevan@milesstockbridge.com)
Counsel for Titan Publishing Group
Miles & Stockbridge P.C.
100 Light Street
Baltimore, Maryland 21202

Turner Falk, Esquire
(turner.falk@saul.com)
Counsel for Debtors
Saul Ewing LLP
1500 Market Street
Center Square West, 38th Floor
Philadelphia, Pennsylvania 19102

Justin Philip Fasano, Esquire
(jfasano@mhlawyers.com)
Counsel for Dynamic Forces, Inc.
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, Maryland 22070

Ashley N. Fellona, Esquire
(ashley.fellona@saul.com)
Counsel for Debtors
Saul Ewing LLP
1001 Fleet Street, 9th Floor
Baltimore, Maryland 21202-4359

Gianfranco Finizio, Esquire
(gfinizio@lowenstein.com)
Counsel for Creditors Committee
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, New York 10020

Adam Fletcher, Esquire
(afletcher@bakerlaw.com)
Counsel for Image Comics, Inc.
Baker & Hostetler LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114-1214

Chelsea R. Frankel, Esquire
(cfrankel@lowenstein.com)
Counsel for Creditors Committee
Lowenstein Sandler LLP
1271 Avenue of the Americas
New York, New York 10020

Stephen B. Gerald, Esquire
(sgerald@tydings.com)
Counsel for Creditors Committee
Tydings & Rosenberg LLP
200 Continental Drive, Suite 401
Newark, Delaware 19713

Christopher J. Giaimo, Esquire
(christopher.giaimo@squirepb.com)
Counsel for Blue Yonder, Inc.
Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C. 20037

Jonathan A. Grasso, Esquire
(jgrasso@yvslaw.com)
Counsel for Alliance Entertainment, LLC
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401

Zvi Guttman, Esquire
(zvi@zviguttman.com)
Counsel for NECA, LLC
The Law Offices of Zvi Guttman, P.A.
P. O. Box 32308
Baltimore, Maryland 21282

Jeffrey C. Hampton I, Esquire
(jeffrey.hampton@saul.com)
Counsel for Debtors
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102

Adam H. Isenberg, Esquire
(adam.isenberg@saul.com)
Counsel for Debtors
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102

Toyja E. Kelley, Sr., Esquire
(toyja.kelley@lockelord.com)
Counsel for JPMorgan Chase Bank, N.A.
Troutman Pepper Locke LLP
701 8th Street N.W., Suite 500
Washington, D.C. 20001

C. Kevin Kobbe, Esquire
(kevin.kobbe@us.dlapiper.com)
Counsel for Renegade Games, et al.
DLA Piper LLP (US)
650 South Exeter Street, Suite 1100
Baltimore, Maryland 21202

Eric George Korphage, Esquire
(korphagee@whiteandwilliams.com)
Counsel for Fright Rigs, Inc.
White and Williams, LLP
600 Washington Avenue, Suite 303
Towson, Maryland 21204

Jung Yong Lee, Esquire
(jlee@tydings.com)
Counsel for Creditors Committee
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland 21202

Gary H. Leibowitz, Esquire
(gleibowitz@coleschotz.com)
Counsel for Bandai Namco Toys
Cole Schotz P.C.
1201 Wills Street, Suite 320
Baltimore, Maryland 21231

Mark Minuti, Esquire
(mark.minuti@saul.com)
Counsel for Debtor
Saul Ewing LLP
1201 North Market Street, Suite 2300
Wilmington, Delaware 19899

Bruce S. Nathan, Esquire
(bnathan@lowenstein.com)
Counsel for Creditors Committee
Lowenstein Sandler
65 Livingston Avenue
Roseland, New Jersey 07068

Michael Papandrea, Esquire
(mpapandrea@lowenstein.com)
Counsel for Creditors Committee
Lowenstein Sandler
One Lowenstein Drive
Roseland, New Jersey 07068

Steven Gregory Polard, Esquire
(steven.polard@ropers.com)
Counsel for Bandai Namco Toys
Ropers Majeski PC
801 South Figueroa Street, Suite 2100
Los Angeles, California 90017

Scott Prince, Esquire
(sprince@bakerlaw.com)
Counsel for Image Comics, Inc.
Baker & Hostetler LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114

Jordan Rosenfeld, Esquire
(jordan.rosenfeld@saul.com)
Counsel for Debtors
Saul Ewing LLP
1001 Fleet Street, 9th Floor
Baltimore, Maryland 21202-4359

Nikolaus F. Schandlbauer, Esquire
(nick.schandlbauer@arlaw.com)
Counsel for Action Figure Authority, Inc.
Adams and Reese LLP
20 F Street NW, Suite 500
Washington, D.C. 20001

Elizabeth Anne Scully, Esquire
(escully@bakerlaw.com)
Counsel for Image Comics, Inc.
Baker & Hostetler LLP
1050 Connecticut Ave, NW, Suite 1100
Washington, D.C. 20036

Dennis J. Shaffer, Esquire
(dshaffer@tydings.com)
Counsel for Creditors Committee
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland 21202

Indira Kavita Sharma, Esquire
(indira.sharma@troutman.com)
Counsel for JPMorgan Chase Bank, N.A.
Troutman Pepper Locke LLP
401 9th Street NW, Suite 1000
Washington, D.C. 20004

Nicholas Smargiassi, Esquire
(nicholas.smargiassi@saul.com)
Counsel for Debtors
Saul Ewing LLP
1201 North Market Street, Suite 2300
Wilmington, Delaware 19801

Brent C. Strickland, Esquire
(bstrickland@wtplaw.com)
Counsel for Universal Distribution LLC
Whiteford Taylor & Preston L.L.P.
8830 Stanford Boulevard, Suite 400
Columbia, Maryland 21045

Paige Noelle Topper, Esquire
(paige.topper@saul.com)
Counsel for Debtors
Saul Ewing LLP
1201 North Market Street, Suite 2300
Wilmington, Delaware 19801

U.S. Trustee – Baltimore
(ustpregion04.ba.ecf@usdoj.gov)
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201