IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |
| | Re: D.I. 649 & 713 |

**DEBTORS' OBJECTION TO AD HOC COMMITTEE OF CONSIGNORS' MOTION TO STAY DEBTORS' MOTION FOR ENTRY OF ORDER APPROVING (I) PROCEDURES FOR SALE OR OTHER DISPOSITION OF CONSIGNED INVENTORY, (II) APPROVING SALES OR OTHER DISPOSITION OF CONSIGNED INVENTORY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS OR ENCUMBRANCES AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), through their undersigned counsel, hereby object (this "Objection") to the *Ad Hoc Committee of Consignors' Motion to Stay Debtors' Motion for Entry of Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances and (III) Granting Related Relief* [D.I. 649] (the "Motion to Stay") filed by the Ad Hoc Committee of Consignors (the "Ad Hoc Committee") and in opposition thereto respectfully state as follows:

**Preliminary Statement**

1. On June 25, 2025, the Debtors filed a motion seeking Court approval of (i) procedures for the sale or other disposition of consigned inventory in the Debtors' possession and (ii) the ultimate sale or disposition of the consigned inventory [D.I. 531] (the "Consignment

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

56029824.11

Motion"). The Ad Hoc Committee has objected to the relief requested in the Consignment Motion, arguing, among other things, that the Debtors must first commence and prosecute adversary proceedings to establish that the inventory is property of the estate before the Debtors can proceed with the Consignment Motion [D.I. 601] (the "Consignment Objection"). A week after filing the Consignment Objection, the Ad Hoc Committee filed the Motion to Stay, raising the same legal issues. Although styled as a motion to stay the Consignment Motion, the Ad Hoc Committee actually seeks to compel the Debtors to commence adversary proceedings against the consignors before proceeding with the Consignment Motion. In its Motion to Stay, the Ad Hoc Committee offers no legal authority for the relief requested. Rather, it relies on two cases – *Valley Media* and *Salander O'Reilly Galleries* – neither of which supports the Ad Hoc Committee's position.[2]

2. Contrary to the Ad Hoc Committee's assertions, Debtor Diamond Comic Distributors, Inc. ("Diamond") has an interest in the consigned inventory that allows it to sell the inventory pursuant to section 363 of the Bankruptcy Code. When these cases were filed, Diamond obtained the rights and powers of a hypothetical lien creditor pursuant to section 544(a) of the Bankruptcy Code. This status allows Diamond to take actions that an actual creditor could take under state law pursuant to the UCC. Under section 9-319(a) of the UCC, as between an unperfected consignor and a creditor of the consignee (whether or not such creditor is secured or unsecured), the consignee's creditor's rights prevail such that the creditor may sell consigned goods free and clear of the consignor's interest. Because the Ad Hoc Committee members failed to perfect their interests in the consigned inventory, Diamond has an interest in the inventory and, subject to Court approval, is authorized to sell it pursuant to section 363.

---

[2] In what it styled as a "*Line Filing Supplemental Cases Supporting Motion to Stay*" filed on August 12, 2025 [D.I. 713], the Ad Hoc Committee raises additional arguments and cites additional case law in support of its Motion to Stay. This supplemental filing has no merit, and is addressed below.

3. For these reasons, and the reasons set forth below, the Court should deny the Motion to Stay and hear the Consignment Motion at the hearing scheduled on August 18, 2025.

### Objection

**I.   The Ad Hoc Committee's cited legal authority does not support the relief requested.**

4. The Ad Hoc Committee asserts that the Debtors cannot proceed with the Consignment Motion until the Debtors obtain a declaratory judgment, by commencing and prosecuting an adversary proceeding against each consignor, that the consigned inventory is property of the estate. *See* Motion to Stay, ¶ 33. In reliance on this argument, the Ad Hoc Committee cites to *Valley Media* and *Salander-O'Reilly Galleries*. *Id.* at ¶ 27. In fact, neither case supports the Ad Hoc Committee's position.

5. In *Valley Media*, the debtor filed a motion to sell inventory at an auction. *In re Valley Media, Inc.*, 279 B.R. 105, 112 (Bankr. D. Del. 2002). Certain vendors objected to the motion, seeking to exclude from the sale inventory that was provided to the debtor on a consignment basis. *Id.* at 112–13. Like the Ad Hoc Committee's members, the objecting consignment vendors in *Valley Media* argued that they owned the consigned inventory and that the inventory was not property of the estate and could not be sold. *Id.* at 120–21. Also like the Ad Hoc Committee's members, the objecting consignment vendors in *Valley Media* failed to file UCC-1 financing statements. The court held that because the consignors failed to perfect their interests in the inventory, the consignors "may not assert ownership rights in the Contested Inventory against the Debtor in Possession as a hypothetical lien creditor" and the debtors were permitted to sell the consigned inventory. *Id.* at 132–33. *Valley Media*'s primary holding is applicable here – and, in fact, supports the relief requested in the Consignment Motion – because, like the consignors in *Valley Media*, the Ad Hoc Committee's members failed to perfect their respective interests in the consigned inventory, and thus "may not assert ownership rights" against Diamond. *Id.* at 132.

6. The *Valley Media* decision carves out two objecting vendors from its ruling because those vendors' respective consignment agreements had been terminated prepetition. *Id.* at 142–43. As to those two vendors, the court found that the debtor had no rights in the inventory because of such termination, and thus no authority to sell the inventory. *Id.* This holding – which in fact is the specific reason the Ad Hoc Committee cites *Valley Media* – is clearly not applicable here, because the distribution agreements between Diamond and the members of the Ad Hoc Committee were not terminated prepetition. While the *Valley Media* court distinguished its ruling as between inventory pursuant to agreements that had terminated prepetition and inventory pursuant to agreements that had not been terminated, the basic ruling is consistent with the relief requested in the Consignment Motion here – that a debtor is authorized to sell consigned inventory pursuant to a section 363 motion.

7. The Ad Hoc Committee's reliance on *Salander-O'Reilly Galleries* is similarly misplaced. The Ad Hoc Committee claims that *Salander* clarified the *Valley Media* decision, "expanding it to hold that a secured lender's interest could not attach in consigned goods that fell outside of Article 9 because the Debtor did not own the goods at issue." Motion to Stay, ¶ 27. Yet, the *Salander* court made no such ruling. In *Salander*, the consignor moved for summary judgment regarding the priority of interests in a painting arguing, among other things, that the consignment agreement between debtor and consignor expired prepetition. *Salander-O'Reilly Galleries*, 506 B.R. at 612. As the *Salander* court noted, *Valley Media* dealt with a debtor seeking to exercise its powers as a hypothetical lien creditor under section 544(a) (same as Diamond here), whereas the liquidating trustee in *Salander* was not relying on his judicial lien, but rather his status as assignee of the secured lender's prepetition perfected lien pursuant to an assignment agreement executed pursuant to the debtor's chapter 11 plan of liquidation. *Id.* As the *Salander* court addressed

4

arguments that are not at issue before this Court, the case is not on point and does not support the Ad Hoc Committee's position.

## II. The consigned inventory is property of the estate that may be sold pursuant to section 363(b) of the Bankruptcy Code.

8. Section 363(b)(1) of the Bankruptcy Code permits a debtor, after notice and a hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). The Bankruptcy Code broadly defines "property of the estate" to include, among other things "all legal or equitable interests of the debtor in property as of the commencement of the case" and "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(1) & (7).

9. The Ad Hoc Committee claims that the consigned inventory is not property of Diamond's estate and thus cannot be sold. This argument blatantly ignores Diamond's interest in the consigned inventory pursuant to section 9-319(a) of the UCC and section 544(a) of the Bankruptcy Code, which interest is property of the estate that may be sold in accordance with the Consignment Motion. Under the UCC:

> . . . for purposes of determining the rights of creditors of . . . , a consignee, while the goods are in the possession of the consignee, the consignee is deemed to have rights and title to the goods identical to those the consignor had or had power to transfer.

Md. Code Ann. tit. 9, § 9-319(a) (emphasis added).

10. Thus, as between a consignee's creditors and unperfected consignors, so long as the consignee remains in possession of the consigned inventory, the consignee's creditors have superior rights to those of the unperfected consignors. The Official Comments to the UCC provide a clear example of how this section functions, in the context of a hypothetical secured creditor:

> **Example 1:** SP-1 delivers goods to Debtor in a transaction constituting a "consignment" as defined in Section 9-102. SP-1 does not file a financing statement. Debtor then grants a security interest in the goods to SP-2. SP-2 files a proper financing statement.

5

> Assuming Debtor is a mere bailee, as in a "true" consignment, Debtor would not have any rights in the collateral (beyond those of a bailee) so as to permit SP-2's security interest to attach to any greater rights. Nevertheless, under this section, for purposes of determining the rights of Debtor's creditors, Debtor is deemed to acquire SP-1's rights. Accordingly, SP-2's security interest attaches, is perfected by the filing, and, under Section 9-322, is senior to SP-1's interest.

U.C.C. § 9-319.

11. Although this example assumes the existence of another secured creditor – "SP-2" in the example quoted above – the same result would apply with respect to unsecured creditors of the consignee, by the literal language of section 9-319(a) cited above.

12. In the context of the Consignment Motion, the "creditor" referenced in section 9-319(a) of the UCC is in fact Diamond, who is automatically afforded the rights and powers of a hypothetical lien creditor, as of the petition date, pursuant to section 544(a) of the Bankruptcy Code. Section 544(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession has:

> as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of . . . (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544(a)(1); *see also In re Whitaker, Clark, & Daniels*, 663 B.R. 1, 15 (Bankr. D.N.J. 2024) ("The use of the word 'or' between the phrases 'shall have . . . the rights and powers of' and 'may avoid any transfer' indicates that these abilities should be read in the disjunctive."). Section 1107(a) in turn provides that "a debtor in possession shall have the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a). In other words, a debtor in possession is automatically given the status of a hypothetical

lien creditor under sections 544(a) and 1107(a) of the Bankruptcy Code and thus has the same rights and powers a creditor would have outside of bankruptcy.

13. Based on these principles, Diamond clearly has an interest in the consigned inventory. It is undisputed, and the Ad Hoc Committee (i.e., SP-1) concedes, that "there is no dispute that the Consignors made the [consigned inventory] available to the Debtors on a consignment basis." Motion to Stay, ¶ 11. It is also undisputed that the Ad Hoc Committee's members did not file UCC-1 financing statements to perfect their interests in the consigned inventory. Upon the filing of these chapter 11 cases, Diamond, as a debtor in possession, obtained the rights and powers of a hypothetical lien creditor pursuant to section 544(a) and thus has a lien on the consigned inventory (i.e., the Debtor assumes the role of SP-2). Because (i) the members of the Ad Hoc Committee (SP-1) did not perfect their interests in the consigned inventory and (ii) the consigned inventory is in Diamond's possession,[3] Diamond (SP-2) has a superior interest in the consigned inventory.

14. Diamond's interest in the consigned inventory is property of the estate. *See Whittaker*, 663 B.R. at 13–14 ("Significantly, the rights and powers acquired by the estate by virtue of a Bankruptcy Code provision, such as § 544, may also constitute property of the bankruptcy estate"); *In re Guillot*, 250 B.R. 570, 598 (Bankr. M.D. La. 2000) (concluding that section 544(a), "through its creation of the "rights and powers," creates estate property as of the commencement

---

[3] With respect to any consigned inventory improperly sold by Sparkle Pop, LLC, and as discussed at the August 5, 2025 scheduling conference, as soon as the Debtors became aware that Sparkle Pop, LLC was selling consigned inventory, the Debtors made demand upon Sparkle Pop, LLC to cease further sales immediately. The Debtors have followed up with Sparkle Pop regarding this demand on multiple occasions. To the Debtors' knowledge, Sparkle Pop, LLC is not currently selling consigned inventory (although the Ad Hoc Committee has suggested otherwise). The Debtors have demanded that Sparkle Pop, LLC turn over all proceeds from these improper sales. To the extent necessary, the Debtors are prepared to pursue an appropriate Adversary Proceeding to recover such proceeds.

56029824.11

of the case, to the extent applicable non-bankruptcy law would provide property interests to the hypothetical ideal lien creditor"). As such, the consigned inventory may be sold pursuant to the Consignment Motion. *See In re Niblett*, 441 B.R. 490, 492–93 (Bankr. E.D. Va. 2009) (granting chapter 7 trustee's motion to sell, inter alia, consigned property because the trustee's rights pursuant to section 544(a) were superior to those of the unperfected consignors and thus the trustee "has the right to sell property consigned to a debtor and use the proceeds to pay creditors who file proofs of claims"); *In re Valley Media*, 279 B.R. at 132–33 (finding that because the objecting consignors did not perfect their interest, the consignors may not assert ownership rights in the consigned inventory against the debtor in possession as a hypothetical lien creditor and authorizing the debtors to sell the inventory pursuant to a section 363 motion).

15. For the reasons set forth above, Diamond has an interest in the consigned inventory that allows such inventory to be sold pursuant to section 363 of the Bankruptcy Code. Diamond's rights and interests in the consigned inventory as a hypothetical lien creditor under section 544(a) of the Bankruptcy Code are automatically bestowed upon the Debtor as of the petition date and thus do not require the commencement of an adversary proceeding.[4]

---

[4] Although the Debtors believe that the foregoing analysis clearly demonstrates that the consigned inventory is property of the estate, even if the Court were to conclude that the Ad Hoc Committee's members have some interest in consigned inventory, such interests would be in bona fide dispute. Such dispute would permit the Debtors to sell the consigned inventory free and clear of the consignors' interests under section 363(f)(4) of the Bankruptcy Code. *See* 11 U.S.C. § 363(f)(4) (providing that the debtor may sell property "free and clear of any interest in such property of an entity other than the estate, only if . . . such interest is in bona fide dispute"). An adversary proceeding is not required for a bona fide dispute to exist. *See, e.g.*, *In re Oneida Lake Dev., Inc.*, 114 B.R. 352, 358 (Bankr. N.D.N.Y. 1990) ("Code § 363(f)(4) has been satisfied even though the Debtor has not as yet commenced the adversary proceeding."); *In re L.L. Murphrey Co.*, No. 12-03837-8-JRL, 2013 WL 2451368, at *4 (Bankr. E.D.N.C. June 6, 2013) ("To qualify as a 'bona fide dispute' under § 363(f)(4), 'the propriety of the lien does not necessarily have to be the subject of an immediate or concurrent adversary proceeding.'") (quoting *In re Collins*, 180 B.R. 447, 452 n.8 (Bankr. E.D. Va. 1995)). In fact, requiring an adversary proceeding would be inconsistent with the goal and language of section 363(f)(4). *See In re Daufuskie Island Props., LLC*, 431 B.R. 626, 645 (Bankr. D.S.C. 2010) ("The goal of § 363(f)(4) is to 'allow the sale of property subject to dispute so that liquidation of the estate's assets need not be delayed while such disputes are being

### III. Consigned inventory received post-petition is properly subject to the proposed section 363 sale.

16. The Ad Hoc Committee asserts that "[o]nce the Court determines that Article 9 does not apply, it must conclude that the postpetition [consigned inventory] is not property of the estate in accordance with Bankruptcy Code § 552." Motion to Stay, ¶ 28. This assertion does not withstand even the most cursory scrutiny. As a preliminary matter, it relies upon a determination by the Court that "Article 9 does not apply", which is not the situation here. It also relies on section 552 of the Bankruptcy Code, which addresses the post-petition effect of any "security agreement entered into by the debtor before the commencement of the case". 11 U.S.C. § 552(a). Again – this is not the situation here.

17. There is no reason, and the Ad Hoc Committee articulates no reason, why the recovery of a judgment lien creditor such as Diamond pursuant to section 544(a) of the Bankruptcy Code should be limited to those assets of the debtor that existed on the date the creditor obtained its judgment lien. Phrased differently, if a creditor obtains a judgment lien against a debtor on a Monday, it should be able to execute against assets obtained by the debtor any day thereafter. Certainly, other creditors of Diamond could – absent the automatic stay – exercise their state court rights under section 9-319(a) of the UCC to execute against consigned inventory received by the Debtors post-petition. There is no basis to conclude that Diamond, in the status of a hypothetical lien creditor, should not be able to do so also.

---

litigated.'") (quoting *In re Bella Vista Assocs., LLC*, No. 07-18134 JHW, 2007 WL 4555891, at *4 (Bankr. D.N.J. Dec. 18, 2007)).

56029824.11

IV. **The May e-mail from Sparkle Pop does not warrant a stay of the Consignment Motion.**

18. The Ad Hoc Committee's suggestion that the Debtors violated the Bankruptcy Code with respect to the consignors' agreements is, respectfully, absurd. As part of the Debtors' post-petition sale process, the Debtors filed a notice and supplemental notice listing all contracts that could potentially be assumed in connection with the sale of substantially all the Debtors' assets. These notices were served on the respective contract counterparties listed in the notices. *See* D.I. 160, 184, 194 & 204. None of the contracts with the consignors were assumed and assigned to Sparkle Pop.

19. Separately, the May 27, 2025 e-mail referenced in the Motion to Stay has no import. Motion to Stay, ¶ 32. The e-mail was sent by Sparkle Pop, without the Debtors' knowledge or consent, and simply explained that: (i) the Debtors had sold certain assets to Sparkle Pop and (ii) the Debtors' estates remained responsible for invoices related to any sales that preceded the closing date. *See id.* at Exh. E. The e-mail does not state that Sparkle Pop purchased the consigned inventory. In fact, such inventory was explicitly excluded from the sale. *See* Asset Purchase Agreement, dated April 27, 2025, between the Debtors, Sparkle Pop and Ad Populum (D.I. 407) (clarifying in the definition of "inventory" that "goods held on consignment by or on behalf of Seller as part of the Acquired Business shall not be considered Inventory for purposes of the Agreement"). The May 27th e-mail has no significance to the Consignment Motion, and does not justify staying Court consideration of the Consignment Motion.

V. **The Ad Hoc Committee's belated "Line Filing Supplemental Cases Supporting Motion to Stay" has no merit.**

20. On the evening of August 12, 2025 (almost three weeks after filing its Motion to Stay), the Ad Hoc Committee filed its "Line Filing Supplemental Cases Supporting Motion to Stay" [D.I. 713] (the "<u>Supplement</u>"). The Supplement cites several cases that the Ad Hoc

56029824.11

Committee contends support its position. None of these cases were decided after the Ad Hoc Committee filed its earlier pleadings in these cases. In any event, the cases cited in the Supplement do not support the Ad Hoc Committee's position. More fundamentally, they do not in any way undermine the Debtors' analysis, as set forth above – that Diamond, as a hypothetical lien creditor pursuant to section 544(a)(1) of the Bankruptcy Code, has the rights afforded to its creditors under section 9-319(a) of the UCC.

21. In its Supplement, the Ad Hoc Committee first cites to *In re Whitehall Jewelers Holdings, Inc.*, No. 08-11261, 2008 WL 2951974 (Bankr. D. Del. July 28, 2008), explains that the *Whitehall* court required the debtors (which had filed a motion under section 363 to sell consigned inventory) to file adversary proceedings to determine whether consigned goods were property of the estate, and contends that the case is "directly on point." Supplement, ¶ 4. This is not true.

22. Although *Whitehall Jewelers* addressed whether consigned goods are property of the estate, the debtors in such case did not rely upon section 544(a) of the Bankruptcy Code and the rights afforded to a debtor in possession thereunder, or section 9-319(a) of the UCC. Instead, the debtors in *Whitehall Jewelers* relied merely upon their possessory interest in the inventory and their rights to (i) insure the goods, (ii) make business decisions as to the goods, and (iii) pass title in the goods to retail customers. *Id.* at *5–6. The court found that these "delineated purported interests are simply not sufficient to demonstrate that the Consigned Goods are property of the estate." *Id.* at *6.

23. In denying the debtors' sale motion pending the court's resolution, in adversary proceedings, of the validity of the consignors' interests, the *Whitehall Jewelers* court focused on a Third Circuit decision that held that **lien invalidation** requires an adversary proceeding. *Id.* (referencing *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230 (3d

11

Cir. 2008)). Lien invalidation is not sought here. Diamond is simply seeking to sell consigned inventory based upon the rights and powers afforded to it in its status as a hypothetical lien creditor under section 544(a) of the Bankruptcy Code, and under section 9-319(a) of the UCC. For these reasons, *Whitehall* is not applicable.

24. The Ad Hoc Committee then cites to an unpublished decision, *In re Panache Cuisine, LLC*, 2013 Bankr. LEXIS 3966 (Bankr. D. Md. 2013). *Panache Cuisine* does not address consignment. Instead, it involves a chapter 7 trustee's motion to resolve a dispute regarding whether a claimant properly preserved its rights under PACA. In denying the trustee's settlement motion, the court noted that the trustee failed to give the required 21 days' notice of his settlement motion, that a term of the settlement was undisclosed and that this undisclosed term had been repudiated by a settling party. *Id.* at *12, n.7[5], *15–16 & *18. The court also noted that the trustee failed to address the legal standards for approval of a settlement under Bankruptcy Rule 9019. Instead, the trustee's settlement motion and legal argument focused on the merits of the underlying PACA claims, one of which the court noted appeared to be subject to "a substantial dispute as to its validity". *Id.* at *16. Clearly due to concerns about the merits of the proposed settlement, the court ruled that "due process requires that the PACA claim be tested . . . by the filing of a separate adversary proceeding." *Id.* at *16–17. In making this ruling, the court appeared to limit its ruling to the facts: "[t]his is not to say that a bankruptcy court can never approve a trustee's settlement of a PACA claim to which an objection has been filed. The holding is merely that in the instant case, the settlement cannot be approved for the reasons stated." *Id.* at *19.

25. The Ad Hoc Committee, in its Supplement, makes much of the fact that the court in *Panache Cuisine* cites to In re *Morabito Brothers, Inc.*, 188 B.R. 114 (Bankr. W.D.N.Y. 1995)

---

[5] The court noted that the failure to disclose a term of the settlement was "reason enough to disapprove the settlement." *Id*. at *12, n.7.

56029824.11

for the proposition "the termination of colorable property interests will require the greater procedural protections of an adversary proceeding." *Panache Cuisine*, at *18. The key, of course, is the word "colorable." As will be demonstrated at the hearing on the Consignment Motion, neither the members of the Ad Hoc Committee, nor any other consignor, has articulated (or can articulate) any colorable property interest in the consigned inventory at issue in light of section 544(a) of the Bankruptcy Code and section 9-319(a) of the UCC.

26. In fact, none of the other cases the Ad Hoc Committee cites in the Supplement – *In re Mushi* (objections to a debtor's claimed exemption of an interest in a real estate deposit subject to state court order); *Fontaine v. Conn (In re Fontaine)* (dispute over the ownership of real estate involving allegations of, among other things, forgery and fraud); *In re S.H. Leggitt Co.* (dispute over escrowed funds with facts compared to "jigsaw puzzle"); *In re Packer* (dispute over debtor's ownership of alleged cash collateral); *In re TSAWD Holdings, Inc.* (dispute between consignors and debtor's secured creditor over consigned inventory and sale proceeds) – address the impact of section 544(a), and its interplay with section 9-319(a) of the UCC, on consignment-related matters or (with one exception) address consignment at all.

27. And that is exactly the point. The cases cited by the Ad Hoc Committee involve detailed and complex disputes regarding ownership of property. They do not involve what underlies the Consignment Motion – a straight-forward application of two statutes to facts that cannot reasonably be disputed. That is, the members of the Ad Hoc Committee cannot dispute that (i) their agreements with Diamond were consignment agreements; and (ii) they failed to file UCC-1 financing statements. They also cannot seriously contest that at all relevant times the Debtors' sales of inventory included less than 20% of consigned goods, which is required under section 9-102(a)(20) of the UCC. In fact, while the Ad Hoc Committee bears the burden on this

13

issue, the Debtors have provided the Ad Hoc Committee with detailed sale information for the three years leading up to these chapter 11 cases, which shows that Diamond's sales of consigned inventory did not exceed 17% of Diamond's total sales during the three years pre-petition date. Even if the Ad Hoc Committee could contest that Diamond was not substantially engaged in selling consigned inventory, they cannot prove that more than 50% of Diamond's creditors knew Diamond was involved in the sale of consigned goods.[6]

28. As one court has observed:

> Under some circumstances, courts have made declarations of the applicability of the automatic stay and what constitutes property of the estate through a motion . . . . Under other circumstances, courts have required that declarations and determinations be made through an adversary proceeding. (citations omitted). The Court agrees that a declaration and determination of the applicability of the automatic stay to property of the estate may be accomplished through a "contested matter" motion without an adversary proceeding, in many (if not most) situations, particularly if they are relatively "simple" situations.

*In re S.H. Leggitt Co.*, 2011 Bankr. LEXIS 1366, at *9–10 (Bankr. W.D. Tex. 2011).

29. As noted above, the issues raised by the Consignment Motion are straight-forward, and involve the interplay of two statutes and facts that will be largely uncontested, or that are uncontestable. For this reason, and for the reasons set forth above, the Motion to Stay – which is merely an attempt to delay – should be denied.

---

[6] The Ad Hoc Committee's failure to establish that Article 9 does not control the arrangements between its members and Diamond is addressed in detail in the *Debtors' Omnibus Reply in Support of Debtors' Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances and (III) Granting Related Relief*.

14

Wherefore, for the reasons set forth above, the Debtors respectfully request that the Court deny the relief requested in the Motion to Stay.

Dated: August 14, 2025                **SAUL EWING LLP**

By: */s/ Jordan D. Rosenfeld*
Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
Turner N. Falk (admitted *pro hac vice*)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
       adam.isenberg@saul.com
       turner.falk@saul.com

-and-

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
       paige.topper@saul.com
       nicholas.smargiassi@saul.com

*Counsel for Debtors and Debtors in Possession*