**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE DIVISION)**

| | |
|---|---|
| In re: | Chapter 11 |
| Diamond Comic Distributors, Inc., *et al.* | Case No. 25-10308 (DER) |
| Debtors.[1] | (Jointly Administered) |
| | Re: D.I. 531, 649, 713 |

**OPPOSITION OF JPMORGAN CHASE BANK, N.A. TO AD HOC COMMITTEE OF CONSIGNORS' MOTION TO STAY DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING (I) PROCEDURES FOR SALE OR OTHER DISPOSITION OF CONSIGNED INVENTORY; (II) APPROVING SALES OR OTHER DISPOSITION OF CONSIGNED INVENTORY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS OR ENCUMBRANCES, AND (III) GRANTING RELATED RELIEF**

JPMorgan Chase Bank, N.A., as Prepetition Lender and DIP Lender (collectively, the "*Lender*"), by and through its undersigned counsel, hereby files this opposition (this "*Opposition*") to the *Ad Hoc Committee of Consignors' Motion to Stay Debtors' Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances, and (III) Granting Related Relief* [Docket No. 649] (the "*Motion to Stay*") filed by the *Ad Hoc* Committee of Consignors[2] (the "*Ad Hoc Committee*"). In support of this Opposition, the Lender respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases and the last four (4) digits of each Debtor's federal taxpayer identification number are as follows: Diamond Comic Distributors, Inc. (3450), Comic Exporters, Inc (7457), Comic Holdings, Inc. (7458), and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] The Ad Hoc Committee has not been designated as an official committee in this case, and is comprised the following thirteen (13) jointly represented consignors: Ablaze LLC; American Mythology Productions, LLC; Andrew Kafoury dba Battle Quest Comics; Avatar Press, Inc., Bryan Seaton dba Action Lab; Drawn & Quarterly Books Inc., Fantagraphics Books, Inc.; Green Ronin Publishing LLC; Herman & Geer Communications, Inc. dba Hermes Press;

1

**Preliminary Statement**

The Motion to Stay should be denied. The parties have worked hard to marshal evidence and legal argument sufficient for this Court to resolve the status and disposition of the Consigned Inventory (as defined below). Contrary to the Consignment Vendors' characterization, there is substantial record evidence and legal authority to support the prompt sale of these assets. Deferring that disposition will burden this estate with additional administrative expense liability, while preventing the Debtors from efficiently monetizing their remaining assets. The Consignment Vendors are entitled to their day in court on this issue, but not at the expense of months of fruitless, unnecessary and expensive litigation. This Court's swift ruling on the Consignment Sale Motion will hasten the resolution of these Chapter 11 proceedings, and the Motion to Stay offers no reason to proceed otherwise.

**Background**

1.  On January 14, 2025 (the "***Petition Date***"), each of the Debtors commenced a case under chapter 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "***Bankruptcy Code***"). The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On January 29, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "***Committee***").

2.  On February 19, 2025, the Court entered the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense*

---

Living the Line LLC; Paizo Inc.; UDON Entertainment Inc.; and Zenescope Entertainment Inc. See *Rule 2019 Verified Statement of YVS, Law LLC Disclosing Representation of Multiple Parties in Chapter 11 Case* [Docket No. 658].

*Claims; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 163] (the "**Final DIP Order**"), pursuant to which, among other things, the Debtors were granted authority to obtain senior secured postpetition financing pursuant to the terms and conditions of the Final DIP Order and that certain senior secured Debtor-in-Possession Credit Agreement, dated as of January 16, 2025 (as amended from time to time, the "**DIP Credit Agreement**").[3]

3. On June 24, 2025, the Debtors filed the *Debtors' Motion for Entry of an Order Approving Fifth Stipulation between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement* [Docket No. 527] (the "**DIP Amendment Motion**"). On July 3, 2025, the Bankruptcy Court entered the *Order Approving Fifth Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement* [Docket No. 569], extending the maturity date of the DIP Credit Agreement to August 23, 2025. The Bankruptcy Court scheduled a continued hearing on the relief requested in the DIP Amendment Motion for August 18, 2025, at 11:00 a.m. (ET).

4. On June 25, 2025, the Debtors filed the *Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances, and (III) Granting Related Relief* (the "**Consignment Sale Motion**"),[4] seeking, among other things, approval of (i) procedures to sell or otherwise dispose of consigned inventory and (ii) the sales or dispositions of the consigned inventory, free and clear of all liens, claims, interests and

---

[3] The DIP Credit Agreement was subsequently amended five times pursuant to this Court's Orders Approving Stipulations Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement [Docket Nos. 243, 345, 409, 470, & 569].

[4] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Consignment Sale Motion.

3

encumbrances. Attached to the Consignment Sale Motion is a list of the vendors (collectively, the "*Consignment Vendors*") that provided consigned inventory (the "*Consigned Inventory*") currently in the possession of the Debtors.

5. On July 17, 2025, the Lender filed a *Reservation of Rights and Limited Objection* to the Consignment Sale Motion [Docket No. 611] (the "*Reservation of Rights*"), reserving Lender's right to raise additional arguments or objections in connection with the Consignment Sale Motion.

6. In response to the Consignment Sale Motion, thirteen (13) objections were filed by the following Consignment Vendors: TwoMorrows Publishing ("*Two Morrows*") [Docket No. 578]; Molten Core Media, LLC ("*Molten*") [Docket No. 585]; Graphitti Designs, Inc. ("*Graphitti*") [Docket No. 586]; Abstract Studio, Inc. ("*Abstract*") [Docket No. 589]; NBM Publishing, Inc. ("*NBM Publishing*") [Docket No. 595]; Humanoids, Inc. ("*Humanoids*")[Docket No. 598]; the Ad Hoc Committee of Consignors[5] (the "*Ad Hoc Committee*") [Docket No. 601]; The Game Manufacturers Association, in conjunction with certain of its members including Skyscraper Studios, Inc. d/b/a Roll for Combat and Liminal Esports LLC d/b/a Snowbright Studio (collectively, "*GAMA*") [Docket No. 602], the Consignment Group[6] [Docket No. 603]; Cryptozoic Entertainment, LLC ("*Cryptozoic*") [Docket No. 606]; Image Comics, Inc. ("*Image*") [Docket No.

---

[5] The Ad Hoc Committee has not been designated as an official committee in this case, and is comprised of the following thirteen (13) jointly represented consignors: Ablaze LLC; American Mythology Productions, LLC; Andrew Kafoury dba Battle Quest Comics; Avatar Press, Inc., Bryan Seaton dba Action Lab; Drawn & Quarterly Books Inc., Fantagraphics Books, Inc.; Green Ronin Publishing LLC; Herman & Geer Communications, Inc. dba Hermes Press; Living the Line LLC; Paizo Inc.; UDON Entertainment Inc.; and Zenescope Entertainment Inc. *See Rule 2019 Verified Statement of YVS, Law LLC Disclosing Representation of Multiple Parties in Chapter 11 Case* [Docket No. 658].

[6] The "Consignment Group" is comprised of the following thirteen (13) jointly represented consignors: Aspen MLT, LLC /a/ka Aspen Comics; Black Mask Studios, LLC; DSTLRY Media, Inc.; Dynamic Forces, Inc. a/k/a Dynamite Entertainment; Heavy Metal International, LLC; MagneticPress, LLC; Massive Publishing, LLC; Oni-Lion Forge Publishing Group, LLC f/k/a Oni Press, LLC; Panini UK Ltd.; Punk Bot Comic Books, LLC a/k/a Alien Books; The Penn State University a/k/a Graphic Mundi; Titan Publishing Group, Ltd. and Vault Storyworks, LLC a/k/a Vault Comics f/k/a Creative Mind Energy.

145701067v6

612]; William M. Gaines, Agent, Inc. ("*Gaines*") [Docket No. 623]; Zombie Love Studios ("*Zombie*") (collectively, the "*Consignor Objections*"). As of the date of this Opposition, the objections of TwoMorrows, Molten, Graphitti, Abstract, NBM Publishing and Gaines have been stricken by the Court.

7. On July 24, 2025, the Ad Hoc Committee of Consignors filed the Motion to Stay. and on August 18, 2025, the Ad Hoc Committee filed a *Line Filing Supplemental Cases Supporting Motion to Stay* [Docket No. 713].

8. On August 1, 2025, the *Ad Hoc Committee filed the Motion Seeking Entry of an Order Requiring the Debtors to Assume or Reject Executory Contracts with Members of Ad Hoc Committee of Consignors; and For Related Relief* [Docket No. 679] (the "*Motion to Compel*"). The Motion to Compel and Motion to Stay are currently set for an evidentiary hearing with the Consignment Sale Motion on August 18, 2025 (the "*Sale Hearing*").

## Opposition

9. By filing their Motion to Stay, the Ad Hoc Committee seeks to defer resolution of the disputes over ownership of the Consigned Inventory, and also necessarily to delay the sale of those goods. In taking this position, the Consignment Vendors fail to acknowledge the *bona fide* dispute as to the ownership of these goods, as well as the ongoing harm to these bankruptcy estates resulting from delaying the resolution of such dispute.

10. The Lender contends that, because the Consignment Vendors failed to file UCC-1 financing statements, they are relegated to the status of general unsecured creditors. While the Consignment Vendors are entitled to their day in court on this issue, they have failed to negate the existence of a *bona fide* dispute over these issues sufficient to justify the sale of the Consigned Inventory under 11 U.S.C. § 363(f)(4). The Consignment Vendors' position suffers from both

factual and legal infirmities, and certainly does not support the bold and summary relief requested in the Motion to Stay.

11. By delaying the resolution of this dispute, the Consignors likewise delay the monetization of these assets, while causing the estate to incur ongoing expense and liability associated with the storage and maintenance of these assets. The Consignment Vendors should not be permitted to burden the estate in this way—particularly where the ensuing delay diminishes recoveries (or the prospect of recovery) for the other stakeholders and parties in interest. The Motion to Stay should be denied.

12. In further support of this Opposition, Lender respectfully directs the Court to and incorporates herein its *Memorandum of Points and Authorities in Support of Lender's Omnibus Reply (A) In Support of Debtors' Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances, and (III) Granting Related Relief; And (B) in Opposition to Consignment Vendors' Objections to Same* [Docket No. 728-1].

A. **The Ad Hoc Committee's Cited Authorities Do Not Support Granting a Stay**

13. In support of the relief sought in the Motion to Stay, the Ad Hoc Committee asserts that (i) the Consignment Inventory is not property of the Debtors' estates, (ii) "there exists many cases wherein courts have been called to analyze a debtor's authority to sell estate property in light of *bona fide* dispute as to whether the property at issue constituted estate property" and (iii) the DIP Lender's security interest has not attached in and to the Consignment Goods. *See* Motion to Stay, ¶¶ 7–8, 27 (citing *In re Valley Media, Inc.*, 279 B.R. 105 (Bankr. D. Del. 2002) and *Jacobs v. Kraken Inv. Ltd. (In re Salander-O'Reilly Galleries, LLC)*, 506 B.R. 600, 612 (Bankr. S.D.N.Y.

6

2014). The Ad Hoc Committee cannot carry its burden of proving the facts necessary to sustain this position and likewise fail to persuade as to the merits of their legal argument.

14. In *Valley Media*—one of the cases *relied upon* by the Ad Hoc Committee—the bankruptcy court granted the debtor's motion to sell its consignment inventory due to the debtor-in-possession's rights as a hypothetical judicial lien creditor pursuant to 11 U.S.C. §§ 544(a)(1) and 1107(a). *In re Valley Media, Inc.,* 279 B.R. at 132–33. The court overruled the consignors' objections to the sale motion because the consignors failed to perfect their interests in the consigned goods at issue. *Id.* at 141. The *Valley Media* court specifically held that the rights of the debtors under Section 544 trumped the rights of the consignors: "the Objecting Vendors may not assert ownership rights in the Contested Inventory against the Debtor in Possession ***as a hypothetical lien creditor of [the debtor]*** pursuant to 11 U.S.C. §§ 544(a) & 1107(a)." *Id.* at 132 (emphasis added). Further, the court recognized that "[c]ourts concur that the consignor holds an unsecured claim against the Debtor as a result of the 11 U.S.C. § 544(a)(1) action, ***regardless of whether they consider that the inventory has become property of the estate***." *Id.* at 133, n. 58 (emphasis added). As a result, the court held that the unperfected consignors only had general unsecured claims against the debtor's estate for the value of the consigned goods. *Id.* at 141.

15. The *Valley Media* court's ruling was inapplicable by its terms to the positions of three consignors in that case whose distribution agreements had termination provisions that lapsed ***prepetition***. The *Valley Media* court accordingly found that the Debtor did not have rights in that inventory nor authority to sell it. *Id.* at 142. The effect of a prepetition termination of consignment agreement is addressed by Official Comment 1 to UCC § 3-919, which provides the following:

> The termination of a consignment does not *ipso facto* cause the consignee to lose its status as such with respect to the consignee's creditors whose claims to the goods arose before termination. Return of the goods to the consignor causes the consignee to lose its deemed

rights and title, but it does ***not discharge a security interest or judicial lien that attached while the consignee was in possession***.

UCC § 9-319, cmt. 1 (emphasis added). The pending contested matter in this case does *not* involve a pre-petition lapse of the relevant consignment agreements. It necessarily follows that the *Valley Media* decision cannot carry the weight placed on it by the Consignment Vendors.

16. Consignment Vendors' reliance on *Salander-O'Reilly* Galleries is similarly misplaced. *See Kraken Invs. Ltd. v. Jacobs (In re Salander-O'Reilly Galleries, LLC)(Salander II)*, No. 14 CV 3544 VB, 2014 WL 7389901, at *3–4 (S.D.N.Y. Nov. 25, 2014). *rev'g, Jacobs, v. Kraken Invs. Ltd. (In re Salander-O'Reilly Galleries, LLC)(Salander I)*, 506 B.R. 600 (Bankr. S.D.N.Y. 2014). In Salander I, the bankruptcy court denied a consignor's summary judgment motion in which it argued that the collateral description in the loan agreement only granted the bank a security interest in the consigned goods owned by the consignee. *Id.* at 606. In Salander II, the District Court reversed, holding that the "plain meaning" of the unambiguous loan agreement granted only a limited security interest, which attached only to property owned by the consignee and did not include consigned property. *Id.* at *3. ("[The Security Agreement] unambiguously defines Collateral as property owned by [the Debtor], and consigned artwork, by its very nature, is owned by its owner, not the consignee."). In arriving at this conclusion, the Salander II court's ruling centered on contract interpretation under New York law. *Id.* at *3–4. Salander II **did not address** the essential issue in this case—whether the consignment transaction was an Article 9 consignment, so the opinion did not contain a discussion concerning the legal scope of section 9-319(a) and therefore does not instruct or persuade as to the critical legal issues argued by the parties. *See id.* at *1–5.

17. In *Salander-O'Reilly*, the trustee relied on his status as the assignee from the secured lender, which the trustee contended had a perfected lien in the goods pursuant to the loan

agreement and the consignment agreement had expired prepetition. 506 B.R. at 607 ("[T]he Trustee is not relying on his judicial lien, which would have arisen as of the Petition Date and apparently after the [Second Consignment] ended."). In contrast, the Debtors *are* relying on their status as a hypothetical lienholder under § 544. Further, *Salander-O'Reilly* did not address the issue of material fact as to whether the consignment agreements fall within the exception to the UCC. *See TSA Stores, Inc. v. M J Soffe, LLC (In re TSAWD Holdings, Inc.)*, 565 B.R. 292, 304 (Bankr. D. Del. 2017)(rejecting application of *Salander-O'Reilly* as "unpersuasive because the District Court did not address the issue of material fact (as to whether the consignment arrangement was governed by the UCC), which is before the Court in this case.").

18.     The Ad Hoc Committee contends that the Consigned Inventory is not property of the estate and that the Debtors are required to initiate (and fully and finally litigate) adversary proceedings against them. In support of this contention, Ad Hoc Committee relies heavily upon the case of *In re Whitehall Jewelers Holdings, Inc.,* No. 08-11261 (KG), 2008 WL 2951974 (Bankr. D. Del. July 28, 2008). The *Whitehall* decision was the product of an inadequate evidentiary record presented to the court. In *Whitehall*, the debtor sought authority to sell consigned goods in a sale under 11 U.S.C. § 363(f)(4) because a bona fide dispute exists as to the consigned goods. *Id.* at *3. In considering the sale motion, the court noted disapprovingly that while there were several different consignment vendors affected by the proposed sale, who had various forms of vendor trade agreements, the debtor only submitted as evidence one generic vendor trade agreement to the court. *Id.* at *4. The *Whitehall* court distinguished the case of *Valley Media,* noting that the *Valley Media* court reached its decision following a "two-day trial with live and deposition witnesses." *Id.* at *4-5. Ultimately, the court concluded that "the absence of

9

evidence prevents a definitive ruling" and that the only evidence before the court (the generic vendor trade agreement) "could" support a contrary conclusion in favor of consignors. *Id.* at *4-5.

19. Unlike *Whitehall*, there will not be a minimal evidentiary record before this Court upon considering the Consignment Sale Motion. To the contrary, the Ad Hoc Committee, along with other Consignment Vendors, have each propounded and received written discovery from Debtors and Lender. *See* Notices of Service of Discovery [Docket Nos. 687, 695, 700]. Further, Consignment Vendors, Debtors and Lender have each proposed compressive exhibit lists, including declarations, and witnesses for live testimony at the Sale Hearing. *See* Docket Nos. 717, 718, 719, 720, 721. In contrast to the debtor in *Whitehall*, the Ad Hoc Committee, along with other Consignment Vendors, have each attached as an exhibit the Debtors' standard distribution agreement and cited within their respective Objections conceding that each distribution agreement contains the relevant identical provisions governing consignment. *See* Motion to Stay, at ¶ 11; Ad Hoc Committee Obj., at ¶ 8, Ex. A.; Consignment Group Obj., at ¶ 1, Exs. A & B; GAMA Obj. [D.I. 602-1].

**B. Commencement of Adversary Proceedings is Unnecessary Because Consignment Vendors Will Not Be Prejudiced Nor Deprived of Procedural Rights in this Contested Matter**

20. The Consignment Vendors fail to persuade, legally or factually, that an adversary proceeding under Part VII of the Federal Bankruptcy Rules of Procedure (the "Bankruptcy Rules") will somehow result in greater procedural protections than in this contested proceeding. Bankruptcy Rule 9014 explicitly incorporates certain enumerated Rules from Part VII of the Bankruptcy Rules—most of which incorporate and make effective their corresponding Federal Rules of Civil Procedure—that govern the proceedings in a contested matter. *See* Fed. R. Bank. P. 9014(c); *see also Breen v. Portfolio Recovery Assocs., LLC*, No. 3:18CV759, 2019 WL 2871142,

145701067v6

at *8, n.1. (E.D. Va. July 3, 2019)("A contested matter in the bankruptcy context is a term of art. Rule 9014, which applies to contested matters, incorporates most of the Bankruptcy Rules governing adversary proceedings as well as the Federal Rules of Civil Procedure.")(citations omitted).

21. Each of the Consignment Vendors received service of the Consignment Sale Motion in accordance with Rule 9014(b), which mandates that motions in contested matters be served in the same manner as a summons and complaint, as provided by Bankruptcy Rule 7004. *See* Fed. R. Bank. P. 9014(b); Fed. R. Bank. P. 7004.

22. Rule 9014(c) provides that, "unless the court directs otherwise," all discovery rules applicable in adversary proceedings (Rules 7026 through 7037) apply in contested matters. *See* Fed. R. Bank. P. 9014(c). Certain of the Consignment Vendors have propounded and scheduled depositions, consistent with Rule 9014(c), which states that a party can perpetuate testimony in the same manner as provided in Rule 7027 for taking depositions before an adversary proceeding. *See* Fed. R. Bank. P. 9014(c)(4); Fed. R. Bank. P. 7032. Rule 9014(d) and (e) provide that the testimony Consignment Vendors sought must be taken in the same way as in an adversary proceeding. See Fed. R. Bank. P. 9014(c), (d). Certain Consignment Vendors have also directed interrogatories to Debtors. *See* Fed. R. Bank. P. 7033. The Lender is providing documentary discovery in response to a subpoena issued by the Consignment Vendors.

23. As a practical matter, requiring an adversary proceeding would not result in better or different process than would be the case in the pending contested matter. This Court can resolve the current contested matter efficiently and without compromising due process. The Consignment Vendors will be not prejudiced nor deprived of procedural rights in the present proceeding as they have had and will have a sufficient opportunity to conduct discovery, present witnesses and other

11

evidence, and argue the merits of the case. *See In re Alpha Nat. Res., Inc.*, 554 B.R. 787, 800, n. 16 (Bankr. E.D. Va. 2016)("The Court would note that Bankruptcy Rule 9014 affords parties a plethora of procedural protections in contested matters. There is simply no procedural protection afforded under an adversary proceeding that was not available to the Objectors in the contested matter."). Requiring the filing of separate adversary proceedings will subject these bankruptcy estates to delay and diminution of recovery value—without appreciably changing the nature of the process afforded to the Consigning Vendors.

### C. Courts In This Circuit Do Not Require an Adversary Proceeding As a Prerequisite to Sell Consigned Inventory Under 11 U.S.C. § 363

24. Critically here, whether the Consigned Inventory is property of the estate is not dispositive of the Debtors' ability to sell under § 363(f)(4); the Court need only determine the presence of a *bona fide* dispute. Bankruptcy courts in the Fourth Circuit applying § 363(f)(4) clearly and explicitly allow the sale of the property at issue before the resolution of adversary proceedings when there is a bona fide dispute as to a claimant's competing interest. *See e.g., In re Collins*, 180 B.R. 447, 452, n.8 (Bankr. E.D. Va. 1995) ("[T]o be a "bona fide dispute" under § 363(f)(4), the propriety of the lien does not necessarily have to be the subject of an immediate or concurrent adversary proceeding."); *see also In re Daufuskie Island Props., LLC*, 431 B.R. 626, 646 (Bankr. D.S.C. 2010) (confirming power of trustee under § 363(f)(4) to sell repurchase rights free and clear where validity of those rights created "bona fide dispute"); *In re L.L. Murphrey Co., No*. 12-03837-8-JRL, 2013 WL 2451368, at *4 (Bankr. E.D.N.C. June 6, 2013).

25. The standard for determining if such a *bona fide* dispute exists is, whether "there is an objective basis for either a factual or a legal dispute as to the validity of the asserted interest." *Schlossberg v. Bryd (In re Byrd)*, 357 F.3d 433, 437 (4th Cir. 2004) ("[A] bona fide dispute requires an objective basis for either a factual or a legal dispute as to the validity of the debt.").

12

"Importantly, ***this standard does not require that the Court resolve the underlying dispute or that it determine the probable outcome of the dispute***; rather, it only requires a determination that such a dispute does, in fact, exist." *In re Collins*, 180 B.R. at 162 (emphasis added). Evidence must be provided to show factual grounds that there is an objective basis for the dispute.

26. Given the relevant legal authority cited by the Ad Hoc Committee, the Court is well positioned to decide the issues raised by the Consignment Sale Motion quickly and cleanly. The Consignment Vendors offer no reason for the Court to delay this determination. The issues will be well briefed, developed and presented to the Court. A quick decision will limit unnecessary and burdensome accrual of administrative expense liabilities and facilitate a swift monetization of the disputed assets. Nothing in this record supports the Consignment Vendors' proposal to delay resolution of a crucial case issue well within this Court's jurisdiction.

## **Reservation of Rights**

27. Lender expressly reserves the right to (a) raise any objection it may have with respect to the terms of the proposed Consignment Sales, and (b) to be heard before the Court with respect to the entry of any Consignment Sale order and to raise additional arguments or objections in connection therewith.

145701067v6

**WHEREFORE**, Lender respectfully requests that the Court deny the Motion to Stay and grant such other and further relief as may be just and proper under the circumstances.

Respectfully submitted,

DATED: August 14, 2025

/s/ Toyja E. Kelley
Jonathan W. Young (admitted *pro hac vice*)
Toyja E. Kelley (Bar No. 26949)
Indira K. Sharma (Bar No. 28269)
Katherine E. Culbertson (admitted *pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
701 8th Street, N.W., Suite 500
Washington, D.C. 20001
Toyja.Kelley@troutman.com
Indira.Sharma@troutman.com
Jonathan.Young@troutman.com
Katherine.culbertson@troutman.com

## CERTIFICATE OF SERVICE

I, Toyja E. Kelley, hereby certify that, on the 14th day of August, 2025, I caused a true and correct copy of the foregoing *Opposition to Ad Hoc Committee's Motion to Stay* to be filed and served via CM/ECF on all parties who have registered for electronic service in these cases.

/s/Toyja E. Kelley

145701067v6