**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 531, 598, 601, 602, 603, 606 & 674** |

**OMNIBUS REPLY IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING (I) PROCEDURES FOR SALE OR OTHER DISPOSITION OF CONSIGNED INVENTORY, (II) APPROVING SALES OR OTHER DISPOSITION OF CONSIGNED INVENTORY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS OR ENCUMBRANCES AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors"), by and through their undersigned counsel, hereby reply (this "Reply") in support of the *Debtors' Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances and (III) Granting Related Relief* [D.I. 531] (the "Consignment Motion") and in response to the objections filed by Humanoids, Inc. ("Humanoids") [D.I. 598], the Ad Hoc Committee of Consignors (the "Ad Hoc Committee") [D.I. 601], the Game Manufacturers Association ("GAMA") [D.I. 602], the Consignment Group [D.I. 603], and Cryptozoic Entertainment, LLC ("Cryptozoic") [D.I. 606].[2] The Debtors have reached a resolution

---

[1]     The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2]     For purposes of this Reply, Humanoids, the Ad Hoc Committee, GAMA, the Consignment Group, and Cryptozoic will be collectively referred to as the "Objecting Consignors" and their objections will be collectively referred to as the "Consignment Objections." In addition to the Consignment Objections, several parties filed pro se letter objections to the Consignment Motion. The Court has either entered orders striking the letter objections from the docket or, with respect to one late-filed

in principle with respect to the objection filed by Image Comics, Inc. [D.I. 612], and therefore do not address Image's objection in this Reply.[3]  In support of the Consignment Motion, the Debtors state as follows:

**Preliminary Statement**

1.    Contrary to the Objecting Consignors' assertions, Debtor Diamond Comic Distributors, Inc. ("Diamond") has an interest in the consigned inventory that allows it to sell the inventory pursuant to section 363 of the Bankruptcy Code.  When these cases were filed, Diamond obtained the rights and powers of a hypothetical lien creditor pursuant to section 544(a) of the Bankruptcy Code.  This status allows Diamond to take actions that an actual creditor could take under state law pursuant to the UCC.  Under section 9-319(a) of the UCC, as between an unperfected consignor and a creditor of a consignee (whether or not such creditor is secured or unsecured), the consignee's creditor's rights prevail such that the creditor may sell consigned goods free and clear of the consignor's interest.  Because the consignors, including the Objecting Consignors, failed to perfect their interests in the consigned inventory, Diamond has an interest in the inventory and, subject to Court approval, is authorized to sell it pursuant to section 363.

2.    More particularly, the Objecting Consignors have failed to satisfy their burden that their respective arrangements with Diamond are outside the scope of Article 9.  There is no dispute that the products at issue were provided to Diamond on a consignment basis.  Yet, the Objecting Consignors – in an attempt to brush their failure to file UCC-1 financing statements under the rug – contend that Article 9 does not apply because the definition of consignment under section 9-

---

objection, issued a deficiency notice, for the parties' failure to comply with required filing procedures.  Accordingly, the Debtors do not address the letter objections in this Reply.

[3]    The Debtors reserve all rights with respect to the issues raised in Image's objection to the Consignment Motion.

56013480.4

102(a)(20) supposedly is not satisfied in this case.  The Objecting Consignors have offered no evidence to meet their burden on this point, and cannot do so, for at least two reasons.

3.      First, the Objecting Consignors have not proven (and cannot prove) that Diamond was "generally known" by its creditors to be "substantially engaged" in the sale of consigned inventory.  To be "substantially engaged," a merchant must sell at least 20% of its inventory on consignment.  Here, the Debtors have provided the Objecting Consignors with detailed sale information for the three years leading up to these chapter 11 cases, which demonstrates that Diamond's sales of consigned inventory did not exceed 17% of Diamond's total sales.  This information precludes any claims that Diamond was substantially engaged in selling consigned inventory, and the Objecting Consignors have not offered any evidence to suggest otherwise.  Moreover, the Objecting Consignors have offered no evidence to support a finding that a majority in number of Diamond's creditors were aware that Diamond sold consigned inventory.  The case law is clear that conclusory statements about industry knowledge – which is the only evidence the Objecting Consignors offer – is insufficient to satisfy a consignors' burden under section 9-102(a)(20) of the UCC.

4.      Second, the consigned products are not "consumer goods", and thus fall within the Article 9 definition of consignment.  Section 9-102(a)(20)(C) of the UCC is unambiguous – for purposes of Article 9 consignment, goods cannot be consumer goods (i.e., goods for personal, family or household purposes) "immediately before delivery."   Md. Code Ann. tit. 9, § 9-102(a)(20)(C).  There can be no serious argument that the consigned products, while in the hands of the Objecting Consignors – which are entities engaged in the business of publishing and/or selling such inventory – immediately before delivery were anything other than inventory.  Because

3

the Objecting Consignors have failed to show that the arrangements with Diamond fall outside section 9-102(a)(20) of the UCC, Article 9 controls.

5.       For these reasons, and the reasons set forth below, the Court should overrule the Consignment Objections and grant the relief requested in the Consignment Motion.[4]

## **Reply**

**I.       The consigned inventory is property of the estate that may be sold pursuant to section 363(b) of the Bankruptcy Code.**

6.       Section 363(b)(1) of the Bankruptcy Code permits a debtor, after notice and a hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1).  The Bankruptcy Code broadly defines "property of the estate" to include, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case" and "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(1) & (7).

7.       The Objecting Consignors claim that the consigned inventory is not property of Diamond's estate and thus cannot be sold. *See, e.g.*, Ad Hoc Committee Obj. ¶¶ 36 & 39;  Humanoids Obj. ¶ 15; GAMA ¶¶ 23–26.  This argument ignores Diamond's interest in the consigned inventory pursuant to section 9-319(a) of the UCC and section 544(a) of the Bankruptcy Code, which interest is property of the estate that may be sold in accordance with the Consignment Motion.  Under the UCC:

> . . . for purposes of determining the rights of creditors of . . .  a consignee, while the goods are in the possession of the consignee,

---

[4]       To the extent that the Consignment Objections raise arguments regarding the rejection or assumption of their respective contracts pursuant to section 365 of the Bankruptcy Code, the Debtors will respond to these arguments in their forthcoming objection to the *Motion Seeking Entry of an Order Requiring the Debtors to Assume or Reject Executory Contracts with Members of Ad Hoc Committee of Consignors; and for Related Relief* [D.I. 679].

56013480.4

> the consignee is deemed to have rights and title to the goods
> identical to those the consignor had or had power to transfer.

Md. Code Ann. tit. 9, § 9-319(a).

8.      Thus, as between a consignee's creditors and unperfected consignors, so long as the consignee remains in possession of the consigned inventory, the consignee's creditors have superior rights to those of the unperfected consignors.  The Official Comments to the UCC provide a clear example of how this section functions, in the context of a hypothetical secured creditor:

> **Example 1**:   SP-1 delivers goods to Debtor in a transaction
> constituting a "consignment" as defined in Section 9-102. SP-1 does
> not file a financing statement. Debtor then grants a security interest
> in the goods to SP-2. SP-2 files a proper financing statement.
> Assuming Debtor is a mere bailee, as in a "true" consignment,
> Debtor would not have any rights in the collateral (beyond those of
> a bailee) so as to permit SP-2's security interest to attach to any
> greater rights. Nevertheless, under this section, for purposes of
> determining the rights of Debtor's creditors, Debtor is deemed to
> acquire SP-1's rights. Accordingly, SP-2's security interest attaches,
> is perfected by the filing, and, under Section 9-322, is senior to SP-
> 1's interest.

9.      Although this example assumes the existence of another secured creditor – "SP-2" in the example quoted above – the same result would apply with respect to unsecured creditors of the consignee, by the literal language of section 9-319(a) cited above.

10.     In the context of the Consignment Motion, the "creditor" referenced in section 9-319 of the UCC is in fact Diamond, which is automatically afforded the rights and powers of a hypothetical lien creditor, as of the petition date, pursuant to section 544(a) of the Bankruptcy Code.  Section 544(a) of the Bankruptcy Code provides in relevant part that a debtor in possession has:

> as of the commencement of the case, and without regard to any
> knowledge of the trustee or of any creditor, the rights and powers
> of . . . (1) a creditor that extends credit to the debtor at the time of
> the commencement of the case, and that obtains, at such time and
> with respect to such credit, a judicial lien on all property on which a

56013480.4

creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544(a)(1); *see also In re Whitaker, Clark, & Daniels*, 663 B.R. 1, 15 (Bankr. D.N.J. 2024) ("The use of the word 'or' between the phrases 'shall have . . . the rights and powers of' and 'may avoid any transfer' indicates that these abilities should be read in the disjunctive.").  Section 1107(a) in turn provides that "a debtor in possession shall have the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter."  11 U.S.C. § 1107(a).  In other words, a debtor in possession is automatically given the status of a hypothetical lien creditor under sections 544(a) and 1107(a) of the Bankruptcy Code and thus has the same rights and powers a creditor would have outside of bankruptcy.

11.     Based on these principles, Diamond clearly has an interest in the consigned inventory.  The Objecting Consignors concede that the consigned inventory was provided on a consignment basis.  *See* Cryptozoic Obj., p.1; Humanoids Obj. ¶ 4; Ad Hoc Committee Obj. ¶ 8; GAMA ¶ 9; Consignment Group Obj. ¶ 1.  It is also undisputed that none of the Objecting Consignors filed a UCC-1 financing statement to perfect their respective interests in the consigned inventory.  *See* Consignment Motion, Exh. C (UCC lien searches reflecting no liens on the consigned inventory other than JPMorgan Chase Bank, N.A.).  Upon the filing of these chapter 11 cases, Diamond, as debtor in possession, obtained the rights and powers of a hypothetical lien creditor pursuant to section 544(a) and thus has a lien on the consigned inventory (i.e., Diamond assumes the role of SP-2).  Because (i) the Objecting Consignors (SP-1) did not perfect their interests in the consigned inventory and (ii) the consigned inventory is in Diamond's possession,[5] Diamond (SP-2) has a superior interest in the consigned inventory.

---

[5]     With respect to any consigned inventory improperly sold by Sparkle Pop, LLC, and as discussed at the August 5, 2025 scheduling conference, as soon as the Debtors became aware that Sparkle Pop, LLC was selling consigned inventory, the Debtors made demand upon Sparkle Pop, LLC to cease

12.     Diamond's interest in the consigned inventory is property of the estate.  *See Whittaker*, 663 B.R. at 13–14 ("Significantly, the rights and powers acquired by the estate by virtue of a Bankruptcy Code provision, such as § 544, may also constitute property of the bankruptcy estate"); *In re Guillot*, 250 B.R. 570, 598 (Bankr. M.D. La. 2000) (concluding that section 544(a), "through its creation of the 'rights and powers,' creates estate property as of the commencement of the case, to the extent applicable non-bankruptcy law would provide property interests to the hypothetical ideal lien creditor").  As such, the consigned inventory may be sold pursuant to the Consignment Motion.  *See In re Niblett*, 441 B.R. 490, 492–93 (Bankr. E.D. Va. 2009) (granting chapter 7 trustee's motion to sell, inter alia, consigned property because the trustee's rights pursuant to section 544(a) were superior to those of the unperfected consignors and thus the trustee had "the right to sell property consigned to a debtor and use the proceeds to pay creditors who file proofs of claims"); *In re Valley Media*, 279 B.R. 105, 132–33 (Bankr. D. Del. 2002) (finding that because the objecting consignors did not perfect their interest, the consignors may not assert ownership rights in the consigned inventory against the debtor as a hypothetical lien creditor and authorizing the debtor to sell the inventory pursuant to a section 363 motion); *Marcoly v. National Bank of the Commonwealth (In re Marcoly)*, 32 B.R. 423, 425 (Bankr. W.D. Pa. 1983) ("Section 544 gives the Debtor in Possession a perfected interest in the goods superior to that of [consignor]. Although the Court is convinced that this transaction was intended to be a consignment, [consignor] did not protect its interest by … filing a financing statement.").

---

further sales immediately.  The Debtors have followed up with Sparkle Pop, LLC, regarding this demand on multiple occasions. To the Debtors' knowledge, Sparkle Pop, LLC is not currently selling consigned inventory (although the Ad Hoc Committee has suggested otherwise).  The Debtors have demanded that Sparkle Pop, LLC turn over all proceeds from these improper sales. To the extent necessary, the Debtors are prepared to pursue an appropriate Adversary Proceeding to recover such proceeds.

56013480.4

13.     The Objecting Consignors' reliance on *Whitehall Jewelers* to argue adversary proceedings are necessary is misplaced.  *See* Humanoids Obj. ¶¶ 16–18; GAMA Obj. ¶ 14. Although *Whitehall Jewelers* addresses whether consigned goods are property of the estate, the debtors did not rely on section 544(a) of the Bankruptcy Code and the rights afforded to a debtor in possession thereunder, or section 9-319(a) of the UCC.  *See generally In re Whitehall Jewelers Holdings, Inc.*, Case No. 08-11261 (KG), 2008 WL 2951974 (Bankr. D. Del. July 28, 2008). Rather than relying on section 544(a), the debtors in *Whitehall Jewelers* argued that they held a possessory interest in the inventory and rights to (i) insure the goods, (ii) make business decisions as to the goods, and (iii) pass title in the goods to retail customers. *Id.* at *5–6.  The court found that these "delineated purported interests are simply not sufficient to demonstrate that the Consigned Goods are property of the estate." *Id.* at *6.

14.     In denying the debtors' sale motion pending the court's resolution, in adversary proceedings, of the validity of the consignors' interests, the *Whitehall Jewelers* court focused on a Third Circuit decision that held lien invalidation requires an adversary proceeding. *Id.* (referencing *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230 (3d Cir. 2008)).  But here, Diamond is not seeking to invalidate liens; Diamond is simply seeking to sell consigned inventory based upon the rights and powers afforded to Diamond as hypothetical lien creditor under section 544(a) of the Bankruptcy Code and section 9-319(a) of the UCC.  Accordingly, *Whitehall* is not applicable.[6]

---

[6]     For the reasons set forth in the Debtors' objection to the Ad Hoc Committee's motion to stay the Consignment Motion, the Ad Hoc Committee's reliance on *Valley Media* and *Salander-O'Reilly Galleries* in support of their position that an adversary proceeding is required under the circumstances is similarly misplaced.  *See Debtors' Objection to Ad Hoc Committee of Consignors' Motion to Stay Debtors' Motion for Entry of Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances and (III) Granting Related Relief* [D.I. 727], ¶¶ 5–8.

15.     For the reasons set forth above, Diamond has an interest in the consigned inventory that allows such inventory to be sold pursuant to section 363 of the Bankruptcy Code.  Diamond's rights and interests in the consigned inventory as a hypothetical lien creditor under section 544(a) of the Bankruptcy Code are automatically bestowed upon the Debtor as of the petition date and thus do not require the commencement of an adversary proceeding.

## II.     The consigned inventory may be sold free and clear pursuant to section 363(f) because the Objecting Consignors' claimed interests in the inventory are in "bona fide dispute."

16.     Although the Debtors believe that the foregoing analysis clearly demonstrates that the consigned inventory is property of the estate, even if the Court were to conclude that the Objecting Consignors have some interest in consigned inventory, such interest would be in bona fide dispute.  Such dispute would permit the Debtors to sell the consigned inventory free and clear of the consignors' interests under section 363(f)(4) of the Bankruptcy Code.  *See* 11 U.S.C. § 363(f)(4) (providing that the debtor may sell property "free and clear of any interest in such property of an entity other than the estate, only if . . . such interest is in bona fide dispute").  An adversary proceeding is not required for a bona fide dispute to exist. *See, e.g.*, *In re Oneida Lake Dev., Inc.*, 114 B.R. 352, 358 (Bankr. N.D.N.Y. 1990) ("Code § 363(f)(4) has been satisfied even though the Debtor has not as yet commenced the adversary proceeding."); *In re L.L. Murphrey Co.*, No. 12-03837-8-JRL, 2013 WL 2451368, at *4 (Bankr. E.D.N.C. June 6, 2013) ("To qualify as a 'bona fide dispute' under § 363(f)(4), 'the propriety of the lien does not necessarily have to be the subject of an immediate or concurrent adversary proceeding.'") (quoting *In re Collins*, 180 B.R. 447, 452 n.8 (Bankr. E.D. Va. 1995)). In fact, requiring an adversary proceeding would be inconsistent with the goal and language of section 363(f)(4). *See In re Daufuskie Island Props., LLC*, 431 B.R. 626, 645 (Bankr. D.S.C. 2010) ("The goal of § 363(f)(4) is to 'allow the sale of property subject to dispute so that liquidation of the estate's assets need not be delayed while such

disputes are being litigated.'") (quoting *In re Bella Vista Assocs., LLC*, No. 07-18134 JHW, 2007 WL 4555891, at *4 (Bankr. D.N.J. Dec. 18, 2007)).

**III.    The consigned inventory is subject to Article 9 of the UCC, and the Objecting Consignors have not met their burden to claim otherwise.**

17.    As noted above, the Objecting Consignors do not dispute that the consigned inventory was provided to Diamond on a consignment basis.  *See supra* ¶ 6.  The UCC defines consignment as follows:

> "Consignment" means a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:
>
>> (A) the merchant:
>>
>>> (i) deals in goods of that kind under a name other than the name of the person making the delivery;
>>>
>>> (ii) is not an auctioneer; and
>>>
>>> (iii) is not generally known by its creditors to be substantially engaged in selling the goods of others.
>>
>> (B) with respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery;
>>
>> (C) the goods are not consumer goods immediately before delivery; and
>>
>> (D) the transaction does not create a security interest that secures an obligation.

Md. Code Ann., tit. 9, § 9-102(a)(20).

18.    Under the UCC, a consignor bears the burden of proving that its arrangement with a consignee falls outside the definition in section 9-102(a)(20).  *See In re Downey Creations, LLC*, 414 B.R. 463, 469 (Bankr. S.D. Ind. 2009) (noting that the burden is "on the party who bears the risk under § 9–102(a)(20), i.e., the consignor").   Notably, certain Objecting Consignors acknowledge their burden of proof regarding the applicability of Article 9 as to their respective arrangement with Diamond.  *See* GAMA Obj. ¶ 17 ("The consignor has the burden of proving that the transactions in question do not meet the UCC consignment definition.");  Ad Hoc Committee

Obj. ¶¶ 24 & 33 (arguing Debtors bear the burden on this issue, while simultaneously recognizing their burden by asserting that "Consignors will easily prove that the majority of creditors knew that the Debtors dealt in consigned stock").

19.    Placing the burden on the consignor to demonstrate that its arrangement falls outside Article 9 is consistent with the underlying purpose of sections 9-102(a)(20) and 9-319 of the UCC.  In requiring a consignor to protect its interest (by filing a UCC-1 financing statement) as to a consignee's creditors, the UCC focused not on protecting a consignor, but rather on protecting a consignee's creditors from the equivalent of a secret lien in the consignee's inventory. *See Downey*, 414 B.R. at 469–70 (citing a UCC treatise and case law in discussing the purpose of the UCC consignment provisions); *In re Niblett*, 441 B.R. at 496 ("The essential idea of the law is that if a merchant holds out inventory as his inventory, creditors have a right to rely on the implied representation . . . .  A consignor can protect himself by filing a financing statement. A creditor or prospective creditor cannot protect himself because the knowledge of the consignment is not publicly known.").  As the *Downey* court explained:

> [I]t makes little sense to place the burden of proving § 9-102(a)(20) on a consignee's creditors (or, as in this case, a debtor in possession sitting in the shoes of a hypothetical lien creditor by virtue of 11 U.S.C. § 544(a)(1)).  As between a consignee's creditors and the consignor, only consignor is in a position to determine whether its transaction with the consignee falls under the U.C.C.'s definition of 'consignment' and to file a financing statement to perfect its interest if it does.  It stands to reason, then, that if a consignor chooses not to file a financing statement, it must then bear the burden of proving that the transaction is not subject to Article 9 if and when a dispute arises.  In the Court's opinion, placing the burden of proof on the consignor provides some incentive for the consignor to file a U.C.C. financing statement to protect its interest simply out of an abundance of caution.  That, in turn, not only discourages 'secret liens,' but also provides more predictability, thereby reducing the need for costly litigation such as the case at hand.

*Downey*, 414 B.R. at 470–71.  The court's reasoning in *Downey* is sound and consistent with the language of former section 2-326 of the UCC, which explicitly placed the burden of proof regarding the "general knowledge" of a consignee's creditors on the consignor.  *See id.* at 469. Therefore, while the burden imposed on consignors may at first blush seem unfair, it is grounded in the policy behind the applicable UCC provisions – "to protect general creditors of the consignee from claims of consignors that have undisclosed consignment arrangements with the consignee that create secret liens on the inventory."  *Valley Media*, 279 B.R. at 125.

20.     The Objecting Consignors cite to cases outside this Court's jurisdiction that place the burden on the debtor to prove that an arrangement falls within the consignment definition under Article 9. These cases offer limited to no reasoning or analysis for placing the burden on the debtor/consignee and are inconsistent with the purpose of sections 9-102(a)(20) and 9-319(a) of the UCC, as explained above.

**A.     The Objecting Consignors fail to show that Diamond was not "generally known" by its creditors to be "substantially engaged" in selling consigned inventory.**

21.     Relying on their claim that the burden lies with the Debtors to establish the consignment arrangements are within the scope of Article 9, the Objecting Consignors offer no evidence to support a finding that Diamond was "generally known" by its creditors to be "substantially engaged" in selling consigned inventory.  Yet, as discussed above, this reliance is misplaced and fatal to the Objecting Consignors' argument that Article 9 is inapplicable.

22.     To satisfy its burden under section 9-102(a)(20)(A)(iii), a consignor must prove a two-prong test by a preponderance of the evidence: "(1) that the consignee is substantially engaged in selling the goods of others, *and* (2) that it is generally known by the creditors of the consignee that this is the case."  *Valley Media*, 279 B.R. at 124 (emphasis in original).  The first prong – that the consignee is "substantially engaged" – requires that, at a minimum, a merchant must sell more

than 20% of its inventory on consignment. *See Matter of High-Line Aviation, Inc.*, 149 B.R. 730, 738 (Bankr. N.D. Ga. 1992) (holding that 10% of sales on consignment was not a substantial amount to show that a "consignee was primarily engaged in selling the goods of others"); *In re Valley Media, Inc.*, 279 B.R. at 125 ("a merchant must not hold less than 20% of the value of its inventory on a consignment basis"); *In re TSAWD Holdings, Inc.*, 601 B.R. 599, 606 (Bankr. D. Del. 2019) ("The minimum threshold for substantial engagement is 20% of consigned goods"). The Objecting Consignors cannot prove this first prong.  While the Objecting Consignors bear the burden on this issue, the Debtors have provided the Objecting Consignors with detailed sale information for the three years leading up to these chapter 11 cases, which shows that Diamond's sales of consigned inventory did not exceed 17% of Diamond's total sales during the three years pre-petition date.  The Objecting Consignors have provided no evidence (nor could they) that consigned inventory sales comprised more than 20% of Diamond's total sales.

23.    Even if the Objecting Consignors could prove Diamond was "substantially engaged" in selling consigned inventory (which it was not), the Objecting Consignors must also prove that Diamond was  "generally known by its creditors" to be substantially engaged in selling consigned inventory.  Md. Code Ann., tit. 9, § 9-102(a)(20)(A)(iii).  This second prong requires that "a majority of the debtor-consignee's creditors were aware that the consignee was substantially engaged in selling the goods of others, i.e. consignment sales." *Valley Media*, 279 B.R. at 125 (citing *In re BRI Corp.*, 88 B.R. 71, 75 (Bankr. E.D. Pa. 1988)). "That majority is determined by the number of creditors, not by the amount of creditors' claims."  *Downey*, 414 B.R. at 471.  The Objecting Consignors must prove that a majority of Diamond's approximately 1100 creditors had actual knowledge that Diamond sold consigned inventory. *See id.* ("Testimony as to general knowledge in the industry is insufficient to prove knowledge by a majority of creditors."); *see also*

*Valley Media*, 279 B.R. 125 (same); *In re Corvette Collection of Boston, Inc.*, 294 B.R. 409, 414 (Bankr. S.D. Fla. 2003) (finding that consignors' testimony that "most of the Debtor's inventory was held on consignment" and "everybody who wanted to sell a Corvette knew that the Debtor primarily sold consigned vehicles" fell "well short" of the consignors' burden of proof). Other than unsubstantiated claims of purported industry knowledge, the Objecting Consignors have made no effort to establish that a majority of Diamond's creditors were aware that Diamond sold consigned inventory.[7] *See, e.g.*, Cryptozoic Obj., at p. 2; GAMA Obj. ¶ 10. Accordingly, the Objecting Consignors have not satisfied their burden with respect to section 9-102(a)(20)(A)(iii).

24.     The Ad Hoc Committee and the Consignment Group point to the actual knowledge of JPMorgan Chase Bank, N.A. – the Debtors' DIP Lender – that Diamond sold consigned inventory to bolster their position with respect to section 9-102(a)(20)(A)(iii) of the UCC. *See* Ad Hoc Committee Obj. ¶¶ 30 & 31; Consignment Group Obj. ¶¶ 24 & 25. This argument misses the point. First, the knowledge of one of Diamond's creditors does not constitute a majority for purposes of section 9-102(a)(20). Second, the DIP Lender's interest in the consigned inventory is irrelevant for purposes of the Consignment Motion. The relevant party is Diamond, which is the hypothetical lien creditor pursuant to section 544(a) of the Bankruptcy Code. Section 544(a) makes clear that a debtor's rights and powers of a hypothetical lien creditor are "without regard to any knowledge of the trustee or of any creditor." 11 U.S.C. § 544(a); *see also Valley Media*, 279

---

[7]     GAMA is the only Objecting Consignor to offer declarations in support of its objection. However, the declarations, which are presented as support for GAMA's conclusory claims that "it is widely known and understood amongst the Debtors' creditors that the Debtor is substantially engaged in selling the good of others and that the majority of the Debtors' inventory consists of Consigned Goods," are wholly insufficient to prove the "generally known" prong of section 9-102(a)(20)(A)(iii) of the UCC. GAMA Obj. ¶ 10. *See In re Wedlo Holdings, Inc.*, 248 B.R. 338, 341 (Bankr. N.D. Ill. 2000) (finding that consignor's declaration opining that the debtor was generally known to obtain inventory on consignment was insufficient to prove the debtor was generally known for selling consigned inventory).

B.R. at 132 ("[W]hile a consignor that failed to protect its interest . . . might prevail over a secured creditor of the consignee who had actual knowledge of the consignment, that consignor will not prevail over a trustee exercising its powers pursuant to 11 U.S.C. § 544(a)").  Therefore, JPMorgan's or the prepetition Debtors' knowledge cannot be imputed to Diamond, as a debtor in possession, and has no bearing on Diamond's right to sell consigned inventory in accordance with the Consignment Motion.

25.    The Debtors anticipate that some or all of the Objecting Consignors will argue that, for purposes of the 51% knowledge requirement of section 9-102(a)(20) of the UCC, some subset of Diamond creditors, rather than the entire creditor body, should be considered, based on the fact that Diamond operated several unincorporated divisions.  Any such argument should be rejected, because it is inconsistent with the case law regarding the "generally known" prong of section 9-102(a)(20).  As detailed in Mr. Gorin's declaration in support of the first day relief for these cases, Diamond conducts business through three unincorporated divisions: (i) Alliance Game Distributors, (ii) Diamond Comic Distributors, and (iii) Collectible Grading Authority.  *See Declaration of Robert Gorin in Support of Frist Day Relief* [D.I. 20], ¶ 6.  These three divisions comprise a single, legal entity: Diamond Comic Distributors, Inc.  Unincorporated divisions cannot be considered merchants under section 9-102(a)(20) of the UCC. *See In re Valley Media, Inc.*, 279 B.R. at 127 ("I find that as an unincorporated division of [a debtor], DNA did not have a legal identity independent from [a debtor]").  The fact that Diamond conducted business with different creditors using different trade names is immaterial. *Id.* at 129. ("A corporation may use names other than the one in its charter and yet, it is still not more than one entity.").  The applicable creditor body for purposes of section 9-102(a)(20) is that of Diamond.

26.     For the foregoing reasons, the Objecting Consignors bear the burden of proving that a majority in number of Diamond's creditors were aware that Diamond substantially engaged in selling consigned inventory for the Objecting Consignors' arrangements to be considered outside the scope of the UCC.  The Objecting Consignors have not done so. Nor can they.  As such, Article 9 governs the consignment arrangements at issue.

**B.     The Objecting Consignors cannot prove that the consigned inventory is consumer goods.**

27.     The Ad Hoc Committee and Humanoids contend that the consigned inventory constitutes "consumer goods" and that, as a result, section 9-102(a)(20)(C) is not satisfied.  Were this contention to be true – and it is not – the consignment arrangements at issue would be outside the scope of the UCC.

28.     The plain language of section 9-102(a)(20) of the UCC, which defines "consignment", requires that "the goods are not consumer goods <u>immediately before delivery</u>." Md. Code Ann., tit. 9, § 9-102(a)(20)(C) (emphasis added). "Consumer goods" are defined as "goods that are used or bought for use primarily for personal, family, or household purposes." *Id.* at § 9-102(a)(23).  The nature of goods under the UCC is dependent upon the intended use of the goods.  *See In re Fiscante*, 141 B.R. 303, 304–05 (Bankr. W.D. Pa. 1992) ("Goods are not classified according to their design or intrinsic nature, but according to the use to which the owner puts them."); *In re Lance*, No. 05-63498, 2006 WL 1586745, at *2 (Bankr. W.D. Mo. Mar. 7, 2006) ("The determinative factor is the principal use to which the property is put.").

29.     Here, the nature of the goods at issue – comic books, graphic novels, and related products – immediately before delivery was inventory.  The Objecting Consignors did not have an intended personal family or household use for the consigned inventory.  The court in *Niblett* addressed this issue and its ruling is directly applicable here.  In *Niblett*, the debtor was the sole

proprietor of an antique store. *Niblett*, 441 B.R. at 492. The chapter 7 trustee moved to sell consigned goods free and clear in the bankruptcy case, and consignors objected to the sale on the basis that, among other things, section 9-102(a)(20) was not satisfied. *Id.* In finding that section 9-102(a)(20)(C) was satisfied for all but one of the consignors, the court distinguished between consignors in the business of buying and selling antiques and an individual consignor who had returned a previously-purchased painting to the debtor for re-sale. *Id.* at 494. The court found that with respect to the consignors in the antique business, the goods in the consignors' hands immediately before delivery to the debtor were inventory; but with respect to the individual consignor, the painting in the consignor's hands immediately before delivery was a consumer good because the painting was for personal use and there was no indication that the individual consignor was a dealer in antiques or held the painting for investment purposes. *Id.*

30.     There can be no serious argument that the consigned product at issue, while in the hands of the Objecting Consignors – which are all entities engaged in the business of publishing and/or selling such inventory – was anything other than inventory immediately before delivery. The Ad Hoc Committee's and Humanoids's argument that section 9-102(a)(20)(C) is not satisfied should be overruled.

## IV.    The consigned inventory received postpetition is properly subject to the proposed sales set forth in the Consignment Motion.

31.     The Ad Hoc Committee asserts that "[o]nce the Court determines that Article 9 does not apply, it must conclude that the postpetition [consigned inventory] is not property of the estate in accordance with Bankruptcy Code § 552." Ad Hoc Committee Obj. ¶ 40. This assertion does not withstand even the most cursory scrutiny. As a preliminary matter, it relies upon a determination by the Court that "Article 9 does not apply", which is not the situation here for the reasons addressed in this Reply. It also relies on section 552 of the Bankruptcy Code, which

17

addresses the post-petition effect of any "security agreement entered into by the debtor before the commencement of the case". 11 U.S.C. § 552(a). Again – this is not the situation here. As previously noted, Diamond is a hypothetical lien creditor under section 554(a) of the Bankruptcy Code. That is not the same as having a pre-petition security agreement. See 11 U.S.C. § 101(50) (defining "security agreement" as an "<u>agreement</u> that creates or provides for a security interest") (emphasis added).

32.    There is no reason, and the Ad Hoc Committee articulates no reason, why the recovery of a judgment lien creditor such as Diamond pursuant to section 544(a) of the Bankruptcy Code should be limited to those assets of the debtor that existed on the date the creditor obtained its judgment lien. Phrased differently, if a creditor obtains a judgment lien against a debtor on a Monday, it should be able to execute against assets obtained by the judgment debtor any day thereafter. Certainly, other creditors of the Debtors could – absent the automatic stay – exercise their state law rights under section 9-319(a) of the UCC to execute against consigned inventory received by the Debtors post-petition. There is no basis to conclude that Diamond, in the status of a hypothetical lien creditor, should not be able to do so also.


[*Remainder of page left intentionally blank*]

56013480.4

WHEREFORE, for the reasons set forth above, the Debtors respectfully request that the Court overrule the Consignment Objections and grant the relief requested in the Consignment Motion, together with any other relief that the Court deems just and appropriate under the circumstances.

Dated: August 14, 2025

**SAUL EWING LLP**

By: */s/ Jordan D. Rosenfeld*
    Jordan D. Rosenfeld (MD Bar No. 13694)
    1001 Fleet Street, 9th Floor
    Baltimore, MD 21202
    Telephone: (410) 332-8600
    Email: jordan.rosenfeld@saul.com

    -and-

    Jeffrey C. Hampton (admitted *pro hac vice*)
    Adam H. Isenberg (admitted *pro hac vice*)
    Turner N. Falk (admitted *pro hac vice*)
    1500 Market Street, 38th Floor
    Philadelphia, PA 19102
    Telephone: (215) 972-7777
    Email: jeffrey.hampton@saul.com
        adam.isenberg@saul.com
        turner.falk@saul.com

    -and-

    Mark Minuti (admitted *pro hac vice*)
    Paige N. Topper (admitted *pro hac vice*)
    Nicholas Smargiassi (admitted *pro hac vice*)
    1201 N. Market Street, Suite 2300
    Wilmington, DE 19801
    Telephone: (302) 421-6800
    Email: mark.minuti@saul.com
        paige.topper@saul.com
        nicholas.smargiassi@saul.com

    *Counsel for Debtors and Debtors in Possession*