# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
# (BALTIMORE DIVISION)

| | |
|---|---|
| In re: | Chapter 11 |
| Diamond Comic Distributors, Inc., *et al.* | Case No. 25-10308 (DER) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 531, 649, 713** |

### OPPOSITION OF JPMORGAN CHASE BANK, N.A. TO AD HOC COMMITTEE OF CONSIGNORS' MOTION TO ASSUME OR REJECT EXECUTORY CONTRACTS WITH MEMBERS; AND FOR RELATED RELIEF

JPMorgan Chase Bank, N.A., as Prepetition Lender and DIP Lender (collectively, the "**Lender**"), by and through its undersigned counsel, hereby files this opposition (this "**Opposition**") to the *Ad Hoc Committee of Consignors' Motion Seeking Entry of an Order Requiring the Debtors to Assume or Reject Executory Contracts with Members of Ad Hoc Committee of Consignors; and For Related Relief* [Docket No. 679] (the "**Motion to Compel**") filed by the *Ad Hoc* Committee of Consignors[2] (the "**Ad Hoc Committee**"). In support of this Opposition, the Lender respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases and the last four (4) digits of each Debtor's federal taxpayer identification number are as follows: Diamond Comic Distributors, Inc. (3450), Comic Exporters, Inc (7457), Comic Holdings, Inc. (7458), and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] The Ad Hoc Committee has not been designated as an official committee in this case, and is comprised the following thirteen (13) jointly represented consignors: Ablaze LLC; American Mythology Productions, LLC; Andrew Kafoury dba Battle Quest Comics; Avatar Press, Inc., Bryan Seaton dba Action Lab; Drawn & Quarterly Books Inc., Fantagraphics Books, Inc.; Green Ronin Publishing LLC; Herman & Geer Communications, Inc. dba Hermes Press; Living the Line LLC; Paizo Inc.; UDON Entertainment Inc.; and Zenescope Entertainment Inc. See *Rule 2019 Verified Statement of YVS, Law LLC Disclosing Representation of Multiple Parties in Chapter 11 Case* [Docket No. 658].

1

**Preliminary Statement**

The Debtors, the Lender and the Consignment Vendors are presently in the midst of litigating an ownership and priority dispute over competing claims and liens with respect to the Debtors' pending motion to sell the Consigned Goods.  By filing their Motion to Compel, the Consignment Vendors seek to end run that dispute, and to recover possession of the Consignment Inventory following a deemed rejection of the Vendor Contracts.  That end run comes up short for multiple reasons.

First, and contrary to the suggestion of the Consignment Vendors, a deemed rejection does *not* amount to a termination of the Vendor Contracts.  Second, assuming without conceding that the Vendor Contracts were terminated, that termination would *not* moot the pending property dispute and would *not* vest the Consignment Vendors with ownership of the Consignment Inventory.  At most, the Consignment Vendors would have a right of reclamation to the Consignment Inventory, and that reclamation right would be junior in priority to the claims and interests of the Debtors and the Lender.,

For all of these reasons, the deemed rejection of the Vendor Contracts changes nothing with respect to the parties' pending disputes over ownership and sale of the Consignment Inventory.  The Motion to Compel should be denied.

**Background**

1. On January 14, 2025 (the "***Petition Date***"), each of the Debtors commenced a case under chapter 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "***Bankruptcy Code***"). The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On January 29, 2025, the Office of

the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**").

2. On February 19, 2025, the Court entered the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 163] (the "**Final DIP Order**"), pursuant to which, among other things, the Debtors were granted authority to obtain senior secured postpetition financing pursuant to the terms and conditions of the Final DIP Order and that certain senior secured Debtor-in-Possession Credit Agreement, dated as of January 16, 2025 (as amended from time to time, the "**DIP Credit Agreement**").[3]

3. On June 25, 2025, the Debtors filed the *Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances, and (III) Granting Related Relief* (the "**Consignment Sale Motion**"),[4] seeking, among other things, approval of (i) procedures to sell or otherwise dispose of consigned inventory and (ii) the sales or dispositions of the consigned inventory, free and clear of all liens, claims, interests and encumbrances. Attached to the Consignment Sale Motion is a list of the vendors (collectively, the "**Consignment Vendors**") that provided consigned inventory (the "**Consigned Inventory**") currently in the possession of the Debtors.

---

[3] The DIP Credit Agreement was subsequently amended five times pursuant to this Court's Orders Approving Stipulations Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement [Docket Nos. 243, 345, 409, 470, & 569].

[4] Capitalized terms used but not defined herein shall have the meaning described in the Consignment Sale Motion.

4. In response to the Consignment Sale Motion, the following Consignment Vendors filed objections:[5] Humanoids, Inc. [D.I. 598]; the Ad Hoc Committee of Consignors[6] (the "***Ad Hoc Committee***") [D.I. 601]; The Game Manufacturers Association ("***GAMA***") [D.I. 602], the Consignment Group[7] [D.I. 603]; Cryptozoic Entertainment, LLC [D.I. 606]; Image Comics, Inc. [Docket No. 612]; and Zombie Love Studios (collectively, the "***Consignor Objections***").

5. On July 24, 2025, the Ad Hoc Committee filed the *Ad Hoc Committee of Consignors' Motion to Stay Debtors' Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances, and (III) Granting Related Relief* [Docket No. 649] (the "***Motion to Stay***") and on August 18, 2025, the Ad Hoc Committee filed a *Line Filing Supplemental Cases Supporting Motion to Stay* [Docket No. 713]. The Motion to Compel and Motion to Stay are currently set for an evidentiary hearing with the Consignment Sale Motion on August 18, 2025 (the "***Sale Hearing***").

6. On August 14, 205, Lender filed its *Omnibus Reply (A) In Support of Debtors' Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned*

---

[5] As of the date of this Opposition, the objections of TwoMorrows Publishing [Docket No. 578]; Molten Core Media, LLC [Docket No. 585]; Graphitti Designs, Inc. [Docket No. 586]; Abstract Studio, Inc. [Docket No. 589]; NBM Publishing, Inc. [Docket No. 595]; and William M. Gaines, Agent, Inc. [Docket No. 623] have been stricken by the Court.

[6] The Ad Hoc Committee has not been designated as an official committee in this case, and is comprised of the following thirteen (13) jointly represented consignors: Ablaze LLC; American Mythology Productions, LLC; Andrew Kafoury dba Battle Quest Comics; Avatar Press, Inc., Bryan Seaton dba Action Lab; Drawn & Quarterly Books Inc., Fantagraphics Books, Inc.; Green Ronin Publishing LLC; Herman & Geer Communications, Inc. dba Hermes Press; Living the Line LLC; Paizo Inc.; UDON Entertainment Inc.; and Zenescope Entertainment Inc. *See Rule 2019 Verified Statement of YVS, Law LLC Disclosing Representation of Multiple Parties in Chapter 11 Case* [Docket No. 658].

[7] The "Consignment Group" is comprised of the following thirteen (13) jointly represented consignors: Aspen MLT, LLC /a/ka Aspen Comics; Black Mask Studios, LLC; DSTLRY Media, Inc.; Dynamic Forces, Inc. a/k/a Dynamite Entertainment; Heavy Metal International, LLC; MagneticPress, LLC; Massive Publishing, LLC; Oni-Lion Forge Publishing Group, LLC f/k/a Oni Press, LLC; Panini UK Ltd.; Punk Bot Comic Books, LLC a/k/a Alien Books; The Penn State University a/k/a Graphic Mundi; Titan Publishing Group, Ltd. and Vault Storyworks, LLC a/k/a Vault Comics f/k/a Creative Mind Energy.

*Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances, and (III) Granting Related Relief; And (B) in Opposition to Consignment Vendors' Objections to Same* and supporting *Memorandum of Points and Authorities in Support of Lender's Omnibus Reply* [D.I. 728] (the "**Lender Omnibus Reply**"), and the Lender's Opposition to the Motion to Stay [D.I. 729].

## Opposition

7.  As a preliminary matter, Lender respectfully directs the Court to and incorporates herein the legal arguments raised in Lender's Omnibus Reply. Through these arguments and authorities, the Lender has demonstrated that the Consignment Vendors hold a defective position—their failure to file UCC-1 financing statements dooms their property interest in the Consigned Inventory. It is the Debtors who now own the Consigned Inventory and, ultimately, the Lender who holds a first priority lien interest in these assets.

8.  Through their Motion to Compel, the Consignment Vendors seek to end run that result. They make a multi-part argument: (i) an immediate decision must be made as to whether the Vendor Contracts are assumed or rejected, (ii) upon rejection, the Vendor Contracts should be deemed terminated as a matter of state law, (iii) upon termination, the Consignment Vendors are entitled to the delivery and return of the Consigned Inventory. *See generally* Motion to Compel. In essence, the Consignment Vendors contend that the rejection of their Vendor Contracts vests them with ownership of the Consigned Inventory, thereby mooting the pending dispute over ownership and priority relative to these goods.

9.  The Consignment Vendors' argument fails on two levels. Under applicable law, rejection does *not* result in termination of the Vendor Contracts. And assuming without conceding that these agreements *were* terminated, that termination would not decide the pending property

dispute in the Consignment Vendors' favor, or vitiate the superior rights of the Debtors and the Lender in the Consignment Inventory.

### A. Contract Rejection Is Not Deemed Termination

10. The Motion to Compel requests that the Vendor Contracts be deemed terminated upon the Debtors' rejection of the contracts. See Motion to Compel, ¶ 40.

11. Section 365(g) of the Bankruptcy Code plainly provides that "the rejection of an executory contract[ ] constitutes *a breach* of such contract." 11 U.S.C. § 365(g)(emphasis added). The debtor's breach is deemed to occur "immediately before the date of the filing of the bankruptcy petition, rather than on the actual post-petition rejection date." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 374 (2019). Under section 365(g) of the Bankruptcy Code, rejection of an executory contract has the same consequences as a breach under non-bankruptcy law, except that the debtor is relieved of performance obligations and damages are treated as prepetition claims against the bankruptcy estate (which likely may be paid at cents on the dollar). *Id.* at 374. By thus giving the Consignment Vendors pre-petition claims, section 365(g) places them "in the same boat as the debtors' unsecured creditors." *Id.*

12. It necessarily follows that a rejection of the Vendor Contracts, without more, cannot possibly vest the Consignment Vendors with ownership or other rights in the disputed Consignment Inventory. There is a pending dispute to these goods—with competing claims and liens asserted by the Debtors and the Lender—and a rejection of the underlying contract cannot possibly divest the Debtors and the Lender of these competing claims and liens.

**B. Even Assuming *Arguendo* that the Vendor Contracts Are Deemed Terminated, Applicable Law Does Not Permit the Return of the Consigned Inventory, which is Subject to the Lender's DIP Liens.**

13. The Ad Hoc Committee argues that, "[p]ursuant to the Contracts, the Consignors may reclaim goods upon termination." *See* Motion to Compel, ¶ 38. Under the Bankruptcy Code and the UCC, a vendor demanding a return of goods must assert and prosecute a successful reclamation demand. 11 U.S.C. § 546(c); Md. Code Ann., Com. Law § 2-702.  That is to say, at *most* the Consignment Vendors have a right to recover possession of the disputed goods, and that right must yield to rights, claims and liens of a higher priority.

14. As a remedy, reclamation has certain fundamental limitations. A seller may not exercise its right to reclaim goods if the buyer possesses the goods and a secured creditor or lien creditor has already perfected its interest in them. Md. Code Ann., Com. Law § 2-702(3)("The seller's reclamation right is subject to the rights of a buyer in ordinary course or other good-faith purchaser for value."); Md. Code Ann., Com. Law § 1-201(b)(20)("Purchase" includes the taking of a lien or security interest). Furthermore, reclamation is an *in-rem* remedy: a seller's rights are limited to the goods it sold or their proceeds. Since the reclamation right is a property right in the inventory to secure repayment, § 101(37) defines such rights as a lien under the Bankruptcy Code. 11 U.S.C. § 101(37).

15. Both section 546(c) of the Bankruptcy Code and section 2-702 of the UCC provide that reclamation rights of a seller are subject to the rights of a secured lender.  The result is the same under both sections.  Because the Consignment Vendors did not timely and properly perfect a security interest in the applicable Consigned Inventory by properly filing a UCC financing statement and sending the requisite authenticated and pre-delivery notification to the Lender, it necessarily follows that the Consignment Vendors' rights (if any) in the Consignment Inventory

are junior to the DIP Liens. The Consignment Vendors therefore have no basis to enforce a reclamation demand over the objection and to the detriment of the Lender. The putative termination of the Vendor Contracts cannot change that outcome.

16. Indeed, it is well settled that reclamation rights are subject to the rights of a secured creditor with a floating lien on the goods to be reclaimed. *See, e.g., Simon & Schuster, Inc. v. Advanced Mktg. Servs. (In re Advanced Mktg. Servs.)*, 360 B.R. 421, 426 (Bankr. D. Del. 2007) (finding that under the express language of section 546(c) of the Bankruptcy Code, senior lenders' pre-petition and post-petition liens on the debtors' inventory were superior to a seller's reclamation claim and for that reason alone, seller has failed to establish it any likelihood of success in establishing it has a valid reclamation right under section 546(c) of the Bankruptcy Code); *In re Dairy Mart Convenience Stores, Inc.,* 302 B.R. 128, 133 (Bankr. S.D.N.Y. 2003)("A holder of a prior perfected, floating lien on inventory is treated as a good faith purchaser with rights superior to those of a reclaiming seller."); *In re Dana Corp.*, 367 B.R. 409, 419 (Bankr. S.D.N.Y. 2007)("[A] reclaiming seller is entitled to a lien or administrative expense claim only to the extent that the value of the specific inventory in which the reclaiming seller asserts an interest exceeds the amount of the floating lien in the debtor's inventory.").

17. The DIP Loan is secured by a lien on all of the Debtors' pre-petition, present and future assets and all proceeds, products, and accessions thereof, in each case whether then owned or existing or thereafter acquired or arising, from the sale of the Debtors assets. *See* Final DIP Order, ¶ 13(a). The Final DIP Order also provides that the DIP Lien is senior to all other liens pursuant to sections § 364(c)(2) and § 364(c)(3).

18. The DIP Liens must therefore take precedence over any attempt by the Consignment Vendors to exercise a contractual right of reclamation—whether based on

termination of the Vendor Contracts or otherwise. Perhaps mindful of this limitation, none of the Consignment Vendors has yet attempted to assert a reclamation demand in this case.[8] The Motion to Compel amounts to an untimely, back door attempt to prosecute precisely such a reclamation demand. That reclamation demand must therefore be denied—not only because it is without legal or factual basis, but also because such demand is in derogation of the Final DIP Order and the DIP Lien.

19. The Consignment Vendors are, *at most*, unsecured creditors with claims for the amounts owing in connection with the Consigned Inventory. Those unsecured claims cannot provide a basis for the recovery of the Consigned Inventory, as both the Lender and Debtors have senior interests in these goods. *See In re Valley Media, Inc.,* 279 B.R. 105, 133 (Bankr. D. Del. 2002) (ruling that the objecting vendors may not obtain relief from the stay to recover the contested inventory and that the objecting vendors would have a pre-petition unsecured claim against the estate for the invoice price of the contested inventory).

## **Reservation of Rights**

20. Lender expressly reserves the right to (a) raise any objection it may have with respect to the terms of the proposed Consignment Sales, and (b) to be heard before the Court with respect to the entry of any Consignment Sale order and to raise additional arguments or objections in connection therewith.

**WHEREFORE**, Lender respectfully requests that the Court deny the Motion to Compel and grant such other and further relief as may be just and proper under the circumstances.

---

[8] At this point, it may also be too late for such a reclamation demand to be asserted. *See* 11 U.S.C. § 546(c)(1).

|  |  |
|---|---|
| DATED: August 15, 2025 | Respectfully submitted,<br><br>*/s/ Toyja E. Kelley*<br>Jonathan W. Young (admitted *pro hac vice*)<br>Toyja E. Kelley (Bar No. 26949)<br>Indira K. Sharma (Bar No. 28269)<br>Katherine E. Culbertson (admitted *pro hac vice*)<br>**TROUTMAN PEPPER LOCKE LLP**<br>701 8th Street, N.W., Suite 500<br>Washington, D.C. 20001<br>Toyja.Kelley@troutman.com<br>Indira.Sharma@troutman.com<br>Jonathan.Young@troutman.com<br>Katherine.culbertson@troutman.com |

## **CERTIFICATE OF SERVICE**

I, Toyja E. Kelley, hereby certify that, on the 15th day of August, 2025, I caused a true and correct copy of the foregoing *Opposition to Ad Hoc Committee's Motion to Stay* to be filed and served via CM/ECF on all parties who have registered for electronic service in these cases.

                                                             */s/Toyja E. Kelley*