UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| IN RE: | Jointly Administered under Case No. 25-10308-DER |
| DIAMOND COMIC DISTRIBUTORS, INC., et al.[1] | Chapter 11 |
| Debtors. | |

**MOTION SEEKING ENTRY OF AN ORDER REQUIRING THE DEBTORS TO ASSUME OR REJECT EXECUTORY CONTRACTS WITH MEMBERS OF THE CONSIGNMENT GROUP; AND FOR RELATED RELIEF**

The members of the Consignment Group (the "Consignors"),[2] by and through their undersigned counsel, file this Motion Seeking Entry of an Order Requiring the Debtors to Assume or Reject Executory Contracts with Members of Consignment Group and for Related Relief, and in support thereof state as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and procedural predicates for the relief requested in this Motion are §§ 105 and 365(d)(2) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585).

[2] The Consignors/Movants herein are: (i) Aspen MLT, LLC a/k/a Aspen Comics, (ii) Black Mask Studios, LLC, (iii) DSTLRY Media, Inc., (iv) Dynamic Forces, Inc. a/k/a Dynamite Entertainment, (v) Heavy Metal International, LLC, (vi) Magnetic Press, LLC, (vii) Massive Publishing, LLC, (viii) Oni-Lion Forge Publishing Group, LLC f/k/a Oni Press, LLC, (ix) Panini UK Ltd., (x) Punk Bot Comic Books, LLC a/k/a Alien Books, (xi) The Penn State University a/k/a Graphic Mundi, (xii) Titan Publishing Group, Ltd., (xiii) Vault Storyworks, LLC a/k/a Vault Comics f/k/a Creative Mind, and (xiv) Dark Horse Comics, LLC.

6006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6006-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Rules").

**Procedural Background**

**I.    General Background**

3. On January 14, 2025 (the "Petition Date"), the Debtors each filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

4. On January 21, 2025, the Debtors filed the Debtors' Motion for Entry of an Order (I) Authorizing and Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling an Auction and a Sale Hearing, (IV) Approving the Form and Manner of Notice Thereof, and (V) Establishing Notice and Procedures for the Assumption and Assignment of Certain Executory Contracts and Leases [Dkt. 68] (the "Motion to Sell Substantially All Assets").

5. On May 1, 2025, in connection with the Motion to Sell Substantially All Assets, the Court entered two orders approving the sale of substantially all assets to Sparkle Pop, LLC ("Sparkle Pop") and Universal Distribution, LLC ("UDL") [Dkts. 407 and 408] (the "Orders Approving Sale of Substantially All Assets").

6. On June 10, 2025, the Debtors filed two Notice of Sale Closings, stating the sales contemplated by the Orders Approving Sale of Substantially All Assets each closed in mid-May 2025 [Dkts. 499 and 500].

7. Goods held on consignment by the Debtors were excluded from the definition of Inventory sold to Sparkle Pop and/or UDL upon closing. See Dkt. No. 407, Ex. 1, p.8; Dkt. No. 408, Ex. 1, p.6. Sparkle Pop did not assume any contracts in its APA nor list any contracts being

assumed in its Notice of Sale Closing. However, Sparkle Pop was given twenty (20) business days after closing to designate additional contracts to be assumed and assigned, which could have included the Consignors' Contracts (defined below). See Dkt. No. 407, Ex. 1, ¶2.3. Accordingly, the time for Sparkle Pop to request the Consignors' Contracts to be assumed and assigned ended in early June 2025, and the Debtors have filed no motions to have the Consignors' Contracts assumed and assigned.

8. On June 25, 2025, the Debtors filed Debtors' Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances and (III) Granting Related Relief [Dkt. 531] (the "Motion to Sell Consigned Inventory").

9. On July 16, 2025, the Consignors filed the Consignment Group's Objection to Debtors' Motion for Entry of Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances and (III) Granting Related Relief [Dkt. 603] (the "Objection to Sell Consigned Inventory").

II. **Titan's Prior Motion to Assume or Reject**

10. On April 17, 2025, Titan Publishing Group, Ltd. ("Titan") filed an Emergency Motion to Compel Debtors to Assume or Reject Distribution Agreement with Titan Publishing Group, Ltd. by April 25, 2025, and Related Relief, or in the Alternative for Administrative Expense [Dkt. 347] (the "Titan Motion to Assume or Reject").

11. On May 16, 2025, the Debtors filed Debtors' Objection to Emergency Motion to Compel Debtors to Assume or Reject Distribution Agreement with Titan Publishing Group, Ltd.

by April 25, 2025, and Related Relief, or in the Alternative for Administrative Expense [Dkt. 447] (the "Objection to Titan's Motion").

12. In the Objection to Titan's Motion, the Debtors state, among other things:

   a. "The asset purchase agreement with Sparkle Pop gives Sparkle Pop twenty days after the closing on the sale to designate additional executory contracts for assumption." (Obj. ¶2); see also Dkt. 407, Ex. 1 ¶ 2.3;

   b. "Following closing on the sale and the expiration of Sparkle Pop's designation period, the Debtors intend to reject certain contracts not assumed by the Purchaser. The Debtors anticipate that they will reject Titan's Distribution Agreement if it is not designated." (Obj. ¶3); and

   c. "The 'executoriness' of the Distribution Agreement is not at issue here . . . ." (Obj. ¶ 26).

## Factual Background

13. Each of the Consignors entered into an agreement (together, the "Contracts") with Diamond Comic Distributor, Inc.,[3] which governs their various rights and obligations for the consignment of products.

14. Each of the written Contracts provide for the following:

   a. the Consignors' obligation to ship their "inventory" (the "Stock") to the Debtors on a consignment basis;

   b. the Debtors' storage of the Stock;

   c. the Debtors' rights to sell and (and often be the exclusive distributor of) the Stock;

   d. the payment obligations to the Consignors being calculated based upon the value of the Stock sold to the Debtors' customers;

---

[3] The relief requested herein is with respect to all Debtors as the Contracts include provisions that they may be assigned to affiliates of Diamond Comic Distributors, Inc.

    e. the Consignors retain the exclusive right, title and interest in the Stock and related trademarks;

    f. the Contracts terminate upon the Debtors failure to make payment when due and such failure continues for 15 days after written notice to the Debtors that such amounts are owing;

    g. the Debtors are to return the Stock to the Consignors upon termination of the Contracts; and

    h. the Contracts are governed by Maryland law.

15. Pursuant to the Contracts, each of the Consignors has delivered Stock to the Debtors, which Stock is comprised of a mix of periodical comic books, graphic novels, graphic art publications, and other similar publications and/or games and related merchandise. The wholesale value of the Stock in the Debtors' possession is estimated to be in excess of $12 million.

16. None of the Consignors were granted a security interest in the Stock.

17. Also, notwithstanding the fact that goods held on consignment were not sold to either Sparkle Pop nor UDL, and the Debtor never assigned the underlying agreements with the Consignors that govern the Debtor's distribution of those goods, Distributor sent an E-Mail communication to the Consignors on May 27, 2025 (the "May E-Mail") to the contrary. (E-Mail Dated May 27, 2025, attached hereto as **Exhibit A**). In that communication Distributor told Consignors that:

> *New Ownership Responsible for Invoicing Related to All Sales Activity May 16 Onward: These obligations are fully separate from the bankruptcy estate **and are actively being processed and paid** under normal operating procedures. …*
>
> ***Diamond, now operating under the ownership of Ad Populum, is a new entity*** *and the new organization, responsible for all obligations from May 16 onward.*

(May E-Mail, emphasis added)

18. Accordingly, the May E-Mail indicated not only that Diamond was "operating under the ownership" of its purchaser Sparkle Pop (the subsidiary of Ad Populum), but misled Consignors into thinking that the Asset Sale to Sparke Pop was actually a sale of ownership, because it indicated that Diamond continued to operate under the ownership of a new buyer. Worse, the May E-Mail confirmed that Ad Populum was financially responsible for the payments of the Consignors stock, but Ad Populum never took assignment of the Consignors' executory agreements. The May E-Mail confirms that the Stock continued to be sold by someone after the Sparkle Pop and/or UDL sales closed, but it is unclear who is selling the Stock. The Debtor has confirmed that it has not sold stock after May 15, 2025, but has declined to voluntarily provide any information to the Consignors as to who sold Stock after May 15, 2025, which Stock was sold, or what payments remain due and owing to the Consignors on account of the sales. The Debtors have declined to voluntarily provide any information to the Consignors as to how any party other than the Diamond Distributor Debtor could sell Stock without a properly-assumed and assigned agreement to do so.

19. To the best of the Consignors' information and belief, the amounts due and owing to the Consignors for Stock sold from the Petition Date through May 15, 2025 (by the Debtor); and the amounts due and owing to the Consignors for Stock sold from May 15, 2025 through August 15, 2025 (presumably by Sparkle Pop), are not less than as follows:

| Client | Total Post-Petition Amount Owed | Post-Petition Arrears (through May 15, 2025) | Post-Petition Arrears (after May 15, 2025) |
|---|---|---|---|
| Aspen MLT, LLC a/k/a Aspen Comics | Unavailable | Unavailable | Unavailable |
| Black Mask Studios, LLC | Unavailable | Unavailable | Unavailable |
| DSTLRY Media, Inc. | $20,022.72 | $2,011.12 | $18,011.60 |

| | | | |
|---|---|---|---|
| Dynamic Forces, Inc. a/k/a Dynamite Entertainment | $1,091.230.47 | $509,114.21 | $582,116.26 |
| Heavy Metal International, LLC | $70,728.74 | $65,543.71 | $5,185.03 |
| Magnetic Press, LLC | $34,378.28 | $27,378.28 | $7,000 |
| Massive Publishing, LLC | $22,599.32 | $14,089.32 | $8,510.00 |
| Oni-Lion Forge Publishing Group, LLC f/k/a Oni Press, LLC | $133,265.59 | $47,265.59 | $86,000 |
| Panini UK Ltd. | $4,158.50 | $667.72 | $3,490.78 |
| Punk Bot Comic Books, LLC a/k/a Alien Books | Unavailable | Unavailable | Unavailable |
| The Penn State University a/k/a Graphic Mundi | $16,000 | $9,000 | $7,000 |
| Titan Publishing Group, Ltd. | Unavailable | Unavailable | Unavailable |
| Vault Storyworks, LLC a/k/a Vault Comics f/k/a Creative Mind | Unavailable | Unavailable | Unavailable |
| Dark Horse Comics, LLC | Unavailable | Unavailable | Unavailable |

20. Because the Consignors do not have up-to-date accurate real-time reporting as to what has been sold or collected, these amounts will likely increase with respect to post-May 15, 2025 ("Post-Sale") transactions. Furthermore, the Post-Sale transactions do not appear to be authorized by this Court, and the numbers reflected herein constitute the amounts that would be due to the Consignors if the sales were governed by the respective Consignors' agreements with the Debtor. The Consignors reserve all rights to any and all amounts recoverable against any party that sold Stock during the Post-Sale period without this Court's authority, including but not limited to a recovery of the full retail value of the Stock in accordance with applicable law (including but not limited to causes of action sounding in conversion).

## Argument

### I.    Article 9 of the UCC Does Not Apply

21. The Consignors hereby incorporate the legal arguments raised in the Objection to Sell Consigned Inventory. Notwithstanding the arguments in the Objection to Sell Consigned Inventory, this Court does not need to make any factual finding as to ownership of the Stock in

order to consider the Consignors' request for an order compelling rejection or assumption of their respective agreements, because there is separate authority under Bankruptcy Code §365 to grant such an order.

II. **The Contracts Are Executory in Nature Within § 365 of the Bankruptcy Code**

22. Most courts have adopted the definition of executory contracts articulated by Professor Vern Countryman to be those contracts where the "obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other." RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.), 361 F.3d 257, 264 (4th Cir. 2004) (quoting Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1973)).

23. Here, both the Debtors and Consignors have outstanding obligations under the Contracts, including but not limited to the Consignors' obligation to ship Stock to the Debtors upon request and the Debtors obligation to properly store the Stock and pay the Consignors when the Stock is sold to the Debtors' customers.

24. Furthermore, the Debtors previously agreed that the substantially similar Distribution Agreement with Titan was executory.

25. As such, the Contracts are executory in nature within § 365 of the Bankruptcy Code.

III. **Immediate Assumption or Rejection of the Contracts Should be Compelled**

26. 27. Section 365(b)(1) of the Bankruptcy Code provides that a debtor may not assume an executory contract of a debtor unless at the time of assumption, the debtor (a) cures, or provides adequate assurance that the trustee will promptly cure, any default; (b) compensates, or provides adequate assurance that the trustee will promptly compensate the agreement

counterparty for any actual pecuniary loss resulting from the default; and (c) provides adequate assurance of future performance under such contract. 11 U.S.C. § 365(b)(1).

27.     Pursuant to § 365(d)(2) of the Bankruptcy Code, the debtor usually has until confirmation to assume or reject executory contracts. However, § 365(d)(2) permits a counterparty to an executory contract to seek entry of an order compelling the debtor-in-possession to assume or reject such a contract or lease by a specified period of time. 11 U.S.C. § 365(d)(2); see also In re Mirant Corp., 440 F.3d 238, 254 (5th Cir. 2006) (recognizing the right of the nondebtor to file a motion to compel assumption or rejection of a lease or executory contract within a specified period of time).

28.     The legislative history of § 365(d) indicates that the purpose of this section is to "prevent parties in contractual or lease relationships with a debtor from being left in doubt concerning their status vis-à-vis the estate." H. REP. No. 95-595, 95th Cong. 1st Sess. at 348 (1977) S. REP. 989, 95th Cong., 2d Sess. at 59 (1978); see also In re Univ. Med. Ctr., 973 F.2d 1065, 1078-79 (3d Cir. 1992).

29.     While § 365(d)(2) generally "allows the trustee or debtor-in-possession a reasonable time within which to determine whether assumption or rejection of an executory contract would be beneficial to an effective reorganization" it is "not without limits." In re Adelphia Commc'ns Corp., 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003). "The determination of what constitutes a reasonable time to assume or reject is within the bankruptcy court's discretion based on the particular facts of each case." Id. (citing In re Burger Boys, 94 F.3d 755, 760 (2d Cir. 1996)) (other citations omitted).

30.     In determining what is a reasonable time for a debtor to decide whether to assume or reject a contract, courts consider the following non-exhaustive list of factors:

1. the nature of the interests at stake;

2. the balance of the hurt to the litigants;

3. the good to be achieved;

4. the safeguards afforded to the litigants;

5. whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary;

6. the debtor's failure or ability to satisfy post-petition obligations;

7. the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;

8. the importance of the contract to the debtor's business and reorganization;

9. whether the debtor has sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan of reorganization;

10. whether there is a need for judicial determination as to whether an executory contract exists;

11. whether exclusivity has been terminated; and

12. above all, the broad purpose of Chapter 11, which is to permit successful rehabilitation of debtors.

*See In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 429 (Bankr. S.D.N.Y. 2012) (quotations and citations omitted); *see also In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr. D. Del. 2001) (stating that in exercising its discretion to compel assumption or rejection, a court should balance the interests of the bankruptcy estate with the interest of the counter party); *In re St. Mary Hosp.*, 89 B.R. 503, 513 (Bankr. E.D. Penn. 1988) (weighing "the nature of the interests at stake, the balance of hurt to the litigants, the good to be achieved, and the safeguards afforded those litigants").

31. These factors weigh heavily in favor of requiring the Debtors to assume or reject the Contracts now. As for the most important factor – the ability to successfully rehabilitate the Debtors (and the related factor of the importance of the contract to the Debtors business and reorganization) – this substantially weighs in favor of shortening the time period to assume or reject. Here, the Debtors have already sold substantially all of their assets, are no longer operating, and the Contracts were not assigned within the time period provided in the Order Approving Sale of Substantially All Assets [Dkts. 68, 407, 408, 499, 500]. As such, there cannot be a successful reorganization/rehabilitation of the Debtors.

32. Additional facts that weigh in favor of shortening the time to assume or reject are plentiful. First and foremost, it is apparent that Sparkle Pop is selling the Stock post-May 15, 2025, without any authority to do so. Robert Gorin, the Debtors' Chief Restructuring Officer, testified on August 15, 2025 in a deposition that Sparkle Pop has sold more than $2 million of the consignment goods. This is not permissible, particularly where there has been no effective assumption or assignment of the Consignors' agreements. The Consignors expressly reserve all rights to seek recovery with respect to any claims that they may have against Sparkle Pop, or any third party that wrongfully received proceeds from the sale of the Consignors' stock without this Court's approval.[4] Even absent the May E-Mail, it is uncontroverted that the Debtors or their purchasers have sold Consignor goods post-petition without payment in full. The Debtors should not be permitted to continue operating under the Consignors' agreements at the sole risk of the Consignors, who will either have (i) growing administrative claims against the Debtors' estates; (ii) causes of action against the Debtors' purchasers who sold Consigned goods without proper

---

[4] The Consignors also reserve all rights with respect to any cause of action against any third party including, but not limited to, DIP Lender, Sparkle Pop and UDL, with respect to payments by the Debtors derived from the sale of the Consignors stock or any other property that the Consignors own that is not property of the Debtors' estates.

assignment and cure of their agreements; (iii) the Debtors' DIP Lender to the extent that it received proceeds of unauthorized sales of the Consignors' property, or (iv) most likely, a combination of these causes of action against multiple parties.

33. Furthermore (i) upon information and belief, the Debtors are unable to satisfy their post-petition obligations under the Contracts, including payment to the Consignors of the Stock sold after the Petition Date, (ii) the Consignors will suffer substantial harm to the extent that they are prohibited from identifying replacement distributors, particularly because the Debtors are no longer operating the distribution business, (iii) the Debtors' exclusivity to file a plan will end in approximately one week (and would have ended two months ago, if were not for the extension of exclusivity) [Dkt. 513], and (iv) the Debtors' cases have been pending for over six months, providing the Debtors with sufficient time to appraise their financial situation and value their assets in connection with any formulation of a plan.

34. The Debtors' own arguments in the Objection to Titan's Motion support a finding that they should have to assume or reject the Contracts now. As stated in their Objection, the Debtors requested a delay in the determination of Titan's Motion to Assume or Reject until Sparkle Pop could decide whether they wished for Titan's Distribution Agreement to be assumed and assigned, and if the agreement was not assigned to Sparkle Pop that the Debtors would likely reject the agreement. (Obj. ¶¶ 2-3). The deadline for Sparkle Pop to assume or reject the Contracts was over a month ago, and the Contracts were not assumed and assigned. There is no basis to delay a determination of assumption and rejection of the Contracts, as there was with Titan.

**IV.     If Rejected, the Contracts Should be Deemed Terminated Immediately**

35.     As stated in the Debtors' Objection to Titan's Motion, "[u]nder section 365, rejection constitutes a statutory breach, but does not repudiate or terminate the [contract]. The parties must, therefore, resort to state law to determine their rights as a result of the breach." (Obj. ¶ 34) (quoting In re Yasin, 179 B.R. 43, 50 (Bankr. S.D.N.Y. 1995)).

36.     The Consignors agree with the Debtors that the contracts themselves control the effect of breach. (Obj. ¶ 35)

37.     Pursuant to the Contracts, the Consignors may reclaim goods upon termination. See Obj. ¶ 39 (stating "the Debtors retain the rights to the goods and may sell them in the ordinary course" prior to termination). The Contracts also provide that termination occurs upon the Debtors' failure to make payment when due and such failure continues for 15 days after written notice to the Debtors that such amounts are owing.

38.     Each of the Consignors are owed an outstanding balance under the Contracts as seen in their various proofs of claim and/or their debts scheduled by the Debtors to which no proof of claim was filed. The Consignors' various proofs of claim, the Consignors Objection to Sell Consigned Inventory, and this Motion, provide the Debtors with written notice of outstanding payments. It should be noted that the Consignors have not received timely reporting of sales post-petition (in and of itself a breach of the respective agreement terms) and thus they cannot calculate the total amounts due and owing at this time. The Consignors intend to conduct discovery to obtain this information if it is not voluntarily produced by the party that sold the Stock after the May 15, 2025, sale to Sparkle Pop.

39. As such, the Consignors respectfully request that the Contracts been deemed terminated upon the Debtors' rejection of the Contracts, which will occur more than 15 days following the filing of this Motion.

### Waiver of Memorandum of Law

40. Pursuant to Local Rule 9013-2, the Consignors state that, in lieu of submitting a memorandum in support of this Motion, the Consignors will rely on the grounds and authorities set forth herein.

WHEREFORE, the members of the Consignment Group respectfully requests that the Court enter an order (i) requiring the Debtors to determine immediately whether to assume or reject the Contracts, (ii) that to the extent the Contracts are rejected, the rejected Contracts be deemed terminated simultaneously with such rejection, and (iii) for such other relief as this Court deems just and appropriate.

Dated: August 18, 2025                                Respectfully Submitted,


/s/ Craig M. Palik
Craig M. Palik, Esquire (Bar No 15254)
Justin P. Fasano, Esquire
Janet M. Nesse, Esquire
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770 T: (301) 441-2420
cpalik@mhlawyers.com
jfasano@mhlawyers.com
jnesse@mhlawyers.com

Attorneys for Aspen MLT, LLC, a/k/a Aspen Comics,
Black Mask Studios, LLC,
Dark Horse Comics, Inc
DSTLRY Media, Inc.,
Dynamic Forces, Inc. a/k/a Dynamite Entertainment,
Heavy Metal International, LLC,

Magnetic Press, LLC,
Massive Publishing, LLC,
Oni-Lion Forge Publishing Group, LLC f/k/a Oni Press, LLC,
Panini UK Ltd.,
Punk Bot Comic Books, LLC a/k/a Alien Books,
The Penn State University a/k/a Graphic Mundi,
Titan Publishing Group, Ltd. and
Vault Storyworks, LLC a/k/a Vault Comics f/k/a Creative Mind Energy

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2025, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the Motion Seeking Entry of an Order Requiring the Debtors to Assume or Reject Executory Contracts with Members of the Consignment Group; and for Related Relief will be served electronically by the Court's CM/ECF system on the following:

Adam Fletcher afletcher@bakerlaw.com
Adam H Isenberg adam.isenberg@saul.com
Andrew Brown abrown@klestadt.com
Ashley N Fellona ashley.fellona@saul.com janice.mast@saul.com
Brent C. Strickland bstrickland@whitefordlaw.com mbaum@whitefordlaw.com,brent-strickland-3227@ecf.pacerpro.com
Bruce S. Nathan bnathan@lowenstein.com
C. Kevin Kobbe kevin.kobbe@us.dlapiper.com docketing-baltimore-0421@ecf.pacerpro.com
Catherine Keller Hopkin chopkin@yvslaw.com  pgomez@yvslaw.com, kreese@yvslaw.com, vmichaelides@yvslaw.com, yvslawcmecf@gmail.com, hopkincr39990@notify.bestcase.com
Chelsea R Frankel cfrankel@lowenstein.com
Christopher J. Giaimo christopher.giaimo@squirepb.com christopher.giaimo@squirepb.com, christopher-j-giaimo-6409@ecf.pacerpro.com
Craig Palik cpalik@mhlawyers.com cpalik@ecf.inforuptcy.com, Palik.CraigR92003@notify.bestcase.com mevans@mhlawyers.com, cmartin@mhlawyers.com
Daniel Jack Blum jack.blum@polsinelli.com lsuprum@polsinelli.com, delawaredocketing@polsinelli.com
David W.T. Daniels ddaniels@perkinscoie.com docketnyc@perkinscoie.com, nvargas@perkinscoie.com, KMcClure@perkinscoie.com, rleibowitz@perkinscoie.com
Dennis J. Shaffer dshaffer@tydings.com scalloway@tydings.com,mhickman@tydings.com,jlee@tydings.com
Elizabeth Anne Scully escully@bakerlaw.com
Emily Devan edevan@milesstockbridge.com
Eric George Korphage korphagee@whiteandwilliams.com
Gary H. Leibowitz gleibowitz@coleschotz.com pratkowiak@coleschotz.com,bankruptcy@coleschotz.com,lmorton@coleschotz.com
Gianfranco Finizio gfinizio@lowenstein.com
Hugh M. (UST) Bernstein hugh.m.bernstein@usdoj.gov
Indira Kavita Sharma indira.sharma@troutman.com katherine.culbertson@troutman.com, jonathan.young@troutman.com, david.ruediger@troutman.com, errol.chapman@troutman.com, toyja.kelley@troutman.com
Jan Berlage JBerlage@GHSLLP.com tcollins@ghsllp.com
Jeffrey C. Hampton jeffrey.hampton@saul.com
Jonathan A. Grasso jgrasso@yvslaw.com pgomez@yvslaw.com,r39990@notify.bestcase.com
Jordan Rosenfeld jordan.rosenfeld@saul.com
Jung Yong Lee jlee@milesstockbridge.com mhickman@tydings.com
Justin Philip Fasano jfasano@mhlawyers.com jfasano@ecf.courtdrive.com, tmackey@mhlawyers.com, mevans@mhlawyers.com, cmartin@mhlawyers.com, Fasano.JustinR92003@notify.bestcase.com

Laura Skowronski Bouyea lsbouyea@venable.com dmdierdorff@venable.com
Mark Minuti mark.minuti@saul.com robyn.warren@saul.com
heilmanl@ballardspahr.com, ambroses@ballardspahr.com, zarnighiann@ballardspahr.com, carolod@ballardspahr.com, cromartie@ballardspahr.com, stammerk@ballardspahr.com
Michael Papandrea mpapandrea@lowenstein.com
Nicholas Smargiassi nicholas.smargiassi@saul.com
Nikolaus F. Schandlbauer nick.schandlbauer@arlaw.com lianna.sarasola@arlaw.com
Paige Noelle Topper paige.topper@saul.com
Richard L. Costella rcostella@tydings.com
scalloway@tydings.com,zjones@tydings.com,swilliams@tydings.com
Scott Prince sprince@bakerlaw.com
Stephen B. Gerald sgerald@tydings.com
Steven Gregory Polard steven.polard@ropers.com loriann.zullo@ropers.com, calendar-LAO@ropers.com
Thomas K. Bredar thomas.bredar@wilmerhale.com
andrew.goldman@wilmerhale.com,benjamin.loveland@wilmerhale.com,yolande.thompson@wilmerhale.com
Toyja E. Kelley toyja.kelley@lockelord.com
Turner Falk turner.falk@saul.com tnfalk@recap.email,Veronica.Marchiondo@saul.com
US Trustee - Baltimore USTPRegion04.BA.ECF@USDOJ.GOV
Zvi Guttman zvi@zviguttman.com zviguttman@gmail.com, zviguttman@outlook.com, MD55@ecfcbis.com

/s/ Craig M. Palik
Craig M. Palik