## SETTLEMENT STIPULATION

This Stipulated Settlement (the "Agreement") is made and entered into as of August 19, 2025 , by and between debtors Diamond Comic Distributors, Inc. ("Diamond"), Comic Holdings, Inc., Comic Exporters, Inc., and Diamond Select Toys & Collectibles, LLC (collectively the "Debtors"), and Image Comics, Inc. ("Image", collectively with the Debtors, the "Parties").

## RECITALS

WHEREAS, pursuant to a prepetition agreement between Diamond and Image, (the "Image Agreement") Image placed certain inventory with Diamond for sale and distribution.

WHEREAS, on January 14, 2025 (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

WHEREAS, on the Petition Date, the Debtors were in possession of certain inventory provided by Image, which is held at a warehouse located in Olive Branch, Mississippi (the "Warehouse")

WHEREAS, the Debtors assert that all inventory provided to Diamond by Image was provided on a consignment basis (the "Consigned Inventory") and Image asserts that the Image Agreement differs in certain respects as compared to other consignment agreements to which the Debtors are a party.

WHEREAS, prepetition, the Debtors commenced a process to market and sell their assets.

WHEREAS, in furtherance of that process, on January 21, 2025, the Debtors filed the *Debtors' Motion for an Order (I) Authorizing and Approving Bidding Procedures for the Sale of All or Substantially All of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling an Auction and a Sale Hearing, (IV) Approving the Form and Manner of Notice Thereof, and (V) Establishing Notice and Procedures for the Assumption and Assignment of Certain Executory Contracts and Leases* [D.I. 68], which was granted by the Court on February 11, 2025.

WHEREAS, on May 1, 2025, the Court entered the *Order Approving Asset Purchase Agreement Among the Debtors and Sparkle Pop, LLC* ("Sparkle Pop") [D.I. 407].

WHEREAS, inventory placed on consignment with the Debtors was not sold to Sparkle Pop, and largely remains in the Warehouse.

WHEREAS, Sparkle Pop has designated the lease for the Warehouse for assumption and assignment and, pending such assumption and assignment, Sparkle Pop is utilizing the Warehouse pursuant to the terms of a Transition Services Agreement with the Debtors (the "TSA").

WHEREAS, pursuant to the terms of the TSA, Sparkle Pop is obligated to provide certain warehousing and other services to the Debtors.

WHEREAS, on June 25, 2025, the Debtors filed the *Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Cosigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances and (III) Granting Related Relief* [D.I. 531] (the "Consignment Motion").

WHEREAS, on July 18, 2025, Image filed the *Objection of Image Comics, Inc. to Debtor's Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances and (III) Granting Related Relief* [D.I. 612] (the "Objection").

WHEREAS, the Parties have engaged in negotiations, and to avoid the incurrence of continuing and substantial expenses and the significant uncertainties of litigation, the Parties have decided to compromise, settle, forever resolve, and finally dispose of all outstanding disputes between them.

**NOW,** for other good and valuable consideration, the Parties hereby agree as follows:

1. Recitals.  Each of the recitals set forth above are incorporated herein, and the Parties acknowledge that each recital is true and correct.

2. Withdrawal of Objection.  Upon approval of this Agreement by the Court, the Objection is deemed withdrawn and the other terms of this Agreement shall become effective.

3. Return Inventory.  Image has provided the Debtors with a list designating Consigned Inventory to be returned to Image pursuant to this Agreement (the "Primary List"), and a back-up list designating alternative inventory to be returned to Image if any of the inventory on the Primary List is unavailable at the time of pick up (the "Back-Up List" and inventory designated thereon or on the Primary List, collectively, the "Return Inventory").  The Debtors or their agents shall cause the Return Inventory designated on the Primary List to be segregated and packaged for pick up and made available to Image.  If any of the Return Inventory designated on the Primary List is unavailable, then the Debtors shall instead make available to Image Return Inventory designated on the Back-Up list and having an aggregate "Retail" value (as stated on the Primary List or the Back-Up List) the equal to the aggregate "Retail" value listed for the inventory from the Primary List that is unavailable.

4. Return Inventory Pickup.  Prior to picking up the Return Inventory, Image shall provide the Debtors and Sparkle Pop with proof of insurance and indemnification acceptable to the Debtors and Sparkle Pop in their commercially reasonable discretion.  Image will send designated persons at its expense to pick up the Return Inventory from the Warehouse during normal business hours at a date and time to be agreed upon by the Debtors, Image, and Sparkle Pop (the "Designated Pickup Time").  The Debtors shall be responsible for scheduling the Designated Pickup Time.  At the Designated Pickup Time, the Debtors shall provide Image access to the Warehouse and identify the location of the Return Inventory.  Image shall then pick up and remove the Return Inventory at its expense.

5. Costs. Image shall not be responsible for the costs incurred by the Debtors, their agents, or Sparkle Pop in preparing the Return Inventory for pickup (including picking, packing

or storage costs), but Image shall be responsible for all of its own costs associated with removing the Return Inventory from the Warehouse.

6. <u>Holding Return Inventory</u>. Pending the pickup of the Return Inventory, neither the Debtors nor any other party shall sell, dispose of, or otherwise transfer any of the Return Inventory until it has been returned to Image on the Designated Pickup Date.

7. <u>Remaining Inventory</u>. All Consigned Inventory that is not Return Inventory ("<u>Remaining Inventory</u>") shall be retained by the Debtors. Image relinquishes any and all rights to the Remaining Inventory, including any right to the proceeds of the sale of the Remaining Inventory. Image shall execute such documents reasonably requested by the Debtors to effectuate the transfer of ownership of the Remaining Inventory to the Debtors and the relinquishment of Image's interest, if any, in the Remaining Inventory. The Debtors may market and sell the Remaining Inventory at their sole discretion, free and clear of any interest of Image and the Debtors shall retain all proceeds from such sale.

8. <u>Assignment of Rights Regarding Sparkle Pop</u>. Image assigns to the Debtors all of its rights to any proceeds from Sparkle Pop's unauthorized sales of Consigned Inventory. Image assigns to the Debtors all claims or causes of action that Image has against Sparkle Pop, or any of its parents, subsidiaries, affiliates, members, directors, officers, managers, employees, insiders, attorneys, insurers, agents and successors and assigns, including any claims for unjust enrichment, trespass to chattels, civil theft or conversion.

9. <u>Waiver of Image Claims</u>. Image waives all claims and causes of action against the Debtors, whether known or unknown, including all claims described in Proof of Claim 614 and any claim for an administrative expense against any of the Debtors.

10. <u>Mutual Releases</u>. Image and the Debtors, without further action, each irrevocably and unconditionally, fully, finally and forever waives, releases, acquits and discharges each other and their respective parents, subsidiaries, affiliates, members, directors, officers, managers, employees, insiders, attorneys, insurers, agents and successors and assigns, of and from any and all claims, obligations, suits, judgments, damages, demands, debts, rights (including without limitation, rights of indemnity, contribution, payment, and reimbursement), liabilities, or causes of action regarding the Consigned Inventory, whether known or unknown, direct or indirect, liquidated or unliquidated, fixed or contingent, asserted or retained, foreseen or unforeseen, matured or unmatured, presently existing in law, equity, statute, or otherwise, including but not limited to, any of the foregoing arising under theories of contract, successor liability, tort, agency, unjust enrichment, alter ego, substantive consolidation, extension, veil piercing, equity and any and all fraudulent conveyance or transfer claims that were or could be brought by either of them against the other under state, federal or foreign law. For the avoidance of doubt, this Section does not release the Debtors or Image from the duties imposed by this Agreement.

11. <u>Applicable Law</u>. The validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the State of Delaware, except to the extent inconsistent with federal law.

12. <u>Successors and Assigns</u>.  This Agreement shall be binding on and inure to the benefit of the Parties and their respective agents, employees, affiliates, successors and assigns, including any chapter 7 trustee of the estate of any Party.

13. <u>Entire Agreement</u>.  This document contains the entire Agreement between the Parties and may be modified only in a writing signed by all of the Parties or their duly appointed agents.  All prior agreements and understandings between the Parties concerning the subject matter hereof are superseded by the terms of this document.

**WHEREFORE**, the Parties have executed this Agreement through their counsel as of the date first set forth above.

| SAUL EWING LLP | BAKER & HOSTETLER LLP |
|---|---|
| */s/ Jordan D. Rosenfeld*<br>Jordan D. Rosenfeld (MD Bar No. 13694)<br>1001 Fleet Street, 9th Floor<br>Baltimore, MD 21202<br>Telephone: (410) 332-8600<br>Email: jordan.rosenfeld@saul.com<br><br>-and-<br><br>Jeffrey C. Hampton (admitted *pro hac vice*)<br>Adam H. Isenberg (admitted *pro hac vice*)<br>Turner N. Falk (admitted *pro hac vice*)<br>1500 Market Street, 38th Floor<br>Philadelphia, PA 19102<br>Telephone: (215) 972-7777<br>Email: jeffrey.hampton@saul.com<br>adam.isenberg@saul.com<br>turner.falk@saul.com<br><br>-and-<br><br>Mark Minuti (admitted *pro hac vice*)<br>Paige N. Topper (admitted *pro hac vice*)<br>Nicholas Smargiassi (admitted *pro hac vice*)<br>1201 N. Market Street, Suite 2300<br>Wilmington, DE 19801<br>Telephone: (302) 421-6800<br>Email: mark.minuti@saul.com<br>paige.topper@saul.com<br>nicholas.smargiassi@saul.com<br><br>*Counsel for Debtors and Debtors in Possession* | */s/ Jason F. Hoffman*<br>Jason F. Hoffman (Md. Bar No. 28428)<br>BAKER & HOSTETLER LLP<br>Washington Square, Suite 1100<br>1050 Connecticut Avenue, NW<br>Washington, D.C. 20036-5304<br>Telephone: 202.861.1500<br>Facsimile: 202.861.1783<br>jhoffman@bakerlaw.com<br><br>-and-<br><br>Adam L. Fletcher (admitted pro hac vice)<br>Scott E. Prince (admitted pro hac vice)<br>BAKER & HOSTETLER LLP<br>Key Tower 127 Public Square, Suite 2000<br>Cleveland, Ohio 44114<br>Telephone: 216.621.0200<br>afletcher@bakerlaw.com<br>sprince@bakerlaw.com<br><br>*Counsel for Image Comics, Inc.* |