IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT BY AND BETWEEN THE DEBTORS AND IMAGE COMICS, INC.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move (this "Motion") as follows

**Relief Requested**

1. The Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), approving the settlement stipulation (the "Settlement") between the Debtors and Image Comics, Inc. ("Image"). A copy of the Settlement is attached as Exhibit 1 to the Proposed Order.

**Jurisdiction and Venue**

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

3. The statutory basis for the relief requested is section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

4. On January 14, 2025 (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are maintaining their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On January 29, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

5. A description of the Debtors' business as of the Petition Date and the reasons for commencing these cases are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petitions and First Day Relief* [D.I. 20] (the "First Day Declaration").

6. As stated in the First Day Declaration, the Debtors maintained the majority of their inventory, including consigned inventory, at a 600,000 square foot warehouse (the "Warehouse") located in Olive Branch, Mississippi, from which the Debtors also conducted most of their distribution and fulfillment functions. *See* First Day Declaration ¶ 12.

7. The Debtors filed these cases to conduct a value-maximizing sale process of substantially all of the Debtors' assets. Following a robust, postpetition sale process, the Court entered Orders approving the sale of substantially all of the Debtors' assets to Universal Distribution, LLC ("Universal") and Sparkle Pop, LLC ("Sparkle Pop"). *See* D.I. 407 & 408. The sale to Sparkle Pop explicitly excluded the consigned inventory located in the Warehouse. *See*

D.I. 407, Exhibit A ¶ 8. The sales to Universal and Sparkle Pop closed in May 2025. *See* D.I. 499 & 500.

8. Following the sale closings, the Debtors have been focused on monetizing their remaining assets, including the consigned inventory. To that end, the Debtors filed the *Debtors' Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances and (III) Granting Related Relief* [D.I. 531] (the "Consignment Motion") to establish procedures to sell the consigned inventory and seek approval of the ultimate sales of such inventory.

9. Image objected to the relief requested in the Consignment Motion. *See* D.I. 592. In response to Image's objection, the Debtors and Image engaged in extensive negotiations regarding the Consignment Motion, which ultimately resulted in a settlement as to the inventory that Image provided to the Debtors on a consignment basis. The Debtors filed the Settlement on August 19, 2025. *See* D.I. 756.

10. Although the Court has stayed the Consignment Motion, the Debtors and Image have agreed that the terms of the Settlement resolve, among other things, the matters related to the inventory provided to Debtor Diamond Comic Distributors, Inc., by Image on a consignment basis. The key terms of the Settlement are:[2]

   a. The Debtors will segregate and package for pick up certain consigned inventory that was provided by Image to be returned to Image (the "Return Inventory"). Image will pick up the Return Inventory at its expense during normal business hours at a date and time to be agreed upon by the Debtors, Image and Sparkle Pop.

   b. The Debtors will retain the consigned inventory provided by Image that is not Return Inventory (the "Remaining Inventory"). Image relinquishes any

---

[2] The key terms set forth in the Motion are a summary of the terms in the Settlement. In the event of any inconsistency between this summary and the Settlement, the Settlement shall govern.

and all rights to the Remaining Inventory, including any right to the proceeds of the sale of the Remaining Inventory. The Debtors may market and sell the Remaining Inventory at their sole discretion, free and clear of any interest of Image and the Debtors shall retain all proceeds from such sale.

c. Image waives all claims and causes of actions against the Debtors, including all claims described in Image's proof of claim (Claim No. 614) and any claim for an administrative expense against any of the Debtors.

## Basis for Relief Requested

11. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "the court may issue any order . . . necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *See* 11 U.S.C. § 105(a). Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers "to craft flexible remedies in situations where the Code's causes of action fail to achieve their intended purpose." *Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 567 (3d Cir. 2003).

12. Bankruptcy Rule 9019(a) governs the procedural prerequisites to approve a settlement, stating that "[o]n the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

13. Settlements and compromises are "a normal part" of the chapter 11 process. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Indeed, "compromises are favored in bankruptcy" because they minimize litigation and expedite the administration of a bankruptcy estate. *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *see also U.S. ex rel. Rahman v. Oncology Assocs., P.C.*, 269 B.R. 139, 149 (D. Md. 2001), aff'd sub nom. *U.S. ex rel. Rahman v. Colkitt*, 61 F. App'x 860 (4th Cir. 2003) ("Settlements are to be encouraged, and it should not be the intention of a court to discourage settlements.").

14. In considering a Bankruptcy Rule 9019(a) motion, a court must "balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d at 393. Assessing this balance includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id*.; *see also In re Panache Cuisine, LLC*, No. 13-17027-JS, 2013 WL 5350613, at *4 (Bankr. D. Md. Sept. 23, 2013) (citing the *Martin* factors); *In re Toussaint*, No. 01-12690-TJC, 2008 WL 427278, at *5 (Bankr. D. Md. Feb. 13, 2008) (same). "The ultimate inquiry that is prerequisite to the granting of approval to a settlement is the determination that the settlement is in the best interests of the estate." *In re Panache Cuisine, LLC*, 2013 WL 5350613, at *4.

15. Moreover, when deciding whether to approve a compromise, a court will normally accept the judgment of the movant as long as a legitimate business justification exists. *See Martin*, 91 F.3d at 395; *see also In re Toussaint*, 2008 WL 427278, at *6 ("a trustee's business judgment to enter into a settlement is afforded substantial weight"). Although approval of a compromise is within the "sound discretion" of the bankruptcy court (*In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006)), the court should not substitute its judgment for that of a trustee or debtor in possession. *In re Parkview Hosp.-Osteopathic Med. Ctr.*, 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996). The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interests of the estate." *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008). A court need not be convinced that a proposed settlement is the best possible settlement, but "must conclude that it is within the reasonable range of litigation possibilities." *World Health*, 344 B.R. at 296 (internal citations omitted); *see also U.S. ex rel. Rahman*, 269 B.R. at 149 ("A court may

7

approve a settlement over objections unless the proposed settlement falls below the 'lowest point in the range of reasonableness.'") (internal citations omitted).

16.     Applying the foregoing standards to the present case, the Debtors have concluded, in their business judgment, that the Settlement Agreement is fair, reasonable and in the best interests of their estates and creditors.  First, the Settlement resolves all of the potential claims between the Debtors and Image related to the consigned inventory without the need for attendant costs and time litigating the issues in an adversary proceeding. Litigation over the disputed ownership of the consigned inventory and the other issues raised in Image's objection to the Consignment Motion would be costly and time consuming.  Moreover, if the Debtors commenced and pursued an adversary proceeding to a trial on the merits of these issues, then it is possible that the Debtors ultimately do not prevail (though the Debtors believe they would).

17.     In addition, the Settlement is in the best interest of the Debtors' creditors and their estates.  The Debtors' creditors will benefit from the prompt resolution of the disputed consigned inventory with Image.  Pursuant to the Settlement, the Debtors are retaining certain consigned inventory that was provided to the Debtors by Image, which the Debtors will be able to sell for the benefit of their creditors without incurring further costs associated with litigating in an adversary proceeding.  Moreover, Image has agreed to waive the claims set forth in its proof of claim as well as any administrative expense claim as part of the Settlement to the benefit of the Debtors' estates and their creditors.

18.     For these reasons, the benefits of the Settlement are well above "the lowest point in the range of reasonableness" and entering into the Settlement is a sound exercise of the Debtors' business judgment. Accordingly, this Court should approve the Settlement.

**Waiver of Memorandum of Law**

19. Pursuant to rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

**Notice**

20. Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Committee; (iii) counsel to JPMorgan Chase Bank, N.A.; (iv) the United States Attorney for the District of Maryland; (v) the offices of the attorneys general for the states in which the Debtors operate; (vi) the Internal Revenue Service; (vii) the United States Attorney general; (viii) the civil process clerk for the United States Attorney for the District of Maryland; (ix) Image; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order approving the Settlement.

*[Remainder of Page Left Intentionally Blank]*

| | |
|---|---|
| Dated: September 4, 2025 | **SAUL EWING LLP** |
| | By: <u>*/s/ Jordan D. Rosenfeld*</u> |

    Jordan D. Rosenfeld (MD Bar No. 13694)
    1001 Fleet Street, 9th Floor
    Baltimore, MD 21202
    Telephone: (410) 332-8600
    Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
Turner N. Falk (admitted *pro hac vice*)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
       adam.isenberg@saul.com
       turner.falk@saul.com

-and-

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
       paige.topper@saul.com
       nicholas.smargiassi@saul.com

*Counsel for Debtors and Debtors in Possession*