**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |
| | **Related to: 784, 785, 812, 828, 829** |

**REPLY OF DEBTORS TO SPARKLE POP'S OBJECTION TO
DEBTOR'S MOTION (I) TO ENFORCE THE AUTOMATIC STAY AND (II) TO
ENFORCE THE SALE ORDER AND (III) GRANTING RELATED RELIEF**

Diamond Comic Distributors, Inc. and the other debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), by and through their undersigned counsel, hereby respectfully reply to *Sparkle Pop, LLC's Objection To Debtors' Motion (I) To Enforce The Automatic Stay and (II) To Enforce The Sale Order and (III) Granting Related Relief*, as follows.

1. Sparkle Pop would have this Court believe, in essence, that this is all a big misunderstanding – that Sparkle Pop somehow had (or thought it had) rights to sell consigned inventory under the parties' underlying agreement (notwithstanding that it was not sold to Sparkle Pop), that Sparkle Pop was merely trying to do the right thing for all parties by selling consigned inventory and that Sparkle Pop segregated the sale proceeds pending resolution of the various issues pending before the Court regarding consigned inventory. With all due respect, this is all self-serving misdirection. Among other things:

2. Sparkle Pop conveniently does not explain, or disclose to the Court, that the parties' APA, as approved by the Court, provided for the reimbursement of Sparkle Pop's cost and

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

1

expenses in connection with consigned inventory sales *when such sales were at the direction of the Debtors*. See APA, at § 9.22 (providing that Debtors shall be responsible for the shipping and destruction cost of inventory "at Sellers' written direction").

3.  Sparkle Pop does not explain, or disclose to the Court, that the Debtors are paying Sparkle Pop for the storage of consigned inventory at the Olive Branch warehouse. Instead, it criticizes the Debtors for failing to remove such consigned inventory – even though the continued storage of such inventory by Sparkle Pop was expressly contemplated by the parties' written agreements.

4.  Sparke Pop does not explain, or disclose to the Court, that consigned inventory is easily distinguishable from "owned" inventory by the various coding/computer systems transferred by the Debtors to Sparkle Pop as part of the parties' APA. The fact that owned versus consigned inventory can easily be distinguished is clear from the fact that Sparkle Pop has in the past and can now, provide specific information that allegedly discloses what specific consigned inventory sales have taken place. Obviously, Sparkle Pop could not have calculated these amounts without knowledge of what inventory was, or was not, consigned.  And if Sparkle Pop did not understand what inventory it was being paid by the Debtors to store was consigned, rather than owned, it merely had to ask one or more of the former employees of the Debtors – many of whom Sparkle Pop hired after the transaction closed.

5.  Sparkle Pop does not explain why it failed to respond, in any way or any time, to the numerous demands from the Debtors that it immediately cease sales of all consigned inventory and pay over all proceeds from the sale of such inventory to the Debtors.  Among other things, Sparkle Pop failed to respond to any of the following emails from counsel to the Debtors (among others):

a. **June 17, 2025 email from Debtors' counsel to Sparkle Pop counsel**: "to confirm our discussion last week, the debtors did not sell consigned inventory to Sparkle Pop. Sparkle Pop should not be selling consigned inventory, and certainly should not be retaining the sale proceeds for consigned inventory sales. Please confirm this with your client."

b. **June 18, 2025 email from Debtors' counsel to Sparkle Pop counsel**: "to follow-up my email yesterday, we have received several reports that Sparkle Pop is selling, or is attempting to sell, consigned inventory in bulk. Is this true? As we have discussed, and as you acknowledged in our call last week, Sparkle Pop did not purchase the debtors' consigned inventory. It has no right to sell it, in bulk or otherwise. Please confirm that Sparkle Pop has ceased all sales of consigned inventory. . . . With respect to the consigned inventory that Sparkle Pop has sold, demand is hereby made for an accounting, as well as the immediate turn-over of all sale proceeds."

c. **June 25, 2025 email from Debtors' counsel to Sparkle Pop counsel**: ". . . Regarding consigned goods – they should not have been included on the website and should be removed promptly. Also, Sparkle Pop must account for and forward to the debtors the proceeds of consigned goods sold post-closing on our APA. We would ask your client to wire these proceeds to the debtors by June 30th. Separately, please be aware that the debtors will be filing a motion seeking approval of procedures for the debtors' sale or other disposition of consigned goods. We anticipate that this motion will be set for hearing on July 16th. . . . I will be back to you shortly with our availability for a call. . . ."

d. **July 3, 2025 email from Debtors' counsel to Sparkle Pop counsel:** "We are writing as a follow up to our all-hands (clients and counsel) meeting of last Friday regarding, among other issues, Ad Populum's inquiry regarding the Debtor's consignment inventory. As a starting point, and as we advised you and your client during our discussions, and as you acknowledged in our meeting, Ad Populum/Sparkle Pop did not purchase consignment inventory pursuant to its asset purchase agreement with Diamond Comic Distributors, Inc., or otherwise. Notwithstanding that, it has come to the Debtor's attention that Ad Populum/Sparkle Pop has sold some of the Debtor's consignment inventory and has not turned over the sale proceeds of such sales to the Debtor. By this email, the Debtor renews its request for a detailed accounting of all consignment inventory sold by Ad Populum/Sparkle Pop and for the immediate payment to the Debtor of all proceeds received by Ad Populum/Sparkle Pop from such sales."

e. **July 14, 2025 email from Debtors' counsel to Sparkle Pop counsel**: ". . . attached is a list that shows the sales of consignment inventory by Sparkle Pop from May 16, 2025 through July 8, 2025. As detailed in the list, the total amount of sales in this period was $1,353,364.00. As you and your client have acknowledged, consigned inventory was not sold to Sparkle Pop as part of our transaction. The

3

Debtors accordingly demand that Sparkle Pop turn over such amount to the Debtors immediately. . . . Please note that the attachment reflects information only through July 8th. The Debtors reserve all rights with respect to consigned inventory sold after such date. . . . If you need wire instructions, or any other information regarding this matter, please let us know. Otherwise, we look forward to receiving the above-cited amount (i.e., $1,353,364.00) from your client."

f. **July 24, 2025 email from Debtors' counsel to Sparkle Pop counsel**: ". . . Sparkle Pop has not responded to my email of July 14th, in which I requested, on behalf of the Debtors, that Sparkle Pop immediately pay over to the Debtors the proceeds (totaling $1,353,364) of Sparkle Pop's unauthorized sale of consigned inventory in the period from May 16 – July 8, 2025. As you and your client have acknowledged, consigned inventory was not sold to Sparkle Pop as part of our transaction and Sparkle Pop has no right to sell consigned inventory or retain these funds. Since my July 14th email, the Debtors have discovered that Sparkle Pop has continued to sell consigned inventory. Again, Sparkle Pop has no right to do this; it should cease all consignment sales immediately. Per the attached spreadsheet, it appears that Sparkle Pop sold an additional $31,258.60 of consigned inventory in the period from July 9 – July 18, 2025. There is no basis for Sparkle Pop to retain any of these funds. We reiterate our demand that Sparkle Pop pay these funds to the Debtors immediately. The total amount now due is $1,384,622.60."

g. **August 4, 2025 email from Debtors' counsel to Sparkle Pop counsel**: ". . . I have not received any response from you regarding my multiple requests that Sparkle Pop (i) cease selling consigned inventory and (ii) immediately pay over to the debtors the proceeds of all consignment sales from May 16th onward. I hope your client understands that these issues will not go away."

h. **August 13, 2025 email from Debtors' counsel to Sparkle Pop counsel:** "The Debtors have sent several emails to and spoken with one of your partners and with your client regarding Sparkle Pop's unauthorized sale of consignment inventory, which, as your client is aware, was not sold to it by the Debtors. The Debtors have demanded in writing on several occasions that Sparkle Pop cease the unauthorized sale of consignment inventory and that Sparkle Pop remit to the Debtors the proceeds of such unauthorized sales. Such demands have been ignored for the most part. I have attached to this email the most recent correspondence on this issue. By this email, the Debtors renew their demand that Sparkle Pop immediately cease the unauthorized sale of consignment inventory and immediately remit to the Debtors all proceeds from such sales. The Debtors reserve all rights regarding this issue.**"**

i. **August 18, 2025 email from Debtors' counsel to Sparkle Pop counsel:** " . . . In furtherance of our discussions, please be aware that Sparkle Pop's unauthorized sale of consignment inventory and its unauthorized retention of the sale proceeds from such sales was, again, an issue that was brought to the bankruptcy court's attention today by certain consignment vendors. By this email, the Debtors again demand that any such unauthorized sales of consignment inventory by Sparkle Pop

cease immediately and that the proceeds of such unauthorized sales be remitted immediately to the Debtors.  Please confirm that such unauthorized sales of consignment inventory by Sparkle Pop has ceased (and when) or will cease currently.  The Debtors have tried on several occasions to work through this issue on a consensual basis and hereby reserve all rights and remedies regarding such unauthorized sales and retention of sale proceeds.  Thank you."

Copies of each of the emails referenced above are attached hereto as composite **Exhibit A.**[2]

6.　Sparkle Pop, which had purchased the Debtors' website as part of the parties' APA, does not explain why it asked the Debtors, via email dated June 25, 2025 (cited above), whether or not consigned inventory should be included on Sparkle Pop's website, or why Sparkle Pop apparently ignored the response it promptly received back from Debtors' counsel (also cited above), directing it to remove the consigned inventory from the Sparkle Pop's website.

7.　Sparkle Pop does not explain its failure, for over two months, to inform the Debtors that it was allegedly segregating the proceeds from its sale of consigned inventory.  The Debtors believe that Sparkle Pop's alleged segregation of these amounts, if it occurred at all, is only a book entry, and happened shortly before the Debtors filed the instant motion.

8.　Finally, Sparkle Pop fails to appreciate the scope of the automatic stay. As set forth in the Motion, the Debtors are not relying upon their rights under section 544(a) of the Bankruptcy Code, or Section 9–319(a) of the Uniform Commercial Code, to assert de facto ownership of the consigned inventory.  Rather, the Debtors are asserting a broader interest in the consigned inventory, based on their rights under the underlying consignment agreements to market and sell the inventory.  Such rights are easily enough to subject the consigned inventory to the automatic

---

[2] The Debtors note that certain of the emails referenced above were sent before, and others after, the Debtors filed their motion seeking approval for their proposed sale of consigned inventory on June 25, 2025 [D.I. 531].  Also, to facilitate the Court's review, the Debtors have omitted from the emails attached as Exhibit A all "trailing" emails, and all attachments.  Separately, in an abundance of caution, the attached email dated July 3, 2025 was redacted to remove the amount of a purchase offer made by Sparkle Pop for consigned inventory.

5

stay of section 362 of the Bankruptcy Code. Further, Sparkle Pop's complaint about due process ignores the extent and power of section 362(a) of the Bankruptcy Code. The stay granted by section 362(a) is, as per its name, *automatic*. The Debtors do not need, and are not required, to alleged irreparable harm. The stay applies whether or not such harm exists.

9. For these reasons, the Debtors believe Sparkle Pop's objection is wholly without merit. The reality is that, despite numerous warnings, requests and demands from the Debtors, Sparkle Pop continued to sell consigned inventory it did not own, and it continued to retain all sale proceeds. Without question, Sparkle Pop's knowing and willful actions violated the automatic stay.

10. As the Court considers the Motion and Sparkle Pop's objection, the Debtors make these final observations:

   a. There does not appear to be disagreement, at least based on the Objection, as to whether Sparkle Pop will continue to sell consigned inventory. Sparkle Pop has indicated that it has ceased all such sales.

   b. There does not appear to be disagreement, at least based on the Objection, as to the proper disposition of the proceeds of Sparkle Pop's sale of consigned inventory; all parties agree that such proceeds should be segregated and held pending further order of the Court. The parties do disagree, however, as to what party should hold such proceeds. The Debtors propose that the gross proceeds from the product sales at issue should be held by a neutral party, and propose that this role be served by Debtors' claims and noticing agent (Omni Agent Solutions, Inc. ("Omni")), which already serves as escrow agent for funds held in connection with the Debtors' sale process.

6

    c. There does not appear to be disagreement, at least based on the Objection, that consigned inventory should be removed from Sparkle Pop's website.

    d. There is disagreement as to whether Sparkle Pop should be required to provide the information requested in the Motion as to what consigned inventory sales have taken place. The Debtors will be prepared to address this at the hearing on the Motion.

    e. Based on the foregoing, there is no reason the Court cannot, based on the apparent agreement of the parties, issue an order that, for the avoidance of doubt, and without prejudice to the rights and positions of any party: (i) directs Sparkle Pop to cease all sales of consigned inventory; (ii) directs Sparkle Pop to remove consigned inventory from its website, marketing materials, order forms and the like; and (iii) directs Sparkle Pop to pay all gross proceeds (proceeds received to date and any future proceeds) of its sale of consigned inventory to Omni, pending further order of the Court. The Debtors believe that any such order should also direct Sparkle Pop to provide a prompt written and reasonably detailed accounting as to what consigned inventory has been sold, as set further set forth in the proposed form of order submitted with the Motion.

    f. The additional relief requested by the Motion, such as punitive damages and attorneys' fees, can be determined at a later date, as was suggested in the proposed form of order submitted with the Motion.

WHEREFORE, the Debtors respectfully request entry of such relief as the Court may deem just and proper.

Dated: September 8, 2025

**SAUL EWING LLP**

By: /s/ Jordan D. Rosenfeld
Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted pro hac vice)
Adam H. Isenberg (admitted pro hac vice)
Turner N. Falk (admitted pro hac vice)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
       adam.isenberg@saul.com
       turner.falk@saul.com

-and-

Mark Minuti (admitted pro hac vice)
Paige N. Topper (admitted pro hac vice)
Nicholas Smargiassi (admitted pro hac vice)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
       paige.topper@saul.com
       nicholas.smargiassi@saul.com

*Counsel for Debtors and Debtors in Possession*