# EXHIBIT A

| | |
|---|---|
| **From:** | Isenberg, Adam H. |
| **Sent:** | Tuesday, June 17, 2025 6:09 PM |
| **To:** | Willis, Jamila; Hampton, Jeffrey C. |
| **Cc:** | Judge, Jasmine |
| **Subject:** | RE: In re Diamond Comic Distributors, Inc. - Contracts Designated Pursuant to Section 2.3 |

Jamila – yes, we received the email you sent on Friday. The debtors are reviewing your list.  As a preliminary matter, please note that the debtors are not familiar with certain of the contracts you have designated, or whether they are currently active contracts, but are trying to track these contracts down, together with their applicable cure amounts and contact information.  This may take some time.  Also, please note that the debtors are unable to confirm that the contracts designated on your list as "Consignment Agreements" allow for ownership of the consigned goods by the consignee if the consignor fails to perfect title to or in the consigned goods.

Separately, I can confirm that Sparkle Pop made the $600,000 payment that was due under the parties' TSA on June 9th.  It has not yet made the $600,000 payment that was due on June 16th. Such payment needs to be made promptly by your client.

Also, to confirm our discussion last week, the debtors did not sell consigned inventory to Sparkle Pop.  Sparkle Pop should not be selling consigned inventory, and certainly should not be retaining the sale proceeds for consigned inventory sales.  Please confirm this with your client.

Thank you.

Adam

> **Adam H. Isenberg**
> Partner
> **SAUL EWING LLP** | Philadelphia
> **Office:** (215) 972-8662    **Cell:** (215) 479-2291

| | |
|---|---|
| **From:** | Isenberg, Adam H. |
| **Sent:** | Wednesday, June 18, 2025 12:20 PM |
| **To:** | Willis, Jamila; Hampton, Jeffrey C. |
| **Cc:** | Judge, Jasmine |
| **Subject:** | RE: In re Diamond Comic Distributors, Inc. - Contracts Designated Pursuant to Section 2.3 |

Jamila – to follow-up my email yesterday, we have received several reports that Sparkle Pop is selling, or is attempting to sell, consigned inventory in bulk.  Is this true?  As we have discussed, and as you acknowledged in our call last week, Sparkle Pop did not purchase the debtors' consigned inventory.  It has no right to sell it, in bulk or otherwise.  Please confirm that Sparkle Pop has ceased all sales of consigned inventory.

With respect to the consigned inventory that Sparkle Pop has sold, demand is hereby made for an accounting, as well as the immediate turn-over of all sale proceeds.

Thank you.

**Adam H. Isenberg**
Partner
**SAUL EWING LLP** | Philadelphia
**Office:** (215) 972-8662   **Cell:** (215) 479-2291

| | |
|---|---|
| **From:** | Isenberg, Adam H. |
| **Sent:** | Wednesday, June 25, 2025 9:52 AM |
| **To:** | Willis, Jamila; Hampton, Jeffrey C. |
| **Cc:** | Judge, Jasmine |
| **Subject:** | RE: In re Diamond Comic Distributors, Inc. - Contracts Designated Pursuant to Section 2.3 |

Jamila – thank you for your email.  We can confirm that (as a result of the payment it sent yesterday), Sparkle Pop is now current on its TSA funding obligations as of this week.  To be clear, Sparkle Pop continues to have funding obligations under the TSA going forward so long as the parties are operating under the TSA.  Regarding consigned goods – they should not have been included on the website and should be removed promptly. Also, Sparkle Pop must account for and forward to the debtors the proceeds of consigned goods sold post-closing on our APA.  We would ask your client to wire these proceeds to the debtors by June 30th.  Separately, please be aware that the debtors will be filing a motion seeking approval of procedures for the debtors' sale or other disposition of consigned goods.  We anticipate that this motion will be set for hearing on July 16th.

We checked with the debtors, who disagree with your assertion that representatives of Diamond Comics have canceled all of their meetings with Sparkle Pop.  Rob Gorin and/or his colleague Ramy Aly have had calls with Steven Bieg on multiple occasions, including as recently as Monday, June 23rd, at 11:30 a.m.

I will be back to you shortly with our availability for a call.  Thanks.

**Adam H. Isenberg**
Partner
**SAUL EWING LLP** | Philadelphia
**Office:** (215) 972-8662    **Cell:** (215) 479-2291

| | |
|---|---|
| **From:** | Hampton, Jeffrey C. |
| **Sent:** | Thursday, July 3, 2025 5:38 PM |
| **To:** | Willis, Jamila |
| **Cc:** | Isenberg, Adam H. |
| **Subject:** | Diamond Comics Consignment |

Jamila:

    We are writing as a follow up to our all-hands (clients and counsel) meeting of last Friday regarding, among other issues, Ad Populum's inquiry regarding the Debtor's consignment inventory. As a starting point, and as we advised you and your client during our discussions, and as you acknowledged in our meeting, Ad Populum/Sparkle Pop did not purchase consignment inventory pursuant to its asset purchase agreement with Diamond Comic Distributors, Inc., or otherwise. Notwithstanding that, it has come to the Debtor's attention that Ad Populum/Sparkle Pop has sold some of the Debtor's consignment inventory and has not turned over the sale proceeds of such sales to the Debtor. By this email, the Debtor renews its request for a detailed accounting of all consignment inventory sold by Ad Populum/Sparkle Pop and for the immediate payment to the Debtor of all proceeds received by Ad Populum/Sparkle Pop from such sales.

    As you are aware, the Debtor recently filed a motion seeking the approval of procedures for the sale and/or other disposition of consignment inventory (the "Consignment Motion"). With respect to your client's hypothetical scenario of purchasing the Debtor's consignment inventory for $[redacted], the Debtor requests that a formal written detailed proposal be presented to the Debtor regarding such a scenario. As a starting point, please be advised that the Debtor views the hypothetical $[redacted] purchase price as being far too low. With that in mind, please provide a written proposal for the purchase of the Debtor's consignment inventory that is premised upon the following: (i) the transaction would be for the purchase of all the consignment inventory that is the subject of the Consignment Motion, (ii) the purchase would be an as-is where-is transaction, (iii) the purchase price must be all cash at closing of the sale, (iv) the transaction would be approved by the bankruptcy court pursuant to a free and clear sale order, and (v) the sale order would include good faith findings.

    One other matter regarding your client has come to the Debtor's attention with respect to consignment inventory. Please see below from Bleeding Cool News. While we are not certain whether the unnamed executive at Ad Populum made the statement attributed to it below, the Debtor is troubled that someone from Ad Populum may have miscommunicated regarding the Debtor's consigned inventory. As we noted above and as you and your client are aware, Ad Populum/Sparkle Pop has not purchased consignment inventory pursuant to its APA with the Debtor or otherwise. To the extent Ad Populum is suggesting otherwise or leading others to believe otherwise, the Debtor requests that such incorrect and inaccurate messaging stop immediately.

    The Debtor looks forward to receiving Ad Populum's/Sparkle Pop's detailed proposal. Thank you.
Jeffrey

# Ad Populum Can't Yet Deal Directly with Diamond Consignment Vendors

1

Published Wed, 02 Jul 2025 10:56:04 -0500  by Rich Johnston Last updated Wed, 02 Jul 2025 10:59:47 -0500

An executive at Ad Populum, the company that purchased Diamond Comic Distributors, has confirmed to Bleeding Cool that Ad Populum has been restricted from dealing directly with any consignment vendors and has had to go through the bankruptcy estate for everything, including any correspondence. And that Ad Populum sincerely hopes that this changes very soon.

Just to catch up, at the beginning of the year, comic book direct market distributor Diamond Comic Distributors declared Chapter 11 bankruptcy, owing millions of dollars to many publishers. Since then, additional financing was arranged with JP Morgan Chase bank, and normal service resumed for everything post-bankruptcy for most publishers while the proceedings continued and the auction for Diamond's assets took place. Ad Populum won the auction for Diamond Comic Distributors, but soon after the purchase was agreed, comic book publishers discovered that meaningful communication with all parts of Diamond Comic Distributors in the USA had stopped, along with payments. Soon after, an application had been made to the courts for the liquidation of consigned stock by Diamond Comic Distributors Inc., the debtor entity in the Chapter 11 bankruptcy proceedings. Which has led to a number of legal actions being mounted by publishers, ahead of the hearing for the liquidation, arranged for the week of San Diego Comic-Con.



**Jeffrey C. Hampton**
Partner
📞 (215) 972-7118   📱 (215) 479-5290
✉ jeffrey.hampton@saul.com

in Read my bio >>

**SAUL EWI**

Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186

CA • DE • FL • IL • MA • MD • MN • NJ • NY • PA • DC

**INSPIRED PEOPLE. INSPIRING TRUST.®**

| | |
|---|---|
| **From:** | Isenberg, Adam H. |
| **Sent:** | Monday, July 14, 2025 3:09 PM |
| **To:** | Willis, Jamila |
| **Cc:** | Hampton, Jeffrey C. |
| **Subject:** | Diamond - consigned inventory |
| **Attachments:** | DCD_Consignment Vendor List 070925.pdf |

Jamila – attached is a list that shows the sales of consignment inventory by Sparkle Pop from May 16, 2025 through July 8, 2025.  As detailed in the list, the total amount of sales in this period was $1,353,364.00.  As you and your client have acknowledged, consigned inventory was not sold to Sparkle Pop as part of our transaction.  The Debtors accordingly demand that Sparkle Pop turn over such amount to the Debtors immediately.

Please note that the attachment reflects information only through July 8th.  The Debtors reserve all rights with respect to consigned inventory sold after such date.

If you need wire instructions, or any other information regarding this matter, please let us know.  Otherwise, we look forward to receiving the above-cited amount (i.e., $1,353,364.00) from your client.

Thank you.

Adam



| | |
|---|---|
| **From:** | Isenberg, Adam H. |
| **Sent:** | Thursday, July 24, 2025 8:23 AM |
| **To:** | Jamila Willis |
| **Cc:** | Hampton, Jeffrey C. |
| **Subject:** | Diamond - Open Issues |
| **Attachments:** | FW: U.S. Customs Statement # 202514802P  (FINAL); E323165687.pdf; DCD - Consignment Sales Report (07.09.25-07.18.25).xlsx |

Jamila – several items involving Diamond and Sparkle/Pop are pending and require immediate attention.

***First***, Sparkle Pop has not responded to my email of July 14th, in which I requested, on behalf of the Debtors, that Sparkle Pop immediately pay over to the Debtors the proceeds (totaling $1,353,364) of Sparkle Pop's unauthorized sale of consigned inventory in the period from May 16 – July 8, 2025.  As you and your client have acknowledged, consigned inventory was not sold to Sparkle Pop as part of our transaction and Sparkle Pop has no right to sell consigned inventory or retain these funds.  Since my July 14th email, the Debtors have discovered that Sparkle Pop has continued to sell consigned inventory.  Again, Sparkle Pop has no right to do this; it should cease all consignment sales immediately.  Per the attached spreadsheet, it appears that Sparkle Pop sold an additional $31,258.60 of consigned inventory in the period from July 9 – July 18, 2025.  There is no basis for Sparkle Pop to retain any of these funds.  We reiterate our demand that Sparkle Pop pay these funds to the Debtors immediately.  The total amount now due is $1,384,622.60.

***Second***, we were informed on our recent call with you and your client that Sparkle Pop intended to take over the Olive Branch lease, effective August 1, 2025.  We discussed the need for the Debtors to file a motion to authorize the assumption and assignment of the Olive Branch lease, as modified, and the timing for filing that motion.  We were recently informed by counsel to the Olive Branch landlord that a draft lease amendment was sent to Sparkle Pop/Ad Populum one month ago, that the landlord has reached out to Ad Pop/Sparkle Pop repeatedly regarding the Lease Amendment, and that the landlord has heard nothing back.  Where does this stand?  In order to effectuate an assumption/assignment of this lease (as amended) as of August 1st, we need to move promptly to get something on file with the Bankruptcy Court. In addition, please advise regarding the status of the CGS lease in Georgia.  When we last spoke with you and your client it was suggested by your client that the lease should be rejected fairly soon.

***Third***, it appears that the issue of who is responsible for the customs duties referenced in the attached materials remains unresolved.

Under section 2.3 of the parties' APA ("Assumed Liabilities"), Sparkle Pop assumed "all Liabilities (including any Tax) that arise after Closing with respect to Purchaser's ownership or operation of the Acquired Assets after the Closing."  The term "Tax" in the APA is defined to include custom duties.

As set forth in the attachment, although the goods at issue had an "Import Date" of April 29, 2025, when apparently they were received at Long Beach Harbor, in California, the "Entry Date" for the goods did not occur until May 20, 2025, which was after closing.  What this means is that the goods were not released from customs until after our clients' closing had occurred; prior to such time, they were effectively in transit.  As we understand it, for customs purposes, the "entry date" is the date

Purchaser.

Having said this, although Expeditors' invoice was not sent or received until May 31st, we recognize that it is dated May 15, 2025.  The Debtors are willing to treat the amount of this invoice (i.e., $5,297.50) as an obligation of the estate.  The customs duties, however, are an Assumed Liability of the Purchaser.

On a related matter, we understand that Steve Bieg has stated, or suggested, that the amount of the customs obligation, which the Debtors have paid from TSA funds, should be deducted from amounts due to the Debtors under the TSA or APA.  There is no basis for this.  Section 4.2(a) of the TSA expressly provides that "there shall be no setoff or recoupment for amounts payable hereunder."

Each of the above items is time sensitive and requires your clients' immediate attention.

*Finally*, and in addition, when we last spoke, you indicated you would send me a copy of the contract that Sparkle Pop wants assumed and assigned to it.  If Sparkle Pop still wants an assignment of this contract, please send it to me.

The Debtors reserve all rights regarding these matters.

Thank you.



**Adam H. Isenberg**
Partner
📞 (215) 972-8662   📱 (215) 479-2291
✉ adam.isenberg@saul.com

**Read my bio** >>

SAUL EWII

Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186

CA • DE • FL • IL • MA • MD • MN • NJ • NY • PA • DC

INSPIRED PEOPLE. INSPIRING TRUST.®

| | |
|---|---|
| **From:** | Isenberg, Adam H. |
| **Sent:** | Monday, August 4, 2025 10:36 AM |
| **To:** | Willis, Jamila |
| **Cc:** | Hampton, Jeffrey C. |
| **Subject:** | RE: Diamond |

Jamila – although the TSA only requires us to make the Georgia facility available to your client through August 12th (see TSA at p. A-3), I will ask the debtors if they are willing to make this inquiry to the Georgia landlord. In the meantime, I have not received any response from you regarding my multiple requests that Sparkle Pop (i) cease selling consigned inventory and (ii) immediately pay over to the debtors the proceeds of all consignment sales from May 16th onward. I hope your client understands that these issues will not go away.

Please let me know when you have finalized your arrangements with the Olive Branch landlord.

Thank you.

**Adam H. Isenberg**
Partner
**SAUL EWING LLP** | Philadelphia
**Office:** (215) 972-8662   **Cell:** (215) 479-2291

| | |
|---|---|
| **From:** | Hampton, Jeffrey C. |
| **Sent:** | Wednesday, August 13, 2025 8:51 PM |
| **To:** | 'Dew, Ellen' |
| **Cc:** | Minuti, Mark; Isenberg, Adam H. |
| **Subject:** | RE: In re Diamond Comic | Subpoena to Sparkle Pop (Sales of Ad Hoc Committee Stock) |
| **Attachments:** | RE: Diamond |

Ellen:

     The Debtors have sent several emails to and spoken with one of your partners and with your client regarding Sparkle Pop's unauthorized sale of consignment inventory, which, as your client is aware, was not sold to it by the Debtors. The Debtors have demanded in writing on several occasions that Sparkle Pop cease the unauthorized sale of consignment inventory and that Sparkle Pop remit to the Debtors the proceeds of such unauthorized sales. Such demands have been ignored for the most part. I have attached to this email the most recent correspondence on this issue. By this email, the Debtors renew their demand that Sparkle Pop immediately cease the unauthorized sale of consignment inventory and immediately remit to the Debtors all proceeds from such sales. The Debtors reserve all rights regarding this issue.

Jeffrey



| | |
|---|---|
| **From:** | Hampton, Jeffrey C. |
| **Sent:** | Monday, August 18, 2025 9:12 PM |
| **To:** | 'Dew, Ellen' |
| **Cc:** | Isenberg, Adam H. |
| **Subject:** | RE: In re Diamond Comic | Subpoena to Sparkle Pop (Sales of Ad Hoc Committee Stock) |

Ellen:

     I am following up since we never heard back from you after our conversation last evening. Have you had an opportunity to discuss our proposal with your client?

     In furtherance of our discussions, please be aware that Sparkle Pop's unauthorized sale of consignment inventory and its unauthorized retention of the sale proceeds from such sales was, again, an issue that was brought to the bankruptcy court's attention today by certain consignment vendors. By this email, the Debtors again demand that any such unauthorized sales of consignment inventory by Sparkle Pop cease immediately and that the proceeds of such unauthorized sales be remitted immediately to the Debtors. Please confirm that such unauthorized sales of consignment inventory by Sparkle Pop has ceased (and when) or will cease currently. The Debtors have tried on several occasions to work through this issue on a consensual basis and hereby reserve all rights and remedies regarding such unauthorized sales and retention of sale proceeds. Thank you.

     Jeffrey

> **Jeffrey C. Hampton**
> Partner
> **SAUL EWING LLP** | Philadelphia
> **Office:** (215) 972-7118   **Cell:** (215) 479-5290