IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

```
- - - - - - - - - - - - - - - - - x
                                  :
IN RE:                            :
                                  :     Case No. 25-10308-DER
DIAMOND COMIC DISTRIBUTORS, INC., :
                                  :     (Chapter 11)
     Debtor.                      :
                                  :
- - - - - - - - - - - - - - - - - x     September 10, 2025
```

Baltimore, Maryland

### VIRTUAL HEARING

[784]  Motion Debtors Motion (I) to enforce the automatic stay (II) to enforce the sale order and (III) granting related relief /requested hearing date: September 10, 2025 at 10:00 a.m. (ET)/ requested objection deadline: September 5, 2025 filed by Diamond Comic Distributors, Inc..

[812]  Limited objection on behalf of Ad Hoc Committee of Consignors filed by Catherine Keller Hopkin

[828]  Objection on behalf of Sparkle Pop LLC filed by Ellen E. Dew

[829]  Declaration of Steven Bieg filed by Ellen E. Dew

[830]  Joinder of the Consignment Group to the Ad Hoc Committee of Consignors's limited objection to Debtors' motion (I) To enforce the automatic stay (II) To enforce the sale order and (III) grant relief filed by Craig Palik

[836]  Reply of Debtors to Sparkle Pop's objection to Debtor's motion (I) to enforce the automatic stay and (II) To enforce the sale order and (III) granting related relief filed by Jordan Rosenfeld

BEFORE:  THE HONORABLE DAVID E. RICE, Chief Judge

Proceedings recorded by electric sound recording, transcript produced by transcription service.

```
APPEARANCES:                    MARK MINUTI, ESQ.
                                Saul Ewing LLP
                                1201 North Market Street
                                Suite 2300
                                Wilmington, Delaware 19899
                                   On Behalf of the Debtor

                                ADAM ISENBERG, ESQ.
                                Saul Ewing LLP
                                Centre Square West
                                1500 Market Street, 38th Floor
                                Philadelphia, Pennsylvania 19102
                                   On Behalf of the Debtor

                                AUSTIN STRINE, ESQ.
                                Saul Ewing LLP
                                101 Fleet Street, 9th Floor
                                Baltimore, Maryland 21202
                                   On Behalf of the Debtor

                                PETER ARTESE, ESQ.
                                DLA Piper LLP US
                                Harbor East
                                650 South Exeter Street
                                Suite 1100
                                Baltimore, Maryland 21202
                                   On Behalf of Sparkle Pop

                                JAMILA WILLIS, ESQ.
                                DLA Piper LLP US
                                1251 Avenue of the Americas
                                New York, New York 10020
                                   On Behalf of Sparkle Pop

                                JONATHAN YOUNG, ESQ.
                                Troutman, Pepper, Locke LLP
                                701 8th Street, N.W.
                                Suite 500
                                Washington, D.C. 20001
                                   On Behalf of JP Morgan Chase

                                CATHERINE HOPKIN, ESQ.
                                YVS Law, LLC
                                185 Admiral Cochrane Drive
                                Suite 130
                                Annapolis, Maryland 21401
                                   On Behalf of Committee of
                                   Consignors
```

```
APPEARANCES:                CRAIG PALIK, ESQ.
                            McNamee Hosea
                            6404 Ivy Lane
                            Suite 820
                            Greenbelt, Maryland 20770
                               On behalf of the Consignment

                            STEPHEN B. GERALD, ESQ.
                            Tydings & Rosenberg LLP
                            200 Continental Drive
                            Suite 401
                            Newark, Delaware 19713
                               On Behalf of the Creditors
                                Committee

Audio Operator:             Cherita Scott

Transcription Company:      CompuScribe/Willow Transcription
                            125 Holly Creek Court
                            Woodstock, Georgia 30188
                            301/577-5882
```

## I N D E X

Page

Preliminary Matters                                          5

Comments by Mark Minuti, Esq.
    On Behalf of the Debtor                                  6

Court and Counsel Discussions                               13

1              P R O C E E D I N G S

2       (Whereupon, at 10:34 a.m., the hearing began.)

3          THE CLERK:  On the 10:00 docket, calling the case

4   of Diamond Comic Distributors, Inc., case number 25-

5   10108(sic).  Counsels, please identify yourselves and your

6   clients for the record.

7          MR. MINUTI:  Good morning, Your Honor, Mark Minuti

8   from Saul Ewing.  We represent the Debtors. With me today are

9   my colleagues Austin Strine and Adam Isenberg.  Also in the

10  courtroom, Your Honor, I will point out is Ramy Aly of

11  Getzler Henrich.  Not with us today, Your Honor, is Mr.

12  Gordon.  He apologies he could not be here today, he is under

13  the weather.  Good morning.

14         THE COURT:  Good morning.

15         MR. ARTESE:  Good morning, Your Honor, Peter Artese

16  of DLA Piper on behalf of Sparkle Pop, LLC.  With me today is

17  Jamila Willis, also DLA Piper for Sparkle Pop as well.

18         THE COURT:  Good morning to both of you.

19         MR. YOUNG:  Good morning, Judge, Jonathan Young

20  from Troutman  Pepper Locke, I represent J.P. Morgan Chase.

21         THE COURT:  Good morning.

22         MS. HOPKIN:  Good morning, Your Honor, Catherine

23  Hopkin of YVS Law.  I represent the Committee of Consignors.

24         THE COURT:  Good morning.

25         MR. PALIK:  Good morning, Your Honor, Craig Palik

6

1    on behalf of the Consignment Group.

2            THE COURT:  Good morning.

3            MR. GERALD:  Good morning, Your Honor, Stephen

4    Gerald of Tydings & Rosenberg on behalf of the committee.

5            THE COURT:  Good morning to you.  Well, we are here

6    on the Debtor's motion.  Mr. Minuti.

7            MR. MINUTI:  Thank you, Your Honor.  Again for the

8    record, Mark Minuti on behalf of the Debtors.  There is only

9    one matter on this morning's agenda, Your Honor and that is

10   the Debtor's motion to enforce the automatic stay, to enforce

11   the sale order and granting related relief.  This motion was

12   filed on August 26th of 2025, coupled with a motion for

13   expedited consideration.

14           By order dated August 27, the Court granted the

15   motion for expedited consideration and scheduled the matter

16   for hearing today.  And setting the objection deadline of

17   September 5th.  We received one objection to the motion that

18   was filed by Sparkle Pop, that appears at docket number 828.

19   Accompanied by a declaration of Steve Bieg which appears at

20   docket number 829.

21           We also received a limited objection from the Ad

22   Hoc Committee of Consignors at docket number 812 and a

23   joinder by the other consignment group at docket number 830.

24   I am pleased to report, Your Honor that we have reached sort

25   of an agreement on a consensual order, obviously subject to

1  the Court's approval to resolve the relief we were seeking

2  today by way of the motion.

3          By the motion, the Debtor sought to enforce the

4  automatic stay against Sparkle Pop, LLC as it related to

5  consigned inventory.  Specifically the Debtor sought the

6  entry of an order that would require Sparkle Pop to stop

7  selling consigned inventory.  To account for the consigned

8  inventory sold.  To turn over the gross proceeds of the sales

9  of cosigned inventory and then ultimately to pay the Debtor's

10  Attorney's fees and costs and actual and punitive damages.

11          We have reached an agreement, Your Honor, on the

12  terms of a consent order with Sparkle Pop which does provide

13  for the following relief.  Sparkle Pop has agreed they will

14  cease -- stop selling the consigned inventory within 3

15  business days of entry of the order.  They will file a

16  certification confirming that they are no longer selling the

17  consigned inventory and the consigned inventory has been

18  removed from the website and their marketing materials.

19          In three business days of entry of the order,

20  Sparkle Pop will also provide the Debtors any objecting

21  consigned orders, with a detailed accounting of what

22  consigned inventory was in fact sold and that will include

23  things like the product sold, the date sold, the sale price

24  and so on.

25          That accounting will be certified by an officer of

1   Sparkle Pop.  Within three business days of entry of the

2   order, Sparkle Pop will turn over the gross proceeds of the

3   sales of consigned inventory to Omni Agents Solutions.  Omni

4   Agents Solutions as the Court will recall is our Court

5   approved claim agent in these cases.  Omni will hold those

6   proceeds in escrow pending further order of the Court.

7           And to the extent additional proceeds come in from

8   the sale of consigned inventory, Sparkle Pop will turn over

9   those proceeds to Omni, again to be held in escrow. The

10  proposed order, Your Honor, provides that all parties

11  including JP Morgan Chase reserve all their rights, claims

12  and defenses if any, with respect to the consigned inventory

13  and the gross proceeds are fully preserved.

14          I want to make it clear, Your Honor, it was never

15  the Debtor's intent by this motion to in any way address the

16  issues that Your Honor heard a lot about at the last hearing.

17  In connection with the Debtor's consignment sale motion, Your

18  Honor had indicated had stayed that motion in favor of filing

19  adversary proceedings.  Your Honor may have seen on the

20  docket we have started filing adversary proceedings but the

21  point here is, the Debtor never intended for this motion to

22  impact anybody's rights with respect to those issues and the

23  consent order so provides.

24          The Debtor's claims for attorney's fees and

25  compensatory damages as well as Sparkle Pop's responses,

1   defenses and so on are fully preserved.  The idea here, Your

2   Honor, is for us to get the full list of consigned

3   inventories sold, assess what if any damages the Debtors in

4   fact have suffered as a result of that.  To give us some time

5   to see if we can work it out consensually and obviously if

6   not, we will be in touch with chambers to reschedule a

7   hearing to deal with those issues.

8            So from the Debtors' perspective, Your Honor, the

9   consent order gives us all the relief that we were seeking

10  today.  We had originally set the consent order up as a

11  consent order to be signed off on both -- by both the

12  Debtors, Sparkle Pop, JP Morgan Chase as well as the

13  consigned objectors.  What I am told, Your Honor, is that the

14  consignors have no objection to the entry of the order but

15  because their clients are all over the place and because the

16  order was not circulated until late last night, they simply

17  don't have the ability to consent.

18           So as I understand it, the idea would be to take

19  their names off of the consent order but they don't have any

20  objection to Your Honor entering the consent order today

21  which will be assigned by Sparkle Pop and the Debtor.  We did

22  provide to the clerk, Your Honor, a form of the proposed

23  consent order.  There is going to be two changes to that, if

24  Your Honor is  inclined to grant that order.

25           The first change is in the title, Sparkle Pop has

1   requested that we change the title from consent order

2   granting in part the motion to a consent order resolving in

3   part the motion.  The Debtors have no objection to that.  We

4   simply review that as semantics, Your Honor.  And then again

5   the other change, would be, Your Honor we are going to drop

6   the signature pages from the consignment objectors and again

7   they have no objection to the entry of the order today.

8           So, we believe Your Honor that is an appropriate

9   way to resolve the matter.  It gives us the relief again the

10  Debtor was seeking today in a consensual basis that avoids a

11  fight today and gives us a window and an opportunity, Your

12  Honor to get our arms around exactly what happened here.

13  Everyone's rights are reserved.  And again hopefully we can,

14  if the remaining -- any remaining issues we can resolve those

15  consensually and if not, we will be back before Your Honor.

16          So we would ask that the Court -- obviously we will

17  clean the order up and submit it later, if Your Honor is

18  inclined to grant it but we would ask that Your Honor approve

19  the consent order as outlined.

20          THE COURT:  All right.  Thank you.

21          MR. MINUTI: Thank you.

22          THE COURT:  Ms. Willis?

23          MS. WILLIS:  Good morning, Your Honor, for the

24  record Jamila Willis on behalf of Sparkle Pop.  Your Honor, I

25  only rise to say that the consent order as revised and as

1    described by Debtors' counsel this morning, does reflect the

2    resolution to the motion that was agreed upon between Sparkle

3    Pop and the Debtors and it reserves all rights with respect

4    to the motion which we hope to also be able to resolve

5    consensually, Your Honor.

6              THE COURT:  Okay.  Good.  Thank you.

7              MS. WILLIS:  Thank you.

8              THE COURT:  Mr. Young.

9              MR. YOUNG:  Your Honor, on behalf of JP Morgan, we

10    support the consent order.  We think it is an efficient next

11    step.  And it sets the parties up to try to get the

12    resolution on how to dispose of the proceeds.  Thank you.

13              THE COURT:  Okay.  Thank you.  Ms. Hopkin?

14              MS. HOPKIN:  Your Honor, on behalf of the Ad Hoc

15    committee, we -- everything Mr. Minuti said is accurate.  My

16    clients do not object to the entry of the order.  I did have

17    the opportunity to review the final proposed form before you

18    came out.  The only fault I suppose we would find is that we

19    did learn through the e-mails attached to the motion that the

20    Debtor knew of these sales, at least as late as June 1st.

21              So we wish that had been done earlier but

22    nevertheless it does resolve the limited objections that we

23    set forth.  And so we do not object to the entry of the

24    order.

25              THE COURT:  All right.  Thank you.

1          Mr. Palik?

2          MR. PALIK:  Thank you, Your Honor.  Craig Palik on

3  behalf of the Consignment Group.  Mr. Minuti's

4  representations are correct.  We do not have an objection to

5  the entry of the order today because of the disparity of the

6  group and geographic issues, I am not able to actually sign

7  off as a consent order but we have no objection.  It does

8  appear to stop the bleeding.  And to reserve all rights and

9  that is what matters.  And so we do not object.

10          THE COURT:  All right.  Thank you.

11          Mr. Gerald?

12          MR. GERALD:  Your Honor, Steve Gerald on behalf of

13  the committee. Although we are not a signatory to the consent

14  order, we think this is an appropriate resolution and support

15  it.

16          THE COURT:  All right.  Mr. Gerald, don't take a

17  seat.  The one thing about this order that I had some

18  question about shall we say, when I read it -- I appreciate

19  having been provided it in advance -- is it contains a

20  provision providing for Omni Agents Solutions Inc. to act as

21  an escrow agent.  And how shall I say this, first of all I

22  guess my understanding is that this escrow amount is going to

23  be in the order of magnitude of a million and a half dollars.

24  So that is not insubstantial.

25          And second, this is a case that has been

1    highlighted by shall we say a series of misadventures and

2    problems.  And I don't have any knowledge or experience with

3    this Omni Agents Solutions firm and don't know anything about

4    their trustworthiness, their creditworthiness, their

5    experience as an escrow agent.  Has the committee looked into

6    this?  And is the committee satisfied that Omni is an

7    appropriate party to be holding $1.5 million for an

8    indefinite period of time?

9            MR. GERALD:  I mean, Your Honor, raises a very good

10   issue.  I mean, I -- I know Omni just acting as a claims

11   agent in numerous cases across the country. I personally

12   don't nor do I know that our co-counsel committee have

13   experience with them acting as a escrow agent, so I can't

14   opine to that.  But as far as you know, knowing the company

15   and knowing that they are a major player in the claim's agent

16   space, I can attest to that.

17           I am comfortable with, you know, being familiar

18   with the company and I would just hope that you know,

19   appropriate protections are in place to ensure that -- that

20   it is in safe keeping.

21           THE COURT: Hope is an operative word.

22           MR. GERALD:  Indeed.

23           THE COURT:  That is tempered by the concern I

24   expressed about the surprises that have happened in this case

25   over the course of multiple months.  Do you know anything

1  about whether there is any -- what the -- how this money

2  would be presumably held or invested or if there would be any

3  return on it?

4          MR. GERALD:  I don't.  I would defer to the

5  Debtor's counsel on that point.

6          THE COURT: I mean, this could go on for a while and

7  a million and half dollars is not immaterial.

8          MR. GERALD:  Indeed.

9          THE COURT:  Okay.  Thank you.

10         Mr. Minuti, can you address the Court's concerns?

11         MR. MINUTI:  I will, Your Honor.

12         THE COURT:  Has this been discussed with the United

13  States Trustee?

14         MR. MINUTI:  It has not been discussed with the

15  United States Trustee.  Your Honor, the reason why we

16  selected Omni is first we were trying to be responsive to the

17  consignors who didn't want the Debtor to hold the money.

18  Frankly, we are agnostic as to where it goes.  We have had

19  experience with Omni.  They are a nationally recognized firm

20  that does both escrow services and claim agent services.  We

21  have used them in other cases.

22         Frankly they are user friendly, number one.  They

23  are relatively inexpensive.  But again we are not wedded to

24  that.  I mean, we would be happy to pay the money into court,

25  you know we can certainly discuss with the parties and get

1   them comfortable.  I mean, our goal here was to satisfy the

2   concerns that the Debtor is not holding it.  So if that is

3   the Court's hold up, we can certainly address that and

4   hopefully give the Court comfort and give the other party's

5   comfort.  So no objection from us.

6        THE COURT:  Okay.  I mean, I think that I might be

7   more comfortable if it was paid into the Court's registry.

8        MR. MINUTI:  No problem with us, Your Honor.

9        THE COURT:  But I don't know if others beyond the

10  Debtor have a view about that.  Ms. Hopkin?

11       MS. HOPKIN:  Thank you, Your Honor.  Yes, we had

12  said in the limited objection that we thought the Court

13  registry might be an appropriate place.  I would say I think

14  my clients would be comfortable with a third party escrow

15  agent if there is an escrow agreement that is circulated,

16  that has protections with respect to what happens to the

17  money while it is being escrowed and how it can be released.

18  And typically this amount of money in particular would have

19  some sort of escrow agreement associated with it.

20       So to avoid that perhaps the Court registry would

21  be the simplest solution.

22       THE COURT:  Mr. Palik?

23       MR. PALIK:  We similarly have no objection with the

24  money be held in the Court registry if that makes the Court

25  more comfortable.  My client's concern was the Debtor not

1    hold the funds and --

2              THE COURT:  Right.  I understand that.  Of course.

3              MR. PALIK:  And I would agree with Ms. Hopkin's

4    sentiments that an appropriate escrow agreement would be in

5    order.  And you know, certainly if it is Omni, Omni is within

6    the jurisdictions of this Court as Debtor's claim agent, we

7    feel comfortable that the Court does have sufficient

8    oversight to address those types of issues, if there were

9    issues.  We did consider them as being an issue when we said

10   we had no objection.

11             THE COURT:  Okay.  But there is -- perhaps when you

12   start talking about north of a million dollars, it is one

13   thing if it is in the Debtor -- I understand you don't want

14   the Debtor to have the money but if it is in a Debtor in

15   possession account, then there is certain security with

16   respect to that money which I am not sure wouldn't necessary

17   be the case with respect to an Omni account as escrow agent.

18             Ms. Willis, does Sparkle Pop have an issue with

19   this?

20             MS. WILLIS:  Your Honor, we have no objection to

21   having the money held in the Court registry.

22             THE COURT:  Okay.  Mr. Young, is that okay with

23   your client?

24             MR. YOUNG:  No objection, Your Honor.  And we are

25   also fine with Omni.  Either is fine.

1          THE COURT:  Okay.  Then I would like to see it

2    changed to Court registry, Mr. Minuti.  And I have already

3    discussed this with the clerk so he knows that this is a

4    potential issue. But I will make sure that he knows that that

5    is the change that has been made and that he reaches out to

6    you to facilitate whatever arrangements have to be made to

7    get the money paid into the registry when the time comes.

8          MR. MINUTI:  Very well, Your Honor. We will make

9    that change.

10         THE COURT:  Okay. Thank you, all.

11         MR. MINUTI:  Your Honor, if I may, I have one

12   housekeeping matter.

13         THE COURT:  Sure.

14         MR. MINUTI:  Will you give me two minutes?

15         THE COURT:  Yes.

16         MR. MINUTI:  So we have one sort of hold over

17   matter from our sale motion. And that is the assumption and

18   assignment of the Olive Branch facility lease.  That has been

19   on hold as Sparkle Pop and the Olive Branch landlord have

20   been negotiating.  So, the sale motion provided for the

21   assumption and assignment, the landlord had objected.  They

22   have now reached a resolution.  That resolution, Your Honor,

23   is going to be embodied in the stipulation and I believe the

24   lease is going to be amended.  That doesn't affect the

25   Debtor, obviously.

1            The only effect on the Debt is I think the cure

2    claim is going to be a little more than we had anticipated.

3    And we are fine with that but I wanted Your Honor to be aware

4    of that.  Our thought was to have the stipulation that is

5    agreed to by the parties, you know have an order presented

6    with that and submit it under certification.  I just wanted

7    to make sure that was okay with Your Honor, or if there is a

8    different procedure, we are happy to follow that.

9            THE COURT:  What context is that order being

10   presented?

11           MR. MINUTI:  It is being presented as part of the

12   sale motion.  The sale motion asked for the sale of assets

13   and the assumption of the assignment of leases.  And this is

14   just the hold over of one of the leases that has not yet been

15   assumed and assigned.

16           THE COURT:  Is the committee knowledgeable about

17   the terms of this stipulation and its --

18           MR. MINUTI: I will look to Mr. Isenberg, but I

19   believe so.  But we can certainly run it by them before we

20   submit it.

21           THE COURT: I mean the --

22           MR. MINUTI:  That is not an issue.

23           THE COURT:  I want to make sure there is

24   appropriate notice.  This is coming out of the blue.  I

25   don't -- coming out of the blue is a little unfair but I

1    mean, it is just going to be presented and not in the --

2            MR. MINUTI:  Then why don't we do this, Your Honor.

3    Why don't we run it by the key players and if everybody is on

4    board, we will submit it.  If Your Honor has an issue, we

5    will -- I am sure we will hear about it and we can do it a

6    different way.  But you know, we are just trying to be

7    economical here in terms of how we submit, so.

8            THE COURT:  I understand.  Economy is an important

9    factor.  As well as expedition and consideration but also

10   making sure everybody has a fair opportunity to be heard and

11   the due process is as important too.

12           MR. MINUTI:  I appreciate that, Your Honor.

13           THE COURT:  Mr. Gerald looks like he wants to say

14   something.

15           MR. GERALD:  Your Honor, I would just you know,

16   agree that it probably makes sense to just give the parties

17   an opportunity to review and make sure that there are no

18   objections before it is submitted.

19           THE COURT:  Well, if it is submitted with the

20   certification, that it has been circulated for review and

21   there are no objections, then the Court is probably not going

22   to have a problem.  But, if there is one, we will let you

23   know.  All right.

24           MR. GERALD:  Right.

25           MR. MINUTI:  Appreciate that, Your Honor.  Thank

1    you.

2              THE COURT:  Thank you all.

3         (Whereupon, at 10:53 a.m., the hearing concluded.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from electronic sound recording of the proceedings in the above-entitled matter.

/s/ Lisa N. Contreras
_____
Lisa N. Contreras, Certified Transcriber
CompuScribe/Willow Transcription
Certificate No. CET-1251