IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING STIPULATION AMONG DEBTORS, DIAMOND COMICS DISTRIBUTORS II LLC AND AIREIT MEMPHIS DC LLC REGARDING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED REAL ESTATE LEASE, AS AMENDED, TO DIAMOND COMICS DISTRIBUTORS II LLC

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move (this "Motion") as follows:

**Preliminary Statement**

1. The Court's Order approving the Debtors' sale of certain assets to Sparkle Pop, LLC ("Sparkle Pop"), as entered on May 1, 2025 [D.I. 407] (the "Sale Order"), contained provisions regarding the Debtors' potential assumption and assignment of executory contracts and unexpired leases to Sparke Pop. One of these leases was a lease of real estate located in Olive Branch, Mississippi pursuant to a lease agreement dated September 13, 2007, as amended by that certain First Amendment to Lease Agreement dated June 24, 2008, that certain Second Amendment to Lease Agreement dated March 31, 2011, that certain Third Amendment to Lease Agreement dated September 1, 2011, and that certain Fourth Amendment to Lease Agreement dated December 11, 2020 (as so amended, the "Lease").

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

56042577.6

2. The landlord with respect to the Lease, AIREIT Memphis DC LLC ("AIREIT"), filed several protective objections to the potential assumption and/or assignment of the Lease, and its rights were preserved in the Sale Order. These objections have been resolved pursuant to the stipulation (the "Stipulation") attached to the Proposed Order (as defined below) as **Exhibit 1**, by which the Lease would be consensually assumed and assigned, as amended, to an affiliate of Sparkle Pop.

3. Accordingly, by this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to Federal Rule of Bankruptcy 9019 and the Sale Order, approving the Stipulation.

## Jurisdiction and Venue

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory basis for the relief requested herein is Federal Rule of Bankruptcy Procedure 9019 and rule 9109-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Bankruptcy Rules").

## Background

6. On January 14, 2025 (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

On January 29, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

7.  A description of the Debtors' business as of the Petition Date and the reasons for commencing these cases are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petitions and First Day Relief* [D.I. 20] (the "First Day Declaration").

8.  The Debtors commenced these chapter 11 cases to run a sale process for all or substantially all of their assets pursuant to section 363 of the Bankruptcy Code. To that end, on February 11, 2025, the Court entered an order establishing, among other things, bidding procedures and key deadlines for the Debtors' postpetition sale process [D.I. 136] (the "Bid Procedures Order"). On February 21, 2025, the Debtors filed a motion seeking authority to sell substantially all their assets free and clear of any liens, claims, interests and encumbrances, and to assume and assign executory contracts and unexpired leases in connection with the sale of the Debtors' assets [D.I. 168].

9.  Consistent with the Bid Procedures Order, the Debtors held an auction on March 24 and 25, 2025. Following the Auction, the Debtors filed the *Notice of Designation of Successful Bidder and Back-Up Bidder* (D.I. 270) identifying Alliance Entertainment, LLC ("Alliance") as the successful bidder and a combination of Universal Distribution, LLC ("Universal") and Ad Populum, LLC, as the back-up bidders.

10. Ultimately, the sale to Alliance did not close and the Debtors pivoted to seeking authority to sell their assets to the designated back-up bidders. *See Debtors' Motion for Entry of Orders Authorizing the Sale of Substantially All of the Debtors' Assets to the Back-Up Bidders Pursuant to the Bidding Procedures Order* (D.I. 385). On May 1, 2025, the Court entered Orders approving the sale of substantially all the Debtors' assets to Universal and Sparkle Pop, LLC

3

("Sparkle Pop") (an affiliate of Ad Populum, LLC). *See* D.I. 407 & 408. The sales to Universal and Sparkle Pop closed in May 2025. *See* D.I. 499 and 500.

### Basis for Relief Requested

**A.   The Stipulation**

11.   The Stipulation is a three-party agreement, among (i) the Debtors, (ii) AIREIT; and (iii) an affiliate of Sparkle Pop, LLC called "Diamond Comic Distributors II, LLC".

12.   The basic terms of the Stipulation are as follows[2]:

   i. Upon Court approval of the Stipulation, the Lease shall be deemed assumed, as modified, by Diamond Comic Distributors, Inc. ("Diamond") and assigned to an affiliate of Sparkle Pop (Diamond Comic Distributors II, LLC) pursuant to that certain Fifth Amendment to Lease Agreement executed by AIREIT and Diamond II (the "Fifth Amendment").

   ii. Within three (3) business days of Court approval of the Stipulation, the Debtors shall pay or cause to be paid the following cure payments to AIREIT, which shall constitute all amounts necessary to cure any and all defaults arising under the Lease pursuant to section 365(b)(1), including but not limited to obligations due and owing to AIREIT with respect to the assumption and assignment of the Lease, as amended by the Fifth Amendment (as so amended, the "Amended Lease"):

   1. $451,083.73, which shall be paid from sale proceeds escrowed from the closing on the asset purchase agreement previously approved by

---

[2]   Set forth herein is merely a summary of certain material terms of the Stipulation. Reference is made to the Stipulation, which is attached as Exhibit 1 to the Proposed Order, for its complete terms. In the event of any discrepancy between the terms of the Stipulation, as described herein, and the actual terms of the Stipulation, the Stipulation shall prevail.

4

        the Sale Order (the "Sparkle Pop APA"), which are currently held in escrow by Omni Agent Solutions, LLC.

    2. $84,510.81, which amount shall be paid by Diamond.

iii. Other than as set forth above, no additional or further amounts are or shall be required to be paid in order to cure defaults existing under the Lease as of the date of the Stipulation as required by section 365 of the Bankruptcy Code in connection with the assumption by the Debtors and the assignment of the Amended Lease.

iv. The Stipulation, once approved by the Court, shall resolve AIREIT's objections filed as Docket Nos. 215, 264 and 312 with respect to the assumption and assignment of the Lease.

v. Upon entry of an order of the Court approving the Stipulation and AIREIT's receipt of the cure payments specified in paragraph 3 of the Stipulation, and subject to AIREIT's receipt of all amounts due under the Lease attributable to the month of September 2025, including but not limited to Base Rent and Additional Rent due under the terms of the Lease and provided that there are no other monetary defaults under the Lease, AIREIT shall promptly return to JPMorgan Chase Bank, N.A. ("JPM"), undrawn, the $1.0 million letter of credit issued by JPM for the benefit of AIREIT or its predecessor(s), to secure certain obligations of Diamond with respect to the Lease.

B.   **Approval of Stipulation**

13.   The Debtors believe that their entry into the Stipulation is consistent with, and in furtherance of, the Sale Order.  Among other things, the Sale Order provided for the payment of cure amounts with respect to assumed and assigned contracts and expressly provided that "[t]he Cure Amount of any Assigned Contract subject to an Adjourned Contract Objection shall be fixed at the amounts agreed to in writing by the Debtors (subject to the consent of Purchaser) and such counterparties, or if no agreement is reached, fixed at the amounts ordered by this Court after a hearing at a date and time reasonably determined by the Debtors in consultation with Purchaser (or otherwise scheduled by this Court)." Sale Order, at par. 26.  Here, as set forth in the Stipulation, an agreement has been reached regarding the applicable cure amount.

14.   Bankruptcy Rule 9019(a) governs the procedural prerequisites to approve a settlement, stating that "[o]n the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Settlements and compromises are "a normal part" of the chapter 11 process. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Indeed, "compromises are favored in bankruptcy" because they minimize litigation and expedite the administration of a bankruptcy estate. *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); see also *U.S. ex rel. Rahman v. Oncology Assocs.*, P.C., 269 B.R. 139, 149 (D. Md. 2001), *aff'd sub nom. U.S. ex rel. Rahman v. Colkitt*, 61 F. App'x 860 (4th Cir. 2003) ("Settlements are to be encouraged, and it should not be the intention of a court to discourage settlements.").

15.   In considering a Bankruptcy Rule 9019(a) motion, a court must "balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d at 393.  Assessing this balance includes consideration

6

of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.; see also In re Panache Cuisine, LLC*, No. 13-17027-JS, 2013 WL 5350613, at *4 (Bankr. D. Md. Sept. 23, 2013) (citing the *Martin* factors); *In re Toussaint*, No. 01-12690-TJC, 2008 WL 427278, at *5 (Bankr. D. Md. Feb. 13, 2008) (same). "The ultimate inquiry that is prerequisite to the granting of approval to a settlement is the determination that the settlement is in the best interests of the estate." *In re Panache Cuisine, LLC*, 2013 WL 5350613, at *4.

16. Moreover, when deciding whether to approve a compromise, a court will normally accept the judgment of the movant as long as a legitimate business justification exists. *See Martin*, 91 F.3d at 395; *see also In re Toussaint*, 2008 WL 427278, at *6 ("a trustee's business judgment to enter into a settlement is afforded substantial weight"). Although approval of a compromise is within the "sound discretion" of the bankruptcy court (*In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006)), the court should not substitute its judgment for that of a trustee or debtor in possession. *In re Parkview Hosp.-Osteopathic Med. Ctr.*, 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996). The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interests of the estate." *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008). A court need not be convinced that a proposed settlement is the best possible settlement, but "must conclude that it is within the reasonable range of litigation possibilities." *World Health*, 344 B.R. at 296 (internal citations omitted); *see also U.S. ex rel. Rahman*, 269 B.R. at 149 ("A court may approve a settlement over objections unless the proposed settlement falls below the 'lowest point in the range of reasonableness.'") (internal citations omitted).

17. Applying the foregoing standards to the present case, the Debtors have concluded, in their business judgment, that the Stipulation is fair, reasonable and in the best interests of their estates and creditors. Several considerations support this conclusion.

18. First, Court approval of the Stipulation would allow the Debtors to fulfill any obligations under the Sparkle Pop APA to assign the Lease to Sparkle Pop or a Sparkle Pop designee. See, e.g., Sparkle Pop APA, at § 2.1(e). By so doing, the Stipulation, once approved by the Court, would allow the Debtors to avoid any disputes with Sparkle Pop as to whether or not the Debtors have complied with their obligations regarding the assignment of the Lease.

19. Second, the assignment of the Lease as contemplated in the Stipulation would spare the Debtors' estates significant rejection claims, which would likely arise if the Stipulation is not approved and the Lease is required to be rejected.

20. And finally, Court approval of the Stipulation would allow the Debtors to obtain a return of a $1.0 million letter of credit to the Debtors' DIP Lender. This letter of credit currently serves as security for Diamond's obligations under the Lease. Because the letter of credit has been "cash collateralized" by the DIP Lender pursuant to the parties' credit agreement, the return of such letter of credit will reduce the amount due to the DIP Lender by approximately $2.0 million – representing both a release of the cash collateral and a reduction in the DIP Lender's exposure. Such a reduction is substantial, and inures to the benefit of the estate and all creditors.

21. The benefits of the Stipulation accordingly far outweigh its costs. That is, Court approval of the Stipulation would allow the Debtors to obtain a meaningful reduction of their current balance under their DIP credit agreement. Most of the cure amount is currently held in escrow (subject to the liens of the Debtors' DIP Lender) by the Debtors' claims agent (Omni Agent

Solutions), and represents proceeds from the Sparkle Pop sale. Very little "new money" is required to effectuate the Stipulation.

22. These obvious benefits of the Stipulation put the stated objection of the Ad Hoc Committee and Consignment Group to Court approval of the Stipulation in perspective. In their view, no cure amounts should be paid unless they, as consignors, are paid the administrative claims they contend are due. Respectfully, that is not a valid objection to the Stipulation. Court approval of the Stipulation is clearly in the interest of all creditors. The consignors' proposed Court disapproval of the Stipulation, on the other hand, will do nothing for the estate, will do nothing for consignors and will do nothing for other creditors. In the event the Stipulation is not approved, the funds that otherwise would be used to pay AIREIT's cure claim would be payable to the Debtors' DIP Lender, which holds a lien on such funds. None of such funds would go to other creditors.

23. For these reasons, the Debtors respectfully submit that Court approval of the Stipulation is in the best interest of the estate and creditors.

## Waiver of Memorandum of Law

24. Pursuant to Local Bankruptcy Rule 9013-2, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, the Debtors will rely on the grounds and authorities set forth herein.

## Notice

25. Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Committee; (iii) counsel to JPMorgan Chase Bank, N.A.; (iv) the United States Attorney for the District of Maryland; (v) the offices of the attorneys general for the states in which the Debtors

operate; (vi) the Internal Revenue Service; (vii) the United States Attorney general; (viii) the civil process clerk for the United States Attorney for the District of Maryland; (ix) the Landlord; (x) counsel to the Ad Hoc Committee of Consignors; (xi) counsel to the Consignment Group; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: October 1, 2025				**SAUL EWING LLP**

By:*/s/ Jordan D. Rosenfeld*
Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
         adam.isenberg@saul.com

-and-

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
         paige.topper@saul.com
         nicholas.smargiassi@saul.com

*Counsel for Debtors and Debtors in Possession*

10