**EXHIBIT "A"**



February 13, 2023

EXECUTIVE OFFICE
10150 York Road, Suite 300
Hunt Valley, MD 21030
(443) 318-8001
FAX (410) 683-7088
diamondcomics.com

207 REDCO, LLC
Attention: Glenn Rexroth
465 E. Locust Street
Dallastown, PA 17313

Re:   Option(s) to Renew Lease Agreement
        Premises: 207 Redco Ave, Red Lion, PA 17356
        Landlord: 207 REDCO, LLC
        Tenant: Diamond Comic Distributors, Inc., T/A Alliance Game Distributors

Dear Mr. Rexroth: .

Please confirm, by your signature below, your acceptance of this written notice that Diamond Comic Distributors, Inc., T/A Alliance Game Distributors, will exercise its Option 1 to Renew for the above referenced Premises, per the terms of the Agreement of Lease, dated April 9, 2018. The renewal will be for a five-year period of August 1, 2023 through July 31, 2028

In addition, Landlord agrees to make the following improvements to the Premises at no additional charge to the Tenant:

a)  Miscellaneous concrete and floor repairs.
b)  Grinding down of old steel fasteners on the floor in certain areas.
c)  Small hole in exterior wall needs to be filled-in.

Once you sign the letter, please return it to Margaret Murphy, Director of Risk and Facilities Management – her email address is mmarg@diaomndcomics.com  Also, please let her know what else may be needed to assure the renewal option is formally accepted in its entirety as outlined in this letter..

Diamond looks forward to continuing our relationship with you in Red Lion.

Sincerely,

*Charles Parker, President*          *2/13/23*

Charles Parker
President

Renewal Approved by Landlord          *2-17-23*

Glenn Rexroth for 207 REDCO, LLC                                    Date

# AGREEMENT OF LEASE

## BY AND BETWEEN

### 207 REDCO, LLC
Landlord

### AND

### Diamond Comic Distributors, Inc.
Tenant

April 9, 2018
(Effective Date)

i

### TABLE OF CONTENTS

ARTICLE 1 – BASIC LEASE PROVISIONS..........................................................................3

    EXHIBIT A – MAINTENANCE / EXPENSE RESPONSIBILITIES ...........................10

    EXHIBIT B – PLANS...........................................................................................12

ARTICLE 2 - LEASE TERMS..........................................................................................13

1.   PROPERTY / PREMISES ......................................................................................13

2.   TERM..................................................................................................................13

3.   DATES DEFINED..................................................................................................13

4.   OCCUPANCY; POSSESSION ...............................................................................13

5.   RENT...................................................................................................................14

6.   PAYMENT OF RENT ............................................................................................15

7.   SECURITY DEPOSIT............................................................................................15

8.   OPTION(S) TO RENEW ........................................................................................16

9.   TERMINATION.....................................................................................................16

10. MAINTENANCE ...................................................................................................16

11. SURRENDER OF PROPERTY AND PREMISES .....................................................17

12. UTILITIES............................................................................................................17

13. REFUSE REMOVAL .............................................................................................17

14. TAXES AND ASSESSMENTS ...............................................................................17

15. PROPERTY AND CASUALTY INSURANCE.............................................................18

16. LANDLORD'S AND TENANT'S RELEASE OF RECOVERY RIGHTS .........................18

17. LIABILITY INSURANCE........................................................................................18

18. DESTRUCTION....................................................................................................19

19. ASSIGNMENT/SUBLETTING ...............................................................................19

20. SIGNS.................................................................................................................20

21. ALTERATIONS.....................................................................................................20

22. LANDLORD INSPECTION .....................................................................................20

23. CONDEMNATION .................................................................................................20

24. REMEDIES OF LANDLORD ..................................................................................21

25. INTEREST ...........................................................................................................22

26. NOTICES.............................................................................................................22

27. NON WAIVER ......................................................................................................22

28. QUIET ENJOYMENT ............................................................................................22

29. ATTORNMENT .....................................................................................................23

30. SUBORDINATION ................................................................................................23

31. DESCRIPTIVE HEADINGS ...................................................................................23

32. ESTOPPEL CERTIFICATE BY TENANT .................................................................23

33. BROKER..............................................................................................................23

**ARTICLE 1 – BASIC LEASE PROVISIONS**
Whenever used in this Lease, each reference to Article 1 – Basic Lease Provisions and Article 2 – Lease Terms shall be deemed and construed to incorporate all of the terms provided in this Lease.

**LANDLORD AND TENANT**

LANDLORD
| | |
|---|---|
| Name: | 207 REDCO, LLC |
| | Attn: Glenn Rexroth |
| Address: | 465 E. Locust Street |
| | PO Box 98 |
| | Dallastown, PA 17313 |
| | |
| Telephone: | (717) 246-3095 |
| Fax: | (717) 246-3506 |
| Email: | glenn@tri-borosupplies.com |

TENANT
| | |
|---|---|
| Name: | Diamond Comic Distributors, Inc., T/A Alliance Game Distributors |
| Address: | 10150 York Road, Suite 300 |
| | Hunt Valley, MD 21030 |
| | |
| Telephone: | (443) 318-8001 |

**PROPERTY/PREMISES**

PROPERTY
| | |
|---|---|
| Property Name: | 207 Redco Ave |
| Address: | 207 Redco Avenue |
| | Red Lion, PA 17356 |
| | |
| Municipality: | Red Lion Borough |
| County: | York County |

PREMISES A portion of the Property including an undivided interest in all common areas, described as:
| | |
|---|---|
| Suite / Unit #: | Suite #4 |
| Rentable SF: | Approximately 40,050 SF as outlined on the attached Exhibit "B" |
| Intended Use: | General Office, warehouse distribution, high bay racking, packaging, shipping and receiving |

**TERM**

| | |
|---|---|
| The Term of this Lease shall be | Five (5) years from Base Rent Commencement: |
| Lease Commencement Date: | July 1, 2018 – Subject to having fully executed lease by 4/9/2018 |
| Base Rent Commencement Date: | August 1, 2018 |
| Additional Rent Commencement Date: | August 1, 2018 |
| Utility Commencement Date: | July 1, 2018 |
| Early Occupancy Date: | After May 1, 2018 |
| Expiration Date: | July 31, 2023 subject to the Termination as described herein |
| Renewal / Termination Notice Date: | May 1, 2023 or at least ninety (90) days prior to the expiration date |

3

**EARLY OCCUPANCY DATE**

Tenant shall be granted, rent and operating expense free, early occupancy after May 1, 2018 for the installation of equipment, racking, telecommunications and other related start-up items working concurrently and in conjunction with the Landlord as the Landlord completes the work specified herein. On July 1, 2018 the Premises shall have been Substantially Completed. Substantial Completion is defined to be when (i) all of Tenant's construction has been completed in accordance with all working drawings and specifications approved by Tenant (minor punch list items excepted), (ii) all Building services are available to Tenant's Initial Premises, (iii) all common areas are complete and available for use by the public, including installation of all finishes, (iv) a certificate of occupancy has been received, and (v) Tenant has received a Non-Disturbance Agreement for all existing lien holders. In the event that delivery of the space is delayed beyond July 1, 2018, the rent and operating expenses will be prorated to the date of delivery.

**RENT & ADDITIONAL TERMS**

BASE TERM

| Time Period | Period Amount | Monthly Amount | $ per SF |
|---|---|---|---|
| July 1, 2018 – July 31, 2018 | Free Period | Free Period | Free Period |
| August 1, 2018 – June 30, 2019 | $124,822.50 | $11,347.50 | $3.40 |
| July 1, 2019 – June 30, 2020 | $136,170.00 | $11,347.50 | $3.40 |
| July 1, 2020 – June 30, 2021 | $140,178.00 | $11,681.50 | $3.50 |
| July 1, 2021 – June 30, 2022 | $140,178.00 | $11,681.50 | $3.50 |
| July 1, 2022 – June 30, 2023 | $140,178.00 | $11,681.50 | $3.50 |
| July 1, 2023 – July 31, 2023 | $11,681.50 | $11,681.50 | $3.50 |

OPTION(S) TO RENEW

Tenant shall have the right to renew this Lease for two (2) additional five (5) year term(s) by giving Landlord ninety (90) days written notice prior to the expiration of the then current Term, upon the terms described below.

Option 1

| Time Period | Period Amount | Monthly Amount | $ per SF |
|---|---|---|---|
| August 1, 2023 – July 31, 2024 | $147,186.00 | $12,265.50 | $3.68 |
| August 1, 2024 – July 31, 2025 | $147,186.00 | $12,265.50 | $3.68 |
| August 1, 2025 – January 31, 2026 | $73,593.00 | $12,265.50 | $3.68 |
| February 1, 2026 – January 31, 2027 | $154,546.20 | $12,878.85 | $3.86 |
| February 1, 2027 – January 31, 2028 | $154,546.20 | $12,878.85 | $3.86 |
| February 1, 2028 – July 31, 2028 | $77,273.10 | $12,878.85 | $3.86 |

Option 2

| Time Period | Period Amount | Monthly Amount | $ per SF |
|---|---|---|---|
| August 1, 2028 – July 31, 2029 | $162,273.60 | $13,522.80 | $4.05 |
| August 1, 2029 – July 31, 2030 | $162,273.60 | $13,522.80 | $4.05 |
| August 1, 2030 – January 31, 2031 | $81,136.80 | $13,522.80 | $4.05 |
| February 1, 2031 – January 31, 2032 | $170,400.00 | $14,200.00 | $4.25 |
| February 1, 2032 – January 31, 2033 | $170,400.00 | $14,200.00 | $4.25 |
| February 1, 2033 – July 31, 2033 | $85,200.00 | $14,200.00 | $4.25 |

PAYMENT OF RENT
Rent shall be payable in advance, without demand, on the first day of each month during the term or any continuance or renewal of term.

Payable to:    Rock Lease Administration
Mailed to:     ROCK Commercial Real Estate, LLC
               221 W. Philadelphia Street, Suite #19
               York, PA  17401

LATE PAYMENT / FEES
There will be a late payment charge of $10.00 /per day on all late Rent payments beginning with the fifth (5th) day following the due date.  Late fees shall be due and payable as Additional Rent.

SECURITY DEPOSIT
Not required

TERMINATION
In the event Tenant does not exercise its option as set forth above, either party may terminate this Lease at the end of the term herein by giving the other written notice of at least ninety (90)  days prior thereto, but in default of such notice this Lease shall continue upon the same terms and conditions for a further period of one (1) month, and so on from month to month until terminated by either party giving to the other party ninety (90) days written notice, in which event this Lease shall terminate on the last day of the month following the end of the ninety (90) day period.

ADDITIONAL RENT / EXPENSES
Tenant shall pay, as Additional Rent, Operating Expense(s) (hereinafter referred to as "OE") of Two Thousand Seven Hundred Seventy dollars and 13/100 ($2,770.13) per month, which sum shall be due and payable at the same time as the Base Rent provided herein.  Refer to Exhibit A – Maintenance/Expense Responsibility.

PRO RATA SHARE
Thirty-Seven Percent  (37%) - Wherever Pro Rata Share is mentioned, Pro Rata Share shall be defined as the ratio of the Tenant's Premises as compared to the total rentable area of all Buildings (108,090 SF) of which the Premises is a part..

MAINTENANCE
On the Possession Date of the Lease, the Landlord warrants that major mechanical systems are in good operating condition.  Tenant shall not be required to reimburse the Landlord for HVAC maintenance expenses that exceed $2,000.00 during any calendar year of the lease, unless the required HVAC repairs are as a result of damage or negligence on the part of the Tenant. Thereafter, maintenance responsibilities shall be as defined on Exhibit A – Maintenance/Expense Responsibility.

5

**Use/Zoning:** Tenant shall have the right to use the facility for general office, warehouse distribution, high bay racking, packaging, shipping and receiving. Landlord warrants that the property is appropriately zoned for the intended use.

**Audit Rights:** Tenant or Tenant's agent shall have the right to review, copy, and if necessary, audit the Landlord's invoices regarding operating expenses during the lease term.

**Access:** Tenant shall have access 24 hours per day, 7 days per week to the Property/Premises.

LANDLORD
IMPROVEMENTS

Landlord and shall cause the Tenant Improvements to be Substantially Completed (as defined above) and exclusive possession of the Premises to be delivered to Tenant (herein collectively referred to as the "Delivery Conditions") no later than July 1, 2018 (the "Delivery Deadline"), subject to having a fully executed lease by April 9, 2018.. If the Delivery Conditions have not been satisfied by the Delivery Deadline, then: (i) then the Commencement Date shall be delayed for every day after the Delivery Deadline that the Delivery Conditions have not been satisfied, and (ii) the one(1) month Abatement Period shall be extended by one (1) day for each day after the Delivery Deadline that the Delivery Conditions have not been satisfied. Additionally, if the Delivery Conditions have not been satisfied by September 1, 2018, then Tenant shall have the right, in addition to any other rights or remedies available to it at law or in equity to: (x) terminate this Lease by written notice to Landlord at any time prior to date on which the Delivery Conditions have been satisfied or (y) perform the Tenant Improvements at Landlord's sole cost and expense, in which case Landlord shall reimburse Tenant for all of the reasonable costs, fees and expenses reasonably incurred by Tenant to perform the same within thirty (30) days after receipt of an invoice from Tenant.

Landlord agrees to design, permit and finish space per specifications provided by Tenant and that these improvements and the building, including plumbing, electrical, HVAC and mechanical systems, will be in good working order and conforming to current and future codes (including the Americans with Disabilities Act), with the exception that Landlord will not be required to provide elevator service to the second level of the office area).

The improvement specifications are as follows:

**Exterior**
1. Pave driveways and parking areas
2. Stripe parking spaces
3. Install a 10' x 10' fenced outside area with a concrete slab. Fence shall have a locking mechanism that allows employees to exit this area.

**Utility Separation**
1. Separate electric for demised area
2. Separate gas for demised area
3. Separate water for demised area

**Warehouse**
1. All warehouse floors to be professionally cleaned/scrubbed
2. Construct a 10' x 10' receiving office at the warehouse entry door
3. Column protection shall be provided for protection of thirteen  (13) "exposed" columns using supplemental plastic/metal guarding to prevent forklift contact.

**Docks**
1. All dock doors shall be electric motor driven
2. All docks shall have bumpers, seals and wheel chocks
3. All docks shall be 9' Wide by 10" High and shall have manual dock levelers installed

**First Floor Office and Breakroom Area**
1. Convert the room to the right of the restroom into two (2) private offices that have two (2) entry doors, One office to have one (1) 4' window, the other to have three (3) 4' windows, and VCT flooring
2. Install ADA men's and women's restrooms. Men's restroom will have two (2) stalls, one (1) urinal, and two (2) sinks. Women's restroom will have three (3) stalls and two (2) sinks. VCT flooring installed.
3. Breakroom (approx. 51' x 21') shall be constructed under the training room. Four 6' windows shall be installed to overlook the shop floor, one (1) exterior window shall be installed near the exterior staircase, one (1) standard man door installed for access, cabinets, sink and counter tops installed on back wall that will be approx. 12' to 16' long, power drops for vending machines installed, water line for ice machine installed, VCT flooring installed.
4. All walls shall be patched/painted and the ceiling grid and lighting shall be replaced

**Second Floor Office Area**
1. Relocate and modify metal staircase to access second floor
2. Construct server room in the former locker room area that is approx. 13' x 18'. Server room to have VCT flooring, vented locking door, and a dedicated 1-ton A/C unit
3. Construct a 6' x 13' utility room
4. Construct a hallway that provides access to the server room, private office, and training room. Hallway shall have VCT flooring.
5. Private office to the right of the server room shall be an open room (remove existing build-out). Two (2) 6' slider windows will be installed on the exterior wall and shall have a 12" window ledge. Commercial grade carpet will be installed. Remove existing man door and install new man door to the access hallway.
6. Training room shall have VCT tile installed, TV outlet shall be installed 60" off the floor.

7

7.  All walls shall be patched/painted and the ceiling grid and lighting shall be replaced

8.  Heating/Ventilation: Two (2) gas fired air rotations units in warehouse and gas fired split systems for heat and air conditioning in office and finished areas were newly installed in 2016.

9.  Electrical Service: 1200 Amps / 480 Volt / 3 Phase with Step Down Transformers and Panels electrical service available to the Premises

10. Lighting: Fluorescent – T-8 lighting provided in warehouse

11. Sprinkler System:  Wet Sprinkler System

| | |
|---|---|
| **CONSTRUCTION DOCUMENTS** | Landlord will provide to Tenant a copy of any drawings that Landlord has or creates for this project. |
| **TENANT IMPROVEMENT** | Landlord agrees to allow Tenant to install a forklift battery charging station in warehouse |
| **PARKING** | Tenant shall be entitled to fourty (40) employee parking spaces and three (3) trailer parking spaces. |
| **SIGNAGE** | Tenant, at Tenant's expense, shall have the right to maintain its Pro Rata Share of appropriate advertising on or appurtenant to the Property or Premises or where provided by the Landlord, in the areas designated by the Landlord; however, no signs shall be painted on the building itself.  It shall be the responsibility of the Tenant to secure approval for its signs from the appropriate municipal authorities. The exact style, location, and method of installation shall be subject to Landlord's approval, which such approval shall not be unreasonably withheld. |
| **ENVIRONMENTAL** | Landlord warrants that there are no known environmental conditions or hazardous materials affecting the property, that Landlord is in compliance with all applicable environmental laws and regulations and that no notices, citations or other notifications, violations, penalties of an envrironmental laws exist regarding or pertaining to the property. |

**INSURANCE REQUIREMENTS**

COMMERCIAL GENERAL LIABILITY

"Tenant agrees to indemnify and save harmless the Landlord from any casualty claim or loss arising by reason of Tenant's use or misuse of the Premises, or by reason of an accident or damage to any person or property. Tenant agrees to provide a **comprehensive general liability insurance** policy or policies, **naming the Landlord as additional insured as respects the building**, in amounts not less than One Million and No/100 Dollars ($1,000,000.00) bodily injury and property damage for each occurrence, One Million and No/100 Dollars ($1,000,000.00)

8

**personal and advertising injury,** and Two Million and No/100 Dollars ($2,000,000.00) general aggregate."

PROPERTY AND
CASUALTY

Refer to Exhibit A – Maintenance/Expense Responsibility.

**CONTINGENCIES**

Time shall be of the essence; if Landlord and Tenant have not otherwise extended the contingency date(s) herein by written mutual consent, then the contingency(ies) shall be deemed to have been satisfied or waived by the date stated.  This Lease is subject to the following contingencies:

**Non-Disturbance Agreements:**  Landlord will obtain recordable and commercially reasonable Non-Disturbance Agreements from all current and future mortgagees, ground lessees or lessees and any other parties with superior rights.

**BROKERAGE**

Landlord shall pay to Savills Studley, Inc., per the terms of a fully executed Savills Studley, Inc. Brokerage Commission Agreement dated March 6, 2018.

Agent shall not in any event be held liable to the Landlord or to Tenant for the fulfillment or non-fulfillment of any of the terms or conditions of this Lease, or for any action or proceedings that may be taken by the Landlord against Tenant, or by Tenant against the Landlord.

**FIRST RIGHT OF
REFUSAL LEASE**

If during the term of this Lease or any extension thereof, Landlord shall receive an offer to lease any adjoining areas to Tenant's premises, Landlord shall first give Tenant written notice setting forth the name of the proposed Tenant, the lease price, and all the terms and conditions of the proposed lease.  Within 10 days following the delivery, Tenant shall have the right to lease the Premises upon the same terms and conditions.  Said right shall be exercised by delivering such election to Landlord prior to expiration of said 10 days.  If Tenant shall not elect to lease within said time, and the lease is made in accordance with the terms set forth in the notice, Tenant shall not have a right to lease upon any release in the future.

9

## EXHIBIT A – MAINTENANCE / EXPENSE RESPONSIBILITIES

| | Expense Responsibility | Contract Responsibility |
|---|---|---|
| **UTILITIES** | | |
| Electric | Tenant - Direct | Tenant |
| Heat – Gas | Tenant - Direct | Tenant |
| Internet Access | Tenant - Direct | Tenant |
| Refuse | Tenant - Direct | Tenant |
| Sewer | Tenant - Direct | Tenant |
| Telephone | Tenant - Direct | Tenant |
| Water | Tenant - Direct | Tenant |
| **OTHER EXPENSES** | | |
| Administrative / Management of Property | Tenant - OE* | Landlord |
| Real Estate Taxes | Tenant - OE* | Landlord |
| Liability Insurance | Tenant - Direct | Tenant |
| Property and Casualty Insurance | Tenant - OE* | Tenant |
| **MAINTENANCE – PROPERTY** | | |
| Common areas (including HVAC, electrical, plumbing & flooring) | Tenant - OE* | Landlord |
| Doors | Tenant - Direct | Tenant |
| Electrical systems - common areas and service to panel | Landlord | Landlord |
| Elevators | N/A | N/A |
| Landscaping & mowing | Tenant - OE* | Landlord |
| Lighting – exterior & common areas | Tenant - OE* | Landlord |
| Parking lot  maintenance (cleaning, striping, sealing, patching) | Tenant - OE* | Landlord |
| Parking lot resurfacing and paving | Landlord | Landlord |
| Roof maintenance | Landlord | Landlord |
| Roof replacement | Landlord | Landlord |
| Sewer (curb to Premises) | Landlord | Landlord |
| Sign installation | Tenant - Direct | Tenant |
| Sign maintenance & replacement | Tenant - Direct | Tenant |
| Snow removal from parking areas | Tenant - OE* | Landlord |
| Sprinkler systems | Tenant - OE* | Landlord |
| Structural Integrity | Landlord | Landlord |
| Walls – exterior & common areas | Landlord | Landlord |
| **MAINTENANCE – PREMISES** | | |
| Electrical (i.e. outlets, switches, bulbs, ballasts, starters, etc.) | Tenant - Direct | Tenant |
| Fire & smoke detection systems | Tenant - OE* | Landlord |
| Fire extinguishers – **For Demised Area Only – Invoiced From Landlord** | Tenant - Direct | Landlord |
| Floor coverings | Tenant - Direct | Tenant |
| HVAC – maintenance – **For Demised Area Only – Invoiced From Landlord** | Tenant - Direct | Landlord |
| HVAC – replacement | Landlord | Landlord |
| Doors – Interior / Entrance / Exit, and Docks | Tenant - Direct | Tenant |
| Janitorial service | Tenant - Direct | Tenant |
| Medical/hazardous waste collection and disposal | Tenant - Direct | Tenant |
| Pest control | Tenant - Direct | Tenant |
| Plumbing systems | Tenant - Direct | Tenant |
| Walls | Tenant - Direct | Tenant |

10

**\*DEFINITION(S):**

**Operating Expenses** ("OE") – Tenant shall pay, as Additional Rent, Operating Expense(s) (hereinafter referred to as "OE") of ($2,770.13) per month, identified as OE in Exhibit A – Maintenance / Expense Responsibilities, which sum shall be due and payable at the same time as the rent provided herein. At the end of each calendar year, beginning with the calendar year (2018), Landlord shall determine the actual expenditures incurred in providing such services for the Property. Tenant's obligation shall be Tenant's Pro Rata Share of the actual expenditures in providing such OE. In the event the Tenant's Pro Rata Share for any year is in excess of the accumulated amount paid by the Tenant during the calendar year as hereinabove provided, Tenant shall reimburse Landlord said excess amount within thirty (30) days of receipt of an invoice from Landlord for the excess amount due. In the event the Tenant's Pro Rata Share for any year is less than the accumulated amount paid by the Tenant during the calendar year as hereinabove provided, Landlord shall credit the overpayment to the account of the Tenant for the succeeding year. For the purposes of this paragraph, OE shall include the reasonable costs incurred in the items described above as OE.

Landlord retains the right to adjust the monthly OE payment being made by the Tenant under the provisions of this section. Such adjustments shall be based on the actual expenses incurred in the prior year or reasonable anticipated expenses, and may be upward or downward, as dictated by such prior annual expenses. Adjustments may be made as necessary. Landlord shall provide Tenant with a statement reflecting the annual expenses incurred for OE charges. Tenant agrees to pay the adjusted monthly OE charges following receipt of a request therefor accompanied by the statement of charges on which the adjusted OE charges are based.

**Tenant Audit Rights** – Tenant or Tenant's agent shall be authorized to review, copy, and if necessary, audit the Landlord's invoices regarding operating expenses during the lease term.

**Capital Improvements** – Nothing in this Lease shall be construed to impose any obligation on Tenant to bear the cost of any capital improvements to the Property whatsoever. No capital expenditures made by Landlord, whether made to improve the land, the Building or improvements, shall be allocated to Tenant in any way with the exception of Essential Capital Improvements as referred to below. Operating Expenses shall not include: (i) leasing commissions, rent concessions to tenants and improvements; (ii) salaries above the grade of property manager; (iii) costs for which Landlord is reimbursed by insurance or warranties; (iv) depreciation; (v) costs incurred in negotiating or enforcing leases against tenants, including attorneys' fees; (vi) principal and interest payments; (vii) interest and penalties for late payment of any taxes or other impositions; (viii) costs arising out of Landlord's failure to comply with laws, rules, regulations and ordinances; (ix) advertising and promotional expenditures; and (x) utility charges or HVAC costs for utilities or HVAC equipment that is separately metered and servicing another tenant's space.

**EXHIBIT B – PLANS**





**ARTICLE 2 - LEASE TERMS**

1.  **PROPERTY / PREMISES**

    Landlord as identified in Article1, hereinafter referred to as "Landlord", for and in consideration of the rent, covenants, and agreements hereinafter fully identified and reserved, does by these presents, Lease to the Tenant as identified in Article1, hereinafter referred to as "Tenant", the Premises as identified in Article1, hereinafter referred to as "Premises."

    Tenant accepts the Property and Premises in "**AS IS**" condition unless otherwise stated in Article1.

2.  **TERM**

    The term of this Lease is identified in Article 1, and is hereinafter referred to as "Term."

3.  **DATES DEFINED**

    The date the Term of this Lease begins, shall hereinafter be referred to as "Lease Commencement Date," as identified in Article 1.

    The date the Lease is ratified by all parties, shall hereinafter be referred to as "Effective Date". All terms herein are binding on all the parties as of the Effective Date.

    The date the Tenant is granted access to the Property and Premises shall hereinafter be referred to as "Possession Date," as identified in Article 1.

    The date the Tenant obtains all applicable municipal approvals, shall hereinafter be referred to as "Occupancy," as identified in Article 1.

    The date rent payment begins, shall hereinafter be referred to as "Rent Commencement," as identified in Article 1.

    The date payment of Additional Rent begins, shall hereinafter be referred to as "Additional Rent Commencement", as defined in Article 2-5 and as identified in Article 1.

    The date the Term of this Lease expires, shall hereinafter be referred to as "Expiration," as identified in Article 1.

    The notice date for Renewal or Termination of this Lease, shall hereinafter be referred to "Renewal / Termination Notice", as identified in Article 1.

4.  **OCCUPANCY; POSSESSION**

    Tenant shall be responsible, at Tenant's expense, for obtaining all applicable municipal approvals prior to Tenant opening for business, unless otherwise stated in Article 1.

    Upon Tenant's receipt of Use and Occupancy Certificate, Tenant shall provide copies to Landlord pursuant to the notice provision as identified in Article 1.

    If Landlord shall be unable to give Tenant Possession of the Premises, as herein provided, because of the holding over of a previous occupant, or because of any cause beyond the reasonable control of Landlord, Landlord shall not thereby be liable in damages or otherwise to Tenant, and during the period that Landlord shall be unable to give Possession, all rights and remedies of both parties here under shall be

13

suspended; the Term shall nevertheless expire on the expiration date as identified in Article 1 and Rent shall abate on a daily basis until Possession shall be given.

It is understood and agreed that Tenant shall use the Premises for the purpose as stated in Article 1 or for any other lawful use with the Landlord's consent, which shall not be unreasonably withheld or delayed; provided, however, that Tenant shall not use the Premises for any illegal or immoral purpose, nor for any use that shall include volatile or unstable substances creating fire or exploding hazards, whether within or outside the scope of the business of Tenant, unless such hazardous use is first approved, in writing, by the Landlord, and the Landlord shall have the unilateral right to reject such hazardous use.

Tenant shall conduct its business and maintain Premises in compliance with all Local, State and Federal rules and regulations, and Tenant shall not permit or do anything not permitted by any Local, State or Federal laws.

It is understood and agreed that Tenant's use of the Property and Premises shall not include the use of hazardous waste or regulated materials as defined by the Pennsylvania Department of Environmental Protection Regulations and the United States Environmental Protection Agency Regulations or any other regulatory body, without first obtaining the written consent of Landlord. In the event Landlord consents to such use, treatment, or handling of hazardous waste or regulated material in and upon the Property and Premises, Tenant hereby covenants and agrees to deliver and surrender to Landlord possession of the Property and Premises upon expiration of this Lease or its earlier termination as herein provided, free and clear of such hazardous waste or regulated material. Tenant shall comply with all prescribed rules, regulations, and statutes of all federal, state, and local governmental bodies when treating, using, handling, and/or disposing of such hazardous waste or regulated material. In the event Tenant fails to comply with this provision of this Lease agreement, Tenant shall protect and save and keep the Landlord forever harmless and indemnified against and from any penalty or damage or changes imposed for any violation of any law or ordinance, whether occasioned by the neglect of Tenant or those holding under Tenant, and that Tenant will at all times protect, indemnify and save and keep harmless the Landlord against and from all claims, loss, costs, damage or expense arising out of or from any accident or occurrence on or about the Property and Premises causing injury to any person or property whomsoever, and will protect, indemnify, save and keep harmless the Landlord against and from any and all claims and against any and all loss, cost, damage or expense arising out of any failure of Tenant in any respect to comply with and perform all the requirements and provisions of this Lease or to comply with any government, law, rule or regulation. Tenant shall further reimburse Landlord for all costs incurred by Landlord in treating, handling, disposing of, and cleaning up said hazardous waste or regulated material from or about the Property and Premises, which such costs arise as a result of Tenant's use of the Property and Premises. Landlord shall protect, indemnify, save and keep harmless Tenant against and from any and all claims and against any and all loss, cost, damage or expense arising out of or caused by treating, handling, disposing of and cleaning up hazardous waste or regulated material from or about the Property and Premises, if such waste or material affected the Property and Premises or liability arose either before or after the term of this Lease agreement.

5. **RENT**

Tenant, in consideration of the Lease, covenants and agrees to pay Landlord Rent for the Premises at total base Rental or cost, hereinafter referred to as "Base Rent," as identified in Article 1, payable in advance, without demand, on the first day of each month during the term or any continuance or renewal thereof unless otherwise stated in Article 1.

In addition to the foregoing Base Rent, all other payments to be made by Tenant to Landlord hereunder, shall be deemed to be, and shall become, Additional Rent, hereinafter referred to as "Additional Rent," whether or not the same be designated as such; and shall be due and payable on demand or together

14

with the next succeeding installment of Base Rent, whichever shall first occur; and Landlord shall have the same remedies for failure to pay the same for a non-payment of Base Rent.

The payment of Base Rent and Additional Rent, hereinafter collectively "Rent," for any fractional calendar month at the commencement of the Term shall be payable per diem based on a 365 day year, unless otherwise stated in Article 1.

## 6. PAYMENT OF RENT

If Tenant fails to pay any Rent on the date when due and payable, there will be a late payment charge as set forth in Article 1. Late fees shall be due and payable as Additional Rent. This late payment charge is intended to compensate Landlord for its additional administrative costs resulting from Tenant's failure and has been agreed upon by Landlord and Tenant, after negotiation, as a reasonable estimate of additional administrative costs that will be incurred by Landlord as result of Tenant's failure.

Tenant shall not make any deductions from Rental payments for repairs or other charges incurred by Tenant, regardless of said charges being the obligation of Landlord. Any and all such charges shall be paid by Tenant and, if appropriate, invoiced to Landlord, who will promptly reimburse Tenant.

Tenant further agrees to pay to Landlord, or Landlord's agent, the sum of $50.00 for each and every check which Tenant tenders to Landlord, or Landlord's agent, which is dishonored. If Landlord, or Landlord's agent, receives a total of two insufficient checks which are dishonored by Landlord's bank for any reason during this Lease agreement, Tenant agrees that all Rental payments thereafter will be made by certified funds.

## 7. SECURITY DEPOSIT

Upon the execution of this Lease, Tenant shall pay Landlord a Security Deposit as stated in Article 1 as security for the performance of the terms hereof by Tenant, hereinafter referred to as the "Security Deposit". The Security Deposit shall be held by Landlord and shall not bear interest. At the termination of this Lease, the Security Deposit shall be first applied to repairs required as a result of Tenant's Occupancy, reasonable wear and tear excepted; thereafter to cleaning and/or repainting; thereafter to unpaid rents, if any; and the balance, if any, shall be returned to the Tenant. The Tenant may not consider the Security Deposit as a deposit toward the last month's rent. If Tenant defaults with respect to any provision of this Lease, Landlord may, but shall not be required to, use, apply or retain all or any part of the Security Deposit for the payment of any Rent or any other sum in default or for the payment of any other amount which Landlord may spend or become obligated to spend by reason of Tenant's default, including, without limitation, reasonable costs and attorneys' fee incurred by Landlord to recover possession of the Premises.

The right of Landlord to apply the Security Deposit as specified shall not be a limitation upon Landlord's right to invoke any other remedy available, or to collect the full amount of Rent, costs and damages owed by Tenant. If any portion of the Security Deposit is so used or applied, Tenant, shall, upon demand thereof, deposit cash with Landlord in an amount sufficient to restore the Security Deposit to its original amount and Tenant's failure to do so shall constitute a default hereunder by Tenant. The Tenant may not consider the Security Deposit as a deposit toward the last month's rent.

If Tenant shall fully and faithfully perform every provision of this Lease to be performed by Tenant, the Security Deposit shall be returned to Tenant within thirty (30) calendar days after the expiration of the Lease.

## 8. OPTION(S) TO RENEW

Providing the Tenant is not in default of this Lease, Tenant shall have the option(s) to renew this Lease as set forth in Article 1. Time is of the essence in exercising any option to renew.   All terms and conditions of this Lease shall remain unchanged except as stated in Article 1.

## 9. TERMINATION

Either party may terminate this Lease at the end of the Term or any extensions thereof by giving the other party written notice as set forth in Article 1. In default of such notice, this Lease shall continue upon the terms and conditions as set forth in Article 1.

## 10. MAINTENANCE

Landlord warrants that at the beginning of this Lease the Premises' structure, including the exterior walls and roof; driveways and parking areas; rain gutters and downspouts; and major mechanical systems, (which systems shall include furnaces, boilers and/or unit heaters; air-conditioning compressors and air handlers; electrical service to the building; water service to the building; and sewer lines and/or septic system from the building) are in good operating condition.

Throughout the term of this Lease, the parties agree to keep and maintain in good repair the Property and Premises as set forth in Article 1 Exhibit A. Fines levied against the responsible party, if any, by the appropriate authorities for failure to maintain the Property and Premises in conformance with local regulations shall be the obligation of the responsible party. Should Tenant be the responsible party and said fines are not paid promptly, Landlord, at Landlord's option may pay said fines and the amount of said fines shall become Additional Rent hereunder and shall be paid within ten (10) days of Landlord submitting an invoice therefore.

Anything to the contrary herein notwithstanding, Tenant shall pay for all damages to the Property and Premises and to equipment and installations therein, which are necessitated by gross negligence on the part of Tenant, its employees, agents, representatives, or visitors. If the Tenant fails to maintain, make any necessary repairs or replacements, Landlord, at Landlord's option, may cure such damages and the cost that will be required in curing such damages shall be considered as Additional Rent, payable together with the first installment of Rent hereinabove specified, the same to be paid after the date on which such damage shall have been incurred, subject to all the provisions of this Lease and of the relating law to default in payment of Rent.

Tenant shall keep the Premises, at Tenant's expense, in a clean, orderly and sanitary condition, free of insects, rodents, vermin and other pests, and shall not permit accumulation of garbage, trash, rubbish and other refuse on the Property.

Tenant shall be prepared for and shall exercise reasonable prudence in the elimination of hazards to its employees and invitees. Said hazards shall include, but not be limited to removal and salting of ice in front of entryways and walkways, removal of water from floor areas where slippery conditions can be created, installation of light bulbs, and removal of debris and/or other objects from the Premises.

Tenant shall ensure that emergency personnel have unimpeded access, which shall include, but not be limited to, all electrical panels, doorways, and sprinkler risers, if any.

Tenant shall, at all times, conduct its business in such manner as to not unreasonably inconvenience the neighbors and other tenant(s) of the Property. Such unreasonable inconvenience shall include, but not be limited to, noise, odor, dust, fumes, etc.

16

## 11. SURRENDER OF PROPERTY AND PREMISES

Tenant covenants and agrees to deliver up and surrender to Landlord possession of the Property and Premises upon expiration of this Lease, or its earlier termination as herein provided, broom clean and in as good condition and repair as the same shall be at the commencement of the Term of this Lease, or may have been improved by the Landlord during the continuance thereof, reasonable use and ordinary wear and tear excepted.  Acceptance by delivery of the Premises or opening same for business shall be deemed conclusive evidence that the Property and Premises was in good order and condition at the commencement of the Term of this Lease, with the exception of latent defects in the building structure, if any, of which Tenant has no prior knowledge.

Tenant shall at Tenant's expense remove all personal property and/or trade fixtures of Tenant and all alterations, additions and improvements not approved by Landlord, which election shall have been made as provided in Article 1, repair all damage to the Property and Premises caused by such removal and restore the Property and Premises to the condition in which they were prior to the installation of the articles so removed.  Should Tenant fail to remove any personal property, such property shall be considered as abandoned, and Landlord may dispose of the same without being accountable to Tenant for so doing, and may recover from the Tenant all reasonable costs for said disposition, Tenant to pay such costs within fifteen (15) days of receipt of an invoice therefor.  Tenant's obligation to observe or perform this covenant shall survive the expiration of the Term of this Lease or any extension or renewal thereof.

## 12. UTILITIES

The Parties shall be responsible for furnishing utilities for the Property or Premises as described in Article 1 Exhibit A.  As applicable, Tenant shall register and have utility meters placed in the name of the Tenant upon Possession of the Premises unless otherwise stated in Article 1.

In no event shall Landlord be liable for the quality, quantity, failure or interruption of such services to the Property unless such discontinuance of service is caused by the negligence of Landlord.

Tenant shall maintain a minimum temperature of 50 Degrees Fahrenheit in the Premises.

Tenant shall be responsible, at Tenant's expense for curing any and all sewer problems caused by Tenant's carelessness or misuse.

## 13. REFUSE REMOVAL

Tenant shall be responsible, at Tenant's expense, for the removal of all refuse, hazardous waste, including but not limited to Medical and/or Red Bag, and debris from the Property.

Tenant shall be responsible for recycling all refuse as required by the municipal authorities and/or regulating bodies in a manner according to their regulations.  Any fines imposed upon the Landlord due to Tenant's negligence in adhering to the same regulations concerning recycling shall be due and payable by Tenant as Additional Rent as set forth in Article 1.

Tenant shall handle all waste, raw materials, work in process and finished goods in compliance with all Local, State, and Federal regulations.

## 14. TAXES AND ASSESSMENTS

All real estate taxes levied by a governmental entity against the Premises shall be paid on or prior to the date same are due, as described in Article 1.

Tenant shall be responsible for any other taxes that shall result from Tenant's use and occupancy of the Premises.

## 15. PROPERTY AND CASUALTY INSURANCE

All premiums for insuring the Property against loss by fire and such other hazards as are provided for by an extended coverage endorsement to a standard insurance policy for the state in which Property is situated shall be paid as described in Article 1. Landlord shall maintain at all times the amount of coverage required to satisfy the minimum replacement costs provision of the state in which Property is situated.   Tenant shall be responsible for any increases in any insurance premium that shall result from Tenant's use and occupancy of the premises.
Tenant shall not do or store anything on the Property and Premises which will increase the insurance rates for the Property. In the event the cost of insurance shall be increased by reason of Tenant's use or the materials kept or stored thereon, Tenant agrees to pay the additional cost of such insurance.

Tenant shall be responsible for insuring its contents in the Property and Premises against such hazards as it may decide and releases Landlord from any claim or liability for damage or loss to such property.

Landlord shall not be responsible for any loss or theft of personal property of Tenant.

Tenant shall be responsible, at Tenant's expense, for furnishing and maintaining fire extinguishers, as required, to meet local codes and/or fire insurance underwriting.  Such extinguishers shall be properly placed in the building as of the Possession Date of this Lease or any renewal thereof.

## 16. LANDLORD'S AND TENANT'S RELEASE OF RECOVERY RIGHTS

The Landlord and Tenant hereby agree to release the other from any claim for recovery for any loss or damage to any of its property which is insured under valid and collectible insurance policies to the extent of any recovery collectible under such insurance.  It is further agreed that this waiver shall apply only when permitted by the applicable policy of insurance.

## 17. LIABILITY INSURANCE

Tenant agrees to indemnify and save harmless the Landlord from any casualty claim or loss arising by reason of Tenant's use or misuse of the Property and Premises, or by reason of an accident or damage to any person or property happening on the Property and Premises, except that if such accident or damage is caused by or results from the act or negligence of Landlord, its Agents, servants, employees or guests. Tenant agrees that it will provide a policy or policies of insurance as stated in Article 1.  LANDLORD SHALL BE NAMED AS AN ADDITIONAL INSURED IN ANY INSURANCE POLICY OR POLICIES OR CERTIFICATES AS EVIDENCE THEREOF.  IN THE EVENT OF A PERMITTED SUBLEASE, THEN LANDLORD AND SUBLANDLORD SHALL BE NAMED AS AN ADDITION INSURED.  Certificates of insurance shall be provided to Landlord by Tenant. Each policy and certificate evidencing the same shall contain an agreement by the insurer that such policy shall not be cancelled or modified without ten (10) days' written notice to Landlord and that no act or omission of Tenant shall invalidate the interest of Landlord under such insurance.

Certificates of such insurance shall be delivered to Landlord prior to possession of the Premises by Tenant with renewals thereof delivered to Landlord a minimum of thirty (30) days prior to expiration of any such policies.  If requested to do so, Tenant shall also provide Landlord with copies of the pertinent portions of all such policies and shall also permit Landlord to examine the original policies.  If Tenant fails to obtain and maintain any such insurance or to deliver any of the certificates as required in this Lease, Landlord may, in addition to any other remedy under this Lease, procure such insurance at the expense

18

of Tenant and pay the cost thereof.  Such cost shall be deemed Additional Rent and shall be payable by Tenant to Landlord immediately upon demand, together with interest until paid.

## 18. DESTRUCTION

A.    In the event of:

      i.    a partial destruction of the Premises during the term, which requires repairs to the building, or

      ii.   the Premises is declared unsafe or unfit for occupancy by an authorized public authority for any reason other than Tenant's act, use, or occupation, which declaration requires repairs to the building,

      Landlord shall, within ten (10) days following the date of destruction, make a decision whether the repairs can be reasonably made under the laws and regulations of authorized public authorities within a period of sixty (60) days, and, if such repairs can be made within said sixty (60) day period, and notify Tenant that Landlord will make such repairs and forthwith make such repairs.  Such partial destruction, including any destruction necessary in order to make repairs required by any such declaration, shall in no way annul or void this Lease except that Tenant shall be entitled to a proportionate reduction to be based upon the extent to which the making of such repair shall interfere with the business carried on by Tenant in said Premises.

B.    If such repairs cannot be made within sixty (60) days, and providing such destruction or repairs will not materially affect Tenant's conduct of business, Landlord may, at Landlord's option, make same within a reasonable time, this Lease continuing in full force and effect and the Rent proportionately abated as provided in this paragraph.

C.    In the event that the Landlord elects to make such repairs which require more than sixty (60) days to complete, or such repairs cannot be made under existing laws and regulations, Landlord shall so notify Tenant within twenty (20) days following the destruction and this Lease may be terminated at the option of either party.

D.    If such repairs cannot be completed within one hundred twenty (120) days from the date of such partial destruction or declaration, or if Landlord elects to make such repairs and is unable to complete same within one hundred twenty (120) days, as aforesaid, the Tenant may terminate this Lease upon thirty (30) days written notice to the Landlord of such election.

E.    The total destruction, including any destruction required by any public authority, of the Premises shall terminate this Lease automatically.

## 19. ASSIGNMENT/SUBLETTING

Tenant shall have the right to assign its lease or sublease all or any portion of the Premises during the initial term and any renewal term without consent of the Landlord, to (i) an entity resulting from a merger or consolidation, (ii) any entity succeeding in the business and assets of Tenant, or (iii) any subsidiary or affiliate of Tenant. In the event of an assignment or sublease as stated above, Tenant shall provide notice to Landlord of the new party named.   Any other assignment or

sublease may be made with the prior written consent of Landlord, which consent shall not be unreasonably withheld or delayed. Excluding any companies defined in items i, ii, and iii above, Tenant and Landlord shall equally divide any net profits from any sublease or assignment during the lease term, after Tenant is reimbursed for its actual, out-of-pocket costs incurred in such sublease or assignment, including, but not limited to marketing costs, brokerage commissions, and Tenant Improvement costs.

## 20. SIGNS

Tenant shall have the right to maintain appropriate advertising as defined in Article 1.

## 21. ALTERATIONS

Unless otherwise stated in Article 1, Tenant will not, without the prior written consent of the Landlord, which approval shall not be unreasonably withheld or delayed, make any alteration, addition, or change in or to the Property or Premises, nor in any way deface or mutilate the walls, floors, ceiling, or other parts thereof, nor do or keep anything on the Property or Premises which will affect the insurance against fire or other hazards or the rate thereof, or which shall violate any law or government regulation, nor will Tenant permit or suffer anything to be done which is prohibited in this paragraph.

All alterations and additions made by the Tenant to the Property and Premises, including electrical, plumbing, HVAC, structural changes, offices, etc., shall remain and become the property of the Landlord. Landlord, at Landlord's option, may require Tenant, at Tenant's expense, to restore the Property and Premises to the condition existing at the beginning of this Lease, normal wear and tear excepted. Unless otherwise approved in writing by the parties hereto, there shall be no exceptions to this Lease provision.

## 22. LANDLORD INSPECTION

Landlord shall have the right to enter the Premises during the normal business hours of the Tenant for the purpose of inspecting the Premises. Landlord shall have the right to enter onto the Property or Premises at any time, by master key or by force, if necessary, for purposes of preventing damage, making of emergency repairs, and to enforce any provisions of this Lease.

Unless otherwise stated in Article 1, Landlord or Landlord's agent shall have the right to show the Premises to prospective tenants at any time during the notice period prior to the Lease expiration / termination or during default, if any. Landlord or Landlord's agent will make a diligent effort to notify the Tenant of any intent to show the Premises to prospective purchasers at any time and will attempt to do so during normal business hours. However, Landlord and Landlord's agent are not required to provide such notification prior to said showing.

## 23. CONDEMNATION

If, during the term of this Lease, the whole or any part of the Property shall be taken under the power of Eminent Domain by any public, quasi-public, or private authority, then in such event, the proceeds of said condemnation shall be paid to Landlord.

A. In the event the taking of the Property shall result in a reduction in the size of the building and/or parking areas such that the remaining areas are not reasonably suited for the conduct of Tenant's business, then Tenant may terminate this Lease, at Tenant's election, by giving Landlord sixty (60) days' notice of its election to terminate.

B. In the event the taking of the Property shall result in a reduction in the size of the building and Landlord shall determine that the cost of restoration of the building is not reasonable and within the damages awarded by the condemning authority, then in such event, Landlord may elect to terminate this Lease by giving Tenant sixty (60) days' notice of its election to terminate.

C. In the event the taking of the Property shall result in a reduction in the size of the building, and such reduction does not unreasonably affect Tenant's business operation, then in such event, this Lease shall continue in full force and effect except that the Rental shall be reduced proportionately based on the reduction of any building area.

D. At such time as a notice of intent to condemn is received by Landlord, Landlord will immediately notify Tenant of said action, and Tenant may elect to participate in the negotiation for the purpose of limiting

20

Tenant's damages from such condemnation and securing any claims which Tenant may have for damages to its business, damages to the real estate excepted.

## 24. REMEDIES OF LANDLORD

In the event of default by Tenant, whether for non-payment of Rent when due, the failure to observe any covenants of this Lease or failure to relinquish possession at the termination of this Lease, the following remedies shall, at the option of the Landlord, be available:

A. The failure of Tenant to pay, when due, any installment of Rent or any other sum payable by Tenant under this Lease, which failure shall continue unremedied by Tenant for a period of five (5) days after written notice of the default shall have been given to Tenant by Landlord, at the Notice Address as set forth in Article 1, shall constitute default of this Lease. If Tenant fails to comply by correcting said default, Landlord may at its option re-enter and resume possession of the Premises and declare this Lease and the tenancy hereby created terminated, and Landlord may thereupon remove all persons and property from the Property and Premises, with or without resort to process of any court, by force or otherwise. If proceedings shall be commenced by Landlord to recover possession, either at the end of the term or sooner termination of this Lease for non-payment of Rent, Tenant specifically waives any right to any statutory notice and agrees that five (5) days  written notice shall be sufficient. Tenant further agrees that notwithstanding such termination, it shall remain liable for any Rent due to Landlord or damages caused by Landlord prior thereto.

Furthermore, if Tenant defaults in making its payments of Rent or any other sum payable by Tenant requiring Landlord's written notice on three (3) occasions within any twelve (12) month period, then, at Landlord's election, such third (or subsequent) default shall not be capable of cure by Tenant.

B. In the event the Tenant removes, or attempts to remove, any goods or chattels from the Property or Premises for which any portion of the Rent for the full term is unpaid, such removal shall be deemed to be fraudulent and clandestine and such unpaid Rent shall become due and collectible at once and all goods and chattels so removed may be followed for a period of thirty (30) days and seized for collection of the same by Landlord's warrant. It is further understood that as often as default shall be made in the payment of any installment of Rent when due, the Landlord may proceed by Landlord's warrant at any time after said default, to make collection of all Rent then due, with costs of such proceedings. Tenant hereby waives the benefit of all laws or usages exempting any property from liability for Rent, and the Landlord shall not waive any remedies given by existing laws. **TENANT HEREBY AUTHORIZES ANY ATTORNEY, OF ANY COURT OF RECORD, AS OFTEN AS DEFAULT SHALL BE MADE IN THE PAYMENT OF SAID RENTAL, AS PROVIDED UNDER THIS LEASE AGREEMENT, TO APPEAR FOR TENANT AND CONFESS JUDGMENT AGAINST TENANT FOR THE AMOUNT THEN DUE AND UNPAID, WITH REASONABLE ATTORNEY'S COMPENSATION TOGETHER WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION, WAIVING INQUISITION AND EXEMPTION.** Notwithstanding any provision in this Lease to the contrary, the removal from the Property or Premises by the Tenant of any stored products in the ordinary course of its business shall not be deemed a clandestine or fraudulent removal.

C. **IN THE EVENT TENANT FAILS TO PAY ANY INSTALLMENT OF RENT WHEN DUE, KEEP ALL COVENANTS OF THIS LEASE OR REMOVE FROM THE PROPERTY OR PREMISES AT THE TERMINATION OF THIS LEASE, THEN TENANT HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY, OR ANY COURT OF RECORD OF PENNSYLVANIA OR ELSEWHERE, TO APPEAR IN SAID COURT AND CONFESS JUDGMENT IN AN AMICABLE ACTION OF EJECTMENT FOR THE PROPERTY AND PREMISES ABOVE DESCRIBED, AND TENANT AUTHORIZES THE IMMEDIATE ISSUANCE OF A WRIT OF POSSESSION FOR THE PROPERTY AND PREMISES.**

D. Except in the case of default in Rental payments as set forth above, Landlord agrees that in the event of default, Tenant shall be afforded a period of thirty (30) days after written notice as set forth in Article 1 of such default, to cure same, before such default shall become actionable under any provision of this Lease.

E. If Tenant shall hold over after the termination of this Lease for any reason whatsoever, and Landlord has notified Tenant in writing that such holding over shall not be permitted, Tenant shall pay as liquidated damages and not as a penalty an amount equal to twice the monthly Rent in effect for the last month of Tenant's lawful occupancy prorated for the period during which such holding over continues.

21

Nevertheless, the acceptance of such amount by Landlord shall be without prejudice to any other rights or remedies of Landlord at law or in equity or under this Lease.

F.  If Tenant shall become insolvent or be declared bankrupt or shall make an assignment for the benefit of creditors, or have an execution issued against Tenant, the whole of the Rent for the then entire term shall immediately become due and payable.

## 25. INTEREST

Wherever in this Lease there is a provision that Tenant shall be liable for the payment of any sum to Landlord, together with interest thereon, or whenever Tenant shall fail to pay any sum when due, such sum shall bear interest until paid at a rate equal to:

A.  The prime rate of interest as stated in *The Wall Street Journal* plus two percent (2%).

## 26. NOTICES

Any notice required or permitted in, or related to this Lease must be in writing and signed by the party to be bound.  Any notice or payment will be deemed given when personally delivered, or will be deemed given on the day following the deposit of the notice for delivery with a reputable overnight courier, or with the United States Postal Service, Certified Mail, postage prepaid, by the applicable party to the address of the other party shown in this Agreement, unless that day is a Saturday, Sunday, or legal holiday, in which event it will be deemed delivered on the next following business day.  If the deadline under this Lease for delivery of a notice or payment is a Saturday, Sunday, or legal holiday, such last day will be deemed extended to the next following business day. The facsimile or electronic transmission of any signed document including this Agreement shall be deemed given on the date so transmitted.  At the request of either party hereto, the party delivering a document by facsimile or e-mail will confirm the facsimile or electronic transmission by signing and delivering a duplicate original document to the receiving party via First Class Mail.

Notice shall be given to the respective parties as set forth in Article 1, including but not limited to Landlord, Tenant, Landlord's Broker and Tenant's Broker.

For Tenant:
Charles Parker, Executive Vice President/COO
Diamond Comic Distributors, Inc.
10150 York Road, Suite 300
Hunt Valley MD  21030

For Landlord:
207 REDCO, LLC
Attn: Glenn Rexroth
465 E. Locust Street
PO Box 98
Dallastown, PA 17313

## 27. NON WAIVER

The failure of Landlord to insist in any one or more instances upon a strict performance of any covenant of this Lease, or to exercise any right herein contained, shall not be construed as a waiver for the future of such covenant or right, but the same shall continue in full force and effect, unless the contrary is expressed in writing by Landlord to Tenant.

## 28. QUIET ENJOYMENT

Landlord covenants that Tenant, on paying all Rent due and performing all covenants and conditions contained in this Lease, shall and may peaceably and quietly have, hold and enjoy the Premises for the entire term hereof, including any renewal term, subject to all the provisions of this Lease.

## 29. ATTORNMENT

So long as Tenant has quiet enjoyment of the Premises, Tenant, for itself and its successors and assigns, agrees to attorn to any person who shall acquire title to the property by virtue of a foreclosure of a Mortgage or Deed of Trust or deed given in lieu of such foreclosure, or otherwise, and the Tenant further agrees to execute and deliver, upon request, an appropriate agreement memorializing the attornment.

## 30. SUBORDINATION

This Lease, at Landlord's option, will be subordinate to any form of security now or later placed on the Property and to all advances made on the security and to all renewals, modifications, consolidations, replacements, and extensions. If any mortgagee, trustee, or ground Landlord elects to have this Lease be prior to the lien of its security, and gives written notice to Tenant, this Lease will be deemed prior to said security, whether dated before or after the date of the recording date of the security. Tenant agrees to execute any required documents, and Tenant irrevocably appoints Landlord as Tenant's attorney-in fact to do so if Tenant fails to do so within ten (10) days after written demand.

## 31. DESCRIPTIVE HEADINGS

The descriptive headings in this agreement are inserted for convenience in reference only and do not constitute a part of this agreement.

## 32. ESTOPPEL CERTIFICATE BY TENANT

From time to time, upon not less than ten (10) days prior request by Landlord, Tenant agrees to execute, acknowledge and deliver to Landlord or Landlord's designees a statement in writing certifying that: (a) this Lease is unmodified and in full force and effect or, if there have been modifications, that the same is in full force and effect as modified and identifying the modifications; (b) the dates to which Rent, Additional Rent and other charges have been paid; and (c) to the knowledge of the person making the certification, Landlord is not in default under any provisions of the Lease. It is intended that any such statement may be relied upon by any persons proposing to acquire Landlord's interest in this Lease or any prospective Mortgagee of, or assignee of, any mortgage upon such interest. Tenant will provide such Estoppel Certificate no more frequently than semi-annually.

## 33. BROKER

Landlord and Tenant certify that Broker(s) set forth in Article 1 is/are the Broker(s) for this Lease and is/are acting as Agent(s) as set forth in Article 1, and shall not in any event be held liable to the Landlord or to Tenant for the fulfillment or non-fulfillment of any of the terms or conditions of this Lease, or for any action or proceedings that may be taken by the Landlord against Tenant, or by Tenant against the Landlord.

It is the intention of the parties hereto to be legally bound and this Lease shall be binding upon the said parties hereto, their respective heirs, executors, administrators, successors and/or assigns.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the date(s) set forth below.

Landlord: **207 REDCO, LLC**

By: _____ 4-9-18
                                    Date

Tenant: **Diamond Comic Distributors, Inc., T/A Alliance Game Distributors**

By: _____ 4/9/18
                                    Date

24