

DAVID E. RICE
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 527, 569, 788 & 967** |

### ORDER APPROVING SEVENTH STIPULATION BETWEEN DEBTORS AND JPMORGAN CHASE BANK, N.A., AMENDING DIP CREDIT AGREEMENT

Upon consideration of the *Debtors' Motion for Entry of an Order Approving Fifth Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement* [D.I. 527] (the "Motion") and the *Seventh Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement* (the "Seventh Stipulation")[2] filed under separate notice; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these chapter 11 cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] Capitalized terms used but not defined herein are defined in the Seventh Stipulation or Motion, as applicable.

56525842.2

pursuant to 28 U.S.C. § 157(b); and this Court having found that the relief requested in this proposed order approving the Seventh Stipulation is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Seventh Stipulation and opportunity for a hearing on the Seventh Stipulation were appropriate and no other notice need be provided; and the Court having previously entered an order approving the Motion with respect to the *Fifth Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement* [D.I. 569] and the *Sixth Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement* [D.I. 788]; and after due deliberation and sufficient cause appearing therefor

**IT IS HEREBY ORDERED THAT:**

1. The Motion is further GRANTED as set forth herein.

2. The Seventh Stipulation is approved. Subject to the modifications provided for and authorized by this Order, the Seventh Stipulation and the DIP Credit Agreement Amendment, the Final DIP Order and DIP Credit Agreement remain in full force and effect in accordance with their terms.

3. For the avoidance of doubt:

    a. In the event that any of the Loan Parties (as defined in the DIP Credit Agreement) recover or collect additional assets and revenue beyond those reflected in the Approved Budget attached to the Stipulation (the "Additional Recoveries"), those Additional Recoveries shall be subject to all of the rights, claims and liens provided in the DIP Credit Agreement, the Loan Documents and the Final DIP Order. Further disposition of those Additional Recoveries will be subject to the agreement of the Debtors, in consultation with the

        Committee (with a full reservation of rights), and DIP Lender and, to the extent appropriate, set forth in an amended budget to be filed with this Court.

    b. Pursuant to paragraph 16(e) of the Final DIP Order, the DIP Lender has no obligation to make Loans under the DIP Credit Agreement or otherwise to advance funds for the payment or reimbursement of any fees or disbursements of any professionals incurred in connection with these chapter 11 cases or any successor case under any chapter of the Bankruptcy Code whether pursuant to the Carve-Out, the delivery of the Carve-Out Notice or the occurrence of the Carve-Out Effective Date (as such terms are defined in the Final DIP Order) or otherwise. Any obligation under paragraph 16(b) of the Final DIP Order to replenish the Carve-Out Reserve Account following the delivery of the Carve-Out Notice or the occurrence of the Carve-Out Effective Date shall be an obligation of the Debtors and their estates only, and not an obligation of any kind whatsoever of the DIP Lender; provided, however, that the DIP Lender's Collateral and the proceeds of the DIP Lender's Collateral received or recovered subsequent to the Carve-Out Effective Date shall remain subject to the Carve-Out, and such DIP Lender's Collateral and the proceeds of the DIP Lender's Collateral shall be available to fund the Carve-Out Reserve Account as provided in the Final DIP Order. For the avoidance of doubt, nothing contained in this Order shall affect the provisions of paragraph 16(a) of the Final DIP Order, which shall remain in full force and effect.

4. The Debtors and DIP Lender are authorized to enter into, perform, and consummate the transactions set forth in and contemplated under the Seventh Stipulation.

56525842.2

5. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon its entry.

6. The Debtors and DIP Lender are authorized to take all actions that are necessary and appropriate to effectuate the relief granted in this Order.

7. This Court retains jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

**END OF ORDER**

# **EXHIBIT 1**

**Seventh Stipulation**

56525842.2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

**SEVENTH STIPULATION BETWEEN DEBTORS AND JPMORGAN CHASE BANK, N.A., AMENDING DIP CREDIT AGREEMENT**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") and JPMorgan Chase Bank, N.A. (the "DIP Lender", and together with the Debtors, the "Parties"), hereby stipulate and agree (this "Seventh Stipulation") as follows:

**WHEREAS**, on January 14, 2025, the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") and, since filing their petitions for relief, have continued to manage their businesses and assets as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**WHEREAS**, on February 19, 2025, the Bankruptcy Court entered its *Final Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [D.I. 163] (the "Final DIP Order") pursuant to which, among other things, the Debtors were granted authority to obtain senior secured postpetition financing pursuant to the terms and

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

56525842.2

conditions of the Final DIP Order and that certain senior secured Debtor-in-Possession Credit Agreement, dated as of January 16, 2025 (as amended from time to time, the "DIP Credit Agreement").

**WHEREAS**, on March 19, 2025, the Bankruptcy Court entered the Order Approving Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement, on April 17, 2025, the Bankruptcy Court entered the Order Approving Second Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement, on May 1, 2025, the Bankruptcy Court entered the Order Approving Third Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement, on May 30, 2025, the Bankruptcy Court entered the Order Approving Fourth Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement, and on July 3, 2025, the Bankruptcy Court entered the Order Approving Fifth Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement, and on August 27, 2025, the Bankruptcy Court entered the Order Approving Sixth Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement.

**WHEREAS**, the Debtors have requested a further extension of the Maturity Date under the DIP Credit Agreement and Final DIP Order.

**WHEREAS**, the DIP Lender is prepared to consent to a short further extension of the Maturity Date and to amend, among other things, the definitions of Maturity Date under the DIP Credit Agreement and Final DIP Order—all in accordance with and subject to the terms of the DIP Credit Agreement Amendment (as defined below), and all subject to the terms and conditions of this Seventh Stipulation and the approval of the Bankruptcy Court.

**NOW, THEREFORE**, subject to the approval of the Bankruptcy Court, the Parties hereby stipulate and agree as follows

1. The Parties shall enter into an amendment (the "DIP Credit Agreement Amendment") to the DIP Credit Agreement in the form of Exhibit A hereto, providing for, among other things, amended definitions of Maturity Date under the DIP Credit Agreement and Final DIP Order. The Parties shall file the executed DIP Credit Agreement Amendment on the docket in these cases.

2. The DIP Credit Agreement Amendment and the Debtors' related rights to borrow shall be deemed authorized and approved pursuant to section 364 of the Bankruptcy Code effective upon the Bankruptcy Court's entry of the Stipulation Order.

3. Subject to the modifications provided for and authorized by the Stipulation Order, this Seventh Stipulation and the DIP Credit Agreement Amendment, the Final Order and DIP Credit Agreement remain in full force and effect in accordance with their terms, and the Debtors reaffirm and ratify all of such terms.

4. Each Party is duly authorized and empowered to execute this Seventh Stipulation.

5. The Bankruptcy Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Seventh Stipulation or the Stipulation Order.

6. All of the recitals set forth above are incorporated by reference as if fully set forth herein. This Seventh Stipulation constitutes the complete express agreement of the Parties concerning the subject matter hereof.

7. Each Party has participated in and jointly consented to the drafting of this Seventh Stipulation and any claimed ambiguity shall not be construed for or against either Party on account of such drafting.

| **SAUL EWING LLP** | **TROUTMAN PEPPER LOCKE LLP** |
|---|---|
| */s/ Jordan D. Rosenfeld* | */s/ Jonathan W. Young* |
| Jordan D. Rosenfeld (MD Bar No. 13694) | Toyja E. Kelley |
| 1001 Fleet Street, 9th Floor | Indira K. Sharma |
| Baltimore, MD 21202 | Jonathan W. Young |
| Telephone: (410) 332-8600 | 401 9th Street, N.W., Suite 1000 |
| Email: jordan.rosenfeld@saul.com | Washington, D.C. 20004 |
|  | Tel: (202) 274-2950 |
| -and- | Email: Toyja.Kelley@troutman.com |
|  | Indira.Sharma@troutman.com |
| Jeffrey C. Hampton (admitted *pro hac vice*) | Jonathan.Young@troutman.com |
| Adam H. Isenberg (admitted *pro hac vice*) |  |
| Turner N. Falk (admitted *pro hac vice*) | -and- |
| 1500 Market Street, 38th Floor |  |
| Philadelphia, PA 19102 | David L. Ruediger |
| Telephone: (215) 972-7777 | 111 Huntington Avenue |
| Email: jeffrey.hampton@saul.com | Boston, MA 02199 |
| adam.isenberg@saul.com | Tel: (617) 239-0100 |
| turner.falk@saul.com | Email: David.Ruediger@troutman.com |
|  |  |
| -and- | *Counsel for JPMorgan Chase Bank, N.A.* |
|  |  |
| Mark Minuti (admitted *pro hac vice*) |  |
| Paige N. Topper (admitted *pro hac vice*) |  |
| Nicholas Smargiassi (admitted *pro hac vice*) |  |
| 1201 N. Market Street, Suite 2300 |  |
| Wilmington, DE 19801 |  |
| Telephone: (302) 421-6800 |  |
| Email: mark.minuti@saul.com |  |
| paige.topper@saul.com |  |
| nicholas.smargiassi@saul.com |  |
|  |  |
| *Counsel for Debtors and Debtors in Possession* |  |

# **EXHIBIT A**

**Ninth Amendment to DIP Credit Agreement**

56525842.2

**NINTH AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT**

This NINTH AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT, dated as of October __, 2025 (this "Amendment"), is by and among debtor-in possession DIAMOND COMIC DISTRIBUTORS, INC., a Maryland corporation ("Diamond") as the "Borrower" (in such capacity, the "Borrower"), the other Loan Parties from time to time party to the DIP Credit Agreement referenced below, Stephen A. Geppi (the "Individual Guarantor"), and JPMORGAN CHASE BANK, N.A., as the "DIP Lender" (in such capacity, the "DIP Lender").

WHEREAS, reference is made to the Debtor-in-Possession Credit Agreement dated as of January 16, 2025 (as amended by that certain First Amendment to Debtor-in-Possession Credit Agreement, dated as of February 11, 2025, that certain Second Amendment to Debtor-in-Possession Credit Agreement dated as of February 25, 2025, that certain Third Amendment to Debtor-in-Possession Credit Agreement dated as of March 19, 2025, that certain Fourth Amendment to Debtor-in-Possession Credit Agreement, dated as of April 22, 2025, that certain Fifth Amendment to Debtor-in-Possession Credit Agreement dated as of April 30, 2025, that certain Sixth Amendment to Debtor-in-Possession Credit Agreement dated as of May 30, 2025, that certain Seventh Amendment to Debtor-in-Possession Credit Agreement dated as of June 30, 2025, and that certain Eighth Amendment to Debtor-in-Possession Credit Agreement dated as of August 29, 2025 the "DIP Credit Agreement") by and among the Borrower, the other Loan Parties that are parties to the DIP Credit Agreement, the Individual Guarantor and the DIP Lender;

WHEREAS, capitalized terms used herein without definition shall have the meanings ascribed to such terms in the DIP Credit Agreement, as amended by this Amendment, as applicable; and

WHEREAS, the parties to the DIP Credit Agreement desire to amend certain provisions of the DIP Credit Agreement, all as more fully set forth herein;

NOW, THEREFORE, in consideration of the foregoing and the agreements contained herein, the parties hereby agree as follows:

1. Amendments to the DIP Credit Agreement. In reliance on the terms and conditions set forth in this Amendment, the DIP Lender hereby agrees with the Borrower, the other Loan Parties and the Individual Guarantor that the Definitions Schedule to the DIP Credit Agreement be, and it hereby is, amended as follows:

   (a) Amendments to Definitions Schedule. The Definitions Schedule to the DIP Credit Agreement is hereby amended by amending and restating the defined terms "Maturity Date" and "Maximum DIP Facility Amount" to read as follows (with deleted text shown in the same manner as the following example: ~~deleted text~~ and with added text shown in the same manner as the following example: added text):

   "Maturity Date" means, at the election of the DIP Lender, the earliest to occur of: (a) the date on which the DIP Lender provides, via electronic or overnight mail, written notice to counsel for the Debtors and counsel for any Committee of the occurrence and continuance of an Event of Default; (b) the effective date of an Approved Plan; (c) the filing of any chapter 11 plan other than an Approved Plan by the Debtors or any party in interest; unless such plan contemplates the indefeasible payment in full in cash of the Aggregate Credit Obligations; (d) the date that the Bankruptcy Court orders (x) the conversion of the Chapter 11 Cases to Chapter 7 liquidations, or (y) a dismissal of the Chapter 11 Cases; or (e) ~~October 3, 2025~~ November 15, 2025.

"Maximum DIP Facility Amount" means (a) during the period from (x) the date that the Bankruptcy Court in the Chapter 11 Cases shall have approved the amendments to the DIP Credit Agreement contemplated by this Amendment through (y) November 14, 2025 (the "Applicable Period"), $5,850,000; provided that, the DIP Lender, in its sole and absolute discretion, may agree to permit the Maximum DIP Facility Amount at any time during the Applicable Period to be increased to an amount not to exceed $6,435,000 (without any requirement for further approval of the Bankruptcy Court in the Chapter 11 Cases), and (b) at all times from and after November 14, 2025, $0. ~~the applicable amounts set forth below during the applicable periods set forth below:~~

| ~~Applicable Period~~ | ~~Maximum DIP Facility Amount~~ |
|---|---|
| ~~August 23, 2025 through the date of consummation of the sale of the shares of DCDUK~~ | ~~$7,550,000~~ |
| ~~The date of consummation of the sale of the shares of DCDUK through August 30, 2025~~ | ~~$6,150,000~~ |
| ~~August 31, 2025 through September 6, 2025~~ | ~~$5,700,000~~ |
| ~~September 7, 2025 through September 27, 2025~~ | ~~$5,850,000~~ |
| ~~September 28, 2025 through October 3, 2025~~ | ~~$3,850,000~~ |
| ~~From and after October 4, 2025~~ | ~~$0~~ |

2. *Approved Budget; Variance Reports*. The updated Approved Budget attached as **Exhibit A** to this Amendment is hereby approved by the DIP Lender and shall constitute the "Approved Budget" for purposes of the DIP Credit Agreement and the Financing Order as in effect on the date of this Amendment and shall remain in effect until such time as further updated Budgets prepared by the Debtors, in consultation with the Committee, have been delivered to, and approved by, the DIP Lender. Any such updated Budget shall be filed with the Court. On or before the close of business on Tuesday of each week, the Debtors shall provide to the DIP Lender (i) a variance report showing actual sources and uses of cash and the actual DIP beginning and ending balances for such week, as compared to the amounts shown for such week in the Approved Budget, together with such related information as reasonably requested by the DIP Lender, and (ii) updated projections of sources and uses of cash and DIP beginning and ending balances for each of the following weeks through the Maturity Date.

3. *Continuing Lien on Residual Assets*. Pursuant to the DIP Loan Documents and the Financing Order, at all times prior to and after the Maturity Date, the DIP Obligations shall continue to be secured by first priority liens on all assets of the Debtors and the other Loan Parties (other than those assets sold by the Debtors with the consent of the DIP Lender), including, without limitation, all of the Debtors' rights and interests in and to any holdback or escrow amounts, incentive fee payments or other contingent consideration that may from time to time be due and owing to the Debtors arising out of or relating to the Sale Transaction, the Debtors' interests in any funds deposited by any Persons pursuant to the Bidding Procedures, the Debtors' claims against any Persons arising out of or relating to the Bidding Procedures or the Sale Transaction, any and all Avoidance Actions, and all other rights, claims and interests of the Debtors in and to any other assets of the Debtors or the other Loan Parties.

4. <u>Representations and Warranties, Etc</u>.  The Loan Parties hereby confirm that after giving effect to this Amendment, the representations and warranties of the Loan Parties set forth in <u>Article III</u> of the DIP Credit Agreement are true and correct in all material respects (provided that if any representation or warranty is by its terms qualified by concepts of materiality, such representation or warranty shall be true and correct in all respects) on and as of the date of this Amendment as if made on such date (except to the extent that such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall have been true and correct as of such earlier date).

5. <u>Ratification, Confirmation and Acknowledgment</u>.  The Borrower, the other Loan Parties, and the Individual Guarantor hereby ratify and confirm all terms and provisions of the DIP Credit Agreement and the other Loan Documents and agree that all such terms and provisions, as amended hereby, remain in full force and effect.

6. <u>Certain Conditions to this Amendment</u>.  This Amendment shall become effective on the date on which each of the following conditions is satisfied:

(a) The DIP Lender shall have received (i) a counterpart of this Amendment signed on behalf of each party hereto or (ii) written evidence satisfactory to the DIP Lender (which may include telecopy or electronic mail transmission of a signed signature page to this Amendment) that each party hereto has signed a counterpart of this Amendment; and

(b) The Bankruptcy Court in the Chapter 11 Cases shall have approved the amendments to the DIP Credit Agreement contemplated by this Amendment, including the extension of the Maturity Date of the DIP Credit Facility set forth herein.

7. <u>Covenant Regarding Use of Cash Collateral and Proceeds of Additional Loans under the DIP Credit Agreement.</u>  The Borrower and the other Loan Parties covenant and agree that they will use Cash Collateral, and the proceeds of all additional Loans funded under the DIP Credit Agreement, solely to fund those expenses identified in the Approved Budget in the amounts and during the weekly periods set forth in the Approved Budget, subject to any Permitted Variances.  On the date that the Prepetition Letter of Credit has been returned to the DIP Lender and the cancellation thereof has become effective (the "<u>Prepetition Letter of Credit Cancellation Date</u>") : (a) the DIP Lender shall release from the LC and Commercial Card Collateral Account and apply to the prepayment of the outstanding Loans owing under the DIP Credit Agreement (i) $1,050,000 of cash securing the Prepetition Letter of Credit and (ii) $50,000 of cash securing credit card exposure that has been terminated; (b) the Borrower shall borrow a Loan under the DIP Credit Agreement in the amount of $300,000 to fund an escrow to be established by the Debtors to facilitate a global mediation to be held in the last week of October 2025 (the "<u>Mediation Escrow</u>"); and (c) the Borrower shall be permitted to borrow additional Loans under the DIP Credit Agreement from time to time after the funding of the Mediation Escrow, and to use the proceeds of such additional Loans to fund the expenditures described in the Approved Budget in the amounts and during the weekly periods set forth in the Approved Budget; <u>provided</u> that, after giving effect to the borrowing of the Loan to fund the Mediation Escrow and the borrowing of any and all additional Loans under the DIP Credit Agreement to fund expenditures described in the Approved Budget, the aggregate principal amount of all Loans outstanding under the DIP Credit Agreement shall not exceed the Maximum DIP Facility Amount.  In the event that any of the Loan Parties recover or collect additional assets and revenue beyond those reflected in the Approved Budget (the "<u>Additional Recoveries</u>"), those Additional Recoveries shall be subject to all of the rights, claims and liens provided in the DIP Credit Agreement, the Loan Documents and the Financing Order.  Further disposition of those Additional Recoveries will be subject to the agreement of the Debtors, in consultation with the Committee (with a full reservation of rights), and DIP Lender and, to the extent appropriate, set forth in an amended Budget to be filed with the Bankruptcy Court.

8. <u>Further Condition to the Funding of Additional Loans under the DIP Credit Agreement.</u> Unless otherwise waived by the DIP Lender in its sole and absolute discretion, the DIP Lender shall have no obligation to fund the Loan to establish the Mediation Escrow or any other additional Loans under the DIP Credit Agreement from and after the date of this Amendment (a) if the beneficiary of the Prepetition Letter of Credit shall draw upon the Prepetition Letter of Credit, (b) if the Prepetition Letter of Credit shall not have been returned to the DIP Lender for cancellation on or prior to October 24, 2025 or such later date as may be agreed by the DIP Lender, or (c) unless the Bankruptcy Court in the Chapter 11 Cases shall have found and declared that: (i) pursuant to Section 16(e) of the Financing Order, the DIP Lender has no obligation to make Loans under the DIP Credit Agreement or otherwise to advance funds for the payment or reimbursement of any fees or disbursements of any professionals incurred in connection with these Chapter 11 Cases or any Successor Case under any chapter of the Bankruptcy Code whether pursuant to the Carve-Out, the delivery of the Carve-Out Notice or the occurrence of the Carve-Out Effective Date (as such terms are defined in the Financing Order) or otherwise; and (ii) any obligation under Section 16(b) of the Financing Order to replenish the Carve-Out Reserve Account following the delivery of the Carve-Out Notice or the occurrence of the Carve-Out Effective Date shall be an obligation of the Debtors and their estates only, and not an obligation of any kind whatsoever of the DIP Lender; provided, however, that the DIP Lender's Collateral and the proceeds of the DIP Lender's Collateral received or recovered subsequent to the Carve Out Effective Date shall remain subject to the Carve Out, and such DIP Lender's Collateral and the proceeds of the DIP Lender's Collateral shall be available to fund the Carve Out Reserve Account as provided in the Financing Order. For the avoidance of doubt, nothing contained herein shall affect the provisions of paragraph 16(a) of the Financing Order, which shall remain in full force and effect.

9. <u>Miscellaneous</u>.

(a) Except as otherwise expressly set forth herein, nothing herein shall be deemed to constitute an amendment, modification or waiver of any of the provisions of the DIP Credit Agreement or the other DIP Loan Documents, all of which remain in full force and effect as of the date hereof and are hereby ratified and confirmed.

(b) This Amendment may be executed in any number of counterparts, each of which, when executed and delivered, shall be an original, but all counterparts shall together constitute one instrument. Delivery of an executed counterpart of a signature page of this Amendment by facsimile or electronic mail shall be equally effective as delivery of a manually executed counterpart of this Amendment.

(c) This Amendment shall be governed by the laws of the State of New York and shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

(d) This Amendment constitutes a "DIP Loan Document" as such term is defined in the DIP Credit Agreement.

(e) The Borrower agrees to pay all reasonable and documented out-of-pocket expenses (including the reasonable legal fees and disbursements of Troutman Pepper Locke LLP, special US counsel to the DIP Lender), incurred by the DIP Lender in connection with this Amendment and the transactions contemplated hereby.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties hereto have executed this Ninth Amendment to Debtor-in-Possession Credit Agreement, which shall be deemed to be a sealed instrument as of the date first above written.

BORROWER:

**DIAMOND COMIC DISTRIBUTORS, INC.**

By:_____
Name:
Title:

**OTHER LOAN PARTIES:**

**COMIC EXPORTERS, INC.**

By:_____
Name:
Title:

**COMIC HOLDINGS, INC.**

By:_____
Name:
Title:

**DIAMOND SELECT TOYS AND COLLECTIBLES, LLC**

By:_____
Name:
Title:

[Signature Page to Ninth Amendment to DIP Credit Agreement]

**ROSEBUD ENTERTAINMENT, LLC**

By:_____
Name:
Title:

**RENEGADE GAMES, LLC**

By:_____
Name:
Title:

**GAME CONSOLIDATORS, LLC**

By:_____
Name:
Title:

**INDIVIDUAL GUARANTOR:**


_____
Stephen A. Geppi, individually

[Signature Page to Ninth Amendment to DIP Credit Agreement]

**<u>DIP LENDER</u>:**

**JPMORGAN CHASE BANK, N.A.**

By:_____
Name:
Title:

**<u>Exhibit A</u>**

**Approved Budget**

[See Attached]

| POST CLOSING FORECAST DIAMOND COMICS DIP WEEK ENDED | FORECAST 1 10/25/2025 | FORECAST 2 11/1/2025 | FORECAST 3 11/8/2025 | FORECAST 4 11/15/2025 |
|---|---|---|---|---|
| Incentive Fee Receipt | 1,089,183 | – | – | 500,000 |
| Release of the Credit Card Cash Collateral | 50,000 | – | – | – |
| Release of the LC (Olive Branch) | 1,050,000 | – | – | – |
| Other Sources of Recovery | – | – | – | – |
| **Total Sources of Cash** | **2,189,183** | **–** | **–** | **500,000** |
| | | | | |
| Claims Agent - Omni | (50,000) | – | – | (25,000) |
| DIP Interest Expense | (54,105) | – | – | – |
| Employee Insurance Claims | – | – | – | (10,000) |
| KEIP/KERP | (220,525) | – | – | (220,525) |
| Mediation Escrow | (300,000) | – | – | – |
| Miscellaneous Operating Cost | – | (4,191) | – | – |
| [1] Professional Fees - Committee - September | (157,000) | – | – | – |
| [2] Professional Fees - Committee | (105,000) | (35,000) | (35,000) | (35,000) |
| [3] Professional Fees - Debtor - September | (650,000) | – | – | – |
| [4] Professional Fees - Debtor | (495,000) | (165,000) | (165,000) | (165,000) |
| Professional Fees - Lender | (335,000) | – | – | – |
| Sales Tax | (313,225) | – | – | – |
| Storage Fees - Consignment | – | – | – | (70,000) |
| UST Fees | (75,000) | – | – | – |
| **Total Uses of Cash** | **(2,754,855)** | **(204,191)** | **(200,000)** | **(525,525)** |
| | | | | |
| Net Cash Flow | (565,672) | (204,191) | (200,000) | (25,525) |
| *Cumulative Net Cash Flow* | *(565,672)* | *(769,863)* | *(969,863)* | *(995,388)* |

| Reconciliation Summary | 10/25/2025 | 11/1/2025 | 11/8/2025 | 11/15/2025 |
|---|---|---|---|---|
| Revolver, Beginning Balance | (4,650,000) | (5,215,672) | (5,419,863) | (5,619,863) |
| Revolver Draw | (2,754,855) | (204,191) | (200,000) | (525,525) |
| Revolver Paydown | 2,189,183 | – | – | 500,000 |
| **Revolver, Ending Balance** | **(5,215,672)** | **(5,419,863)** | **(5,619,863)** | **(5,645,388)** |
| [5] LC Sub-limit | (200,000) | (200,000) | (200,000) | (200,000) |
| **Total Debt** | **(5,415,672)** | **(5,619,863)** | **(5,819,863)** | **(5,845,388)** |

**Footnote:**

[1] Committee professional fee carveout reflects unfunded fees approved in the prior bankruptcy court approved budget for the period from the week ending 9/06/25 through 10/04/25.

[2] Committee professional fee carveout relates to the current budget period for the weeks from 10/04/25 through 11/15/25.

[3] Debtors' professional fee carveout reflects unfunded fees approved in the prior bankruptcy court approved budget for the period from the week ending 9/06/25 through 10/04/25.

[4] Debtors' professional fee carveout relates to the current budget period for the weeks from 10/04/25 through 11/15/25.

[5] Upon return of the LC, the $1M LC sublimit portion of the outstanding credit facility will be eliminated, thereby further reducing (in addition to the release of the $1M cash collateral held for the LC Exposure) total debt exposure by $1M.

[6] This budget does not reflect the $275,000 DIP Facility fee due and payable to the DIP Lender upon the Maturity Date, pursuant to paragraph 6(e) of the Court's Final Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay and (V) Granting Related Relief [D.I. 163]