**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE DIVISION)**

| | |
|---|---|
| In re: | Chapter 11 |
| Diamond Comic Distributors, Inc., *et al.* | Case No. 25-10308 (DER) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 747** |

**JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO CONSIGNMENT
GROUP'S MOTION SEEKING ENTRY OF ORDER REQUIRING THE DEBTORS
TO ASSUME OR REJECT EXECUTORY CONTRACTS WITH MEMBERS OF THE
CONSIGNMENT GROUP; AND FOR RELATED RELIEFAD HOC**

JPMorgan Chase Bank, N.A., as Prepetition Lender and DIP Lender (collectively, the "**Lender**"), by and through its undersigned counsel, hereby files this opposition (this "**Opposition**") to the *Motion Seeking Entry of Order Requiring the Debtors to Assume Or Reject Executory Contracts With Members Of the Consignment Group; And for Related Relief* [Docket No. 747] (the "**Motion to Compel**") filed by the members of the Consignment Group[2] (the "**Consignment Group**"). In support of this Opposition, the Lender respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases and the last four (4) digits of each Debtor's federal taxpayer identification number are as follows: Diamond Comic Distributors, Inc. (3450), Comic Exporters, Inc (7457), Comic Holdings, Inc. (7458), and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] The "Consignment Group" is comprised of the following jointly represented consignors: Aspen MLT, LLC /a/ka Aspen Comics; Black Mask Studios, LLC; DSTLRY Media, Inc.; Dynamic Forces, Inc. a/k/a Dynamite Entertainment; Heavy Metal International, LLC; MagneticPress, LLC; Massive Publishing, LLC; Oni-Lion Forge Publishing Group, LLC f/k/a Oni Press, LLC; Panini UK Ltd.; Punk Bot Comic Books, LLC a/k/a Alien Books; The Penn State University a/k/a Graphic Mundi; Titan Publishing Group, Ltd.; Vault Storyworks, LLC a/k/a Vault Comics f/k/a Creative Mind Energy.; and Dark Horse Comics, LLC.

1

## Background

### A.  Bankruptcy Case

1.    On January 14, 2025 (the "**Petition Date**"), each of the Debtors commenced a case under chapter 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"). The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On January 29, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**").

2.    On February 19, 2025, the Court entered the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 163] (the "**Final DIP Order**"), pursuant to which, among other things, the Debtors were granted authority to obtain senior secured postpetition financing pursuant to the terms and conditions of the Final DIP Order and that certain senior secured Debtor-in-Possession Credit Agreement, dated as of January 16, 2025 (as amended from time to time, the "**DIP Credit Agreement**").[3]

### B.  The Consignment Sale Motion

3.    On June 25, 2025, the Debtors filed the *Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other*

---

[3] The DIP Credit Agreement was subsequently amended seven times pursuant to this Court's Orders Approving Stipulations Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement [Docket Nos. 243, 345, 409, 470, 569, 788 & 982].

250533262v2

*Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances, and (III) Granting Related Relief* (the "**Consignment Sale Motion**"), seeking, among other things, approval of procedures to sell or otherwise dispose of consigned inventory (the "**Consigned Inventory**") provided by certain vendors (collectively, the "**Consignment Vendors**") currently in the possession of the Debtors.

4.      On July 24, 2025, the Ad Hoc Committee[4] filed the *Ad Hoc Committee of Consignors' Motion to Stay Debtors' Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances, and (III) Granting Related Relief* [Docket No. 649]  (the "**Motion to Stay**").

5.      On August 1, 2025, the Ad Hoc Committee filed the *Ad Hoc Committee of Consignors' Motion Seeking Entry of an Order Requiring the Debtors to Assume or Reject Executory Contracts with Members of Ad Hoc Committee of Consignors; and For Related Relief* [Docket No. 679] (the "**Ad Hoc Committee Motion to Compel**"). On August 15, 2025, the Lender filed an opposition to the Ad Hoc Committee Motion to Compel  [Docket No. 740] (the "**Initial Opposition**").

6.      On August 18, 2025, the Consignment Group filed its Motion to Compel [Docket No. 747], which is almost identical to Ad Hoc Committee Motion to Compel. Accordingly, the Lender respectfully directs the Court to and incorporates herein the legal arguments raised in

---

[4] The Ad Hoc Committee is comprised the following thirteen (13) jointly represented consignors: Ablaze LLC; American Mythology Productions, LLC; Andrew Kafoury dba Battle Quest Comics; Avatar Press, Inc., Bryan Seaton dba Action Lab; Drawn & Quarterly Books Inc., Fantagraphics Books, Inc.; Green Ronin Publishing LLC; Herman & Geer Communications, Inc. dba Hermes Press Living the Line LLC; Paizo Inc.; UDON Entertainment Inc.; and Zenescope Entertainment Inc.

3

Lender's Initial Opposition to Ad Hoc Committee Motion to Compel, with respect to the Consignment Group's Motion to Compel.

7.       Following a two-day evidentiary hearing, the Court entered an *Order Staying the Consignment Sale Motion* (the "***Order Granting Stay***") [Docket No. 781], which stayed the prosecution of the Consignment Sale Motion until (i) Debtors commenced adversary proceedings against each and every Consignment Vendor that sold any of the Consigned Inventory contemplated to be sold by the Debtors in connection with the Consignment Sale Motion, and (ii) obtained a final judgment in any such adversary proceeding finding that the proposed Consigned Inventory to be sold in connection with the Consignment Sale Motion is property of the Debtors' estates. Since the Court's Order Granting Stay, the Debtors have initiated over thirty adversary proceedings against members of the Consignment Group, Ad Hoc Committee, and other Consignment Vendors (the "***Adversary Proceedings***").

8.       On September 19, 2025, the Court entered the *Consent Order Resolving, In Part, Debtors' (I) Motion to Enforce the Automatic Stay, (II) To Enforce the Sale Order and (III) Granted Related Relief* [Docket No. 878] (the "***Consent Order***"). Under the terms of this Consent Order, Sparkle Pop, LLC ("***Sparkle Pop***"), is expressly prohibited from continuing to sell any Consigned Inventory, whether obtained from members of the Consignment Group, the Ad Hoc Committee, or otherwise.

9.       Since entry of the Consent Order, Sparkle Pop filed a Certification on September 17, 2025 [Docket No. 889], certifying under penalty of perjury, that it has removed all Consigned Inventory from its marketing materials and that it has ceased all sales of Consigned Inventory. Further, consistent with the Consent Order, Sparkle Pop has made three (3) payments totaling $840,155 into the Court's Registry, representing the net sale proceeds of consigned inventory on

4

hand as of May 15, 2025.[5]

## C.  Mediation of Consignment Matters

10.     On October 17, 2025, the Court entered an Order [Docket No. 960] (the "***Mediation Order***") assigning the Motions to Compel, Adversary Proceedings, and all consignment related claims or causes of action to mediation (the "***Mediation***") before the Honorable Thomas J. Catliota. Notwithstanding the Court's entry of the Mediation Order, which stayed the Adversary Proceedings, the Ad Hoc Committee subsequently filed twelve (12) third-party complaints in the Adversary Proceedings against Lender.[6]

11.     In conjunction with the Mediation and the *Order Approving Seventh Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement* [Docket No. 982], $300,000 was placed into escrow to satisfy the post-Petition Date, pre-May 15, 2025, alleged claims of the Consignment Group and the Ad Hoc Committee if all consignment issues were settled.

## Opposition

12.     As an initial matter, the Lender understands that the Debtors and Consignment Vendors are currently engaged in ongoing negotiations regarding the disputes concerning the Consigned Inventory. Accordingly, the Lender files this Opposition on a protective basis and

---

[5] As noted by the Debtors' counsel at the November 10, 2025, hearing, Sparkle Pop has not yet fully complied with the Consent Order, as it has failed to account for the sale of all of the consigned inventory delivered after May 15, 2025.

[6] The applicable Ad Hoc Committee adversary proceedings are: (i) Adv. Proc. No. 25-00231 (Ablaze LLC); (ii) Adv. Proc. No. 25-00232-(Action Lab Entertainment, Inc.); (iii) Adv. Proc. No. 25-00235 (American Mythology Productions LLC); (iv) Adv. Proc. No. 25-00237 (Battle Quest Comics, Inc.); (v) Adv. Proc. No. 25-00239 (Boom Entertainment, Inc.); (vi) Adv. Proc. No. 25-00245(Fantagraphics Books, Inc.); (vii) Adv. Proc. No. 25-00247 (Green Ronin Publishing LLC); (viii) Adv. Proc. No. 25-00249 (Herman & Geer Communications, Inc.); (ix) Adv. Proc. No. 25-00251 (Living the Line, LLC); (x) Adv. Proc. No. 25-00256 (Paizo, Inc.); (xi) Adv. Proc. No. 25-00262 (Zenescope Entertainment, Inc.); and (xii) Adv. Proc. No. 25-00385 (Avatar Press, Inc.).

supplements its legal arguments raised in its Initial Opposition, as incorporated herein, with several additional points.

13.     At the insistence of both the Consignment Group and the Ad Hoc Committee, the Court entered the Order Granting Stay. The Court's Order Granting Stay made no findings as to the merits of any party's substantive ownership claims or priority interests in the Consigned Inventory. Rather,  the Court solely granted the requested procedural relief, ruling that Bankruptcy Rule 7001 mandates that the claims must be litigated in adversary proceedings and not a Bankruptcy Rule 9014 contested matter. Following the Court's Order Granting Stay, the Debtors have initiated over thirty Adversary Proceedings against the Consignment Vendors, and the Lender was subsequently named a third-party defendant in certain of the Adversary Proceedings.

14.     The Consignment Vendors seek to circumvent the adjudication of the ownership and priority disputes that are the subject of the Adversary Proceedings through the Motion to Compel. In essence, the Consignment Vendors contend that the rejection of their Vendor Contracts vests them with ownership of the Consigned Inventory, thereby mooting the pending dispute over ownership and priority relative to these goods. The Consignment Vendors prevailed on their procedural and due process arguments, resulting in the requested Adversary Proceedings. Consequently, declaratory relief as to the ownership and priority disputes over the Consignment Inventory must be decided in the Adversary Proceedings rather than by contested Motions to Compel.

15.     Further, any ruling on the rejection of the Vendor Contracts, without more, cannot possibly vest the Consignment Vendors with ownership or other rights in the disputed Consignment Inventory. First, this request violates the Supreme Court's ruling in *Mission Prod. Holdings*. *See Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 381 (2019) ("A

6

rejection does not terminate the contract."). Second, such a determination would moot the pending Adversary Proceedings and divest the Debtors and the Lender of their competing claims and liens to the Consignment Inventory. Third, this outcome would deprive the Lender of its procedural and due process rights afforded to the Consignment Vendors and vitiate its ability to appear and defend its superior DIP Lien rights in the Adversary Proceedings.

16.     Finally, subsequent developments in these cases do not support a finding of cause to shorten the Debtors' time to assume or reject the Vendor Contracts. The entry of the Consent Order and the deposit of the $300,000 escrowed funds for the alleged administrative claims of the Consignment Group and the Ad Hoc Committee address and resolve the claims of prejudice articulated in the Motion to Compel.  Under these circumstances, there is insufficient cause to require an immediate decision on assumption or rejection of the Vendor Contracts.

### Waiver of Memorandum of Law

17.     Pursuant to Local Bankruptcy Rule 9013-2, the Lender states that, in lieu of submitting a memorandum in support of this Objection, the Lender will rely on the grounds and authorities set forth herein.

**WHEREFORE**, Lender respectfully requests that the Court deny the Motion to Compel and grant such other and further relief as may be just and proper under the circumstances.

Respectfully submitted,

DATED: December 5, 2025

_/s/ Katherine E. Culbertson_
Jonathan W. Young (admitted *pro hac vice*)
Toyja E. Kelley (Bar No. 26949)
Indira K. Sharma (Bar No. 28269)
Katherine E. Culbertson (admitted *pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
701 8th Street, N.W., Suite 500
Washington, D.C. 20001
Toyja.Kelley@troutman.com

7

Indira.Sharma@troutman.com
Jonathan.Young@troutman.com
Katherine.culbertson@troutman.com


## CERTIFICATE OF SERVICE

I, Katheirne E. Culbertson, hereby certify that, on the 5th day of December, 2025, I caused a true and correct copy of the foregoing *Opposition to Consignment Group's Motion to Compel* to be filed and served via CM/ECF on all parties who have registered for electronic service in these cases.

*/s/ Katheirne E. Culbertson*

8