IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MOTION (A) FOR ENTRY OF ORDER APPROVING EIGHTH STIPULATION BETWEEN DEBTORS AND JPMORGAN CHASE BANK, N.A., AMENDING DIP CREDIT AGREEMENT AND (B) FOR APPROVAL OF ORDER (I) CONVERTING CASES FROM CHAPTER 11 TO CHAPTER 7 OF THE BANKRUPTCY CODE AS OF CONVERSION DATE, (II) APPROVING CERTAIN CONVERSION PROCEDURES (III) SETTING BAR DATE FOR FILING FINAL CHAPTER 11 FEE APPLICATIONS AND ESTABLISHING A HEARING THEREON, AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move (this "Motion") as follows:

**INTRODUCTION**

As the Court is aware, these have been challenging cases. Among other things, these cases have involved a sale process with a back-and-forth designation of winning bidders that included Alliance Entertainment, LLC ("AENT") as the successful bidder at auction, and Universal Distribution, LLC ("Universal") and Sparkle Pop, LLC ("Sparkle Pop") as back-up bidders. A key result of this back-and-forth sale process, which included a disputed termination by AENT of its asset purchase agreement, was that Universal and Sparkle Pop, as the ultimate purchasers of the Debtors' assets, and notwithstanding the terms of their respective asset purchase agreements,

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

demanded substantial reductions in their respective purchase prices in order to proceed. These amended transactions were ultimately approved by the Court.

Throughout this process, the Debtors have worked cooperatively with their lender, JPMorgan Chase Bank, N.A. (the "DIP Lender"), and their Unsecured Creditors' Committee in maximizing value for the estate. In this regard, the DIP Lender and the Debtors have entered into certain amendments and extensions to the Debtors' DIP Credit Agreement, which provided continued financing and liquidity to the Debtors' estates as they have sought to monetize their assets for the benefit of their creditors.

The most recent amendment to the Debtors' debtor-in-possession financing agreement extended the Maturity Date under the DIP Credit Agreement to November 14, 2025. Since that date, the Debtors have held discussions with the DIP Lender regarding potential additional financing and a further amendment to the Debtors' debtor-in-possession financing agreement. In the course of those discussions, the DIP Lender advised that it was unwilling to finance further administration of these cases in Chapter 11. As a result, the Debtors informed the Court at a hearing on December 8, 2025 that they soon would be filing a motion to convert these cases to chapter 7; obviously, the Debtors cannot continue to administer their cases without funding.

Subsequent to the December 8, 2025 hearing, and in order to facilitate an orderly transition to Chapter 7, the Debtors engaged in additional discussions with the DIP Lender about limited, additional transition funding. As a result of those discussions, the Debtors and DIP Lender have agreed on a short term and limited extension of the DIP Facility—which will facilitate an orderly transition of these case to proceedings under chapter 7.

## RELIEF REQUESTED

1. Based on the foregoing, the Debtors seek entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit A** (the "Proposed Order") granting two forms of relief. *First*, the Proposed Order approves the Eighth Stipulation Between the Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement. This stipulation (the "Eighth Stipulation") is an exhibit to the Proposed Order. *Second*, the Proposed Order provides for the conversion of these cases to chapter 7 effective as of 11:59 p.m. on the fifth (5th) business day after entry of the Proposed Order (the "Conversion Date"). The Proposed Order also provides for the establishment of the following procedures in connection with the conversion of these chapter 11 cases to chapter 7 (the "Conversion Procedures"):

   (a) **Books and Records.** As soon as reasonably practicable, but in no event more than fourteen (14) days after the appointment of the chapter 7 trustee, the Debtors shall turn over or provide access to the chapter 7 trustee the books and records of the Debtors in the Debtors' possession and control, as required by Bankruptcy Rule 1019. For purposes hereof, the Debtors may provide copies (including electronic copies) of such books and records to the chapter 7 trustee, or instructions for locating and accessing such books and records, and may retain copies of such books and records to the extent necessary to complete the reports required herein.

   (b) **Schedule of Unpaid Debts.** Within thirty (30) days of the Conversion Date, the Debtors shall file a schedule of unpaid debts incurred after commencement of the Debtors' chapter 11 cases, including the name and address of each creditor, as required by Bankruptcy Rule 1019(5) (as modified herein).

   (c) **Final Report**. Within thirty (30) days after the Conversion Date, the Debtors shall file and transmit to the chapter 7 trustee a final report and account in accordance with Bankruptcy Rule 1019(5).

   (d) **Claims.** Within fourteen (14) days of the Conversion Date, Omni (as defined below) shall (i) forward to the Clerk of this Court an electronic version of all imaged claims; (ii) upload the consolidated creditor mailing list into CM/ECF and file the consolidated matrix in each jointly administered case in lieu of a separate matrix for each Debtor; and (iii) docket a final claims register in the Debtors' chapter 11 cases.

(e) **Professional Fees.** Professionals shall submit Final Fee Applications in accordance with the Bankruptcy Code, Bankruptcy Rules, the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, and orders of this Court by no later than thirty (30) days after the Conversion Date (the "Final Fee Application Deadline"). Objections, if any, to the Final Fee Applications shall be filed and served by no later than fourteen (14) days after the Final Fee Application Deadline. A hearing to consider all timely filed Final Fee Applications should be held, if needed, on a date convenient to the Court that is at least sixty-five (65) days after the Conversion Date.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and *Standing Order 2012-05* from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief sought herein are sections 105(a), 331, 364 and 1112 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by rules 1017, 1019, 2002, 2016 and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

**A.     The Debtors' Chapter 11 Cases**

4. On January 14, 2025 (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code. The Debtors are maintaining their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On January 29, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

5.	A description of the Debtors' business as of the Petition Date and the reasons for commencing these cases are set forth in the *Declaration of Robert Gorin in Support of Chapter 11 Petitions and First Day Relief* [D.I. 20] (the "First Day Declaration").

6.	As explained in the First Day Declaration, the Debtors were a leading distributor of comics, graphic novels, toys, games and other pop culture related merchandise to retailers across the world. As of the Petition Date, the Debtors operated out of five warehouses, comprising over one million square feet of distribution space, to distribute products to thousands of customers. The primary objective in these chapter 11 cases was to conduct a value-maximizing sale process of all or substantially all the Debtors' assets for the benefits of the Debtors' estates and their creditors.

C.	**The Final DIP Order**

7.	On the Petition Date, the Debtors filed the *Debtors' Motion for Interim and Final Orders (I) Authorizing the Debtors to Obtain Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [D.I. 19] (the "DIP Motion").

8.	A final order granting the DIP Motion was entered on February 19, 2025 [D.I. 163] (the "Final DIP Order") pursuant to which, among other things, the Debtors were granted authority to obtain senior secured postpetition financing pursuant to the terms and conditions of the Final DIP Order and that certain senior secured Debtor-in-Possession Credit Agreement, dated as of January 16, 2025 (as amended from time to time, the "DIP Credit Agreement"). Attached as Exhibit B to the Final DIP Order was the Budget (as defined therein, and as subsequently amended from time to time, the "Budget").

9.	In accordance with the Final DIP Order, the Lender has valid, enforceable, attached

and binding, fully perfected priming, first priority senior security interests and liens (the "DIP Liens") upon the assets comprising the DIP Collateral subject only to any Permitted Priority Liens and the Carve-Out (each as defined in the Final DIP Order). *See* Final DIP Order, at ¶¶ 13, 14, & 15. The Court also ordered that the rights, remedies, powers, privileges, liens and priorities of the DIP Lender provided for in the Final Order, the DIP Loan Documents, or otherwise shall be valid and enforceable upon conversion of these chapter 11 cases to chapter 7 of the Bankruptcy Code until all the DIP Debt has been indefeasibly paid in full. *See* Final DIP Order at ¶¶ 5, 11(a), 15, 22, 23, 33, 36, 44. All Challenge Rights under the Final DIP Order have expired and are now extinguished.

10. The Debtors and DIP Lender have agreed to several amendments to the DIP Credit Agreement throughout these chapter 11 cases, including amendments to extend the Maturity Date (as defined in the DIP Credit Agreement). *See* D.I. 243, 345, 409, 470, 569, 788 & 982. The most recent amendment extended the Maturity Date to November 14, 2025. *See Order Approving Seventh Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement* [D.I. 982] (the "Seventh Stipulation"). In conjunction with the Seventh Stipulation, $300,000 was placed into escrow to provide for payment following determination and allowance of the post-Petition Date, pre-May 15, 2025, alleged claims of certain consignment vendors.

C.    **The Sale Process**

11. With the assistance of a Court-approved investment banker, the Debtors conducted an extensive postpetition marketing process that yielded multiple qualified bids for the Debtors' various assets and resulted in a competitive auction on March 24 and 25, 2025. At the conclusion of the auction, AENT was determined to have submitted the highest and best bid for the Debtors' assets with total consideration to the Debtors' estates of approximately $85.37 million.

12. Following the auction, AENT submitted a revised form of its asset purchase agreement to the Debtors that was materially inconsistent with its auction bid. Despite further negotiations between the Debtors and AENT regarding the revised asset purchase agreement, AENT refused to make the necessary changes to conform its revised asset purchase agreement with its auction bid.

13. As a result of their unsuccessful discussions with AENT, the Debtors informed AENT that the Debtors intended to seek Court approval to sell their assets to Universal and Sparkle Pop, as back-up bidders. In response, AENT agreed to conform its asset purchase agreement with its auction bid. By this time, however, the Debtors had considerable concerns as to whether AENT would close on the transactions contemplated by AENT's auction bid. On April 7, 2025, the Court held a full day, contested evidentiary hearing on the Debtors' proposed sale to the back-up bidders. AENT opposed the sale, argued that its bid was the highest and best offer for the Debtors' assets, and filed an adversary proceeding against the Debtors seeking to enforce its alleged rights and claims in connection with these matters. Following the hearing, the Debtors, in consultation with the DIP Lender and the Committee, in their capacity as sale consultation parties, agreed, subject to certain conditions, to sell their assets to AENT, which represented that it would close on the purchase almost immediately.

14. The Court accordingly entered, on April 11, 2025, the AENT Sale Order, which among other things approved the sale of all or substantially all the Debtors' assets to AENT. *See Order (I) Approving Asset Purchase Agreement Among Diamond Comic Distributors, Inc., Diamond Select Toys & Collectibles, LLC and Alliance Entertainment, LLC; (II) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and*

*Other Interests; (III) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [D.I. 335].

15. After the Court entered the AENT Sale Order, AENT advised the Debtors that it was terminating its asset purchase agreement. This led to the commencement of litigation by AENT, which sought among other things the return of its deposit from the Debtors and the recovery on various disputed claims asserted by AENT. ***The Debtors and the other defendants in this litigation have vigorously contested AENT's claims, and believe that key factual allegations asserted by AENT are false***. The Debtors have asserted substantial counterclaims against AENT, including claims for breach of contract and the recovery of significant monetary damages. These counterclaims, along with AENT's complaint, are pending before the Court.

16. Separate from the above-described litigation, AENT's asserted termination of its asset purchase agreement forced the Debtors to pivot again, and to enter into revised asset purchase agreements with Universal and Sparkle Pop, as the back-up bidders.

17. To that end, on April 29, 2025, the Debtors filed an emergency motion for Court approval of the sale of substantially all the Debtors' assets to Universal and Sparkle Pop. Notwithstanding the terms of their prior backup bids, Universal and Sparkle Pop would not proceed without substantial reductions to their proposed purchase price for the Debtors' assets. As a result, the Debtors' estates received significantly less consideration as compared to the consideration provided for in AENT's asset purchase agreement.

18. The Court approved the Debtors' proposed sales to Universal and Sparkle Pop pursuant to Orders entered on May 1, 2025 [D.I. 407 & 408] (together, the "Sale Orders"). The Universal and Sparkle Pop sales closed in mid-May, 2025. *See* D.I. 499 and 500. Substantially all of the net sale proceeds from the sales were used to reduce the Debtors' outstanding DIP

Obligations (as defined in the Final DIP Order), as required by the Final DIP Order and the Sale Orders.  Pursuant to the Sale Orders, "effective upon the Closing Date, all Challenge Rights under the Final DIP Order shall be deemed to have been waived and terminated. Neither the Debtors, the Committee, nor any other individual, entity or party shall be entitled to bring or maintain a Challenge against the Prepetition Lender, the DIP lender or otherwise, and the Debtors' stipulations in the Final DIP Order shall be deemed binding and enforceable against the Debtors, the Committee, and all other creditors and parties in interest." See Sale Orders, ¶ 39.

**D.        Post-Sale Progress and Events Leading to Conversion**

19.        Sale of Diamond UK.  On July 23, 2025, the Debtors filed a motion to approve the sale, by Debtors Comic Exporters, Inc. and Comic Holdings Inc., of their ownership interest in non-debtor affiliate Diamond UK to Diamond Distributors UK, Ltd. (the "Purchaser") [D.I. 638] (the "Diamond UK Sale Motion").  On August 18, 2025, the Court entered on Order authorizing the Diamond UK Sale Motion. *See* D.I. 748.

20.        Olive Branch Lease.  Separately, the Debtors negotiated and entered into a stipulation for the assumption and assignment of their lease, as amended, for a warehouse located in Olive Branch, Mississippi.  This stipulation allowed the Debtors to obtain a return, to the DIP Lender, of a $1.0 million letter of credit that had served as security for the Debtors' obligations under the lease.  Because the letter of credit had been "cash collateralized" by the DIP Lender under the DIP Credit Agreement, the return of the letter of credit materially reduced the amount due to the DIP Lender.  On October 23, 2025, the Court approved the stipulation and the assumption and assignment of the lease to Sparkle Pop [D.I. 981].

21.        Consignment Disputes.  On June 25, 2025, the Debtors filed a motion for approval of (i) procedures for the sale or other disposition of the Debtors' consigned inventory and (ii) the

ultimate sale(s) or other disposition of the consigned inventory free and clear of all liens, claims, interests and encumbrances [D.I. 531] (the "Consignment Sale Motion").  On August 25, 2025, the Court entered an Order staying the Consignment Sale Motion until the Debtors obtained judgments against the relevant consignment vendors in adversary proceedings. *See* D.I. 781.

22. In response to this Order, and with the support of the DIP Lender, the Debtors filed over thirty complaints against various consignment vendors.  Since filing these complaints, the Debtors have engaged in significant settlement negotiations with certain defendant consignment vendors and have participated in a mediation process, presided over by the Honorable Thomas J. Catliota (ret.), regarding, among other things, the issues raised by the adversary proceedings and by motions to compel assumption or rejection filed by the Ad Hoc Committee of Consignors and The Consignment Group in these cases.  *See Order Assigning Matters to the Bankruptcy Dispute Resolution Program and Appointing Resolution Advocate* [D.I. 960].  While the Debtors and consignment parties continue to make meaningful progress regarding a resolution of the consignment issues, a global resolution has not yet been reached between the parties.

23. The Debtors' post-sale closing efforts have enabled the Debtors to recover additional value for the Debtors' estates and to continue their efforts to monetize assets for the benefit of their creditors.  At this point in time, the Debtors' remaining assets are comprised of claims and causes of action, as well as a disputed interest in the inventory subject to the Consignment Sale Motion. These litigations are ongoing and contested, and further time, effort and expense will be required to bring them to conclusion.  The Debtors and DIP Lender have each determined that, at this point in time, and without ongoing funding for the Chapter 11, these litigations can most efficiently be pursued in Chapter 7.  In order to facilitate an orderly transition

to that Chapter 7 proceeding, the DIP Lender, through the Eighth Stipulation, has agreed to provide funding to the Debtors so that certain of these transition expenses can be paid.

## BASIS FOR RELIEF REQUESTED

24.     As noted above, this Motion seeks two forms of relief: (i) approval of the Eighth Stipulation and (ii) conversion of these cases to chapter 7 as of the Conversion Date (i.e., 11:59 p.m. on the fifth (5th) business day after entry of the Proposed Order).

A.     **Approval of Eighth Stipulation**

25.     Court approval of the Eighth Stipulation is in the best interests of the Debtors' estates. As explained above, the back-and-forth sale process of substantially all of the Debtor' assets resulted in less sale proceeds than initially contemplated. This has left certain administrative claims unpaid. The DIP Lender has agreed to provide additional funding to the Debtors in accordance with the attached Approved Budget—to allow them to satisfy certain of these administrative claims prior to the conversion of the Debtors' cases to chapter 7, which will facilitate an orderly transition of these proceedings to Chapter 7.

26.     Courts grant debtors considerable deference in exercising their sound business judgment in obtaining debtor-in-possession credit. *See, e.g., In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Barbara K. Enters., Inc.*, No. 08-11474, 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) ("[Courts generally] defer to a debtor's own business judgment so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest") (internal citation omitted); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on

grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest").

27. Courts emphasize that the business judgment rule is not an onerous standard. Courts require only that the debtors "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted).

28. This Court has already found that the Debtors' entry into the DIP Credit Agreement was a sound exercise of the Debtors' business judgment. See Final DIP Order ¶ H ("Based on the Motion, the First Day Declaration, and the record presented to the Court at the Interim and Final Hearings, the terms of the DIP Credit Agreement, the DIP Order and the DIP Loan Documents are fair and reasonable, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration."); see also id. at ¶ L. This Court has further found that the Debtors have met the conditions necessary under section 364(d)(1) of the Bankruptcy Code to obtain postpetition financing on a senior secured and superpriority basis. See id. at ¶¶ F & K(ii).

29. Under the circumstances of these cases, approval of additional postpetition financing, through the Eighth Stipulation, is clearly in the best interests of the Debtors, in that it will allow the Debtors to facilitate an orderly transition and to further reduce certain unpaid administrative expenses prior to the conversion of these cases to chapter 7.

**B.     Conversion of Debtors' Chapter 11 Cases to Chapter 7 of the Bankruptcy Code**

30. Section 1112(a) of the Bankruptcy Code governs the conversion of chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. Specifically, section 1112(a) provides that:

> (a)     The debtor may convert a case under this chapter to a case under chapter 7 of this title unless—

12

>    (1)   the debtor is not a debtor in possession;
>    (2)   the case originally was commenced as an involuntary case under this chapter; or
>    (3)   the case was converted to a case under this chapter other than on the debtor's request.

11 U.S.C. § 1112(a). Because subdivisions (1), (2) and (3) of section 1112(a) of the Bankruptcy Code are inapplicable here, the Debtors may convert these cases to cases under chapter 7 of the Bankruptcy Code as a matter of right. *See In re Dieckhaus Stationers of King of Prussia Inc.*, 73 B.R. 969, 971 (Bankr. E.D. Pa. 1987) ("[Section 1112(a)] by its terms gives the debtor an absolute right to convert, unless the case is governed by one of the enumerated exceptions."); *In re Schuler*, 119 B.R. 191, 192 (Bankr. W.D. Mo. 1990) (same).

31. In the present case, conversion of these chapter 11 cases to cases under chapter 7, effective as of the proposed Conversion Date, is in the best interests of the Debtors' estates and creditors. As described above, there is no longer funding or sufficient liquidity to support the continuation of these cases in Chapter 11. The monetization of the pending litigation will need to take place in Chapter 7. Subject to this Court's approval, the DIP Lender is willing to provide a short extension and the further liquidity provided in the Approved Budget, so as to facilitate an orderly transition to Chapter 7. The conversion of these cases to chapter 7 and the appointment of a chapter 7 trustee is necessary and warranted. In order to facilitate the orderly transition to Chapter 7, the Debtors propose that the conversion become effective on the proposed Conversion Date—11:59 p.m. on the fifth (5th) business day after entry of the Proposed Order.

**B.     The Conversion Procedures and Other Related Relief Should Be Approved**

32. The Debtors respectfully request that, in connection with the conversion of these chapter 11 cases, the Debtors' claims and noticing agent, Omni Agent Solutions, LLC ("Omni"), shall be relieved of any further obligations to provide services as claims and noticing agent. To

this end, the Debtors respectfully request that any Order approving this Motion also provide for the termination of Omni's services as claims and noticing agent in these chapter 11 cases.

33. The Debtors also believe that the Conversion Procedures are appropriate under the facts of these cases, consistent with the requirements of the Bankruptcy Rules, and should be approved. The Conversion Procedures include, among other things, a request to extend the deadline under Bankruptcy Rule 1019(e)(1)(A) for the filing of a schedule of any unpaid post-petition, pre-conversion debts from fourteen (14) days after the Conversion Date to thirty (30) days after the Conversion Date.

34. The Court has authority to grant the requested extension under Bankruptcy Rule 9006(b), which permits the Court to extend the deadline "for cause shown." *See* Fed. R. Bankr. P. 9006(b). Following conversion, the Debtors expect additional time may be necessary to complete the Debtors' post-conversion tasks given the size and complexity of these cases.

35. In addition to the above, the Debtors request that the Court stay all contested matters pending in these chapter 11 cases and all related adversary proceedings pending the qualification of a permanent trustee under section 702 of the Bankruptcy Code. Pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); see also Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigations"). Here, a temporary stay of all contested matters and adversary proceedings is necessary and appropriate to allow for the appointment of a chapter 7 trustee on a permanent basis and provide the trustee with an opportunity to familiarize him or herself with the disputes in these cases. Furthermore, the imposition of a temporary stay would

not prejudice the parties to the contested matters or defendants to the adversary proceedings. The adversary proceedings are in their early stages with discovery either not yet underway or having just started. A brief pause at this stage of the litigation would not prejudice the defendants.

## **NOTICE**

36.     Notice of this Motion will be given to the following parties, or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Maryland; (ii) the Committee; (iii) counsel to JPMorgan Chase Bank, N.A.; (iv) the United States Attorney for the District of Maryland; (v) the offices of the attorneys general for the states in which the Debtors operate; (vi) the Internal Revenue Service; (vii) the United States Attorney general; (viii) the civil process clerk for the United States Attorney for the District of Maryland; (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (x) all creditors.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

[*Remainder of page left intentionally blank*]

WHEREFORE, the Debtors respectfully request that this Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief sought herein and granting such other and further relief as may be just and proper.

Dated: December 12, 2025                    **SAUL EWING LLP**

By: */s/ Jordan D. Rosenfeld*
Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
Turner N. Falk (admitted *pro hac vice*)
1735 Market Street, Suite 3400
Philadelphia, PA 19103
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
          adam.isenberg@saul.com
          turner.falk@saul.com

-and-

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
          paige.topper@saul.com
          nicholas.smargiassi@saul.com

*Counsel for Debtors and Debtors in Possession*