## Exhibit A

**Revised Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |
| | Re: D.I. 1070 |

**ORDER (I) APPROVING EIGHTH STIPULATION BETWEEN DEBTORS AND JPMORGAN CHASE BANK, N.A., AMENDING DIP CREDIT AGREEMENT, (II) CONVERTING CASES FROM CHAPTER 11 TO CHAPTER 7 OF THE BANKRUPTCY CODE AS OF CONVERSION DATE, (III) APPROVING CERTAIN CONVERSION PROCEDURES (IV) SETTING BAR DATE FOR FILING FINAL CHAPTER 11 FEE APPLICATIONS AND ESTABLISHING A <u>HEARING THEREON, AND (V) GRANTING RELATED RELIEF</u>**

Upon the Debtors' motion (the "<u>Motion</u>")[2] for the entry of an order (a) approving Eighth Stipulation between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement and (b) (i) converting cases from chapter 11 to chapter 7 of the Bankruptcy Code as of the Conversion Date, (ii) approving certain conversion procedures, (iii) setting bar date for filing final chapter 11 fee applications and establishing a hearing thereon, and (iv) granting related relief; and

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] Capitalized terms used but not defined herein are defined in the Motion.

it appearing that the relief sought in the Motion and the entry of this Order is appropriate; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334; and it appearing that venue of these cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is reasonable and in the best interests of the Debtors, their estates, their creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as provided herein.

2.      The Eighth Stipulation, as attached hereby as Exhibit 1, is approved.  Subject to the modifications provided for and authorized by this Order, the Eighth Stipulation and the DIP Credit Agreement Amendment, the Final DIP Order and DIP Credit Agreement remain in full force and effect in accordance with their terms.  The Debtors and DIP Lender are authorized to enter into, perform, and consummate the transactions set forth in and contemplated under the Eighth Stipulation.  Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon its entry.   The Debtors and DIP Lender are authorized to take all actions that are necessary and appropriate to effectuate the relief granted in this Order.

3.      Effective at 11:59 p.m. on the fifth (5th) business day after the entry of this Order (the "Conversion Date"), pursuant to section 1112(a) of the Bankruptcy Code, the Debtors' chapter 11 cases shall be converted to cases under chapter 7 of the Bankruptcy Code.

4.      The following Conversion Procedures are hereby approved:

(a) **Books and Records.** As soon as reasonably practicable, but in no event more than fourteen (14) days after the appointment of the chapter 7 trustee, the Debtors shall turn over or provide access to the chapter 7 trustee the books and records of the Debtors in the Debtors' possession and control, as required by Bankruptcy Rule 1019. For purposes hereof, the Debtors may provide copies (including electronic copies) of such books and records to the chapter 7 trustee, or instructions for locating and accessing such books and records, and may retain copies of such books and records to the extent necessary to complete the reports required herein.

(b) **Schedule of Unpaid Debts.** Within thirty (30) days of the Conversion Date, the Debtors shall file a schedule of unpaid debts incurred after commencement of the Debtors' Chapter 11 Cases, including the name and address of each creditor, as required by Bankruptcy Rule 1019 (as modified herein).

(c) **Final Report**. Within thirty (30) days after the Conversion Date, the Debtors shall file and transmit to the chapter 7 trustee a final report and account in accordance with Bankruptcy Rule 1019.

(d) **Claims.** Within fourteen (14) days of the Conversion Date, Omni shall (i) forward to the Clerk of this Court an electronic version of all imaged claims, both as individual .pdf files for each claim and also in larger groups (i.e., images of multiple claims per file) that the Clerk may upload to CM/ECF as necessary; (ii) upload the consolidated creditor mailing list into CM/ECF and file the consolidated matrix in each jointly administered case in lieu of a separate matrix for each Debtor; (iii) docket a final claims register in the Debtors' chapter 11 cases; (iv) provide the Clerk and chapter 7 trustee (when appointed) with an excel spreadsheet of the claims; and (v) provide the Clerk and chapter 7 trustee (when appointed) access to the claims register maintained by Omni via a password protected link. Public access to Omni's case website will cease fourteen (14) days from the entry of this Order unless Omni is retained by the chapter 7 trustee within that time and court approval of its employment is promptly sought and obtained thereafter.

(e) **Professional Fees.** Professionals shall submit Final Fee Applications in accordance with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and orders of this Court by no later than thirty (30) days after the Conversion Date (the "Final Fee Application Deadline"). Objections, if any, to the Final Fee Applications shall be filed and served by no later than twenty-one (21) days after the Final Fee Application Deadline. A hearing to consider all timely filed Final Fee Applications, if needed, shall be scheduled by the Court following submission of Final Fee Applications.

5.      Subject to its compliance with the foregoing, on the Conversion Date, Omni shall be relieved of its responsibilities as the Debtors' claims and noticing agent and administrative agent in these chapter 11 cases and will have no further obligations to the Court, the Debtors, the interim or permanent chapter 7 trustee (once appointed), or any party in interest with respect to the Debtors' chapter 11 cases or the chapter 7 cases.

6.      The Debtors shall cause the funds in the Mediation Escrow (as that term is defined in the Ninth Amendment to Debtor-In-Possession Credit Agreement) to be remitted to counsel for the members of the Ad Hoc Committee of Consignors ($156,000.00) and counsel to the members of the Consignment Group ($144,000.00) for distribution to the consignors in their respective groups (collectively, the "Consignors").  These distributions shall be applied to each Consignors' asserted administrative claims under section 503 of the Bankruptcy Code accrued prior to May 15, 2025, subject to the rights of these Consignors to seek further or additional administrative claims, all without prejudice to JPMorgan Chase Bank, N.A.'s, the Debtors', the chapter 7 trustee's, and the Consignors' rights, claims, defenses, positions and liens raised or to be raised in any contested matters or adversary proceeding regarding the stock delivered to the Debtors by the Consignors. If it is determined in the pending litigation between the Debtors, Consignors and JPMorgan Chase Bank, N.A., or any related proceedings, that the Consignors' respective administrative claims should be partially or completely disallowed, then the Consignors shall promptly return the disallowed portion of their distributions under this paragraph to the Trustee or other representative of the bankruptcy estates, and such returned distributions shall be subject to JPMorgan Chase Bank, N.A.'s DIP Liens under the Final DIP Order—without the necessity of further filings or action by JPMorgan Chase Bank, N.A.

7.     Effective upon the date of this Order, all contested matters and adversary proceedings in the Debtors' bankruptcy cases are stayed until February 16, 2026.

8.     Other than the preservation of JPMorgan Chase Bank, N.A.'s liens on any distributions to be returned under paragraph 6 of this Order, nothing in paragraphs 3–8 of this Order or the conversion of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code shall affect or modify the terms of the Final DIP Order, prejudice any person or entity's rights thereunder or relieve any person or entity of obligations thereunder. All rights, claims, remedies, defenses and obligations under and in connection with the Final DIP Order shall be reserved and preserved in their entirety.

9.     The Court shall retain jurisdiction over disputes pertaining to this Order.

**END OF ORDER**

<u>Exhibit 1</u>

**Eighth Stipulation**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

**EIGHTH STIPULATION BETWEEN DEBTORS AND JPMORGAN CHASE BANK, N.A., AMENDING DIP CREDIT AGREEMENT**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") and JPMorgan Chase Bank, N.A. (the "DIP Lender", and together with the Debtors, the "Parties"), hereby stipulate and agree (this "Eighth Stipulation") as follows:

**WHEREAS**, on January 14, 2025, the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") and, since filing their petitions for relief, have continued to manage their businesses and assets as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**WHEREAS**, on February 19, 2025, the Bankruptcy Court entered its *Final Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [D.I. 163] (the "Final DIP Order") pursuant to which, among other things, the Debtors were

---

[1]    The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

granted authority to obtain senior secured postpetition financing pursuant to the terms and conditions of the Final DIP Order and that certain senior secured Debtor-in-Possession Credit Agreement, dated as of January 16, 2025 (as amended from time to time, the "DIP Credit Agreement").

**WHEREAS**, on March 19, 2025, the Bankruptcy Court entered the Order Approving Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement, on April 17, 2025, the Bankruptcy Court entered the Order Approving Second Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement, on May 1, 2025, the Bankruptcy Court entered the Order Approving Third Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement, on May 30, 2025, the Bankruptcy Court entered the Order Approving Fourth Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement, on July 3, 2025, the Bankruptcy Court entered the Order Approving Fifth Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement, on August 27, 2025, the Bankruptcy Court entered the Order Approving Sixth Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement, and on October 23, 2025, the Bankruptcy Court entered the Order Approving Seventh Stipulation Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement.

**WHEREAS**, the Debtors have requested, among other things, a further extension of the Maturity Date under the DIP Credit Agreement and Final DIP Order and limited and specified additional funding to bridge the Debtors' chapter 11 cases to conversion to cases under chapter 7 of the Bankruptcy Code.

**WHEREAS**, the DIP Lender is prepared to (i) consent to a short further extension of the Maturity Date to the date that the Debtors' chapter 11 cases convert to cases under chapter 7 (the

"Conversion Date"), (ii) to provide limited and specified additional funding in accordance with the DIP Credit Agreement Amendment for payment of specified administrative expenses before the Conversion Date, and (iii) amend, among other things, the definitions of Maturity Date and Maximum DIP Facility Amount under the DIP Credit Agreement and Final DIP Order—all in accordance with and subject to the terms of the DIP Credit Agreement Amendment (as defined below) and the terms and conditions of this Eighth Stipulation and the approval of the Bankruptcy Court.

**NOW, THEREFORE**, subject to the approval of the Bankruptcy Court, the Parties hereby stipulate and agree as follows

1.    The Parties shall enter into an amendment (the "DIP Credit Agreement Amendment") to the DIP Credit Agreement in the form of Exhibit A attached hereto, providing for, among other things, amended definitions of Maturity Date and Maximum DIP Facility Amount under the DIP Credit Agreement and Final DIP Order.  The Parties shall file the executed DIP Credit Agreement Amendment on the docket in these cases.

2.    The DIP Credit Agreement Amendment and the Debtors' related rights to borrow shall be deemed authorized and approved pursuant to section 364 of the Bankruptcy Code effective upon the Bankruptcy Court's entry of the Stipulation Order.

3.    Subject to the modifications provided for and authorized by the Stipulation Order, this Eighth Stipulation and the DIP Credit Agreement Amendment, the Final Order and DIP Credit Agreement remain in full force and effect in accordance with their terms, and the Debtors reaffirm and ratify all of such terms.

4.    Each Party is duly authorized and empowered to execute this Eighth Stipulation.

3

5.     The Bankruptcy Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Eighth Stipulation or the Stipulation Order.

6.     All of the recitals set forth above are incorporated by reference as if fully set forth herein.   This Eighth Stipulation constitutes the complete express agreement of the Parties concerning the subject matter hereof.

7.      Each Party has participated in and jointly consented to the drafting of this Eighth

Stipulation and any claimed ambiguity shall not be construed for or against either Party on account

of such drafting.

**SAUL EWING LLP**

*Jordan D. Rosenfeld*
Jordan D. Rosenfeld (MD Bar No. 13694)
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8600
Email: jordan.rosenfeld@saul.com

-and-

Jeffrey C. Hampton (admitted *pro hac vice*)
Adam H. Isenberg (admitted *pro hac vice*)
Turner N. Falk (admitted *pro hac vice*)
1735 Market Street, Suite 3400
Philadelphia, PA 19103
Telephone: (215) 972-7777
Email: jeffrey.hampton@saul.com
adam.isenberg@saul.com
turner.falk@saul.com

-and-

Mark Minuti (admitted *pro hac vice*)
Paige N. Topper (admitted *pro hac vice*)
Nicholas Smargiassi (admitted *pro hac vice*)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email: mark.minuti@saul.com
paige.topper@saul.com
nicholas.smargiassi@saul.com

*Counsel for Debtors and Debtors in Possession*

**TROUTMAN PEPPER LOCKE LLP**

*Jonathan W. Young*
Toyja E. Kelley
Indira K. Sharma
Jonathan W. Young
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004
Tel: (202) 274-2950
Email: Toyja.Kelley@troutman.com
Indira.Sharma@troutman.com
Jonathan.Young@troutman.com

-and-

David L. Ruediger
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 239-0100
Email: David.Ruediger@troutman.com

*Counsel for JPMorgan Chase Bank, N.A.*

# EXHIBIT A

**Tenth Amendment to DIP Credit Agreement**

**TENTH AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT**

This TENTH AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT, dated as of October 23, 2025 (this "Amendment"), is by and among debtor-in possession DIAMOND COMIC DISTRIBUTORS, INC., a Maryland corporation ("Diamond") as the "Borrower" (in such capacity, the "Borrower"), the other Loan Parties from time to time party to the DIP Credit Agreement referenced below, Stephen A. Geppi (the "Individual Guarantor"), and JPMORGAN CHASE BANK, N.A., as the "DIP Lender" (in such capacity, the "DIP Lender").

WHEREAS, reference is made to the Debtor-in-Possession Credit Agreement dated as of January 16, 2025 (as amended by that certain First Amendment to Debtor-in-Possession Credit Agreement, dated as of February 11, 2025, that certain Second Amendment to Debtor-in-Possession Credit Agreement dated as of February 25, 2025, that certain Third Amendment to Debtor-in-Possession Credit Agreement dated as of March 19, 2025, that certain Fourth Amendment to Debtor-in-Possession Credit Agreement, dated as of April 22, 2025, that certain Fifth Amendment to Debtor-in-Possession Credit Agreement dated as of April 30, 2025, that certain Sixth Amendment to Debtor-in-Possession Credit Agreement dated as of May 30, 2025, that certain Seventh Amendment to Debtor-in-Possession Credit Agreement dated as of June 30, 2025, that certain Eighth Amendment to Debtor-in-Possession Credit Agreement dated as of August 29, 2025, and that certain Ninth Amendment to Debtor-in-Possession Credit Agreement dated as of October 23, 2025, the "DIP Credit Agreement") by and among the Borrower, the other Loan Parties that are parties to the DIP Credit Agreement, the Individual Guarantor and the DIP Lender;

WHEREAS, capitalized terms used herein without definition shall have the meanings ascribed to such terms in the DIP Credit Agreement, as amended by this Amendment, as applicable; and

WHEREAS, the parties to the DIP Credit Agreement desire to amend certain provisions of the DIP Credit Agreement, all as more fully set forth herein;

NOW, THEREFORE, in consideration of the foregoing and the agreements contained herein, the parties hereby agree as follows:

1.    Amendments to the DIP Credit Agreement.  In reliance on the terms and conditions set forth in this Amendment, the DIP Lender hereby agrees with the Borrower, the other Loan Parties and the Individual Guarantor that the Definitions Schedule to the DIP Credit Agreement be, and it hereby is, amended as follows:

(a)    Amendments to Definitions Schedule.  The Definitions Schedule to the DIP Credit Agreement is hereby amended by amending and restating the defined terms "Maturity Date" and "Maximum DIP Facility Amount" to read as follows (with deleted text shown in the same manner as the following example: ~~deleted text~~ and with added text shown in the same manner as the following example: added text):

"Maturity Date" means, at the election of the DIP Lender, the earliest to occur of: (a) ~~the date on which the DIP Lender provides, via electronic or overnight mail, written notice to counsel for the Debtors and counsel for any Committee of the occurrence and continuance of an Event of Default; (b) the effective date of an Approved Plan; (c) the filing of any chapter 11 plan other than an Approved Plan by the Debtors or any party in interest; unless such plan contemplates the indefeasible payment in full in cash of the Aggregate Credit Obligations; (d) the date that the Bankruptcy Court orders (x)~~ the conversion of the Chapter 11 Cases

56920244.2

to Chapter 7 liquidations, or (b) ~~a dismissal of the Chapter 11 Cases; or (c) October 3, 2025~~ ~~November 15, 2025.~~December 29, 2025.

"Maximum DIP Facility Amount" means $6,500,000 ~~(a) during the period from (x) the date that the Bankruptcy Court in the Chapter 11 Cases shall have approved the amendments to the DIP Credit Agreement contemplated by this Amendment through (y) November 14, 2025 (the "Applicable Period"), $5,850,000; provided that, the DIP Lender, in its sole and absolute discretion, may agree to permit the Maximum DIP Facility Amount at any time during the Applicable Period to be increased to an amount not to exceed $6,435,000 (without any requirement for further approval of the Bankruptcy Court in the Chapter 11 Cases), and (b) at all times from and after November 14, 2025, $0.~~~~the applicable amounts set forth below during the applicable periods set forth below:~~

| ~~Applicable Period~~ | ~~Maximum DIP Facility Amount~~ |
|---|---|
| ~~August 23, 2025 through the date of consummation of the sale of the shares of DCDUK~~ | ~~$7,550,000~~ |
| ~~The date of consummation of the sale of the shares of DCDUK through August 30, 2025~~ | ~~$6,150,000~~ |
| ~~August 31, 2025 through September 6, 2025~~ | ~~$5,700,000~~ |
| ~~September 7, 2025 through September 27, 2025~~ | ~~$5,850,000~~ |
| ~~September 28, 2025 through October 3, 2025~~ | ~~$3,850,000~~ |
| ~~From and after October 4, 2025~~ | ~~$0~~ |

2.      Approved Budget; Variance Reports.   The updated Approved Budget attached as **Exhibit A** to this Amendment is hereby approved by the DIP Lender and shall constitute the "Approved Budget" for purposes of the DIP Credit Agreement and the Financing Order as in effect on the date of this Amendment and shall remain in effect through and including the Maturity Date. ~~until such time as further updated Budgets have been delivered to, and approved by, the DIP Lender, as provided in the Reporting Schedule to the DIP Credit Agreement.~~  On or before the 3rd day following the Maturity Date ~~close of business on Tuesday of each week~~, the Debtors shall provide to the DIP Lender ~~(i)~~ a variance report showing actual sources and uses of cash and the actual DIP beginning and ending balances for the period through and including the Maturity Date ~~such week~~, as compared to the amounts shown for such period ~~week~~ in the Approved Budget, together with such related information as reasonably requested by the DIP Lender ~~, and (ii) updated projections of sources and uses of cash and DIP beginning and ending balances for each of the following weeks through the Maturity Date.~~ The Debtors shall not be entitled to borrow or spend the amounts reflected in the Approved Budget or to make any other borrowings under the DIP Credit Agreement following the occurrence of the Maturity Date.

3.      Continuing Lien on Residual Assets.   Pursuant to the DIP Loan Documents and the Financing Order, at all times prior to and after the Maturity Date, the DIP Obligations shall continue to be secured by first priority liens on all assets of the Debtors and the other Loan Parties (other than those assets sold by the Debtors with the consent of the DIP Lender), including, without limitation, all of the Debtors' rights and interests in and to any holdback or escrow amounts, incentive fee payments or other contingent consideration that may from time to time be due and owing to the Debtors arising out of or relating to the

Sale Transaction, the Debtors' interests in any funds deposited by any Persons pursuant to the Bidding Procedures, the Debtors' claims against any Persons arising out of or relating to the Bidding Procedures or the Sale Transaction, any and all Avoidance Actions, and all other rights, claims and interests of the Debtors in and to any other assets of the Debtors or the other Loan Parties. Any and all amounts collected by the Debtors shall continue to be remitted to the Lender and used to pay down the balance owing under the DIP Credit Agreement.

4.     <u>Representations and Warranties, Etc.</u>  The Loan Parties hereby confirm that after giving effect to this Amendment, the representations and warranties of the Loan Parties set forth in <u>Article III</u> of the DIP Credit Agreement are true and correct in all material respects (provided that if any representation or warranty is by its terms qualified by concepts of materiality, such representation or warranty shall be true and correct in all respects) on and as of the date of this Amendment as if made on such date (except to the extent that such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall have been true and correct as of such earlier date).

5.     <u>Ratification, Confirmation and Acknowledgment</u>.  The Borrower, the other Loan Parties, and the Individual Guarantor hereby ratify and confirm all terms and provisions of the DIP Credit Agreement and the other Loan Documents and agree that all such terms and provisions, as amended hereby, remain in full force and effect.

6.     <u>Certain Conditions to this Amendment</u>.  This Amendment shall become effective on the date on which each of the following conditions is satisfied:

(a)     The DIP Lender shall have received (i) a counterpart of this Amendment signed on behalf of each party hereto or (ii) written evidence satisfactory to the DIP Lender (which may include telecopy or electronic mail transmission of a signed signature page to this Amendment) that each party hereto has signed a counterpart of this Amendment; and

(b)     The Bankruptcy Court in the Chapter 11 Cases shall have approved the amendments to the DIP Credit Agreement contemplated by this Amendment, including the Approved Budget and the extension of the Maturity Date of the DIP Credit Facility set forth herein.

7.     <u>Covenant Regarding Use of Cash Collateral and Proceeds of Additional Loans under the DIP Credit Agreement</u>.  The Borrower and the other Loan Parties covenant and agree that they will use Cash Collateral, and the proceeds of all additional Loans funded under the DIP Credit Agreement, solely to fund those expenses identified in the Approved Budget in the amounts and during the weekly periods set forth in the Approved Budget. ~~On the date that the Prepetition Letter of Credit has been returned to the DIP Lender and the cancellation thereof has become effective (the "Prepetition Letter of Credit Cancellation Date") : (a) the DIP Lender shall release from the LC and Commercial Card Collateral Account and apply to the prepayment of the outstanding Loans owing under the DIP Credit Agreement (i) $1,050,000 of cash securing the Prepetition Letter of Credit and (ii) $50,000 of cash securing credit card exposure that has been terminated; (b) the Borrower shall borrow a Loan under the DIP Credit Agreement in the amount of $300,000 to fund an escrow to be established by the Debtors for the benefit of certain consignment creditors that have agreed to participate in the global mediation to be held in the last week of October 2025 (the "Consignors Administrative Claim Escrow"); and (c) the Borrower shall be permitted to borrow additional Loans under the DIP Credit Agreement from time to time after the funding of the Consignors Administrative Claim Escrow, and to use the proceeds of such additional Loans to fund the expenditures described in the Approved Budget in the amounts and during the weekly periods set forth in the Approved Budget; provided that, after giving effect to the borrowing of the Loan to fund the Consignors Administrative Claims Escrow and the borrowing of any and all additional Loans under the DIP Credit Agreement to fund expenditures described in the Approved Budget, the aggregate principal amount of all~~

~~Loans outstanding under the DIP Credit Agreement shall not exceed the Maximum DIP Facility Amount.~~ In the event that any of the Loan Parties recover or collect additional assets and revenue beyond those reflected in the Approved Budget (the "<u>Additional Recoveries</u>"), those Additional Recoveries shall be subject to all of the rights, claims and liens provided in the DIP Credit Agreement, the Loan Documents and the Financing Order. ~~Further disposition of those Additional Recoveries will be subject to the agreement of the Debtors and DIP Lender and, to the extent required, further order of the Bankruptcy Court.~~

~~8.       Further Condition to the Funding of Additional Loans under the DIP Credit Agreement. Unless otherwise waived by the DIP Lender in its sole and absolute discretion, the DIP Lender shall have no obligation to fund the Loan to establish the Consignors Administrative Claim Escrow or any other additional Loans under the DIP Credit Agreement from and after the date of this Amendment (a) if the beneficiary of the Prepetition Letter of Credit shall draw upon the Prepetition Letter of Credit, (b) if the Prepetition Letter of Credit shall not have been returned to the DIP Lender for cancellation on or prior to October 24, 2025, or (c) unless each of Debtors, the Official Committee of Unsecured Creditors and their respective professionals (the "Professionals") shall have acknowledged and agreed, and the Bankruptcy Court in the Chapter 11 Cases shall have found and declared that: (i) pursuant to Section 16(e) of the Financing Order, the DIP Lender has no further obligation to make Loans under the DIP Credit Agreement or otherwise advance funds to pay any Professional Fees (as such term is defined in the Financing Order) or to reimburse any fees, expenses or other amounts owing to the Professionals, or to fund the Carve-Out Reserve Account (as defined in the Financing Order), whether pursuant to the Carve-Out, the delivery of the Carve-Out Notice or the occurrence of the Carve-Out Effective Date (as such terms are defined in the Financing Order) or otherwise; and (ii) any obligation under Section 16(b) of the Financing Order to replenish the Carve-Out Reserve Account following the delivery of the Carve-Out Notice or the occurrence of the Carve-Out Effective Date shall be an obligation of the Debtors and their estates only, and not an obligation of any kind whatsoever of the DIP Lender.~~

9.       <u>Miscellaneous</u>.

(a)       Except as otherwise expressly set forth herein, nothing herein shall be deemed to constitute an amendment, modification or waiver of any of the provisions of the DIP Credit Agreement or the other DIP Loan Documents, all of which remain in full force and effect as of the date hereof and are hereby ratified and confirmed.

(b)       This Amendment may be executed in any number of counterparts, each of which, when executed and delivered, shall be an original, but all counterparts shall together constitute one instrument. Delivery of an executed counterpart of a signature page of this Amendment by facsimile or electronic mail shall be equally effective as delivery of a manually executed counterpart of this Amendment.

(c)       This Amendment shall be governed by the laws of the State of New York and shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

(d)       This Amendment constitutes a "DIP Loan Document" as such term is defined in the DIP Credit Agreement.

(e)       The Borrower agrees to pay all reasonable and documented out-of-pocket expenses (including the reasonable legal fees and disbursements of Troutman Pepper Locke LLP, special US counsel to the DIP Lender), incurred by the DIP Lender in connection with this Amendment and the transactions contemplated hereby.

[Remainder of page intentionally left blank]

56920244.2

IN WITNESS WHEREOF, the parties hereto have executed this Ninth Amendment to Debtor-in-Possession Credit Agreement, which shall be deemed to be a sealed instrument as of the date first above written.

<u>BORROWER</u>:

**DIAMOND COMIC DISTRIBUTORS, INC.**

By:_____
Name:
Title:

**<u>OTHER LOAN PARTIES</u>:**

**COMIC EXPORTERS, INC.**

By:_____
Name:
Title:

**COMIC HOLDINGS, INC.**

By:_____
Name:
Title:

**DIAMOND SELECT TOYS AND COLLECTIBLES, LLC**

By:_____
Name:
Title:

56920244.2

**ROSEBUD ENTERTAINMENT, LLC**

By:_____
Name:
Title:

**RENEGADE GAMES, LLC**

By:_____
Name:
Title:

**GAME CONSOLIDATORS, LLC**

By:_____
Name:
Title:

**<u>INDIVIDUAL GUARANTOR</u>:**


_____
Stephen A. Geppi, individually

**DIP LENDER**:


**JPMORGAN CHASE BANK, N.A.**


By:_____
Name:
Title:

**<u>Exhibit A</u>**

**Approved Budget**

[See Attached]

| Case Transition Budget | Amount |
|---|---:|
| Claims Agent - Omni (Agent of the Court) | (36,508) |
| Claims Agent - Omni (Noticing of Conversion) | (10,000) |
| Employee Insurance Claims | (1,250) |
| KEIP/KERP | (193,250) |
| Professional Fees - Committee Catch Up | (30,000) |
| Professional Fees - Debtor Catch Up | (150,000) |
| Post Termination Carve Out | (225,000) |
| Sales Tax & Preparation Fees | (20,000) |
| Nov Storage Fees - Consignment | (128,286) |
| **Total Expenses** | **(794,294)** |
| | |
| Beginning Cash Balance | 296,649 |
| Use of Cash | (794,294) |
| **Ending Cash Balance** | **(497,645)** |

**Sparkle Pop incentive Payment due 12/17/2025 - not factored into Adjusted Ending Balance