**Exhibit A**

Tenth Amendment to Debtor-In-Possession Credit Agreement

56991465.1

**TENTH AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT**

This TENTH AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT, dated as of December 23, 2025 (this "Amendment"), is by and among debtor-in possession DIAMOND COMIC DISTRIBUTORS, INC., a Maryland corporation ("Diamond") as the "Borrower" (in such capacity, the "Borrower"), the other Loan Parties from time to time party to the DIP Credit Agreement referenced below, Stephen A. Geppi (the "Individual Guarantor"), and JPMORGAN CHASE BANK, N.A., as the "DIP Lender" (in such capacity, the "DIP Lender").

WHEREAS, reference is made to the Debtor-in-Possession Credit Agreement dated as of January 16, 2025 (as amended by that certain First Amendment to Debtor-in-Possession Credit Agreement, dated as of February 11, 2025, that certain Second Amendment to Debtor-in-Possession Credit Agreement dated as of February 25, 2025, that certain Third Amendment to Debtor-in-Possession Credit Agreement dated as of March 19, 2025, that certain Fourth Amendment to Debtor-in-Possession Credit Agreement, dated as of April 22, 2025, that certain Fifth Amendment to Debtor-in-Possession Credit Agreement dated as of April 30, 2025, that certain Sixth Amendment to Debtor-in-Possession Credit Agreement dated as of May 30, 2025, that certain Seventh Amendment to Debtor-in-Possession Credit Agreement dated as of June 30, 2025, that certain Eighth Amendment to Debtor-in-Possession Credit Agreement dated as of August 29, 2025, and that certain Ninth Amendment to Debtor-in-Possession Credit Agreement dated as of October 23, 2025, the "DIP Credit Agreement") by and among the Borrower, the other Loan Parties that are parties to the DIP Credit Agreement, the Individual Guarantor and the DIP Lender;

WHEREAS, capitalized terms used herein without definition shall have the meanings ascribed to such terms in the DIP Credit Agreement, as amended by this Amendment, as applicable; and

WHEREAS, the parties to the DIP Credit Agreement desire to amend certain provisions of the DIP Credit Agreement, all as more fully set forth herein;

NOW, THEREFORE, in consideration of the foregoing and the agreements contained herein, the parties hereby agree as follows:

1.  Amendments to the DIP Credit Agreement. In reliance on the terms and conditions set forth in this Amendment, the DIP Lender hereby agrees with the Borrower, the other Loan Parties and the Individual Guarantor that the Definitions Schedule to the DIP Credit Agreement be, and it hereby is, amended as follows:

    (a)  Amendments to Definitions Schedule. The Definitions Schedule to the DIP Credit Agreement is hereby amended by amending and restating the defined terms "Maturity Date" and "Maximum DIP Facility Amount" to read as follows (with deleted text shown in the same manner as the following example: ~~deleted text~~ and with added text shown in the same manner as the following example: <u>added text</u>):

    "Maturity Date" means, at the election of the DIP Lender, the earliest to occur of: (a) ~~the date on which the DIP Lender provides, via electronic or overnight mail, written notice to counsel for the Debtors and counsel for any Committee of the occurrence and continuance of an Event of Default; (b) the effective date of an Approved Plan; (c) the filing of any chapter 11 plan other than an Approved Plan by the Debtors or any party in interest; unless such plan contemplates the indefeasible payment in full in cash of the Aggregate Credit Obligations; (d) the date that the Bankruptcy Court orders (x)~~ the conversion of the Chapter 11 Cases

250561683v1

to Chapter 7 liquidations, or (b) a dismissal of the Chapter 11 Cases; or (c) October 3, 2025 November 15, 2025.December 29, 2025.

"Maximum DIP Facility Amount" means $6,500,000 (a) during the period from (x) the date that the Bankruptcy Court in the Chapter 11 Cases shall have approved the amendments to the DIP Credit Agreement contemplated by this Amendment through (y) November 14, 2025 (the "Applicable Period"), $5,850,000; provided that, the DIP Lender, in its sole and absolute discretion, may agree to permit the Maximum DIP Facility Amount at any time during the Applicable Period to be increased to an amount not to exceed $6,435,000 (without any requirement for further approval of the Bankruptcy Court in the Chapter 11 Cases), and (b) at all times from and after November 14, 2025, $0.the applicable amounts set forth below during the applicable periods set forth below:

| Applicable Period | Maximum DIP Facility Amount |
|---|---|
| August 23, 2025 through the date of consummation of the sale of the shares of DCDUK | $7,550,000 |
| The date of consummation of the sale of the shares of DCDUK through August 30, 2025 | $6,150,000 |
| August 31, 2025 through September 6, 2025 | $5,700,000 |
| September 7, 2025 through September 27, 2025 | $5,850,000 |
| September 28, 2025 through October 3, 2025 | $3,850,000 |
| From and after October 4, 2025 | $0 |

2.  Approved Budget; Variance Reports.  The updated Approved Budget attached as **Exhibit A** to this Amendment is hereby approved by the DIP Lender and shall constitute the "Approved Budget" for purposes of the DIP Credit Agreement and the Financing Order as in effect on the date of this Amendment and shall remain in effect through and including the Maturity Date. until such time as further updated Budgets have been delivered to, and approved by, the DIP Lender, as provided in the Reporting Schedule to the DIP Credit Agreement.  On or before the 3rd day following the Maturity Date close of business on Tuesday of each week, the Debtors shall provide to the DIP Lender (i) a variance report showing actual sources and uses of cash and the actual DIP beginning and ending balances for the period through and including the Maturity Date such week, as compared to the amounts shown for such period week in the Approved Budget, together with such related information as reasonably requested by the DIP Lender., and (ii) updated projections of sources and uses of cash and DIP beginning and ending balances for each of the following weeks through the Maturity Date.  The Debtors shall not be entitled to borrow or spend the amounts reflected in the Approved Budget or to make any other borrowings under the DIP Credit Agreement following the occurrence of the Maturity Date.

3.  Continuing Lien on Residual Assets.  Pursuant to the DIP Loan Documents and the Financing Order, at all times prior to and after the Maturity Date, the DIP Obligations shall continue to be secured by first priority liens on all assets of the Debtors and the other Loan Parties (other than those assets sold by the Debtors with the consent of the DIP Lender), including, without limitation, all of the Debtors' rights and interests in and to any holdback or escrow amounts, incentive fee payments or other contingent consideration that may from time to time be due and owing to the Debtors arising out of or relating to the

Sale Transaction, the Debtors' interests in any funds deposited by any Persons pursuant to the Bidding Procedures, the Debtors' claims against any Persons arising out of or relating to the Bidding Procedures or the Sale Transaction, any and all Avoidance Actions, and all other rights, claims and interests of the Debtors in and to any other assets of the Debtors or the other Loan Parties. Any and all amounts collected by the Debtors shall continue to be remitted to the Lender and used to pay down the balance owing under the DIP Credit Agreement.

4. <u>Representations and Warranties, Etc</u>. The Loan Parties hereby confirm that after giving effect to this Amendment, the representations and warranties of the Loan Parties set forth in <u>Article III</u> of the DIP Credit Agreement are true and correct in all material respects (provided that if any representation or warranty is by its terms qualified by concepts of materiality, such representation or warranty shall be true and correct in all respects) on and as of the date of this Amendment as if made on such date (except to the extent that such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall have been true and correct as of such earlier date).

5. <u>Ratification, Confirmation and Acknowledgment</u>. The Borrower, the other Loan Parties, and the Individual Guarantor hereby ratify and confirm all terms and provisions of the DIP Credit Agreement and the other Loan Documents and agree that all such terms and provisions, as amended hereby, remain in full force and effect.

6. <u>Certain Conditions to this Amendment</u>. This Amendment shall become effective on the date on which each of the following conditions is satisfied:

   (a) The DIP Lender shall have received (i) a counterpart of this Amendment signed on behalf of each party hereto or (ii) written evidence satisfactory to the DIP Lender (which may include telecopy or electronic mail transmission of a signed signature page to this Amendment) that each party hereto has signed a counterpart of this Amendment; and

   (b) The Bankruptcy Court in the Chapter 11 Cases shall have approved the amendments to the DIP Credit Agreement contemplated by this Amendment, including the Approved Budget and the extension of the Maturity Date of the DIP Credit Facility set forth herein.

7. <u>Covenant Regarding Use of Cash Collateral and Proceeds of Additional Loans under the DIP Credit Agreement.</u> The Borrower and the other Loan Parties covenant and agree that they will use Cash Collateral, and the proceeds of all additional Loans funded under the DIP Credit Agreement, solely to fund those expenses identified in the Approved Budget in the amounts and during the weekly periods set forth in the Approved Budget. ~~On the date that the Prepetition Letter of Credit has been returned to the DIP Lender and the cancellation thereof has become effective (the "Prepetition Letter of Credit Cancellation Date") : (a) the DIP Lender shall release from the LC and Commercial Card Collateral Account and apply to the prepayment of the outstanding Loans owing under the DIP Credit Agreement (i) $1,050,000 of cash securing the Prepetition Letter of Credit and (ii) $50,000 of cash securing credit card exposure that has been terminated; (b) the Borrower shall borrow a Loan under the DIP Credit Agreement in the amount of $300,000 to fund an escrow to be established by the Debtors for the benefit of certain consignment creditors that have agreed to participate in the global mediation to be held in the last week of October 2025 (the "Consignors Administrative Claim Escrow"); and (c) the Borrower shall be permitted to borrow additional Loans under the DIP Credit Agreement from time to time after the funding of the Consignors Administrative Claim Escrow, and to use the proceeds of such additional Loans to fund the expenditures described in the Approved Budget in the amounts and during the weekly periods set forth in the Approved Budget; provided that, after giving effect to the borrowing of the Loan to fund the Consignors Administrative Claims Escrow and the borrowing of any and all additional Loans under the DIP Credit Agreement to fund expenditures described in the Approved Budget, the aggregate principal amount of all~~

3

~~Loans outstanding under the DIP Credit Agreement shall not exceed the Maximum DIP Facility Amount.~~ In the event that any of the Loan Parties recover or collect additional assets and revenue beyond those reflected in the Approved Budget (the "Additional Recoveries"), those Additional Recoveries shall be subject to all of the rights, claims and liens provided in the DIP Credit Agreement, the Loan Documents and the Financing Order. ~~Further disposition of those Additional Recoveries will be subject to the agreement of the Debtors and DIP Lender and, to the extent required, further order of the Bankruptcy Court.~~

~~8. Further Condition to the Funding of Additional Loans under the DIP Credit Agreement. Unless otherwise waived by the DIP Lender in its sole and absolute discretion, the DIP Lender shall have no obligation to fund the Loan to establish the Consignors Administrative Claim Escrow or any other additional Loans under the DIP Credit Agreement from and after the date of this Amendment (a) if the beneficiary of the Prepetition Letter of Credit shall draw upon the Prepetition Letter of Credit, (b) if the Prepetition Letter of Credit shall not have been returned to the DIP Lender for cancellation on or prior to October 24, 2025, or (c) unless each of Debtors, the Official Committee of Unsecured Creditors and their respective professionals (the "Professionals") shall have acknowledged and agreed, and the Bankruptcy Court in the Chapter 11 Cases shall have found and declared that: (i) pursuant to Section 16(e) of the Financing Order, the DIP Lender has no further obligation to make Loans under the DIP Credit Agreement or otherwise advance funds to pay any Professional Fees (as such term is defined in the Financing Order) or to reimburse any fees, expenses or other amounts owing to the Professionals, or to fund the Carve-Out Reserve Account (as defined in the Financing Order), whether pursuant to the Carve-Out, the delivery of the Carve-Out Notice or the occurrence of the Carve-Out Effective Date (as such terms are defined in the Financing Order) or otherwise; and (ii) any obligation under Section 16(b) of the Financing Order to replenish the Carve-Out Reserve Account following the delivery of the Carve-Out Notice or the occurrence of the Carve-Out Effective Date shall be an obligation of the Debtors and their estates only, and not an obligation of any kind whatsoever of the DIP Lender.~~

9. <u>Miscellaneous</u>.

(a) Except as otherwise expressly set forth herein, nothing herein shall be deemed to constitute an amendment, modification or waiver of any of the provisions of the DIP Credit Agreement or the other DIP Loan Documents, all of which remain in full force and effect as of the date hereof and are hereby ratified and confirmed.

(b) This Amendment may be executed in any number of counterparts, each of which, when executed and delivered, shall be an original, but all counterparts shall together constitute one instrument. Delivery of an executed counterpart of a signature page of this Amendment by facsimile or electronic mail shall be equally effective as delivery of a manually executed counterpart of this Amendment.

(c) This Amendment shall be governed by the laws of the State of New York and shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

(d) This Amendment constitutes a "DIP Loan Document" as such term is defined in the DIP Credit Agreement.

(e) The Borrower agrees to pay all reasonable and documented out-of-pocket expenses (including the reasonable legal fees and disbursements of Troutman Pepper Locke LLP, special US counsel to the DIP Lender), incurred by the DIP Lender in connection with this Amendment and the transactions contemplated hereby.

IN WITNESS WHEREOF, the parties hereto have executed this Tenth Amendment to Debtor-in-Possession Credit Agreement, which shall be deemed to be a sealed instrument as of the date first above written.

BORROWER:

**DIAMOND COMIC DISTRIBUTORS, INC.**

By: _/s/ Robert Gorin_
Name: ROBERT GORIN
Title: Chief Restructuring Officer

OTHER LOAN PARTIES:

**COMIC EXPORTERS, INC.**

By: _/s/ Robert Gorin_
Name: ROBERT GORIN
Title: Chief Restructuring Officer

**COMIC HOLDINGS, INC.**

By: _/s/ Robert Gorin_
Name: ROBERT GORIN
Title: Chief Restructuring Officer

**DIAMOND SELECT TOYS AND COLLECTIBLES, LLC**

By: _/s/ Robert Gorin_
Name: ROBERT GORIN
Title: Chief Restructuring Officer

**ROSEBUD ENTERTAINMENT, LLC**

By: _____
Name:
Title:

**RENEGADE GAMES, LLC**

By: _____
Name:
Title:

**GAME CONSOLIDATORS, LLC**

By: _____
Name:
Title:

**INDIVIDUAL GUARANTOR:**

_____
Stephen A. Geppi, individually

[Signature Page to Tenth Amendment to DIP Credit Agreement]

DIP LENDER:

**JPMORGAN CHASE BANK, N.A.**

By: _____
Name: Angela Leake
Title:   Authorized Officer

[Signature Page to Tenth Amendment to DIP Credit Agreement]

**<u>Exhibit A</u>**

**Approved Budget**

[See Attached]

| Case Transition Budget | Amount |
|---|---|
| Claims Agent - Omni (Agent of the Court) | (36,508) |
| Claims Agent - Omni (Noticing of Conversion) | (10,000) |
| Employee Insurance Claims | (1,250) |
| KEIP/KERP | (193,250) |
| Professional Fees - Committee Catch Up | (30,000) |
| Professional Fees - Debtor Catch Up | (150,000) |
| Post Termination Carve Out | (225,000) |
| Sales Tax & Preparation Fees | (20,000) |
| Nov Storage Fees - Consignment | (128,286) |
| **Total Expenses** | **(794,294)** |
| Beginning Cash Balance | 296,649 |
| Use of Cash | (794,294) |
| **Ending Cash Balance** | **(497,645)** |

\*\*Sparkle Pop incentive Payment due 12/17/2025 - not factored into Adjusted Ending Balance