## **Exhibit B**

D&O Policy

PREMIUM BILL

Date: April 5, 2024

Insured:    DIAMOND COMIC DISTRIBUTORS INC.

Producer:

11403 CRONRIDGE DRIVE
SUITE 270
OWINGS MILLS, MD 21117

Company:    Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Policy Number:    J06607044

Policy Period:    04-01-2024 to 04-01-2025

NOTE: PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE. PLEASE REFER TO J06607044

| Product | Effective Date | Premium |
|---|---|---|
| The ForeFront Portfolio | 04-01-2024 | $6,838.00 |

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $6,838.00 |

WHEN REMITTING PLEASE INDICATE POLICY OR CERTIFICATE NUMBER

Form 26-10-0426 (Ed. 2/98)

 **CHUBB**®

*The ForeFront Portfolio*<sup>SM</sup>
*for Private Companies*

**DECLARATIONS**

**Policy Number: J06607044**

**FEDERAL INSURANCE COMPANY**
Incorporated under the laws of Indiana, a stock
insurance company, herein called the Company

One American Square 202 N Illinois Street, Suite 2600
Indianapolis, IN 46282

**NOTICE: THE LIABILITY COVERAGE PARTS PROVIDE CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "MATTERS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY "LOSS" WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY. READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.  Parent Organization**:

DIAMOND COMIC DISTRIBUTORS INC.

10150 York Rd

Hunt Valley, MD 21030

**Item 2.  Policy Period**:

From:  April 1, 2024  To:  April 1, 2025

At 12:01 AM local time at the address shown above.

**Item 3.  Extended Reporting Period:**

(A)    Additional Period:  1 Year(s)

(B)    Additional Premium:  100% of Annualized Premium

**Item 4.  Coverage(s) Applicable to this Policy:**

☒ Directors & Officers and Entity Liability Coverage Part

☐ Employment Practices Liability Coverage Part

☐ Fiduciary Liability Coverage Part

☐ Crime Coverage Part

☐ Kidnap, Ransom & Extortion Coverage Part

☐ Employed Lawyers Liability Coverage Part

☐ Workplace Violence Expense Coverage Part



*The ForeFront Portfolio*<sup>SM</sup>
*for Private Companies*

## DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

(A)     Aggregate Limit of Liability:  $1,000,000

        Sublimit for **Securityholder Inquiry** Coverage:  $500,000

(B)     Aggregate Limit of Liability in (A) above shall be shared with:

        ☐ Employment Practices Liability  ☐ Fiduciary Liability  ☐ Employed Lawyers Liability

(C)     Additional Limit of Liability Dedicated for **Executives**:  $500,000

(D)     Retentions:

        (1)     No Retention is applicable to Insuring Clause (A)

        (2)     Insuring Clauses (B) & (C):  $15,000

(E)     Pending or Prior Proceedings Date:  April 1, 2024

(F)     Defense:  Duty to Defend by Chubb


IN WITNESS WHEREOF, the Company issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.


### Federal Insurance Company

———————————————
Secretary

———————————————
President

———————————————
April 5, 2024
Date

———————————————
Authorized Representative

**CHUBB**®

# SCHEDULE OF FORMS

To be attached to and form part of
Policy Number:  J06607044

Company:    Federal Insurance Company

Policy Period :
04-01-2024 to 04-01-2025

Issued to:    DIAMOND COMIC DISTRIBUTORS
INC.

| Form Number | Edition Date | Form Title |
|---|---|---|
| PF-55501D | (07/21) | THE CHUBB ForeFront Insurance Declarations |
| 10-02-1281MD | (06/15) | Terrorism Policyholder Disclosure Notice - Maryland |
| 14-02-23030 | (05/18) | Notice of Loss Control Services |
| 99-10-0460B | (08/19) | Notice to Policyholders |
| ALL-20887a | (09/19) | Chubb Producer Compensation Practices and Policies |
| ALL-21101 | (09/19) | Trade or Economic Sanctions Notice |
| ALL-52556 | (09/19) | Maryland Notice of Premium Recalculation |
| ALL-52557 | (09/19) | Maryland Notice of Underwriting Period |
| PF-17914a | (04/16) | U.S. Treasury Departments Office of Foreign Assets Control - OFAC - Advisory Notice to Policyholders |

General Terms and Conditions

| | | |
|---|---|---|
| PF-55501 | (07/21) | GENERAL TERMS AND CONDITIONS POLICY FORM |
| PF-55965 | (07/21) | MARYLAND AMENDATORY ENDORSEMENT |
| ALL-52004 | (05/20) | Cap On Losses From Certified Acts Of Terrorism |

Directors & Officers and Entity Liability Coverage Part

| | | |
|---|---|---|
| PF-55502 | (07/21) | DIRECTORS AND OFFICERS AND ENTITY LIABILITY FOR PRIVATE COMPANIES COVERAGE PART POLICY FORM |
| PF-54799 | (07/21) | SECURITYHOLDER EXCLUSION ENDORSEMENT |

**POLICYHOLDER DISCLOSURE**
**NOTICE OF**
**TERRORISM INSURANCE COVERAGE (for**
**policies with no terrorism exclusion or sublimit)**
**Insuring Company: Federal Insurance**
**Company**

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), this policy makes available to you insurance for losses arising out of certain acts of terrorism.  Terrorism is defined as any act certified by the Secretary of the Treasury of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human  life, property  or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act.  Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

# Notice of Loss Control Services

Insuring Company: Federal Insurance Company

As a Chubb policyholder, you have loss prevention information and/or services available to you, as listed in this Notice. You may order any brochure by email to formsordering@chubb.com  and to view our full suite of loss prevention brochures/services go to www.chubb.com/us/fl-lossprevention

## Directors and Officers (D&O) Liability Loss Prevention Services

- ***Directors and Officers Liability Loss Prevention* Manuals:**
  Directors and Officers Liability Loss Preventions – #14-01-0035
  Directors and Officers Securities Litigation Loss Preventions – #14-01-0448
  Director Liability Loss Prevention in Mergers and Acquisitions – #14-01-1099
  Directors and Officers Liability Loss Prevention for Not-for-Profit- -#14-01-0036
  Cyber Loss Mitigation for Directors -#14-01-1199

## Employment Practices Liability (EPL) Loss Prevention Services

- **Toll-free Hot Line**

  Have a question on how to handle an employment situation? Simply call **1.888.249.8425** to access the nationally known employment law firm of Jackson Lewis P.C. We offer customers an unlimited number of calls to the hot line at no additional charge.

- **ChubbWorks.com**
  ChubbWorks.com is a web-based platform that offers multiple services including overviews of employment laws, sample employment policies and procedures, and on-line training. To gain immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy number.

- ***Employment Practices Loss Prevention Guidelines* Manual**

  *Employment Practices Loss Prevention Guidelines - #14-01-0061*

- **Loss Prevention Consultant Services**

  Chubb has developed a network of more than 120 law firms, human resources consulting firms, and labor economist/statistical firms that offer specialized services for employment issues.

- **Public Company EPL Customers**

  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues faced by for-profit companies and offers proactive idea for avoiding employment lawsuits.

- **Private Company EPL Customers**
  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues for –profit companies and offers proactive idea for avoiding employment lawsuits.

**Fiduciary Liability Loss Prevention Services**

- **Fiduciary Liability Loss Prevention Manual**
  Who May Sue You and Why: How to Reduce Your ERISA Risks and the Role of Fiduciary
  Liability Insurance #14-01-1019

**Crime Loss Prevention Services**

- **Crime/Kidnap, Ransom & Extortion Loss Prevention Manual**

  Preventing Fraud: How Anonymous Hotlines Can Help #14-01-1090

**Cyber Security Loss Prevention Services**

Visit: https://www2.chubb.com/us-en/business-insurance/cyber-security.aspx to learn more
about Chubb's Cyber Services for our policyholders.

**Health Care Directors and Officers (D&O) Liability Loss Prevention Services**

- **Readings in Health Care Governance Manual**
  Readings in Health Care Governance -#14-01-0788

- **ChubbWorks.com**
  ChubbWorks.com for Health Care Organizations – The Health Care Zone is a free online
  resource containing health care specific loss prevention information for employment practices
  liability, directors and officers (D&O) liability, and fiduciary liability exposures. To gain
  immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy
  number.

- **Health Care D&O Loss Prevention Consultant Services**
  Health Care D& O Loss Prevention Consultant Services- #14-01-1164

--------------------
The services provided are advisory in nature. While this program is offered as a resource in
developing or maintaining a loss prevention program, you should consult competent legal counsel
to design and implement your own program. No liability is assumed by reason of the services,
access or information provided. All services are subject to change without notice.

    **Notice to Policyholders**

Insuring Company:  Federal Insurance Company

Enclosed is your commercial insurance policy from Chubb.  The bill that corresponds with this policy has been mailed separately.  When you receive the bill, please pay the amount due by the date indicated.  Payment should be made directly to Chubb.  As always, prompt payment will keep your coverage in place.

If you have any questions about the attached policy or need assistance with additional insurance, contact your agent or broker.  For questions about billing, call our Premium Accounting Service Center at 1-800-372-4822. Thank you for insuring through Chubb.



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at  http://www.chubbproducercompensation.com  or  by  calling  the  following  toll-free  telephone number:

1-866-512-2862.



**Trade or Economic
Sanctions Notice**

---

## TRADE OR ECONOMIC SANCTIONS NOTICE

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.  All other terms and conditions of the policy remain unchanged.



**MARYLAND**

**NOTICE OF PREMIUM RECALCULATION**

**Your binder or policy is subject to a 45 day underwriting period beginning on the effective date of coverage. In accordance with Maryland Insurance Article § 12-106, we may recalculate your premium from the effective date of the policy during this underwriting period if we determine that your policy does not meet our underwriting standards.**



**MARYLAND**
**NOTICE OF UNDERWRITING PERIOD**

Your binder or policy is subject to a 45 day underwriting period beginning on the effective date of coverage.  In accordance with Maryland Ins. S 12-106, we may cancel your binder or policy during this underwriting period if we determine that your policy does not meet our underwriting standards.



# U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders

This Policyholder Notice shall not be construed as part of your policy and no coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

CHUBB

*The ForeFront Portfolio^{SM}*
*General Terms and Conditions*

**In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this Policy, the Company and the Insureds agree as follows:**

## I.    TERMS AND CONDITIONS

Except for these General Terms and Conditions or unless stated to the contrary in any Coverage Part, the terms and conditions of each Coverage Part apply only to that Coverage Part.  If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.  All bolded terms in these General Terms and Conditions that are not defined under Section II, Definitions shall have the meaning set forth in the applicable Coverage Part.

## II.    DEFINITIONS

**Application** means any portion of an application given to the Company for this Policy, including any attachments, written information, representations or materials provided to the Company by, or on behalf of, an **Insured** during the negotiation of this Policy or for the purposes of the Company's underwriting of this Policy.

**Foreign Jurisdiction** means any jurisdiction, other than the United States of America.

**Global Law** means:

(A)    United States federal, state, and local statutory law and any rule or regulation promulgated thereunder, all as amended;

(B)    United States common law; and

(C)    with respect to Subsections (A) and (B) above, any equivalent body of law in a **Foreign Jurisdiction**.

**Liability Coverage Part** means the Directors & Officers and Entity Liability ("D&O"), Employment Practices Liability ("EPL"), Fiduciary Liability ("FL") and Employed Lawyers Liability ("ELL") Coverage Parts, if purchased as set forth in Item 4, Coverage(s) Applicable to this Policy, of the Declarations.

**Non-Liability Coverage Part** means the Crime ("Crime"), Kidnap, Ransom & Extortion ("KRE") and Workplace Violence Expense ("WPV") Coverage Parts, if purchased as set forth in Item 4, Coverage(s) Applicable to this Policy, of the Declarations.

**Organization** means the **Parent Organization** and any **Subsidiary**. **Organization** shall also mean any such entity as a debtor in possession or the equivalent thereof in a **Foreign Jurisdiction**.

**Parent Organization** means the entity named in Item 1 of the Declarations.

**Policy Period** means the period of time set forth in Item 2 of the Declarations (subject to any termination in accordance with Section XIX, Termination of Policy) and the Extended Reporting Period, if applicable.

**Related** means based upon, arising from or in consequence of the same or related, or the same or related series of, facts, circumstances, transactions, situations, events or **Wrongful Acts**.

**Subsidiary** means:

(A)    any entity while the **Parent Organization**, directly or indirectly through one or more **Subsidiaries**:

(1)    owns or controls more than fifty percent (50%) of the outstanding securities or voting rights representing the present right; or

CHUBB                                                                    *General Terms and Conditions*

(2)    has the right, pursuant to either written contract or the by-laws, charter, operating agreement or similar documents of an **Organization**,

to elect, appoint or exercise a majority control over such entity's directors, trustees, manager, member of the Board of Managers, or the functional or foreign equivalent positions of such entity;

(B)    any entity while the **Parent Organization**, directly or indirectly through one or more **Subsidiaries**:

(1)    owns or controls exactly fifty percent (50%) of the outstanding securities or voting rights representing the present right to elect, appoint or exercise a majority control over such entity's directors, trustees, manager, member of the Board of Managers, or the functional or foreign equivalent positions of such entity; and

(2)    has the right, pursuant to either written contract or the by-laws, charter, operating agreement or similar documents of an **Organization** to solely control the management and operation of such entity; or

(C)    any foundation or charitable trust while such entity is controlled by the **Parent Organization**;

However, with respect to the D&O for Not-for-Profit Organizations Coverage Part (if purchased), **Subsidiary** shall not include any for-profit entity or chapter of the **Parent Organization** unless added by Endorsement.

## III.    LIMIT OF LIABILITY

(A)    With respect to the **Liability Coverage Parts**:

(1)    The Company's maximum aggregate liability for each **Liability Coverage Part** shall be the applicable Aggregate Limit of Liability set forth in Item 4(A) of the Declarations: (a) subject to any Sublimits; and (b) excess of any applicable Retention.

(2)    Subject to Paragraph (A)(1) above, if the Limit of Liability of any Coverage Part is designated as shared in Item 4(B) of the Declarations ("Shared Coverage Part"), then the Company's Limit of Liability for each Shared Coverage Part shall be part of, and not in addition to, all other Shared Coverage Parts and shall reduce and may exhaust the Limit of Liability for each Shared Limit of Liability.

(3)    Subject to Paragraphs (A)(1) and (A)(2) above, all **Defense Costs** are part of, and not in addition to, the applicable Aggregate Limit of Liability for each **Liability Coverage Part** and payment by the Company of **Defense Costs** shall reduce and may exhaust such Limits of Liability.

(4)    If different parts of a **Matter** are subject to different Sublimits under this Policy, then the amount of **Loss** applicable to such Sublimits shall not exceed the largest applicable Sublimit.

(B)    With respect to the **Non-Liability Coverage Parts**, the Company's maximum liability shall be the applicable Limits of Liability set forth in the Crime, KRE and WPV portions of the Declarations and shall apply as provided in such **Non-Liability Coverage Part**.

## IV.    RETENTION

(A)    With respect to the **Liability Coverage Parts**:

(1)    The Retentions shall apply as set forth in the Declarations and shall only apply to covered **Loss**. Retentions shall be borne uninsured by the **Insureds** and at their own risk.

(2)    If different parts of a **Matter** are subject to different Retentions in different Insuring Clauses, Coverage Extensions or Coverage Parts, the applicable Retentions shall be applied separately to each part of such **Matter**, but the sum of such Retentions shall not exceed the largest applicable Retention.

CHUBB                                                    *General Terms and Conditions*

(3)    No Retention shall apply to **Loss** incurred by an **Insured Person** if such **Loss** cannot be indemnified by an **Organization** because such **Organization** is not permitted to indemnify by any **Global Law**, or is permitted or required to indemnify, but is unable to do so by reason of **Financial Impairment**.

(4)    Except as otherwise provided in this Policy, coverage for any **Matter** (other than a **Claim** or **Derivative Demand Investigation**) shall only apply in excess of the Retention applicable if such **Matter** was a **Claim**.

(B)    With respect to the **Non-Liability Coverage Parts:**

(1)    The Company's liability shall apply only to that part of each covered loss which is in excess of the applicable Retention set forth in the Crime, KRE and WPV portions of the Declarations, if applicable.

(2)    If an **Insured** receives payment under another insurance policy or bond, after application of any deductible or retention thereunder, for loss also covered hereunder, then the applicable Retention set forth in the Crime, KRE and WPV portions of the Declarations, if applicable, shall be reduced by the amount of the deductible or retention applied to such loss under such other insurance policy or bond.

## V.    RELATED MATTERS

With respect to the **Liability Coverage Parts**, all **Matters** that are **Related** shall be deemed a single **Matter** first made on the date the earliest of such **Matters** was either first made, or on the date the earliest of such **Matters** is deemed to have been first made in accordance with the reporting provisions of this Policy or any prior policy.

## VI.    EXTENDED REPORTING PERIOD

With respect to the **Liability Coverage Parts**:

(A)    If this Policy does not renew or is otherwise terminated for a reason other than for non-payment of premium (each a "Termination of Coverage"), then any **Insured** shall have the right to purchase the Extended Reporting Period for the Additional Period and Additional Premium as set forth in Item 3 of the Declarations.

(B)    The right to purchase the Extended Reporting Period shall lapse unless written notice of election to purchase the Extended Reporting Period, together with payment of the applicable Additional Premium, is received by the Company within sixty (60) days after the effective date of a Termination of Coverage.

(C)    If the Extended Reporting Period is purchased, then coverage otherwise afforded by this Policy shall be extended to apply to:

(1)    any **Matter** that is either first made or deemed to have been first made during the Extended Reporting Period;

(2)    any **Matter** that is reported to the Company in accordance with the Reporting Section for each applicable **Liability Coverage Part**; and

(3)    any **Matter** for any **Wrongful Act**, or any **Matter** arising out of facts or circumstances, occurring prior to the earliest of the effective date of a Termination of Coverage or the date of any conversion of coverage described in Section X, Acquisition of The Parent Organization, or Section XI, Acquisition, Creation or Cessation of Subsidiaries or Plans.

(D)    The Additional Premium for the Extended Reporting Period shall be deemed fully earned at the inception of the Extended Reporting Period.

CHUBB                                                    *General Terms and Conditions*

(E)     No coverage shall be available under this Section VI for that portion of any **Matter** covered under insurance purchased subsequent to the effective date of a Termination of Coverage. The applicable Limits of Liability including any Sublimits for the Extended Reporting Period are part of, and not in addition to, any applicable Aggregate Limit of Liability for the **Policy Period** immediately preceding the Extended Reporting Period.

## VII.    BANKRUPTCY

(A)     Bankruptcy or insolvency of any **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this Policy.

(B)     In the event a liquidation or reorganization proceeding is commenced by or against an **Organization** under United States bankruptcy law or any equivalent body of law in a **Foreign Jurisdiction**, the **Organization** and the **Insured Persons** hereby agree not to oppose or object to any efforts by the Company, the **Organization** or an **Insured Person** to obtain relief from any stay or injunction.

## VIII.    INDEMNIFICATION, SUBROGATION AND RECOURSE

With respect to the **Liability Coverage Parts**:

(A)     This Policy has been issued to the **Parent Organization** with the understanding and agreement that each **Organization** agrees to fulfill its indemnification obligations to each **Insured Person** to the fullest extent permitted by: (1) any **Global Law**, or (2) any contract or agreement providing an indemnification obligation exceeding any such law. If indemnification is permitted, then coverage shall apply under each **Liability Coverage Part** as if such indemnification has been provided. If the Company pays as **Loss** any indemnification owed to any **Insured Person** by any **Organization**, the Company does not waive or compromise any of its rights to recover such **Loss** from such **Organization**.

(B)     In the event of any payment of **Loss** under this Policy, the Company shall be subrogated to the extent of such payment of **Loss** to all of the **Insureds'** rights of recovery, including any such right to indemnification from any **Organization**, **Outside Entity**, other insurer or other source. The **Insureds** shall take all reasonable actions to secure and preserve the Company's rights, including any action against any **Organization** for indemnification. It is understood and agreed that the Company shall not subrogate against any **Insured Person**.

(C)     Any recovery of payment made by the Company shall be the sole property of the Company; provided, as of the date the recovery is received by the Company, the applicable Limits of Liability of this Policy shall be reinstated in the amount of such recovery, minus all costs incurred by the Company to obtain such recovery.

(D)     No **Plan** has purchased or paid for this Policy and thus, the right of recourse that is otherwise required under ERISA Section 410(b)(1) is not applicable.

## IX.    ACTION AGAINST THE COMPANY

No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No natural person or entity shall have any right under this Policy to join the Company as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

## X.    ACQUISITION OF THE PARENT ORGANIZATION

(A)     If during the **Policy Period** any of the following events occurs:

(1)     another entity, natural person or group of entities or natural persons acquires:

(a)     more than fifty percent (50%) of the outstanding securities or voting rights representing the present right; or

CHUBB                                                      *General Terms and Conditions*

(b)     the right, pursuant to either written contract or the by-laws, charter, operating agreement or similar documents;

to elect, appoint or exercise a majority control over the **Parent Organization's** directors, trustees, manager, member of the Board of Managers, or the functional or foreign equivalent positions of the **Parent Organization**;

(2)     the **Parent Organization** emerges from bankruptcy as of the effective date stated in the plan of reorganization; or

(3)     the acquisition of all or substantially all of the **Parent Organization's** assets, by another entity, natural person or group of entities or natural persons, or the merger of the **Parent Organization** into or with another entity such that the **Parent Organization** is not the surviving entity;

(B)     then:

(1)     any applicable coverage under this Policy with respect to:

(a)     any **Liability Coverage Part**, shall continue until the expiration of the current **Policy Period**, solely for **Matters** for **Wrongful Acts**, or **Matters** arising out of facts or circumstances, first occurring prior to such event; or

(b)     any **Non-Liability Coverage Part**, shall terminate subject to Section XIX, Termination of Policy;

(2)     the **Parent Organization** shall give written notice of such event to the Company as soon as practicable together with such information as the Company may require; and

(3)     the entire premium for this Policy shall be deemed fully earned as of the effective date of such event.

(C)     If the **Parent Organization** gives the Company written notice of an acquisition described in Paragraphs (A)(1) or (A)(3) above at least sixty days prior to the date of such acquisition together with all information that the Company may require, the Company shall provide the **Parent Organization** with a quote for up to a six (6) year extension of coverage, solely for **Matters** for **Wrongful Acts**, or **Matters** arising out of facts or circumstances, first occurring prior to such acquisition (the "Run-Off Quote"). Coverage offered pursuant to the Run-Off Quote may be subject to additional or different terms and conditions and payment of additional premium. If the **Parent Organization** accepts the Run-Off Quote, the extension of coverage provided pursuant to the Run-Off Quote shall replace any extension of coverage that would otherwise be available to the **Insureds** pursuant to Section VI, Extended Reporting Period.

## XI.     ACQUISITION, CREATION OR CESSATION OF SUBSIDIARIES OR PLANS

(A)     **Acquisition of Another Organization, Sponsored Plan or Employee Benefit Plan**

(1)     With respect to the **Liability Coverage Parts**, if before or during the **Policy Period** an **Organization** acquires:

(a)     voting rights or appointment rights in another entity, such that the acquired entity becomes a **Subsidiary**; or

(b)     another plan such that the acquired plan becomes a **Sponsored Plan** (other than an Employee Stock Ownership Plan ("ESOP")),

then coverage shall be provided for such **Subsidiary**, **Sponsored Plan**, and any

**Insureds** thereof, solely for **Matters** for **Wrongful Acts**, or **Matters** arising out of facts or circumstances, first occurring after such acquisition.

CHUBB                                                                *General Terms and Conditions*

(2)    With respect to the **Non-Liability Coverage Parts**, if before or during the **Policy Period** an **Insured** acquires, mergers or consolidates with another entity, such that the acquired, merged or consolidated entity becomes a **Subsidiary**, then coverage shall be provided for such **Subsidiary** and any **Employee Benefit Plan** thereof for loss **Discovered** after the date the **Insured** acquires, merges or consolidates with such entity, regardless of whether or not the loss was sustained prior to the date of such acquisition, merger or consolidation.

(B)    **Acquisition or Creation of ESOP**

If during the **Policy Period** any **Organization** creates or directly or indirectly acquires an ESOP, then with respect to the Fiduciary Liability Coverage Part, the **Organization** shall promptly give to the Company written notice thereof, together with such other information requested by the Company. The Company shall, at the request of the **Organization**, provide to the **Organization** a quotation for coverage for **Matters** based upon, arising from or in consequence of such ESOP, subject to such terms, conditions, and limitations of coverage and such additional premium as the Company, in its sole discretion, may require.

(C)    **Cessation of Subsidiaries, Sponsored Plans or Employee Benefit Plans**

If before or during the **Policy Period**:

(1)    an **Organization** ceases to be a **Subsidiary**, then with respect to any:

(a)    **Liability Coverage Part**, coverage for such **Subsidiary** and its **Insureds** shall continue until termination of this Policy for **Matters** for **Wrongful Acts**, or **Matters** arising out of facts or circumstances, first occurring while such **Organization** was a **Subsidiary**; and

(b)    **Non-Liability Coverage Part**, such **Subsidiary** and any **Employee Benefit Plan** thereof shall cease to be **Insureds** as of the effective date of such cessation and coverage under this Policy shall terminate in accordance with Section XIX, Termination of Policy.

(2)    a **Sponsored Plan** is terminated or otherwise ceases to be a **Sponsored Plan**, then with respect to the Fiduciary Liability Coverage Part coverage for such **Sponsored Plan** and its **Insureds** shall continue until termination of this Policy for **Matters** for **Wrongful Acts**, or **Matters** arising out of facts or circumstances, occurring prior to the earlier of:

(a)    the date that the **Organization** or **Insured Person** ceases to be a fiduciary of such **Sponsored Plan**; or

(b)    the date that:

(i)    the **Sponsored Plan** ceases to be a **Sponsored Plan**; or

(ii)    the final distribution of the assets of such **Sponsored Plan**,

whichever occurs last.

(3)    the Pension Benefit Guaranty Corporation ("PBGC") becomes the Trustee of a **Sponsored Plan**, then with respect to the Fiduciary Liability Coverage Part coverage for such **Sponsored Plan** and its **Insureds** shall continue until termination of this Policy for **Matters** for **Wrongful Acts**, or **Matters** arising out of facts or circumstances, first occurring prior to the effective date the PBGC became the Trustee of such **Sponsored Plan**.

CHUBB                                                    *General Terms and Conditions*

**XII.    REPRESENTATIONS AND SEVERABILITY**

With respect to the **Liability Coverage Parts:**

(A)    The Company, in issuing this Policy, has relied upon the statements, representations and information in the **Application** as being true and accurate. The **Application** is the basis for, and considered incorporated into, this Policy and shall be construed as a separate request for coverage by each **Insured**.

(B)    The knowledge of an **Insured** shall not be imputed to any **Insured Person**, and only the actual knowledge of the **Control Group** shall be imputed to the **Organization** or **Plan**. The Company shall not be entitled under any circumstances to void or rescind this Policy with respect to any **Insured**.

(C)    However, in the event that such **Application** contains any misrepresentations made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Company under this Policy, then no coverage shall be afforded for any **Matter** based upon, arising from or in consequence of any such misrepresentations with respect to:

   (1)    any **Insured Person** who knew of such misrepresentations (whether or not such **Insured Person** knew such **Application** contained such misrepresentations) or any **Organization** or **Plan** to the extent it indemnifies any such **Insured Person**; or

   (2)    any **Organization** or **Plan** if any member of the **Control Group** knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations).

**XIII.    STATE AMENDATORY INCONSISTENCY**

If there is an inconsistency between a state amendatory endorsement attached to this Policy and any other term or condition of this Policy, the Company shall apply, where permitted by law, those terms and conditions either of such state amendatory endorsement or the Policy which are more favorable to the **Insured's** coverage; provided that, with respect to any time period relating to notice of cancellation or non-renewal, the Company shall apply the applicable state law.

**XIV.    NOTICE**

(A)    Notice to the Company of any **Matter**, **Potential Claim** or circumstances under any **Liability Coverage Part**, or any loss or occurrence that may subsequently result in a covered loss under any **Non-Liability Coverage Part**, shall be deemed notice under the Policy in its entirety.

(B)    All notices to the Company under this Policy of any **Matter**, **Potential Claim** or circumstances under any **Liability Coverage Part**, or any loss or occurrence that may subsequently result in a covered loss under any **Non-Liability Coverage Part**, shall be given in writing to one of the following addresses:

   (1)    **ChubbClaimsFirstNotice@Chubb.com**

   (2)    Attn: Chubb Claims Department
          Chubb
          P.O. Box 5122
          Scranton, PA18505-0544

(C)    All other notices to the Company under this Policy shall be given in writing addressed to:

   (1)    **NA.FinancialLines@Chubb.com**

   (2)    Attn: Chubb Underwriting Department
          Chubb
          202B Hall's Mill Road
          Whitehouse Station, NJ 08889

**CHUBB**                                            *General Terms and Conditions*

(D)     Any notice described in Subsection (B) or (C) above shall be effective on the date of receipt by the Company.

## XV.   HEADINGS

The descriptions in the headings and sub-headings of this Policy are solely for convenience and form no part of the terms and conditions of coverage.

## XVI.   SPOUSES, DOMESTIC PARTNERS, ESTATES AND LEGAL REPRESENTATIVES

With respect to the **Liability Coverage Parts**, coverage under this Policy shall extend to **Claims** for **Wrongful Acts** of an **Insured Person** made against:

(A)     the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased, or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is legally incompetent, insolvent or bankrupt; or

(B)     the lawful spouse or domestic partner of such **Insured Person** solely by reason of such spouse's or domestic partner's: (1) status as a spouse or domestic partner, or (2) ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**;

provided that no coverage afforded by this Section XVI shall apply with respect to any loss arising from an act, error or omission by an **Insured Person's** estate, heirs, assigns, lawful spouse or domestic partner.

## XVII.   ALTERATION AND ASSIGNMENT

No change in, modification of or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy which is signed by an authorized representative of the Company.

## XVIII.   COMPLIANCE WITH TRADE SANCTIONS

This insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the Company from providing insurance.

## XIX.   TERMINATION OF POLICY

(A)     With respect to the **Liability Coverage Parts**, this Policy shall terminate at the earliest of the following times:

(1)     ten (10) days after receipt by the **Parent Organization** of a written notice of termination from the Company for non-payment of premium;

(2)     upon expiration of the **Policy Period**;

(3)     upon receipt by the Company of a written notice of termination from the **Parent Organization**; except with respect to the **Liability Coverage Parts**, this Policy may not be terminated by the **Parent Organization** after the effective date of any event described in Section X, Acquisition of the Parent Organization; or

(4)     at such other time as may be agreed upon by the Company and the **Parent Organization**.

(B)     With respect to the **Non-Liability Coverage Parts**, this Policy shall terminate at the earliest of following times:

(1)     upon any event set forth in Subsection (A) above;

**CHUBB**                                                    *General Terms and Conditions*

(2)     immediately upon any event described in Section X, Acquisition of the Parent Organization;

(3)     immediately upon the liquidation or dissolution of the **Parent Organization**;

(4)     as to any **Insured**, immediately upon such **Insured's** liquidation or dissolution;

(5)     as to any **Insured**, immediately upon any event described in Section XI, Acquisition Creation, Cessation of Subsidiaries or Plans; or

(6)     as to any **Employee Benefit Plan**, immediately upon the full assumption of responsibilities for the administration of such **Employee Benefit Plan** by another entity or **Insured** that was not the plan sponsor of such **Employee Benefit Plan** as of either the inception date of this Policy or the date such **Employee Benefit Plan** was added to the Policy.

(C)     The Company shall refund the unearned premium on a pro rata basis if this Policy is terminated. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

## XX.    PAYMENT PRIORITY AND COVERAGE COORDINATION

With respect to the **Liability Coverage Parts**:

(A)     It is understood and agreed that any coverage provided under this Policy is principally intended to protect and benefit the **Insured Persons**. Accordingly, in the event that **Loss** for which an **Insured Person** has not been paid or indemnified; and any other **Loss**, are concurrently due under any **Liability Coverage Part**, the Company shall pay **Loss** as follows:

(1)     first, **Loss** for which an **Insured Person** has not been paid or indemnified;

(2)     second, if applicable, **Loss** for which an **Insured Person** has been indemnified by the **Organization**; or **Loss** incurred by a **Plan**;

(3)     third, if applicable, **Loss** incurred by an **Organization**; and

(4)     with respect to whatever remaining amount of the Limit of Liability is available after payment under Paragraphs (A)(1) through (A)(3) above, any other **Loss** afforded coverage under any Insuring Clause or Coverage Extension.

(B)     Except as otherwise provided in Subsection (A) above, the Company may pay covered **Loss** as it becomes due under this Policy without regard to the potential for other future payment obligations under this Policy.

(C)     Any **Loss** covered under more than one **Liability Coverage Part** shall be first covered under the Employment Practices Liability Coverage Part, if applicable, subject to its terms, conditions and limitations. Any remaining portion of such **Loss** otherwise covered under any other applicable **Liability Coverage Part** which is not paid under the Employment Practices Liability Coverage Part shall be covered under such other **Liability Coverage Part**, subject to the terms, conditions and limitations of such **Liability Coverage Part**.

## XXI.    VALUATION AND FOREIGN CURRENCY

(A)     With respect to the **Liability Coverage Parts**, all premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in this Policy, if a judgment is rendered, a settlement is denominated or any element of **Loss** under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in *The Wall Street Journal* on the date the judgment

## CHUBB                                          *General Terms and Conditions*

becomes final, the amount of the settlement is agreed upon or any element of **Loss** is due, respectively.

(B)    With respect to the **Non-Liability Coverage Parts**:

    (1)    In the event of loss involving foreign currency, the Company shall pay the United States of America dollar value of foreign currency based on the rate of exchange published in *The Wall Street Journal* on the day loss involving foreign currency is **Discovered**.

    (2)    In the event of a loss of **Securities**, the Company shall value such **Securities** at the closing price of such **Securities** on the business day immediately preceding the day on which a loss is **Discovered**, provided that at its sole discretion, the Company may:

        (a)    pay the value of such **Securities** or purchase replacement **Securities**, in which event the **Insured** must assign the Company all rights, title and interest in and to those **Securities**; or

        (b)    issue its indemnity in the form of, or pay the cost of, a Lost Instrument Bond or similar suretyship, to effect replacement of such **Securities**.

    (3)    In the event of a loss of **Property**, other than any loss of precious metals, the Company shall pay without deduction for depreciation, the least of:

        (a)    the cost to repair or replace **Property**, other than precious metals, with that of similar quality and value; or

        (b)    the amount the **Insured** actually spends that is necessary to repair or replace **Property**.

    With respect to this Subsection (B)(3):

        (i)    the Company shall not pay the cost to repair or replace **Property** until such **Property** is actually repaired or replaced, which must occur within twelve (12) months from the time the **Parent Organization** complies with Section XVI, Notice, of the General Terms and Conditions; and

        (ii)    if the **Property** is not repaired or replaced, the Company will pay the actual cash value of the **Property**.

    (4)    In the event of a loss of precious metals, the Company shall pay the United States of America dollar value of any precious metals based on the price published in *The Wall Street Journal*, Cash Prices, Precious Metals, on the day loss involving precious metals is **Discovered**.

    (5)    For purposes of this Subsection (B), the term **Securities** shall include both **Securities** as defined in the Crime Coverage Part and securities as referenced in the Kidnap, Ransom & Extortion Coverage Part.

## XXII.  WORLDWIDE TERRITORY, APPLICATION OF LAW AND LIBERALIZATION

(A)    With respect to the **Liability Coverage Parts**:

    (1)    This Policy shall apply anywhere in the world.

    (2)    If the **Parent Organization** requests a policy for issuance to its foreign **Subsidiaries** in their own countries, the Company or any subsidiary or affiliate of Chubb shall provide a quote to the **Parent Organization** for a GLS policy; provided that Chubb can support or facilitate the issuance of such GLS policy to such foreign **Subsidiary** in such foreign country. Coverage offered pursuant to the issued GLS policy may be subject to additional or different terms and conditions and payment of additional premium. Any coordination of coverage under such policy with coverage under this Policy shall be set forth in an

CHUBB                                                    *General Terms and Conditions*

endorsement attached to this Policy. For the purposes of this Subsection, "GLS policy" means Chubb's current Good Local Standard liability policy, including any mandatory endorsements, sold within such **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this Policy. "GLS policy" shall not include any partnership management, cyber liability, or professional liability coverages.

(3)     Whether or not a policy is purchased pursuant to Paragraph (B)(1) above, where legally permissible, for **Loss** from that portion of any **Matter** maintained in a **Foreign Jurisdiction** or to which the law of a **Foreign Jurisdiction** is applied, the Company shall apply to such **Matter** those specific definitions and exclusions of the GLS policy in such **Foreign Jurisdiction** that are more favorable to such **Insured** than the comparable definitions and exclusions of this Policy. This Section XXII shall not apply to any policy provision addressing limits of liability (primary, excess or sublimits), retentions, other insurance or excess liability provisions, duty to defend, defense within or outside the limits, taxes, conformance to law, any claims made provisions, and any endorsement to this Policy that excludes or limits coverage for specific events or litigation, or that specifically states that it will have worldwide effect.

(B)     With respect to the **Non-Liability Coverage Parts**:

(1)     Coverage under the Crime Coverage Part, if applicable, shall extend to loss anywhere in the world.

(2)     Coverage under the Kidnap, Ransom & Extortion Coverage Part and the Workplace Violence Expense Coverage Part, if applicable, shall extend to the Coverage Territory set forth in KRE and WPV portions of the Declarations, if applicable.

## XXIII. ROLE OF PARENT ORGANIZATION

By acceptance of this Policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to:

(A)     the payment of premiums and the receiving of any return premiums that may become due under this Policy;

(B)     the negotiation, agreement to and acceptance of endorsements; and

(C)     the giving or receiving of any notice provided for in this Policy (except the giving of notice to apply for an Extended Reporting Period in accordance with Section VI, Extended Reporting Period, the giving of notice of **Matter**, **Potential Claim** or circumstances in accordance with the Reporting section of the applicable **Liability Coverage Part**).

Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to the foregoing.

# MARYLAND AMENDATORY ENDORSEMENT

| Named Insured<br>DIAMOND COMIC DISTRIBUTORS INC. | | Endorsement Number<br>1 |
|---|---|---|
| Policy Number<br>J06607044 | Policy Period<br>04-01-2024    to    04-01-2025 | Effective Date of Endorsement<br>April 1, 2024 |
| Issued By<br>Federal Insurance Company | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

**The ForeFront Portfolio
General Terms and Conditions**

In consideration of the premium charged, it is agreed that if this Policy is financed by a premium finance company and this Policy is terminated, the Company shall refund the gross unearned premium, if any, to the premium finance company for the account of the **Parent Organization** within forty-five (45) days of:

(a) receipt by the Company of written notice of termination from the premium finance company or the **Parent Organization**; or

(b) the effective date of termination by the Company.

Such unearned premium refund shall by calculated pro rata, excluding any expense constant, administrative fee or non-refundable charge filed with and approved by the insurance commissioner.

The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the state of Maryland.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative



## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Named Insured<br>DIAMOND COMIC DISTRIBUTORS INC. | | Endorsement Number<br>2 |
|---|---|---|
| Policy Number<br>J06607044 | Policy Period<br>04-01-2024     to     04-01-2025 | Effective Date of Endorsement<br>April 1, 2024 |
| Issued By<br>Federal Insurance Company | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### The ForeFront Portfolio
### General Terms and Conditions

In consideration of the premium charged, it is agreed that:

A.  If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any "loss" that is otherwise excluded under this Policy.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

CHUBB

*The ForeFront Portfolio<sup>SM</sup>*
*Directors & Officers and Entity Liability*
*for Private Companies*

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Part, the Company and the Insureds agree as follows:

## I. INSURING CLAUSES

### Insuring Clause (A): Individual Non-Indemnified Liability Coverage

(A) The Company shall pay, on behalf of an **Insured Person**, **Loss** on account of a **Claim** first made against the **Insured Person** during the **Policy Period**, to the extent that such **Loss** is not indemnified by an **Organization**.

### Insuring Clause (B): Individual Indemnified Liability Coverage

(B) The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against an **Insured Person** during the **Policy Period**, to the extent the **Organization** indemnifies the **Insured Person** for such **Loss** as permitted or required by law.

### Insuring Clause (C): Entity Liability Coverage

(C) The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against the **Organization** during the **Policy Period**.

## II. COVERAGE EXTENSIONS

(A) **Inquiry Coverages**

(1) **Securityholder Inquiry Coverage**

(a) **Derivative Demand Investigation Coverage**

The Company shall pay, on behalf of an **Organization**, **Defense Costs** on account of a **Derivative Demand Investigation** first made during the **Policy Period**. No Retention shall apply to **Defense Costs** under this Inquiry Coverage (A)(1)(a).

(b) **Appraisal Action Coverage**

The Company shall pay, on behalf of an **Insured**, **Loss** on account of an **Appraisal Action** first made during the **Policy Period**.

(c) **Books and Records Request Coverage**

The Company shall pay, on behalf of an **Insured**, **Defense Costs** on account of a **Books and Records Request** first made during the **Policy Period**.

(2) **Interview Coverage**

The Company shall pay, on behalf of an **Insured**, **Defense Costs** incurred solely by an **Insured Person** on account of an **Interview** first made during the **Policy Period**.

(3) **Written Request to Toll or Waive a Statute of Limitations Coverage**

The Company shall pay, on behalf of an **Insured**, **Defense Costs** incurred solely by such **Insured** in responding to a written request to toll or waive a statute of limitations, first made during the **Policy Period**, applicable to a potential **Claim**.

CHUBB

**Directors & Officers and Entity Liability**
*for Private Companies*

(B)    **Early Engagement Expense Coverage**

In the event of any **Pre-Matter Expense**, **Pre-Tender Expense** or **Early Settlement Opportunity**, an aggregate amount not to exceed the lesser of: (1) $25,000; or (2) fifty percent (50%) of the applicable Retention, shall qualify as **Loss** solely for the purpose of exhaustion of the applicable Retention. Once the applicable Retention has been exhausted, any **Pre-Matter Expense** or **Pre-Tender Expense** shall no longer qualify as covered **Loss** under this Coverage Part.

Coverage provided herein shall not be deemed to waive the Company's rights hereunder or limit the **Insured's** right to receive coverage for **Loss** incurred following the reporting of a **Matter.**

(C)    **Additional Limit of Liability Dedicated for Executives**

The Additional Limit of Liability Dedicated for Executives as set forth in Item 4(C) of the D&O portion of the Declarations, which amount is in addition to, and not part of, the Aggregate Limit of Liability set forth in Item 4(A) of the D&O portion of the Declarations, shall be available to any **Executive** solely with respect to any **Loss** resulting from any **Matter** against an **Executive** that is not indemnified by an **Organization**.

Coverage Extension (A) above shall be subject to any applicable Limit of Liability, Sublimit and Retention set forth in the D&O portion of the Declarations and this Policy.

## III.    DEFINITIONS

For purposes of this Coverage Part:

**Appraisal Action** means any written demand or proceeding brought by a securityholder of an **Organization** against an **Insured** pursuant to any **Global Law** which provides appraisal rights to determine the value of such **Organization's** securities.

**Asset Protection Costs** means that portion of **Defense Costs** constituting reasonable costs, charges, fees and expenses incurred by an **Executive**, with the Company's consent, to oppose any efforts by an **Enforcement Unit** to seize or otherwise enjoin the personal assets or real property of such **Executive** or to obtain the discharge or revocation of a court order entered during the **Policy Period** that in any way impairs the use thereof.

**Board Observer** means any natural person formally designated or invited to act as an observer at formal board meetings or committee meetings of the duly elected or appointed directors of an **Organization** pursuant to a written agreement with such **Organization**.

**Books and Records Request** means any written demand or proceeding brought by a securityholder of an **Organization** pursuant to any federal, state or local statutory law which provides a right to inspect such **Organization's** books and records.

**Claim** means any:

(A)    written demand (other than an **Inquiry**, subpoena or other investigatory instrument):

(1)    for monetary or non-monetary (including injunctive) relief; or

(2)    for arbitration, mediation, or other equivalent alternative dispute resolution proceeding,

against an **Insured** for a **Wrongful Act**, commenced by the first receipt of such demand by an **Insured**;

(B)    proceeding, including any appeal therefrom, against an **Insured** for a **Wrongful Act**, commenced by:

(1)    the service of a civil complaint or similar pleading, or any foreign equivalent thereof;

CHUBB

**Directors & Officers and Entity Liability**
**for Private Companies**

(2)      the service of a notice of charges or foreign equivalent thereof; or

(3)      an arrest, the return of an indictment, information or any foreign equivalent thereof, or the receipt of an official request for **Extradition**; or

(C)      investigation by an **Enforcement Unit** against an **Insured Person** for a **Wrongful Act**, commenced by the service of a written request from such **Enforcement Unit** upon an **Insured Person** compelling witness testimony or document production and identifying such **Insured Person** as the target of such investigation, including a subpoena, civil investigative demand, grand jury subpoena, search warrant, target letter or Wells notice; provided that the Company shall take into reasonable consideration all extrinsic evidence presented by the **Insured Person** when determining whether such written request identifies such **Insured Person** as a target of such investigation;

provided that **Claim** shall not include any **Inquiry** or, except as otherwise provided in Subsection (C) above, any civil, criminal, administrative or regulatory inquiry or investigation.

**Control Group** means the chief executive officer, chief financial officer, in-house general counsel or any person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization**.

**De Facto Director** means a natural person who is expressly recognized by **Global Law** as a "de facto" director of an **Organization** and, as result of such recognition, would incur liability as if such natural person were a duly elected or appointed director of such **Organization**.

**Defense Costs** means that part of **Loss** consisting of the following:

(A)      reasonable costs, charges, fees (including attorneys' fees, experts' fees, and the cost of **E-Discovery Specialist Services**) and expenses (other than regular or overtime wages, salaries, fees or benefits of **Insured Persons**) incurred in:

      (1)      investigating, defending, opposing or appealing any **Claim** and the premium for appeal, attachment or similar bonds;

      (2)      a **Securityholder Inquiry**;

      (3)      an **Interview**; or

      (4)      responding to a written request to toll or waive a statute of limitations;

(B)      **Asset Protection Costs**; or

(C)      any costs under Insuring Clause (A), Individual Non-Indemnified Liability Coverage, that are deemed by the Company, in its sole discretion, to be reasonable costs, charges, fees, and expenses (including the premium or origination fee for a bond or loan) solely to facilitate the return of amounts incurred and required to be repaid by an **Insured Person** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002.

**Derivative Demand Investigation** means an investigation by an **Organization** solely to determine whether it is in the best interest of such **Organization** to pursue the claims alleged in a securityholder derivative demand.

**Early Settlement Opportunity** means any settlement recommended by the Company within the Limit of Liability set forth in Item 4(A) of the D&O portion of the Declarations which is agreed to by the claimant where: (A) the **Insureds** consent to such settlement within thirty (30) days of the date the **Insureds** are first made aware of such opportunity to settle; (B) such consent occurs within the first ninety (90) days after the **Matter** is first reported to the Company; and (C) such **Matter** is reported to the Company within the first thirty (30) days after it is made. The **Insured** agrees not to settle or offer to settle any **Claim** or otherwise assume any contractual obligation or admit any liability with respect to any **Matter** without the Company's written consent, which shall not be unreasonably withheld. The Company shall not be liable for any settlement assumed obligation or admission to which it has not consented.

CHUBB

**E-Discovery** means the review, development, collection, cataloging and/or production of electronically stored information in connection with the defense of a **Matter**.

**E-Discovery Specialist Services** means only the following services performed by an **E-Specialist Firm**:

(A)      assisting the **Insured** with managing and minimizing the internal and external costs associated with **E-Discovery**;

(B)      assisting the **Insured** in developing or formulating an **E-Discovery** strategy which shall include interviewing qualified and cost-effective **E-Discovery** vendors;

(C)      serving as project manager, advisor and/or consultant to the **Insured**, defense counsel and the Company in executing and monitoring the **E-Discovery** strategy; and

(D)      such other services provided by the **E-Specialist Firm** that the **Insured**, Company, and **E-Specialist Firm** agree are reasonable and necessary given the circumstances of the **Matter**.

**E-Specialist Firm** means any e-discovery consultant firm approved by the Company.

**Employee** means any natural person whose labor or service is, was or will be engaged and directed by an **Organization**, including a part-time, seasonal, leased or temporary employee, intern or volunteer. **Employee** shall not include any **Independent Contractor**.

**Enforcement Unit** means any federal, state, local, provincial or foreign law enforcement or governmental authority worldwide (including the U.S. Department of Justice, the U.S. Securities and Exchange Commission or any attorney general).

**Executive** means any natural person who was, now is or shall become:

(A)      a duly elected or appointed director, officer, manager, or member of the Board of Managers, the Advisory Board or any duly constituted committee, or the in-house general counsel of any **Organization** incorporated, formed or organized in the United States of America;

(B)      a holder of an equivalent position to those described in Subsection (A) above in any **Organization** incorporated, formed or organized in a **Foreign Jurisdiction**; or

(C)      a **Board Observer** or **De Facto Director** of an **Organization** but only if such **Organization** has indemnified such **Board Observer** or **De Facto Director** as any director or officer of an **Organization**, to the fullest extent permitted by: (1) any **Global Law**; or (2) any contract or agreement providing an indemnification obligation exceeding such law.

**Extradition** means any formal or written process by which an **Insured Person** located in any country is surrendered, or sought to be surrendered, to any other country for trial or otherwise to answer any criminal accusation, including the execution of an arrest warrant where such execution is an element of such process.

**Financial Impairment** means the status of an **Organization** resulting from:

(A)      the appointment by a state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar party (including a creditors' committee, if applicable) or foreign equivalent thereof empowered to initiate the assumption of control, supervision, management or liquidation of such **Organization**; or

(B)      such **Organization** becoming a debtor in possession under United States bankruptcy law or the equivalent of a debtor in possession under the law of any **Foreign Jurisdiction**;

provided that the court or other judicial or administrative body overseeing the receivership, conservatorship, liquidation, rehabilitation, bankruptcy or equivalent proceeding has denied a request by the **Organization**, or other party determined to have standing, for authorization of the **Organization** to

CHUBB

**Directors & Officers and Entity Liability**
**for Private Companies**

indemnify an **Insured Person** for **Loss**; provided further that, the Company may, in its sole discretion, waive the foregoing requirement.

**Independent Contractor** means any natural person working for an **Organization** in the capacity of an independent contractor and pursuant to an **Independent Contractor Services Agreement**.

**Independent Contractor Services Agreement** means any written contract or agreement between an **Independent Contractor**, or any entity on behalf of such **Independent Contractor**, and the **Organization**, governing the nature of the **Organization's** engagement of such **Independent Contractor**.

**Inquiry** means a **Securityholder Inquiry**, **Interview**, or written request to toll or waive the statute of limitations. An **Inquiry** is commenced by first receipt by an **Insured** of any applicable written demand or request.

**Insured** means any **Organization** and any **Insured Person**.

**Insured Person** means any:

(A)    **Executive**;

(B)    **Employee**; or

(C)    **Independent Contractor** working for an **Organization**, but only while acting in his or her capacity as such and only if the **Organization** agrees in writing, prior to or no later than thirty (30) days after a **Matter** is reported to the Company, to indemnify the **Independent Contractor** for liability arising out of such **Matter**.

**Interview** means any request for an interview, deposition or meeting with, or a sworn statement or testimony from, an **Insured Person** by:

(A)    an **Enforcement Unit** in connection with: (1) such **Insured Person** acting in his or her capacity as such; or (2) an **Organization's** business activities; or

(B)    an **Organization** in connection with: (1) an inquiry or investigation of the **Organization** by an **Enforcement Unit**; or (2) a securityholder derivative demand;

provided that an **Interview** does not include any request: (a) for document production or discovery of information unless such documents or information are in the sole possession or control of an **Insured Person**; (b) by an **Enforcement Unit** that is part of any routine or regularly scheduled **Enforcement Unit** oversight, compliance, audit, inspection or examination; or (c) by an **Enforcement Unit** that is part of an employment-related investigation or claim.

**Loss** means the amount which an **Insured** becomes legally obligated to pay as a result of any **Matter**, including:

(A)    **Defense Costs**, compensatory damages, judgments, including pre-judgment and post-judgment interest;

(B)    settlements, including that portion of any settlement which represents claimant's attorney's fees;

(C)    punitive, exemplary or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the relevant **Insureds**, to the Company, or to the **Matter** giving rise to such damages;

(D)    civil fines or civil penalties assessed against an **Insured Person** for a violation of any **Global Law** including civil fines or penalties assessed against an **Insured Person** pursuant to 15 U.S.C. §78dd-2(g)(2)(B) (the Foreign Corrupt Practices Act), if and to the extent that such violation is neither intentional nor willful and only if such civil fines or penalties are insurable under the law of the jurisdiction in which such fines or penalties are assessed; and

**CHUBB**
*Directors & Officers and Entity Liability*
*for Private Companies*

(E)    the premium for a bail bond, if bail is available for an **Extradition** in the country at issue; provided the Company shall be under no obligation to provide such bail bond;

provided that **Loss** does not include any portion of such amount that constitutes any:

(1)    cost incurred to comply with any order for non-monetary (including injunctive) relief or to comply with any agreement to provide such relief;

(2)    amount uninsurable under the law pursuant to which this Coverage Part is construed; provided that the Company shall not assert that any amount attributable to violations of Sections 11, 12 or 15 of the Securities Act of 1933, as amended, is subject to this Subsection (2), unless such amount is determined to be uninsurable in a final, non-appealable adjudication in the underlying action or proceeding (other than a declaratory or equivalent action or proceeding brought by or against the Company);

(3)    amount that represents, or is substantially equivalent to, an increase in the consideration paid (or proposed to be paid) in an acquisition or merger (or proposed acquisition or merger) of more than fifty percent (50%) of the outstanding securities or other ownership interest of an entity, including an **Organization**, or in the right to vote for election of, or to appoint, more than fifty percent (50%) of the directors, manager, member of the Board of Managers, or the equivalent of such positions, of an entity, including an **Organization**; provided that this Subsection (3) shall not apply to any amount otherwise covered under Insuring Clause (A), Individual Non-Indemnified Liability Coverage;

(4)    tax, except, solely for the purposes of Insuring Clause (A), Individual Non-Indemnified Liability Coverage, any tax imposed upon an **Insured Person** in his or her capacity as such in connection with any bankruptcy, receivership, conservatorship, or liquidation of an **Organization**, to the extent that such tax is insurable under the law pursuant to which this Coverage Part is construed;

(5)    fines or penalties, except as provided in Subsections (C) or (D) above;

(6)    cost incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for or monitoring **Pollutants**;

(7)    **Pre-Matter Expense** or **Pre-Tender Expense**, except as provided under the Early Engagement Expense Coverage set forth in Section II(B) of this Coverage Part; or

(8)    amount that represents the payment, return, reimbursement, disgorgement or restitution requested or required to be repaid by an **Insured** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002, or Section 6501 of the National Defense Authorization Act, as amended.

**Matter** means any **Claim** or **Inquiry**.

**Network Security or Privacy Breach** means any:

(A)    unauthorized or unlawful access to, alteration of, or damage to any computer, computer program, computer network or computer database, including the infection of any of the foregoing through the transmission of a computer virus, malware, spyware or other fraudulent or unauthorized computer code that: (1) modifies, alters, damages, destroys, deletes, records or transmits information; (2) contaminates other computer programs or computer data; or (3) consumes computer resources or in some fashion usurps the normal operation of a computer system;

(B)    denial of service or delay, disruption, impairment or failure of any computer network, communication network, technology, information or telecommunication network, service, hardware or software;

(C)    unauthorized or unlawful access to, disclosure of, alteration of, theft, collection, storage, use or dissemination of, or loss of any data or confidential or proprietary business information or personally identifiable information as defined by: (1) applicable **Global Law**; or (2) an **Organization's** publicly stated privacy policy;

CHUBB                                                                    *Directors & Officers and Entity Liability*
*for Private Companies*

(D)     violation of any privacy protection or data security **Global Law**; or

(E)     violation of any **Global Law** used to impose liability in connection with any unsolicited communication, distribution, publication, sending or transmission via telephone, cell or mobile phone, telephone facsimile machine, computer or other telephonic or electronic devices, including the United States of America Telephone Consumer Protection Act of 1991, United States of America CAN-SPAM Act of 2003, as amended.

**Outside Capacity** means service by an **Insured Person** in an **Outside Entity** as a: (A) director or officer; (B) manager or member of the Board of Managers; (C) trustee, regent, or governor; or (D) equivalent executive position of any of the foregoing, but solely during the time that such service is with the knowledge and express consent of an **Organization**.

**Outside Entity** means:

(A)     any non-profit corporation, community chest, fund or foundation that is exempt from federal income tax as an entity described in Section 501(c)(3), 501(c)(4), 501(c)(7) or 501(c)(10) of the Internal Revenue Code of 1986, as amended, or any other entity organized for a religious or charitable purpose under any non- profit organization act or statute; or

(B)     any other entity specifically added as an **Outside Entity** by written endorsement attached to this Coverage Part;

that is not an **Organization**.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, asbestos products or waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

**Pre-Matter Expense** means reasonable costs, charges fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees, or benefits of **Insured Persons**) incurred in investigating, defending, opposing or appealing a notice of circumstance if such circumstance has been reported under Subsection (D) of Section V, Reporting, and a **Matter** subsequently arises out of such circumstance.

**Pre-Tender Expense** means reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of **Insured Persons**) incurred in investigating, defending, opposing or appealing any **Matter** before such **Matter** has been reported under Subsections (A) or (B) of Section V, Reporting.

**Professional Services** means services which are performed for others for a fee.

**Securityholder Inquiry** means any**:**

(A)     **Derivative Demand Investigation**;

(B)     **Appraisal Action**; or

(C)     **Books and Records Request**.

**Securityholder Matter** means any:

(A)     **Claim** against an **Insured** for a violation of any **Global Law** relating to securities brought by: (1) a securityholder of an **Organization** solely in connection with such securityholder's interest in the securities of such **Organization**, or (2) any person or entity solely in connection with the purchase or sale of, or offer to purchase or sell securities of an **Organization**;

(B)     **Claim** brought as a securityholder derivative demand or action, on behalf of an **Organization** against an **Insured Person** or the **Organization** (in the **Organization's** capacity as a nominal defendant);

CHUBB

***Directors & Officers and Entity Liability***
***for Private Companies***

(C)   **Securityholder Inquiry**, subject to the Sublimit set forth in Item 4(A) of the D&O portion of the Declarations; or

(D)   other **Matter** which is brought by or on behalf of one or more securityholders of an **Organization** in their capacity as such;

provided such **Securityholder Matter** is brought without the solicitation, assistance, active participation or intervention of any **Executive**.

**Wage and Hour Violation** means any actual or alleged violation of the responsibilities, obligations or duties imposed by any **Global Law** (including the Fair Labor Standards Act) that governs wage, hour and payroll policies and practices, except the Equal Pay Act.

**Wrongful Act** means:

(A)   any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted, or allegedly committed or attempted by: (1) an **Insured Person** while acting in his or her capacity as such, or in an **Outside Capacity**; or (2) for purposes of coverage under Insuring Clause (C), Entity Liability Coverage, an **Organization**; or

(B)   any other matter claimed against an **Insured Person** solely by reason of serving in his or her capacity or status as such, including any matter claimed pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.

## IV.   EXCLUSIONS

### (A)   EXCLUSIONS APPLICABLE TO ALL INSUREDS

The Company shall not be liable for any **Loss** on account of any **Matter**:

(1)   Prior Notice

based upon, arising from or in consequence of any **Wrongful Act**, fact, circumstance or **Matter** that was the subject of any notice accepted under any prior management liability coverage;

(2)   Pending or Prior Proceedings

based upon, arising from or in consequence of any written demand first received by, or action, proceeding, **Matter** or **Matter** that is **Related** commenced against any **Insured**, on or prior to the applicable Pending or Prior Proceedings Date set forth in Item (E) of the D&O portion of the Declarations;

(3)   Bodily Injury/Property Damage

for bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property, including loss of use thereof, whether or not it is damaged or destroyed; provided that this Exclusion (A)(3) shall not apply to **Loss** on account of any: (a) mental anguish, humiliation or emotional distress asserted in an employment-related **Matter** against an **Insured Person** that is not indemnified by an **Organization** (other than a **Wage and Hour Violation**); or (b) **Securityholder Matter**;

(4)   Pollution

based upon, arising from or in consequence of any: (a) discharge, emission, release, dispersal or escape of any **Pollutants** or any threat thereof; (b) treatment, removal or disposal of any **Pollutants**; or (c) regulation, order, direction or request to test for,

monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**; provided that this Exclusion (A)(4) shall not apply to **Loss** on account of any: (i) **Matter** against an **Insured Person** that is not indemnified by an **Organization**; or (ii) **Securityholder Matter**;

(5)   ERISA

for any violation of the responsibilities, obligations or duties imposed by Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, and the Health Insurance Portability and Accountability Act of 1996), all as amended, or any similar **Global Law**;

(6)   Insured versus Insured

brought by or on behalf of: (a) an **Insured** in any capacity; (b) an **Outside Entity** against an **Insured Person** serving in an **Outside Capacity**; or (c) a securityholder of an **Organization** with the solicitation, assistance, active participation or intervention of any **Executive** against an **Insured**; provided that this Exclusion (A)(6) shall not apply to any:

(i)   **Securityholder Matter**; or

(ii)   other **Matter**:

    a.   brought against an **Insured Person**:

        1.   outside the United States of America or Canada;

        2.   while an **Organization** is in **Financial Impairment**;

        3.   for employment-related **Wrongful Acts** if the **Loss** is not indemnified by the **Organization** (other than a **Wage and Hour Violation**); or

        4.   for contribution or indemnity arising from another **Matter** otherwise covered under this Coverage Part;

    b.   brought by an **Executive** who has ceased serving in his or her capacity as an **Executive** for at least one (1) year; or

    c.   brought by a whistleblower pursuant to any **Global Law**;

(7)   Publicly Traded Securities

based upon, arising from or in consequence of: (a) any public offering of securities issued by any **Organization** or **Outside Entity**; or (b) the violation of any **Global Law** relating to securities, including the Securities Act of 1933 and the Securities Exchange Act of 1934, all as amended; provided that this Exclusion A(7) shall not apply to **Loss** on account of any **Matter**:

(i)   based upon, arising from or in consequence of an offering, sale or purchase of:

    a.   securities that are not required to be registered under the Securities Act of 1933 or any **Global Law** that regulates the offering, sale or purchase of securities, including an offering, sale or purchase made pursuant to Regulation D or Regulation S under the Securities Act of 1933 or Titles II, III or IV of the JOBS Act, all as amended; or

    b.   debt securities, provided such securities were offered to the public prior to the **Policy Period**;

(ii)    made by any securityholder of an **Organization** for the failure of the **Organization** to undertake or complete the initial public offering or sale of securities of the **Organization**; or

(iii)    for any **Wrongful Act** relating to an **Organization's** preparation for any public offering, including any road show presentation to potential investors or other similar presentation, made by the **Organization** and its **Executives** via any medium in connection with such public offering, if such offering does not occur;

(8)    <u>Conduct</u>

based upon, arising from or in consequence of:

(a)    any deliberate fraud, any deliberate criminal act, or any knowing and willful violation of any **Global Law** by an **Insured**; provided that, for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** and that are not treated as a criminal violation in the United States, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate fraud, deliberate criminal act, or knowing and willful violation has occurred;

(b)    an **Insured Person** having gained any personal profit, remuneration or other financial advantage to which such **Insured Person** was not legally entitled; or

(c)    an **Organization** having gained any profit, remuneration or other financial advantage to which such **Organization** was not legally entitled,

established by a final, non-appealable adjudication in the underlying action or proceeding; provided that Paragraphs (8)(b) and (8)(c) above shall not apply to that portion of a **Securityholder Matter** for a violation of Section 11, 12, or 15 of the Securities Act of 1933, as amended, to the extent such amount is insurable under the law pursuant to which this Coverage Part is construed;

(9)    <u>Employment-Related/Third-Party</u>

based upon, arising from or in consequence of any employment-related **Wrongful Act**; or any discrimination against or harassment, including sexual harassment, of any third party; provided that this Exclusion A(9) shall not apply to **Loss** on account of any: (a) **Matter** against an **Insured Person** that is not indemnified by an **Organization** (other than a **Wage and Hour Violation**); or (b) **Securityholder Matter**;

(10)    <u>Network Security/Privacy Breach</u>

based upon, arising from or in consequence of any **Network Security or Privacy Breach**; provided that this Exclusion (A)(10) shall not apply to **Loss** on account of any: (a) **Matter** against an **Insured Person** that is not indemnified by an **Organization**; or (b) **Securityholder Matter**;

**(B)**    **EXCLUSIONS APPLICABLE TO THE ORGANIZATION ONLY**

The Company shall not be liable for any **Loss** on account of any **Matter** against an **Organization**:

(1)    <u>Contract</u>

based upon, arising from or in consequence of any liability in connection with any written contract or agreement to which an **Organization** is a party; provided that this Exclusion (B)(1) shall not apply to: (a) **Loss** on account of any **Securityholder Matter**; or (b) the extent that such **Organization** would have been liable in the absence of such contract or agreement;

(2)    Antitrust

based upon, arising from or in consequence of price fixing, restraint of trade, monopolization, unfair trade practices or any violation of the Federal Trade Commission Act, the Sherman Antitrust Act, the Clayton Act, or any other **Global Law** involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities; provided that this Exclusion (B)(2) shall not apply to **Loss** on account of any **Securityholder Matter**;

(3)    Professional Services

based upon, arising from or in consequence of the rendering of, or failure to render, any **Professional Services** by an **Insured**; provided that this Exclusion (B)(3) shall not to **Loss** on account of any **Securityholder Matter**;

(4)    Goods/Products

based upon, arising from or in consequence of:

(a)    any malfunction or vulnerability of any product or failure of any product to perform in any manner as a result of any defect, vulnerability, deficiency, inadequacy or dangerous condition in such product or in its design or manufacture; or

(b)    any false advertising, misrepresentation in advertising or unfair or deceptive trade practices, with respect to or the labeling or advertising of the **Insured's** own goods, publications or services;

provided that this Exclusion (B)(4) shall not apply to **Loss** on account of any **Securityholder Matter**;

(5)    Personal Injury

based upon, arising from or in consequence of any libel, slander, oral or written publication of defamatory or disparaging material, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium; provided that this Exclusion (B)(5) shall not apply to any **Loss** on account of any **Securityholder Matter**; or

(6)    Intellectual Property

based upon, arising from or in consequence of any infringement, misappropriation, or violation of copyright, patent, service marks, trademarks, trade secrets, title or other proprietary or licensing rights or intellectual property of any products, technologies or services; provided that this Exclusion (B)(6) shall not apply to **Loss** on account of any **Securityholder Matter**.

For the purpose of determining the applicability of the foregoing Exclusion (A)(8) above: (i) the **Wrongful Acts**, conduct, or actual knowledge of, or facts pertaining to, one **Insured** shall not be imputed to any **Insured Person**; and (ii) solely with respect to Insuring Clause (C), the **Wrongful Acts**, conduct, or actual knowledge of, or facts pertaining to the **Control Group** of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**, provided that, the foregoing Subparagraph (ii) shall not preclude the application of Exclusion (A)(8) if the **Organization** is adjudicated in its own right.

CHUBB

**Directors & Officers and Entity Liability**
*for Private Companies*

**V.    REPORTING**

(A)    An **Insured** shall give to the Company written notice of any **Claim** as soon as practicable after the **Control Group** of an **Organization** becomes aware of such **Claim**, but in no event later than:

    (1)    if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

    (2)    the expiration date of the Extended Reporting Period, if applicable;

provided that if the Company sends written notice to the **Parent Organization** stating that this Coverage Part is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

(B)    The **Insureds**, at their discretion, may give to the Company written notice of any **Inquiry** no later than ninety (90) days after the **Control Group** first becomes aware of such **Inquiry**. No coverage shall be available under this Coverage Part for **Loss** on account of any unreported **Inquiry**.

(C)    With respect to Subsections (A) and (B) above, such written notice to the Company shall be a condition precedent to coverage for any **Matter**. Provided, however, if the **Parent Organization** can prove to the Company's satisfaction that it was not reasonably possible for the **Insureds** to give such notice within the time periods set forth in Subsections (A) or (B) above and that subsequent notice was given as soon as reasonably possible thereafter, the Company shall waive the foregoing time period.

(D)    If during the **Policy Period** an **Insured** gives written notice to the Company of any circumstance which could give rise to a subsequent **Matter**, then such **Matter** subsequently arising from such circumstance shall be deemed to have been first made during the **Policy Period** in which such written notice was first given by an **Insured** to the Company; provided any such subsequent **Matter** is reported to the Company as soon as practicable after the **Control Group** first becomes aware of such **Matter**.

The **Insureds** shall give to the Company in any written notice described in Subsections (A), (B) or (D) above a description of the **Matter** or circumstance, the nature of any alleged **Wrongful Acts**, the nature of the alleged or potential damage, and the names of all actual or potential defendants.

**VI.    DEFENSE AND SETTLEMENT**

(A)    If Duty to Defend Defense is selected in Item 4(F) of the D&O portion of the Declarations, then:

    (1)    the Company shall have the right and duty to defend any **Matter** covered by this Coverage Part, including the right to select defense counsel from the current list of approved defense firms for the jurisdiction in which such **Matter** is pending;

    (2)    coverage shall apply even if any of the allegations are groundless, false or fraudulent; and

    (3)    the Company's obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Matter** shall cease upon exhaustion of the applicable Limit of Liability or Sublimit.

(B)    If Reimbursement Defense is selected in Item 4(F) of the D&O portion of the Declarations, or, if the **Insured** has the duty to defend or exercises any legal right to appoint counsel for the defense of a **Matter** covered by this Coverage Part, then:

    (1)    the **Insured** shall have the duty to defend **Matters** made against the **Insured**, including the right to select defense counsel, subject to the Company's approval which shall not be unreasonably withheld;

(2) the **Insured** agrees that: (a) defense counsel shall adhere in all respects to the Company's Litigation Management Guidelines; and (b) **Defense Costs** shall not include any costs, charges, fees or expenses: (i) that are not billed in accordance with the hourly rates agreed to between the **Insured** and the Company; (ii) that do not adhere in all respects to the Company's Litigation Management Guidelines; (iii) related to travel incurred by any firm while traveling to, from or within any state in which such firm does not maintain an office; and (iv) incurred by or through the use of local counsel. The Company shall not be liable for any such **Defense Costs** unless incurred with the Company's written consent, which shall not be unreasonably withheld; and

(3) the Company shall advance covered **Defense Costs** on a current basis on account of a **Matter** reported pursuant to Section V, Reporting, on a current basis, but no later than sixty (60) days after receipt by the Company of bills or invoices detailing such **Defense Costs** and all other information reasonably requested by the Company with respect to such bills or invoices, until such time the Limit of Liability set forth in Item 4(A) of the D&O portion of the Declarations or any applicable Sublimit has been exhausted, whichever first occurs. Any advancement of **Defense Costs** shall reduce the Limit of Liability set forth in Item 4(A) of the D&O portion of the Declarations or any applicable Sublimit.

(C) With respect to Subsections (A) and (B) above:

(1) the **Insured** agrees not to settle or offer to settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Matter** without the Company's written consent, which shall not be unreasonably withheld. The Company shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented;

(2) the **Insured** agrees, with respect to a **Matter**, to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agrees that the **Insured** shall not do anything that could prejudice the Company's position or its potential or actual rights of recovery; provided that the failure of any **Insured** to give the Company such information, assistance or cooperation shall not impair the rights of any other **Insured Person** under this Coverage Part;

(3) in the event an **Organization** refuses in writing, or fails within sixty (60) days of an **Insured Person's** written request for indemnification, to advance, pay or indemnify an **Insured Person** for **Defense Costs** on account of a **Matter** reported pursuant to Section V, Reporting, the Company shall pay or advance covered **Defense Costs** on a current basis until such time that the **Organization** accepts an **Insured Person's** request for indemnification or the Limit of Liability set forth in Item 4(A) of the D&O portion of the Declarations or applicable Sublimit has been exhausted, whichever first occurs; and

(4) any payment or advancement of **Defense Costs** shall be repaid to the Company by the **Insureds**, severally according to their respective interests, if and to the extent it is determined that such **Defense Costs** are not insured under this Coverage Part; provided the Company shall not seek repayment from an **Insured** of any **Defense Costs** paid or advanced by the Company that are deemed uninsured pursuant to Exclusion (A)(8), Conduct, unless a final, non-appealable adjudication has occurred.

## VII. ALLOCATION

(A) Except as provided in Subsection (B) below, if an **Insured** who is afforded coverage for a **Matter** incurs an amount consisting of both **Loss** that is covered by this Coverage Part and any amount that is not covered by this Coverage Part, then:

(1) one hundred percent (100%) of **Defense Costs** incurred by such **Insured** on account of such **Matter** shall be covered **Loss**; and

(2)     with respect to loss other than **Defense Costs**, the **Insureds** and the Company shall use their best efforts to determine an allocation between **Loss** that is covered and any amount that is not covered based on the relative legal and financial exposures of the covered parties to the covered matters.

(B)     Notwithstanding anything in (A) above, the **Insureds** and the Company shall use their best efforts to determine an allocation between **Loss** that is covered and any amount that is not covered based on the relative legal and financial exposures of the covered parties to the covered matters, if:

(1)     Reimbursement Defense is selected in Item (F) of the D&O portion of the Declarations;

(2)     the **Insured** has the duty to defend or exercises any legal right to appoint counsel for the defense of a **Matter** covered by this Coverage Part; or

(3)     coverage with respect to any **Insured** is excluded, in whole or in part, pursuant to Exclusion (B)(4)(b), or Subsection XII(C), Representations and Severability of the General Terms and Conditions.

## VIII.   OTHER INSURANCE

(A)     If any **Loss** under this Coverage Part is insured under any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by this Coverage Part), this Coverage Part shall be excess of and shall not contribute with such other insurance, regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

(B)     This Coverage Part shall be specifically excess of, and shall not contribute with, any valid and collectible insurance for privacy, network security or cyber liability, or professional liability, regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

(C)     The Additional Limit of Liability Dedicated For **Executives** set forth in Coverage Extension (C) shall be excess of any insurance available that is specifically excess to this Coverage Part and such excess insurance must be completely exhausted by payment of loss, damages or defense costs thereunder before the Company shall have any obligation to make any payment.

(D)     Any coverage afforded under this Coverage Part for a **Matter** in connection with an **Insured Person** serving in an **Outside Capacity** for an **Outside Entity** shall be specifically excess of any indemnity (other than any indemnity provided by an **Organization**) and insurance available to such **Insured Person** by reason of serving in such **Outside Capacity**. Notwithstanding the foregoing, if the Company or any subsidiary or affiliate of Chubb Limited ("Chubb") makes payment under another coverage part or policy on account of such **Matter**, the applicable Limit of Liability for this Coverage Part with respect to such **Matter** shall be reduced by the amount of such payment.



## SECURITYHOLDER EXCLUSION ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| DIAMOND COMIC DISTRIBUTORS INC. | | | 3 |
| Policy Number | Policy Period | | Effective Date of Endorsement |
| J06607044 | 04-01-2024    to    04-01-2025 | | April 1, 2024 |
| Issued By | | | |
| Federal Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**The ForeFront Portfolio**
**Directors & Officers and Entity Liability Coverage Part**

In consideration of the premium charged, it is agreed that the Company shall not be liable under the Directors & Officers and Entity Liability Coverage Part for **Loss** on account of any **Matter** brought or maintained by or on behalf of any natural person or entity directly or beneficially owning 10% or more of the outstanding securities or voting rights of the **Organization**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative