**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re: | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., et al., | Chapter 7 |
| Debtors.[1] | (Jointly Administered) |

**TRUSTEE'S EMERGENCY MOTION TO EXTEND DEADLINE TO ASSUME OR
REJECT EXECUTORY CONTRACTS RELATED TO CONSIGNED GOODS**

> **Emergency Hearing Requested**
>
> Section 365(d)(1) of the Bankruptcy Code requires that the Court fix a time within the 60 day period post-conversion for the Trustee to assume or reject executory contracts. For the reasons set forth below, the Trustee, in an abundance of caution, requests that the Court preserve the status quo regarding the consigned goods in his possession to allow the process the consignors requested to complete. Although the Consignors' position regarding the impact of rejection is misplaced, preserving the status quo at this juncture is in the best interests of the estate and its stakeholders and will avoid potential immediate and irreparable harm to the estates' interests in the consigned goods. Accordingly, the Trustee requests a hearing on this Motion before **March 2, 2026**.

**THE MOVANT HAS ALSO FILED A MOTION TO SHORTEN THE TIME FOR RESPONSE AND/OR FOR AN EXPEDITED HEARING. IF THAT MOTION TO SHORTEN OR EXPEDITE IS GRANTED, THE TIME TO OBJECT AND/OR DATE FOR HEARING WILL BE AS PROVIDED IN SUCH ORDER.**

Morgan W. Fisher, the Chapter 7 Trustee, in the above-captioned cases (the "Trustee"), by and through undersigned counsel, pursuant to 11 U.S.C. § 365(d)(1), Federal Rule of Bankruptcy Procedure 9006(b), and Local Bankruptcy Rule 9006-1, moves this Court for entry of an order (the "Motion") extending the deadline to assume or reject executory contracts related to certain consigned goods, including without limitation distribution agreements (collectively, the

---

[1] The Debtors in these chapter 7 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585).

"Distribution Agreements")[2] and any related transition services agreements, through the conclusion of the pending adversary proceedings concerning the competing interests in such goods. In support thereof, the Trustee states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## BACKGROUND

2. On January 14, 2025 (the "Petition Date"), Diamond Comic Distributors, Inc., Comic Holdings, Inc., Comic Exporters, Inc., and Diamond Select Toys & Collectables (collectively, the "Debtors") each commenced a case under chapter 11 of the United States Bankruptcy Code. On January 16, 2025, the Court granted the Debtors' Motion for Joint Administration and ordered the Debtors' cases be jointly administered by the Court under *In re: Diamond Comic Distributors, Inc.*, *et al.,* Case No. 25-10308-DER [ECF #41].

3. On December 12, 2025, the Debtors filed a *Motion to Convert Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code* [ECF #1070].

4. On December 19, 2025, the Court entered an *Order* [ECF #1089], inter alia, converting these cases from chapter 11 to chapter 7 effective January 1, 2025 (the "Conversion Date").

5. On December 23, 2025, the United States Trustee's Office appointed the Trustee as interim trustee [ECF #1095].

---

[2] The identities of each of the Consignors is set forth in ¶ 7.

6. On January 1, 2026, the Trustee became the duly appointed interim Chapter 7 Trustee for the Debtors' bankruptcy estates. On February 6, 2026, the Trustee conducted the first meeting of creditors, became the permanent trustee, and is so acting pursuant to 11 U. S. C. §702(d).

## *The Consignment Disputes*

7. Prior to the Conversion Date, disputes arose between the Debtors and various consignors (the "Consignors") regarding the bankruptcy estates' rights in certain consigned goods in the Debtors' possession (the "Consigned Goods").

8. In particular, the Debtors sought, and the Consignors opposed, relief to liquidate the Consigned Goods pursuant to section 363 of the Bankruptcy Code.

9. The Consignors prevailed on their procedural argument that prior to selling the Consigned Goods, the Debtors were required to file separate adversary proceedings against each of the Consigners seeking a determination of the respective parties' interests in the Consigned Goods.[3]

10. The Debtors did just that. On September 9, 2025, the Debtors initiated 32 adversary proceedings against the Consignors. See Adv. Pro. Nos. 25-00231 through 25-00262, and 25-00385 (the "Consignment Litigation").

11. Thus, the identity of each Consignor, its Distribution Agreement, and its Consigned Goods are set forth in the caption, Paragraph 1, and Exhibit A of the Complaints commencing the Consignment Litigation as follows:

| Diamond Comic Distributors, Inc. v. Ablaze LLC, Adv. No. 25-00232 (Bankr. D. Md.) |

---

[3] The Consigned Goods were this excluded from the property sold pursuant to that May 1, 2025, Order (I) Approving Asset Purchase Agreement Among the Debtors and Sparkle Pop, LLC [the "APA"]; (II) Approving Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (III) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief [Dkt. 407].

| |
|---|
| Diamond Comic Distributors, Inc. v. Action Lab Entertainment, Inc., Adv. No. 25-00233 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Aftershock Comics, LLC, Adv. No. 25-00234 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Alien Books, Adv. No. 25-00235 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. American Mythology Productions LLC, Adv. No. 25-00236 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Aspen MLT, Inc., Adv. No. 25-00237 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Avatar Press, Inc., Adv. No. 25-00385 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Battle Quest Comics, Inc., Adv. No. 25-00238 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Black Mask Studios LLC, Adv. No. 25-00239 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Boom Entertainment, Inc., Adv. No. 25-00240 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Dark Horse Comics, Inc., Adv. No. 25-00241 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Digital Manga Inc., Adv. No. 25-00242 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. DSTLRY Media, Inc., Adv. No. 25-00243 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Dynamic Forces, Inc., Adv. No. 25-00245 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Fantagraphics Books, Inc., Adv. No. 25-00246 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Goodman Games LLC, Adv. No. 25-00247 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Green Ronin Publishing LLC, Adv. No. 25-00248 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Heavy Metal Media, LLC, Adv. No. 25-00249 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Herman & Geer Communications, Inc., Adv. No. 25-00250 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Humanoids, Inc., Adv. No. 25-00251 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Living the Line, LLC, Adv. No. 25-00252 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Magnetic Press, LLC, Adv. No. 25-00253 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Massive Publishing, LLC, Adv. No. 25-00254 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Netcomics, Adv. No. 25-00255 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Oni Press, Inc., Adv. No. 25-00256 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Paizo, Inc., Adv. No. 25-00257 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Panini UK Ltd, Adv. No. 25-00258 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Titan Comics, Adv. No. 25-00259 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Udon Entertainment, Adv. No. 25-00260 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Valiant Entertainment, LLC, Adv. No. 25-00261 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Vault Storyworks LLC, Adv. No. 25-00262 (Bankr. D. Md.) |
| Diamond Comic Distributors, Inc. v. Zenescope Entertainment, Inc., Adv. No. 25-00385 (Bankr. D. Md.) |

12. At or about the same time the Debtor initiated the Consignment Litigation, the Consignors sought to compel the Debtors to assume or reject their various Distribution Agreements. See ECF #s 679 and 747.

13. In those motions, the Consignors take the position that, if rejected, the Distribution Agreements should be deemed terminated immediately, and that, pursuant to the Distribution Agreements, the Consignors should be permitted to reclaim the Consigned Goods. ECF #679 at ¶¶s 36-40.

14. That is particularly troublesome where, as is the case here, the Debtors have reported that the book value of the Consigned Goods is in excess of $47 million.[4]

15. In addition, as a result of the sale of all of the Debtors' non-Consigned Goods assets, including the Debtors' leasehold interest in its distribution center in Olive Branch, Mississippi and the Debtors' inventory management system (and other books and records), the Trustee's access to information related to the Consigned Goods is restricted, as it is available solely through the APA and related Transition Services Agreement entered into as of May 15, 2025, by and among Sparkle Pop, LLC on the one hand, and Debtors Diamond Comic Distributors, Inc. and Diamond Select Toys & Collectibles, LLC (the "TSA").[5]

16. The disputes around the Consigned Goods also involves the winning bidder as there were allegations (which were reduced to a consent order [ECF # 878]) that Sparkle Pop sold certain Consigned Goods without the Court's permission.

---

[4] This amount has not been verified by the Trustee and is contested by various other constituencies in the case. The Trustee is investigating the realizable value of the Consigned Goods which has been reported to be significantly lower than the book value assigned to it by the Debtor.

[5] Dkt. 784-4.

17. Thereafter, the parties were directed to mediation before the Honorable Thomas J. Catliota [ECF #960].

18. To the best of Trustee's knowledge, that mediation process was still underway as of the Conversion Date.

*Other Conversion Related Issues*

19. As the Court is aware, as of the Conversion Date, in addition to the 30+ consignment adversary proceedings, there is other pending litigation that impacts the Trustee's administration of these converted chapter 7 bankruptcy estates.

20. Namely, the disputes detailed in the adversary proceeding initiated by Alliance Entertainment, LLC, Adv. Pro. No. 25-0112.

21. While these disputes are not directly related to the consignment issues, the involvement of the chapter 11 professionals as named parties has created unique circumstances in terms of the Trustee's efforts to get information related to not only the consignment issues, but all debtor related information.

22. Making matters more complicated is the involvement of a DIP lender with a substantial lien on all of the estates' assets that invested substantial sums to advance the estates' (and derivatively, its own) interests in these disputes.

**RELIEF REQUESTED**

23. The Trustee requests that the Court enter an Order enlarging the time for the Trustee to assume or reject all executory contracts related to the Consigned Goods, including the Distribution Agreements and the TSA, through the conclusion of the Consignment Litigation.

**BASIS FOR RELIEF REQUESTED**

24. Section 365(d)(1) of the Bankruptcy Code states:

> In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

11 U.S.C. § 365(d)(1).

25. In turn, Bankruptcy Rule 9006(b)(1) states:

(b) Extending Time.

> (1) In General. This paragraph (1) applies when these rules, a notice given under these rules, or a court order requires or allows an act to be performed at or within a specified period. Except as provided in (2) and (3), the court may—at any time and for cause—extend the time to act if:
>
>> (A) with or without a motion or notice, a request to extend is made before the period (or a previously extended period) expires; or
>>
>> (B) on motion made after the specified period expires, the failure to act within that period resulted from excusable neglect.

26. Here, there are three compelling reasons why the Court should extend the Trustee's deadline to assume or reject the Distribution Agreements.

27. **<u>An Extension Resolves an Unnecessary Dispute</u>**. The Consignors contend that rejection would immediately terminate the Distribution Agreements and entitle them to reclaim the Consigned Goods. While the Trustee rejects this assertion, extending the deadline would entirely obviate this dispute. Indeed, it is black letter law that rejection of an executory contract (herein, the Distribution Agreements) is nothing more than a breach and that the automatic stay precludes the Consignors from seeking to enforce rights in the Consigned Goods. *See, e.g., Mission Product Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 381 (2019) ("A rejection does not terminate the contract."); *see also Thompson-Mendez*, 321 B.R. 814 (Bankr. D. Md. 2005)

(rejection of contract does not constitute abandonment of estate's interest in property and automatic stay prevents actions on behalf of non-breaching party). The Trustee's position notwithstanding, it would be irresponsible not to seek an extension of the 365(d) deadline.

28.    **The Consignment Litigation.** The Debtors, at the Consignors' insistence, initiated over 30 adversary proceedings to determine the estates' rights in the Consigned Goods. There are counterclaims and third-party claims pending therein. All the relevant parties have expended hundreds of thousands of dollars in resources in reliance on that outcome. Indeed, one of the tactical hurdles the Consignors are now discovering in having "fished their wish" of process is that they bear the heavy evidentiary burden in that litigation. It is pretty clear that the Consignors are now displeased with that outcome and are looking to end-run a process they set in motion. If the Court is inclined to agree that rejection would allow the Consignors to terminate the Distribution Agreements and divest the estates of their interests in the Consigned Goods, then the Consignors should be estopped from seeking such summary relief. Until the disputes with Consignors are resolved the Trustee also needs to extend the 365 deadline with respect to the APA and the TSA.

29.    **Trustee's Transitional Burden.** In addition to the foregoing legal and equitable principles, there are also practical considerations for extending the deadline in these cases. While the Trustee has done his best to get up to speed in these chapter 7 cases as quickly as possible, there is no hiding the fact that he inherited converted chapter 11 cases with substantial history and pending litigation. He only became the permanent trustee less than two weeks ago. He has endeavored to meet with all interested stakeholders in these proceedings as expeditiously as possible. However, the pendency of litigation against the chapter 11 professionals that administered the chapter 11 bankruptcy estates has presented a unique circumstance here. While those professionals have been cooperative, the flow of information requires the presence of other

professionals that are not commonly present at such meetings. In addition, much of the information regarding the Consigned Goods, including their present location and condition, exists with Sparkle Pop and access to books and records concerning those same Consigned Goods is also within Sparkle Pop's control.

30. Extending the 365 deadline through the conclusion of the Consignment Litigation will preserve the *status quo ante* and permit the Court to determine the estates' rights in the Consigned Goods before any decision regarding assumption or rejection of the Distribution Agreements, the APA and the TSA becomes operative.

31. No party will suffer prejudice from the requested extension. The rights of the non-Debtor parties to the executory contracts, if any, will be determined in the adversary proceedings that the Consignors insisted that the Debtor file.

32. While the Trustee attempted to resolve this Motion without the need for an emergency hearing, counsel for the Consignors would not agree.

**NATURE OF THE EMERGENCY AND NEED FOR AN EXTENDED EXTENSION**

33. 11 U.S.C. § 365(d)(1) allows an extension "within such additional time as the court, for cause, **within such 60-day period, fixes**, [at the conclusion of which] such contract or lease is deemed rejected."

34. At least one District Court in this District interpreted the same language in then § 365(d)(4)[6] as requiring that the court actually enter the extension order prior to the expiration of

---

[6]
> [I]n a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(4). This language was amended in The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 and again in 2022.

the original 60-day period. *Debartolo Prop. Mgmt., Inc. v. Devan*, 194 B.R. 46, 51 (D.Md.1996) (concluding that court no longer had statutory authority over an unexpired lease because the mere filing of a motion for an extension of time within the 60-day period without obtaining an order thereon, is insufficient for obtaining an extension). But see *U.S. ex rel. Rahman v. Oncology Associates, P.C.*, 269 B.R. 139, 163 (D.Md., 2001)("In any event, this Court would agree with the Ninth Circuit … that, if cause for an extension arises within the sixty day period and if a motion for an extension has been made within that period, a Bankruptcy Court may grant the requested extension even after the sixty day period has expired.")

35. *Debartolo* also noted, but did not decide, whether the trustee was limited to a single extension.[7] Thus, the Trustee seeks an extended extension with the right of an affected party to request that the Court require the Trustee to act sooner.

## RESERVATION OF RIGHTS

36. The Trustee expressly reserves all rights with respect to the Distribution Agreements, the APA, the TSA, the goods at issue, and the positions asserted by the Consignors in the adversary proceedings.

## NOTICE

37. This Motion has been served on the following:

    i. All Consignors or their counsel,

---

[7] It is not at all clear to this Court that § 364(d)(4) (sic) does, in fact, permit successive extensions of the time to assume or reject leases. The statute's acknowledged purpose is to "prevent trustees from taking too much time in deciding whether to assume unexpired nonresidential leases," and the plain language of the subsection explicitly contemplates only one extension. … Nevertheless, this issue has not been presented in this appeal and this Court will therefore adopt the parties' position that § 365(d)(4) permits repeated extensions of the time to reject or assume leases.

*Debartolo.*

      ii.  Sparkle Pop or its counsel,

     iii.  The U.S. Trustee,

     iv.  All CM/ECF parties, and

      v.  The Court's Manual Notice List in this case or their counsel.

**WHEREFORE,** the Trustee respectfully requests that this Court enter an order on or before March 2, 2026: (i) extending the deadline under 11 U.S.C. § 365(d)(1) to assume or reject the Distribution Agreements, the APA, and the TSA, for 30 days beyond the entry of a final Order resolving the Consignment Litigation and the Estates' rights in the Consigned Goods; (ii) providing that such extension preserves the status quo pending adjudication of those proceedings; and (iii) granting such other and further relief as the Court deems just and proper.

/s/ Zvi Guttman
Zvi Guttman (06902)
The Law Offices of Zvi Guttman, P.A.
Post Office Box 32308
Baltimore, Maryland 21282
Zvi@zviguttman.com
(410) 580-0500 (Phone)
(410) 580-0700 (Fax)

**Counsel to the Trustee**

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this February 19, 2026, copies of the aforegoing Motion were served as follows:

**CM/ECF**:

Sam Alberts sam.alberts@dentons.com, docket.general.lit.wdc@dentons.com

Peter J Artese peter.artese@us.dlapiper.com

Jodie E. Bekman jbekman@gfrlaw.com, dferguson@gfrlaw.com

Jan Berlage JBerlage@GHSLLP.com, tcollins@ghsllp.com

Hugh M. (UST) Bernstein hugh.m.bernstein@usdoj.gov

Daniel Jack Blum jack.blum@polsinelli.com, lsuprum@polsinelli.com, delawaredocketing@polsinelli.com

Laura Skowronski Bouyea lsbouyea@venable.com, dmdierdorff@venable.com

Thomas K. Bredar thomas.bredar@wilmerhale.com, andrew.goldman@wilmerhale.com, benjamin.loveland@wilmerhale.com, yolande.thompson@wilmerhale.com

Matthew G. Brushwood mbrushwood@barley.com, dkline@barley.com

Darek Bushnaq dsbushnaq@venable.com

Richard L. Costella rcostella@tydings.com, myoung@tydings.com, pcoolbaugh@tydings.com

Katherine Elizabeth Culbertson katherine.culbertson@troutman.com

David W.T. Daniels ddaniels@perkinscoie.com, docketnyc@perkinscoie.com, nvargas@perkinscoie.com, KMcClure@perkinscoie.com, rleibowitz@perkinscoie.com

G. David Dean ddean@coleschotz.com, PRatkowiak@coleschotz.com

Mark L Desgrosseilliers desgross@chipmanbrown.com, fusco@chipmanbrown.com

Emily Devan edevan@milesstockbridge.com

Ellen E. Dew ellen.dew@us.dlapiper.com

Turner Falk turner.falk@saul.com, tnfalk@recap.email, Veronica.Marchiondo@saul.com

Justin Philip Fasano jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com, tmackey@mhlawyers.com, mevans@mhlawyers.com, cmartin@mhlawyers.com, Fasano.JustinR92003@notify.bestcase.com

Ashley N Fellona ashley.fellona@saul.com, janice.mast@saul.com

Gianfranco Finizio gfinizio@lowenstein.com

Morgan W. Fisher trustee@morganfisherlaw.com, MD65@ecfcbis.com, fisher@premierremote.com

Adam Fletcher afletcher@bakerlaw.com

Chelsea R Frankel cfrankel@lowenstein.com

Jeremy S. Friedberg jeremy@friedberg.legal, ecf@friedberg.legal

Stephen B. Gerald sgerald@tydings.com

Christopher J. Giaimo christopher.giaimo@squirepb.com, christopher.giaimo@squirepb.com, christopher-j-giaimo-6409@ecf.pacerpro.com

Joshua Glikin JGlikin@shulmanrogers.com, abogert@shulmanrogers.com, mdicarlo@shulmanrogers.com

Jonathan A. Grasso jgrasso@yvslaw.com, pgomez@yvslaw.com, r39990@notify.bestcase.com

Zvi Guttman zvi@zviguttman.com, zviguttman@gmail.com, zviguttman@outlook.com, MD55@ecfcbis.com

Jeffrey C. Hampton jeffrey.hampton@saul.com

Jason F Hoffman jhoffman@bakerlaw.com

Catherine Keller Hopkin chopkin@yvslaw.com, pgomez@yvslaw.com, kreese@yvslaw.com, vmichaelides@yvslaw.com, yvslawcmecf@gmail.com, hopkincr39990@notify.bestcase.com

James R. Irving james.irving@dentons.com

Adam H Isenberg adam.isenberg@saul.com

Harry Conrad Jones HJones@coleschotz.com, bankruptcy@coleschotz.com, pratkowiak@coleschotz.com

Lawrence A. Katz lkatz@hirschlerlaw.com, chall@hirschlerlaw.com, aklena@hirschlerlaw.com

Toyja E. Kelley Toyja.Kelley@troutman.com

C. Kevin Kobbe kevin.kobbe@us.dlapiper.com, docketing-baltimore-0421@ecf.pacerpro.com

Eric George Korphage korphagee@whiteandwilliams.com

Jung Yong Lee jlee@milesstockbridge.com, mhickman@tydings.com

Gary H. Leibowitz gleibowitz@coleschotz.com, pratkowiak@coleschotz.com, bankruptcy@coleschotz.com, lmorton@coleschotz.com

Thomas J. McKee mckeet@gtlaw.com, Karrie.Barbaro@gtlaw.com, thomas--mckee-0902@ecf.pacerpro.com

Mark Minuti mark.minuti@saul.com, robyn.warren@saul.com

Randy Moonan rmoonan@sillscummis.com

William Fuller Moss william.moss@friedberg.legal

Bruce S. Nathan bnathan@lowenstein.com

Janet M. Nesse jnesse@mhlawyers.com, jfasano@mhlawyers.com, cpalik@mhlawyers.com, jnesse@ecf.inforuptcy.com, tmackey@mhlawyers.com, cmartin@mhlawyers.com, kfeig@mhlawyers.com

Craig Palik cpalik@mhlawyers.com, cpalik@ecf.inforuptcy.com, Palik.CraigR92003@notify.bestcase.com, mevans@mhlawyers.com, cmartin@mhlawyers.com

Michael Papandrea mpapandrea@lowenstein.com

Steven Gregory Polard steven.polard@ropers.com, loriann.zullo@ropers.com, calendar-LAO@ropers.com

Scott Prince sprince@bakerlaw.com

Jonathan Gary Rose jonathan.rose@us.dlapiper.com

Jordan Rosenfeld jordan.rosenfeld@saul.com

Nikolaus F. Schandlbauer nick.schandlbauer@arlaw.com, lianna.sarasola@arlaw.com

Dennis J. Shaffer dshaffer@tydings.com, scalloway@tydings.com, MYoung@tydings.com

Indira Kavita Sharma indira.sharma@troutman.com, katherine.culbertson@troutman.com, jonathan.young@troutman.com, david.ruediger@troutman.com, errol.chapman@troutman.com, toyja.kelley@troutman.com

Nicholas Smargiassi nicholas.smargiassi@saul.com

David Sommer dsommer@gallagherllp.com, ceyler@gejlaw.com, gomara@gejlaw.com, csalce@gejlaw.com, mkobylski@gejlaw.com

Brent C. Strickland bstrickland@whitefordlaw.com, mbaum@whitefordlaw.com, brent-strickland-3227@ecf.pacerpro.com

Matthew G. Summers summersm@ballardspahr.com, branchd@ballardspahr.com, heilmanl@ballardspahr.com, ambroses@ballardspahr.com, zarnighiann@ballardspahr.com, carolod@ballardspahr.com, cromartie@ballardspahr.com, stammerk@ballardspahr.com, brannickn@ballardspahr.com

S. Jason Teele steele@sillscummis.com

Paige Noelle Topper paige.topper@saul.com

US Trustee - Baltimore USTPRegion04.BA.ECF@USDOJ.GOV

**First class mail, postage prepaid, on**:

DIGITAL MANGA, INC. d/b/a DIGITAL MANGA INC.
c/o HIKARU SASAHARA
1447 W 178TH ST, STE 302
GARDENA, CA 90248

NETCOMICS
c/o YON H. CHUNG
362 SIP AVENUE, SUITE 1
JERSEY CITY, NJ 07306

VALIANT ENTERTAINMENT LLC
d/b/a VALIANT ENTERTAINMENT, LLC
c/o PARACORP INCORPORATED
2140 S Dupont HWY
Camden, DE 19934

The Court's Manual Notice List in this case (or by CM/ECF on their counsel)

/s/ Zvi Guttman