IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 7<br><br>(Jointly Administered) |

**OBJECTION TO TRUSTEE'S EMERGENCY MOTION
TO EXTEND DEADLINE TO ASSUME OR REJECT EXECUTORY
CONTRACTS RELATED TO CONSIGNED GOODS**

The *Ad Hoc* Committee of Consignors (the "Consignors")[2], by and through its undersigned counsel, files this Objection to Trustee's Emergency Motion to Extend Deadline to Assume or Reject Executory Contracts Related to Consigned Goods, and states:

**INTRODUCTION**

1. Rather than taking the time to build consensus and explore settlement opportunities, the Trustee has used the first sixty days of this case to hire a litigation team based in Florida and initiate yet further litigation with no end in sight. By filing a request to indefinitely extend the time within which he can assume or reject contracts, the Trustee has signaled that he intends to use remaining estate assets on litigation and attorney's fees rather than paying creditors. The request is completely without merit and without precedent in a chapter 7 liquidation of a non-operating entity and should be denied.

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] The Consignors herein are: (i) Ablaze, LLC, (ii) American Mythology Productions LLC, (iii) Avatar Press, Inc., (iv) Andrew Kafoury dba Battle Quest Comics, (v) Bryan Seaton dba Action Lab, (vi) Drawn & Quarterly Books Inc., (vii) Fantagraphics Books, Inc., (viii) Green Ronin Publishing LLC, (ix) Herman and Geer Communications, Inc., dba Hermes Press, (x) Living the Line LLC, (xi) Paizo, Inc., (xii) UDON Entertainment Inc., and (xiii) Zenescope Entertainment, Inc.

**BACKGROUND**

2. On January 14, 2025 (the "Petition Date"), Diamond Comic Distributors, Inc. (the "Debtor"), Comic Holdings, Inc., Comic Exporters, Inc., and Diamond Select Toys & Collectables (collectively, the "Debtors") each commenced a case under chapter 11 of the United States Bankruptcy Code. On January 16, 2025, the Court granted the Debtors' Motion for Joint Administration and ordered the Debtors' cases be jointly administered by the Court under *In re: Diamond Comic Distributors, Inc., et al.,* Case No. 25-10308-DER [Dkt. No. 41].

3. The Debtors scheduled the Distribution Agreements, as that term is defined below, on Schedule G for the Debtor. [Schedule G, Dkt. 349]  For the first five months, operated under those agreements and required the Consignors and other distributors to continue supplying product to the Debtor while the Debtor negotiated a sale that would ultimately exclude the Consignor's products. For the first five months of this proceeding, there was no question that the Consignors owned title to their products and the Debtors were only selling the product as a distributor pursuant to the respective Distribution Agreements.

4. Then, on June 25, 2025, the Debtors filed a Motion For Entry Of Order Approving (i) Procedures For Sale Or Other Disposition Of Consigned Inventory, (ii) Approving Sales Or Other Disposition Of Consigned Inventory Free And Clear Of Liens, Claims, Interests Or Encumbrances And (iii) Granting Related Relief (the "Sale Motion") [Dkt. 531], seeking Court authority for the Debtor to sell all consigned "inventory" (the "Stock") free and clear of the Consignors' interests, which collectively has a resale value of several million dollars, along with the stock owned by other publishers not included in the Consignors' committee. The Sale Motion proposed to give 100% of proceeds of such a sale to the DIP lender, JPMorgan Chase Bank N.A. (the "DIP Lender") without any adherence to the Debtor's various contracts with the Consignors (together, the "Distribution Agreements") governing the Debtor's sale of the stock. Those Distribution Agreements provided that the Consignors are the owners of the Stock, and that the Debtor must pay to the Consignors a negotiated percentage of each sale, among other material terms required of both parties.

4927-4021-3137, v. 6

5. Despite having treated the Distribution Agreements as executory contracts up until that date; scheduling them on Schedule G; and forcing the Consignors to comply with their terms, the Debtor abruptly changed course and took the position that DIP Lender's lien extended to the Stock despite the Consignor's clear title to it.

6. The Consignors objected to the Sale Motion and the Court agreed that procedurally, the Debtor was required to commence adversary proceedings against any publisher owing stock proposed to be sold in the Sale Motion – which was, in turn, all stock located in the Debtor's warehouse in Olive Branch, Mississippi (the "Olive Branch Warehouse") that has been occupied and controlled by a third party since mid-May 2025. On August 1, 2025, the Consignors filed their Motion Seeking Entry of an Order Requiring the Debtors to Assume or Reject Executory Contracts with Members of Ad Hoc Committee of Consignors and for Related Relief (the "Motion to Compel"). [Dkt. No. 679].

7. In the Motion to Compel the Consignors detailed numerous factors supporting their request to compel the Debtors to assume or reject their Distribution Agreement including: (I) the Debtor has not been performing under the Distribution Agreements, including failing to pay Consignors for Stock sold after the Petition Date, (II) Debtor did not adequately secure the Stock as evidenced by the fact that Sparkle Pop, LLC ("Sparkle Pop") sold it after the Debtor sold its other assets to Sparkle Pop (which expressly excluded the Stock) and then did not remit the proceeds, and (III) Consignors are prejudiced to the extent that they are prohibited from identifying replacement distributors, particularly because the Debtor is no longer operating the distribution business. Additionally, the Debtor's failure to comply with virtually any of its obligations under the Distribution Agreements while nevertheless holding the Stock hostage in the Mississippi warehouse controlled by a third party is causing significant loss and waste, because much of the Stock loses value over time. The Stock consists of many different publications, including periodical comic books and magazines, which typically decrease in value over time.

4927-4021-3137, v. 6

8. On September 9, 2025, the Debtor initiated individual adversary proceedings against the Consignors to determine their interest in the Consignors' stock. See Adv. Pro. Nos. 25-00231 through 25-00262, and 25-00385 (the "Consignment Litigation").

9. Contrary to the Trustee's statements in the Motion, as that term is defined below, the Consignors did not invite or want the Consignment Litigation. Rather, the Court agreed with the Consignors that the Debtor could not sell the Consignor's stock out from under them *vis a vis* the Sale Motion without first commencing the Consignment Litigation.

10. Notably, the Debtor filed the Consignment Litigation only with regard to stock provided by the Consignors and another group of consignors constituting approximately thirteen (13) other publishers. For the vast majority of other publishers that own stock sitting at the Debtor's warehouse, the Debtor failed to commence adversary proceedings and apparently does not seek any finding that Secured Lender's lien attached to that stock. It is unknown what the Trustee proposes to do with the stock that is not subject to the Consignment Litigation.

11. On December 12, 2025, the Debtors filed a Motion to Convert Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code [Dkt. No. 1070].

12. On December 19, 2025, the Court entered an Order [Dkt. No. 1089], inter alia, converting these cases from chapter 11 to chapter 7 effective January 1, 2025 (the "Conversion Date").

13. On February 19, 2026, Morgan W. Fisher, the Chapter 7 Trustee (the "Trustee"), filed the Trustee's Emergency Motion to Extend Deadline to Assume or Reject Executory Contracts Related to Consigned Goods (the "Motion") which seeks an extension of the deadline in 11 U.S.C. § 365(d)(1) to assume or reject the Debtor's Distribution Agreements with the Consignors, the Asset Purchase Agreement Among the Debtors and Sparkle Pop, LLC (the "APA"), and the Transition Services Agreement (the "TSA"), for 30 days beyond the entry of a final Order resolving the Consignment Litigation and the Estates' rights in the Consigned Goods. [Dkt. No. 1156].

14. Prior to the Trustee's Motion, the Consignors sought repeatedly to speak with the Trustee and his counsel about the case throughout the months of December 2025 and January 2026, to no avail. The Trustee was understandably very busy during this period; however, for the first six weeks of the Trustee's appointment, there has been no progress towards any type of settlement. To the contrary, the Trustee has hired a litigation team located in Florida and now is seeking an indefinite extension of contracts that should have been rejected months ago.

## LEGAL AUTHORITY

### I. The Motion is Untimely

15. In a case converted to chapter 7, § 365(d)(1) of the Bankruptcy Code provides that the Trustee has 60 days "after the order for relief" to accept or reject executory contracts, if they fail to do so "then such contract or lease is deemed rejected." Pursuant to Pursuant to § 348(c) of the Bankruptcy Code, the conversion order is treated as the order for relief to fix the time for the trustee to assume or reject executory contracts under 11 U.S.C. § 365(d). On December 19, 2025, the conversion order what entered when this Court entered its order (I) Approving Eighth Stipulation Between Debtors and JP Morgan Chase Bank, N.A., Amending DIP Credit Agreement, (II) Converting Cases From Chapter 11 to Chapter 7 of the Bankruptcy Code as of the Conversion Date, (III) Approving Certain Conversion Procedures, (IV) Setting Bar Date for Filing Final Chapter 11 Fee Applications and Establishing a Hearing Thereon, and (V) Granting Related Relief. [Dkt. No. 1089].

16. Pursuant to Bankruptcy Code §348(c), the Trustee therefore had until February 17, 2026[3], 60 days from the entry of the conversion order on December 19, 2025, to file a motion accepting or rejecting the Distribution Agreements or seeking an extension of the time to do so. Section 348(a) provides that the order for relief in a converted case is the date of conversion; while the conversion order was not effective until December 31, 2025, the Court ordered the conversion on the date that it entered the conversion order on December 19, 2025. Thus, because

---

[3] The 60-day deadline ended on a February 16, 2025, which was a Saturday, thus the Trustee's deadline was the following Monday.

5

the Trustee did not file his Motion until February 19, 2026, his Motion is untimely and as a result all of the Consignors' Distribution Agreements should be deemed rejected pursuant to 11 U.S.C. 365(d)(1).

17. The Trustee appears to rely on a provision in the conversion order that made it effective five business days after entry – which was, as this Court will recall, requested in order to permit the Debtors to transfer wires prior to the Trustee's appointment. The Bankruptcy Code measures the time for assuming or rejecting from the date of *entry* of the conversion order, however, not the effective date. Furthermore, the Trustee could have easily filed the Motion any time during the first 60 days of the case but instead chose to wait until the deadline passed.

II. **There is no Cause to Extend the Deadline for Trustee to Assume or Reject the Distribution Agreements, TSA or other similar contracts.**

18. Even if the Court were to find that the Trustee's Motion was not untimely, there is no cause to Extend the Deadline for Trustee to Assume or Reject the Distribution Agreements, TSA or other similar contracts

   a. **The Facts Weigh Against Granting an Extension of time to Assume or Reject Leases or Executory Contracts**

19. Pursuant to § 365(d)(1) of the Bankruptcy Code, a trustee may only receive additional time to assume or reject executory contracts or unexpired leases as the court allows, "for cause."

20. In determining whether such "cause" exists, the bankruptcy court in *In re Wedtech Corp.*, 72 B.R. 464, 472 (Bankr. S.D.N.Y. 1987) set forth a list of factors that weigh against granting an extension of time to assume or reject leases or executory contracts:

> (i) failure to pay for the use of property, 681 F.2d at 105, or, now in light of § 365(d)(3) in the cases of commercial leases, failure to pay the rent reserved in the lease; (ii) damage to the lessor "beyond the compensation available under the Bankruptcy Code" through the debtor's continued occupation of the land (or benefit of the contract if not real property) and its failure to pay taxes, 681 F.2d at 105-06; and (iii) where the debtor fails or is unable to formulate a plan when it has had more than enough time to do so.
> *Id.,* 681 F.2d at 106.

The Court's consideration of these factors and other relevant facts determines whether an extension should be granted and how such relief should be crafted. *See In re Beker Industries Corp.,* 64 B.R. 890, 899 (Bankr. S.D.N.Y. 1986).

21. These factors weigh heavily in favor of requiring the Debtors to assume or reject the Distribution Agreements now. As to the first factor, it is undisputed by any party that the Debtor has failed to fulfill virtually any obligation it has under the Distribution Agreements since at least May 15, 2025, if not earlier. For example:

    a. The Debtor is not distributing the Stock; is not ordering new Stock; is not paying the Consignors in full for the Stock that has been sold since the Petition Date; and as this Court knows, the Debtor permitted Sparkle Pop to sell the Stock without an assignment of the Distribution Agreements without paying any amounts to the Consignors.

    b. Here, to the best of the Consignors' understanding, the rent on the warehouse in Olive Branch Warehouse where their Stock is held is not current. When asked by the Consignors in a virtual meeting on February 10, 2026, the Trustee was not sure when rent was last paid. To date, the Trustee has not provided this information, which would be easily knowable by the Trustee. [*See, E-Mail From Consignor Counsel Dated 2/11/26,* attached as **Exhibit A**]. It is a requirement of the Distribution Agreements that the Debtor secure and store the Stock. [*See* Distribution Agreements § 3(c)].

    c. Upon information and belief, there are also hundreds of thousands of dollars of ongoing "storage fees" owed by the Debtor to Sparkle Pop, in addition to unpaid rent.

    d. Consignors have not been properly compensated for the portion of their Stock that has been sold post-petition. While the Consignors received a bargained-for payment prior to conversion, it was insufficient to pay the Consignors in full for what they are owed on account of post-petition sales; and, they have

received nothing from the sales of the Stock that Sparkle Pop made without authorization. The Debtor is benefitting from holding the Consignors' Stock indefinitely, to the detriment of the Consignors.

22. As to the second factor, the Debtors are causing damage to the interests of the Consignors "beyond the compensation available under the Bankruptcy Code" for several reasons. First, many of the publishers have exclusivity with the Debtor as their sole distributor of product. For the past nine months, these publishers have been unable to sell their product anywhere else – many of the smaller ones are facing grave financial distress due to this case. Even the larger publishers are held hostage without the ability to sell product elsewhere for some or all of the items included in the titles that the Debtor had been selling. Next, much of the Consignors' Stock is significantly diminishing in value each day it sits undistributed in the Olive Branch Warehouse, and more than a year has already passed since the Stock has been consistently and reliably distributed. The Consignors still are required to pay property taxes on the Stock, a fact that the Trustee is aware of and has declined to respond to. [E-Mail to Trustee Dated January 14, 2026, attached as **Exhibit B**] (making Trustee aware of the taxes, and asking for him to confirm ability to cure and provide adequate protection as to executory contracts). And, since the Debtor has failed to pay rent and storage fees to the current lessee of the Olive Branch Warehouse (Sparkle Pop), the Consignors cannot be certain that the Stock is secure. To further illustrate the ongoing breaches of the Debtor, one need only recall that the Debtor tolerated a third party (Sparkle Pop) selling the Stock without authorization during the period of June through August 2025, which practice only came to a stop when the Consignors brought this fact to the Court's attention in August 2025.

23. As to the third factor, the Debtors do not need to formulate a plan; the case was converted to chapter 7. The Debtors are not reorganizing and do not need the Stock in order to formulate a plan.

b. **The Debtor Has Failed to Perform Under the Distribution Agreements and the Trustee is Prohibited from Assuming Them**.

24. Pursuant to § 365(b)(1)(A), if a trustee is in default of an executory contract post-petition, the trustee may not assume the defaulted contract unless he or she can cure or provide adequate assurance that he or she will promptly cure such default. Further, "if the trustee or debtor in possession neither has performed nor has the apparent means to perform currently, a court should not grant any extension of the time to assume or reject an executory nonresidential lease." 3 Collier on Bankruptcy P 365.04 (16th ed. 2026).

25. Incredibly, the Trustee asks the Court to condone continued defaults and non-performance under the Distribution Agreements indefinitely. The Debtor has not performed under the Distribution Agreements, is not distributing any product and in fact has no ability to do so since the Debtor is not operating and has no employees, has not compensated the Consignors for what was sold, and is not paying the rent or fees necessary to store the Stock as is required under the agreements.

26. To permit an indefinite delay of a statutory requirement to assume or reject promptly, in light of continuing material defaults, would be to completely disregard §365 and the protection it affords non-debtor parties to executory contracts. Such a result would be offensive to the equitable nature of this Court in general and this proceeding in particular.

c. **The Trustee Cannot Possibly Assume the Distribution Agreements, Making an Extension Unjustified.**

19. Pursuant to § 365(b)(1)(A), the Trustee must also cure defaults in order to assume executory contracts. The Trustee does not have the means to cure the neither the monetary nor non-monetary defaults under the Distribution Agreements that are necessary in order to assume them. The Debtor's most recently filed Monthly Operating Report ("MOR") for November 2025 [Dkt. No. 1093], reflects that the Debtor's total assets are approximately $10.6 million while its total post-petition obligations are $10.08 million plus priority debt of $604k. Putting aside the fact that the vast majority of reported assets are "receivables" of which collectability and cost of

9

collection is unknown, even on its face these figures indicate that the Trustee simply is not in a position to cure the millions of dollars of unpaid obligations that have arisen under the various Distribution Agreements. The fact that the Trustee is not paying rent or storage fees as they become due; and has apparently chosen to litigate rather than seek consensus with the Consignors, puts a further strain on the assets that Debtor does have, all support a finding that the Trustee simply cannot cure the monetary defaults required to assume the Distribution Agreements.

20. The Debtor's financial condition is worsening, not improving. The Trustee knows this. Because the ability of the Trustee to assume the Distribution Agreements is nonexistent, an extension of the time to do so is unnecessary and unjustified. The request to extend time to assume these agreements is a fiction – in reality, the request is that the Court not follow the basic requirements of § 365 and instead permit a trustee to indefinitely default on obligations in order to create leverage in litigation against the Consignors.

**III.    Other Equities Weigh Strongly in Favor of Denying the Motion**

21. Section 365 of the Bankruptcy Code sets out a complete framework for how executory contracts and unexpired leases are to be handled in bankruptcy. Taken as a whole, it does not permit a debtor to keep the benefits of a contract indefinitely while postponing performance and sidestepping the cure and adequate assurance requirements that must be satisfied before assumption.

22. Letting months go by without payment, cure, or adequate assurance, while the contract is neither assumed nor rejected, undermines the statute's entire structure. It effectively reads § 365(b)(1) out of the statute and strips § 365(d)'s timing and performance requirements of real effect.

23. Section 365 is straightforward: if a debtor wants to assume, it must cure and provide adequate assurance; if it does not, the contract is rejected. Allowing extended nonperformance without assumption or rejection is inconsistent with the text of the statute and the deadlines Congress put in place, and it upsets the balance § 365 is designed to strike between

10

giving the debtor breathing room and protecting the counterparty's right to either timely performance or a clear decision.

24. The Trustee's request for an extension through thirty days after resolution of the adversary proceedings is misplaced. The requirements for assumption or rejection under §365 of the Bankruptcy Code operate independently of the adversary proceedings. Nothing in § 365 conditions a debtor's obligations to timely assume or reject on the outcome of separate litigation, nor does the statute permit indefinite delay while collateral disputes are adjudicated.

25. The Trustee asserts that "no party will suffer prejudice from the requested extension." This is far from the truth. The Consignors have been without access to or answers regarding their stock for more than a year while they continue to incur tax obligations on Stock that they do not have an accurate inventory of and continues to depreciate in value.

26. The Trustee is also estopped from wrongfully tying the resolution of the Motion to Compel under §365 to the Adversary Proceedings. The Debtor chose to force the Consignors to comply with the obligations under the Distribution Agreements through its sale to Sparkle Pop – and then after that time, forbidding the Consignors from retrieving their Stock from the Debtor after the sale to Sparkle Pop. Having chosen to continue ordering product post-petition and scheduling the Distribution Agreements as executory contracts, the Trustee (stepping into the Debtor's shoes) cannot now force a resolution of the §365 remedies to wait until the litigation against the Consignors has ended. Given that DIP Lender was aware of the Consignor's title in the Stock, and its loan documents expressly excluded the Stock from its borrowing base, to permit the Trustee to trample on the Consignors' §365 rights is particularly inequitable. (*See, e.g.* 595 B.R. 676, 681 (Bankr. D. DE 2018) (holding that a creditor like the DIP Lender with actual knowledge of the consignment terms prohibits that creditor from obtaining lien priority over the debtor's hypothetical interest of the consignor; and acknowledging that regardless of lien priority issues, the debtor does not own the consigned products regardless).

27. The Consignors are not even sure, due to unauthorized sales by Sparkle Pop and poor reporting practices, what of their Stock remains in the warehouse. Accordingly, the

Trustee's Motion should be denied, and the Trustee should be immediately required to assume or reject the Consignors' Distribution Agreements.

28. DIP Lender never claimed the Debtor's consignment goods as collateral prior to this case. The Debtor did not treat the consignment goods as collateral until June 2025, when it suddenly took this position in the Motion to Sell. The Debtor must be compelled to treat the Distribution Agreements as the executory contracts that they are, which includes requiring them to be rejected and then applying the terms of the agreements to determine the Consignors' resulting rights. (*See, e.g., In re Alongi*, 272 B.R. 148, 155 (Bankr. D. Md. 2001) (Following rejection under §365, the parties' rights are governed by the contract itself – the parties are limited to the rights and remedies provided in the contract).

WHEREFORE, for the foregoing reasons, the Consignors respectfully request that the Court consider this Objection, deny the Trustee's Motion, and grant such other and further relief as the Court deems just and appropriate.

Dated: February 25, 2026							Respectfully Submitted,

/s/ Catherine Keller Hopkin
Catherine Keller Hopkin (28257)
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401
(443) 569-0788
chopkin@yvslaw.com

Counsel for the *Ad Hoc* Committee of Consignors

4927-4021-3137, v. 6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of February 2026, notice of filing the foregoing Objection to Trustee's Emergency Motion to Extend Deadline to Assume or Reject Executory Contracts Related to Consigned Goods was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service list.

                                              /s/ Catherine Keller Hopkin
                                              Catherine Keller Hopkin

**The following parties received CM/ECF notice of the filing:**

Sam Alberts sam.alberts@dentons.com, docket.general.lit.wdc@dentons.com

Peter J Artese peter.artese@us.dlapiper.com

Jodie E. Bekman jbekman@gfrlaw.com, dferguson@gfrlaw.com

Jan Berlage JBerlage@GHSLLP.com, tcollins@ghsllp.com

Hugh M. (UST) Bernstein hugh.m.bernstein@usdoj.gov

Daniel Jack Blum jack.blum@polsinelli.com, lsuprum@polsinelli.com, delawaredocketing@polsinelli.com

Laura Skowronski Bouyea lsbouyea@venable.com, dmdierdorff@venable.com

Thomas K. Bredar thomas.bredar@wilmerhale.com, andrew.goldman@wilmerhale.com, benjamin.loveland@wilmerhale.com, yolande.thompson@wilmerhale.com

Matthew G. Brushwood mbrushwood@barley.com, dkline@barley.com

Darek Bushnaq dsbushnaq@venable.com

Richard L. Costella rcostella@tydings.com, myoung@tydings.com, pcoolbaugh@tydings.com

Katherine Elizabeth Culbertson katherine.culbertson@troutman.com

David W.T. Daniels ddaniels@perkinscoie.com, docketnyc@perkinscoie.com, nvargas@perkinscoie.com, KMcClure@perkinscoie.com, rleibowitz@perkinscoie.com

G. David Dean ddean@coleschotz.com, PRatkowiak@coleschotz.com

Mark L Desgrosseilliers desgross@chipmanbrown.com, fusco@chipmanbrown.com

Emily Devan edevan@milesstockbridge.com

Ellen E. Dew ellen.dew@us.dlapiper.com

Turner Falk turner.falk@saul.com, tnfalk@recap.email, Veronica.Marchiondo@saul.com

Justin Philip Fasano jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com, tmackey@mhlawyers.com, mevans@mhlawyers.com, cmartin@mhlawyers.com, Fasano.JustinR92003@notify.bestcase.com

Ashley N Fellona ashley.fellona@saul.com, janice.mast@saul.com

Gianfranco Finizio gfinizio@lowenstein.com

Morgan W. Fisher trustee@morganfisherlaw.com, MD65@ecfcbis.com, fisher@premierremote.com

14

Adam Fletcher afletcher@bakerlaw.com

Chelsea R Frankel cfrankel@lowenstein.com

Jeremy S. Friedberg jeremy@friedberg.legal, ecf@friedberg.legal

Stephen B. Gerald sgerald@tydings.com

Christopher J. Giaimo christopher.giaimo@squirepb.com, christopher.giaimo@squirepb.com, christopher-j-giaimo-6409@ecf.pacerpro.com

Joshua Glikin JGlikin@shulmanrogers.com, abogert@shulmanrogers.com, mdicarlo@shulmanrogers.com

Jonathan A. Grasso jgrasso@yvslaw.com, pgomez@yvslaw.com, r39990@notify.bestcase.com

Zvi Guttman zvi@zviguttman.com, zviguttman@gmail.com, zviguttman@outlook.com, MD55@ecfcbis.com

Jeffrey C. Hampton jeffrey.hampton@saul.com

Jason F Hoffman jhoffman@bakerlaw.com

Catherine Keller Hopkin chopkin@yvslaw.com, pgomez@yvslaw.com, kreese@yvslaw.com, vmichaelides@yvslaw.com, yvslawcmecf@gmail.com, hopkincr39990@notify.bestcase.com

James R. Irving james.irving@dentons.com

Adam H Isenberg adam.isenberg@saul.com

Harry Conrad Jones HJones@coleschotz.com, bankruptcy@coleschotz.com, pratkowiak@coleschotz.com

Lawrence A. Katz lkatz@hirschlerlaw.com, chall@hirschlerlaw.com, aklena@hirschlerlaw.com

Toyja E. Kelley Toyja.Kelley@troutman.com

C. Kevin Kobbe kevin.kobbe@us.dlapiper.com, docketing-baltimore-0421@ecf.pacerpro.com

Eric George Korphage korphagee@whiteandwilliams.com

Jung Yong Lee jlee@milesstockbridge.com, mhickman@tydings.com

Gary H. Leibowitz gleibowitz@coleschotz.com, pratkowiak@coleschotz.com, bankruptcy@coleschotz.com, lmorton@coleschotz.com

Thomas J. McKee mckeet@gtlaw.com, Karrie.Barbaro@gtlaw.com, thomas--mckee-0902@ecf.pacerpro.com

Mark Minuti mark.minuti@saul.com, robyn.warren@saul.com

Randy Moonan rmoonan@sillscummis.com

4927-4021-3137, v. 6

William Fuller Moss william.moss@friedberg.legal

Bruce S. Nathan bnathan@lowenstein.com

Janet M. Nesse jnesse@mhlawyers.com, jfasano@mhlawyers.com, cpalik@mhlawyers.com, jnesse@ecf.inforuptcy.com,
tmackey@mhlawyers.com, cmartin@mhlawyers.com, kfeig@mhlawyers.com

Craig Palik cpalik@mhlawyers.com, cpalik@ecf.inforuptcy.com,
Palik.CraigR92003@notify.bestcase.com,
mevans@mhlawyers.com, cmartin@mhlawyers.com

Michael Papandrea mpapandrea@lowenstein.com

Steven Gregory Polard steven.polard@ropers.com, loriann.zullo@ropers.com, calendar-LAO@ropers.com

Scott Prince sprince@bakerlaw.com

Jonathan Gary Rose jonathan.rose@us.dlapiper.com

Jordan Rosenfeld jordan.rosenfeld@saul.com

Nikolaus F. Schandlbauer nick.schandlbauer@arlaw.com, lianna.sarasola@arlaw.com

Dennis J. Shaffer dshaffer@tydings.com, scalloway@tydings.com, MYoung@tydings.com

Indira Kavita Sharma indira.sharma@troutman.com, katherine.culbertson@troutman.com,
jonathan.young@troutman.com, david.ruediger@troutman.com, errol.chapman@troutman.com,
toyja.kelley@troutman.com

Nicholas Smargiassi nicholas.smargiassi@saul.com

David Sommer dsommer@gallagherllp.com, ceyler@gejlaw.com, gomara@gejlaw.com, csalce@gejlaw.com,
mkobylski@gejlaw.com

Brent C. Strickland bstrickland@whitefordlaw.com, mbaum@whitefordlaw.com,
brent-strickland-3227@ecf.pacerpro.com

Matthew G. Summers summersm@ballardspahr.com, branchd@ballardspahr.com, heilmanl@ballardspahr.com,
ambroses@ballardspahr.com, zarnighiann@ballardspahr.com, carolod@ballardspahr.com, cromartie@ballardspahr.com,
stammerk@ballardspahr.com, brannickn@ballardspahr.com

S. Jason Teele steele@sillscummis.com

Paige Noelle Topper paige.topper@saul.com

US Trustee - Baltimore USTPRegion04.BA.ECF@USDOJ.GOV

4927-4021-3137, v. 6

**First class mail, postage prepaid, on**:

DIGITAL MANGA, INC. d/b/a DIGITAL MANGA INC.
c/o HIKARU SASAHARA
1447W 178TH ST, STE 302
GARDENA, CA 90248

NETCOMICS
c/o YON H. CHUNG
362 SIP AVENUE, SUITE 1
JERSEY CITY, NJ 07306

VALIANT ENTERTAINMENT LLC
d/b/a VALIANT ENTERTAINMENT, LLC
c/o PARACORP INCORPORATED
2140 S Dupont HWY
Camden, DE 19934

The Court's Manual Notice List in this case (or by CM/ECF on their counsel)

              /s/ Catherine Keller Hopkin
              Catherine Keller Hopkin