**SETTLEMENT AGREEMENT**

This Settlement Agreement (the "Agreement"), is effective as of the date of the last signature below ("Effective Date"), provided that it is subsequently approved by the Bankruptcy Court (defined below), and is made by and among: Morgan Fisher ("Trustee Fisher"), the duly appointed, qualified, and acting trustee for the chapter 7 bankruptcy estates of Diamond Comic Distributors, Inc., Diamond Select Toys & Collectibles, LLC, Comic Holdings, Inc., and Comic Exporters, Inc. (collectively, the "Debtors") in the Bankruptcy Case (defined below), on the one hand, and Sparkle Pop, LLC ("Sparkle Pop"), on the other hand. Trustee Fisher and Sparkle Pop are referred to below individually as "Party" or collectively as the "Parties".

WHEREAS, on January 14, 2025 ("Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") initiating the bankruptcy cases styled *In re Diamond Comic Distributors, Inc., et al.,* Case No. 25-00112 (DER) ("Bankruptcy Estates") in the Bankruptcy Court for the District of Maryland ("Bankruptcy Court");

WHEREAS, prior to the Petition Date, and thereafter, the Debtors received certain goods from distributors on consignment (the "Consigned Inventory"), pursuant to agreements (the "Consignment Agreements") which consigned goods are currently stored at the Debtors' former distribution facility in Olive Branch, Mississippi (the "Distribution Facility");

WHEREAS, after the Petition Date, a dispute arose between the Debtors, on the one hand, and the consignors, on the other hand, regarding the Debtors' ability to sell the Consigned Inventory under section 363 of the Bankruptcy Code, which dispute culminated in the Debtors' commencement of forty (40) adversary proceedings more particularly identified in Schedule 1 (the "Consignment Adversary Proceedings");

WHEREAS, in addition to the Consignment Adversary Proceedings, many consignors sought [D.I. 679 and 747] Orders from the Bankruptcy Court compelling the Debtors to assume or reject their respective Consignment Agreements;

WHEREAS, with the approval of the Bankruptcy Court, the Debtors sold substantially all of their non-consignment assets, including the leasehold interest in the Distribution Facility to Sparkle Pop, and as part of that sale, the Bankruptcy Estates are liable to Sparkle Pop for storage fees on a monthly basis measured by the space occupied at the Distribution Facility, which is currently accruing at a rate of $145,000 per month and has not been paid since November, 2025 (the "Storage Expense");

WHEREAS, after the sale to Sparkle Pop, a dispute arose between the Debtors and consignors, on the one hand, and Sparkle Pop, on the other hand, regarding post-closing sales of the Consigned Inventory by Sparkle Pop, which dispute was partially resolved in the Court's *Consent Order Resolving, in Part, Debtors' Motion (I) to Enforce the Automatic Stay, (II) to Enforce the Sale Order, and (III) Granting Related Relief* [D.I. 878] (the "Consent Order");

WHEREAS, pursuant to the Consent Order, Sparkle Pop deposited funds into the registry of the Court (the "Escrowed Proceeds") and was required to provide the Debtors, and certain consignors, an accounting regarding any and all sales of the Consigned Inventory;

WHEREAS, Trustee Fisher and Sparkle Pop have informally exchanged documentation and other information concerning the foregoing disputes;

WHEREAS, Trustee Fisher and Sparkle Pop believe that litigating the foregoing disputes to conclusion will be time consuming and prohibitively expensive with the results not clearly beneficial to either the Bankruptcy Estates or Sparkle Pop;

WHEREAS, based upon the current status of the record, Trustee Fisher and Sparkle Pop engaged in in-depth, good faith settlement negotiations of the disputes and have reached mutually agreeable settlement terms, which are set forth in this Agreement;

WHEREAS, it is the purpose and intention of the Parties that this Agreement will fully, completely, and finally resolve the disputes and any and all other disputes, known or unknown, asserted or un-asserted, by and among the Bankruptcy Estates, on the one hand, and Sparkle Pop, on the other hand; and

WHEREAS, the Parties have determined that the Agreement is fair, reasonable, adequate, and in the best interests of the Bankruptcy Estates.

NOW THEREFORE, in consideration of the foregoing and the mutual promises, undertakings and agreements contained herein, subject to Bankruptcy Court approval, the Parties agree as follows:

1. <u>Incorporation of Recitals</u>. The foregoing recitals are true and correct and incorporated herein by reference.

2. <u>Cash Consideration</u>. Sparkle Pop shall pay Trustee Fisher the following sums for the benefit of the Bankruptcy Estates (the "<u>Settlement Payment</u>"): (1) $1,000,000.00 by no later ten (10) business days after this Agreement is approved by the Bankruptcy Court; and (2) seventy-five percent (75%) of the first $1,500,000 in Net Proceeds of the Consigned Inventory, which sums shall be remitted and accounted for on a monthly basis no later than the 15th day of the following month in which any Net Proceeds are received. For purposes of this Agreement, "<u>Net Proceeds</u>" shall mean the gross proceeds of the Consigned Inventory sales actually received by Sparkle Pop less *only* an agreed thirty percent (30%) of the gross proceeds as a flat expense associated with selling the Consigned Inventory and shall not take into account any other expense, including any liability arising from any sale to any consignor. The Settlement Payment shall be made payable to Morgan Fisher, as chapter 7 trustee and shall be delivered to Eric J. Silver, Esq., 150 West Flagler, Suite 2200, Miami, Florida 33130. If made by wire transfer, arrangements can be made with Trustee Fisher.

3. <u>Allowance and Subordination of Storage Expense Claim</u>. If the Effective Date occurs before March 1, 2026, Sparkle Pop shall hold an allowed chapter 11 administrative expense

claim against the Bankruptcy Estates in the amount of $435,000, which claim shall be subordinated for distribution purposes as an allowed general unsecured claim. If the Effective Date occurs on or after March 1, 2026, Sparkle Pop shall hold an allowed chapter 11 administrative expense claim against the Bankruptcy Estates in the amount of $580,000, which claim shall be subordinated for distribution purposes as an allowed general unsecured claim. Sparkle Pop waives the right to seek to charge further storage expenses related to the Consigned Inventory against the Bankruptcy Estates.

      4.    <u>Sale and Assignment of the Bankruptcy Estates' Rights in the Consigned Inventory</u>. In consideration of the mutual promises, undertakings and agreements of the Parties set forth in this Agreement, Trustee Fisher shall sell and assign all of the Bankruptcy Estates' rights in the Consigned Inventory to Sparkle Pop including (i) the Bankruptcy Estates' causes of action asserted in the Consignment Adversary Proceedings, (ii) the Bankruptcy Estates' rights to designate any Consignment Agreements for assumption and assignment, and (iii) the Bankruptcy Estates' rights in the Escrowed Proceeds, subject only to subject to the rights of the consignors and any other party (with the exception of JP Morgan Chase Bank, N.A.) (collectively, the "<u>Acquired Assets</u>").

      5.    <u>Mutual Release.</u> Effective upon approval of this Agreement by the Bankruptcy Court, the Parties, on behalf of their respective estates (as applicable to Trustee Fisher as chapter 7 trustee for the Bankruptcy Estates) and all persons claiming through them including their respective estate professionals (as applicable to Trustee Fisher), forever remise, release, acquit, satisfy, and forever discharge one another and their affiliates, including its and their respective officers, directors, employees, agents, attorneys and members (collectively, the "<u>Released Parties</u>") and shall be deemed to have mutually remised, released, acquitted, satisfied, and forever discharged one another including their affiliates and their respective officers, directors, employees, agents, attorneys and members of and from the disputes, as well as all manner of actions, causes of action, suits, debts, covenants, contracts, controversies, agreements, promises, claims and demands whatsoever, which the Parties ever had or now have against one another, or which any personal representative, successor, heir or assign of the Parties hereafter can, shall or may have, by reason of any matter, cause or thing whatsoever, whether known or unknown, from the beginning of time to the date of this Agreement, including, without limitation, all claims, demands and defenses that were or could have been raised by the Parties in the Bankruptcy Case, or otherwise against the Released Parties; *provided, however*, that the releases contemplated herein shall not impair, impact, or diminish in any way the (i) the Bankruptcy Estates' rights to access the Debtors' books and records sold to Sparkle Pop under the Sale Order [D.I. 407] Transition Services Agreement executed in connection with the sale, (ii)Sparkle Pop's rights to pursue litigation claims arising from the Asset Purchase Agreement, Non-Disclosure Agreement and other related agreements that Sparkle Pop has asserted, or could assert, related thereto, including, without limitation, in Adversary Proceeding Number 25-00157 (DER) pending in the Bankruptcy Court, and (iii) Sparkle Pop's allowed Storage Expense claim. Sparkle Pop shall have no claim against Bankruptcy Estates pursuant to 11 U.S.C. § 502(b) or the right to assert any and all additional claims against the Bankruptcy Estates for payment of the Settlement Payment pursuant to 11 U.S.C. § 502(d) and (h). This paragraph, however, shall not operate or be construed to operate as a release or discharge of any of the Parties' obligations under this Agreement.

6. <u>Actions in Furtherance of Mutual Release</u>. By no later than ten (10) business dates after final approval of this Agreement by the Bankruptcy Court, the Parties shall take the following actions in furtherance of the Mutual Release provided above:

   a. Withdraw, with prejudice, the *Motion (I) to Enforce the Automatic Stay, (II) To Enforce the Sale Order, and (III) Granting Related Relief* [D.I. 784]; and

   b. Substitute as plaintiff, or proceed to dismiss, without prejudice, the Consignment Adversary Proceedings.

7. <u>Cure Costs; Desired Consignment Agreements</u>. By no later than three (3) business days after the Effective Date, or three (3) business days after Trustee Fisher provides Sparkle Pop with copies of all of the Consignment Agreements, whichever period is longer, Sparkle Pop shall provide Trustee Fisher a list of Consignment Agreements designated for assumption and assignment along with Sparkle Pop's proposed cure cost for each such designated Consignment Agreement. Trustee Fisher shall use commercially reasonable efforts to provide timely and proper written notice of the motion seeking approval of the Agreement to all known parties to any Consignment Agreement designated by Sparkle Pop as one to be assumed and assigned to Sparkle Pop; provided that the Bankruptcy Estates shall not be required to make any payment or grant any accommodation in connection therewith and Sparkle Pop (for any designated Consignment Agreement) shall (i) pay all cure costs relating thereto and, (ii) assume all liabilities under each Consignment Agreement, pursuant to Section 365 of the Bankruptcy Code. In the event of a dispute regarding the cure costs associated with a designated Consignment Agreement, Sparkle Pop (x) shall have sole responsibility for prosecuting that contested matter before the Bankruptcy Court, and (y) reserves the right to remove a Consignment Agreement from its list of Consignment Agreements designated for assumption and assignment. Any Consignment Agreement not designated by Sparkle Pop for assumption and assignment shall be deemed rejected. Sparkle Pop's designation of one or more of the Consignment Agreements for assumption and assignment, or an adverse decision by the Bankruptcy Court regarding the assignability of any designated Consignment Agreement, shall not increase or reduce the Settlement Payment paid by Sparkle Pop under this Agreement.

8. <u>"As Is", "Where Is", and "With All Faults" Transaction</u>. SPARKLE POP ACKNOWLEDGES AND AGREES THAT TRUSTEE FISHER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE ACQUIRED ASSETS, INCLUDING (A) FINANCIAL PROJECTIONS, REVENUES, PROFITS OR INCOME TO BE DERIVED OR COSTS OR EXPENSES TO BE INCURRED IN CONNECTION WITH THE ACQUIRED ASSETS, (B) THE PHYSICAL CONDITION OF ANY ACQUIRED ASSETS, (C) THE VALUE OF THE ACQUIRED ASSETS OR ANY PORTION THEREOF, (D) THE TRANSFERABILITY OR ASSIGNABILITY OF THE ACQUIRED ASSETS, (E) THE TERMS, AMOUNT, VALIDITY OR ENFORCEABILITY OF ANY ASSUMED LIABILITIES, (F) TITLE TO ANY OF THE ACQUIRED ASSETS OR ANY PORTION THEREOF, (G) THE MERCHANTABILITY OR FITNESS OF THE ACQUIRED ASSETS OR ANY PORTION THEREOF FOR ANY PARTICULAR

PURPOSE, OR (H) ANY OTHER MATTER OR THING RELATING TO THE ACQUIRED ASSETS OR ANY PORTION THEREOF. SPARKLE POP ACKNOWLEDGES THAT SPARKLE POP HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF ALL ACQUIRED ASSETS AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE ACQUIRED ASSETS AS SPARKLE POP DEEMS NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE ACQUIRED ASSETS SPARKLE POP IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS. ACCORDINGLY, SPARKLE POP WILL ACCEPT THE ACQUIRED ASSETS "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

9. <u>Non-Interference</u>.  Other than taking actions consistent with this Agreement, neither Trustee Fisher nor the Bankruptcy Estates shall participate in or otherwise interfere with Sparkle Pop's efforts to effectuate an expeditious resolution of the consignment disputes following approval of this Agreement by the Bankruptcy Court.

10. <u>Bankruptcy Court Approval Required.</u>  This Agreement is subject to and conditioned upon the entry of an order approving this Agreement by the Bankruptcy Court.

11. <u>Fiduciary Out</u>. Notwithstanding anything to the contrary in this Agreement, nothing in this Agreement shall require Trustee Fisher to take any action, or refrain from taking any action, related to any transaction contemplated herein to the extent Trustee Fisher determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or his fiduciary obligations under applicable law.

12. <u>Default</u>.  In the event that a Party defaults hereunder and fails to cure said default after reasonable time, the non-defaulting Party shall be entitled to an award of reasonable attorney's fees and costs relative to the enforcement of the terms of this Settlement Agreement. Notice of default may be delivered by electronic mail at the addresses provided herein.

13. <u>Acknowledgement of Terms</u>. The Parties acknowledge and agree that they have been represented by legal counsel and: (i) they have completely read and fully understand this Agreement and have voluntarily accepted the terms contained herein for the purposes of making a full and final compromise, adjustment and settlement; and (ii) they have determined that this settlement is fair and reasonable under all the circumstances and that this determination is based solely upon their independent judgment after an opportunity to consult with counsel of their choice and, that in making this determination, they have had an adequate opportunity to discuss and assess the merits of all claims or potential claims.

14. <u>Time is of the Essence</u>. Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

15. <u>Severability</u>. If any provision of this Agreement shall be held invalid, illegal or unenforceable, in whole or in part, the validity, legality, and enforceability of the remaining part

of such provision, and the validity, legality and enforceability of all other provisions hereof or thereof, shall not be affected thereby.

16. <u>Counterparts and Copies</u>. This Agreement may be executed simultaneously in two or more counterparts, by electronic signature, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.  A facsimile, .pdf or electronic copy of this Agreement and any signature hereon shall be considered for all purposes as originals and delivery of an executed counterpart.

17. <u>Merger Clause</u>. This Agreement constitutes the entire agreement of the Parties.  All prior oral and written agreements for all Parties are only those that are set forth herein and none of the Parties is relying on any promise or representation not set forth in this Agreement.  This Agreement can be amended only in writing, signed by all Parties, and none of the terms, conditions or provisions of the Agreement can be waived, changed, altered or modified except by an instrument in writing signed by all the Parties against whom enforcement of such change is sought.

18. <u>Attorneys' Fees and Costs</u>. The Parties agree to each bear their own attorneys' fees and costs incurred in connection with negotiating the terms of this Agreement, drafting revising and finalizing this Agreement, and obtaining Bankruptcy Court approval of this Agreement.  In any enforcement action relating to this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party its reasonable costs, reasonable expenses and reasonable attorneys' fees, including pre-suit investigation and execution costs, both at the trial and appellate levels.

19. <u>Choice of Law and Jurisdiction</u>. The Parties agree that the Agreement is governed by Maryland law and federal law relating to the Bankruptcy Code and consent to and agree to the Bankruptcy Court retaining and having exclusive jurisdiction to interpret and enforce the terms of this Agreement and the judgments to be issued or entered hereunder.

20. <u>Opportunity to Review</u>.  Each of the Parties acknowledges that he, she or it has read all of the terms of this Agreement, has had an opportunity to consult with counsel of their own choosing, or has voluntarily waived such right and enters into this Agreement voluntarily and without duress.

21. <u>No Third Party Beneficiaries</u>.  This Agreement, including the releases contained herein, does not create any rights in any third parties and nothing contained herein shall be deemed to establish any rights or benefits for any third person.  Notwithstanding the foregoing, this Agreement is enforceable by, and against, the Parties and their successors and assigns.

22. <u>Notices</u>. Notices to be sent pursuant to this Agreement shall be served by first class mail postage prepaid and electronic mail:

If to Trustee Fisher:

> Eric J. Silver, Esq.
> Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.
> 150 West Flagler Street, Suite 2200
> Miami, Florida 33130

        esilver@stearnsweaver.com

If to Sparkle Pop:

    Sparkle Pop, LLC
    603 Sweetland Avenue
    Hillside, NJ 07205
    Attn:  Joel Weinshanker
    Email: joelw@necaonline.com

With copies to:

Legal@adpopulumllc.com

and

Jodie E. Bekman
Gordon Feinblatt LLC
1001 Fleet Street, Suite 700
Baltimore, Maryland 21202
jbekman@gfrlaw.com

    23.    <u>Joint Drafting</u>.  This Agreement shall be deemed to have been jointly drafted by the Parties, and in construing and interpreting this Agreement, no provisions shall be construed and interpreted for or against any of the Parties because such provisions or any other provision of the Agreement as a whole is purportedly prepared or requested by such Party.

    24.    <u>Parties Cooperation</u>.  The Parties agree to cooperate to effectuate the terms of this Agreement, including obtaining Bankruptcy Court approval of this Agreement, and in connection with any remaining disputes relating to the Bankruptcy Case which involve either party.

    25.    <u>Captions</u>. Captions in this Agreement are included for identification and shall not be used to interpret the Agreement.

    26.    <u>Assignability</u>.  This Agreement may not be assigned by any Party to any other individual or entity without the prior written consent of each of the other Parties.

| **MORGAN FISHER, Trustee of the Chapter 7 Bankruptcy Estates** | **SPARKLE POP, LLC** |
|---|---|
| Sign: _____ | By: _____ <br> Its: _____ |
| Date: _____ | Date: _____ |

#14500514 v1