IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 7<br><br>(Jointly Administered) |

**MOTION RENEWING REQUEST FOR RELEASE OF CONSIGNOR'S STOCK**

The *Ad Hoc* Committee of Consignors (the "Consignors")[2], by and through its undersigned counsel, files this Motion Renewing Request for Release of Consignor's Stock, and states:

**Jurisdiction and Venue**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and procedural predicates for the relief requested in this Motion are §§ 105 and 365 of Title 11 of the United States Code (the "Bankruptcy Code").

**PROCEDURAL BACKGROUND**

3. On January 14, 2025 (the "Petition Date"), Diamond Comic Distributors, Inc. (the "Debtor"), Comic Holdings, Inc., Comic Exporters, Inc., and Diamond Select Toys & Collectables (collectively, the "Debtors") each commenced a case under chapter 11 of the United States Bankruptcy Code. On January 16, 2025, the Court granted the Debtors' Motion for Joint

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] The Consignors herein are: (i) Ablaze, LLC, (ii) American Mythology Productions LLC, (iii) Avatar Press, Inc., (iv) Andrew Kafoury dba Battle Quest Comics, (v) Bryan Seaton dba Action Lab, (vi) Drawn & Quarterly Books Inc., (vii) Fantagraphics Books, Inc., (viii) Green Ronin Publishing LLC, (ix) Herman and Geer Communications, Inc., dba Hermes Press, (x) Living the Line LLC, (xi) Paizo, Inc., (xii) UDON Entertainment Inc., and (xiii) Zenescope Entertainment, Inc.

Administration and ordered the Debtors' cases be jointly administered by the Court under *In re: Diamond Comic Distributors, Inc., et al.,* Case No. 25-10308-DER [Dkt. No. 41].

4. The Debtors scheduled the Distribution Agreements, as that term is defined below, on Schedule G for the Debtor. [Schedule G, Dkt. 349] For the first five months, the Debtor operated under those agreements and required the Consignors and other distributors to continue supplying product to the Debtor while the Debtor negotiated a sale that would ultimately exclude the Consignor's products. For the first five months of this proceeding, there was no question that the Consignors owned title to their products and the Debtors were only selling the product as a distributor pursuant to the respective Distribution Agreements.

5. Then, on June 25, 2025, the Debtors filed a Motion For Entry Of Order Approving (i) Procedures For Sale Or Other Disposition Of Consigned Inventory, (ii) Approving Sales Or Other Disposition Of Consigned Inventory Free And Clear Of Liens, Claims, Interests Or Encumbrances And (iii) Granting Related Relief (the "Sale Motion") [Dkt. 531], seeking Court authority for the Debtor to sell all consigned "inventory" (the "Stock") free and clear of the Consignors' interests, which collectively has a resale value of several million dollars, along with the stock owned by other publishers not included in the Consignors' committee. The Sale Motion proposed to give 100% of proceeds of such a sale to the DIP lender, JPMorgan Chase Bank N.A. (the "DIP Lender") without any adherence to the Debtor's various contracts with the Consignors (together, the "Distribution Agreements") governing the Debtor's sale of the stock. This relief was contrary to other cases in which a debtor was permitted to sell consignment stock, even in light of a competing secured lender's lien, but only so long as the debtor paid the consignors the consignment contract's requisite portion of the sale proceeds. *See TSA Stores, Inc. v. Wilmington Sav. Fund Soc., FSB (In re TSAWD Holdings, Inc.)*, 595 B.R. 676, 682 (Bankr. D. Del. 2018).

6. As this Court is well aware, the respective Distribution Agreements provide that the Consignors are the owners of the Stock, and that the Debtor must pay to the Consignors a negotiated percentage of each sale, among other material terms required of both parties.

7. Despite having treated the Distribution Agreements as executory contracts up until that date; scheduling them on Schedule G of the Debtor's schedules and thus acknowledging they were executory contracts; and forcing the Consignors to comply with their terms, the Debtor abruptly changed course and took the position that DIP Lender's lien extended to the Stock despite the Consignor's clear title to it.

8. The Consignors objected to the Sale Motion and the Court agreed that procedurally, the Debtor was required to commence adversary proceedings against any publisher owing stock proposed to be sold in the Sale Motion – which was, in turn, all stock located in the Debtor's warehouse in Olive Branch, Mississippi (the "Olive Branch Warehouse") that has been occupied and controlled by a third party since mid-May 2025. On August 1, 2025, the Consignors filed their Motion Seeking Entry of an Order Requiring the Debtors to Assume or Reject Executory Contracts with Members of Ad Hoc Committee of Consignors and for Related Relief (the "Motion to Compel"). [Dkt. No. 679].

9. In the Motion to Compel the Consignors detailed numerous factors supporting their request to compel the Debtors to assume or reject their Distribution Agreement including: (I) the Debtor has not been performing under the Distribution Agreements, including failing to pay Consignors for Stock sold after the Petition Date, (II) Debtor did not adequately secure the Stock as evidenced by the fact that Sparkle Pop, LLC ("Sparkle Pop") sold it after the Debtor sold its other assets to Sparkle Pop (which expressly excluded the Stock) and then did not remit the proceeds, and (III) Consignors are prejudiced to the extent that they are prohibited from identifying replacement distributors, particularly because the Debtor is no longer operating the distribution business. Additionally, the Debtor's failure to comply with virtually any of its obligations under the Distribution Agreements while nevertheless holding the Stock hostage in the Mississippi warehouse controlled by a third party is causing significant loss and waste, because much of the Stock loses value over time. The Stock consists of many different publications, including periodical comic books and magazines, which typically decrease in value over time.

10. On September 9, 2025, the Debtor initiated individual adversary proceedings against the Consignors to determine their interest in the Consignors' stock. See Adv. Pro. Nos. 25-00231 through 25-00262, and 25-00385 (the "Consignment Litigation").

11. Contrary to the Trustee's statements in the Extension Motion, as that term is defined below, the Consignors did not invite or want the Consignment Litigation. Rather, the Court agreed with the Consignors that the Debtor could not sell the Consignor's stock out from under them *vis a vis* the Sale Motion without first commencing the Consignment Litigation.

12. Notably, the Debtor filed the Consignment Litigation only with regard to stock provided by the Consignors and another group of consignors constituting approximately thirteen (13) other publishers. For the vast majority of other publishers that own stock sitting at the Debtor's warehouse, the Debtor failed to commence adversary proceedings and apparently does not seek any finding that Secured Lender's lien attached to that stock. It is unknown what the Trustee proposes to do with the stock that is not subject to the Consignment Litigation.

13. On December 12, 2025, the Debtors filed a Motion to Convert Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code [Dkt. No. 1070].

14. On December 19, 2025, the Court entered an Order [Dkt. No. 1089], inter alia, converting these cases from chapter 11 to chapter 7 effective January 1, 2025 (the "Conversion Date").

15. On February 19, 2026, Morgan W. Fisher, the Chapter 7 Trustee (the "Trustee"), filed the Trustee's Emergency Motion to Extend Deadline to Assume or Reject Executory Contracts Related to Consigned Goods (the "Extension Motion") which sought an extension of the deadline in 11 U.S.C. § 365(d)(1) to assume or reject the Debtor's Distribution Agreements with the Consignors, the Asset Purchase Agreement Among the Debtors and Sparkle Pop, LLC (the "APA"), and the Transition Services Agreement (the "TSA"), for 30 days beyond the entry of a final Order resolving the Consignment Litigation and the Estates' rights in the Consigned Goods. [Dkt. No. 1156].

16. On February 25, 2026, the Consignors filed their Objection to the Emergency Motion to Extend Deadline to Assume or Reject Executory Contracts Related to Consigned Goods. [the "Objection," Dkt. No. 1163].

17. On February 26, 2026, this Court entered an Order [Dkt. No. 1171], denying the Trustee's Extension Motion.

18. Now, the Consignors file this Motion Renewing Request for Release of Consignor's Stock ("Motion") seeking the release of their Stock from Debtor's Olive Branch Warehouse pursuant to their now rejected Distribution Agreements.

## FACTUAL BACKGROUND

19. Each of the Consignors entered into an agreement (together, the "Distribution Agreements") with Diamond Comic Distributor, Inc.,[3] which governs their various rights and obligations for the consignment of products.[4] A copy of the Distribution Agreement with Paizo, Inc. is attached hereto as **Exhibit A**.[5]

20. Each of the written Distribution Agreements provide for the following:

    (a)   the Consignors' obligation to ship their "inventory" (the "Stock") to the Debtors on a consignment basis;

    (b)   the Debtors' storage of the Stock;

    (c)   the Debtors' rights to sell and (and often be the exclusive distributor of) the Stock;

    (d)   the payment obligations to the Consignors being calculated based upon the value of the Stock sold to the Debtors' customers;

    (e)   the Consignors retain the exclusive right, title and interest in the Stock and related trademarks;

---

[3] The relief requested herein is with respect to all Debtors as the Distribution Agreements include provisions that they may be assigned to affiliates of Diamond Comic Distributors, Inc.

[4] Drawn & Quarterly Books Inc.'s agreement is governed by the parties' email correspondence and/or oral agreements with the Debtors. Drawn & Quarterly believes the material terms of its agreement with the Debtors are/should be determined to be the same as the Distribution Agreement. As such, Drawn & Quarterly seeks the same relief as is requested in this Motion by the other Consignors, and its agreement is included within the definition of "Distribution Agreements".

[5] Copies of all Distribution Agreements have been provided to the Debtors, the Committee and the U.S. Trustee. Copies of all of the Distribution Agreements will be made available to any party-in-interest upon execution of a non-disclosure agreement to protect the confidential information included therein.

5

 (f) the Distribution Agreements terminate upon the Debtors failure to make payment when due and such failure continues for 15 days after written notice to the Debtors that such amounts are owing;

 (g) the Debtors are to return the Stock to the Consignors upon termination of the Distribution Agreements; and

 (h) the Distribution Agreements are governed by Maryland law.

21. Pursuant to the Distribution Agreements, each of the Consignors has delivered Stock to the Debtors, which Stock is comprised of a mix of periodical comic books, graphic novels, graphic art publications, and other similar publications and/or games and related merchandise.

## LEGAL AUTHORITY

### I. Terms of the Distribution Agreements Govern Termination

26. Having now been rejected, whether the Distribution Agreements are also terminated depends on the terms of the Distribution Agreements themselves. "When an executory contract is rejected, the rejection 'constitutes a breach of such contract . . . (1) . . . immediately before the date of the filing of the petition; . . .'" *In re Alongi*, 272 B.R. 148, 153 (Bankr. D. Md. 2001) (citing 11 U.S.C. § 365(g)(1).

27. Such breach does not extinguish the executory contact; rather, "the rejection is treated as a prepetition breach." *Thompson-Mendez v. St. Charles at Olde Court P'ship, LLC (In re Thompson-Mendez)*, 321 B.R. 814, 818 (Bankr. D. Md. 2005)(citing *Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne),* 114 F.3d 379, 386-87 (2nd Cir. 1997))*, Mission Prod. Holdings v. Tempnology, LLC*, 587 U.S. 370, 374, 139 S. Ct. 1652, 1658, 203 L.Ed.2d 876, 883 (2019). Further, since the breach is treated as having occurred pre-petition, "the breach gives rise to remedies for the non-debtor party." *Thompson-Mendez* 321 B.R. at 818. See also, In re Printronics, Inc., 189 B.R. 995, 1000 (Bankr. N.D.Fla. 1995).

28. Such remedies come from examining the executory contract and state law, "[b]ecause a rejected contract is treated as breached and not as destroyed, it is necessary to analyze the respective rights and obligations ... that arise as a result of the effective breach. These

rights arise under state law and the Contract itself." *In re Alongi*, 272 B.R. 148, 155 (Bankr. D. Md. 2001).

29. Section 10(c) of the Distribution Agreements call for immediate termination if "[Diamond] fails to pay amounts owed to [Consignor] within the time stated in this Agreement per section 6(a) and such failure continues for more than 15 days after [Consignor] provides written notice to [Diamond] that such amounts are owing to [Consignor]." Section 6(a) requires Diamond to remit payments ("Weekly Payment Amounts") to the Consignors for Stock sold "on a weekly basis and within 60 days after [Diamond's] unofficial weekly release date to the Book Market for each product invoiced." Diamond has admittedly failed to timely make the Weekly Payment Amounts for the pendency of its bankruptcy case. While the Consignors did receive a partial payment from the Debtor on account of *some* of the administrative claims arising from Debtor's non-payment of post-petition sales, this payment did not pay all Consignors in full with respect to their total administrative claims; nor was this a timely payment. The Consignors will be filing amended proofs of claim setting forth the remaining administrative claims of known Debtor sales prior to May 15, 2025.

30. Furthermore, Diamond either (i) permitted Sparkle Pop to sell the Stock without assignment of the Distribution Agreements, or (ii) if such sales are found to have been authorized notwithstanding that the Debtor never cured or assigned those agreements, the Consignors still have not received payment on account of those sales. Regardless, there is at least approximately $850,000 held in the Court's registry with regard to sales of consigned goods after May 15, 2025; thus, the Consignors remain unpaid for sales of their consigned goods.

31. In addition, the Debtor has failed to safely secure and maintain insurance on the Stock in accordance with sections 3(c) and 8(c) of the Distribution Agreements.

32. As such, Diamond's Distribution Agreements with Consignors are not only rejected, but they have self-terminated pursuant to the terms within the Distribution Agreements.

33. Section 11(g) of the Distribution Agreements allows that "promptly upon termination of this Agreement [Consignors] will remove at [their] own expense all Products held on consignment ("Inventory") from [Diamond's] distribution center."

34. Under the terms and effects of Termination, the effect of the rejection of the Distribution agreements and subsequent termination is that the Consignors must be allowed to remove their Stock from the Olive Branch Warehouse immediately.

## II. Other Equities Weigh Strongly in Favor of Allowing Consignors to Retrieve their Stock

35. In addition to the terms found in the Distribution Agreements, there are other equitable factors that strongly support allowing the Consignors to retrieve their Stock from Debtors' warehouse.

### a. Debtor and Trustee Failed to Protect Stock from Waste and Damage

36. The Consignors have growing concerns that their Stock is being stored securely. Section 3 (c) of the Distribution Agreements require that, "Buyer will warehouse Products on consignment in a clean, dry, secure, and fire-protected facility." Section 8(c) further provides, "[Diamond] shall maintain all insurance with respect thereto in amounts sufficient to fully cover all of [Consignor's] Products stored there."

37. However, according to statements made by the Trustee at the hearing held before this Court on February 26, 2026, the Debtors' insurance coverage on the Consignors' Stock has lapsed, in breach of their requirements under the Distribution Agreements.

38. The Debtor's estate is also not current on stock fees and warehouse storage fees owed to Sparkle Pop. The Consignors believe that Sparkle Pop has not been paid since approximately November 2025, and thus the Consignors are stuck in limbo with their Stock held hostage at a warehouse that the estate no longer owns, rents, or is current with respect to ongoing rent obligations.

39. Given that the Transition Services Agreement between Sparkle Pop and the Debtor is also now rejected, it is apparent that the estate is not storing the Stock and has no means to store it any longer.

   **b. <u>Stock Continuing to be Sold and Shipped</u>**

40. Further, the Consignors recently became aware that Sparkle Pop is continuing to fulfill orders containing consigned Stock in violation of the Consent Order Resolving, in Part, Debtors' (I) Motion to Enforce the Automatic Stay (II) to Enforce the Sale Order and (III) Granting Related Relief that was entered on September 12, 2025. [the "Consent Order", Dkt. No. 878].

41. One of the Consignor's, Drawn & Quarterly Books, Inc. ("Drawn & Quarterly") has a store in Canada. Drawn & Quarterly placed an order in 2025 with Diamond that included the Stock from another Consignor, Fantagraphics Books, Inc ("Fantagraphics"). Recently, on February 26, 2026, Drawn and Quarterly received an email, a true and accurate copy of which is attached hereto as **Exhibit B** informing them that their order for Fantagraphics' product had just been shipped.

42. This is concerning as the Consignors have been given no access to, or oversight of, their Stock since the commencement of this bankruptcy case. The continued fulfillment of orders, without the Consignor's ability to verify proper control, safeguarding, and accounting of their Stock is extremely prejudicial to their interests and the preservation of its value.

43. Another Consignor, Living the Line, reports that at least 800 copies of a single title are not accounted for in any prior inventory report provided by Sparkle Pop. Thus, it is imperative that the Consignors regain possession and control of their goods because no party is accountable for missing items that are causing ongoing losses to the Consignors.

44. The Consignors have also been without access to or answers regarding their stock for more than a year while they continue to incur tax obligations on Stock that they do not have an accurate inventory of and continues to depreciate in value.

WHEREFORE, for the foregoing reasons, the Consignors respectfully request that the Court enter an order:

1. Granting this Motion;

2. Ordering the Distribution Agreements are terminated effective 5 days after entry of the Order,

3. Ordering the Consignors have 90 days from the effective date of the Order to remove their Stock from the Debtors' warehouse; and

4. Granting such other relief as this Court deems just and appropriate.

Dated: March 7, 2026					Respectfully Submitted,

/s/ Catherine Keller Hopkin
Catherine Keller Hopkin (28257)
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401
(443) 569-0788
chopkin@yvslaw.com

Counsel for the *Ad Hoc* Committee of Consignors

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of March 2026, notice of filing the foregoing Motion Renewing Request for Release of Consignor's Stock was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service list.

                                                        /s/ Catherine Keller Hopkin
                                                        Catherine Keller Hopkin

**The following parties received CM/ECF notice of the filing:**

Sam Alberts sam.alberts@dentons.com, docket.general.lit.wdc@dentons.com

Peter J Artese peter.artese@us.dlapiper.com

Jodie E. Bekman jbekman@gfrlaw.com, dferguson@gfrlaw.com

Jan Berlage JBerlage@GHSLLP.com, tcollins@ghsllp.com

Hugh M. (UST) Bernstein hugh.m.bernstein@usdoj.gov

Daniel Jack Blum jack.blum@polsinelli.com, lsuprum@polsinelli.com, delawaredocketing@polsinelli.com

Laura Skowronski Bouyea lsbouyea@venable.com, dmdierdorff@venable.com

Thomas K. Bredar thomas.bredar@wilmerhale.com, andrew.goldman@wilmerhale.com, benjamin.loveland@wilmerhale.com, yolande.thompson@wilmerhale.com

Matthew G. Brushwood mbrushwood@barley.com, dkline@barley.com

Darek Bushnaq dsbushnaq@venable.com

Richard L. Costella rcostella@tydings.com, myoung@tydings.com, pcoolbaugh@tydings.com

Katherine Elizabeth Culbertson katherine.culbertson@troutman.com

David W.T. Daniels ddaniels@perkinscoie.com, docketnyc@perkinscoie.com, nvargas@perkinscoie.com, KMcClure@perkinscoie.com, rleibowitz@perkinscoie.com

G. David Dean ddean@coleschotz.com, PRatkowiak@coleschotz.com

Mark L Desgrosseilliers desgross@chipmanbrown.com, fusco@chipmanbrown.com

Emily Devan edevan@milesstockbridge.com

Ellen E. Dew ellen.dew@us.dlapiper.com

Turner Falk turner.falk@saul.com, tnfalk@recap.email, Veronica.Marchiondo@saul.com

Justin Philip Fasano jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com, tmackey@mhlawyers.com, mevans@mhlawyers.com, cmartin@mhlawyers.com, Fasano.JustinR92003@notify.bestcase.com

Ashley N Fellona ashley.fellona@saul.com, janice.mast@saul.com

Gianfranco Finizio gfinizio@lowenstein.com

Morgan W. Fisher trustee@morganfisherlaw.com, MD65@ecfcbis.com, fisher@premierremote.com

Chelsea R Frankel cfrankel@lowenstein.com

Jeremy S. Friedberg jeremy@friedberg.legal, ecf@friedberg.legal

Stephen B. Gerald sgerald@tydings.com

Christopher J. Giaimo christopher.giaimo@squirepb.com, christopher.giaimo@squirepb.com, christopher-j-giaimo-6409@ecf.pacerpro.com

Joshua Glikin JGlikin@shulmanrogers.com, abogert@shulmanrogers.com, mdicarlo@shulmanrogers.com

Jonathan A. Grasso jgrasso@yvslaw.com, pgomez@yvslaw.com, r39990@notify.bestcase.com

Zvi Guttman zvi@zviguttman.com, zviguttman@gmail.com, zviguttman@outlook.com, MD55@ecfcbis.com

Jeffrey C. Hampton jeffrey.hampton@saul.com

Catherine Keller Hopkin chopkin@yvslaw.com, pgomez@yvslaw.com, kreese@yvslaw.com, vmichaelides@yvslaw.com, yvslawcmecf@gmail.com, hopkincr39990@notify.bestcase.com

James R. Irving james.irving@dentons.com

Adam H Isenberg adam.isenberg@saul.com

Harry Conrad Jones HJones@coleschotz.com, bankruptcy@coleschotz.com, pratkowiak@coleschotz.com

Lawrence A. Katz lkatz@hirschlerlaw.com, chall@hirschlerlaw.com, aklena@hirschlerlaw.com

Toyja E. Kelley Toyja.Kelley@troutman.com

C. Kevin Kobbe kevin.kobbe@us.dlapiper.com, docketing-baltimore-0421@ecf.pacerpro.com

Eric George Korphage korphagee@whiteandwilliams.com

Jung Yong Lee jlee@milesstockbridge.com, mhickman@tydings.com

Gary H. Leibowitz gleibowitz@coleschotz.com, pratkowiak@coleschotz.com, bankruptcy@coleschotz.com, lmorton@coleschotz.com

Thomas J. McKee mckeet@gtlaw.com, Karrie.Barbaro@gtlaw.com, thomas--mckee-0902@ecf.pacerpro.com

Mark Minuti mark.minuti@saul.com, robyn.warren@saul.com

Randy Moonan rmoonan@sillscummis.com

William Fuller Moss william.moss@friedberg.legal

Bruce S. Nathan bnathan@lowenstein.com

Janet M. Nesse jnesse@mhlawyers.com, jfasano@mhlawyers.com, cpalik@mhlawyers.com, jnesse@ecf.inforuptcy.com, tmackey@mhlawyers.com, cmartin@mhlawyers.com, kfeig@mhlawyers.com

Craig Palik cpalik@mhlawyers.com, cpalik@ecf.inforuptcy.com, Palik.CraigR92003@notify.bestcase.com, mevans@mhlawyers.com, cmartin@mhlawyers.com

Michael Papandrea mpapandrea@lowenstein.com

Steven Gregory Polard steven.polard@ropers.com, loriann.zullo@ropers.com, calendar-LAO@ropers.com

Jonathan Gary Rose jonathan.rose@us.dlapiper.com

Jordan Rosenfeld jordan.rosenfeld@saul.com

Nikolaus F. Schandlbauer nick.schandlbauer@arlaw.com, lianna.sarasola@arlaw.com

Dennis J. Shaffer dshaffer@tydings.com, scalloway@tydings.com, MYoung@tydings.com

Indira Kavita Sharma indira.sharma@troutman.com, katherine.culbertson@troutman.com, jonathan.young@troutman.com, david.ruediger@troutman.com, errol.chapman@troutman.com, toyja.kelley@troutman.com

Nicholas Smargiassi nicholas.smargiassi@saul.com

David Sommer dsommer@gallagherllp.com, ceyler@gejlaw.com, gomara@gejlaw.com, csalce@gejlaw.com, mkobylski@gejlaw.com

Brent C. Strickland bstrickland@whitefordlaw.com, mbaum@whitefordlaw.com, brent-strickland-3227@ecf.pacerpro.com

Matthew G. Summers summersm@ballardspahr.com, branchd@ballardspahr.com, heilmanl@ballardspahr.com, ambroses@ballardspahr.com, zarnighiann@ballardspahr.com, carolod@ballardspahr.com, cromartie@ballardspahr.com, stammerk@ballardspahr.com, brannickn@ballardspahr.com

S. Jason Teele steele@sillscummis.com

Paige Noelle Topper paige.topper@saul.com

US Trustee - Baltimore USTPRegion04.BA.ECF@USDOJ.GOV

**First class mail, postage prepaid, on**:

DIGITAL MANGA, INC. d/b/a DIGITAL MANGA INC.
c/o HIKARU SASAHARA
1447W 178TH ST, STE 302
GARDENA, CA 90248

NETCOMICS
c/o YON H. CHUNG
362 SIP AVENUE, SUITE 1
JERSEY CITY, NJ 07306

VALIANT ENTERTAINMENT LLC
d/b/a VALIANT ENTERTAINMENT, LLC
c/o PARACORP INCORPORATED
2140 S Dupont HWY
Camden, DE 19934

The Court's Manual Notice List in this case (or by CM/ECF on their counsel)

                                                                /s/ Catherine Keller Hopkin
                                                                Catherine Keller Hopkin

4938-4195-9316, v. 3