IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 7<br><br>(Jointly Administered) |

### MOTION RENEWING REQUEST FOR RELEASE OF CONSIGNOR'S STOCK

Boom Entertainment LLC ("Boom"),[2] by and through its undersigned counsel, files this Motion Renewing Request for Release of Consignor's Stock, and states:

### Jurisdiction and Venue

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and procedural predicates for the relief requested in this Motion are §§ 105 and 365 of Title 11 of the United States Code (the "Bankruptcy Code").

### PROCEDURAL BACKGROUND

3. On January 14, 2025 (the "Petition Date"), Diamond Comic Distributors, Inc. (the "Debtor"), Comic Holdings, Inc., Comic Exporters, Inc., and Diamond Select Toys & Collectables (collectively, the "Debtors") each commenced a case under chapter 11 of the United States Bankruptcy Code. On January 16, 2025, the Court granted the Debtors' Motion for Joint Administration and ordered the Debtors' cases be jointly administered by the Court under *In re: Diamond Comic Distributors, Inc., et al.,* Case No. 25-10308-DER [Dkt. No. 41].

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] Boom recently converted from a corporation to a limited liability company; thus, prior references to Boom indicated that it was a corporation.

4. The Debtor scheduled Boom's Distribution Agreement, as that term is defined below, on Schedule G for the Debtor. [Schedule G, Dkt. 349. Section 2.44] Notwithstanding Debtor's inclusion of Boom's Distribution Agreement as an executory contract as of the Petition Date, in reality Boom properly terminated the Distribution Agreement by written notice, in accordance with Section 10 of the Distribution Agreement, on December 4, 2024 (the "Termination Notice"), which was forty one (41) days prior to the Petition Date. A copy of the Termination Letter is attached hereto as **Exhibit 1**, and the Distribution Agreement dated January 1, 2023, is attached as **Exhibit 2.**

5. Section 2 of the Distribution Agreement provided that the initial term of the agreement ran for eighteen months as of the commencement date of January 1, 2023, which period expired prior to the date of the Termination Letter. Section 9(a) provided that either party could terminate the Agreement with at least ninety (90) days' prior written notice to the other party upon expiration of the Initial Term (i.e., January 1, 2023 through June 30, 2024) or subsequent Renewal Term (i.e. July 1, 2024 through July 1, 2025. Because the Termination Letter was sent more than ninety days prior to expiration of the first Renewal Term (which ninety day period fell on April 2, 2025), Boom properly terminated the Distribution Agreement prior to the Petition Date.

6. Then, on June 25, 2025, the Debtors filed a Motion For Entry Of Order Approving (i) Procedures For Sale Or Other Disposition Of Consigned Inventory, (ii) Approving Sales Or Other Disposition Of Consigned Inventory Free And Clear Of Liens, Claims, Interests Or Encumbrances And (iii) Granting Related Relief (the "Sale Motion") [Dkt. 531], seeking Court authority for the Debtor to sell all consigned "inventory" (the "Stock") free and clear of Boom's interests, which collectively has a resale value of several million dollars, along with the stock owned by other publishers. The Sale Motion proposed to give 100% of proceeds of such a sale to the DIP lender, JPMorgan Chase Bank N.A. (the "DIP Lender") without any adherence to the Debtor's Distribution Agreement. This relief was contrary to other cases in which a debtor was permitted to sell consignment stock, even in light of a competing secured lender's lien, but only so long as the debtor paid the consignors the consignment contract's requisite portion of the

sale proceeds. *See TSA Stores, Inc. v. Wilmington Sav. Fund Soc., FSB (In re TSAWD Holdings, Inc.)*, 595 B.R. 676, 682 (Bankr. D. Del. 2018).

7. As this Court is well aware, the respective Distribution Agreement provides that Boom is the owner of the Stock, and that the Debtor must pay to Boom a negotiated percentage of each sale, among other material terms required of both parties.

8. In light of multiple objections to the Sale Motion, the Court agreed that procedurally, the Debtor was required to commence adversary proceedings against any publisher owing stock proposed to be sold in the Sale Motion – which was, in turn, all stock located in the Debtor's warehouse in Olive Branch, Mississippi (the "Olive Branch Warehouse") that has been occupied and controlled by a third party since mid-May 2025.

9. Other consignors, identified as the *Ad Hoc* Committee of Consignors (the "Consignors") detailed numerous factors supporting their request to compel the Debtor to assume or reject their own distribution agreements including: (I) the Debtor has not been performing under the distribution agreements, including failing to pay Consignors for stock sold after the Petition Date, (II) Debtor did not adequately secure the stock as evidenced by the fact that Sparkle Pop, LLC ("Sparkle Pop") sold it after the Debtor sold its other assets to Sparkle Pop (which expressly excluded the Stock) and then did not remit the proceeds, and (III) Consignors are prejudiced to the extent that they are prohibited from identifying replacement distributors, particularly because the Debtor is no longer operating the distribution business. Additionally, the Debtor's failure to comply with virtually any of its obligations under the Distribution Agreements while nevertheless holding the Stock hostage in the Mississippi warehouse controlled by a third party is causing significant loss and waste, because much of the stock loses value over time. The stock consists of many different publications, including periodical comic books and magazines, which typically decrease in value over time.

10. On September 9, 2025, the Debtor initiated individual adversary proceedings against the consignors, including Boom, to determine their interest in the consignors' stock. See Adv. Pro. No. 25-00239 (the "Consignment Litigation").

11. Notably, the Debtor filed the Consignment Litigation only with regard to stock provided by Boom, the Consignors, and another group of consignors constituting approximately thirteen (13) other publishers. For the vast majority of other publishers that own stock sitting at the Debtor's warehouse, the Debtor failed to commence adversary proceedings and apparently does not seek any finding that Secured Lender's lien attached to that stock. It is unknown what the Trustee proposes to do with the stock that is not subject to the Consignment Litigation.

12. On December 12, 2025, the Debtors filed a Motion to Convert Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code [Dkt. No. 1070].

13. On December 19, 2025, the Court entered an Order [Dkt. No. 1089], inter alia, converting these cases from chapter 11 to chapter 7 effective January 1, 2025 (the "Conversion Date").

14. On February 19, 2026, Morgan W. Fisher, the Chapter 7 Trustee (the "Trustee"), filed the Trustee's Emergency Motion to Extend Deadline to Assume or Reject Executory Contracts Related to Consigned Goods (the "Extension Motion") which sought an extension of the deadline in 11 U.S.C. § 365(d)(1) to assume or reject the Debtor's Distribution Agreements with the Consignors, the Asset Purchase Agreement Among the Debtors and Sparkle Pop, LLC (the "APA"), and the Transition Services Agreement (the "TSA"), for 30 days beyond the entry of a final Order resolving the Consignment Litigation and the Estates' rights in the Consigned Goods. [Dkt. No. 1156].

15. On February 25, 2026, the Consignors filed their Objection to the Emergency Motion to Extend Deadline to Assume or Reject Executory Contracts Related to Consigned Goods. [the "Objection," Dkt. No. 1163].

16. On February 26, 2026, this Court entered an Order [Dkt. No. 1171], denying the Trustee's Extension Motion.

17. Now, Boom files this Motion Renewing Request for Release of Consignor's Stock ("Motion") seeking the release of its own stock from Debtor's Olive Branch Warehouse pursuant to its Distribution Agreement, which was properly terminated prior to the Petition Date.

4

## FACTUAL BACKGROUND

18. Boom's Distribution Agreement provides:

    (a) Prior to the termination, Boom had an obligation to ship its "inventory" (the "Stock") to the Debtor on a consignment basis;

    (b) The Debtor was obligated to provide (at no additional cost) storage of the Stock in the specified channels;

    (c) the Debtor had the right to sell and be the exclusive distributor of the Stock;

    (d) the payment obligations to Boom were to be calculated based upon the value of the Stock sold to the Debtor's customers;

    (e) Boom was to retain the exclusive right, title and interest in the Stock and related trademarks;

    (f) the Distribution Agreements terminate upon the Debtor's failure to make payment when due and such failure continues for 15 days after written notice to the Debtor that such amounts are owing;

    (g) the Debtor was to return the Stock to Boom upon termination of the Distribution Agreement; and

    (h) the Distribution Agreement is governed by Maryland law.

19. Pursuant to the Distribution Agreement, Boom has delivered Stock to the Debtor, which Stock is comprised of a mix of periodical comic books, graphic novels, graphic art publications, hobby games, and other similar publications and/or games and related merchandise.

## LEGAL AUTHORITY

### I. Terms of the Distribution Agreement Governs Termination

26. Boom's distribution agreement was terminated prior to the Petition Date.

27. Section 11(g) of the Distribution Agreements allows that "promptly upon termination of this Agreement [Boom] will remove at [its] own expense all Products held on consignment ("Inventory") from [Diamond's] distribution center."

28. Under the terms and effects of Termination, the effect of the rejection of the Distribution agreements and subsequent termination is that Boom must be allowed to remove its Stock from the Olive Branch Warehouse immediately.

II. **Other Equities Weigh Strongly in Favor of Allowing Boom to Retrieve its Stock**

29. In addition to the terms found in the Distribution Agreement, there are other equitable factors that strongly support allowing Boom to retrieve its Stock from Debtor's warehouse.

   a. **Debtor and Trustee Failed to Protect Stock from Waste and Damage**

30. Boom has growing concerns that its Stock is being stored unsecurely. Section 3(c) of the Distribution Agreements require that, "Buyer will warehouse Products on consignment in a clean, dry, secure, and fire-protected facility." Section 8(c) further provides, "[Diamond] shall maintain all insurance with respect thereto in amounts sufficient to fully cover all of [Consignor's] Products stored there."

31. However, according to statements made by the Trustee at the hearing held before this Court on February 26, 2026, the Debtors' insurance coverage on the Stock has lapsed, in breach of the requirements under the Distribution Agreements.

32. The Debtor's estate is also not current on stock fees and warehouse storage fees owed to Sparkle Pop. The Consignors believe that Sparkle Pop has not been paid since approximately November 2025, and thus Boom is stuck in limbo with their Stock held hostage at a warehouse that the estate no longer owns, rents, or is current with respect to ongoing rent obligations.

33. Given that the Transition Services Agreement between Sparkle Pop and the Debtor is also now rejected, it is apparent that the estate is not storing the Stock and has no means to store it any longer.

   b. **Stock Continuing to be Sold and Shipped**

34. Boom recently became aware that Sparkle Pop is continuing to fulfill orders containing consigned Stock in violation of the Consent Order Resolving, in Part, Debtors' (I) Motion to Enforce the Automatic Stay (II) to Enforce the Sale Order and (III) Granting Related Relief that was entered on September 12, 2025. [the "Consent Order", Dkt. No. 878].

35. One of the Consignors, Drawn & Quarterly Books, Inc. ("Drawn & Quarterly") has a store in Canada. Drawn & Quarterly placed an order in 2025 with Diamond that included

the Stock from another Consignor, Fantagraphics Books, Inc ("Fantagraphics"). Recently, on February 26, 2026, Drawn and Quarterly received an email, a true and accurate copy of which is attached hereto as **Exhibit 3** informing them that their order for Fantagraphics' product had just been shipped.

36. This is concerning as the consignors in this case have been given no access to, or oversight of, their Stock for several month. The continued fulfillment of orders, without the ability to verify proper control, safeguarding, and accounting of stock is extremely prejudicial to Boom's interests and the preservation of its value.

37. Another Consignor, Living the Line, reports that at least 800 copies of a single title are not accounted for in any prior inventory report provided by Sparkle Pop. Thus, it is imperative that Boom regains possession and control of its goods because no party is accountable for missing items that are causing ongoing losses to Boom and other Consignors.

38. Boom has also been without access to or answers regarding its stock for more than a year while it continues to incur tax obligations on Stock that it does not have an accurate inventory of and continues to depreciate in value.

39. Boom has also been exposed to potential claims related to their Stock still held in the Olive Branch Warehouse. Boom ran a Kickstarter[3] campaign that in addition to the new content it was developing, the purchase tiers included add-ons that purchasers could buy in order to further support the Kickstarter efforts. These add-ons consisted of a number of pieces of Boom's existing content held by Diamond. Boom, having terminated their Distribution Agreement with Diamond in December 2024, prior to the Petition Date, anticipated being able to retrieve and distribute these add-ons well before their Kickstarter fulfillment date of December 2025. Now, with Boom's Stock still being held hostage in 2026, they have not been able to ship these add-ons purchased by Kickstarter supporters, leading to a number of disgruntled customers and exposing Boom to legal claims for failing to deliver the products sold through Kickstarter.

---

[3] Kickstarter is a major crowdfunding platform designed to fund creative projects, by allowing creators to raise money from the public. Kickstarter supporters typically receive the final product and additional add-ons depending on the tiers of their donations.

WHEREFORE, for the foregoing reasons, Boom respectfully requests that the Court enter an order:

1. Granting this Motion;
2. Ordering the Distribution Agreement was terminated prior to the Petition Date, effective not later than 90 days after the date of the Termination Letter.
3. Ordering that Boom has 90 days from the effective date of the Order to remove its Stock from the Debtors' warehouse; and
4. Granting such other relief as this Court deems just and appropriate.

Dated: March 16, 2026                       Respectfully submitted,

                                                             /s/ Catherine Keller Hopkin
Catherine Keller Hopkin (28257)
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401
(443) 569-0788
chopkin@yvslaw.com

Counsel for Boom Entertainment LLC

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 16th day of March 2026, notice of filing the foregoing Motion Renewing Request for Release of Consignor's Stock was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service list.

                                                          /s/ Catherine Keller Hopkin
                                                          Catherine Keller Hopkin

**The following parties received CM/ECF notice of the filing:**

Sam Alberts sam.alberts@dentons.com, docket.general.lit.wdc@dentons.com

Peter J Artese peter.artese@us.dlapiper.com

Jodie E. Bekman jbekman@gfrlaw.com, dferguson@gfrlaw.com

Jan Berlage JBerlage@GHSLLP.com, tcollins@ghsllp.com

Hugh M. (UST) Bernstein hugh.m.bernstein@usdoj.gov

Daniel Jack Blum jack.blum@polsinelli.com, lsuprum@polsinelli.com, delawaredocketing@polsinelli.com

Laura Skowronski Bouyea lsbouyea@venable.com, dmdierdorff@venable.com

Thomas K. Bredar thomas.bredar@wilmerhale.com, andrew.goldman@wilmerhale.com, benjamin.loveland@wilmerhale.com, yolande.thompson@wilmerhale.com

Matthew G. Brushwood mbrushwood@barley.com, dkline@barley.com

Darek Bushnaq dsbushnaq@venable.com

Richard L. Costella rcostella@tydings.com, myoung@tydings.com, pcoolbaugh@tydings.com

Katherine Elizabeth Culbertson katherine.culbertson@troutman.com

David W.T. Daniels ddaniels@perkinscoie.com, docketnyc@perkinscoie.com, nvargas@perkinscoie.com, KMcClure@perkinscoie.com, rleibowitz@perkinscoie.com

G. David Dean ddean@coleschotz.com, PRatkowiak@coleschotz.com

Mark L Desgrosseilliers desgross@chipmanbrown.com, fusco@chipmanbrown.com

Emily Devan edevan@milesstockbridge.com

Ellen E. Dew ellen.dew@us.dlapiper.com

Turner Falk turner.falk@saul.com, tnfalk@recap.email, Veronica.Marchiondo@saul.com

Justin Philip Fasano jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com, tmackey@mhlawyers.com, mevans@mhlawyers.com, cmartin@mhlawyers.com, Fasano.JustinR92003@notify.bestcase.com

Ashley N Fellona ashley.fellona@saul.com, janice.mast@saul.com

Gianfranco Finizio gfinizio@lowenstein.com

Morgan W. Fisher trustee@morganfisherlaw.com, MD65@ecfcbis.com, fisher@premierremote.com

Chelsea R Frankel cfrankel@lowenstein.com

Jeremy S. Friedberg jeremy@friedberg.legal, ecf@friedberg.legal

Stephen B. Gerald sgerald@tydings.com

Christopher J. Giaimo christopher.giaimo@squirepb.com, christopher.giaimo@squirepb.com, christopher-j-giaimo-6409@ecf.pacerpro.com

Joshua Glikin JGlikin@shulmanrogers.com, abogert@shulmanrogers.com, mdicarlo@shulmanrogers.com

Jonathan A. Grasso jgrasso@yvslaw.com, pgomez@yvslaw.com, r39990@notify.bestcase.com

Zvi Guttman zvi@zviguttman.com, zviguttman@gmail.com, zviguttman@outlook.com, MD55@ecfcbis.com

Jeffrey C. Hampton jeffrey.hampton@saul.com

Catherine Keller Hopkin chopkin@yvslaw.com, pgomez@yvslaw.com, kreese@yvslaw.com, vmichaelides@yvslaw.com, yvslawcmecf@gmail.com, hopkincr39990@notify.bestcase.com

James R. Irving james.irving@dentons.com

Adam H Isenberg adam.isenberg@saul.com

Harry Conrad Jones HJones@coleschotz.com, bankruptcy@coleschotz.com, pratkowiak@coleschotz.com

Lawrence A. Katz lkatz@hirschlerlaw.com, chall@hirschlerlaw.com, aklena@hirschlerlaw.com

Toyja E. Kelley Toyja.Kelley@troutman.com

C. Kevin Kobbe kevin.kobbe@us.dlapiper.com, docketing-baltimore-0421@ecf.pacerpro.com

Eric George Korphage korphagee@whiteandwilliams.com

Jung Yong Lee jlee@milesstockbridge.com, mhickman@tydings.com

Gary H. Leibowitz gleibowitz@coleschotz.com, pratkowiak@coleschotz.com, bankruptcy@coleschotz.com, lmorton@coleschotz.com

Thomas J. McKee mckeet@gtlaw.com, Karrie.Barbaro@gtlaw.com, thomas--mckee-0902@ecf.pacerpro.com

Mark Minuti mark.minuti@saul.com, robyn.warren@saul.com

Randy Moonan rmoonan@sillscummis.com

William Fuller Moss william.moss@friedberg.legal

Bruce S. Nathan bnathan@lowenstein.com

Janet M. Nesse jnesse@mhlawyers.com, jfasano@mhlawyers.com, cpalik@mhlawyers.com, jnesse@ecf.inforuptcy.com, tmackey@mhlawyers.com, cmartin@mhlawyers.com, kfeig@mhlawyers.com

Craig Palik cpalik@mhlawyers.com, cpalik@ecf.inforuptcy.com, Palik.CraigR92003@notify.bestcase.com, mevans@mhlawyers.com, cmartin@mhlawyers.com

Michael Papandrea mpapandrea@lowenstein.com

Steven Gregory Polard steven.polard@ropers.com, loriann.zullo@ropers.com, calendar-LAO@ropers.com

Jonathan Gary Rose jonathan.rose@us.dlapiper.com

Jordan Rosenfeld jordan.rosenfeld@saul.com

Nikolaus F. Schandlbauer nick.schandlbauer@arlaw.com, lianna.sarasola@arlaw.com

Dennis J. Shaffer dshaffer@tydings.com, scalloway@tydings.com, MYoung@tydings.com

Indira Kavita Sharma indira.sharma@troutman.com, katherine.culbertson@troutman.com, jonathan.young@troutman.com, david.ruediger@troutman.com, errol.chapman@troutman.com, toyja.kelley@troutman.com

Nicholas Smargiassi nicholas.smargiassi@saul.com

David Sommer dsommer@gallagherllp.com, ceyler@gejlaw.com, gomara@gejlaw.com, csalce@gejlaw.com, mkobylski@gejlaw.com

Brent C. Strickland bstrickland@whitefordlaw.com, mbaum@whitefordlaw.com, brent-strickland-3227@ecf.pacerpro.com

Matthew G. Summers summersm@ballardspahr.com, branchd@ballardspahr.com, heilmanl@ballardspahr.com, ambroses@ballardspahr.com, zarnighiann@ballardspahr.com, carolod@ballardspahr.com, cromartie@ballardspahr.com, stammerk@ballardspahr.com, brannickn@ballardspahr.com

S. Jason Teele steele@sillscummis.com

Paige Noelle Topper paige.topper@saul.com

US Trustee - Baltimore USTPRegion04.BA.ECF@USDOJ.GOV