**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
<u>(Baltimore Division)</u>**

|  |  |  |
|---|---|---|
| In re: | : | Case No. 25-10308 (DER) |
|  | : | Chapter 7 |
| DIAMOND COMIC DISTRIBUTORS, | : | (Jointly Administered) |
| INC., *et al.*, | : |  |
|  | : |  |
| Debtors. | : |  |

**RESPONSE BY SPARKLE POP, LLC TO MOTIONS RENEWING
<u>REQUEST FOR RELEASE OF CONSIGNOR'S STOCK</u>**

Sparkle Pop, LLC ("Sparkle Pop"), by its counsel, files this Response to the Motions Renewing Request for Release of Consignor's Stock (the "Motions") filed by the *Ad Hoc* Committee of Consignors[1] and Boom Entertainment LLC (collectively, the "Consignors").

**<u>Facts and Procedural Background</u>**

1.      On January 14, 2025 (the "Petition Date"), Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On December 19, 2025, this Court entered an order converting Debtors' cases from Chapter 11 to Chapter 7 effective on January 1, 2026. Morgan Fisher (the "Trustee") was subsequently appointed as Chapter 7 Trustee in Debtors' cases.

2.      Debtor Diamond Comic Distributors, Inc.'s ("Debtor") inventory of consigned goods is stored in a distribution facility located in Olive Branch, Mississippi (the "Mississippi Facility").

---

[1] The *Ad Hoc* Committee of Consignors consists of: (1) Ablaze, LLC; (2) American Mythology Productions LLC; (3) Avatar Press, Inc.; (4) Adrew Kafoury d/b/a Battle Quest Comics; (5) Bryan Seaton d/b/a Action Lab; (6) Drawn & Quarterly Books Inc.; (7) Fantagraphics Books, Inc.; (8) Green Ronin Publishing LLC; (9) Herman and Geer Communications, Inc. d/b/a Hermes Press; (10) Living the Line LLC; (11) Paizo, Inc.; (12) UDON Entertainment Inc.; and (13) Zenescope Entertainment, Inc.

3. On May 1, 2025, this Court entered an order approving the sale of certain of Debtor's assets to Sparkle Pop, which sale closed on May 16, 2025.

4. As part of the sale, on the closing date, Debtor turned over control of the Mississippi Facility to Sparkle Pop but maintained its rights to the consigned goods inventory pursuant to, among other things, the Transition Services Agreement between Debtor and Sparkle Pop dated May 15, 2025, in return for which Debtor agreed, among other things, to pay Sparkle Pop monthly rent for storing the consigned goods.

5. Disputes subsequently arose between the Consignors and Debtor over who owned the consigned goods and who had the right to sell these goods and retain the proceeds.

6. As a result of these disputes, among others, Debtor initiated adversary proceedings and filed separate Complaints to Determine the Validity, Priority or Extent of a Lien or Other Interest in Property (collectively, the "Complaints") against the Consignors (other than Drawn & Quarterly Books Inc.) (collectively, the "Adversary Proceedings").

7. In the Complaints, Debtor seeks declaratory judgments that (a) Debtor has an interest in the consigned goods that is superior to the interests of the Consignors; (b) Debtor's interest in the consigned goods constitutes property of Debtor's estate; and (c) Debtor can sell or otherwise dispose of the consigned goods.

8. In these Adversary Proceedings, the Consignors who have answered the Complaints have also filed Third-Party Complaints against Sparkle Pop and JP Morgan Chase.

9. Scheduling Orders have been agreed to in each of the Adversary Proceedings, but discovery has not yet commenced.

GFRDOCS\64822\158771\12451329.v1-3/18/26

10. On February 19, 2026, the Trustee filed a motion to extend the deadline for the Trustee to assume or reject certain agreements including the distribution agreements between Debtor and the Consignors. The Consignors opposed this motion to extend.

11. On February 26, 2026, this Court denied the motion to extend. The Trustee has since noted an appeal of this Court's order denying the motion to extend.

12. On March 7, 2026, the *Ad Hoc* Committee of Consignors filed the Motion Renewing Request for Release of Consignor's Stock. On March 16, 2026, Boom Entertainment LLC filed its Motion Renewing Request for Release of Consignor's Stock.

13. Sparkle Pop does not contend that it has any ownership interest in the consigned goods other than as set forth herein. Sparkle Pop further does not take any position as to whether the Trustee or the Consignors has a superior interest in the consigned goods.

14. Sparkle Pop does have serious concerns and a vested interest in the consigned goods to the extent that, among other things, (a) rent/storage fees are in arrears and there is no guarantee that future rent payments will be made; (b) no payments have been remitted to Sparkle Pop for its processing fees for goods that have been sold; and (c) it will be an extremely expensive and time consuming process for Sparkle Pop to organize, pack and move the consigned goods to the loading docks for whomever (whether it be the Trustee or the Consignors) ultimately is determined to be the owner of the consigned goods.

15. With respect to the rent/storage arrearages, Sparkle Pop has not received any rent/storage payments from Debtor (or any of the Consignors) since November 2025.

16. On March 11, 2026, Sparkle Pop filed an administrative claim in Debtor's bankruptcy proceeding for the amount of rent owed since November 2025, which exceeds $500,000.00. Rent continues to be incurred in the monthly amount of approximately $125,000.00.

17.     In addition, with respect to any sales that have been processed, Sparkle Pop is owed its processing fee in the amount of thirty-percent (30%).

18.     Finally, it will be a very cumbersome and expensive process for Sparkle Pop to make the consigned goods available for retrieval whether that be by the Trustee or the Consignors. This difficulty exists because, among other things, (a) the consigned goods are not organized by consignor; and (b) the consigned goods are not packaged or otherwise ready to be retrieved. The market rate for these types of goods to be "Picked and Packed" and moved to the loading docks for retrieval will ultimately depend on how the owners of these consigned goods want the goods to be staged.

### Legal Analysis and Argument

19.     As stated above, Sparkle Pop does not take a position as to whether the Trustee or the Consignors owns the consigned goods and has the right to direct how or when they are sold and how the proceeds are ultimately distributed.

20.     It is clear, however, that there are ongoing disputes between the Trustee and the Consignors over who has a superior right to the consigned goods which are the subject of tens of adversary proceedings.

21.     The mere fact that the distribution agreements have been rejected does not lead to the legal conclusion that these agreements are all now terminated and that, as a result, the Consignors own the consigned goods. Indeed, the Consignors do not cite any cases that support this proposition.

22.     Further, even if it did, the Trustee has appealed this Court's decision to deny the Trustee's motion to extend the time to assume or reject the distribution agreements. If this decision is ultimately reversed on appeal, it would defeat the Consignors' positions taken in the Motions.

GFRDOCS\64822\158771\12451329.v1-3/18/26

23. To the extent that the Trustee still claims an interest in the consigned goods, those claims should be adjudicated in the already pending Adversary Proceedings. To grant the Motions would improperly circumvent these Adversary Proceedings.

24. Granting the Motions would also have an adverse effect on Sparkle Pop not only because it is also a third-party defendant in the Adversary Proceedings, but because of Sparkle Pop's interests in ensuring that it is compensated (a) for past-due rent arrearages, (b) for its processing fees for sales made, and (c) for arranging, organizing and packaging the consigned goods for pickup (whether that ultimately is by the Trustee or each of the Consignors). To that end, Sparkle Pop contends that it may have a warehouseman's lien under Mississippi law with respect to these consigned goods and is exploring its legal options in Mississippi under Mississippi law.

25. As previously referenced, these consigned goods are being safely stored in Sparkle Pop's possession at the Mississippi Facility.[2]

26. While there is an expedited need to determine ownership of these consigned goods and to have them retrieved from the Mississippi Facility, this cannot be done without considering the rights of all parties involved, not just the Consignors.

27. Accordingly, this Court should deny the Motions.

WHEREFORE, Sparkle Pop respectfully requests that this Court:

(a) Deny the Motions; and

(b) Grant such other and further relief as may be just and appropriate under the circumstances.

---

[2] Sparkle Pop disputes the Consignors' claims in the Motions against Sparkle Pop that, among other things, the consigned goods are not safely secured at the Mississippi Facility.

GFRDOCS\64822\158771\12451329.v1-3/18/26

Respectfully submitted,

Dated: March 18, 2026

     */s/  Jodie E. Bekman*
Jodie E. Bekman (Bar No. 26004)
Gordon Feinblatt LLC
1001 Fleet Street, Suite 700
Baltimore, MD 21202
T/F: (410) 576-4082
jbekman@gfrlaw.com

Attorneys for Sparkle Pop, LLC

6

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of March 2026, the foregoing Response by Sparkle Pop LLC, to Motions Renewing Request for Release of Consignor's Stock was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service list.

*/s/ Jodie E. Bekman*

Jodie E. Bekman

GFRDOCS\64822\158771\12451329.v1-3/18/26