**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE DIVISION)**

| | |
|---|---|
| In re: | Chapter 7 |
| Diamond Comic Distributors, Inc., *et al.* | Case No. 25-10308 (DER) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 1189, 1230** |

**JPMORGAN CHASE BANK, N.A.'S RESERVATION OF RIGHTS
AND LIMITED OBJECTION TO THE MOTIONS RENEWING
REQUEST FOR RELEASE OF CONSIGNORS' STOCK**

JPMorgan Chase Bank, N.A., in its capacity as Prepetition Lender and DIP Lender ("JPMorgan") and by and through its undersigned counsel, files this reservation of rights and limited objection (this "Limited Objection"), to (i) the *Motion Renewing Request for Release of Consignor's Stock* [Dkt. No. 1189] filed by the Ad Hoc Committee of Consignors (the "Ad Hoc Committee")[2] and (ii) the *Motion Renewing Request for Release of Consignor's Stock* [Dkt. No. 1230] filed by Boom Entertainment, LLC ("Boom Entertainment") (collectively, the "Motions for Release"). In support of this Limited Objection, JPMorgan respectfully states as follows:

**Background**

**A.    The Debtors' Bankruptcy Cases**

1.      On January 14, 2025 (the "Petition Date"), the Debtors each filed a voluntary

---

[1] The Debtors in these chapter 7 cases and the last four (4) digits of each Debtor's federal taxpayer identification number are as follows: Diamond Comic Distributors, Inc. (3450), Comic Exporters, Inc (7457), Comic Holdings, Inc. (7458), and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] The Ad Hoc Committee consists of the following thirteen (13) jointly represented consignors: (i) Ablaze, LLC, (ii) American Mythology Productions LLC, (iii) Avatar Press, Inc., (iv) Andrew Kafoury d/b/a Battle Quest Comics, (v) Bryan Seaton d/b/a Action Lab, (vi) Drawn & Quarterly Books Inc., (vii) Fantagraphics Books, Inc., (viii) Green Ronin Publishing LLC, (ix) Herman and Geer Communications, Inc. d/b/a Hermes Press, (x) Living the Line LLC; (xi) Paizo, Inc., (xii) UDON Entertainment Inc., and (xiii) Zenescope Entertainment, Inc.

1

petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Maryland (the "Court") commencing these cases (the "Chapter 11 Cases"). During the Chapter 11 Cases, the Debtors operated their business and managed their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 29, 2025, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee").

2. On February 19, 2025, the Court entered its *Final Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Dkt. No. 163] (the "Final DIP Order") pursuant to which, among other things, the Debtors were granted authority to obtain senior secured postpetition financing pursuant to the terms and conditions of the Final DIP Order and that certain senior secured Debtor-in-Possession Credit Agreement, dated as of January 16, 2025 (as amended from time to time, the "DIP Credit Agreement").[3]

3. On December 19, 2025, the Court entered the *Order (I) Approving Eighth Stipulation between Debtors and JPMorgan Chase Bank, N.A., amending DIP Credit Agreement, (II) Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code as of Conversion Date, (III) Approving Certain Conversion Procedures (IV) Setting Bar Date for Filing Final Chapter 11 Fee Applications and Establishing a Hearing Thereon, and (V) Granting Related Relief* [Dkt. No. 1089] (the "Conversion Order"), which, among other things, converted the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. On December 31, 2025, the

---

[3] The DIP Credit Agreement was subsequently amended ten (10) times pursuant to this Court's Orders Approving Stipulations Between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement [Dkt. Nos. 243, 345, 409, 470, 569, 788, 982, & 1089].

251164320v2

conversion date occurred (the "Conversion Date").

4.      On December 23, 2025, the U.S. Trustee appointed Morgan W. Fisher as interim chapter 7 trustee (the "Trustee") of the Debtors' bankruptcy estates [Dkt. No. 1095], and on January 1, 2026, the Trustee became the duly appointed interim Chapter 7 trustee for the Debtors' bankruptcy estates. On February 6, 2026, the Trustee conducted the first Section 341 Meeting of Creditors, became the permanent trustee and is so acting pursuant to 11 U.S.C. § 702(d).

5.      On February 19, 2026, the Trustee filed the *Trustee's Motion to Extend Deadline to Assume or Reject Executory Contracts Related to Consigned Goods* [Dkt. No. 1156] to extend the Trustee's deadline to assume or reject certain agreements, including the distribution agreements between the Debtors and consignment vendors (collectively, the "Consignment Vendors"). On February 26, 2026, the Court entered an *Order Denying Emergency Motion to Extend Time to Assume or Reject Executory Contracts Related to Consigned Goods* [Dkt. No. 1157](the "Order Denying Motion to Extend"). The Trustee subsequently filed a Notice of Appeal of the Order Denying Motion to Extend to the United States District Court.

B.   **The Consignment Litigation**

6.      On June 25, 2025, the Debtors filed the *Motion for Entry of an Order Approving (I) Procedures for Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances, and (III) Granting Related Relief* (the "Consignment Sale Motion") [Dkt. No. 531], seeking approval to sell inventory (the "Consignment Inventory") shipped to the Debtors on a consignment basis by the Consignment Vendors.

7.      On July 24, 2025, the Ad Hoc Committee filed the *Ad Hoc Committee of Consignors' Motion to Stay Debtors' Motion for Entry of an Order Approving (I) Procedures for*

3

*Sale or Other Disposition of Consigned Inventory, (II) Approving Sales or Other Disposition of Consigned Inventory Free and Clear of Liens, Claims, Interests or Encumbrances, and (III) Granting Related Relief* [Dkt. No. 649] (the "Motion to Stay").

8.      On August 1, 2025, the Ad Hoc Committee filed the *Ad Hoc Committee of Consignors' Motion Seeking Entry of an Order Requiring the Debtors to Assume or Reject Executory Contracts with Members of Ad Hoc Committee of Consignors; and For Related Relief* [Dkt. No. 679], and on August 18, 2025, the Consignment Group[4] filed *Motion Seeking Entry of Order Requiring the Debtors to Assume Or Reject Executory Contracts With Members Of the Consignment Group; And for Related Relief* [Dkt. No. 747](collectively, the "Motions to Compel"). JPMorgan filed oppositions to the Motion to Compel. *See* Dkt. Nos. 740, 1063.

9.      Following a two-day evidentiary hearing, the Court entered an *Order Staying the Consignment Sale Motion* (the "Order Granting Stay") [Dkt. No. 781], which stayed the prosecution of the Consignment Sale Motion until the Debtors commenced separate adversary proceedings against each of Consignment Vendor and obtained a final judgment determining the respective parties' interests in the Consigned Inventory.

10.     Following entry of the Order Granting Stay, the Debtors initiated over thirty adversary proceedings against members of the Consignment Group, Ad Hoc Committee, and other Consignment Vendors (the "Adversary Proceedings"). *See* Adv. Pro. Nos. 25-00231 through 25-00262, and 25-00385. The Ad Hoc Committee subsequently filed twelve (12) third-party complaints in the Adversary Proceedings against third-party defendants JPMorgan and Sparkle

---

[4] The "Consignment Group" consists of the following fourteen (14) jointly represented consignors: (i) Aspen MLT, LLC a/k/a Aspen Comics, (ii) Black Mask Studios, LLC, (iii) DSTLRY Media, Inc., (iv) Dynamic Forces, Inc. a/k/a Dynamite Entertainment, (v) Heavy Metal International, LLC, (vi) Magnetic Press, LLC, (vii) Massive Publishing, LLC, (viii) Oni-Lion Forge Publishing Group, LLC f/k/a Oni Press, LLC, (ix) Panini UK Ltd., (x) Punk Bot Comic Books, LLC a/k/a Alien Books, (xi) The Penn State University a/k/a Graphic Mundi, (xii) Titan Publishing Group, Ltd., (xiii) Vault Storyworks, LLC a/k/a Vault Comics f/k/a Creative Mind, and (xiv) Dark Horse Comics, LLC.

251164320v2

Pop, LLC ("Sparkle Pop").[5] JPMorgan has answered the Ad Hoc Committee's third-party complaints, including Boom Entertainment's, and the Court has entered scheduling orders in each of the Adversary Proceedings.

## Limited Objection

11.    JPMorgan understands that the Trustee, Sparkle Pop and the Consignment Vendors are currently engaged in ongoing negotiations aimed at resolving the disputes relating to the Consignment Inventory. JPMorgan is supportive of a consensual resolution that avoids unnecessary litigation, provided that any such resolution respects and protects JPMorgan's rights and interests, including its DIP liens and other protections under the Final DIP Order.

12.    Unless and until a settlement is reached and approved by the Court, however, the Ad Hoc Committee and Boom Entertainment may not use the Motions for Release to sidestep the pending Adversary Proceedings or to obtain a backdoor adjudication of the ownership and lien priority disputes at issue in those adversaries. As this Court previously ruled, Rule 7001 of the Federal Rules of Bankruptcy Procedure requires that determinations regarding interests in property and the extent, validity, and priority of liens be resolved through adversary proceedings. The Ad Hoc Committee's and Boom Entertainment's attempt to secure the release of Consigned Inventory (or its proceeds) via contested motion practice is an improper end-run around that requirement and the procedural safeguards it provides.

13.    The Ad Hoc Committee and Boom Entertainment contend that the rejection of their Vendor Contracts vests them with ownership of the Consigned Inventory, even though none of the

---

[5] The applicable Ad Hoc Committee adversary proceedings are: (i) Adv. Proc. No. 25-00231 (Ablaze LLC); (ii) Adv. Proc. No. 25-00232-(Action Lab Entertainment, Inc.); (iii) Adv. Proc. No. 25-00235 (American Mythology Productions LLC); (iv) Adv. Proc. No. 25-00237 (Battle Quest Comics, Inc.); (v) Adv. Proc. No. 25-00239 (Boom Entertainment, Inc.); (vi) Adv. Proc. No. 25-00245(Fantagraphics Books, Inc.); (vii) Adv. Proc. No. 25-00247 (Green Ronin Publishing LLC); (viii) Adv. Proc. No. 25-00249 (Herman & Geer Communications, Inc.); (ix) Adv. Proc. No. 25-00251 (Living the Line, LLC); (x) Adv. Proc. No. 25-00256 (Paizo, Inc.); (xi) Adv. Proc. No. 25-00262 (Zenescope Entertainment, Inc.); and (xii) Adv. Proc. No. 25-00385 (Avatar Press, Inc.).

Consignment Vendors ever filed UCC-1 financing statements to evidence and perfect their interests in the Consigned Inventory. Acceptance of that position at this stage would effectively moot the pending Adversary Proceedings and divest the Trustee, JPMorgan and Sparkle Pop of their competing claims and liens to the Consignment Inventory. Further, this outcome would deprive JPMorgan of its procedural rights and vitiate its ability to appear and defend its first priority DIP Lien rights in the Adversary Proceedings.

14.     The Ad Hoc Committee's and Boom Entertainment's reliance on *TSA Stores, Inc. v. Wilmington Sav. Fund Soc., FSB (In re TSAWD Holdings, Inc.)*, 595 B.R. 676, 682 (Bankr. D. Del. 2018) is misplaced. *See* Motions to Release, ¶ 5. In *TSAWD Holdings*, the Delaware Court held that a consignor whose financing statement had lapsed nevertheless prevailed over an inventory lender due to the lender's actual knowledge of the existence of a consignment relationship and thus the consignor was entitled to the proceeds of goods sold on consignment. *Id.* at 685. *TSAWD Holdings* is inapposite for multiple reasons. First, unlike the Consignment Vendors in this case, the consignor in *TSAWD Holdings* initially perfected its interest by ***actually filing*** a UCC-1 financing statement covering the consigned goods and providing notice to the lender; its only failure was not filing a UCC-1 continuation statement. *Id.* at 680. Second, the Delaware Court imputed actual knowledge to the lender because the consignor's interest in the consigned goods was specifically listed as a "permitted lien" on a schedule to the term loan credit agreement. *Id.* at 684. Third, and most importantly, the Delaware Court applied the former version of the Delaware UCC in holding that actual knowledge of a lender was relevant to a priority dispute with a consignor. Under the current Delaware UCC, the actual-knowledge exception was expressly abrogated by statute. *See* Del. Code Ann. tit. 6, § 9-102(iii)(2023), cmt. 14 ("Clause (iii) does not apply solely because a particular competing claimant knows that the goods are held on

6

consignment. See PEB Commentary No. 20.").

15.     Moreover, to the extent that the Motions to Release hinge on the Order Denying Motion to Extend, the Trustee's pending appeal from that order renders the underlying ruling non-final, and an insufficient basis to resolve the matters at issue in the Adversary Proceedings.  The Court should not, through motion practice, effectively decide or moot issues that are squarely the subject of both a pending appeal and the pending Adversary Proceedings.

16.     JPMorgan holds valid, properly attached, perfected, and enforceable security interests and liens in all of the Debtors' property, including the Debtors' rights and interests in any Consigned Inventory and/or the proceeds thereof, all pursuant to and consistent with the final, non-appealable Final DIP Order and DIP Credit Agreement. *See* Final DIP Order, at ⁋⁋ 13, 14, & 15. To the extent the Debtors hold or held rights in the Consigned Inventory or its proceeds (whether legal, equitable, contractual, or possessory), those rights are and were at all relevant times subject to, and encumbered by, JPMorgan's liens. Those DIP Liens cannot be primed or otherwise displaced by the Motions for Release, and certainly not through the summary motion practice requested in these filings.

17.     Pursuant to the Final DIP Order, all Challenge Rights under the Final DIP Order have been fully adjudicated to have been extinguished and are deemed to be forever waived, released, and barred. *See* Final DIP Order, ¶¶ 21-22. Neither the Trustee, Ad Hoc Committee, Boom Entertainment, nor any other individual, entity or party are entitled to bring or maintain a Challenge against JPMorgan, and the Debtors' stipulations in the Final DIP Order have been fully adjudicated and are deemed binding and enforceable against the Trustee, Ad Hoc Committee, Boom Entertainment, and all other creditors and parties in interest.

18.     Accordingly, assuming without conceding that the Motions for Release were to be

7

granted, the proposed repossession of the Consigned Inventory would still need to be, at all relevant times, subject to, and encumbered by, JPMorgan's liens—unless and until JPMorgan consents to the release of such DIP Liens.

19.     For the avoidance of doubt, JPMorgan expressly reserves all of its rights, remedies, claims, and positions to the fullest extent permitted by law, including, without limitation, all rights under the Final DIP Order, the DIP Credit Agreement, and applicable nonbankruptcy law. Nothing in this Limited Objection shall be construed as a waiver, modification, or limitation of any such rights or remedies.

**WHEREFORE**, JPMorgan respectfully requests that the Court (a) deny the Motions for Release, or, in the alternative, defer ruling on the Motions for Release unless and until the Trustee's appeal of the Order Denying Motion to Extend and the Adversary Proceedings have been fully and finally adjudicated or resolved; (b) in any event, confirm that any repossession, return, or release of Consignment Inventory (or its proceeds) remains subject to JPMorgan's valid, perfected, and enforceable liens and security interests; and (c) grant such other and further relief as the Court deems just and proper.

Dated: March 20, 2026

/s/ Katherine E. Culbertson
Katherine E. Culbertson (admitted *pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
111 South Wacker Drive, Suite 4200
Chicago IL 60606
Tel: (312) 443-0256
Email: Katherine.culbertson@troutman.com

-and-

Toyja E. Kelley (Bar No. 26949)
Indira K. Sharma (Bar No. 28269)
Jonathan W. Young (admitted *pro hac vice*)
401 9th Street, N.W., Suite 1000

8

Washington, D.C. 20004
Tel: (202) 274-2950
Email: Toyja.Kelley@troutman.com
Indira.Sharma@troutman.com
Jonathan.Young@troutman.com

*Counsel for JPMorgan Chase Bank, N.A.*

251164320v2

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2026, I filed and served the foregoing *Reservation of Rights and Limited Objection* to all counsel of record through this Court's CM/ECF system.

*/s/ Katherine E. Culbertson*

251164320v2