**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| IN RE:<br><br>**Diamond Comic Distributors, Inc., et al.,[1]**<br><br>             **Debtors.** | **Chapter 7**<br><br>**CASE NO. 25-10308-DER**<br><br>**(Jointly Administered)** |

**CHAPTER 7 TRUSTEE'S OBJECTION TO MOTION RENEWING
REQUEST FOR RELEASE OF CONSIGNOR'S STOCK**

Morgan W. Fisher, the Chapter 7 Trustee (the "Trustee"), by counsel, hereby objects to the relief sought in the Motion Renewing Request for Release of Consignor's Stock (Dkt. No. 1189) (the "Motion") filed by the Ad Hoc Committee of Consignors (the "Consignors"), and states.

**Preliminary Statement**

The Motion asks this Court to compel immediate physical turnover of millions of dollars in consigned inventory — currently the subject of active adversary proceedings — based on a chain of contractual arguments that cannot defeat the estate's superior statutory interest under 11 U.S.C. § 544(a). The Motion should be denied for five independent reasons: (1) the estate's priority interest in the consigned inventory was fixed by federal law on the Petition Date and no post-petition event can divest it; (2) neither rejection under § 365 nor the Agreement's termination provisions revest title in the Consignors; (3) granting the Motion would circumvent this Court's own ruling requiring adversary proceedings to resolve title; (4) the legal predicate for the Motion — deemed rejection as of February 17, 2026 — is currently on appeal; and (5) practical

---

[1] The Ad Hoc Committee consists of: (1) Ablaze, LLC; (2) American Mythology Productions LLC; (3) Avatar Press, Inc.; (4) Andrew Kafoury d/b/a Battle Quest Comics; (5) Bryan Seaton d/b/a Action Lab; (6) Drawn & Quarterly Books Inc.; (7) Fantagraphics Books, Inc.; (8) Green Ronin Publishing LLC; (9) Herman and Geer Communications, Inc. d/b/a Hermes Press; (10) Living the Line LLC; (11) Paizo, Inc.; (12) UDON Entertainment Inc.; and (13) Zenescope Entertainment, Inc.

obstacles, including a potential warehouseman's lien and commingled inventory, make the relief unworkable.

## Background

On January 14, 2025 (the "Petition Date"), Diamond Comic Distributors, Inc. and its affiliates filed for Chapter 11. The Debtor held consigned inventory — comic books, graphic novels, games, and merchandise with a cost basis of millions of dollars at its Olive Branch, Mississippi distribution facility (the "Facility").  The Facility has been operated by Sparkle Pop, LLC ("Sparkle Pop") since approximately May 16, 2025. All concede thar no member of the Ad Hoc Committee filed a UCC-1 financing statement with the Maryland Department of Assessments and Taxation or otherwise perfected any interest in the consigned inventory. On August 18, 2025, this Court ruled that adversary proceedings were required to adjudicate the Estate's interest in the consigned inventory before any disposition could be authorized. Transcript of Proceedings, Aug. 18, 2025 ("Transcript") at 207:23–24. Individual adversary proceedings against Consignors are pending with discovery underway. This case was converted to a Chapter 7 case on December 31, 2025, and Morgan Fisher was appointed as Chapter 7 Trustee. The Trustee's Emergency Motion to extend the § 365(d)(1) deadline was denied on February 26, 2026 (Dkt. No. 1171), and the Trustee has appealed that ruling [Dkt. 1210]. The Trustee has succeeded to all rights, powers, and interests of the estate, including all avoidance powers under 11 U.S.C. § 544(a) by operation of law.

## LEGAL ANALYSIS AND ARGUMENT

### I.  The Estate's § 544(a) Priority Interest Was Fixed On The Petition Date and Cannot Be Divested By Post-Petition Events.

Section 544(a) of the Bankruptcy Code vests the Trustee with the rights and powers of a hypothetical lien creditor "**as of the commencement of the case**," without regard to any knowledge of the trustee or any creditor. 11 U.S.C. § 544(a). Under Maryland UCC § 9-319(a), while consigned goods remain in the consignee's possession, an unperfected consignor's interest is subordinate to a lien creditor of the

consignee. Because no Consignor filed a UCC-1 before the Petition Date,[2] each Consignor's interest was unperfected and therefore subordinate to the estate's § 544(a) interest as of January 14, 2025. *See In re Valley Media, Inc.*, 279 B.R. 105, 132 (Bankr. D. Del. 2002); *In re Downey Creations, LLC*, 414 B.R. 463, 471 (Bankr. S.D. Ind. 2009). That priority vested on the Petition Date. It is not affected by the later conversion of the case, the deemed rejection of the Distribution Agreements, or any purported contractual termination.

## II.  Neither § 365 Rejection Nor the Agreement's Termination Provisions Revest Title in the Consignors.

The Consignors' theory conflates two analytically distinct legal frameworks. Section 365 governs the contractual rights of executory contract counterparties; it does not govern UCC priority rules or alter the estate's vested statutory interests. Rejection under § 365(g) constitutes a breach of contract as of the day before the Petition Date—it is not a termination, rescission, or revesting of title. *Mission Product Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 381 (2019) (rejection "has the same consequences as a contract breach"). A Consignor who failed to perfect its interest prepetition cannot use § 365 rejection to retroactively perfect that interest or elevate it above the estate's vested priority. Rejection preserves what the Consignors had—unperfected interests subordinate to the estate—and nothing more.

Nor do the Agreement's termination-upon-bankruptcy provisions (Section 10(c)(v)) accomplish what the Consignors claim. Those provisions are classic *ipso facto* clauses rendered unenforceable by 11 U.S.C. § 365(e)(1), which prohibits modification or termination of an executory contract "solely because of a provision in such contract... conditioned on... the commencement of a case under this title." *See 3 Collier on Bankruptcy* ¶ 365.07 (16th ed.); *In re Metrobility Optical Sys. Inc.*, 268 B.R. 326, 329 (Bankr. D.N.H. 2001). Any purported self-termination triggered by the Petition Date is void. Furthermore, the plain language of Section 11(d) of the Agreement—which provides that "title to all material containing the Trademarks, or Seller's copyrights,

---

[2] This was acknowledged on the record in both testimony and by counsel in oral argument. "Q. And did your company file a UCC-1 financing statement?  A. Not that I'm aware of." Transcript at 64:24–65:2; "Debtor has made much about the Consignors not filing UCC ones. That's not in dispute. There's no UCC-1's here." Transcript at 160:1–2.

service marks, or similar rights shall be deemed to have automatically vested in Seller" upon termination—applies to branded marketing and display materials, not to the physical consigned inventory at large. Section 11(h), which separately requires the Consignors to remove their products at their own expense "promptly upon termination," would be superfluous if Section 11(d) already revested all inventory. The two provisions must be read consistently.

Finally, any act to obtain possession of property of the estate or to exercise control over it is stayed under 11 U.S.C. § 362(a)(3). The consigned inventory, in which the estate holds a superior interest under § 544(a), is property of the estate. The Consignors sought no relief from the automatic stay before asserting a present right to possession, and the requested order compelling turnover is precisely the kind of act the stay prohibits absent court authorization through the proper adversary proceeding process. Section 105(a) does not provide an independent basis for the relief requested; that provision cannot be used to override the specific mandates of §§ 544(a) and 362(a). *Law v. Siegel*, 571 U.S. 415, 421 (2014).

### III.  The Motion Asks This Court To Circumvent Its Prior Ruling.

On August 18, 2025, this Court expressly held that adversary proceedings are required under Bankruptcy Rule 7001 to establish the estate's interest in the consigned inventory before any disposition may be authorized. Transcript at 207:23–24. The Motion effectively asks the Court to ignore that ruling and transfer possession—and, functionally, ownership—of valuable inventory before the Court has adjudicated the fundamental title and priority questions. What was impermissible for the Debtor under § 363 is equally impermissible for the Consignors on a contested motion. The adversary proceedings are the appropriate vehicle to determine the rights of the parties in the consigned inventory, and they are actively progressing.

### IV.  The Legal Predicate For The Motion Is On Appeal And The Relief Sought Is Practicably Irreversible.

The Trustee has appealed this Court's ruling that the § 365(d)(1) deadline expired on February 17, 2026.  Respectfully, that ruling was in error.  The Conversion Order (Dkt. No. 1089) expressly provided that conversion became effective at 11:59 p.m. on December 31, 2025, and the Trustee's Extension Motion filed February 19, 2026 was timely by ten days measured from that date. Until the appeal is resolved, the predicate of the Motion is unsettled. This Court should not grant irreversible relief— turnover of consigned inventory among 13 separate parties—on a legal premise of first impression that may be reversed on appeal. Once distributed, the inventory cannot be reassembled. Denial causes no irreversible harm: the inventory remains warehoused pending resolution of both the appeal and the adversary proceedings. *See In re Pub. Serv. Co. of N.H.*, 116 B.R. 347, 349 (Bankr. D.N.H. 1990); *cf. Nken v. Holder*, 556 U.S. 418, 434 (2009).

## V.  Practical Obstacles Make The Relief Unworkable.

Even if the Consignors were correct on the law, the relief they seek is not workable as proposed. First, Sparkle Pop has not received rent or storage payments for the Facility since approximately November 2025, with asserted arrearages in excess of $500,000. Sparkle Pop has filed an administrative claim and is exploring a warehouseman's lien under Mississippi law, Miss. Code Ann. § 75-7-209, which could attach to the consigned goods and take priority over the Consignors' claimed right of retrieval. The Motion contains no provision for satisfying any such lien. Second, as established by CRO Robert Gorin's testimony at the August 18, 2025 hearing, the consigned inventory is not physically segregated by consignor at the Facility. Transcript at 93:9–16. Organizing, picking, and staging goods for retrieval by 13 separate consignors within 90 days—without cost allocation, without resolution of any warehouseman's lien, and without coordination through the adversary proceedings— would cause serious disruption and irreparable harm to the estate and other creditors.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that this Court deny the Motion in its entirety and grant such other and further relief as is just and appropriate.

March 30, 2026                 Respectfully submitted,

/s/ Zvi Guttman
Zvi Guttman (06902)
The Law Offices of Zvi Guttman, P.A.
P.O. Box 32308
Baltimore, Maryland 21282
Zvi@ZviGuttman.com
(410) 580-0500 Phone
(410) 580-0700 Fax

**Attorney for Morgan W. Fisher,
Chapter 7 Trustee**