**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| **In re:** | * | |
| | | **Case No. 25-10308-DER** |
| **Diamond Comic Distributors, Inc.,** *et. al*, | * | **(Jointly Administered)** |
| | | |
| **Debtors.**[1] | * | **Chapter 7** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (BY CONSENT
WITH JPMORGAN CHASE BANK, N.A.) APPROVING THE STIPULATION
AND ORDER AUTHORIZING LIMITED BORROWING AND USE OF CASH
COLLATERAL BY CHAPTER 7 TRUSTEE**

Morgan W. Fisher, Esq., the duly appointed Chapter 7 Trustee (the "Trustee"), of the bankruptcy estates of above-captioned debtors (the "Debtors"), hereby submits this motion (this "Motion"), pursuant to sections 105, 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-5 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), approving the *Stipulation and Order Authorizing Limited Borrowing and Use of Cash Collateral by Chapter 7 Trustee* (the "Stipulation") by and among JPMorgan Chase Bank, N.A. (the "DIP Lender" or "JPMorgan") and the Trustee, attached to the Proposed Order as **Exhibit 1**.  In support of this Motion, the Trustee respectfully states as follows.

---

[1] The Debtors in these chapter 7 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585).  The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

**Jurisdiction and Venue**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and Standing Order 2012-05 from the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105, 363, and 364 of the "Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014 and Local Rule 4001-5.

**Background**

**A. The Debtors' Bankruptcy Cases**

3. On January 14, 2025 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Maryland (the "Court") commencing these cases (the "Chapter 11 Cases"). During the Chapter 11 Cases, the Debtors operated their business and managed their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 12, 2025, the Debtors filed the *Motion (A) For Entry of An Order Approving Eighth Stipulation Between Debtors and JPMorgan Chase Bank, N.A. Amending DIP Credit Agreement, and (B) For Approval of Order (I) Converting Cases From Chapter 11 to a Chapter 7 of the Bankruptcy Code as of Conversion Date, (II) Approving Certain Conversion Procedures, (III) Setting Bar Date for Filing Final Chapter 11 Fee Applications and Establishing a Hearing Thereon, And (IV) Granting Related Relief* [Dkt. No. 1070] (the "Conversion Motion").

5. On December 19, 2025, the Court entered the *Order (I) Approving Eighth Stipulation between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement,*

2

*(II) Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code as of Conversion Date, (III) Approving Certain Conversion Procedures (IV) Setting Bar Date for Filing Final Chapter 11 Fee Applications and Establishing a Hearing Thereon, and (V) Granting Related Relief* [Dkt. No. 1089] (the "Conversion Order"), which, among other things, converted the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. On December 31, 2025, the conversion date occurred (the "Conversion Date").

6.      On December 23, 2025, the Office of the United States Trustee (the "U.S. Trustee") appointed Morgan W. Fisher as Interim Trustee and Designation of Required Bond. [Dkt. No. 1095.]

7.      On January 1, 2026, Morgan Fisher became the duly appointed interim Chapter 7 Trustee for the Debtors' bankruptcy estates and is so acting pursuant to 11 U. S. C. §702(d).  The Trustee has accepted his appointment, has qualified, and is acting in that capacity.

### B.  The Debtors' DIP Financing

8.      On February 19, 2025, the Court entered its *Final Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Dkt. No. 163] (the "Final DIP Order") pursuant to which, among other things, the Debtors were granted authority to obtain senior secured postpetition financing pursuant to the terms and conditions of the Final DIP Order and that certain senior secured Debtor-in-Possession Credit Agreement, dated as of January 16, 2025 (as amended from time to time, the "DIP Credit Agreement").[2] The DIP Credit Agreement was subsequently amended ten (10) times pursuant to this Court's Orders Approving Stipulations Between

---

[2] Capitalized terms used but not otherwise defined shall have the respective meanings ascribed to such terms in the Final DIP Order and DIP Credit Agreement.

Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement [Dkt. Nos. 243, 345, 409, 470, 569, 788, 982, & 1089].

9.      In accordance with the Conversion Order, the Debtors and DIP Lender executed the *Tenth Amendment to Debtor-In-Possession Credit Agreement* (the "Tenth DIP Credit Agreement Amendment") [Dkt. No. 1102-1], pursuant to which, among other things, the DIP Lender agreed to provide limited additional funding before the Conversion Date and extended the DIP Facility's Maturity Date to December 29, 2025. All obligations of the Debtors under the DIP Loan Documents became automatically due and payable in full on December 29, 2025.

### C. Post-Conversion Estate Assets and Trustee's Need For Use of Cash Collateral

10.     By the Conversion Date, substantially all of the Debtors' operating assets had been sold and all of their business operations had ceased. *See* Dkt. Nos. 407 and 408.

11.     The Debtors' remaining assets, now controlled by the Trustee, consist primarily of litigation claims including (i) rights, claims and defenses (the "Alliance Claims") in a pending adversary proceeding against Alliance Entertainment, LLC ("Alliance"), (ii) the estates' rights, claims and defenses in multiple adversary proceedings and disputes against certain consignors with whom the Debtors did business (the "Consignment Claims") and (iii) other claims and causes of action belonging to the Debtors and their bankruptcy estates, including, without limitation, claims under Chapter 5 of the Bankruptcy Code (collectively, together with the Alliance Claims and the Consignment Claims, the "Litigation Claims").[3]  The Litigation Claims (and any proceeds and recoveries on account of such claims) are subject to the DIP Lender's first-priority liens and security interests.

12.     The Trustee currently has cash on hand of approximately $340,000.00 in his

---

[3] Capitalized terms herein, unless otherwise noted, shall have the meanings ascribed to them in the Stipulation.

controlled trustee accounts. Additional funds in the approximate amount of $150,000.00 are held in JPMorgan bank accounts that may be subject to competing third party claims and disputes. Pending resolution of those disputes, those funds are for the moment not an available source of liquidity for the Trustee's use in carrying out his fiduciary duties and administration of the bankruptcy estates. All of the estates' interest in the funds referenced in this paragraph are subject to perfected, first priority liens in favor of the DIP Lender and thus constitute the DIP Lender's Cash Collateral.

13.    As of the date of this Motion, the current outstanding amount owing to the DIP Lender is close to $7 million.  In light of the size of this secured claim, the fully encumbered nature of the estates' remaining assets, and the absence of any material unencumbered property, the Trustee has no practical way to investigate or prosecute the Litigation Claims without new financing. The Trustee has determined that the only viable manner in which he can obtain such financing is pursuant to an agreement with the DIP Lender.

14.    For nearly a month, the Trustee and his professionals have engaged in extensive negotiations with the DIP Lender to reach agreement on the financing arrangement set forth in the Stipulation, the approval of which is sought by this Motion. The purpose of the post-conversion funding is to provide liquidity to allow the Trustee to carry out his fiduciary duties under sections 704 and 1106 of the Bankruptcy Code.  The Trustee has, in his business judgment, determined that (i) the Litigation Claims are viable and should be pursued and (ii) the proposed financing to be provided by the DIP Lender is an appropriate and efficient means of funding these efforts.

15.    In the Alliance Litigation, the Debtors asserted, (and the Trustee intends to pursue), counterclaims seeking approximately $30 million on damages from Alliance, which

include the release to the estates of an $8 million deposit in escrow. Given the complexity, scope, and potential value of the Alliance litigation, the Trustee proposes to retain, subject to Court approval, Kramon & Graham, P.A. ("K&G"), specifically attorneys Jean Lewis and David Shuster, as special litigation counsel to prosecute the estates' claims in the Alliance Litigation.

16. The Debtors' SOFAs indicate 90-day transfers in the aggregate amount of approximately $67 million, and approximately $12 million in 1-year insider transfers. While the Trustee must perform a proper preference analysis to make final determinations as to Avoidance Actions that are worth pursuing (it does not appear that any pre-conversion estate professional performed any comprehensive preference analysis), the Trustee anticipates the possibility of significant preference recoveries. To evaluate and, as appropriate, pursue these Avoidance Actions, the Trustee proposes to retain, subject to Court approval, Shapiro Sher Guinot & Sandler, P.A. ("Shapiro Sher") as his lead general bankruptcy counsel and a financial advisor to assist in conducting the avoidance action analyses. The estates also hold significant claims arising from consignment-related disputes. The Consignment Litigation implicates important rights in inventory, proceeds, and other assets that may yield value for the estates. The Trustee has and will continue to pursue the Consignment Litigation.

**D. The Stipulation and Post-Conversion Financing**

17. The DIP Lender has consented to provide the Trustee with limited additional borrowings to fund special litigation and general bankruptcy professional fees and expenses subject to the terms and conditions set forth in the Stipulation, attached to the Proposed Order as **Exhibit 1**, and the Court's approval of the Stipulation. The Stipulation authorizes limited borrowings and use of Cash Collateral to fund Trustee's investigation and prosecution of the

6

estates' remaining litigation assets with proceeds to be distributed pursuant to a negotiated waterfall that balances repayment of Trustee Borrowings, payment of professional fees, satisfaction of JPMorgan's claims, and distributions to the estate.  Given that all of the Litigation Claims are fully encumbered by JPMorgan's DIP Liens, the Trustee required JPMorgan's consent to use portions of the waterfall to fund these other fees and expenses.  JPMorgan has provided that consent, subject to this Court's approval and the other terms and conditions of the Stipulation.

18.     The limited additional funding and consent to use of Cash Collateral provided under the mechanics in the Stipulation is the best (and only) source of financing available to the Trustee. Given the lack of hard assets available to the Trustee, including an absence of unencumbered cash, combined with the unfortunate circumstances of these bankruptcy cases and their relatively recent conversion to Chapter 7, the Trustee is unable to obtain financing from sources other than JPMorgan, let alone on terms more favorable than as included in the Stipulation. The Trustee is unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Trustee is also unable to obtain: (a) unsecured credit having priority over administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien.

19.     The Trustee has carefully evaluated whether other financing might be available. It is not. The estates' remaining assets are dominated by litigation claims already subject to JPMorgan's priming liens and superpriority claims. In exchange for granting JPMorgan the protections and priorities set forth in the Stipulation, each consistent with the Final DIP Order, the estates receive a focused funding mechanism with the potential to unlock significant recoveries on

7

the Litigation Claims for the benefit of the creditors. Accordingly, the Stipulation is not merely the best financing option; it is the only viable financing arrangement that will permit the Trustee to perform his duties in a meaningful way. The Trustee submits that the Stipulation represents a sound exercise of his business judgment under §§ 363 and 364 and that it is squarely in the best interests of these estates and their creditors.  Absent the funding provided in the Stipulation, the Trustee would, by necessity, have to consider wrapping up the estates and abandoning remaining assets.

20.    The following chart contains a summary of the essential terms of the proposed use of Cash Collateral and the proposed Stipulation, in accordance with Bankruptcy Rules 4001(b)(1)(B) and (c)(1)(B) and Local Rule 4001-5. [4]

| Required Disclosure | Summary of Material Term | Reference Location |
|---|---|---|
| **Borrower** | Morgan W. Fisher, solely in his capacity as Chapter 7 Trustee, as substitute obligor and borrower.  All references in the Final DIP Order and the DIP Credit Agreement to the Debtors/Borrowers shall be deemed amended to include the Trustee as the authorized Borrower under the DIP Credit Agreement. | Stip., §2.4 |
| **Entity with Interests in the Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)* | JPMorgan Chase Bank, N.A., is the only entity with an interest in the Cash Collateral pursuant to the DIP Credit Agreement and Final DIP Order. | Stip. Recitals;<br><br>DIP Credit Agreement preamble |
| **Material Terms of the Use of Cash Collateral and Total Amount of Cash Collateral To Be Used**<br><br>*Bankruptcy Rule 4001(b)(1)(B)* | <u>Trustee Borrowings.</u> The DIP Lender has agreed to make limited new loans to the Trustee—both through the funding of new loans as well as through the authorized use of Cash Collateral. These Trustee Borrowings shall constitute DIP Loans under the Final DIP Order, and increase the balance owing to JPMorgan under the Final DIP Order and DIP Credit Agreement.<br><br><u>Borrowing Limits.</u> The Trustee Borrowings are capped at $766,000.00 in new advances, plus such further uses of cash collateral as are authorized under the Stipulation, not to exceed | Stip., §§ 1.2, 2.1, 2.3, 2.4 |

---

[4] Any summary of the terms of the Stipulation contained in this Motion is qualified in its entirety by reference to the provisions of the Stipulation, itself, the DIP Credit Agreement and the Final DIP Order. To the extent there is a conflict between this summary and the Stipulation, the Stipulation shall control.  To the extent there is a conflict between the Stipulation and the DIP Credit Agreement and the Final DIP Order, the Final DIP Order shall control.

| Required Disclosure | Summary of Material Term | Reference Location |
|---|---|---|
| *Local Rule 4001-5(a)(2)(A)* | the Maximum DIP Amount of $8,200,000 ("Trustee Borrowing Cap").<br><br>No Commitment for Additional Financing. JPMorgan has no obligation to make or permit any further extensions of credit beyond the Trustee Borrowings expressly referenced in the Stipulation. | |
| **Purposes for Use of Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)* | Use of Trustee Borrowings. The Trustee Borrowings shall remain subject at all times to the Trustee Borrowing Cap and the other terms of the Stipulation and may be used only for (i) payment of the Trustee's Professionals Retainer, (ii) payment of the K&G Flat Fee in accordance with the schedule set forth in the K&G Engagement Terms, (iii) payment of the Trustee Professional Fees in excess of the Trustee's Professionals Retainer approved in writing by JPMorgan. | Stip., § 2.2 |
| **Duration of Use of Cash Collateral**<br>*Bankruptcy Rules 4001(b)(1)(B) & 4001(1)(c)(B)* | Maturity Date. June 30, 2027, unless an Event of Default occurs sooner. | Stip., § 2.4 |
| **Interest Rate**<br><br>*Bankruptcy Rule 4001(1)(c)(B); Local Rule 4001-5(a)(2)(A)* | The Trustee Borrowings shall bear interest at the rate set forth in the DIP Credit Agreement—a per annum rate equal to the Adjusted REVSOFR30 Rate (as defined in the DIP Credit Agreement) plus 4.50%. Interest shall accrue on the principal balance of the DIP Debt, including the Trustee Borrowings, from time to time, based on a 365-day year and charged for the actual number of days outstanding. Interest shall accrue and be payable in cash monthly in arrears. | Stip., § 2.1 (Trustee Borrowings are deemed to be DIP Loans)<br><br>DIP Credit Agreement, § 2.12 |
| **Fees**<br>*Local Bankruptcy Rule 4001-5(a)(2)(A)* | A portion of the outstanding DIP Facility Fee provided under the Final DIP Order—in the original amount of $575,000--remains due and owing in the amount of $275,000. | Final DIP Order at 6(e) |
| **Budget and Related Covenants**<br>*Bankruptcy Rule 4001(c)(1)(B)* | In lieu of a budget, the Stipulation provides for specific professional fees and expenses to be funded by the Trustee Borrowings, along with a mechanism for JPMorgan to approve additional accruals. | *See generally* Stip. |
| **Events of Default**<br><br>*Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-5(a)(2)(A)* | Events of Default. Those events delineated in Section 2.5 of the Stipulation including use of Cash Collateral or Litigation Proceeds in violation of Stipulation, or other breaches of the Stipulation, Final DIP Order, DIP Credit Agreement or other DIP Loan Documents. | Stip., § 2.5 |

| Required Disclosure | Summary of Material Term | Reference Location |
|---|---|---|
| **Adequate Protection**<br><br>*Bankruptcy Rule 4001(b)(1)(B) & 4001(c)(1)(B)(ii)* | The Stipulation ratifies and confirms the adequate protection provisions set forth in the Final DIP Order, DIP Credit Agreement, and other DIP Loan Documents. | Stip., § 5.1 |
| **Security and Priority**<br><br>*Bankruptcy Rule 4001(c)(1)(B)(i)* | The DIP Loan Documents are ratified by the Stipulation, and continue in full force and effect. Pursuant to and consistent with the Final DIP Order and DIP Credit Agreement, the Stipulation ratifies and confirms that the DIP Lender: (i) holds valid, binding, fully-perfected, priming, first priority senior secured liens and enforceable security interests on all DIP Collateral (as defined in the Final DIP Order), including but not limited to the Litigation Claims and all proceeds thereof pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code and the Final DIP Order; and (ii) allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code having priority over all other administrative expenses, including, without limitation, such expenses specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise.<br><br>Upon entry of the Order, the Obligations of the Borrower to JPMorgan under the Stipulation, subject in each case (with respect to priority only) to the Flat Fee and Trustee Professional Retainer: (i) pursuant to Section 364(c)(1) of the Bankruptcy Code, shall at all times constitute an allowed Superpriority Claim of JPMorgan; (ii) pursuant to Section 364(c)(2) of the Bankruptcy Code, shall at all times be secured by a perfected first priority Lien on all tangible and intangible property of the estates that is not subject to the referenced fees; (iii) pursuant to Section 364(c)(3) of the Bankruptcy Code, shall be secured by a perfected Lien upon all tangible and intangible property of the estates that is not subject to referenced fees; and (iv) pursuant to Section 364(d)(1) of the Bankruptcy Code, shall be secured by a perfected first priority senior priming Lien upon all tangible and intangible property of the Borrower that is not subject to referenced fees. | Final DIP Order, at ¶¶ E(viii), G, 11(a)-(b), 13(a)-(d), 14, 15, 17(b), & 44<br><br>Stip., *passim* |
| **Stipulations as to Prepetition Claims and Liens**<br><br>*Bankruptcy Rule 4001(c)(1)(B)(iii)* | The Trustee ratifies the Debtors' prior admissions and stipulations as to the existence and amount of the estates' debt to the DIP Lender and the existence, validity and priority of the DIP Lender's security interest in and liens against the Debtors' assets. | Stip., §5.1 |
| **Automatic Stay Waiver/Modification** | Paragraph 20 of the Final DIP Order contains a waiver of the automatic stay to permit certain enforcement and lien perfection activities. That waiver remains in place subject to the terms of the Final DIP Order. | Final DIP Order, ¶ 20 |

| Required Disclosure | Summary of Material Term | Reference Location |
|---|---|---|
| *Bankruptcy Rule 4001(c)(1)(B)(iv)*<br><br>*Local Rule 4001-5(a)(1)(H)* | | |
| **Waiver/Modification of Applicability of Nonbankruptcy Law Relating to Perfection or Enforceability of Liens**<br><br>*Bankruptcy Rule 4001(c)(1)(B)(vii)* | Pursuant to and consistent with the Final DIP Order and DIP Credit Agreement, the Stipulation ratifies and confirms the continued validity, perfection, and priority of the DIP Liens. | Stip., § 5.1<br><br>Final DIP Order, ¶ 13(d) |
| **Releases**<br>*Bankruptcy Rule 4001(c)(1)(B)(viii)* | The Stipulation ratifies and confirms the release provisions set forth in the Final DIP Order, DIP Credit Agreement, and other DIP Loan Documents. | Stip., § 5.1<br><br>DIP Credit Agreement, Section 8.20 |
| **Section 506(c) Waiver**<br><br>*Bankruptcy Rule 4001(c)(1)(B)(x)*<br><br>*Local Rule 4001-5(a)(1)(C)* | Pursuant to and consistent with the Final DIP Order and DIP Credit Agreement, the Stipulation ratifies and confirms that the costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Cases shall not be surcharged against, and no person may seek to surcharge any costs or expenses of administration against, the DIP Lender or any of their respective claims, the DIP Collateral pursuant to section of the Bankruptcy Code without the prior written consent of the DIP Lender. | Stip., § 5.1<br><br>Final DIP Order, ¶ 23. |
| **The granting of a lien on any claim or cause of action arising under §§544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)**<br><br>*Bankruptcy Rule 4001(c)(1)(B)(xi)*<br><br>*Local Rule 4001-5(a)(1)(D)* | Pursuant to and consistent with the Final DIP Order and DIP Credit Agreement, the Stipulation ratifies and confirms that the proceeds of, and property received the Litigation Claims shall remain subject at all times to the DIP Lender's first-priority DIP Lien and superpriority claims, as set forth in the Final DIP Order and DIP Credit Agreement; *provided that*, upon entry of the Stipulation and Order, any proceeds or property recovered from the Litigation Claims shall be subject to the sharing mechanism with respect to the Litigation Claims set forth in the Litigation Payment Waterfalls in the Stipulation. | Stip., §§ 1.1., 3.1–3.3, 5.1 |
| **Carve-Out**<br><br>*Bankruptcy Rule 4001(c)(1)(B)* | All carveouts under the Final DIP Order were fully funded. The Stipulation contains distribution waterfalls but no carveout mechanism. | Stip., *passim* |

11

| Required Disclosure | Summary of Material Term | Reference Location |
|---|---|---|
| **Challenge Period**<br><br>*Local Rule 4001-5(a)(1)(B)* | Pursuant to and consistent with the Final DIP Order, the Stipulation ratifies and confirms that all Challenge Rights under the Final DIP Order have been fully adjudicated to have been extinguished and are deemed to be forever waived, released, and barred. | Stip., § 5.1<br><br>Final DIP Order, ¶¶ 21-22 |
| **Governing Law** | State of New York and the Bankruptcy Code | Stip., § 10.1 |
| **Jurisdiction** | United States Bankruptcy Court for the District of Maryland and the United States District Court for the District of Maryland | Stip., § 10.2 |

**WHEREFORE**, the Trustee respectfully requests that the Court enter an Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such further relief as the Court may deem just and proper.

Dated: April 9, 2026

/s/ *Richard M. Goldberg*
Richard M. Goldberg, Fed. Bar No. 07994
Daniel J. Zeller, Fed. Bar No. 28107
SHAPIRO SHER GUINOT & SANDLER
250 W. Pratt Street, Suite 2000
Baltimore, Maryland 21201
Tel: 410-385-4274
Fax: 410-539-7611
Email: rmg@shapirosher.com
        djz@shapirosher.com

*Proposed Lead General Bankruptcy Counsel
to Morgan Fisher, Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th day of April, 2026, I reviewed the Court's CM/ECF

system and it reports that an electronic copy of the foregoing will be served electronically by the

Court's CM/ECF system on the following:

-Sam Alberts   sam.alberts@dentons.com, docket.general.lit.wdc@dentons.com
-Peter J Artese peter.artese@us.dlapiper.com
-Jodie E. Bekman      jbekman@gfrlaw.com, dferguson@gfrlaw.com
-Jan Berlage   JBerlage@GHSLLP.com, tcollins@ghsllp.com
-Hugh M. (UST) Bernstein   hugh.m.bernstein@usdoj.gov
-Daniel Jack Blum      jack.blum@polsinelli.com,
lsuprum@polsinelli.com; delawaredocketing@polsinelli.com
-Laura Skowronski Bouyea   lsbouyea@venable.com, dmdierdorff@venable.com
-Thomas K. Bredar      thomas.bredar@wilmerhale.com,
andrew.goldman@wilmerhale.com; benjamin.loveland@wilmerhale.com;
yolande.thompson@wilmerhale.com
-Andrew Brown      abrown@klestadt.com
-Matthew G. Brushwood      mbrushwood@barley.com, dkline@barley.com
-Darek Bushnaq      dsbushnaq@venable.com
-Richard L. Costella   rcostella@tydings.com,
scalloway@tydings.com; MYoung@tydings.com; zjones@tydings.com;
swilliams@tydings.com
-Katherine Elizabeth Culbertson      katherine.culbertson@troutman.com
-David W.T. Daniels   ddaniels@perkinscoie.com,
docketnyc@perkinscoie.com; nvargas@perkinscoie.com; KMcClure@perkinscoie.com;
rleibowitz@perkinscoie.com
-G. David Dean      ddean@coleschotz.com, PRatkowiak@coleschotz.com
-Mark L Desgrosseilliers      desgross@chipmanbrown.com, fusco@chipmanbrown.com
-Emily Devan edevan@milesstockbridge.com
-Ellen E. Dew ellen.dew@us.dlapiper.com
-Turner Falk   turner.falk@saul.com,
tnfalk@recap.email; Veronica.Marchiondo@saul.com
-Justin Philip Fasano  jfasano@mhlawyers.com,
jfasano@ecf.courtdrive.com; tmackey@mhlawyers.com; mevans@mhlawyers.com;
cmartin@mhlawyers.com; Fasano.JustinR92003@notify.bestcase.com
-Ashley N Fellona      ashley.fellona@saul.com, janice.mast@saul.com
-Gianfranco Finizio   gfinizio@lowenstein.com
-Adam Fletcher      afletcher@bakerlaw.com
-Chelsea R Frankel   cfrankel@lowenstein.com
-Jeremy S. Friedberg  jeremy@friedberg.legal, ecf@friedberg.legal
-Stephen B. Gerald   sgerald@tydings.com
-Christopher J. Giaimo      christopher.giaimo@squirepb.com,
christopher.giaimo@squirepb.com; christopher-j-giaimo-6409@ecf.pacerpro.com

13

-Joshua Glikin JGlikin@shulmanrogers.com,
abogert@shulmanrogers.com, tlewis@shulmanrogers.com
-Jonathan A. Grasso jgrasso@yvslaw.com,
pgomez@yvslaw.com; r39990@notify.bestcase.com
-Zvi Guttman zvi@zviguttman.com,
zviguttman@gmail.com, zviguttman@outlook.com, MD55@ecfcbis.com
-Jeffrey C. Hampton   jeffrey.hampton@saul.com
-Jason F Hoffman      jhoffman@bakerlaw.com
-Catherine Keller Hopkin      chopkin@yvslaw.com,
pgomez@yvslaw.com; kreese@yvslaw.com; vmichaelides@yvslaw.com;
yvslawcmecf@gmail.com; hopkincr39990@notify.bestcase.com
-James R. Irving      james.irving@dentons.com
-Adam H Isenberg     adam.isenberg@saul.com
-Harry Conrad Jones  HJones@coleschotz.com,
bankruptcy@coleschotz.com; pratkowiak@coleschotz.com
-Lawrence A. Katz    lkatz@hirschlerlaw.com,
chall@hirschlerlaw.com; aklena@hirschlerlaw.com
-Toyja E. Kelley     Toyja.Kelley@troutman.com
C. Kevin Kobbe      kevin.kobbe@us.dlapiper.com, docketing-baltimore-
0421@ecf.pacerpro.com
-Eric George Korphage      korphagee@whiteandwilliams.com
-Jung Yong Lee      jlee@milesstockbridge.com, mhickman@tydings.com
-Gary H. Leibowitz   gleibowitz@coleschotz.com,
pratkowiak@coleschotz.com; bankruptcy@coleschotz.com; lmorton@coleschotz.com
-Thomas J. McKee    mckeet@gtlaw.com, Karrie.Barbaro@gtlaw.com, thomas--mckee-
0902@ecf.pacerpro.com
-Mark Minuti  mark.minuti@saul.com, robyn.warren@saul.com
-Randy Moonan       rmoonan@sillscummis.com
-William Fuller Moss  william.moss@friedberg.legal
-Bruce S. Nathan     bnathan@lowenstein.com
-Janet M. Nesse     jnesse@mhlawyers.com,
jfasano@mhlawyers.com; cpalik@mhlawyers.com;
jnesse@ecf.inforuptcy.com;tmackey@mhlawyers.com; cmartin@mhlawyers.com;
kfeig@mhlawyers.com
-Craig Palik    cpalik@mhlawyers.com, cpalik@ecf.inforuptcy.com;
Palik.CraigR92003@notify.bestcase.com; mevans@mhlawyers.com;
cmartin@mhlawyers.com
-Michael Papandrea    mpapandrea@lowenstein.com
-Steven Gregory Polard       steven.polard@ropers.com,
loriann.zullo@ropers.com; calendar-LAO@ropers.com
-Scott Prince   sprince@bakerlaw.com
-Jonathan Gary Rose  jonathan.rose@us.dlapiper.com
-Jordan Rosenfeld     jordan.rosenfeld@saul.com
-Nikolaus F. Schandlbauer     nick.schandlbauer@arlaw.com, lianna.sarasola@arlaw.com
-Dennis J. Shaffer dshaffer@tydings.com,
scalloway@tydings.com; MYoung@tydings.com

14

-Indira Kavita Sharma indira.sharma@troutman.com,
katherine.culbertson@troutman.com; jonathan.young@troutman.com;
david.ruediger@troutman.com; errol.chapman@troutman.com;
toyja.kelley@troutman.com
-Nicholas Smargiassi  nicholas.smargiassi@saul.com
-David Sommer          dsommer@gallagherllp.com,
ceyler@gejlaw.com; gomara@gejlaw.com; csalce@gejlaw.com; mkobylski@gejlaw.com
-Brent C. Strickland bstrickland@whitefordlaw.com,
mbaum@whitefordlaw.com;  brent-strickland-3227@ecf.pacerpro.com
-Matthew G. Summers          summersm@ballardspahr.com,
branchd@ballardspahr.com; heilmanl@ballardspahr.com;
ambroses@ballardspahr.com;zar
nighiann@ballardspahr.com; carolod@ballardspahr.com; cromartie@ballardspahr.com;
stammerk@ballardspahr.com; brannickn@ballardspahr.com
-S. Jason Teele          steele@sillscummis.com
-Paige Noelle Topper  paige.topper@saul.com
-US Trustee - Baltimore USTPRegion04.BA.ECF@USDOJ.GOV


                              /s/ Richard M. Goldberg
                              Richard M. Goldberg

15