# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

|  |  |  |
|---|---|---|
| In re: | : | Case No. 25-10308 (DER) |
|  | : | Chapter 7 |
| DIAMOND COMIC DISTRIBUTORS, INC., *et al.*, | : | (Jointly Administered) |
|  | : |  |
| Debtors. | : |  |
|  | : |  |
| SPARKLE POP, LLC, | : |  |
|  | : |  |
| Movant, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| MORGAN FISHER, TRUSTEE, | : |  |
|  | : |  |
| Respondent. | : |  |

## MOTION OF SPARKLE POP, LLC FOR RELIEF FROM THE AUTOMATIC STAY

Sparkle Pop, LLC ("Sparkle Pop"), by counsel, moves, pursuant to 11 U.S.C. § 362(d), for relief from the automatic stay to exercise its rights under applicable state law with respect to the goods remaining in a distribution facility owned and operated by Sparkle Pop which is located at 7485 Polk Lane, Olive Branch, MS 38654 (the "Mississippi Facility").

### JURISDICTION

1. This Court has jurisdiction to consider and to determine this motion pursuant to 28 U.S.C. § 1334. Venue is proper in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought in this motion are §§ 362(d)(1) and 362(d)(2) of Title 11 of the United States Code and Rules 9014 and 4001 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND[1]

3.     On January 14, 2025, Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On December 19, 2025, this Court entered an order converting Debtors' cases from Chapter 11 to Chapter 7 effective on January 1, 2026. Morgan Fisher (the "Trustee") was subsequently appointed as Chapter 7 Trustee in Debtors' cases.

4.     On May 1, 2025, this Court entered an order approving the sale of certain of Debtor's assets to Sparkle Pop, which sale closed on May 16, 2025, as documented in an asset purchase agreement, among other documents (the "Asset Purchase Agreement").

5.     Debtor's inventory of consigned goods is stored in the Mississippi Facility. A true and correct copy of a summary of the inventory currently being stored at the Mississippi Facility is attached hereto as **Exhibit A**. All told, there are 8,250,936 units of these goods being stored at the Mississippi Facility.

6.     As part of the sale, on the closing date, Debtor turned over control of the Mississippi Facility to Sparkle Pop but maintained its rights to the consigned goods inventory pursuant to, among other things, the Transition Services Agreement between Debtor and Sparkle Pop dated May 15, 2025, in return for which Debtor agreed, among other things, to pay Sparkle Pop monthly rent for storing the consigned goods. A true and correct copy of the Transition Services Agreement is attached as **Exhibit B**.

7.     Pursuant to Section 3.1 of the Transition Services Agreement, it terminated, at the latest, when JPMorgan Chase, N.A. ("JPMorgan") ceased funding Debtor's Chapter 11 cases. *See* Transition Services Agreement. Since Debtor's case was converted to Chapter 7 in December

---

[1] The facts asserted in this Motion are attested to in the Affidavit in Support of Motion of Sparkle Pop, LLC for Relief from the Automatic Stay, which is being filed with this Motion.

15015655.2 64822/158771 4/13/26

2025, effective January 1, 2026, the Transition Services Agreement is now terminated.

8.      Sparkle Pop has not received any rent payments from Debtor (or any of the consignors) since November 2025.

9.      As of April 2026, at least $641,430.00 is owed in post-sale rent.

10.      Rent will continue to be incurred in the monthly amount of approximately $125,000.00.

11.      On March 11, 2026, Sparkle Pop filed an administrative claim in Debtor's bankruptcy proceeding for $580,000.00 (Claim No. 53). A true and correct copy of this claim is attached as **Exhibit C**.

12.      In addition, despite its obligation to do so, Debtor (and now the Trustee) have failed to maintain insurance on the goods being stored at the Mississippi Facility. While the facility itself is insured, the goods are not.

13.      Further, the value of these goods continues to decline since many are comic books that lose their value with time and further issues.

14.      Significantly, these goods also comprise an enormous amount of space at the Mississippi Facility and prevent Sparkle Pop from using this space to store other goods that it needs to conduct and operate its business. Sparkle Pop is, in effect, being denied the value of the assets that it purchased through the Asset Purchase Agreement.

15.      To make matters worse, Sparkle Pop has now had to rent additional storage space at its sole (and significant) cost to store its own goods because the consignment inventory is taking up needed space at the Mississippi Facility, which space is needed to run Sparkle Pop's business. Sparkle Pop has also had to obtain additional insurance for this new location. Once the consigned goods are removed from the Mississippi Facility, it will cost Sparkle Pop additional significant

15015655.2 64822/158771 4/13/26

funds to move the inventory back from the new space to the Mississippi Facility.

16.     Finally, Sparkle Pop is expending additional funds per week in extra labor due to the consigned inventory remaining at the Mississippi Facility. Specifically, Sparkle Pop has had to expend time and expense to find new storage locations, consolidate inventory and move over a greater footprint of inventory to the new location, all expenses that would not have to be incurred if the consigned goods were no longer stored at the Mississippi Facility.

17.     These amounts will continue to increase through the upcoming busy shipping months of May through October.

18.     During the bankruptcy proceeding, disputes arose between the consignors (who are creditors in Debtor's bankruptcy proceeding) and Debtor over who owns the consigned goods located at the Mississippi Facility and who has the right to sell such goods and retain the proceeds. Sparkle Pop has not and does not take a position in this dispute.

19.     Regardless of who has the superior right to these goods, Sparkle Pop continues to suffer damage by incurring storage fees and labor costs unnecessary to its business. Now with the further delays in the resolution of the dispute, Sparkle Pop is forced to incur such costs without a clear path to relief. Sparkle Pop respectfully requests that this Court order that it be paid for all fees and costs related to the consigned goods, or, in the alternative, to exercise its rights and remedies under Mississippi law to, among other things, assert a warehouseman's lien on the consigned goods and/or take the necessary steps, under applicable law (or with the consent of the parties), to arrange for these goods to be removed from the Mississippi Facility.

4

## LEGAL ARGUMENT

20.    This Court may grant relief from the automatic stay for cause, including the lack of adequate protection of an interest in property of a party in interest. 11 U.S.C. § 362.

21.    Sparkle Pop is entitled to relief from the automatic stay under 11 U.S.C. §§ 362(d)(1) and 362(d)(2) to pursue its non-bankruptcy law rights and remedies with respect to the goods at the Mississippi Facility including, without limitation, asserting a warehouse lien against those goods under Mississippi law.

22.    As of the date hereof, the Transition Services Agreement is terminated. Further, the Trustee did not timely assume the Transition Services Agreement.

23.    Lack of adequate protection of a creditor's interest is also adequate grounds to lift the automatic stay for cause. *In re ASI Activation*, 934 F.2d 1315 (4th Cir. 1991). A court may also lift the stay to prevent irreparable damage to property. *Lafayette Financial LLC v. Horseshoe Point, LLC (In re Horseshoe Point, LLC)*, 2011 WL 1436498, at *5 (Bankr. D. Md. Apr. 14, 2011) (Alquist, J.).

24.    Sparkle Pop lacks adequate protection of its interests in the goods being stored at the Mississippi Facility based on, among other things, Debtor's failure to pay the rent and storage fees, and the significant additional costs to Sparkle Pop for not being able to utilize the space to conduct its business and needing to rent additional space and incur additional expenses for storing its inventory.

25.    In addition, there is no insurance maintained on the goods and the value of these goods continues to decline with time. The failure to maintain insurance coverage constitutes cause in and of itself to grant relief from the stay. *In re Barnes*, 125 B.R. 484, 486 (Bankr. E.D. Mich. 1991) (finding that creditor's claim was not adequately protected because debtor failed to insure

15015655.2 64822/158771 4/13/26

the subject collateral).

26.     The consigned goods remain in Sparkle Pop's possession at the Mississippi Facility.

27.     Sparkle Pop continues to incur storage charges and expenses related to maintaining and storing the consigned goods, all of which remain unpaid and with no assurances that such rent will be paid. Further, the goods take up an enormous amount of space and prevent Sparkle Pop from using a large portion of the Mississippi Facility to operate its business. This has caused Sparkle Pop to incur additional rent and labor costs at its sole expense, among other things.

28.     Sparkle Pop holds a valid interest in the goods under Mississippi law, including through a warehouse lien, that will secure payment for the rent and storage services provided to the Debtor.

29.     This case has been converted to a Chapter 7 bankruptcy proceeding thus the goods are clearly not necessary for any debtor reorganization.

30.     For purposes of this Motion, it does not matter who has a superior interest in the goods. Either way, Sparkle Pop is entitled to the relief requested in this Motion.

31.     In other words, if it is Debtor and Trustee that own or have the superior interest in the goods from the consignors, relief from stay in favor of Sparkle Pop is warranted as asserted in this Motion.

32.     If, on the other hand, it is the consignors that own the goods, then the goods are not property of the Debtor's estate in any event and this matter must be resolved by the Mississippi courts who would have sole jurisdiction over these issues.

33.     Good cause exists to grant relief from the automatic stay to permit Sparkle Pop to exercise its rights under Mississippi law to assert and enforce its rights including, without

6

limitation, a warehouse lien.

34. Prior to filing this Motion, Sparkle Pop requested the consent of the Trustee to the relief sought in this Motion. As of the date hereof, the Trustee has not consented to the relief sought in this Motion.

WHEREFORE, Sparkle Pop respectfully requests that this Court:

(a) Grant Sparkle Pop relief from the automatic stay of 11 U.S.C. § 362(a) to permit Sparkle Pop to exercise its non-bankruptcy law rights and remedies with respect to the consigned goods at the Mississippi Facility; and

(b) Grant such other and further relief as is just and appropriate under the circumstances.

7

Respectfully submitted,

Dated: April 14, 2026

_____*/s/  Jodie E. Bekman*_____

Jodie E. Bekman (Bar No. 26004)
Gordon Feinblatt LLC
1001 Fleet Street, Suite 700
Baltimore, MD 21202
T/F: (410) 576-4082
jbekman@gfrlaw.com

*Attorneys for Sparkle Pop, LLC*

8

15015655.2 64822/158771  4/13/26

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of April 2026, the foregoing Motion by Sparkle Pop, LLC for Relief from the Automatic Stay was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service list.

_____ */s/ Jodie E. Bekman* _____
Jodie E. Bekman

15015655.2 64822/158771 4/13/26