## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| In re: | : | Case No. 25-10308 (DER) |
| | : | Chapter 7 |
| DIAMOND COMIC DISTRIBUTORS, INC., *et al.*, | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |
| | : | |
| SPARKLE POP, LLC, | : | |
| | : | |
| Movant, | : | |
| | : | |
| v. | : | |
| | : | |
| MORGAN FISHER, TRUSTEE, | : | |
| | : | |
| Respondent. | : | |

## AFFIDAVIT IN SUPPORT OF MOTION OF SPARKLE POP, LLC
## FOR RELIEF FROM THE AUTOMATIC STAY

I, Joel Weinshanker, being over 18 years of age and competent to testify as to the matters stated in this affidavit, and upon my own personal knowledge, testify as follows:

1.      I am an authorized representative of Sparkle Pop, LLC ("Sparkle Pop") and am authorized to make this affidavit on behalf of Sparkle Pop.

2.      I affirm that the contents of the accompanying Motion of Sparkle Pop, LLC for Relief from the Automatic Stay (the "Motion") are true to the best of my knowledge, information, and belief.

3.      I am familiar with the sale of assets from debtor Diamond Comic Distributors, Inc. ("Debtor") to Sparkle Pop and the Transition Services Agreement between Debtor and Sparkle Pop dated May 15, 2025.

15023680.1 64822/158771 4/10/26

4.      I am also familiar with the goods located at the distribution facility owned and operated by Sparkle Pop which is located at 7485 Polk Lane, Olive Branch, MS 38654 (the "Mississippi Facility") which is the subject of Sparkle Pop's Motion.

5.      On January 14, 2025, Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On December 19, 2025, this Court entered an order converting Debtors' cases from Chapter 11 to Chapter 7 effective on January 1, 2026. Morgan Fisher (the "Trustee") was subsequently appointed as Chapter 7 Trustee in Debtors' cases.

6.      On May 1, 2025, the bankruptcy court entered an order approving the sale of certain of Debtor's assets to Sparkle Pop, which sale closed on May 16, 2025, as documented in an asset purchase agreement, among other documents (the "Asset Purchase Agreement").

7.      Debtor's inventory of consigned goods is stored in the Mississippi Facility. A true and correct copy of a summary of the inventory currently being stored at the Mississippi Facility is attached to the Motion as **Exhibit A**. All told, there are 8,250,936 units of these goods being stored at the Mississippi Facility.

8.      As part of the sale, on the closing date, Debtor turned over control of the Mississippi Facility to Sparkle Pop but maintained its rights to the consigned goods inventory pursuant to, among other things, the Transition Services Agreement between Debtor and Sparkle Pop dated May 15, 2025, in return for which Debtor agreed, among other things, to pay Sparkle Pop monthly rent for storing the consigned goods. A true and correct copy of the Transition Services Agreement is attached to the Motion as **Exhibit B**.

9.      Sparkle Pop has not received any rent payments from Debtor (or any of the consignors) since November 2025.

10.     As of April 2026, at least $641,430.00 is owed in post-sale rent.

2

11.     Rent will continue to be incurred in the monthly amount of approximately $125,000.00.

12.     On March 11, 2026, Sparkle Pop filed an administrative claim in Debtor's bankruptcy proceeding for $580,000.00 (Claim No. 53). A true and correct copy of this claim is attached to the Motion as **Exhibit C**.

13.     In addition, despite its obligation to do so, Debtor (and now the Trustee) have failed to maintain insurance on the goods being stored at the Mississippi Facility. While the facility itself is insured, the goods are not.

14.     Further, the value of these goods continues to decline since many are comic books that lose their value with time and further issues.

15.     Significantly, these goods also comprise an enormous amount of space at the Mississippi Facility and prevent Sparkle Pop from using this space to store other goods that it needs to conduct and operate its business. Sparkle Pop is, in effect, being denied the value of the assets that it purchased through the Asset Purchase Agreement.

16.     To make matters worse, Sparkle Pop has now had to rent additional storage space at its sole (and significant) cost to store its own goods because the consignment inventory is taking up needed space at the Mississippi Facility, which space is needed to run Sparkle Pop's business.

17.     Sparkle Pop has also had to obtain additional insurance for this new location.

18.     Once the consigned goods are removed from the Mississippi Facility, it will cost Sparkle Pop additional significant funds to move the inventory back from the new space to the Mississippi Facility.

19.     Sparkle Pop is also expending additional funds per week in extra labor due to the consigned inventory remaining at the Mississippi Facility. Specifically, Sparkle Pop has had to

3

15023680.1 64822/158771 4/10/26

expend time and expense to find new storage locations, consolidate inventory and move over a greater footprint of inventory to the new location.

20. These are all expenses that would not have to be incurred if the consigned goods were no longer stored at the Mississippi Facility.

21. These amounts will continue to increase through the upcoming busy shipping months of May through October.

I solemnly affirm under the penalties of perjury that the contents of the foregoing affidavit are true to the best of my knowledge, information, and belief.

Date: _____4-10-26_____      _____

Joel Weinshanker
Manager and Authorized Representative of Sparkle Pop, LLC

15023680.1 64822/158771 4/10/26