**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc. *et al.*, | Chapter 7 |
| Debtors.[1] | (Jointly Administered) |

**OBJECTION TO TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (BY CONSENT WITH JPMORGAN CHASE BANK, N.A.) APPROVING THE STIPULATION AND ORDER AUTHORIZING LIMITED BORROWING AND USE OF CASH COLLATERAL BY CHAPTER 7 TRUSTEE**

Alliance Entertainment Holding Corporation ("Alliance Holding") and Alliance Entertainment, LLC ("Alliance Entertainment" and, together with Alliance Holding, "AENT") submit this objection (the "Objection") to Morgan W. Fisher, Esq.'s, the duly appointed Chapter 7 Trustee (the "Trustee") *Trustee's Motion for Entry of an Order (By Consent with JPMorgan Chase Bank, N.A.) Approving the Stipulation and Order Authorizing Limited Borrowing and Use of Cash Collateral by Chapter 7 Trustee* [Docket No. 1259] (the "Motion")[2], and respectfully state as follows:

**PRELIMINARY STATEMENT**

The Trustee should not be permitted to obtain post-petition financing as requested by the Motion. The Motion asks the Court to approve an extraordinary post-conversion financing structure that further entrenches JPMorgan's already sweeping liens and superpriority claims, eliminates any meaningful prospect of recovery for unsecured creditors, including AENT, and funds speculative litigation for the primary benefit of the secured lender—not the estates. The Trustee posits that this additional post-petition financing in $766,000 of additional loans, plus further use of cash collateral as authorized under the Stipulation, is the "only option." However, the proposed stipulation is neither necessary nor in the best interests of the estates. Instead, it improperly shifts all risk to the estates while preserving all upside for JPMorgan, the DIP Lender. Approval of post-petition financing and use of cash collateral requires a showing of sound business judgment and necessity. However, the Motion is devoid of any case law supporting the proposed

---

[1] The Debtors in these chapter 7 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

financings under the circumstances of this case.[3] The Motion relies entirely on conclusory statements. The Trustee does not even suggest he considered any other source of financing.

This failure is dispositive because the Trustee seeks relief under section 364 of the Bankruptcy Code, which sets out a graduated scheme that requires an evidentiary showing at each step before the Court may authorize heightened protections such as superpriority status, liens, or priming liens. Section 364 does not permit a trustee to jump immediately to lender-protected financing based on conclusory assertions of necessity; rather, the trustee must demonstrate, with evidence, that credit is unavailable on less onerous terms. Here, the Motion offers only the conclusory refrain that an agreement with JPMorgan Chase Bank, N.A. is the 'only viable manner' to obtain financing, without describing any efforts to obtain alternative financing or to monetize the claims through other means.

Compounding the deficiency, these are Chapter 7 liquidation estates. The Motion acknowledges that 'substantially all' operating assets have been sold and business operations have ceased, and the estates' remaining 'assets' consist primarily of litigation claims. In that posture, the requested borrowing is not presented as bridge financing to preserve a going concern, but as a vehicle to fund speculative litigation while expanding the secured lender's priming position and superpriority status. That extraordinary relief requires an especially concrete necessity and benefit showing—which the Motion does not provide.

In the Motion, the Trustee acknowledges that the estates are administratively insolvent, all assets are fully encumbered, and that JP Morgan is owed nearly $7 million against liquid assets of minimal value. Under these circumstances, further borrowing that increases secured debt is presumptively improper absent a clear, demonstrable benefit to the estates—not merely speculative upside.

Finally, the proposed financing improperly benefits JPMorgan at the expense of the estates because (i) all litigation proceeds remain subject to JPMorgan's liens, (ii) JPMorgan's superpriority claim continues to prime all other claims, and (iii) the recoveries are distributed through a negotiated "waterfall" that prioritizes repayment of JPMorgan. This essentially gives JPMorgan

---

[3]   Furthermore, the Memorandum fails to meet the requirements of Local Rule 9013-2 that "[a] party must file with each motion a brief memorandum of fact and law entitling the movant to the relief claimed or a statement that no memorandum will be filed and the movant will rely solely upon the motion."

control of the speculative litigation proceeds and provides no consideration for unsecured, and other claims from other creditors. This creates a financing arrangement that is "loan to own," which courts often reject. Finally, the waivers provided to JPMorgan through the proposed financing are broad and improper.

Given the foregoing reasons, and as explained further herein, AENT respectfully requests that the Court deny the Motion for additional post-petition financing.

## BACKGROUND

**General Background**

1.      On January 14, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing these cases (the "Chapter 11 Cases"). During the Chapter 11 Cases, the Debtors operated their business and managed their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On December 12, 2025, the Debtors filed the *Motion (A) For Entry of An Order Approving Eighth Stipulation Between Debtors and JPMorgan Chase Bank, N.A. Amending DIP Credit Agreement, and (B) For Approval of Order (I) Converting Cases From Chapter 11 to a Chapter 7 of the Bankruptcy Code as of Conversion Date, (II) Approving Certain Conversion Procedures, (III) Setting Bar Date for Filing Final Chapter 11 Fee Applications and Establishing a Hearing Thereon, And (IV) Granting Related Relief* [Docket No. 1070] (the "Conversion Motion").

3.      On December 19, 2025, the Court entered the *Order (I) Approving Eighth Stipulation between Debtors and JPMorgan Chase Bank, N.A., Amending DIP Credit Agreement, (II) Converting Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code as of Conversion Date, (III) Approving Certain Conversion Procedures (IV) Setting Bar Date for Filing Final Chapter 11 Fee Applications and Establishing a Hearing Thereon, and (V) Granting Related Relief* [Docket No. 1089] (the "Conversion Order"), which, among other things, converted the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. On December 31, 2025, the conversion date occurred (the "Conversion Date").

4.     On January 1, 2026, Morgan Fisher became the duly appointed interim Chapter 7 Trustee for the Debtors' bankruptcy estates and is so acting pursuant to 11 U.S.C. § 702(d).

**AENT's Litigation Against the Debtors**

5.     On April 29, 2025, Alliance Entertainment filed an adversary proceeding against the Debtors styled *Alliance Entertainment, LLC v. Diamond Comic Distributors, Inc., et al*. Adv. Pro. No. 25-00112 (Bankr. D. Md.) (the "Adversary Proceeding").

6.     The Adversary Proceeding stems from an auction for the sale of the Debtors' assets, held on March 24-25, 2025 (the "Auction"), where the Debtors selected Alliance Entertainment as the successful bidder and a joint bid submitted by Universal Distributors, Inc. and Ad Populum LLC ("Universal/Ad Populum") as the back-up bidder. *See* Adv. Docket No. 1, at ¶ 25. After the Auction, it came to light that the Debtors were soliciting new bids and secretly negotiating with Universal/Ad Populum. *See* Declaration of Ogilvie in Opposition to Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (the "Ogilvie Decl."), Adv. Docket No. 21-1, at ¶ 2. The Debtors attempted to steer the sale to Universal/Ad Populum and announced that it would seek approval of the sale of the Debtors' assets to them. *Id*. Alliance Entertainment promptly filed an adversary proceeding and a motion for preliminary injunction to stop the sale to Universal/Ad Populum and objected to the Debtors' efforts to sell their assets to Universal/Ad Populum. *Id*. That challenge was resolved by consent after an evidentiary hearing and Alliance Entertainment was declared the successful bidder. *Id.*

7.     Alliance Entertainment terminated the sale transaction prior to closing after discovering that the Debtors had fraudulently misrepresented the status of their relationship with Wizards of the West Coast LLC ("WOTC"), the Debtors' largest vendor accounting for approximately 25% of the Debtors' Alliance Gaming Business revenue. *Id.* at ¶ 3. This resulted in Alliance Entertainment initiating the Adversary Proceeding versus the Debtors, among others.

8.     The Trustee filed the Motion on April 9, 2026. In the Motion, the Trustee indicates that the claims against AENT pursuant to the Adversary Proceeding are assets of the estates. Motion at ¶ 11.

9.     The Trustee also admits that as of the date of the Motion the outstanding amount owing to the DIP Lender (JP Morgan) is close to $7 million and that the Trustee does not have a

practical way to investigate or prosecute the Litigation Claims (including AENT's) without DIP financing. Motion at ¶ 13.

10.     On April 9, 2026, the Trustee filed the *Trustee's Application for Authority to Employ Shapiro Sher Guinot & Sandler as of March 3, 2026 as Lead General Bankruptcy Counsel to the Chapter 7 Trustee* [Docket No. 1256] (the "Shapiro Sher Application") and the *Trustee's Application to Employ Kramon & Graham, P.A. as Special Litigation Counsel to the Chapter 7 Trustee* [Docket No. 1257] (the "K&G Application"). In the Shapiro Sher Application, the Trustee indicates that JPMorgan would fund both Shapiro Sher and K&G raising questions as to the disinterestedness of the Trustee and his counsel. Shapiro Sher Application at ¶ 13.

**OBJECTION**

**A.     The Trustee has not Satisfied his Burden to Obtain Postpetition Financing**

11.     The Trustee seeks to obtain additional post-petition financing from the DIP Lender through the Motion. However, the proposed post-conversion financing structure is extraordinary as it further entrenches JPMorgan's already sweeping liens and superpriority claims, eliminates any meaningful prospect of recovery for unsecured creditor, and funds speculative litigation for the primary benefit of the secured lender—not the estates. As mentioned in the Motion, JP Morgan is already owed approximately $7 million by the Debtors, and the Trustee is asking for up to $8.2 million in financing when there is only $340,000 in Trustee accounts. Motion at ¶¶ 12, 20.

12.     Section 364 governs post-petition financing and it establishes a graduated scheme. A trustee must first demonstrate that credit is unavailable on an unsecured basis before escalating to superpriority or liened credit, and any priming relief requires a heightened showing of unavailability and adequate protection. 11 U.S.C. § 364(b)–(d). The Motion asserts, without evidentiary support, that an agreement with JPMorgan Chase Bank, N.A. is 'the only viable manner' to obtain financing, and that other financing 'is not' available, but does not disclose what steps were taken to obtain alternative financing, what parties were approached, what terms were offered, or why those alternatives were rejected. Because these are Chapter 7 estates with no operating business, the Court is not in the ordinary-course world of § 364(a). The request must satisfy § 364(b)–(d) standards on an evidentiary record. The Motion does not supply that record.

13.     In addition, for post-petition financing to be approved pursuant to section 364 of the Bankruptcy Code, a trustee must exercise sound business judgment. *See In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir.1986); *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (discussing cases); *In re Glebe, Inc.*, No. 10-71553, 2010 WL 6972773, at *3 (Bankr. W.D. Va. Nov. 1, 2010). A debtor-in possession seeking financing on a postpetition superpriority basis has the burden to prove: (1) proposed financing is an exercise of sound and reasonable business judgment, (2) no alternative financing is available on any other basis, (3) financing is in the best interests of the estate and its creditors, and (4) no better offers, bids, or timely proposals are before the court. *See In re Clouter Creek Rsrv. LLC*, 669 B.R. 764, 781 (Bankr. D.S.C. 2025).

14.     Here, the Trustee has failed to adequately identify how any of the enumerated factors for the additional financing have been met. Regarding the first prong, the Trustee relies entirely on conclusory assertions that no alternative financing exists and that the Litigation Claims are worth pursuing. The Trustee does not provide any valuation of the Litigation Claims, a cost-benefit analysis, or a probability-adjusted recovery analysis. In this case where the estates are already administratively insolvent (as admitted by the Trustee), and where all the assets are fully encumbered, a mere reliance on speculative Litigation could be detrimental to the estates. Under the circumstances of these cases further borrowing that increases secured debt is presumptively improper absent a clear, demonstrable benefit to the estates—not merely speculative upside. The proposed financing provides no benefit to the estates, but it does further entrench JPMorgan and render the Trustee's wholly beholden to JPMorgan's whim.

15.     The second factor is also not met because the Trustee makes only mere assertions that the proposed financing is the "only viable manner in which he can obtain such financing." Motion at ¶ 13. However, nothing in the Motion suggests other options were considered, such as: (i) selling or assigning the Litigation Claims; (ii) pursuing the Litigation Claims through a contingency-based arrangement; (iii) settling the Litigation Claims without further litigation, (iv) pursuing litigation funding from third parties; or (v) orderly winding-down the estates without incurring further secured debt. Thus, the proposed financing may not be the "only viable manner" to obtain financing; it is just the only option the Trustee considered. Further, the Trustee has not

shown a good-faith effort to obtain alternative financing. *See Suntrust Bank v. Den-Mark Const., Inc.*, 406 B.R. 683, 691 (E.D.N.C. 2009) ("Although a debtor is not required to seek credit from every possible source, a debtor must show that it made a 'reasonable effort' to obtain post-petition financing from other potential lenders on less onerous terms and that such financing was unavailable.") (citation omitted). In *SunTrust Bank* the district court reversed approval of a priming lien under § 364(d), holding that the debtors failed to demonstrate a good-faith effort to obtain alternative financing (approaching only two lenders) and that an 11% equity cushion combined with speculative improvements did not constitute adequate protection. *Id*.

16.     The Trustee also fails to meet the critical third factor as courts strongly emphasize whether the financing is in the best interests of the estate and its creditors, not the DIP Lender as is the case here. Courts look to "whether the proposed terms would prejudice the powers and rights that the Code confers for the benefit of all creditors and leverage the Chapter 11 process by granting the lender excessive control over the debtor or its assets as to unduly prejudice the rights of other parties in interest… The bankruptcy court cannot, under the guise of section 364, approve financing arrangements that amount to a plan of reorganization but evade confirmation requirements." *In re Def. Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992). The Court should allow the Trustee to exercise his reasonable judgment "so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest." *Clouter Creek*, 669 B.R at 717 (quoting *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990)). Here, through the proposed financing, the Trustee *would*, in fact, benefit the DIP Lender over the estates and their creditors and prejudice other parties. The financing ensures that all litigation proceeds remain subject to JPMorgan's liens, JPMorgan's superpriority claim continues to prime all other claims and the recoveries are distributed through a negotiated "waterfall" that prioritizes repayment of JPMorgan. This in effect, leads to the estates being used as a litigation vehicle for JPMorgan's benefit and creates a "loan to own" arrangement which courts routinely reject. *See Clouter Creek,* 669 B.R. 764; *In re Toys "R" US, Inc.*, 642 B.R. 727 (Bankr. E.D. Va. 2022). The entire estates bear the litigation risk.

17. The Motion's conclusory language is particularly problematic because it also acknowledges that the estates' remaining assets are 'primarily' litigation claims and that any proceeds are already subject to JPMorgan Chase Bank, N.A.'s first-priority liens and security interests. Where the lender already controls the collateral and the proceeds, the Court must require a clear demonstration that additional borrowing and cash-collateral use will produce an incremental, net to the estates (as opposed to merely increasing the secured lender's recoveries). The Motion provides none of this.

18. Furthermore, the litigation will cause administrative expenses to increase significantly while unsecured creditors receive no guaranteed recovery. This alone is reason to deny the Motion as courts strongly consider the effect of the financing on creditors. As one court noted "the court should not ignore the basic injustice of an agreement in which the debtor, acting out of desperation, has compromised the rights of unsecured creditors." *In re FCX, Inc.*, 54 B.R. 833, 838 (Bankr. E.D.N.C. 1985).

19. For the fourth and final factor, while it may be true that there currently are no other offers, bids, or proposals to provide financing to the estates, that is only because the Trustee failed to pursue any other option.

**B. Impropriety of Waivers**

20. The waivers included in the Stipulation are also a cause for concern. Specifically, the waivers are overbroad and otherwise improper as the Stipulation ratifies and extends numerous extraordinary provisions, including: (i) waiver of surcharge rights under section 506(c) of the Bankruptcy Code; (ii) ratification of sweeping lien and claim stipulations; (iii) elimination of any challenge rights; and (iv) continued priming liens on all of the estates assets, including avoidance actions. These waivers would further compromise the estates and diminish their value for the benefit of the DIP Lender. The Trustee offers no justification for why these waivers remain appropriate post-conversion. He also does not explain why such sweeping, plan-like reallocations of rights—implemented through an agreed financing order—are necessary or appropriate post-conversion in Chapter 7, particularly where the Motion acknowledges the estates are fully encumbered and the recoveries are subject to a negotiated waterfall that prioritizes repayment of JPMorgan Chase Bank, N.A.  Even the Court must wonder how the Trustee could be in a position

to agree to the proposed waivers in light of his limited involvement in the cases thus far. Among other questions that arise from the Stipulations are: has the Trustee fully investigated claims against JPMorgan? What evidence was available to the Trustee (and unavailable to the Court and other parties) demonstrating that JPMorgan had no knowledge of or involvement in the fraud alleged in the pending litigation?

## C.      Retention of Bankruptcy and Special Counsel

21.      In the Shapiro Sher Application (Docket No. 1256), the Trustee discusses how this additional post-petition financing will be able to fund both Shapiro Sher and K&G. This raises serious questions of counsel's disinterestedness. A litigation financier cannot control the litigation being financed. *See In re DesignLine Corp.,* 565 B.R. 341 (Bankr. W.D.N.C. 2017) (denying a liquidating trustee's motion for litigation financing from a private lender because the agreement required the trustee to obtain the lender's approval to increase the litigation budget on a quarterly basis, giving the lender the power to cut-off funding if it sees the litigation is not in its interest, and to "consult" with the funder before changing attorneys, vesting the funder with "significant control over the Insider Actions"). In a chapter 7 liquidation where the Trustee must exercise independent fiduciary judgment regarding whether to litigate, settle, or sell claims, conditioning professional funding on lender approval—while also preserving the lender's priming liens and superpriority— creates the practical risk that litigation strategy and estate administration become subordinated to the secured lender's preferences. The fact that the proposed financing is "necessary" because the Trustee's counsel has conditioned their retention on it is an insufficient basis to grant the Motion and raises concerns as to the trustee's independent fiduciary judgment.

22.      The Motion also discloses that Trustee Borrowings may be used for professional fees 'in excess of the Trustee's Professionals Retainer approved in writing by JPMorgan Chase Bank, N.A.,' and that, 'in lieu of a budget,' the Stipulation employs a mechanism for JPMorgan Chase Bank, N.A. to approve additional accruals. Those features are not merely administrative— they embed lender consent into the funding stream for core estate administration, increasing the risk that the secured lender exerts functional control over the pace, scope, and direction of litigation that the Trustee proposes to prosecute.

23.     The Motion also acknowledges there is no carve-out mechanism in the proposed post-conversion structure. In a Chapter 7 case—where the Trustee must independently decide whether claims should be litigated, sold, or settled—the absence of a court-controlled carve-out, coupled with lender approval rights over fees, functionally conditions core estate administration on a secured lender's consent.

**WAIVER OF MEMORANDUM**

24.     Pursuant to Local Rule 9013-2, AENT hereby states that no memorandum will be filed and that they will rely solely upon the case law and statutory authority cited in the Motion.

**<u>CONCLUSION</u>**

25.     For the foregoing reasons, AENT respectfully requests that the Court deny the Trustee's Motion approving the Stipulation for post-petition financing with JPMorgan, and for such other relief as the Court deems just.

Dated: April 22, 2026

/s/ *Jonathan A. Grasso*

Jonathan A. Grasso, 19278
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401
(443) 569-0758
jgrasso@yvslaw.com

-and-

S. Jason Teele (Admitted Pro Hac Vice)
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-4779
steele@sillscummis.com

Randy Moonan (Admitted Pro Hac Vice)
Sills Cummis & Gross P.C.
101 Park Avenue, 28th Floor
New York, New York 10178
212-500-1557
rmoonan@sillscummis.com

*Counsel for Alliance Entertainment Holdings*
*Corporation and Alliance Entertainment, LLC*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on the 22nd day of April 2026, notice of filing the Objection to Trustee's Motion for Entry of an Order (by Consent with JPMorgan Chase Bank, N.A.) Approving the Stipulation and Order Authorizing Limited Borrowing and Use of Cash Collateral by Chapter 7 Trustee was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service list.

_____/s/ Jonathan A. Grasso_____
Jonathan A. Grasso

- 11 -

**The following parties received CM/ECF notice of the filing:**

- Sam Alberts - sam.alberts@dentons.com, docket.general.lit.wdc@dentons.com
- Peter J Artese - peter.artese@us.dlapiper.com
- Jodie E. Bekman - jbekman@gfrlaw.com, dferguson@gfrlaw.com
- Jan Berlage - JBerlage@GHSLLP.com, tcollins@ghsllp.com
- Hugh M. (UST) Bernstein - hugh.m.bernstein@usdoj.gov
- Daniel Jack Blum - jack.blum@polsinelli.com, lsuprum@polsinelli.com;delawaredocketing@polsinelli.com
- Laura Skowronski Bouyea - lsbouyea@venable.com, dmdierdorff@venable.com
- Thomas K. Bredar - thomas.bredar@wilmerhale.com, andrew.goldman@wilmerhale.com;benjamin.loveland@wilmerhale.com;yolande.thompson@wilmerhale.com
- Matthew G. Brushwood - mbrushwood@barley.com, dkline@barley.com
- Darek Bushnaq - dsbushnaq@venable.com
- Richard L. Costella - rcostella@tydings.com, myoung@tydings.com;pcoolbaugh@tydings.com
- Katherine Elizabeth Culbertson - katherine.culbertson@troutman.com
- David W.T. Daniels - ddaniels@perkinscoie.com, docketnyc@perkinscoie.com;nvargas@perkinscoie.com;KMcClure@perkinscoie.com;rleibowitz@perkinscoie.com
- G. David Dean - ddean@coleschotz.com, PRatkowiak@coleschotz.com
- Mark L Desgrosseilliers - desgross@chipmanbrown.com, fusco@chipmanbrown.com
- Emily Devan - edevan@milesstockbridge.com
- Ellen E. Dew - ellen.dew@us.dlapiper.com
- Turner Falk - turner.falk@saul.com, tnfalk@recap.email;Veronica.Marchiondo@saul.com
- Justin Philip Fasano - jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com; tmackey@mhlawyers.com; mevans@mhlawyers.com;cmartin@mhlawyers.com;Fasano.JustinR92003@notify.bestcase.com
- Ashley N Fellona - ashley.fellona@saul.com, janice.mast@saul.com
- Gianfranco Finizio - gfinizio@lowenstein.com
- Morgan W. Fisher - trustee@morganfisherlaw.com, MD65@ecfcbis.com;fisher@premierremote.com
- Chelsea R Frankel - cfrankel@lowenstein.com
- Jeremy S. Friedberg - jeremy@friedberg.legal, ecf@friedberg.legal
- Stephen B. Gerald - sgerald@tydings.com
- Christopher J. Giaimo - christopher.giaimo@squirepb.com, christopher.giaimo@squirepb.com;christopher-j-giaimo-6409@ecf.pacerpro.com
- Joshua Glikin - jglikin@shulmanrogers.com, abogert@shulmanrogers.com,mdicarlo@shulmanrogers.com
- Richard Marc Goldberg - rmg@shapirosher.com, ejd@shapirosher.com
- Jonathan A. Grasso - jgrasso@yvslaw.com, pgomez@yvslaw.com;r39990@notify.bestcase.com
- Zvi Guttman - zvi@zviguttman.com, zviguttman@gmail.com,zviguttman@outlook.com,MD55@ecfcbis.com
- Jeffrey C. Hampton - jeffrey.hampton@saul.com
- Catherine Keller Hopkin - chopkin@yvslaw.com, pgomez@yvslaw.com; kreese@yvslaw.com; vmichaelides@yvslaw.com; yvslawcmecf@gmail.com;hopkincr39990@notify.bestcase.com
- James R. Irving - james.irving@dentons.com
- Adam H Isenberg - adam.isenberg@saul.com
- Anthony Jankoski - anthony.jankoski@faegredrinker.com
- Harry Conrad Jones - HJones@coleschotz.com, bankruptcy@coleschotz.com;pratkowiak@coleschotz.com
- Lawrence A. Katz - lkatz@hirschlerlaw.com, chall@hirschlerlaw.com;aklena@hirschlerlaw.com
- Toyja E. Kelley - Toyja.Kelley@troutman.com
- C. Kevin Kobbe - kevin.kobbe@us.dlapiper.com, docketing-baltimore-0421@ecf.pacerpro.com
- Eric George Korphage - korphagee@whiteandwilliams.com
- Jung Yong Lee - jlee@milesstockbridge.com, mhickman@tydings.com
- Gary H. Leibowitz - gleibowitz@coleschotz.com, pratkowiak@coleschotz.com;bankruptcy@coleschotz.com;lmorton@coleschotz.com
- Thomas J. McKee - mckeet@gtlaw.com, Karrie.Barbaro@gtlaw.com,thomas--mckee-0902@ecf.pacerpro.com
- Mark Minuti - mark.minuti@saul.com, robyn.warren@saul.com
- Randy Moonan - rmoonan@sillscummis.com
- William Fuller Moss - william.moss@friedberg.legal
- Bruce S. Nathan - bnathan@lowenstein.com
- Janet M. Nesse - jnesse@mhlawyers.com, jfasano@mhlawyers.com;cpalik@mhlawyers.com;jnesse@ecf.inforuptcy.com;tmackey@mhlawyers.com;cmartin@mhlawyers.com;kfeig@mhlawyers.com
- Craig Palik - cpalik@mhlawyers.com, cpalik@ecf.inforuptcy.com; Palik.CraigR92003@notify.bestcase.com; mevans@mhlawyers.com; cmartin@mhlawyers.com
- Michael Papandrea - mpapandrea@lowenstein.com
- Steven Gregory Polard - steven.polard@ropers.com, loriann.zullo@ropers.com;calendar-LAO@ropers.com
- Jonathan Gary Rose - jonathan.rose@us.dlapiper.com
- Jordan Rosenfeld - jordan.rosenfeld@saul.com
- Nikolaus F. Schandlbauer - nick.schandlbauer@arlaw.com, lianna.sarasola@arlaw.com
- Dennis J. Shaffer - dshaffer@tydings.com, scalloway@tydings.com;MYoung@tydings.com
- Indira Kavita Sharma - indira.sharma@troutman.com, katherine.culbertson@troutman.com; jonathan.young@troutman.com;david.ruediger@troutman.com;errol.chapman@troutman.com;toyja.kelley@troutman.com
- Nicholas Smargiassi - nicholas.smargiassi@saul.com
- David Sommer - dsommer@gallagherllp.com, ceyler@gejlaw.com;gomara@gejlaw.com;csalce@gejlaw.com;mkobylski@gejlaw.com
- Brent C. Strickland - bstrickland@whitefordlaw.com, mbaum@whitefordlaw.com;brent-strickland-3227@ecf.pacerpro.com
- Matthew G. Summers - summersm@ballardspahr.com, branchd@ballardspahr.com;heilmanl@ballardspahr.com;ambroses@ballardspahr.com;zarnighiann@ballardspahr.com;carolod@ballardspahr.com;cromartie@ballardspahr.com;stammerk@ballardspahr.com;brannickn@ballardspahr.com
- S. Jason Teele - steele@sillscummis.com
- Paige Noelle Topper - paige.topper@saul.com
- US Trustee - Baltimore - USTPRegion04.BA.ECF@USDOJ.GOV