**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re<br><br>Diamond Comic Distributors, Inc., *et al.*,<br><br>Debtors.[1] | Case No. 25-10308 (DER)<br><br>Chapter 7<br><br>(Jointly Administered) |

**OBJECTION TO TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (BY CONSENT WITH JPMORGAN CHASE BANK, N.A.) APPROVING THE STIPULATION AND ORDER AUTHORIZING LIMITED BORROWING AND USE OF CASH COLLATERAL BY CHAPTER 7 TRUSTEE [Dkt. 1257]**

The *Ad Hoc* Committee of Consignors (the "Consignors"),[2] by and through its undersigned counsel, files this Objection, and states:

1.    The Consignors object to the *Trustee's Motion for Entry of an Order (By Consent with JPMorgan Chase Bank, N.A.) Approving the Stipulation and Order Authorizing Limited Borrowing and Use of Cash Collateral by Chapter 7 Trustee* [Docket No. 1259] (the "Motion") for the same reasons set forth in Alliance Entertainment Holding Corporation's Objection [Dkt. 1268].

2.    With regard to borrowing money to pursue the pending litigation against consignors, the Trustee had an opportunity in December 2025 to quickly reject the contracts the estate can no longer afford, and quickly resolve outstanding litigation to cut further continuing losses to the Debtor's estate.  Instead, the Trustee chooses to double down and seek costly financing to employ a team of professionals to pursue litigation claims.

3.    The proposed financing would do nothing more than add additional administrative burden to this estate to keep alive the hope of recovering of consigned stock for the sole benefit of its secured lender.

---

[1]   The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2]   The Consignors herein are: (i) Ablaze, LLC, (ii) American Mythology Productions LLC, (iii) Avatar Press, Inc., (iv) Andrew Kafoury dba Battle Quest Comics, (v) Bryan Seaton dba Action Lab, (vi) Drawn & Quarterly Books Inc., (vii) Fantagraphics Books, Inc., (viii) Green Ronin Publishing LLC, (ix) Herman and Geer Communications, Inc., dba Hermes Press, (x) Living the Line LLC, (xi) Paizo, Inc., (xii) UDON Entertainment Inc., and (xiii) Zenescope Entertainment, Inc.

4.     With no employees, lapsed insurance policy with no insurance on the stock, a growing rent obligation to its purchaser of non-consignment stock, and no way to distribute the consigned stock, the Debtor has proposed no viable mechanism by which it could distribute stock at a cost that permits it to cover the cost of the proposed financing and additional rent and insurance charges in so doing.  In other words, the Debtor has no hope of distributing any stock; it cannot afford to store and insure the stock; and yet it wants to borrow more money from its lender so that the lender can get paid 100% of whatever the Debtor recoups from a liquidation that would decimate the value of the property.

5.     Further, the Consignors add additional background and context with regard to the third factor for consideration of post-petition financing under 11 U.S.C. §364 under the *In re Snowshoe Co., Inc.* holding: whether or not the proposed financing is in the best interests of the estate and its creditors, particularly as it relates to financing to fund litigation relating to the dozens of adversary proceedings commenced against the consignors of the Debtor.  *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986).

6.     As the Court will recall, the adversary proceedings seek findings with regard to the Debtor's asserted interest in all of the consigned inventory of the respective defendants. (*See, e.g.,* Complaint to Determine the Validity, Priority or Extent of a Lien or Other Interest in Property against Paizo, Inc. ("Paizo") [Adv. Case No.: 25-00256, Dt. No. 1]

7.     At all times pre-petition and post-petition, the *Debtor's* only interest in any of the consigned goods at issue is (i) the right to distribute the consigned stock and, *upon sale of the stock*, the right to collect a fee for the distribution services that is approximately equivalent to 10% of the MSRP of that stock. (*See, e.g.* Paizo, Inc. Distribution Agreement, §6(a) attached hereto as **Exhibit A**).

8.     The Debtor and its secured lender (and proposed post-conversion finance lender per the Motion), JPMorgan Chase Bank, N.A. ("Lender") previously sought to sell all of the consigned stock and pay 100% of those proceeds to Lender – despite only having the right to retain 10% of proceeds in accordance with the Distribution Agreements.

9. The UCC does not give the Debtor's estate any right to own 100% of the consigned stock; it gives the Trustee the ability to pay to Lender on account of its lien"…*all of the* <u>*consignor's rights*</u> *in the consigned goods when the consignor's interest is not perfected."* UCC §9-319(a). There is no argument, and never has been, that the Trustee wants to pursue litigation for the benefit of any party other than Lender.  In other words, §9-319(a) is a lien priority statute, not a tool that somehow converts ownership from Consignors to the Debtor.

10. The Trustee has provided zero analysis as to the likelihood of success of the consignment litigation; the cost of litigation to obtain a judgment in the estate's favor; the expected timeline for litigation and the resulting cost to the estate with regard to continued rent obligations and insurance obligations; the cost of distribution services required to actually sell the consignment stock if the Trustee prevails in litigation; or the proposed statutory commission to be earned by the Trustee if he prevails.

11. The prior evidence with regard to value to the Debtor's estate shows that Sparkle Pop made an offer of $1,000,000.00 to purchase all of the consignment stock in the Debtor's warehouse.  (Sparkle Pop, LLC Offer Letter dated July 11, 2025, attached hereto as **Exhibit B**.) This offer would presumably be reduced by any past-due rent or other claims that Sparkle has against the estate, which the Debtor previously acknowledged was $144,000 per month.  (Robert Gorin Transcript August 15, 2025 78:14-85:1, relevant portion of which is attached as **Exhibit C**).  Since the conversion of the case in December 2025, at least four months of warehouse rent have become due in the amount of $576,000.  The cost of storage has already outweighed any benefit the estate could have in trying to recover the consignment stock for the benefit of the Lender, even without additional financing that is now being proposed[3].

12. Here, the Debtor has not complied with any of the distribution agreement terms – in fact, they are all in default and essentially every single obligation under those agreements is in default.  The agreements are rejected; notwithstanding the trustee's appeal of the Court's Order

---

[3] As the Consignors have consistently argued in this case, the value of the consigned stock is but one factor for them; in addition to the value of the stock itself, the Consignors seek to protect the sale price of the stock so that it does not depress the value of their own titles, and so that it does not depress the global value of similar consignment items for sale.  If all of the inventory is sold for $1 million, this would have a grave adverse financial impact on the Consignors far exceeding their loss in this particular stock.

confirming that the agreements are rejected, the Debtor did not obtain an order staying the Rejection Order pending appeal. (Order Denying Emergency Motion to Extend Time to Assume or Reject Executory Contracts Related to Consigned Goods, Dkt. 1171; Notice of Appeal and Statement of Election, Dkt. 1209)

13.  If the Debtor were to comply with the respective distribution agreements, the Debtor would need to (among other things):

a.  Store the stock at no additional cost to the consignors (Distribution Agreement, ¶8(a);

b.  Actively market and distribute the products (Distribution Agreement, §4(a);

c.  Maintain insurance on the stock in amounts sufficient to *fully cover* the MSRP value of the stock (Id., §8(c);

d.  Do nothing that impairs the proprietary and intellectual property rights of the consignors (Id., §9); and of course,

e.  Promptly pay the respective consignor all amounts due under the Distribution Agreement (Id., §5-6).

14.  The Trustee is months behind on warehouse rent owed to Sparkle Pop, LLC ("Sparkle"), who is currently operating the warehouse in accordance with the prior sale to Sparkle of property not including the consigned stock. The Trustee also acknowledged in a prior hearing that there is no insurance on the consigned stock, and the insurance policy is lapsed in default of §8(c) of the distribution agreements at issue.

15.  Finally, if the Trustee does expend funds to continue litigation against the Consignors and ultimately prevails, each and every Consignor will have an administrative claim against the estate equal to the value of the inventory that the Trustee sells in accordance with the respective distribution agreements[4]. By paying the Lender all proceeds, the Trustee seeks to pay the Lender in full in exchange for an administrative claim of equal amount, *all at the increased cost of the proposed financing plus legal fees and Trustee commission*. There is no world in which this presents any benefit to the estate.

---

[4]  Because the Trustee has filed an appeal seeking a finding that the distribution agreements are no rejected, if he prevails then the Trustee will be required to acknowledge that the Consignors are entitled to administrative claims for any stock sold after the petition date.

16.     It appears that the Trustee's plan as to consignment stock is to (i) try to win an appeal finding that the Distribution Agreements are executory and must not be rejected despite zero performance thereunder; (ii) grow an administrative rent claim at $144,000 per month to store the stock; (iii) borrow money from Lender to fund litigation to prosecute the adversary proceedings, for the sole purpose of paying the Lender on account of its alleged lien; (iv) fail to insure the stock, thus subjecting the Consignors *and the estate* to intolerable risk; all for the purpose of apparently selling the stock for $1 million in a forced liquidation sale.

17.     Lacking any analysis whatsoever, there exist no grounds to find that the proposed financing is in the best interest of the Debtor's estate with regard to any litigation relating to the consignment stock.  Even if the Trustee had provided such an analysis, it is clear that the stock's value is outweighed many times over by the cost to the Trustee and the Debtor's estate.

18.     Permitting the proposed financing would do nothing more than increase the administrative insolvency of this estate.  The Trustee is now at a crossroads and must choose whether he wants to either (1) perform under the distribution agreements and pursue the appeal and litigation against the Consignors and other consignors of the Debtor; or (2) abandon the consignment stock and cut the estate's growing losses related to its storage thereof.  There is no avenue under the Bankruptcy Code for him to pursue both options.

Dated: April 24, 2026                                    Respectfully submitted,

        /s/ Catherine Keller Hopkin
Catherine Keller Hopkin (28257)
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland  21401
(443) 569-0788
chopkin@yvslaw.com

Counsel for the *Ad Hoc* Committee of
Consignors

5

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the 24th day of April 2026, notice of filing the Objection to Trustee's Motion for Entry of an Order (by Consent with JPMorgan Chase Bank, N.A.) Approving the Stipulation and Order Authorizing Limited Borrowing and Use of Cash Collateral by Chapter 7 Trustee [Dkt. 1257] was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service list.

        /s/ Catherine Keller Hopkin
        Catherine Keller Hopkin

**The following parties received CM/ECF notice of the filing:**

- Sam Alberts - sam.alberts@dentons.com, docket.general.lit.wdc@dentons.com
- Peter J Artese - peter.artese@us.dlapiper.com
- Jodie E. Bekman - jbekman@gfrlaw.com, dferguson@gfrlaw.com
- Jan Berlage - JBerlage@GHSLLP.com, tcollins@ghsllp.com
- Hugh M. (UST) Bernstein - hugh.m.bernstein@usdoj.gov
- Daniel Jack Blum - jack.blum@polsinelli.com, lsuprum@polsinelli.com;delawaredocketing@polsinelli.com
- Laura Skowronski Bouyea - lsbouyea@venable.com, dmdierdorff@venable.com
- Thomas K. Bredar - thomas.bredar@wilmerhale.com, andrew.goldman@wilmerhale.com;benjamin.loveland@wilmerhale.com;yolande.thompson@wilmerhale.com
- Matthew G. Brushwood - mbrushwood@barley.com, dkline@barley.com
- Darek Bushnaq - dsbushnaq@venable.com
- Richard L. Costella - rcostella@tydings.com, myoung@tydings.com;pcoolbaugh@tydings.com
- Katherine Elizabeth Culbertson - katherine.culbertson@troutman.com
- David W.T. Daniels - ddaniels@perkinscoie.com, docketnyc@perkinscoie.com;nvargas@perkinscoie.com;KMcClure@perkinscoie.com;rleibowitz@perkinscoie.com
- G. David Dean - ddean@coleschotz.com, PRatkowiak@coleschotz.com
- Mark L Desgrosseilliers - desgross@chipmanbrown.com, fusco@chipmanbrown.com
- Emily Devan - edevan@milesstockbridge.com
- Ellen E. Dew - ellen.dew@us.dlapiper.com
- Turner Falk - turner.falk@saul.com, tnfalk@recap.email;Veronica.Marchiondo@saul.com
- Justin Philip Fasano - jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com; tmackey@mhlawyers.com; mevans@mhlawyers.com;cmartin@mhlawyers.com;Fasano.JustinR92003@notify.bestcase.com
- Ashley N Fellona - ashley.fellona@saul.com, janice.mast@saul.com
- Gianfranco Finizio - gfinizio@lowenstein.com
- Morgan W. Fisher - trustee@morganfisherlaw.com, MD65@ecfcbis.com;fisher@premierremote.com
- Chelsea R Frankel - cfrankel@lowenstein.com
- Jeremy S. Friedberg - jeremy@friedberg.legal, ecf@friedberg.legal
- Stephen B. Gerald - sgerald@tydings.com
- Christopher J. Giaimo - christopher.giaimo@squirepb.com, christopher.giaimo@squirepb.com;christopher-j-giaimo-6409@ecf.pacerpro.com
- Joshua Glikin - jglikin@shulmanrogers.com, abogert@shulmanrogers.com,mdicarlo@shulmanrogers.com
- Richard Marc Goldberg - rmg@shapirosher.com, ejd@shapirosher.com
- Jonathan A. Grasso - jgrasso@yvslaw.com, pgomez@yvslaw.com;r39990@notify.bestcase.com
- Zvi Guttman - zvi@zviguttman.com, zviguttman@gmail.com,zviguttman@outlook.com,MD55@ecfcbis.com
- Jeffrey C. Hampton - jeffrey.hampton@saul.com
- Catherine Keller Hopkin - chopkin@yvslaw.com, pgomez@yvslaw.com; kreese@yvslaw.com; vmichaelides@yvslaw.com; yvslawcmecf@gmail.com;hopkincr39990@notify.bestcase.com
- James R. Irving - james.irving@dentons.com
- Adam H Isenberg - adam.isenberg@saul.com
- Anthony Jankoski - anthony.jankoski@faegredrinker.com
- Harry Conrad Jones - HJones@coleschotz.com, bankruptcy@coleschotz.com;pratkowiak@coleschotz.com
- Lawrence A. Katz - lkatz@hirschlerlaw.com, chall@hirschlerlaw.com;aklena@hirschlerlaw.com
- Toyja E. Kelley - Toyja.Kelley@troutman.com
- C. Kevin Kobbe - kevin.kobbe@us.dlapiper.com, docketing-baltimore-0421@ecf.pacerpro.com
- Eric George Korphage - korphagee@whiteandwilliams.com
- Jung Yong Lee - jlee@milesstockbridge.com, mhickman@tydings.com
- Gary H. Leibowitz - gleibowitz@coleschotz.com, pratkowiak@coleschotz.com;bankruptcy@coleschotz.com;lmorton@coleschotz.com
- Thomas J. McKee - mckeet@gtlaw.com, Karrie.Barbaro@gtlaw.com,thomas--mckee-0902@ecf.pacerpro.com
- Mark Minuti - mark.minuti@saul.com, robyn.warren@saul.com
- Randy Moonan - rmoonan@sillscummis.com
- William Fuller Moss - william.moss@friedberg.legal
- Bruce S. Nathan - bnathan@lowenstein.com
- Janet M. Nesse - jnesse@mhlawyers.com, jfasano@mhlawyers.com;cpalik@mhlawyers.com;jnesse@ecf.inforuptcy.com;tmackey@mhlawyers.com;cmartin@mhlawyers.com;kfeig@mhlawyers.com
- Craig Palik - cpalik@mhlawyers.com, cpalik@ecf.inforuptcy.com; Palik.CraigR92003@notify.bestcase.com; mevans@mhlawyers.com; cmartin@mhlawyers.com
- Michael Papandrea - mpapandrea@lowenstein.com
- Steven Gregory Polard - steven.polard@ropers.com, loriann.zullo@ropers.com;calendar-LAO@ropers.com
- Jonathan Gary Rose - jonathan.rose@us.dlapiper.com
- Jordan Rosenfeld - jordan.rosenfeld@saul.com
- Nikolaus F. Schandlbauer - nick.schandlbauer@arlaw.com, lianna.sarasola@arlaw.com
- Dennis J. Shaffer - dshaffer@tydings.com, scalloway@tydings.com;MYoung@tydings.com
- Indira Kavita Sharma - indira.sharma@troutman.com, katherine.culbertson@troutman.com; jonathan.young@troutman.com;david.ruediger@troutman.com;errol.chapman@troutman.com;toyja.kelley@troutman.com
- Nicholas Smargiassi - nicholas.smargiassi@saul.com
- David Sommer - dsommer@gallagherllp.com, ceyler@gejlaw.com;gomara@gejlaw.com;csalce@gejlaw.com;mkobylski@gejlaw.com
- Brent C. Strickland - bstrickland@whitefordlaw.com, mbaum@whitefordlaw.com;brent-strickland-3227@ecf.pacerpro.com
- Matthew G. Summers - summersm@ballardspahr.com, branchd@ballardspahr.com;heilmanl@ballardspahr.com;ambroses@ballardspahr.com;zarnighiann@ballardspahr.com;carolod@ballardspahr.com;cromartie@ballardspahr.com;stammerk@ballardspahr.com;brannickn@ballardspahr.com
- S. Jason Teele - steele@sillscummis.com
- Paige Noelle Topper - paige.topper@saul.com
- US Trustee - Baltimore - USTPRegion04.BA.ECF@USDOJ.GOV