**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc., *et al.*, | Chapter 7 |
| Debtors.[1] | (Jointly Administered) |

**JOINT MOTION TO APPROVE SETTLEMENT
PURSUANT TO FED. R. BANKR. P. 9019(a)
(TRUSTEE AND AD HOC CONSIGNMENT GROUP)**

Morgan W. Fisher, Chapter 7 Trustee for  Diamond Comic Distributors, Inc., *et al.*, (the

"Trustee") together with the consignors identified on Schedule 1 to **Exhibit A** attached hereto

(collectively, the "Consignment Group Members,"[2] and each, individually, a "Consignment Group

Member," and together with the Trustee the "Settling Parties"), by and through undersigned

counsel, respectfully move together pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for

entry of an Order approving the settlement between them (the "Motion").  The Trustee is the duly-

appointed, qualified, and acting trustee for the Chapter 7 Bankruptcy Estates (the "Estates") of

Diamond Comic Distributors, Inc., a Maryland corporation (the "Debtor"), and Diamond Select

---

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is: 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

[2] As of the filing of this Motion, the Consignment Group Members include the following members of the Ad Hoc Consignors Committee (the "Ad Hoc Committee" or "Ad Hoc Consignors"): Ablaze, LLC, American Mythology Productions, LLC, Avatar Press, Inc., Andrew Kafoury d/b/a Battle Quest Comics, Bryan Seaton d/b/a Action Lab Comics, Drawn & Quarterly Books Inc., Fantagraphics Books, Inc., Green Ronin Publishing, LLC, Herman and Geer Communications, Inc. d/b/a Hermes Press, Living the Line, LLC, Paizo, Inc., UDON Entertainment, Inc., Zenescope Entertainment, Inc.; along with two other settling consignors: Boom Entertainment, LLC ("Boom") and Dynamic Forces, Inc. a/k/a Dynamite Entertainment. Undersigned counsel for the Ad Hoc Committee and Boom does not represent Dynamic Forces, Inc., and expects that Dynamic Forces, Inc. will file a line in support of this Motion.  Dynamic Forces, Inc., is a member of the group of consignors identified in prior pleadings as the "Consignment Group." *See*, *e.g.*, Dkt. No. 1163.  To avoid confusion herein, the group of consignors historically referred to as the "Consignment Group," will be referred to as the "Otherwise Represented Consignors."

Toys & Collectibles, LLC, a Maryland limited liability company ("Diamond Select"), Comic Holdings, Inc., a Maryland corporation ("Comic Holdings"), and Comic Exporters, Inc. ("Comic Exporters" and, collectively with Diamond Select and Comic Holdings, the "Affiliated Debtors" and, collectively with the Debtor, the "Debtors").  In support of this Motion, the Settling Parties state as follows:

## INTRODUCTION

Taking what had appeared to be an intractable dispute that predated his appointment and continued during his tenure, the Trustee and the Ad Hoc Committee have reached a heavily negotiated resolution of a significant portion of the consignment related disputes and litigation pending in this Court and on appeal.  The consignment related disputes are a series of complex disputes that fall into one of three buckets of assets that the Trustee advised the Court he wished to pursue when the Court approved the new Trustee In Possession lending facility by JP Morgan Chase to the Trustee and the Trustee's engagement of additional professionals (the Trustee's originally employed counsel has been invaluable to this process).  The Court, in no uncertain terms, implored the Trustee to address these matters.

The settlement for which approval is sought will result in more than $600,000.00 being paid into the Estates, the prompt dismissal of the consignment related litigation between the Settling Parties, and the ultimate abandonment of the Estates' interests in any remaining consignment inventory.

For the reasons set out below, the Court should approve this Motion.

## JURISDICTION

1.      The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2).

2

2.      The statutory predicate for the relief requested herein is 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019(a).

**BACKGROUND**

3.      On January 14, 2025, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").

4.      Prior to the Petition Date, the Debtor and each Consignment Group Member entered into distribution or supply agreements (each such distribution or supply agreement, a "Distribution Agreement" and, collectively, the "Distribution Agreements") for the Debtor's distribution of certain products of each Member of the Consignment Group, such as comic books, graphic novels, novels, games, and merchandise in certain territories, as described in the Distribution Agreements.

5.      On May 1, 2025, an Order was entered by the Bankruptcy Court: (i) Approving Asset Purchase Agreement (the "Purchase Agreement") by and among the Debtors and Sparkle Pop, LLC, a Delaware limited liability company ("Sparkle Pop"), and the other parties thereto, (ii) Approving Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and other Interests; (iii) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (iv) Granting Related Relief (the "Sparkle Pop Sale Order") [Dkt. No. 407].

6.      Pursuant to the Sparkle Pop Sale Order, goods held by Debtors on consignment (*i.e.,* the "Consigned Inventory") were excluded from the Purchase Agreement.

7.      On May 15, 2025, the Debtors and Sparkle Pop closed on the transactions contemplated by the Purchase Agreement and the Sparkle Pop Sale Order.

8.      Prior to the Petition Date, and thereafter, the Debtors (and/or Sparkle Pop if after May 15, 2025—*i.e.,* closing of the Purchase Agreement) received Consigned Inventory, which

Consigned Inventory is believed to be currently stored at the Debtors' former distribution facility in Olive Branch, Mississippi (the "Warehouse").

9.      Following the approval of sale transactions, and in connection with the closing of the Purchase Agreement, and pursuant to the Sparkle Pop Sale Order, Sparkle Pop and the Debtors entered into a Transition Services Agreement, dated May 15, 2025 (the "TSA"), that, among other things, addressed warehousing, systems access, consigned goods handling, and related transition services with respect to the Consigned Inventory.

10.     Following the closing of the Purchase Agreement, the Debtor filed a motion to sell all of its consignment stock, to which the Ad Hoc Consignors objected.  The Ad Hoc Consignors filed a motion to stay the proposed sale, to which the Debtors objected, and which motion the Bankruptcy Court granted. The Ad Hoc Consignors also filed a motion to compel assumption/rejection of their distribution agreements, alleging that the Debtor was in breach of the respective Distribution Agreements, and seeking immediate return of their respective Consigned Inventory.  The motion to compel was continued by the Bankruptcy Court multiple times and is currently pending.  The Debtor then commenced adversary proceedings against each and every Consignment Group Member (all collectively, the "CG Adversary Proceedings") and other non-Consignment Group consignors including the Otherwise Represented Consignors; JP Morgan Chase and Sparkle Pop are named as third-party defendants in the CG Adversary Proceedings.

11.     Also following closing of the Purchase Agreement, a dispute arose between the Debtors and a number of consignors (including the Consignment Group Members and the Otherwise Represented Consignors) on the one hand, and Sparkle Pop, on the other hand, regarding post-closing sales of the Consigned Inventory by Sparkle Pop, which dispute was partially resolved on September 12, 2025 by the Bankruptcy Court's Consent Order Resolving, in

Part, Debtors' Motion (i) to Enforce the Automatic Stay, (ii) to Enforce the Sale Order, and (iii) Granting Related Relief (the "Consent Order") [Dkt. No. 878]. Pursuant to the Consent Order, Sparkle Pop deposited funds in the amount of $840,151.00 into the registry of the Bankruptcy Court (the "Court Registry Escrow") of which $669,410.00 represents proceeds from certain sales of the Consignment Group Member's collective Consigned Inventory that were made after May 15, 2025 through approximately mid-October 2025, for Consignment Group Inventory that was delivered prior to May 15, 2025.  For clarity, the $669,410.00 referenced amount in the Court Registry Escrow is allocated to the parties settling here with the Trustee.

12.     Furthermore, Sparkle Pop currently holds (or should be holding) additional funds in the amount of not less than $417,496.00 (the "SP Escrow") on account of Consigned Inventory both received and sold after May 15, 2025 and through February 13, 2026 (i.e., after the Sparkle Pop Sale Order), of which $273,503.00 represents proceeds from certain sales of the Consignment Group Members' Consigned Inventory.  The Consignment Group Members maintain that Sparkle Pop has not fully funded the Court Registry Escrow or the SP Escrow and, additionally, sold or removed from the Warehouse additional Consignment Inventory that is not yet disclosed such that amounts in addition to the SP Escrow and Court Registry Escrow have not been funded but remain due.

13.     On December 19, 2025, the Bankruptcy Court entered an Order converting the Chapter 11 Bankruptcy Cases to Chapter 7 (the "Conversion Order") as of 11:59 PM on December 31, 2025, and provided related procedures for the case transition.  The Trustee was appointed effective 11:59 PM Eastern Standard Time, on December 31, 2025.

14.     On February 19, 2026, the Trustee filed an Emergency Motion to Extend Deadline to Assume or Reject Executory Contracts Related to Consigned Goods in which, in part, the

5

Trustee requested an extension to the deadline to assume or reject executory contracts related to certain consigned goods, including, but not limited to, the Distribution Agreements (the "Trustee Emergency Motion"). The Consignment Group Members objected to the Trustee Emergency Motion and a hearing was held thereon.

15.     On February 26, 2026, the Bankruptcy Court denied the Trustee Emergency Motion (the "Denial Order").

16.     On March 12, 2026, the Trustee filed an appeal of the Denial Order, which remains pending in the District Court.

17.     Rather than continue to litigate their disputes, the Settling Parties have negotiated a resolution to settle fully and finally, the disputes among and between them without litigation. Subject to approval by this Court, the Settling Parties have agreed to the terms of a Settlement Agreement and Releases (the "Settlement"), a copy of which is attached hereto as **Exhibit A**.[3]

## THE COMPROMISE

18.     While the actual terms and conditions of the Settlement are fully described therein, and govern the rights and obligations of the Settling Parties, a summary of the terms are set out immediately below (in the event of any discrepancy between the following summary and the Settlement, the terms of the Settlement shall control):

a.     The Court Registry Escrow not allocable to the Otherwise Represented Consignors shall be released to the Parties and distributed as follows: (a) Fifty Thousand Dollars ($50,000.00) to the Consignment Group Members that are also members of the Ad Hoc Committee (to be allocated as it/they deem appropriate); and (b) the remainder to the Trustee (thus, the net amount to be paid to the Estates is $619,410.00).

b.     The Settling Parties shall jointly move the Bankruptcy Court for an order directing that Sparkle Pop release the aggregate amount allocable to each Consignment Group Member from the SP Escrow, as set forth on Schedule 3 to the Trustee.

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement.

c.  If not already rejected, all Distribution Agreements of the Consignment Group Members shall be deemed rejected as of the Effective Date of the Settlement and terminated in their entirety.

d.  The Consignment Group Members will have the authority and are required to retrieve any and all of their inventory from the Warehouse, bearing their own costs of picking and packing such inventory.

e.  Sparkle Pop is entitled to pick and pack the inventory identified by the Consignment Group Members, at rates comparable to what the Consignment Group Members can obtain from other third parties to complete the work.  If Sparkle Pop declines to do the pick and pack work at comparable rates, the Consignment Group Members are authorized to access their Consignment Inventory and remove it from the Warehouse under the timelines set forth in the Settlement.

f.  The Trustee, on behalf of himself the Debtors, releases and discharges the Consignment Group Members from any and all claims, causes of actions, obligations, and damages including, but not limited to, preference claims. Similar releases from the Consignment Group Members flow to the Trustee and Estates, subject to certain claims as described herein and in the Settlement. In other words, the releases are essentially mutual.

g.  The Consignment Group Members are reserving all rights with regard to any additional claims against Sparkle Pop.  In the event any Consignment Group Member recovers additional funds from Sparkle Pop on account of unauthorized sales of or shortages in the Consigned Inventory in excess of the Court Registry Escrow and SP Escrow, such Consignment Group Member shall pay five percent (5%) of any such recovery to the Estates, net of any legal fees and expenses required to collect such amounts.

h.  In the event Sparkle Pop obtains a judgment against any Consignment Group Member for rent, storage, or similar charges with respect to such Consignment Group Member's Consigned Inventory stored at the Warehouse, that Consignment Group Member shall have an Administrative Claim against the Estates in an amount equal to 25% of such claim.

i.  In the event Sparkle Pop or the Consignment Group Members obtain a finding that any consignment inventory delivered by any Consignment Group Member was unreported as being sold by the Debtor prior to the Settlement, but was in fact sold by or at the Debtor's direction, and paid to or for the benefit of Debtor, the respective Consignment Group Member(s) that delivered any such Missing Inventory shall be entitled to a chapter 7 administrative claim against the Debtors that is subordinate to certain other expenses and claims including any finally-allowed post-conversion administrative claims of Sparkle Pop, JP Morgan Chase and/or the Trustee's professionals.

7

j.      Within sixty (60) days after the Effective Date, the Trustee will file a notice of abandonment pursuant to Bankruptcy Code § 554 as to the Consigned Inventory.

k.      Within ten (10) days after the Effective Date, the Trustee shall assign to the Consignment Group all of his rights, title, and interest, without representation or warranty of any kind, in and to the CG Adversary Proceedings as plaintiff therein.

l.      Within ten (10) days after the Effective Date, (i) the Trustee will file a notice of dismissal of the Denial Order Appeal (if not already resolved), and (ii) the Members of the Consignment Group, as applicable, will file a notice of dismissal of the CG Adversary Counterclaims.

19.     Schedule 1 of **Exhibit A** identifies the individual members of the Consignment Group Members that are Settling Parties.

20.     The Consignment Group Members reserve the right to amend or supplement Schedule 1 of **Exhibit A** through the date of the hearing on this Motion to identify additional group members and parties who choose to join the Settlement. Any such joinder must be on identical terms to the Settlement including with respect to the joining party's contribution of the Court Registry to the Trustee.

21.     The Trustee recognizes that this Agreement is the result of the significant, diligent participation and contributions made by the Consignment Group Members and their counsel. The Trustee is grateful for their efforts in reaching this resolution. The Trustee recognizes that the Consignment Group Members incurred significant legal fees and costs (including prior to his appointment) for which they contend they would be entitled to file a substantial contribution claim but for the releases contained herein. Accordingly, to the extent other consignors (outside of the Otherwise Represented Consignors) wish to join this Settlement as Settling Parties, they must reach a resolution with the Consignment Group Members and its counsel on a fee and expense sharing arrangement solely in the discretion of the Consignment Group Members (meaning the

8

Trustee will not participate in any such matters).  For the avoidance of doubt, nothing herein or in the Settlement precludes the Trustee or any other consignor from reaching a resolution if (and after) the Court approves the Settlement.

22.     The Settlement does not impact the rights or obligation of the Otherwise Represented Consignors unless and until they join the Settlement as described above.  The Settlement does not require Sparkle Pop to take any act or incur any expense without fair compensation, and does not impair, release, or otherwise adversely affect any right or claim that Sparkle Pop has under applicable law.[4]

23.     The Parties believes the Settlement is in the best interest of the Estates.  It eliminates a burdensome administrative cost that is being asserted by Sparkle Pop with regard to the continued storage of the Consignment Inventory at the Warehouse; it relieves the Trustee from any further involvement in the CG Adversary Proceedings of the Settling Parties and the Appeal; it provides a substantial cash infusion to the Debtors' Estate; and it protects the Consignment Group Members from further erosion of value of their Consignment Inventory as well as prevents the flooding of the market with respect to unauthorized sales of their inventory.

24.     The Parties have consented to the relief requested in this Motion as set forth in the attached proposed Consent Order.  The Settlement allows other consignors to join as they see fit. The Settlement is and has been one of the primary matters the Trustee has worked diligently to resolve despite how intractable it seemed to be in light of the varying positions of parties and complications tied to matters that preceded his appointment.

---

[4] Sparkle Pop has previously asserted it may have warehousemen's liens under appliable Mississippi law. The Settling Parties assert that any such liens are disallowed with respect to their Consignment Inventory and will also be avoided by the removal of all of the Consignment Group Members' Consignment Inventory, which defeats lien rights under applicable law. Nothing herein impacts or in any other way waives any rights that Sparkle Pop has asserted with regard to liens in property of other consignors located in the Warehouse.

## LEGAL BASIS

25.     Pursuant to Fed. R. Bankr. P. 9019(a), the Court may approve a settlement and compromise after notice if such settlement and compromise is "fair and equitable" and in the best interest of the estate.  *See generally, U.S. ex. rel. Rahman v. Oncology Associates, P.C.*, 269 B.R. 139, 149 (D. Md. 2001); *DePoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994). Courts in this district have held that a determination whether to approve a settlement must involve consideration of the following factors:

> (a)     the probability of success in litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved (including the expense, inconvenience and delay necessarily attending the litigation); and (d) the paramount interest of the creditors and a proper deference to their reasonable views.

*Oncology Associates*, 269 B.R. at 149-50 (*citing Protective Committee for Independ. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, et al.*, 390 U.S. 414, 424, 88 S.Ct. 1157 (1968)).  *See also In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493 (Bankr. S.D. N.Y. 1991).  Observing that settlements are to be encouraged rather than discouraged, the Court in *Oncology Associates* determined that a settlement may be approved unless the settlement, "falls below the lowest point in the range of reasonableness".  *Oncology Associates*, 269 B.R. at 149 (*quoting W.T. Grant Co.*, 699 F.2d 599, 608 (2nd Cir.), *cert. denied sub nom.*, 464 U.S. 822, 104 S. Ct. 89 (1983); *In re: Bowman*, 181 B.R. 836, 846 (Bankr. D. Md. 1995).

26.     Compromises are generally favored by bankruptcy courts.  *See In re Sassalos*, 160 B.R. 646, 653 (D. Or. 1993) ("compromises are favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove a compromise … rests in the sound discretion of the judge.").  Federal Rule of Bankruptcy Procedure 9019(a) provides that, "on motion by the trustee and after a hearing, the court may approve a compromise or settlement."  The settlement of time-

10

consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. *In re Penn Cent. Transp. Co.,* 596 F.2d 1002, 1113 (3d Cir. 1979) ("in administering reorganization proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts"), quoting *In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968).

27.     In the present case, the Settling Parties believe that the Settlement satisfies the four-factor test enumerated by this Court in the *Oncology Associates* case.

28.     Furthermore, the Trustee represents and submits that he has: (i) properly and appropriately exercised his sound business judgment in determining that Settlement is in the best interest of the Estates, creditors, and other parties in interest; and (ii) demonstrated good and sufficient business justification for approval of the Settlement.

**NOTICE**

29.     The Debtors' Schedule D lists one (1) creditor, Schedule E lists 479 creditors, Schedule F lists 544 creditors, and Schedule G lists 234 § 365 counterparties. Thus, the initial creditor matrix consists of almost 1,300 parties.  For reasons that will be more fully addressed in the Trustee's anticipated or contemporaneously filed Motion for Entry of an Administrative Order Limiting Notice, by the time of the conversion the Debtors' claims agent during the Chapter 11 cases was serving notices on almost 30,000 parties.

30.     Pre-conversion notice was governed by the Court's Complex Chapter 11 Case Procedures attached to the Local Bankruptcy Rules as Appendix I, Local Rule 1002-3.  Although those Procedures no longer govern in this converted case, the Procedures provide evidence of what constitutes appropriate and adequate notice.  Hence, although this case has converted, the

11

difficulties and excessive cost of service on parties who are only remotely, if at all, interested in a particular remains the same or whose interests will be protected by others a similarly situated.

31.     Moreover, the vast majority of claimants and parties in interest are not likely to be directly affected by the particular nuances of each of the matters and proceedings in these cases or are persons who will not likely participate in any event.

32.     Accordingly, the Motion is being served via CM/ECF. The Notice of this Motion hereof has been served upon the following:

a.     All persons receiving service via CM/ECF; and via first class mail as indicated in the forthcoming Affidavit of Service[5].
b.     All persons who have filed a notice of appearance and request for service in these cases;
c.     All creditors and parties listed in Schedules D, E, F and G or their counsel;
d.     All creditors who have filed proofs of claim or their counsel;
e.     All consignors to the Debtor or their counsel;
f.     The Office of the United States Trustee; and
g.     The Internal Revenue Service and the Comptroller of the State of Maryland.

33.     The Trustee submits that this is due and adequate notice of the Settlement and the relief sought herein.

### STATEMENT PURSUANT TO LOCAL BANKRUPTCY RULE 9013-2

34.     Pursuant to Local Bankruptcy Rule 9013-2, no separate memorandum of law in support of this motion will be filed and the Settling Parties will rely solely upon the motion and any hearing hereon.

**WHEREFORE**, the Consignment Group Members and the Trustee jointly respectfully request that this Court enter an Order granting this Joint Motion to Approve Settlement pursuant to Fed. R. Bankr. P. 9019(a) and granting such other relief as is just and proper.

---

[5] The Trustee has obtained the services of Epiq Global ("Epiq") for providing the Notice to the affected parties and the Trustee will file Epiq's Affidavit of Service when received.

Dated: August 5, 2026

Respectfully submitted,

*/s/ Catherine Keller Hopkin*
Catherine Keller Hopkin, Fed. Bar No: 28257
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401
Phone No.: (443) 569-0788
Email: chopkin@yvslaw.com

**Counsel to Ad Hoc Committee and Boom Entertainment, LLC**

*/s/ Zvi Guttman*
Zvi Guttman, Fed. Bar No. 06902
The Law Offices of Zvi Guttman, P.A.
Post Office Box 32308
Baltimore, Maryland 21282
Tel: (410) 580-0500
Email: Zvi@zviguttman.com

**Counsel to Morgan W. Fisher, Chapter 7 Trustee**

*/s/ Richard M. Goldberg*
Richard M. Goldberg, Fed. Bar No. 07994
Daniel J. Zeller, Fed. Bar No. 28107
SHAPIRO SHER GUINOT & SANDLER
250 W. Pratt Street, Suite 2000
Baltimore, Maryland 21201
Tel: 410-385-4274
Fax: 410-539-7611
Email: rmg@shapirosher.com
         djz@shapirosher.com

**General Bankruptcy Counsel to Morgan W. Fisher, Chapter 7 Trustee**

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of August, 2026, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the foregoing *Motion, Notice and Proposed Consent Order* will be served electronically by the Court's CM/ECF system on the following:

**Corinne Donohue Adams**   cadams@yvslaw.com, cadams@yvslaw.com;jbeckman@yvslaw.com;pgomez@yvslaw.com;vmichaelides@yvslaw.com; r39990@notify.bestcase.com
**Sam Alberts**   sam.alberts@dentons.com, docket.general.lit.wdc@dentons.com
**Peter J Artese**   peter.artese@us.dlapiper.com
**Jodie E. Bekman**   jbekman@gfrlaw.com, dferguson@gfrlaw.com
**Jan Berlage**   JBerlage@GHSLLP.com, tcollins@ghsllp.com
**Hugh M. (UST) Bernstein**   hugh.m.bernstein@usdoj.gov
**Daniel Jack Blum**   jack.blum@polsinelli.com, lsuprum@polsinelli.com;delawaredocketing@polsinelli.com
**Laura Skowronski Bouyea**   lsbouyea@venable.com, dmdierdorff@venable.com
**Thomas K. Bredar**   thomas.bredar@wilmerhale.com, andrew.goldman@wilmerhale.com;benjamin.loveland@wilmerhale.com;yolande.thompson@wilmerhale.com
**Matthew G. Brushwood**   mbrushwood@barley.com, dkline@barley.com
**Darek Bushnaq**   dsbushnaq@venable.com
**Brian A. Coleman**   brian.coleman@faegredrinker.com
**Richard L. Costella**   rcostella@tydings.com, myoung@tydings.com;pcoolbaugh@tydings.com
**Katherine Elizabeth Culbertson**   katherine.culbertson@troutman.com
**David W.T. Daniels**   david.daniels@ashurstperkins.com, docketnyc@perkinscoie.com;nvargas@perkinscoie.com;KMcClure@perkinscoie.com;rleibowitz@perkinscoie.com
**G. David Dean**   ddean@coleschotz.com, PRatkowiak@coleschotz.com
**Mark L Desgrosseilliers**   desgross@chipmanbrown.com, fusco@chipmanbrown.com
**Emily Devan**   edevan@milesstockbridge.com
**Ellen E. Dew**   ellen.dew@us.dlapiper.com
**Turner Falk**   turner.falk@saul.com, tnfalk@recap.email;Veronica.Marchiondo@saul.com
**Justin Philip Fasano**   jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com;tmackey@mhlawyers.com;mevans@mhlawyers.com;cmartin@mhlawyers.com;Fasano.JustinR92003@notify.bestcase.com
**Ashley N Fellona**   ashley.fellona@saul.com, janice.mast@saul.com
**Gianfranco Finizio**   gfinizio@lowenstein.com
**Morgan W. Fisher**   trustee@morganfisherlaw.com, MD65@ecfcbis.com;fisher@premierremote.com
**Chelsea R Frankel**   cfrankel@lowenstein.com
**Jeremy S. Friedberg**   jeremy@friedberg.legal, ecf@friedberg.legal
**Stephen B. Gerald**   sgerald@tydings.com
**Christopher J. Giaimo**   christopher.giaimo@squirepb.com, christopher.giaimo@squirepb.com;christopher-j-giaimo-6409@ecf.pacerpro.com
**Joshua Glikin**   jglikin@shulmanrogers.com, abogert@shulmanrogers.com,mdicarlo@shulmanrogers.com
**Richard Marc Goldberg**   rmg@shapirosher.com, ejd@shapirosher.com

14

**Jonathan A. Grasso**    jgrasso@yvslaw.com,
pgomez@yvslaw.com;r39990@notify.bestcase.com
**Zvi Guttman**    zvi@zviguttman.com,
zviguttman@gmail.com,zviguttman@outlook.com,MD55@ecfcbis.com
**Jeffrey C. Hampton**    jeffrey.hampton@saul.com
**Catherine Keller Hopkin**    chopkin@yvslaw.com,
pgomez@yvslaw.com;kreese@yvslaw.com;vmichaelides@yvslaw.com;yvslawcmecf@gmail.com
;hopkincr39990@notify.bestcase.com
**James R. Irving**    james.irving@dentons.com
**Adam H Isenberg**    adam.isenberg@saul.com
**Anthony Jankoski**    ajankoski@whitefordlaw.com
**Harry Conrad Jones**    HJones@coleschotz.com,
bankruptcy@coleschotz.com;pratkowiak@coleschotz.com
**Lawrence A. Katz**    lkatz@hirschlerlaw.com,
ydover@hirschlerlaw.com;aklena@hirschlerlaw.com
**Toyja E. Kelley**    Toyja.Kelley@troutman.com
**C. Kevin Kobbe**    kevin.kobbe@us.dlapiper.com, docketing-baltimore-0421@ecf.pacerpro.com
**Eric George Korphage**    korphagee@whiteandwilliams.com
**Jung Yong Lee**    jlee@milesstockbridge.com, mhickman@tydings.com
**Gary H. Leibowitz**    gleibowitz@coleschotz.com,
pratkowiak@coleschotz.com;bankruptcy@coleschotz.com;lmorton@coleschotz.com
**Jean Evelyn Lewis**    jlewis@kg-law.com, swisthoff@kg-law.com
**Thomas J. McKee**    mckeet@gtlaw.com, Karrie.Barbaro@gtlaw.com,thomas mckee-
0902@ecf.pacerpro.com
**Mark Minuti**    mark.minuti@saul.com, robyn.warren@saul.com
**Randy Moonan**    rmoonan@sillscummis.com
**William Fuller Moss**    william.moss@friedberg.legal
**Bruce S. Nathan**    bnathan@lowenstein.com
**Janet M. Nesse**    jnesse@mhlawyers.com,
jfasano@mhlawyers.com;cpalik@mhlawyers.com;jnesse@ecf.inforuptcy.com;tmackey@mhlawy
ers.com;cmartin@mhlawyers.com;kfeig@mhlawyers.com;BKrell@mhlawyers.com
**Craig Palik**    cpalik@mhlawyers.com,
cpalik@ecf.inforuptcy.com;Palik.CraigR92003@notify.bestcase.com;mevans@mhlawyers.com;c
martin@mhlawyers.com
**Michael Papandrea**    mpapandrea@lowenstein.com
**Steven Gregory Polard**    steven.polard@ropers.com, loriann.zullo@ropers.com;calendar-
LAO@ropers.com
**Jonathan Gary Rose**    jonathan.rose@us.dlapiper.com
**Jordan Rosenfeld**    jordan.rosenfeld@saul.com
**Nikolaus F. Schandlbauer**    nick.schandlbauer@arlaw.com, lianna.sarasola@arlaw.com
**Dennis J. Shaffer**    dshaffer@tydings.com, scalloway@tydings.com;MYoung@tydings.com
**Indira Kavita Sharma**    indira.sharma@troutman.com,
katherine.culbertson@troutman.com;jonathan.young@troutman.com;david.ruediger@troutman.c
om;errol.chapman@troutman.com;toyja.kelley@troutman.com
**David J. Shuster**    dshuster@kg-law.com, ssohn@kg-law.com
**Nicholas Smargiassi**    nicholas.smargiassi@saul.com, sean.kenny@saul.com
**David Sommer**    dsommer@gallagherllp.com,
ceyler@gejlaw.com;csalce@gejlaw.com;mkobylski@gejlaw.com
**Brent C. Strickland**    bstrickland@whitefordlaw.com, mbaum@whitefordlaw.com;brent-
strickland-3227@ecf.pacerpro.com

**Matthew G. Summers**    summersm@ballardspahr.com,
branchd@ballardspahr.com;heilmanl@ballardspahr.com;ambroses@ballardspahr.com;zarnighian
n@ballardspahr.com;carolod@ballardspahr.com;cromartie@ballardspahr.com;stammerk@ballard
spahr.com;brannickn@ballardspahr.com
**S. Jason Teele**    steele@sillscummis.com
**Paige Noelle Topper**    paige.topper@saul.com
**US Trustee - Baltimore**    USTPRegion04.BA.ECF@USDOJ.GOV

/s/ Richard M. Goldberg
Richard M. Goldberg