**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| In re:<br><br>DIAMOND COMIC DISTRIBUTORS, INC., *et al.*[1]<br><br>Debtors. | Case No. 25-10308 (DER)<br><br>Chapter 7<br><br>(Jointly Administered) |

**OBJECTION BY SPARKLE POP, LLC JOINT MOTION TO APPROVE SETTLEMENT PURSUANT TO FED. R. BANKR. P. 9019(a) (TRUSTEE AND AD HOC CONSIGNMENT GROUP)**

Sparkle Pop, LLC ("Sparkle Pop"), by its counsel, files this Objection to the Joint Motion to Approve Settlement Pursuant to Fed. R. Bankr. P. 9019 (a) (Trustee and Ad Hoc Consignment Group) (D.I. 1309) (the "Motion") filed by Morgan W. Fisher, Chapter 7 Trustee for Diamond Comic Distributors, Inc., *et al.* (the "Trustee"), and the Consignment Group Members.[2]

## I. Introduction

In the Motion, the Trustee and Consignment Group Members claim that they have reached a resolution of "a significant portion of the consignment related disputes and litigation pending in

[1] The Debtors in these chapter 7 cases along with the last four digits of the Debtors' federal tax identification numbers are: Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is 10150 York Road, Suite 300 Hunt Valley, Maryland 21030.

[2] The "Consignment Group Members" are comprised of Ablaze, LLC, American Mythology Productions, LLC, Avatar Press, Inc., Andrew Kafoury d/b/a Battle Quest Comics, Bryan Seaton d/b/a Action Lab Comics, Drawn & Quarterly Books Inc., Fantagraphics Books, Inc., Green Ronin Publishing, LLC, Herman and Geer Communications, Inc. d/b/a Hermes Press, Living the Line, LLC, Paizo, Inc., UDON Entertainment, Inc., Zenescope Entertainment, Inc., Boom Entertainment, LLC and Dynamic Forces, Inc. a/k/a Dynamite Entertainment. Boom Entertainment, LLC and Dynamic Forces, Inc. a/k/a Dynamite Entertainment are Consignment Group Members but are not part of the "Ad Hoc Consignment Group." Further, while the Motion states that Dynamic Forces a/k/a Dynamic Entertainment would be filing a Line in support of the Motion, to date, nothing has been filed.

this Court." In actuality, however, all that has been accomplished is to extricate the Trustee and JPMorgan Chase from the consignment disputes while significantly increasing the remaining disputes (and litigation) between the Consignment Group Members and Sparkle Pop. The proposed settlement would require this Court to adjudicate every single aspect of the dispute between the Consignment Group Members and Sparkle Pop over goods located in Mississippi and over which the Trustee and the Estate no longer have any vested interest.

If the purpose of this proposed settlement is to resolve the consignment disputes, it fails on every possible level, especially as it relates to Sparkle Pop. In particular, the proposed agreement imposes numerous requirements on Sparkle Pop without its consent, without proper remuneration for processing fees and storage fees that Sparkle Pop has incurred since December 2025, and without taking into account Sparkle Pop's interest in maintaining the security and processing of its working Warehouse in determining pik and pak services. The proposed settlement requires, among other things:

- Sparkle Pop to completely relinquish its rights to most of the funds in the court registry and to remit nearly all of the funds that it is holding in escrow despite being owed (a) its processing fees for selling goods (an amount over $400,000.00) and (b) its rent and storage fees (an amount over $1 million);

- Sparkle Pop to be forced to allow the Consignment Group Members to pick, pack and pallet the consigned goods being held in its Mississippi warehouse (which they logistically cannot do) without any input from Sparkle Pop or payment to Sparkle Pop on a forced timeline to be invented by the Consignment Group Members; and

- Sparkle Pop to continue to be subject to the third-party claims in the adversary proceedings *and* future unknown but meritless and unsubstantiated claims by the Consignment Group Members against it.

Under the proposed settlement, all of these claims would be subject to this Court's jurisdiction. In addition, if this proposed settlement is approved, this Court will be required to oversee and be intimately involved in the picking and packing and pickup of the Consignment Group Members' goods including, (a) all aspects of the process including cost, (b) access to

Sparkle Pop's warehouse, (c) the timing, (d) what inventory is removed, and (e) enforcement.

Ever since Sparkle Pop purchased the Debtors' assets, it has been unfairly placed in the middle of the dispute between the consignors and the Debtors (now the Trustee). Without a judicial determination of ownership, Sparkle Pop could not have and still cannot release the consigned goods to one party without exposing itself to legal claims from the other parties. If this Court were to approve the proposed settlement (negotiated without Sparkle Pop's involvement and which wholly discounts Sparkle Pop's interests), Sparkle Pop would not only have to relinquish its interests in the registry and escrow (without receiving its processing fees of $433,270), it would also being compelled to turn over the consigned goods to the Consignment Group Members on their sole terms and conditions (without receiving its pik & pak fees and rent/storage fees of $1,000,000) and still remain subject to potential future litigation from the Consignment Group Members over unsubstantiated and meritless claims. Any settlement that will result in more litigation and oversight before and by this Court should not be approved.

## II. Factual and Procedural Background

On January 14, 2025, Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On December 19, 2025, this Court entered an order converting Debtors' cases from Chapter 11 to Chapter 7 effective on January 1, 2026. The Trustee was subsequently appointed as Chapter 7 Trustee in Debtors' cases. On May 1, 2025, this Court entered an order approving the sale of certain of Debtor's assets to Sparkle Pop, which sale closed on May 16, 2025, as documented in an asset purchase agreement, among other documents.

Debtor's inventory of consigned goods is stored in a warehouse located in Mississippi (the "Warehouse"). All told, there are 8,250,936 units of these goods being stored at the Warehouse. As part of the sale, on the closing date, Debtor turned over control of the Warehouse to Sparkle



15327029.1 64822/158771 8/31/26

Pop but maintained its rights to the consigned goods inventory pursuant to, among other things, the Transition Services Agreement between Debtor and Sparkle Pop dated May 15, 2025, in return for which Debtor agreed, among other things, to pay Sparkle Pop monthly rent for storing the consigned goods.

Sparkle Pop has not received any rent payments from Debtor (or any of the consignors) since December 2025. As of the date hereof, the outstanding rent is over $1 million. Rent continues to be incurred in the monthly amount of approximately $125,000.00. *See* Affidavit in Support of Motion of Sparkle Pop, LLC for Relief from the Automatic Stay dated April 10, 2026 at ¶ 11 [D.I. 1265] (the "Lift Stay Affidavit"), a copy of which is attached as **Exhibit A**. On March 11, 2026, Sparkle Pop filed an administrative claim in Debtor's bankruptcy proceeding for $580,000.00 (Claim No. 53) which has continued to accrue monthly.

During the bankruptcy proceeding, disputes arose between the consignors (who are creditors in Debtors' bankruptcy proceeding) and Debtors over who owns the consigned goods located at the Warehouse and who has the right to sell such goods and retain the proceeds. Sparkle Pop has not and does not take a position in this dispute. Another dispute subsequently arose regarding post-closing sales of the consigned goods by Sparkle Pop (based on information and/or direction from Debtors).

This particular dispute arose because, at the time the assets were handed over, Debtors failed to segregate the consigned inventory from other inventory, and Debtors, who had control over both the website and ordering system, failed to pull the consigned inventory from its website and ordering system. In light of these failures, Sparkle Pop was unaware that certain of the inventory was consigned inventory and passively fulfilled orders from its end-customers. Sparkle Pop then provided Debtors with a weekly report detailing all sales, including sales of the consigned

inventory, so Debtors were fully aware at all times of all post-closing sales of consigned inventory. Despite this knowledge, Debtors did not reach out to Sparkle Pop until weeks after the closing when the bulk of this consigned inventory had already been sold. *See* Declaration of Steven Bieg dated September 5, 2025 [D.I. 829] (the "Bieg Declaration"), a copy of which is attached as **Exhibit B**. It is important to note that Sparkle Pop did not actively solicit orders from the website for any consigned inventory but fulfilled orders that it received as a matter of course. In processing such orders, Sparkle Pop is entitled to a 30% processing fee (a fee that was agreed to in the consignment agreements between the consignors and the Estate). Moreover, because most of the consignment inventory are products (such as comic books) that diminish in value over time, Sparkle Pop's sales inured to the benefit of all parties as its action maximized revenue generated by the consignment inventory. This dispute was partially addressed in this Court's Consent Order Resolving, in Part, Debtors' Motion (I) to Enforce the Automatic Stay, (II) to Enforce the Sale Order, and (III) Granting Related Relief [D.I. 878] (the "Consent Order"). Pursuant to the Consent Order, Sparkle Pop deposited funds in the amount of $840,151.00 into the court registry (the "Court Registry") but did not waive its rights to any of these funds. In connection with fulfilling these sales, Sparkle Pop incurred approximately $251,897 in costs including shipping, packaging, and other costs associated with honoring sales of the consigned inventory received prior to closing on the sale. *See* Bieg Declaration at ¶ 19.

Sparkle Pop also currently holds additional funds in the amount of $478,490.00 on account of consigned inventory received and sold after May 15, 2025 (the "SP Escrow"). In connection with fulfilling these sales, Sparkle Pop incurred approximately $181,373 in costs including shipping, packaging, and other costs associated with honoring sales of the consigned inventory received after the closing on the sale. *See* Bieg Declaration at ¶ 19.

Also, in or about September 2025, with respect to the issue of who owned the consigned goods between the consignors and Debtors, Debtor filed adversary proceedings against numerous consignors including most of the Consignment Group Members seeking declaratory relief that (a) Debtor has an interest in the consigned goods that is superior to the interests of the consignors, (b) the consigned goods constitute property of Debtor's estate, and (c) Debtor can sell or otherwise dispose of the consigned goods free and clear of liens, claims and encumbrances. On or about October 23, 2025, each of these Consignment Group Members filed Third-Party Complaints to Determine the Validity, Priority or Extent of a Lien or Other Interest in Property against Chase and Sparkle Pop seeking a declaratory judgment that the consignors own the consigned goods at the Warehouse. There are no monetary claims asserted against Sparkle Pop.

On August 5, 2026, the Trustee and the Consignment Group Members filed the Motion seeking approval of a settlement reached between them. This proposed settlement keeps this Court involved in protracted non-debtor disputes, does not result in the dismissal of the consignment adversary proceedings, and will require this Court to adjudicate future potential litigation between non-debtor parties involving inventory located in Mississippi that is not property of the Estate, with no real resolution other than to extricate the Trustee from the disputes. Although this proposed settlement involves Sparkle Pop to a large degree, Sparkle Pop was not consulted nor was its consent requested before the Motion was filed.

For the reasons set forth below, each of the highlighted terms of the proposed settlement fails to make Sparkle Pop whole:

The Settlement requires that funds in the Court Registry (other than those funds allocated to consignors not participating in this settlement) will be paid out as follows: (1) $50,000 to the Consignment Group Members; and (2) $619,410 to the Trustee. Under the proposed settlement,

the Consignment Members and Trustee will also jointly move for an order from this Court requiring Sparkle Pop to pay $273,503 to the Trustee from the SP Escrow. As a result, Sparkle Pop will not be paid its processing fees of $433,270.00, or any rent/storage owed since December 2025, which is $1,000,000.00 (through August).

Further, under the proposed settlement, each Consignment Group Member will choose one of the following two options to force Sparkle Pop to turn over the consigned inventory on their exclusive terms and without having to remit fair and reasonable payment to Sparkle Pop: (1) the Consignment Group Member goes to the Warehouse on its own and picks, packs and pallets the goods and then removes them from the Warehouse (defined as the "Consignment Group Pik&Pak Option"); or (2) the Consignment Member requires Sparkle Pop to pick, pack and pallet the goods and then make them available for pick-up by the Consignment Group Member (defined as the "Sparkle Pop Pik&Pak Option"). Both of these options are replete with problems.

For example, for either option, the proposed settlement requires that this Court retain jurisdiction to oversee, supervise and direct the parties with respect to every aspect to occur at the Warehouse despite no involvement (or assertion of any interest) by the Trustee. Also, both options state that access to the Warehouse "shall be coordinated with Sparkle Pop's designee, subject to standard facility rules, safety requirements, and insurance requirements specified in the 9019 Order and/or herein, or otherwise agreed between them" but it is unclear, among other things: (a) what are "standard facility rules" and who decides what they are; and (b) who determines what the "safety requirements" are. This opens the door for additional litigation (presumably in this Court if the Motion is granted) interpreting these terms.

The Consignment Group Pik&Pak Option requires the Consignment Group Member to identify no more than 3 "authorized storage representatives" to access the Warehouse during hours

that do not "materially impair Sparkle Pop's ability to conduct other business" where they will presumably attempt to pick and pack the inventory themselves and put it on the loading dock where they will have 30 days to remove it or it will be abandoned. This option completely ignores Sparkle Pop's interest in protecting the security and continued operation of its working Warehouse.

The Warehouse is an approximately 600,000 square foot active distribution center, not a storage facility where consignors can simply walk in and retrieve merchandise. *See* Affidavit of Steven Bieg at ¶ 2 (the "Bieg Affidavit"), a true and correct copy of which is attached as **<u>Exhibit C</u>**. There are 8,250,936 units of the consigned goods being stored at the Warehouse.

The Warehouse has floor-to-ceiling warehouse racking, with substantial inventory stored at elevations requiring material-handling equipment and trained personnel. Bieg Affidavit at ¶ 3. Much of the consigned inventory consists of heavy paper and comic products creating additional safety concerns when retrieving product from upper-level racking. Bieg Affidavit at ¶ 4. The Warehouse also contains a bonded area, creating additional access, security, customs-compliance and inventory controlled requirements. Bieg Affidavit at ¶ 5. Allowing outside representatives to enter the Warehouse and locate, pick move, pack and pallet their own inventory creates significant safety, liability, operational, inventory-control, and chain-of-custody risks. Bieg Affidavit at ¶ 6.

Not only does this option raise serious security and safety concerns and wholly disrupt the continued operation of a working Warehouse (at no cost), it is further problematic because, among other things, it does not provide who determines if the representatives are "authorized", who the representatives represent, and opens the door for litigation on what it means. Who determines whether it materially impairs Sparkle Pop's business is also totally vague and unclear and also opens the door for more litigation. This option further requires this Court to oversee and order dates and times for the pick-up (and any other disputes occurring in Mississippi) if Sparkle Pop

and the Consignment Group Member(s) cannot agree despite the fact that the Estate has abandoned all of its interests and admitted in the agreement that the goods are owned by the Consignment Group Members. And, this option does not include any processing fees or rent/storage fees to be paid to Sparkle Pop.

In sum, this option is not a feasible option. There is a straightforward solution. Sparkle Pop's trained personnel can locate, retrieve, pick, pack, and pallet the inventory using Sparkle Pop's warehouse systems, equipment, and stage it for pickup by the consignor or its designated carrier. Sparkle Pop has proposed exactly this process at what it believes is a reasonable market-based fee. This process would allow the consignors to recover their property while protecting the safety, security, regulatory compliance, and inventory integrity of an active distribution operation. Sparkle Pop further invited the consignors to obtain competing bids from third-party processors to determine whether Sparkle Pop's proposed fees were consistent with market rates, but those bids have not been provided, and instead the proposal was rejected outright.

The Sparkle Pop Pik&Pak Option is also riddled with issues. This option apparently provides for Sparkle Pop and the Consignment Group Member to agree on the terms and conditions for the pick, pack, pallet and pick-up of the consigned goods but it is also vague and ambiguous. Essentially, this provision forces Sparkle Pop to separately negotiate with each Consignment Group Member (and for this Court to adjudicate any disputes arising from the negotiations). This Court should not have to take this type of role in negotiations that do not involve any property of the Estate.

There are additional provisions in the proposed settlement that are problematic. Not only do the Trustee and the Consignment Group Members fail to agree to pay Sparkle Pop what it is owed for processing fees and back-rent/storage fees, but the proposed settlement provides that if

Sparkle Pop obtains a judgment against the Consignment Group Member(s) for rent or similar charges, that Consignment Group Member(s) would have an administrative claim against the Estate in an amount equal to 25% of such claim.

The proposed settlement does not resolve the pending litigation and, in fact, expands it. First, the proposed settlement contemplates that the Consignment Group Members will continue to prosecute the adversary proceedings against Sparkle Pop which seek a declaration that the Consignment Group Members own the consigned inventory. This makes no sense since, as part of the settlement, the Trustee is admitting the consigned inventory is owned by the Consignment Group Members and abandoning his rights, if any, in the consigned inventory. Second, the Consignment Group Members apparently also intend on filing new unknown and unsubstantiated claims against Sparkle Pop in this Court. The proposed settlement further provides that if they recover funds in excess of the amounts in the Court Registry and SP Escrow, they will pay 5% to the Estate net of collection legal fees and expenses. It is unclear what this provision even means or how it works since, under the proposed settlement, the Trustee gets all of the registry and escrow funds related to these consignors save for $50,000.

Also, acknowledging that Debtors may be responsible for any consigned goods being sold by Debtors or Sparkle Pop after closing on the sale, the proposed settlement provides that if there is a finding obtained by the Consignment Group Member(s) or Sparkle Pop that this was the case, the Consignment Group Member(s) (but not Sparkle Pop) would have an administrative claim against the Estate. This does not account for Sparkle Pop's rights against the Estate when it is ultimately determined that Debtors (and not Sparkle Pop) were responsible for any consigned goods allegedly being wrongfully sold.

The proposed agreement further provides for mutual releases and a complete release of

Chase[3] who is not even a party to the settlement agreement.

Sparkle Pop did not create or contribute to this dispute which was always between the Debtors (now Trustee) and the consignors over who owned the consigned inventory. Despite being wedged in the middle of their dispute, Sparkle Pop continues to be the party suffering the most harm as it is required to continue to store the goods in the Warehouse without any party paying Sparkle Pop its processing fees and duly owed rent/storage fees. Indeed, Sparkle Pop has had to rent out third-party storage to accommodate its 2026 warehouse needs because it is unable to utilize its Warehouse fully. If this settlement is approved, the Trustee and Chase are no longer part of the dispute, but all the problems remain. The consignment disputes linger on with even more confusion given the vagueness of the proposed settlement. Further, this Court will now be required to oversee, supervise and determine the terms and timing of the removal of the goods from the Warehouse at every turn not to mention interpret the ambiguity in this proposed settlement and adjudicate any other unsupported and baseless claims the Consignment Group Members may assert in the future against Sparkle Pop while the Trustee disclaims and abandons any interest in the goods.

## III. Legal Analysis and Argument

Federal Rule of Bankruptcy Procedure 9019(a) provides that on motion by the trustee and after a hearing on notice to creditors and others, "the court may approve a compromise or settlement." In determining whether to approve a settlement, the bankruptcy court considers the following factors: (a) the probability of success in litigation; (b) the difficulties, if any, to be

[3] Further, with respect to Chase, as of the date of the filing of this Objection, Sparkle Pop has been in separate settlement negotiations with the Trustee and the consignors that are not part of the settlement proposed in the Motion. These parties have reached tentative agreement on terms but, to date, Chase has not agreed on the settlement. and the Trustee is insisting that Chase has to agree to the terms of the agreement between the Trustee, Sparkle Pop and the remaining consignors. Chase further filed a response and reservation of rights to the Motion asserting its claim to any funds paid to the Trustee as part of this proposed settlement. As a result, and until and unless this is resolved, Sparkle Pop is objecting to the proposed settlement set forth in the Motion.

encountered in the matter of collection; (c) the complexity of the litigation involved (including the expense, inconvenience and delay necessarily attending the litigation); and (d) the paramount interest of the creditors and a proper deference to their reasonable views." *U.S. ex rel. Rahman v. Oncology Associates, P.C.*, 269 B.R. 139, 149 (Bankr. D. Md. 2001) (internal citations omitted). The "essential inquiry… is to determine whether the compromise reached by the parties is 'fair and equitable' and in the best interests of the estate." *Id.* at 150 (internal citations omitted).

Here, the Motion should be denied because the proposed settlement, among other things, (1) fails to resolve the underlying core disputes, (2) unfairly exposes non-participants such as Sparkle Pop to additional potential litigation, (3) improperly forces obligations on third-parties including Sparkle Pop, who are not parties to the settlement, without proper consideration of their interests (for example, electing a pick and pack option that would cause a massive disruption to Sparkle Pop's Warehouse business), (4) fails to pay Sparkle Pop its processing and rent/storage fees; and (5) requires this Court to oversee, supervise and adjudicate every single aspect of the proposed settlement (even though the Trustee admits the consigned goods are owned by the consignors, assigns his rights in the adversary proceedings and abandons any interest he does have in the consigned goods).

Indeed, it is fundamentally unjust for the funds in the Court Registry and SP Escrow to be used to fund this settlement without properly accounting for the processing fees and back rent/storage fees incurred by Sparkle Pop, in good faith, to maximize the sales value and to safeguard the goods during Debtors (now the Trustee) and the Consignment Group Members' protracted dispute.

Finally, this settlement proposal fails to stem additional litigation that will likely proliferate if this settlement were to be approved by this Court. Not only do the Consignment Group Members

intend on continuing to prosecute the Third-Party Complaint against Sparkle Pop, but they would now also own the Trustee's claims against themselves and state that they intend to pursue other new unsupported and baseless claims against Sparkle Pop. Further, the vague and uncertain pick and pack options, the failure to account for payments due Sparkle Pop, and failure to work with Sparkle Pop in extracting the consigned goods will certainly keep this Court embroiled in future litigation long after the Estate's involvement has ceased. This Court should not be burdened with overseeing, supervising and adjudicating disputes between non-debtors over assets that are not the property of the Estate.

## IV. Conclusion

The consignment disputes should not be resolved piecemeal, but rather it should be resolved through a global settlement that involves all pertinent parties and that resolves all outstanding issues, stemming further litigation. Forcing Sparkle Pop to adhere to the terms of this proposed settlement-- without payment to Sparkle Pop of back rent in the amount of $1,000,000, processing fees of $433,270, and fair and just compensation for picking, packing and palleting the inventory and making it available for pickup--is not the solution.

Accordingly, for these reasons and for any other reasons set forth at any hearing on the Motion, this Court should deny the Motion and grant such other and further relief as just and appropriate under the circumstances.

Respectfully submitted,

Dated: August 31, 2026

*/s/ Jodie E. Bekman*

Jodie E. Bekman (Bar No. 26004)
Gordon Feinblatt LLC
1001 Fleet Street, Suite 700
Baltimore, MD 21202
T/F: (410) 576-4082
jbekman@gfrlaw.com

*Attorneys for Sparkle Pop, LLC*

**CERTIFICATE OF SERVICE**

I certify that on this 31st day of August 2026, I caused the foregoing *Objection by Sparkle Pop, LLC to Joint Motion to Approve Settlement Pursuant to Fed. R. Bankr. P. 9019 (a) (Trustee and Ad Hoc Consignment Group)* to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send email notifications to all parties and counsel of record consisting of the following:

Sam Alberts sam.alberts@dentons.com, docket.general.lit.wdc@dentons.com

Jodie E. Bekman jbekman@gfrlaw.com, dferguson@gfrlaw.com

Jan Berlage JBerlage@GHSLLP.com, tcollins@ghsllp.com

Hugh M. (UST) Bernstein hugh.m.bernstein@usdoj.gov

Daniel Jack Blum jack.blum@polsinelli.com, lsuprum@polsinelli.com, delawaredocketing@polsinelli.com

Laura Skowronski Bouyea lsbouyea@venable.com, dmdierdorff@venable.com

Thomas K. Bredar thomas.bredar@wilmerhale.com, andrew.goldman@wilmerhale.com, benjamin.loveland@wilmerhale.com, yolande.thompson@wilmerhale.com

Matthew G. Brushwood mbrushwood@barley.com, dkline@barley.com

Darek Bushnaq dsbushnaq@venable.com

Richard L. Costella rcostella@tydings.com, myoung@tydings.com, pcoolbaugh@tydings.com

Katherine Elizabeth Culbertson katherine.culbertson@troutman.com

David W.T. Daniels ddaniels@perkinscoie.com, docketnyc@perkinscoie.com, nvargas@perkinscoie.com, KMcClure@perkinscoie.com, rleibowitz@perkinscoie.com

G. David Dean ddean@coleschotz.com, PRatkowiak@coleschotz.com

Mark L Desgrosseilliers desgross@chipmanbrown.com, fusco@chipmanbrown.com

Emily Devan edevan@milesstockbridge.com

Turner Falk turner.falk@saul.com, tnfalk@recap.email, Veronica.Marchiondo@saul.com

Justin Philip Fasano jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com, tmackey@mhlawyers.com, mevans@mhlawyers.com, cmartin@mhlawyers.com, Fasano.JustinR92003@notify.bestcase.com

Ashley N Fellona ashley.fellona@saul.com, janice.mast@saul.com

Gianfranco Finizio gfinizio@lowenstein.com

Morgan W. Fisher trustee@morganfisherlaw.com, MD65@ecfcbis.com, fisher@premierremote.com

Chelsea R Frankel cfrankel@lowenstein.com

Jeremy S. Friedberg jeremy@friedberg.legal, ecf@friedberg.legal

Stephen B. Gerald sgerald@tydings.com

Christopher J. Giaimo christopher.giaimo@squirepb.com, christopher.giaimo@squirepb.com, christopher-j-giaimo-6409@ecf.pacerpro.com

Joshua Glikin jglikin@shulmanrogers.com, abogert@shulmanrogers.com, mdicarlo@shulmanrogers.com

Richard Marc Goldberg rmg@shapirosher.com, ejd@shapirosher.com

Jonathan A. Grasso jgrasso@yvslaw.com, pgomez@yvslaw.com, r39990@notify.bestcase.com

Zvi Guttman zvi@zviguttman.com, zviguttman@gmail.com, zviguttman@outlook.com, MD55@ecfcbis.com

Jeffrey C. Hampton jeffrey.hampton@saul.com

Catherine Keller Hopkin chopkin@yvslaw.com, pgomez@yvslaw.com, kreese@yvslaw.com, vmichaelides@yvslaw.com, yvslawcmecf@gmail.com, hopkincr39990@notify.bestcase.com

James R. Irving james.irving@dentons.com

Adam H Isenberg adam.isenberg@saul.com

Anthony Jankoski anthony.jankoski@faegredrinker.com

Harry Conrad Jones HJones@coleschotz.com, bankruptcy@coleschotz.com, pratkowiak@coleschotz.com

Lawrence A. Katz lkatz@hirschlerlaw.com, chall@hirschlerlaw.com, aklena@hirschlerlaw.com

Toyja E. Kelley Toyja.Kelley@troutman.com

C. Kevin Kobbe kevin.kobbe@us.dlapiper.com, docketing-baltimore-0421@ecf.pacerpro.com

Eric George Korphage korphagee@whiteandwilliams.com

Jung Yong Lee jlee@milesstockbridge.com, mhickman@tydings.com

Gary H. Leibowitz gleibowitz@coleschotz.com, pratkowiak@coleschotz.com, bankruptcy@coleschotz.com, lmorton@coleschotz.com

Thomas J. McKee mckeet@gtlaw.com, Karrie.Barbaro@gtlaw.com, thomas--mckee-0902@ecf.pacerpro.com

Mark Minuti mark.minuti@saul.com, robyn.warren@saul.com

Randy Moonan rmoonan@sillscummis.com

William Fuller Moss william.moss@friedberg.legal

Bruce S. Nathan bnathan@lowenstein.com

Janet M. Nesse jnesse@mhlawyers.com, jfasano@mhlawyers.com, cpalik@mhlawyers.com, jnesse@ecf.inforuptcy.com, tmackey@mhlawyers.com, cmartin@mhlawyers.com, kfeig@mhlawyers.com

Craig Palik cpalik@mhlawyers.com, cpalik@ecf.inforuptcy.com, Palik.CraigR92003@notify.bestcase.com, mevans@mhlawyers.com, cmartin@mhlawyers.com

Michael Papandrea mpapandrea@lowenstein.com

Steven Gregory Polard steven.polard@ropers.com, loriann.zullo@ropers.com, calendar-LAO@ropers.com

Jonathan Gary Rose jonathan.rose@us.dlapiper.com

Jordan Rosenfeld jordan.rosenfeld@saul.com

Nikolaus F. Schandlbauer nick.schandlbauer@arlaw.com, lianna.sarasola@arlaw.com

Dennis J. Shaffer dshaffer@tydings.com, scalloway@tydings.com, MYoung@tydings.com

Indira Kavita Sharma indira.sharma@troutman.com, katherine.culbertson@troutman.com, jonathan.young@troutman.com, david.ruediger@troutman.com,

errol.chapman@troutman.com, toyja.kelley@troutman.com

Nicholas Smargiassi nicholas.smargiassi@saul.com

David Sommer dsommer@gallagherllp.com, ceyler@gejlaw.com, gomara@gejlaw.com, csalce@gejlaw.com, mkobylski@gejlaw.com

Brent C. Strickland bstrickland@whitefordlaw.com, mbaum@whitefordlaw.com, brent-strickland-3227@ecf.pacerpro.com

Matthew G. Summers summersm@ballardspahr.com, branchd@ballardspahr.com, heilmanl@ballardspahr.com, ambroses@ballardspahr.com, zarnighiann@ballardspahr.com, carolod@ballardspahr.com, cromartie@ballardspahr.com, stammerk@ballardspahr.com, brannickn@ballardspahr.com

S. Jason Teele steele@sillscummis.com

Paige Noelle Topper paige.topper@saul.com

US Trustee - Baltimore USTPRegion04.BA.ECF@USDOJ.GOV

*/s/ Jodie E. Bekman*
Jodie E. Bekman