# EXHIBIT B

**For IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| In re:<br><br>DIAMOND COMIC DISTRIBUTORS, INC., et al.<br><br>Debtors.[1] | Jointly Administered under<br>Case No: 25-10308-DER (Chapter 11) |

**DECLARATION OF STEVEN BIEG**

I, Steven Bieg, declare as follows:

1. I am over the age of 18 and am competent to make this declaration. I submit this declaration in support of Sparkle Pop, LLC's ("Sparkle Pop") Objection to Debtors' Motion (I) to Enforce the Automatic Stay and (II) to Enforce the Sale Order and (III) Granting Related Relief.

2. I am the Chief Financial Officer of Ad Populum, LLC, which is the ultimate parent entity of Sparkle Pop, LLC.

3. On April 27, 2025, Sparkle Pop entered into an asset purchase agreement (the "APA") with Diamond Comic Distributors, Inc. ("Debtors") pursuant to which Sparkle Pop acquired certain of Debtors assets. In connection with the APA, Sparkle Pop and Debtors also entered into a Transition Services Agreement (the "TSA"), pursuant to which Debtors agreed to provide certain services to Sparkle Pop following the closing of the APA transaction.

[1] The Debtors in these chapter 11 cases along with the last four digits of the Debtors' federal tax identification numbers are Diamond Comic Distributors, Inc., (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585). The Debtors' mailing address is 10150 York Road, Suite 300, Hunt Valley, Maryland 21030.

4. On May 1, 2025, the United States Bankruptcy Court for the District of Maryland approved the APA and TSA through the issuance of a sale order (the "Sale Order"). The transaction formally closed on May 15, 2025. The APA was enclosed in the Sale Order and filed on the docket in the above-captioned chapter 11 cases. A true and correct copy of the Sale Order attaching the APA is attached hereto as Exhibit A.

5. Part of Debtors business operations involved selling goods on behalf of third-party consignors (the "Consigned Inventory"). Sparkle Pop did not acquire the Consigned Inventory in connection with the APA and, instead, such goods were treated by the parties to the APA as Excluded Assets.

6. Prior to Closing, Debtors maintained a website through which Debtors marketed and sold their goods and inventory to their end customers (the "Website"). The Debtors marketed and sold Consigned Inventory through use of the Website.

7. Prior to Closing, Debtors maintained a storage facility located in Olive Branch, Mississippi (the "Olive Branch Facility") at which Debtors stored, packaged and processed goods and inventory for sale to their customers. Debtors used the Olive Branch Facility to store and process sales of the Consigned Inventory.

8. Debtors did not remove or delist the Consigned Inventory from the Website prior to the closing of the APA. Debtors further took no action to remove the Consigned Inventory from the Olive Branch Facility prior to or following the Closing.

9. After Sparkle Pop took ownership of the Debtors assets, the goods in storage for distribution and sale at the Olive Branch Facility contained both Consigned Inventory and non-consigned inventory mixed together.

10. As a result of Debtors' bankruptcy, and based on my understanding at the time, for a period of time following the Closing, Debtors did not inform Sparkle Pop that they intended to assert any interests in or claim to the Consigned Inventory.

11. Following the Closing, Sparkle Pop undertook no affirmative efforts to market or sell Consigned Inventory.

12. However, after Sparkle Pop took ownership of Debtors' assets, Sparkle Pop received orders from customers placed through the website (which still listed Consigned Inventory for sale) in the ordinary course of business.

13. Without knowledge of whether Debtors possessed any ownership or legal interest in the Consigned Inventory, Sparkle Pop became concerned that failing to fulfill the orders received through the Website in the ordinary course of business could subject Sparkle Pop to liability. Indeed, in this industry, the longer Consigned Inventory remains for sale, the greater likelihood that the value of the Consigned Inventory will decrease over time.

14. Sparkle Pop therefore fulfilled sales on Consigned Inventory as received (while not taking any affirmative action to market or sell the Consigned Inventory).

15. Sparkle Pop tracked sales of Consigned Inventory and segregated all proceeds generated from such sales. Sparkle Pop did so with the intent to distribute such proceeds to whichever party – be it Debtors or the consignors – ultimately would be determined to have ownership or legal title to the Consigned Inventory.

16. On June 8, 2025, representatives from Debtors contacted Sparkle Pop stating the Sparkle Pop must obtain the consent of Debtors prior to selling any Consigned Inventory and demanded that Sparkle Pop cease honoring sales of Consigned Inventory.

17. Over the next several weeks, Sparkle Pop continued to receive shipments of additional, new Consigned Inventory, as well as orders for purchase of Consigned Inventory through the Website.

18. As of the date of Debtors' Motion, Sparkle Pop had fulfilled sales generating $1,051,575 for Consigned Inventory received before May 15, 2025 and $515,866 in revenue for Consigned Inventory received after May 15, 2025, respectively. Sparkle Pop has segregated this revenue and has held the funds for the benefit of whichever party is determined to hold ownership or legal title to the Consigned Inventory.

19. In connection with fulfilling such sales of Consigned Inventory, Sparkle Pop incurred approximately $251,897 in costs, including shipping, packaging, and other costs associated with honoring sales of Consigned Inventory received prior to Closing and $181,373 in costs, including shipping, packaging, and other costs associated with honoring sales of Consigned Inventory received after the Closing, respectively. I understand that, pursuant to the TSA, Debtors agreed to reimburse Sparkle Pop for all such costs incurred in connection with Processing Consigned Inventory. Given the current status of the Debtors' chapter 11 proceedings, Sparkle Pop has concerns over its ability to recoup any payments it may be required to turn over to the Debtors.

20. Prior to the filing of Debtors' Motion, Sparkle Pop had removed all Consigned Inventory from the Website and Sparkle Pop has ceased all sales of Consigned Inventory.

I declare under penalty of perjury under that the foregoing is true and correct.

Executed this 5th of September 2025 at Venice [city], Florida [state].

Signed by:
Steven Bieg
12DCF4CCC59140B...

Steven Bieg

**CERTIFICATE OF SERVICE**

I certify that, on September 5, 2025, a true copy of the *Declaration of Steven Bieg* was served via CM/ECF upon parties registered to receive CM/ECF notifications in the above referenced cases.

*/s/ Ellen E. Dew*
Ellen E. Dew