**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| **In re:** | * | |
| **Diamond Comic Distributors, Inc., *et. al*,** | * | **Case No. 25-10308-DER (Jointly Administered)** |
| **Debtors.**[1] | * | **Chapter 7** |

* * * * * * * * * * * * *

**JOINT MOTION TO APPROVE SETTLEMENT**
**PURSUANT TO FED. R. BANKR. P. 9019(a)**
**(TRUSTEE, SPARKLE POP LLC, AND PALIK CONSIGNMENT GROUP)**

Morgan W. Fisher, Chapter 7 Trustee for Diamond Comic Distributors, Inc., *et al.*, (the "**Trustee**") together with Sparkle Pop LLC ("Sparkle Pop") and the persons and entities listed on Schedule 1 to **Exhibit A** attached hereto (each a "**Palik Consignment Group Member**" and collectively, the "**Palik Consignment Group**"[2] and, together with the Trustee and Sparkle Pop, the "**Settling Parties**"), by and through undersigned counsel, respectfully move together pursuant to Federal Rule of Bankruptcy Procedure 9019(a) for entry of an Order approving the settlement between them (the "**Motion**"). The Trustee is the duly-appointed, qualified, and acting trustee for the Chapter 7 Bankruptcy Estates (the "**Estates**") of Diamond Comic Distributors, Inc., a Maryland corporation (the "**Debtor**"), and Diamond Select Toys & Collectibles, LLC, a Maryland limited liability company ("**Diamond Select**"), Comic Holdings, Inc., a Maryland corporation

[1] The Debtors in these chapter 7 cases are: Diamond Comic Distributors, Inc.; Comic Holdings, Inc.; Comic Exporters, Inc.; and Diamond Select Toys & Collectibles, LLC.

[2] As of the filing of this Motion, the Palik Consignment Group Members include: Aspen MLT, LLC a/k/a Aspen Comics; Black Mask Studios, LLC; DSTLRY Media, Inc.; Heavy Metal International, LLC; Magnetic Press, LLC; Massive Publishing, LLC; Oni-Lion Forge Publishing Group, LLC f/k/a Oni Press, LLC; Panini UK Ltd.; Punk Bot Comic Books, LLC a/k/a Alien Books; The Penn State University a/k/a Graphic Mundi; Titan Publishing Group, Ltd.; Vault Storyworks, LLC a/k/a Vault Comics f/k/a Creative Mind; and Dark Horse Comics, LLC.

("**Comic Holdings**"), and Comic Exporters, Inc. ("**Comic Exporters**" and, collectively with Diamond Select and Comic Holdings, the "**Affiliated Debtors**" and, collectively with the Debtor, the "**Debtors**").[3] In support of this Motion, the Settling Parties state as follows:

## INTRODUCTION

This Motion culminates months of work among the Settling Parties (and the Ad Hoc Consignment Group, *see* ECF. No. 1309) to reach a global resolution of the "consignment-related disputes." Difficult as it has been, the Trustee has diligently focused on bringing the warring factions together in a global resolution of that has been described more than once as an intractable situation. This settlement is intended to work in tandem with the settlement between the Trustee and the Ad Hoc Consignment Group (the "Ad Hoc Agreement"), for which approval was sought on August 5, 2026, to effect a global resolution for the Trustee of the consignment-related disputes in these cases. Disputes remain between the Ad Hoc Consignment Group and Sparkle Pop.

Taken together with the Ad Hoc Agreement, this Agreement will result in, among other things, the release of the Palik Consignment Group's Consigned Inventory, the resolution of Sparkle Pop's disputed claims for storage expenses and processing costs with the Trustee and Palik Consignment Group, mutual releases eliminating the adversary proceedings filed against the Palik Consignment Group and the pending appeal, and provide significant payments to the Estates.

For the reasons set out below, the Court should approve this Motion.

## JURISDICTION

1. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2).

[3]The Debtors in these chapter 7 are: Diamond Comic Distributors, Inc.; Comic Holdings, Inc.; Comic Exporters, Inc.; and Diamond Select Toys & Collectibles, LLC.

2. The statutory predicate for the relief requested herein is 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019(a).

## BACKGROUND

3. On January 14, 2025, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "**Petition Date**").

4. Prior to the Petition Date, the Debtor and each Palik Consignment Group Member entered into distribution or supply agreements (each such distribution or supply agreement, a "**Distribution Agreement**" and, collectively, the "**Distribution Agreements**") for the Debtor's distribution of certain products of each Palik Consignment Group Member, such as comic books, graphic novels, novels, games, and merchandise in certain territories, as described in the Distribution Agreements.

5. On May 1, 2025, an Order was entered by the Bankruptcy Court: (i) Approving Asset Purchase Agreement (the "**Purchase Agreement**") by and among the Debtors and Sparkle Pop, LLC, a Delaware limited liability company ("**Sparkle Pop**"), and the other parties thereto, (ii) Approving Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and other Interests; (iii) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (iv) Granting Related Relief (the "**Sparkle Pop Sale Order**") [Dkt. No. 407].

6. Pursuant to the Sparkle Pop Sale Order, goods held by Debtors on consignment (*i.e.,* the "**Consigned Inventory**") were excluded from the Purchase Agreement.

7. On May 15, 2025, the Debtors and Sparkle Pop closed on the transactions contemplated by the Purchase Agreement and the Sparkle Pop Sale Order.

8. Prior to the Petition Date, and thereafter, the Debtors (and/or Sparkle Pop if after May 15, 2025—*i.e.,* closing of the Purchase Agreement) received Consigned Inventory, which Consigned Inventory is believed to be currently stored at the Debtors' former distribution facility in Olive Branch, Mississippi (the "**Warehouse**").

9. Following the approval of sale transactions, and in connection with the closing of the Purchase Agreement, and pursuant to the Sparkle Pop Sale Order, Sparkle Pop and the Debtors entered into a Transition Services Agreement, dated May 15, 2025 (the "**TSA**"), that, among other things, addressed warehousing, systems access, consigned goods handling, and related transition services with respect to the Consigned Inventory.

10. Following closing of the Purchase Agreement, disputes arose regarding the Consigned Inventory, including storage costs, handling, and related matters. The Debtors commenced adversary proceedings against consignors, including the Palik Consignment Group Members (collectively, the "**CG Adversary Proceedings**"). Sparkle Pop asserts claims for Storage Expenses accruing at approximately $125,000 per month (unpaid since December 2025) and claims for processing costs of not less than $433,270.00 and Storage Expenses of not less than $1,125,000.00. The Trustee disputes these claims.

11. A dispute arose between the Debtors and a number of consignors (including the Palik Consignment Group Members) on the one hand, and Sparkle Pop, on the other hand, regarding post-closing sales of the Consigned Inventory by Sparkle Pop, which dispute was partially resolved on September 12, 2025 by the Bankruptcy Court's Consent Order Resolving, in Part, Debtors' Motion (i) to Enforce the Automatic Stay, (ii) to Enforce the Sale Order, and (iii) Granting Related Relief (the "**Consent Order**") [Dkt. No. 878]. Pursuant to the Consent Order, Sparkle Pop deposited funds in the amount of $840,151.00 into the registry of the Bankruptcy

Court (the "**Court Registry Escrow**"), of which $48,254.00 represents proceeds from certain sales of the Palik Consignment Group Members' Consigned Inventory.

12. Furthermore, Sparkle Pop currently holds additional funds in the amount of $478,490.00 (the "**SP Escrow**") on account of Consigned Inventory both received and sold after May 15, 2025, of which $105,856.00 represents proceeds from certain sales of the Palik Consignment Group Members' Consigned Inventory.

13. On December 19, 2025, the Bankruptcy Court entered an Order converting the Chapter 11 Bankruptcy Cases to Chapter 7 (the "**Conversion Order**") as of 11:59 PM on December 31, 2025, and provided related procedures for the case transition. The Trustee was appointed effective 11:59 PM Eastern Standard Time, on December 31, 2025.

14. On February 19, 2026, the Trustee filed an Emergency Motion to Extend Deadline to Assume or Reject Executory Contracts Related to Consigned Goods (the "**Trustee Emergency Motion**"). The Palik Consignment Group objected to the Trustee Emergency Motion and a hearing was held thereon.

15. On February 26, 2026, the Bankruptcy Court denied the Trustee Emergency Motion (the "**Denial Order**").

16. On March 12, 2026, the Trustee filed an appeal of the Denial Order (the "**Denial Order Appeal**"), which remains pending in the District Court.

17. On August 5, 2026, the Trustee and the Ad Hoc Consignment Group filed the Ad Hoc Motion [Dkt. No. 1309] seeking approval of the Ad Hoc Agreement. The Ad Hoc Motion remains pending before the Bankruptcy Court but it is an integral component to this Motion/Agreement and the ability for the Trustee to effect the sought after global resolution.

18. Rather than continue to litigate their disputes, the Settling Parties have negotiated a resolution to settle fully and finally the disputes among and between them without litigation. Subject to approval by this Court, the Settling Parties have agreed to the terms of a Settlement Agreement and Releases (the "**Settlement**"), a copy of which is attached hereto as **Exhibit A**.[4]

## THE COMPROMISE

19. While the actual terms and conditions of the Settlement are set out fully therein, and govern the rights and obligations of the Settling Parties, a summary of the terms are set out immediately below (in the event of any discrepancy between the following summary and the Settlement, the terms of the Settlement shall control):

a. **Inventory Release and Pik&Pak Logistics**. Upon the Effective Date and selection of a Pik&Pak Option, Sparkle Pop shall release the Palik Consignment Group's Consigned Inventory. Two options are available: (i) **Pik&Pak Option 1**: Sparkle Pop picks 4% of the value of remaining wholesale Consigned Inventory in lieu of payment; the remaining 96% is picked, packed, palletized, and made available without additional charge; or (ii) **Pik&Pak Option 2**: Each member pays 2% of wholesale value directly to Sparkle Pop; all remaining inventory is picked, packed, palletized, and made available. Risk of loss transfers upon loading at dock or tender to carrier. Each Palik Consignment Group Member shall have thirty (30) days after notice to remove its inventory from the Warehouse; failure to timely remove shall be deemed abandonment. Members may request Sparkle Pop to destroy any of their Consigned Inventory at no additional cost to each Palik Consignment Group Member, and this option is enforceable regardless of which Pik&Pak Option is selected.

[4] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement.

b. **<u>Grant of Chapter 11 Administrative Claims</u>**. The Palik Consignment Group is granted Chapter 11 administrative expense claims under 11 U.S.C. § 503(b) for the value of Consigned Inventory provided in lieu of Pik&Pak charges, Pik&Pak charges paid, value of lost, damaged, or unaccounted inventory, and other charges. These claims shall be subordinate to (i) Chapter 7 administrative claims under § 503(b) pursuant to § 726(b), and (ii) the JPM claims per ECF No. 1281.

c. **<u>Release and Disbursement of Escrows; Payments to Sparkle Pop</u>**. The Settling Parties shall jointly move the Bankruptcy Court as follows: (i) *Court Registry Escrow*: release the entire Court Registry Escrow to the Trustee, subject to the Consent Order and the Ad Hoc Agreement; (ii) *SP Escrow*: release the SP Escrow to Sparkle Pop, which shall retain the full amount of the SP Escrow for its Storage Expenses and Processing Fees; and (iii) *Settlement Payments to Sparkle Pop*: the Trustee shall disburse $308,890.00 from the Court Registry Escrow (paid under the Ad Hoc Agreement) to Sparkle Pop AND shall assign the Estates' rights to the Palik Consignment Group portion of the SP Escrow ($105,856.00) to Sparkle Pop. The payments to Sparkle Pop under clauses (ii) and (iii) total $787,380.00 and, together with the Tariff Refund Rights Sharing, constitute full satisfaction of all Sparkle Pop claims against the Trustee, the Estates, the Debtors, and the Palik Consignment Group.

d. **<u>Tariff Refund Rights</u>**. Sparkle Pop shall assert the Estates' Tariff Refund Rights. Tariff Refunds shall be split 50% to Sparkle Pop and 50% to the Trustee, net of Costs (meaning verifiable actual, reasonable and necessary fees and expenses of any Tariff Professionals incurred solely for the purpose of pursuing, obtaining, and collecting the Estates' Tariff Refund Rights).

e. **Rejection of Distribution Agreements**. All Distribution Agreements of the Palik Consignment Group Members shall be deemed rejected under § 365 of the Bankruptcy Code upon the Effective Date of the Settlement and terminated in their entirety.

f. **Abandonment**. Within ten (10) days after entry of the Final Approval Order, the Trustee will file a notice of abandonment pursuant to Bankruptcy Code § 554 as to all Consigned Inventory in the Warehouse belonging to the Palik Consignment Group.

g. **Dismissals**. Within ten (10) days after entry of the Final Approval Order, (i) the Trustee will file notices of dismissal in the CG Adversary Proceedings as to the Palik Consignment Group; and within ten (10) days after the Effective Date, (ii) the Trustee shall file a notice of dismissal of the Denial Order Appeal (if not already resolved).

h. **Assignments**. Within ten (10) days after entry of the Final Approval Order, (i) the Trustee shall assign to Sparkle Pop all rights, title, and interest in and to the Consigned Inventory covered by the Default Judgments; (ii) the Trustee shall assign to Sparkle Pop all rights, title, and interest in and to the Consigned Inventory covered by the Image Comics settlement; and (iii) the Trustee shall assign to Sparkle Pop all of the Trustee's and the Estates' rights, title, and interests, without representation or warranty of any kind, against the inventory of consignors other than consignors included in either the Order granting the Ad Hoc Motion or the Approval Order, including, without limitation, Digital Manga, Image Comics, Net Comics, and Valiant Entertainment.

i. **Releases**. The Settlement provides for essentially mutual releases among the Settling Parties: (i) the Palik Consignment Group releases the Trustee, the Estates, and the Debtors AND Sparkle Pop; (ii) Sparkle Pop releases the Trustee, the Estates, and the Debtors AND the Palik Consignment Group; and (iii) the Trustee releases Sparkle Pop AND the Palik

Consignment Group (solely as relates to the Palik Consignment Group and their Consigned Inventory). Sparkle Pop’s release excludes any claims arising from the Estate’s mishandling or misappropriation of Consigned Inventory prior to May 15, 2025. The releases include, but are not limited to, preference claims, TSA claims, rent and storage claims, CG Adversary Proceeding claims, and escrow-related claims.

j. **Indemnification**. Subject to certain exceptions, Sparkle Pop indemnifies the Trustee and the Estates from claims by any consignor relating to (a) rent or warehousemen's liens as relates to the Palik Consignment Group, (b) Pik&Pak services, and (c) claims initiated by Sparkle Pop relating to the Palik Consignment Group's Consigned Inventory.

k. **Conditions Precedent**. The Settlement shall become effective upon the satisfaction of the following conditions: (a) the Ad Hoc Agreement is approved by the Bankruptcy Court and the order approving same is final and non-appealable; (b) fourteen (14) days after entry of the Approval Order for this Settlement, not subject to any stay; and (c) execution by all parties.

20. Schedule 1 of **Exhibit A** identifies the individual members of the Palik Consignment Group that are Settling Parties.

21. The Settlement does not impact the rights or obligations of Non-Participating Consignors. The Settlement does not require Sparkle Pop to take any act or incur any expense without fair compensation, except as set forth in the Settlement.

22. The Settling Parties believe the Settlement is in the best interest of the Estates. It resolves Sparkle Pop's disputed claims for storage expenses and processing costs; it releases the Palik Consignment Group's Consigned Inventory from the Warehouse; it relieves the Trustee from further involvement in the CG Adversary Proceedings and the Denial Order Appeal as to the Palik Consignment Group; it provides additional value to the Estates through the tariff refund sharing

arrangement and the release of the Court Registry Escrow; and it effects mutual releases eliminating costly, complex, and time-consuming litigation.

23. The Settling Parties have consented to the relief requested in this Motion. The Settlement is intended, together with the Ad Hoc Agreement, to effect a global resolution of the consignment-related disputes in these cases.

## LEGAL BASIS

24. Pursuant to Fed. R. Bankr. P. 9019(a), the Court may approve a settlement and compromise after notice if such settlement and compromise is "fair and equitable" and in the best interest of the estate. *See generally, U.S. ex. Rel. Rahman v. Oncology Associates, P.C.*, 269 B.R. 139, 149 (D. Md. 2001); *DePoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994). Courts in this district have held that a determination whether to approve a settlement must involve consideration of the following factors:

> (a) the probability of success in litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved (including the expense, inconvenience and delay necessarily attending the litigation); and (d) the paramount interest of the creditors and a proper deference to their reasonable views.

*Oncology Associates*, 269 B.R. at 149-50 (*citing Protective Committee for Independ. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, et al.*, 390 U.S. 414, 424, 88 S.Ct. 1157 (1968)). *See also In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991). Observing that settlements are to be encouraged rather than discouraged, the Court in *Oncology Associates* determined that a settlement may be approved unless the settlement, "falls below the lowest point in the range of reasonableness". *Oncology Associates*, 269 B.R. at 149 (*quoting W.T. Grant Co.*, 699 F.2d 599, 608 (2nd Cir.), *cert. denied sub nom.*, 464 U.S. 822, 104 S. Ct. 89 (1983); *In re: Bowman*, 181 B.R. 836, 846 (Bankr. D. Md. 1995).

25. Compromises are generally favored by bankruptcy courts. *See In re Sassalos*, 160 B.R. 646, 653 (D. Or. 1993) ("compromises are favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove a compromise ... rests in the sound discretion of the judge."). Federal Rule of Bankruptcy Procedure 9019(a) provides that, "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. *In re Penn Cent. Transp. Co.,* 596 F.2d 1002, 1113 (3d Cir. 1979) ("in administering reorganization proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts"), quoting *In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968).

26. In the present case, the Settling Parties believe that the Settlement satisfies the four-factor test enumerated by this Court in the *Oncology Associates* case.

27. Furthermore, the Trustee represents and submits that he has: (i) properly and appropriately exercised his sound business judgment in determining that the Settlement is in the best interest of the Estates, creditors, and other parties in interest; and (ii) demonstrated good and sufficient business justification for approval of the Settlement.

## **NOTICE**

28. Accordingly, the Motion is being served via CM/ECF. Pursuant to Order Granting Motion For Entry of Administrative Order Limiting Notice and Related Relief [ECF No. 1332; September 1, 2026], The Notice of this Motion hereof has been served upon the Consolidated Master Service List, consisting of the following persons or their counsel:

a. All persons receiving service via CM/ECF;

b. All persons who have filed a notice of appearance and request for service in these cases;

c. Secured Creditors;

d. The Debtor's 20 largest unsecured creditors, based on filed claims;

e. All consignors to the Debtor or their counsel;

f. The Office of the United States Trustee; and

g. The Internal Revenue Service and the Comptroller of the State of Maryland.

29. The Trustee submits that this is due and adequate notice of the Settlement and the relief sought herein.

## STATEMENT PURSUANT TO LOCAL BANKRUPTCY RULE 9013-2

30. Pursuant to Local Bankruptcy Rule 9013-2, no separate memorandum of law in support of this motion will be filed and the Settling Parties will rely solely upon the motion and any hearing hereon.

**WHEREFORE**, the Palik Consignment Group, Sparkle Pop, and the Trustee jointly respectfully request that this Court enter an Order granting this Joint Motion to Approve Settlement pursuant to Fed. R. Bankr. P. 9019(a) and granting such other relief as is just and proper.

Dated: September 22, 2026

Respectfully submitted,

*/s/ Craig M. Palik*
Craig M. Palik, Fed. Bar No. 15254
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
Email: cpalik@mhlawyers.com

***Counsel to the Palik Consignment Group***

*/s/ Zvi Guttman*
Zvi Guttman, Fed. Bar No. 06902
The Law Offices of Zvi Guttman, P.A.
Post Office Box 32308
Baltimore, Maryland 21282
Tel: (410) 580-0500
Email: Zvi@zviguttman.com

***Counsel to Morgan W. Fisher, Chapter 7 Trustee***

*/s/ Jodie E. Bekman*
Jodie E. Bekman, Fed. Bar No. 26004
Gordon Feinblatt LLC
1001 Fleet Street, Suite 700
Baltimore, MD 21202
Email: jbekman@gfrlaw.com

***Counsel to Sparkle Pop LLC***

*/s/ Richard M. Goldberg*
Richard M. Goldberg, Fed. Bar No. 07994
Daniel J. Zeller, Fed. Bar No. 28107
SHAPIRO SHER GUINOT & SANDLER
250 W. Pratt Street, Suite 2000
Baltimore, Maryland 21201
Tel: 410-385-4274
Fax: 410-539-7611
Email: rmg@shapirosher.com
djz@shapirosher.com

***General Bankruptcy Counsel to Morgan W. Fisher, Chapter 7 Trustee***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of September, 2026, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the foregoing *Motion, Notice and Proposed Order* will be served electronically by the Court's CM/ECF system on all parties registered to receive electronic service in this case.

## CM/ECF SERVICE LIST

**Corinne Donohue Adams** cadams@yvslaw.com, cadams@yvslaw.com;jbeckman@yvslaw.com;pgomez@yvslaw.com;vmichaelides@yvslaw.com;r39990@notify.bestcase.com
**Sam Alberts** sam.alberts@dentons.com, docket.general.lit.wdc@dentons.com
**Peter J Artese** peter.artese@us.dlapiper.com
**Jodie E. Bekman** jbekman@gfrlaw.com, dferguson@gfrlaw.com
**Jan Berlage** JBerlage@GHSLLP.com, tcollins@ghsllp.com
**Hugh M. (UST) Bernstein** hugh.m.bernstein@usdoj.gov
**Daniel Jack Blum** jack.blum@polsinelli.com, lsuprum@polsinelli.com;delawaredocketing@polsinelli.com
**Laura Skowronski Bouyea** lsbouyea@venable.com, dmdierdorff@venable.com
**Thomas K. Bredar** thomas.bredar@wilmerhale.com, andrew.goldman@wilmerhale.com;benjamin.loveland@wilmerhale.com;yolande.thompson@wilmerhale.com
**Matthew G. Brushwood** mbrushwood@barley.com, dkline@barley.com
**Darek Bushnaq** dsbushnaq@venable.com
**Brian A. Coleman** brian.coleman@faegredrinker.com
**Richard L. Costella** rcostella@tydings.com, myoung@tydings.com;pcoolbaugh@tydings.com
**Katherine Elizabeth Culbertson** katherine.culbertson@troutman.com

**David W.T. Daniels** david.daniels@ashurstperkins.com, docketnyc@perkinscoie.com;nvargas@perkinscoie.com;KMcClure@perkinscoie.com;rleibowitz@perkinscoie.com
**G. David Dean** ddean@coleschotz.com, PRatkowiak@coleschotz.com
**Mark L Desgrosseilliers** desgross@chipmanbrown.com, fusco@chipmanbrown.com
**Emily Devan** edevan@milesstockbridge.com
**Ellen E. Dew** ellen.dew@us.dlapiper.com
**Turner Falk** turner.falk@saul.com, tnfalk@recap.email;Veronica.Marchiondo@saul.com
**Justin Philip Fasano** jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com;tmackey@mhlawyers.com;mevans@mhlawyers.com;cmartin@mhlawyers.com;Fasano.JustinR92003@notify.bestcase.com
**Ashley N Fellona** ashley.fellona@saul.com, janice.mast@saul.com
**Gianfranco Finizio** gfinizio@lowenstein.com
**Morgan W. Fisher** trustee@morganfisherlaw.com, MD65@ecfcbis.com;fisher@premierremote.com
**Chelsea R Frankel** cfrankel@lowenstein.com
**Jeremy S. Friedberg** jeremy@friedberg.legal, ecf@friedberg.legal
**Stephen B. Gerald** sgerald@tydings.com
**Christopher J. Giaimo** christopher.giaimo@squirepb.com, christopher.giaimo@squirepb.com;christopher-j-giaimo-6409@ecf.pacerpro.com
**Joshua Glikin** jglikin@shulmanrogers.com, abogert@shulmanrogers.com,mdicarlo@shulmanrogers.com
**Richard Marc Goldberg** rmg@shapirosher.com, ejd@shapirosher.com
**Jonathan A. Grasso** jgrasso@yvslaw.com, pgomez@yvslaw.com;r39990@notify.bestcase.com
**Zvi Guttman** zvi@zviguttman.com, zviguttman@gmail.com,zviguttman@outlook.com,MD55@ecfcbis.com
**Jeffrey C. Hampton** jeffrey.hampton@saul.com
**Catherine Keller Hopkin** chopkin@yvslaw.com, pgomez@yvslaw.com;kreese@yvslaw.com;vmichaelides@yvslaw.com;yvslawcmecf@gmail.com;hopkincr39990@notify.bestcase.com
**James R. Irving** james.irving@dentons.com
**Adam H Isenberg** adam.isenberg@saul.com
**Anthony Jankoski** ajankoski@whitefordlaw.com
**Harry Conrad Jones** HJones@coleschotz.com, bankruptcy@coleschotz.com;pratkowiak@coleschotz.com
**Lawrence A. Katz** lkatz@hirschlerlaw.com, ydover@hirschlerlaw.com;aklena@hirschlerlaw.com
**Toyja E. Kelley** Toyja.Kelley@troutman.com
**C. Kevin Kobbe** kevin.kobbe@us.dlapiper.com, docketing-baltimore-0421@ecf.pacerpro.com
**Eric George Korphage** korphagee@whiteandwilliams.com
**Jung Yong Lee** jlee@milesstockbridge.com, mhickman@tydings.com
**Gary H. Leibowitz** gleibowitz@coleschotz.com, pratkowiak@coleschotz.com;bankruptcy@coleschotz.com;lmorton@coleschotz.com
**Jean Evelyn Lewis** jlewis@kg-law.com, swisthoff@kg-law.com
**Thomas J. McKee** mckeet@gtlaw.com, Karrie.Barbaro@gtlaw.com,thomas mckee-0902@ecf.pacerpro.com
**Mark Minuti** mark.minuti@saul.com, robyn.warren@saul.com
**Randy Moonan** rmoonan@sillscummis.com
**William Fuller Moss** william.moss@friedberg.legal
**Bruce S. Nathan** bnathan@lowenstein.com
**Janet M. Nesse** jnesse@mhlawyers.com, jfasano@mhlawyers.com;cpalik@mhlawyers.com;jnesse@ecf.inforuptcy.com;tmackey@mhlawyers.com;cmartin@mhlawyers.com;kfeig@mhlawyers.com;BKrell@mhlawyers.com

**Craig Palik** cpalik@mhlawyers.com, cpalik@ecf.inforuptcy.com;Palik.CraigR92003@notify.bestcase.com;mevans@mhlawyers.com;cmartin@mhlawyers.com
**Michael Papandrea** mpapandrea@lowenstein.com
**Steven Gregory Polard** steven.polard@ropers.com, loriann.zullo@ropers.com;calendar-LAO@ropers.com
**Jonathan Gary Rose** jonathan.rose@us.dlapiper.com
**Jordan Rosenfeld** jordan.rosenfeld@saul.com
**Nikolaus F. Schandlbauer** nick.schandlbauer@arlaw.com, lianna.sarasola@arlaw.com
**Dennis J. Shaffer** dshaffer@tydings.com, scalloway@tydings.com;MYoung@tydings.com
**Indira Kavita Sharma** indira.sharma@troutman.com, katherine.culbertson@troutman.com;jonathan.young@troutman.com;david.ruediger@troutman.com;errol.chapman@troutman.com;toyja.kelley@troutman.com
**David J. Shuster** dshuster@kg-law.com, ssohn@kg-law.com
**Nicholas Smargiassi** nicholas.smargiassi@saul.com, sean.kenny@saul.com
**David Sommer** dsommer@gallagherllp.com, ceyler@gejlaw.com;csalce@gejlaw.com;mkobylski@gejlaw.com
**Brent C. Strickland** bstrickland@whitefordlaw.com, mbaum@whitefordlaw.com;brent-strickland-3227@ecf.pacerpro.com
**Matthew G. Summers** summersm@ballardspahr.com, branchd@ballardspahr.com;heilmanl@ballardspahr.com;ambroses@ballardspahr.com;zarnighiann@ballardspahr.com;carolod@ballardspahr.com;cromartie@ballardspahr.com;stammerk@ballardspahr.com;brannickn@ballardspahr.com
**S. Jason Teele** steele@sillscummis.com
**Paige Noelle Topper** paige.topper@saul.com
**US Trustee - Baltimore** USTPRegion04.BA.ECF@USDOJ.GOV

*/s/ Richard M. Goldberg*
Richard M. Goldberg